No. 21-1335

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

REBECCA BRIGHAM,
*Plaintiff-Appellant,*

v.

FRONTIER AIRLINES, INC.,
*Defendant-Appellee.*

———————————————

**On Appeal from the United States District Court for the District
of Colorado (Civil Action No. 19-cv-03417-WJM-STV, Hon.
William J. Martinez)**

---

**APPENDIX – VOLUME 3**

---

John R. Crone
*Counsel of Record*
The Law Office of John R.
Crone, LLC
2717 South Forest Street
Denver, CO 80222
(303) 598-3526
john@crone-law.com

*Counsel for Rebecca
Brigham*

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Defendant's Motion for Summary Judgment with Exhibits          597-894

**FRONTIER**

| EMPLOYEE HANDBOOK | 10.05 Pg. 13 |

- *The views expressed here are mine alone and do not necessarily reflect the views of my employer, Frontier Airlines.*

*NOTE:   Employees must keep in mind that information posted on a social media site that violates company policy and/or federal, state or local law will not be protected by the disclaimer to shield them from disciplinary action.*

- **Customer Engagement:** We have a dedicated social media team tasked with responding to customer inquiries or criticism. Our official Frontier Social Media team is responsible for engaging customers through our page. Do not respond to customer inquiries or comments directed specifically to the Company or asking for an official Company response.

- **Support the Social Media Team:** If you see a comment, positive or negative, that is not directed explicitly to our Facebook page or Twitter accounts please feel free to direct the passenger to our official accounts so they can get the necessary help. Please direct the users to the to the official Frontier social media accounts, listed at the end of this section.

- **Be Professional:** Remember, you are responsible for what you write or present on social media. Ask yourself: Would you want your boss to see it? How about your family?

- **Emergency Response:** Never comment on any content when Frontier is in a crisis situation. Frontier has trained individuals for these types of situations.

- **Company Business:**
  - Do not discuss private company business or co-workers on your social media sites; doing so can put as at a competitive disadvantage or harm the reputation of those with whom we work. If you want to discuss something that is company-sensitive, please as Corporate Communications first. Ask yourself: Will sharing this information get me in trouble and is it public knowledge?
  - Do not tweet or post directly to the media - including agents of the media, websites or social media sites of the media, or employees of the media - with statements or pictures that reference Frontier Airlines; this includes, but is not limited to, statements about or pictures of our passengers, airports that we serve, aircraft and/or employees.

Rev17 02/19/14                    Information Technology Acceptable Use Policy

**FRONTIER**

EMPLOYEE HANDBOOK                                                    10.05 Pg. 14

- **Ask for Permission:** Do not identify or reference company employees, clients, customers or partners without expressed permission. Do not post pictures of Frontier Airlines passengers on the Internet without express permission from the customer and CorpComm.

Social media is important for interactions with our customers and is a very public space in which we interact with competitors, customers, media, and even our fellow employees. Our Social Media team reserves the right to remove any inflammatory, negative, or inappropriate posts from our social media channels. This is especially important for our employees; if the Social Media team does in fact need to remove your comment an email will be sent to your management to inform them of the incident. We support each other on a daily basis in the office and at the airport, which must carry over into the social media sphere.

### 10.05.11.3   Use of Company's Logo or Trademark
Frontier and its employees must adhere to very strict copyright licenses. Therefore, under no circumstance can employees use professionally produced images of the livery (tails) or logos. on any type of personal website, blog, social networking site, etc., without approval from Corporate Communications. Any and all existing unapproved postings must be taken down.

### 10.05.11.4   Press Inquiries
Certain social media usage may generate media inquiries. If a member of the media contacts you about a Frontier related posting or requests Frontier information of any kind, do not reply, and contact Corporate Communications immediately at F9CorpComm@flyfrontier.com. You may also reach out to Corporate Communications for clarification on whether certain information has been publicly disclosed before you comment about it.

### 10.05.11.5   Temporary Suspension of Website or Blog
Frontier may request that you temporarily confine your website or blog commentary to topics unrelated to the Company. If these requests are not honored, the Company may ask that you temporarily suspend your website or blog activity altogether, if it is necessary to ensure compliance with securities regulations or other laws.

### 10.05.11.6   On-Duty Use of Social Media
The job duties of certain Frontier employees may call for the use of social media while at work. Employees may engage in social media activity during work time provided it is directly related to their work, approved by

Rev17 02/19/14                    Information Technology Acceptable Use Policy

**FRONTIER**

| EMPLOYEE HANDBOOK | 10.05  Pg. 15 |

their manager, and does not identify or reference company clients, customers, or vendors without express permission. As you are aware, Frontier monitors employee use of company computers and the Internet, including employee blogging and social networking activity. Please refer to the Information Technology Acceptable Use Policy in the Employee Handbook for more guidelines on Internet usage.

### 10.05.11.7    Official Frontier Airlines Social Media Accounts

Twitter:

- @FlyFrontier
  This is our main account used for marketing messages.

- "@FrontierCare
  This is the account used for customer service via Twitter.

Facbook:

- www.facecbook.com/flyfrontier

Instagram

- @FlyFrontier

Foursquare:

- www.foursquare.com/flyfrontier

FlyerTalk

- F9 Direct

**FRONTIER**

## 10.05.12 LEARNING MANAGEMENT SYSTEM POLICY

### Chief Executive Officer (CEO)

(Ops Spec A025)

The Chief Executive Officer (CEO) for Frontier Airlines has authority over the Chief Information Officer (CIO) for Frontier Airlines information technology initiatives. The Chief Information Officer (CIO) is ultimately responsible for Frontier's Learning Management System (LMS) access control requirements and system audit procedures. The Chief Information Officer (CIO) reports directly to Frontier's Chief Executive Officer (CEO).

### Frontier Program Manager

(Ops Spec A025)

The Program Manager has direct authority for Frontier's LMS, called eLearn. The Program Manager actively monitors access control requirements and system audit procedures to confirm accuracy of the database based on the processes contained in this section.

### Training Departments
Each Frontier Training Department is responsible for developing and implementing processes to accommodate the company policy for access controls and database accuracy.

#### 10.05.12.1   User Accounts and Access

### Creating Accounts

*Employees*
All active employees have an account created the first time they login to the Learning Management System (LMS) with their network username and password.

*Vendors*
All vendor accounts are created based on a management or approved representative submission. Each department reviews and approves the request for accounts to be created and forwards that request to Information Technology (IT) or is given permissions to add individuals.

FRONTIER AIRLINES (R. BRIGHAM) - 0000340
0000340

**FRONTIER**

| EMPLOYEE HANDBOOK | 10.05  Pg. 17 |
|---|---|

## Removing Access to the Learning Management System

### Employees

All employees lose login access to the LMS the moment they go on a leave of absence or they are no longer employed with the company.

### Vendors

All vendor accounts will be removed from the LMS when either one of the following occurs:

- They have not logged in for a period of 18 months
- IT or the designee is told by a department that a certain vendor employee is no longer employed

    NOTE:   *Each department is required to conduct a quarterly audit. See below.*

## Access Controls

### Authenticated User

By default, all users are created with authenticated user access, which means they can only login to the LMS and view the company directory.

### Student Role

A user is not given student access to a course unless they know the password to enroll given by the instructor. The instructor may also manually enroll the user into a course.

## Department Administrators

Certain employees, appointed by a Vice President (VP) or Director of a department are given access at the department level to do the following:

- Moves, additions, changes or deletions of a course (not grades or history) within the department
- Delegate users to other roles including course creator, instructor, and non-editing teacher
- Change permission of other users at a department level only

IT will send a list of all non-student roles to the department representative on a quarterly basis for audit purposes.

## Grade & Database Integrity

1. The company maintains a backup of the entire system for three months

2. The system keeps a backup of all grades indefinitely

Rev17 02/19/14                    Information Technology Acceptable Use Policy

**FRONTIER**

EMPLOYEE HANDBOOK                                                    10.05  Pg. 18

3. The system keeps a copy of all grades in three different tables within the system. For example, if a user completed a quiz as part of their training, the quiz score is kept in the following tables:

   a. The Quiz_Grade Table

   b. The LMS_Grade Table (Current grade history)

   c. The LMS_Grade_GradeHistory Table which shows all current and all past grade events in the event another quiz attempt was taken

**FRONTIER**

EMPLOYEE HANDBOOK                                              11.00  Pg. 1

## CHAPTER 11 – DRUG AND ALCOHOL-FREE POLICIES AND REGULATIONS

### TABLE OF CONTENTS

| Section | Subject | Page |
|---|---|---|
| **11.05** | **Anti-Drug Policy and Regulations.** | **1** |
| | DOT Testing (Drug & Alcohol) | 2 |
| | Consequences For Violating The Rules Of The AMPP | 5 |
| | Processes and Test Results | 7 |
| | Notice to the Federal Air Surgeon | 8 |
| | Non-DOT Company Testing (Drug & Alcohol) | 10 |
| | Consequences for Violating the Rules of the AMPP | 13 |
| | Drug and Alcohol- Free Workplace Policies | 14 |
| | Recreational Use/Medical Marijuana | 15 |
| **11.10** | **General Policies** | **1** |
| | Prescription (Rx) and Over-the-Counter (OTC) Drugs | 1 |
| | Prescription Medication – Safety Concerns | 1 |
| | Prohibited Conduct | 2 |
| | Disciplinary Action | 2 |
| | Search Policy | 3 |
| | Testing Employees Based on Reasonable Suspicion | 3 |
| | Training Requirements | 3 |
| | Employee Assistance Following Self Disclosure | 4 |
| | Financial Assistance for Treatment | 4 |
| | Confidentiality | 4 |

FRONTIER AIRLINES (R. BRIGHAM) - 0000343
0603

**FRONTIER**

EMPLOYEE HANDBOOK                                              11.00  Pg. 2

FRONTIER AIRLINES (R. BRIGHAM) - 0000344
0604

**FRONTIER**

EMPLOYEE HANDBOOK                                                    **11.05 Pg. 1**

## ANTI-DRUG POLICY AND REGULATIONS

The Department of Transportation/Federal Aviation Administration (DOT/FAA), in November 1988, issued regulations to implement an Anti-drug program for employees who perform safety-sensitive and/or security related functions. These regulations prohibit the on-or-off duty use of illegal drugs. Illegal drugs or "drugs" include the following substances: Marijuana, Cocaine, Opiates, Phencyclidine, Amphetamines, and MDMA. Drug tests are accomplished by testing a urine specimen in accordance with DOT regulations contained in 49 CFR Part 40.

The use and consumption of drugs or alcohol by employees detrimentally affects a wide range of areas, from their personal job performance and safety of their co-workers to general productivity, morale and efficiency.

In order to maintain a safe working environment, ensure quality workmanship, promote maximum productivity and preserve the reputation of Frontier, a comprehensive alcohol and drug screening program has been established.

The Drug and Alcohol Misuse Prevention Policies and Programs in this manual define the regulations set forth by the DOT/FAA and are strictly enforced by Frontier. Frontier reserves the right to make any policy more stringent than DOT/FAA regulations. Frontier has also established its own policies with respect to employees who use illegal drugs and/or misuse alcohol. These include non-federally mandated testing. A Prescription (Rx) and Over-the-Counter (OTC) Policy is included in the Anti-Drug and Alcohol Misuse and Prevention Policy as part of the provisions set forth by Frontier 's authority.

The policy emphasizes safety and explains the responsibility of the employee and a prescribing physician. Any employee who works for Frontier is deemed to have implied consent with these policies. These policies can be found at the end of this chapter.

| | |
|---|---|
| Program Manager | HR Compliance |
| Jerry Arellano | Phone: 720-936-3704 |
| Phone: 720-374-4594 | |

Frontier has contracted with C/TPA, First Lab to help administer this government mandated program and keep all airline certificates in compliance with DOT/FAA testing regulations.

**Program procedures and forms can be found at:**

http://www.myfrontier.org/hr/Compliance/Compliance.asp

Rev19 06/09/14                                **Anti-Drug Policy and Regulations**

**FRONTIER**

EMPLOYEE HANDBOOK                                                    11.05  Pg. 2

## 11.05.1  DOT TESTING (DRUG & ALCOHOL)

### 11.05.1.1  Employees Subject to Testing

The following positions are subject to testing under the DOT: Pilots, Flight Attendants, Flight Instructors, Dispatchers, Ground Security Coordinators, Security Screeners, and Air Traffic Controllers. All of these positions are considered to be safety-sensitive and apply to all employees and management personnel who could possibly perform any of these duties. Mechanics are also subject to DOT testing, which includes anyone doing inspection, overhaul, repair, preservation, the replacement of parts, and anyone doing preventative maintenance, such as simple or minor preservation operations and the replacement of small standard parts not involving complex assembly operations. To help with the clarification of which positions are safety-sensitive, all applicable maintenance positions will be noted with "DOT safety-sensitive position as reviewed by the Director of Maintenance". Any employee transferring from a non safety-sensitive position to a DOT covered safety-sensitive position will be subject to the federally mandated testing. These employees are subject to the following types of testing:

### 11.05.1.2  Pre-Employment Drug Testing

A Pre-Employment test is administered when a candidate is offered a safety-sensitive position. When instructed to report for pre-employment testing, a candidate must do so within 48 hours of notification unless otherwise specified. An employee transferring from any position that is not classified as safety-sensitive into a safety-sensitive position is required to submit to a pre-employment drug screen under the Department of Transportation and be tested for drugs of abuse.

### 11.05.1.3  Random

An employee is considered to be performing a safety-sensitive function during any period in which he or she is ready and available to perform, actually performing, or just performed such functions. Testing takes place during work hours. The employee must cease performing safety-sensitive functions and proceed to the collection site immediately. Tests are conducted throughout the system at any base or station conducive to completion. Testing may also occur if an employee is "readily available" to perform safety-sensitive functions. For example, it is possible for an employee to be tested during recurrent/upgrade training if their status would allow them to perform their safety-sensitive functions if pulled from the training due to an emergency or shortage of qualified

Rev19 06/09/14                              Anti-Drug Policy and Regulations

**FRONTIER**

EMPLOYEE HANDBOOK                                                    11.05  Pg. 3

employees. Random selections are made by First Lab based on the FAA required annual testing rate.

### 11.05.1.4  Post-Accident

A Post-Accident test must be conducted as soon as possible after a DOT accident; testing must be initiated no later than 32 hours for drug and no later than 8 hours for alcohol. This testing will apply to any safety-sensitive employees performing safety-sensitive functions whose performance may have been a contributing factor to the accident, or cannot be completely discounted as a factor in the accident. Employees are relieved of performing their duties until negative test results are received. As long as the result is negative, the employee will be paid for lost time. (In the case of injury to the employee, obtaining necessary medical assistance will take priority over the testing. In such cases, testing must be accomplished as soon as medically reasonable, within the time restrictions placed by the DOT/FAA.)

The following is the definition of a DOT accident: An occurrence associated with the operation of an aircraft with the intention of flight, and all such persons have disembarked, in which any person suffers death or serious injury, OR in which the aircraft receives substantial damage. (14 CFR Part 121, 49 CFR Part 40) If any of the criteria are not present in the situation, it is probable cause for NON DOT Post-Accident testing per company policy.

### 11.05.1.5  Reasonable Suspicion

Reasonable Suspicion testing observations may occur during, just proceeding, and/or at the end of the work shift. As long as the result is negative, the employee may return to work and will be paid for lost time. See Frontier's Reasonable Cause/Suspicion Policy for more information regarding procedures.

*NOTE: In circumstances requiring Post-Accident or Reasonable Suspicion testing, management or designee must escort the employee to the collection site and arrange for transportation home.*

**FRONTIER**

EMPLOYEE HANDBOOK                                    11.05  Pg. 4

### 11.05.1.6  Prohibited Usage

Alcohol is defined as the intoxicating agent in beverage alcohol, ethyl alcohol, or other low molecular weight alcohol, including methyl or isopropyl alcohol. Alcohol use is defined as the consumption of any beverage, mixture, or preparation, including any medication, containing alcohol.

NOTE:   Frontier's policy and DOT/FAA regulations prohibit reporting for or remaining on duty while having an alcohol concentration of 0.04 or greater

### 11.05.1.7  Pre-Duty Use

Any employees performing the listed safety-sensitive functions are subject to alcohol testing and must refrain from consuming any alcohol (not just alcohol beverages) whenever they are performing, ready to perform, or immediately available to perform these functions. Employees will normally be asked to test for alcohol when they have reported to work. In addition, no covered employee shall perform any of the listed safety-sensitive functions within eight (8) hours after consuming alcohol.

Example: 1

Our Ground Security Coordinators are on call to perform ground security coordinator functions at any time during their work day. Even though these functions might not be performed during the regular work day, the individual would be subject to testing the entire workday because he is immediately available to perform the functions of the ground security coordinator.

Example: 2

A Pilot on-call for duty while at home has not violated the regulations if he has an alcoholic beverage unless he reports for duty within eight (8) hours of consuming such alcohol. He is not subject to alcohol testing until he reports for work. Therefore, if he is called to work and has consumed alcohol within the eight (8) hour time frame, he would have to decline to report until eight (8) hours have passed with no alcohol consumption. Therefore, an employee on call for duty at home is still not to consume any alcohol until their duty day is complete. A Pilot waiting to fly an aircraft in the employee's lounge is subject to testing as he is immediately available to fly the aircraft.

Rev17 02/19/14                            **Anti-Drug Policy and Regulations**

*FRONTIER*

EMPLOYEE HANDBOOK                                        11.05  Pg. 5

Example: 3

An administrative employee who is available to perform aviation screening duties from 8 a.m. to 12 noon in order to cover for an absent employee would be subject to testing during those hours even if no covered functions were actually performed

### 11.05.1.8   On-Duty Use

Covered employees may not consume alcohol while performing safety-sensitive functions. This prohibition also applies to covered employees who are at work and immediately available to perform safety-sensitive functions

### 11.05.1.9   Following an Accident

Covered employees with knowledge of an accident involving an aircraft for which they performed a safety-sensitive function at or near the time of the accident may not use alcohol for eight (8) hours after the accident unless they have been given a post-accident test, or Frontier has determined that their performance could not have contributed to the accident.

*NOTE:   Accident is defined as an occurrence associated with the operation of an aircraft which takes place between the time any person boards the aircraft with the intention of flight and the time that all such persons have disembarked, and in which any person suffers death, or serious injury or in which the aircraft receives substantial damage.*

## 11.05.2   CONSEQUENCES FOR VIOLATING THE RULES OF THE AMPP

### 11.05.2.1   Consequences

Employees will be terminated who:

- Receive a verified confirmed positive alcohol test result equal to or greater than 0.04.
- Fail to report to a designated collection site as directed within an allotted time frame.
- Refuse to take the test.
- Fail to provide a sufficient amount of breath (without adequate medical explanation and documentation).

Rev17 02/19/14                                Anti-Drug Policy and Regulations

**FRONTIER**

EMPLOYEE HANDBOOK                                                    11.05  Pg. 6

- Tamper with, adulterate, or substitute the test.

In the event any employee is found to have an alcohol concentration of 0.02 or greater but less than 0.04, that employee will be immediately removed from performing job functions, until the employee is retested with a result below 0.02, or until the start of the employee's next regularly scheduled duty period, if it occurs at least 8 hours following administration of the test. For the first offense the employee will be placed on a written warning. For the second offense the employee will be placed on a final termination warning. Further violations will result in employment separation.

### 11.05.2.2   Removal From Safety-Sensitive Functions

Covered employees are prohibited from performing safety-sensitive functions if they have engaged in prohibited conduct under the FAA rule or other DOT agency's alcohol misuse rule (including refusal to submit to random, reasonable suspicion, or post-accident testing). Such employees will be immediately removed from duty and as per Company Policy will be subject to discipline up to and including termination.

### 11.05.2.3   Refusal to Submit to Testing

Covered employees may not refuse to submit to a post-accident, random, reasonable suspicion, or follow-up alcohol test. Frontier will not permit an employee who refuses to submit to such a test to perform or continue to perform safety-sensitive functions. Employees who refuse to submit to the required testing will be immediately removed from duty and will be subject to discipline up to and including termination. DOT/FAA regulations define a refusal as listed below.

- Failure to appear for any test within a reasonable time, as determined by the employer, consistent with applicable DOT agency regulations or company policies, after being directed to do so by the employer
- Failure to remain at the testing site until the testing process is complete
- Failure to provide sufficient breath for any test required by this part or DOT agency regulations, and/or company policies
- Failure to provide a sufficient amount of breath when directed, and it has been determined, through a required medical evaluation, that there was no adequate medical explanation for the failure

FRONTIER AIRLINES (R. BRIGHAM) - 0000350
00640

**FRONTIER**

- Failure or declining to take an additional test the employer or collector has directed you to take
- Failure to undergo a medical examination or evaluation, as directed by the employer as part of the insufficient breath procedures
- Failure to cooperate with any part of the testing process
- Failure to sign the certification at Step 2 on the Alcohol Testing Form

*NOTE:   More information on refusals can be found in 49 CFR Part 40.261.*

## 11.05.3   PROCESSES AND TEST RESULTS

### 11.05.3.1   Protection of Specimens
The FAA regulations require a "chain of custody" form to follow along with the sample. This provides for accountability and control from the point of collection to the final disposition of the sample. Strict procedures are used when collecting, transferring and storing samples. You watch your sample being placed in a tamper proof package and sign the chain of custody form, which ensures the sample goes through the process intact.With each transfer of possession the chain-of-custody form is dated, signed and annotated as to the purpose of the transfer. The collection of split samples is mandatory for all aviation employers. If the result of the primary specimen is confirmed positive, the employee has 72 hours after receiving notice that the Medical Review Officer has verified the test as positive in which to exercise their option to request a test of the split specimen.

### 11.05.3.2   Specimen Destinations
Urine analysis specimens are sent to Health and Human Services approved laboratories (e.g. LabCorp, Quest) under contract with First Lab. All urine specimens will be screened by immunoassay for the five (5) restricted drugs. Any urine specimen screened positive by immunoassay will be retested by gas chromatography/mass spectrometry (GC/MS).

### 11.05.3.3   Medical Review Officer (MRO)
A Medical Review Officer (MRO) is a licensed physician responsible for receiving laboratory results generated by an agency's drug testing program that has knowledge of substance abuse disorders and has appropriate medical training to interpret and evaluate an individual's

**ℲRONTIER**

positive test result together with his or her medical history and all other relevant biomedical information. FAA regulations call for an independent Medical Doctor to review and interpret all test results. This is to ensure the maximum amount of fairness and confidentiality to the employee.The RAA Anti-Drug Consortium contracts with the Medical Review Officer, who has an extensive background in occupational health and drug abuse programs.

### 11.05.3.4   Positive Test Result

The First Lab Medical Review Officer (MRO) will review the test results of any "positive urine specimens." He/she will confirm that proper procedures were followed in the handling and analysis of the urine specimen. He/she will also review and interpret all specific test results.The MRO will then contact the employee directly to inform them of the "positive urine specimen" and to discuss possible legitimate medical or other reasons to account for the positive laboratory findings. When such legitimate reasons are found, the "positive urine specimen" becomes a negative test result and no further action is taken. When neither reasonable medical cause, nor lack of proper quality control of lab procedures are found, a "verified positive test" is determined. The MRO will then forward the name of the employee who has the "verified positive test" to Company Management and to the required FAA officials.

## 11.05.4   NOTICE TO THE FEDERAL AIR SURGEON

Any covered employee who holds an airman medical certificate issued under 14 CFR Part 67 and violates the provision of these rules will be reported to the Federal Air Surgeon within two (2) business days.

### 11.05.4.1   Notice of Refusals

Any covered employee who holds an airman certificate issued under 14CFR Part 61, Part 63 or Part 65 and refuses to submit to required random, post-accident, reasonable suspicion or follow-up drug testing will be reported to the FAA within two (2) business days. DOT/FAA regulations define a refusal as listed below:

- Failure to appear for any test within a reasonable time, as determined by the employer, consistent with applicable DOT agency regulations or company policies, after being directed to do so by the employer
- Failure to remain at the testing site until the testing process is complete

FRONTIER AIRLINES (R. BRIGHAM) - 0000352
0000412

**FRONTIER**

- Failure to provide a urine specimen for any drug test required by this part or DOT agency regulations, and/or company policies

- In the case of a directly observed or monitored collection in a drug test, failure to permit the observation or monitoring of your provision of a specimen

- Failure to provide a sufficient amount of urine when directed, and it has been determined, through a required medical evaluation, that here was no adequate medical explanation for the failure

- Failure or declining to take an additional drug test the employer or collector has directed you to take

- Failure to undergo a medical examination or evaluation, as directed by the MRO as part of the drug test verification process

- Failure to cooperate with any part of the testing process (e.g., refuse to empty pockets when so directed by the collector; behave in a confrontational way that disrupts the collection process)

- As an employee, if the MRO reports that you have a verified adulterated or substituted test result, you have refused to take a drug test

   NOTE:   More information on refusals can be found in 49 CFR Part 40.191.

### 11.05.4.2   Permanent Disqualification from Service

If a covered employee is determined to have violated the on-duty use of drugs and/or alcohol, they are permanently precluded from performing the safety-sensitive duties they performed before such a violation.There are two circumstances under which employees who engage in prohibited use of drugs and/or alcohol are absolutely barred from performance of the same duties performed before the determination of such use

- Two Verified Positive Drug Tests

   If an employee is determined to have two verified positive drug tests after September 19, 1994, then they are permanently precluded from performing the safety-sensitive function they performed before the second drug test. The bar on two-time violators applies to both persons who have gone through rehabilitation and to those who after evaluation were determined not to need treatment.

- On Duty Use of a Prohibited Drug

FRONTIER AIRLINES (R. BRIGHAM) - 0000353

**FRONTIER**

EMPLOYEE HANDBOOK                                              11.05 Pg. 10

If an employee is determined to have used a prohibited drug while performing a safety-sensitive function after September 19, 1994, then they are permanently precluded from performing that safety-sensitive function for an employer.

## 11.05.5   NON-DOT COMPANY TESTING (DRUG & ALCOHOL)

### 11.05.5.1   Employees Subject to Testing
All company employees are subject to testing under company policy or the DOT. These employees are subject to the following types of testing below:

### 11.05.5.2   Pre-Employment Testing
A candidate must pass a pre-employment test. When instructed to report for pre-employment testing, a candidate must do so within 48 hours of notification unless otherwise specified.

### 11.05.5.3   Post-Accident
A Post-Accident test must be completed as soon as possible after any accident. The testing will apply to any employees whose performance may have been a contributing factor to the accident, or cannot be completely discounted. With management discretion (and approval from the Drug and Alcohol Program Manager, Drug and Alcohol Program Administrator, Director of Human Resources, or Director of Operations) the employee may return to work following the test if a Rapid Test kit is used, and a negative result is received. If a Rapid Test kit is not used, the employee is suspended pending receipt of the result. As long as the result is negative, the employee may return to work and will be paid for lost time. (In the case of injury to the employee, obtaining necessary medical assistance will take priority over the testing. In such cases, testing must be accomplished as soon as medically reasonable).

### 11.05.5.4   Reasonable Suspicion
If Frontier has determined that reasonable suspicion exists, an employee may be requested to submit to a test. Observations may occur during, just proceeding, and/or at the end of the work shift. With management discretion (and approval from the Drug and Alcohol Program Manager, Drug and Alcohol Program Administrator, Vice President, Human Resources & Labor Relations, or Director of Operations) the employee may return to work following the test if a Rapid Test kit is used and a negative result is received. If a Rapid Test kit is not used, the employee is suspended pending receipt of results. As long as the result is negative,

FRONTIER AIRLINES (R. BRIGHAM) - 0000354
000354

**FRONTIER**

the employee may return to work and will be paid for lost time. Refer to Frontier's Reasonable Suspicion Policy for more information regarding procedures.

*NOTE:   In circumstances requiring Post-Accident or Reasonable Suspicion testing, management or designee must escort the employee to the collection site and arrange for transportation home.*

### 11.05.5.5  Return-to-Work and Follow-Up

A Return-to-Duty and Follow-Up tests are administered only when an employee has disclosed an addiction and requests assistance prior to any test notification. Upon completion of an approved rehabilitation program, the employee is allowed to return to work after he/she has taken a return-to-duty test with negative results. Frontier requires full compliance with any additional treatment or aftercare recommended by a Substance Abuse Provider. Documentation of compliance may be requested at any time. The employee will also be placed in the Follow-up testing program which consists of unannounced testing at least six (6) times within the first twelve (12) months and up to sixty (60) months after as Frontier deems necessary. Non-compliance with any portion of recommended treatment, aftercare or testing may result in disciplinary action up to and including suspension or termination.

### 11.05.5.6  Prohibited Usage

Alcohol is defined as the intoxicating agent in beverage alcohol, ethyl alcohol, or other low molecular weight alcohol, including methyl or isopropyl alcohol. Alcohol use is defined as the consumption of any beverage, mixture, or preparation, including any medication, containing alcohol.

*NOTE:   Frontier's policy and DOT/FAA regulations prohibit reporting for or remaining on duty while having an alcohol concentration of 0.04 or greater.*

### 11.05.5.7  Pre-Duty Use

Any employees performing the listed safety-sensitive functions are subject to alcohol testing and must refrain from consuming any alcohol (not just alcohol beverages) whenever they are performing, ready to perform, or immediately available to perform these functions. Employees will normally be asked to test for alcohol when they have reported to work. In addition, no covered employee shall perform any of the listed safety-sensitive functions within eight (8) hours after consuming alcohol

FRONTIER AIRLINES (R. BRIGHAM) - 0000355
000355

**≡FRONTIER**

EMPLOYEE HANDBOOK                                          11.05 Pg. 12

### Example: 1

Our Ground Security Coordinators are on call to perform ground security coordinator functions at any time during their work day. Even though these functions might not be performed during the regular work day, the individual would be subject to testing the entire workday because he is immediately available to perform the functions of the ground security coordinator.

### Example: 2

A Pilot on-call for duty while at home has not violated the regulations if he has an alcoholic beverage unless he reports for duty within eight (8) hours of consuming such alcohol. He is not subject to alcohol testing until he reports for work. Therefore, if he is called to work and has consumed alcohol within the eight (8) hour time frame, he would have to decline to report until eight (8) hours have passed with no alcohol consumption. Therefore, an employee on call for duty at home is still not to consume any alcohol until their duty day is complete. A Pilot waiting to fly an aircraft in the employee's lounge is subject to testing as he is immediately available to fly the aircraft.

### Example: 3

An administrative employee who is available to perform aviation screening duties from 8 a.m. to 12 noon in order to cover for an absent employee would be subject to testing during those hours even if no covered functions were actually performed

#### 11.05.5.8  On-Duty Use
Covered employees may not consume alcohol while performing safety-sensitive functions. This prohibition also applies to covered employees who are at work and immediately available to perform safety-sensitive functions.

#### 11.05.5.9  Following an Accident
Covered employees with knowledge of an accident involving an aircraft for which they performed a safety-sensitive function at or near the time of the accident may not use alcohol for eight (8) hours after the accident unless they have been given a post-accident test, or Frontier has

FRONTIER AIRLINES (R. BRIGHAM) - 0000356

00646

# FRONTIER

**EMPLOYEE HANDBOOK**                                      **11.05  Pg. 13**

determined that their performance could not have contributed to the accident.

> NOTE:  Accident is defined as an occurrence associated with the operation of an aircraft which takes place between the time any person boards the aircraft with the intention of flight and the time that all such persons have disembarked, and in which any person suffers death, or serious injury or in which the aircraft receives substantial damage

## 11.05.6  CONSEQUENCES FOR VIOLATING THE RULES OF THE AMPP

### 11.05.6.1  Consequences

Employees will be discharged who:

- Receive a verified confirmed positive alcohol test result equal to or greater than 0.04.
- Fail to report to a designated collection site as directed within an allotted time frame.
- Refuse to take the test.
- Fail to provide a sufficient amount of breath (without adequate medical explanation and documentation).
- Tamper with, adulterate, or substitute the test.

In the event any employee is found to have an alcohol concentration of 0.02 or greater but less than 0.04, that employee will be immediately removed from performing job functions, until the employee is retested with a result below 0.02, or until the start of the employee's next regularly scheduled duty period, if it occurs at least 8 hours following administration of the test. For the first offense the employee will be placed on a written warning. For the second offense the employee will be placed on a final termination warning. Further violations will result in employment separation.

### 11.05.6.2  Removal From Safety-Sensitive Functions

Covered employees are prohibited from performing safety-sensitive functions if they have engaged in prohibited conduct under the FAA rule or other DOT agency's alcohol misuse rule (including refusal to submit to random, reasonable suspicion, or post-accident testing). Such employees will be immediately removed from duty and as per Company Policy will be subject to discipline up to and including termination.

FRONTIER AIRLINES (R. BRIGHAM) - 0000357
0000357

**FRONTIER**

### 11.05.6.3  Refusal to Submit to Testing

Covered employees may not refuse to submit to a post-accident, random, reasonable suspicion, or follow-up alcohol test. Frontier will not permit an employee who refuses to submit to such a test to perform or continue to perform safety-sensitive functions. Employees who refuse to submit to the required testing will be immediately removed from duty and will be subject to discipline up to and including termination. DOT/FAA regulations define a refusal as listed below:

- Failure to appear for any test within a reasonable time, as determined by the employer, consistent with applicable DOT agency regulations or company policies, after being directed to do so by the employer
- Failure to remain at the testing site until the testing process is complete
- Failure to provide sufficient breath for any test required by this part or DOT agency regulations, and/or company policies
- Failure to provide a sufficient amount of breath when directed, and it has been determined, through a required medical evaluation, that there was no adequate medical explanation for the failure
- Failure or declining to take an additional test the employer or collector has directed you to take
- Failure to undergo a medical examination or evaluation, as directed by the employer as part of the insufficient breath procedures
- Failure to cooperate with any part of the testing process
- Failure to sign the certification at Step 2 on the Alcohol Testing Form

*NOTE:   More information on refusals can be found in 49 CFR Part 40.261.*

## 11.05.7  DRUG AND ALCOHOL- FREE WORKPLACE POLICIES

You, our employee, are Frontier's most valuable resource and for that reason, your health and safety are of paramount concern. Frontier is committed to maintaining a safe work place free from the influence of drugs and alcohol. Drug and alcohol abuse imperils your health and well being and our guests. The unlawful manufacture, distribution, dispensation, possession, use or being under the influence of illegal drugs or other controlled substances or alcohol, in the workplace, is inconsistent with the law and Company Policies.

**FRONTIER**

| EMPLOYEE HANDBOOK | 11.05  Pg. 15 |
|---|---|

Employees are required to report to work in appropriate mental and physical condition to perform their jobs in a satisfactory and safe manner. Given the nature of our business and our obligation to ensure flight safety, Frontier has adopted the following policies. We ask for your full cooperation in supporting these policies and educating others regarding the risks associated with substance abuse.

## 11.05.8   RECREATIONAL USE/MEDICAL MARIJUANA

While some states have enacted various marijuana laws permitting the use of marijuana for medical and/or recreational use, the federal government continues to classify marijuana as a Schedule I controlled substance with no recognized or authorized use. For employees who test positive for marijuana on a DOT or Non-DOT drug test, marijuana use cannot be accepted by the MRO as "authorized medical use of a controlled substance" and the test will be reported as positive. A verified positive drug test is a violation of Company policy and will result in disciplinary or employment actions as described herein.

**FRONTIER**

EMPLOYEE HANDBOOK                                         11.05  Pg. 16

Page Intentionally
Left Blank

## ℱRONTIER

## GENERAL POLICIES

### 11.10.1  PRESCRIPTION (RX) AND OVER-THE-COUNTER (OTC) DRUGS

#### 11.10.1.1  Employee's Responsibility

Prescription drugs are medications prescribed by a physician for a specific medical purpose. These medications are controlled due to their potential for abuse or harm. They are meant to be taken under the supervision of a physician who can monitor the effect and modify the dosage or discontinue its use as a person's condition warrants. The prescription defines how much of the drug to take, how often, and for how long. A prescription drug that is not taken according to the directions may be addictive, harmful or deadly.

Employees have the responsibility to explain their job duties to their physicians and ensure the use of prescribed medication will not pose a safety risk. In the interest of protecting our employees and our guests, safety-sensitive employees must make sure that any prescribed drug or combination of drugs being taken will not adversely impact their job performance. If a test result indicates the presence of a prescribed medication, the Medical Review Officer (MRO) will contact the donor. The donor should be prepared to offer prescription and physician information.

### 11.10.2  PRESCRIPTION MEDICATION – SAFETY CONCERNS

If a drug test result indicates the presence of a medication, the MRO will contact the donor. If the donor reports the use of a medication(s) that may pose a significant safety risk or make the employee medically unqualified for a safety-sensitive position, the MRO will place a "Safety Concern" or "Medical Concern" on the result. The employee will be sent to a licensed physician approved by the company to determine if the medication can be changed to one that does not make the employee medically unqualified or does not pose a significant safety risk.

*NOTE:   Frontier reserves the right to deny safety-sensitive positions, or remove from safety-sensitive positions, anyone who has a condition or medication that causes a safety concern.*

FRONTIER AIRLINES (R. BRIGHAM) - 0000361
0621

**FRONTIER**

## 11.10.3  PROHIBITED CONDUCT

The following situations or conditions are examples of violations of Frontier's Drug and Alcohol-Free Workplace Policies while reporting to work, or being on or leaving duty.

- The sale, manufacture, distribution, use, purchase or possession of, non-prescribed drugs (meaning non-prescribed narcotics, hallucinogenic drugs, marijuana or other non-prescribed controlled substances), or equipment, products, materials which are used, intended for use, or designed for use with such drugs, is prohibited while on Company property or during work hours.
- Reporting to work or being at work while under the influence of, or impaired by, alcohol or non - prescribed drugs is prohibited. An employee who has an alcohol level of greater than .04% is deemed to be under the influence according to this policy.
- Reporting to or being at work with any amount of illegal or prohibited or non-prescribed drugs in the employee's body.
- Reporting to or being at work while under the influence of or using prescribed narcotics or drugs, or over-the-counter medication may also be prohibited where, in the opinion of Frontier, such use prevents the employee from performing the duties of his or her job or poses a risk to the safety of the employee or other persons or property.
- Possessing, using or transferring illegal drugs while on Company premises while on or off duty. Company premises include offices, work locations, desks, lockers, parking lots, any vehicle or aircraft used for company operations or any property under the control of Frontier.
- The use of illegal or synthetic marijuana products is prohibited under this policy.

## 11.10.4  DISCIPLINARY ACTION

Any violation of Company policies referred to in this Chapter, including the refusal to submit immediately to a requested search or test, or a positive result on such test(s), may result in disciplinary action up to and including immediate discharge.

> NOTE:  It is important to remember that all employees are covered under Frontier policies and may be tested under those policies at any time. Frontier reserves the right to notify the FAA of failure of any company drug or alcohol test; DOT or NON-DOT.

FRONTIER AIRLINES (R. BRIGHAM) - 0000362
0622

**FRONTIER**

## 11.10.5  SEARCH POLICY

Where there is reason to believe an employee is under the influence of or impaired by alcohol or drugs, or in the possession or control of prohibited alcohol or drugs; Frontier may search any company property and/or an employee's personal property on company property. This includes, but is not limited to vehicles, handbags, briefcases, his/her person and/or property.

Company property covered in this policy includes property of any nature owned, controlled or used by Frontier, including but not limited to parking lots, offices, desks, file cabinets, lockers and company vehicles.

## 11.10.6  TESTING EMPLOYEES BASED ON REASONABLE SUSPICION

At least two (2) supervisors, one of whom is trained in the detection of the symptoms of possible drug or alcohol use, shall substantiate or concur in the decision to test an employee who is reasonably suspected of drug or alcohol use.The decision to drug test must be based on reasonable and articulated belief that an employee is using a prohibited drug or alcohol on the basis of specific physical, behavioral, and/or performance indicators.

## 11.10.7  TRAINING REQUIREMENTS

FAA regulations state that supervisory personnel who will determine when an employee is subject to testing based on reasonable cause shall receive training on specific, physical, behavioral, and performance indicators of probable drug use and the physical, behavioral, and performance indicators of probable alcohol use.Attendance is required at Initial Training at the time of hire or promotion into a supervisory position and at recurrent training as provided by the Company

## 11.10.8  EMPLOYEE ASSISTANCE FOLLOWING SELF DISCLOSURE

Frontier has established an Employee Assistance Program (EAP) which is available to assist employees with substance abuse problems. This program is available to employees who voluntarily seek assistance before

FRONTIER AIRLINES (R. BRIGHAM) - 0000363
0623

**≡RONTIER**

**EMPLOYEE HANDBOOK**                                                **11.10 Pg. 4**

a situation arises which could lead to a disciplinary termination. Employees may apply for FMLA or medical leave in association with their treatment for substance abuse. If this is the case, the application will be considered self-disclosure and the employee will be responsible for complying with return to work, follow-up testing and any other applicable policies or procedures.

Contact the Drug and Alcohol Program Manager or Drug and Alcohol Program Administrator for assistance enrolling in the Drug and Alcohol EAP Program.

Following an employee's completion of a rehabilitation program they are required to pass a drug/alcohol test prior to returning to work. Frontier requires compliance with any additional treatment, aftercare or support group services recommended by a Substance Abuse Provider.

Documentation of compliance may be requested at any time. The employee will also be placed in the Follow-up testing program which consists of unannounced testing at least six (6) times within the first twelve (12) months and further unannounced testing continuing up to sixty (60) months after as Frontier deems necessary. Non-compliance with any portion of recommended treatment, aftercare or testing may result in removal from performance of safety-sensitive functions.Whether an employee will be granted the opportunity for assistance under this program upon voluntary disclosure for a second time will be at the sole discretion of Frontier.

## 11.10.9   FINANCIAL ASSISTANCE FOR TREATMENT

Frontier's group health insurance programs provide limited coverage for certain rehabilitation services. Please consult the Program Manager or Program Administrator, for specific details.

## 11.10.10 CONFIDENTIALITY

Test results will be reported and maintained on a confidential basis, except when disclosure is necessary to respond to a challenge regarding the validity of the result, per government regulation or necessary for responding to individual employee situations.

FRONTIER AIRLINES (R. BRIGHAM) - 0000364
0624

**FRONTIER**

## DEPENDABILITY

It is essential for any organization to have employees in their workstations at their expected times for the orderly operation of their business and Frontier is no exception. We understand employees are absent on occasion or are late to work for reasons beyond their control. For that reason, tracking attendance, absences or tardiness, is not intended to reflect negatively on any employee, but to treat everyone fairly and impartially.

You are expected to return to active status after any absence or leave as soon as you are capable of resuming your job duties. You should personally contact your supervisor through local reporting procedures. If your supervisor is unavailable, you should contact the next level of management available. Flight crewmembers should contact Crew Scheduling.

Frontier recognizes that some reasons for absence are appropriately excluded from being counted towards corrective action. Absences for approved leaves shall not be counted, provided proper documentation is produced and approved in advance of the event, or if unforeseeable, within the required time frame after the event.

Absences or tardiness due to previous overtime, road trips, scheduled training classes, weather conditions or individual (such as a recognized disability-related situation) or facility/business conditions will be handled on an individual basis as approved by the manager of the department.

Attendance records are not part of an employee's personnel record unless disciplinary action is necessary. The actual attendance record will be maintained by each employee's immediate supervisor/manager.

The policies stated in this section supersede and replace all prior conduct and disciplinary policies and procedures. If a policy in this section conflicts with a provision of a collective bargaining agreement or the department's handbook, the provisions in the collective bargaining agreement or the department's handbook will be followed.

Anyone that calls in sick prior to a vacation or holiday, has a pattern of absence during specific days of the week, has a pattern of absence as soon as an occurrence has dropped off, takes days off under the guise of illness or not receiving an approved vacation then calling in sick may be subject to corrective action, up to and including separation from Frontier.

FRONTIER AIRLINES (R. BRIGHAM) - 0000365

0625

**FRONTIER**

EMPLOYEE HANDBOOK                                      12.05  Pg. 2

### 12.05.0.1  Occurrences of Absenteeism/Tardiness for Non Crew

The focus of this program shall be frequency of "occurrences" of absenteeism/tardiness based on a cumulative occurrence system. An occurrence shall be a continuous absence from scheduled duty or reporting late to work or failing to complete a scheduled shift. Occurrences of absenteeism/tardiness will vary in duration according to the nature of the event, and may range from 6 minutes (tardiness) to several weeks or more for a single event within a rolling twelve-month period. (Example: Reporting late more than 2 hours for a scheduled duty shift or an entire day's absence for a cold is one occurrence. Three consecutive day's absence due to having the flu shall be one occurrence or event.) If an absence is expected to last more than one week for a single event, the employee must apply for an approved leave. If a leave is not approved, each day the employee is absent beyond the first week will count as an additional occurrence.

Occurrences for absenteeism/tardiness shall occur and accumulate, beginning at 0 resulting in termination at 8, within an active rolling twelve-month period. Occurrences will be issued as follows:

A.  **Tardiness/Lateness = 1/2 Occurrence**

An employee reports 6 minutes late but less than 2 hours late for a scheduled duty shift or fails to complete the scheduled shift.

B.  **Absenteeism/Sick Call = 1 Occurrence**
-   An employee is absent from scheduled work (more than 2 hours) or scheduled duty shift.
-   Employee fails to return to work from vacation or leave on the day and time set for return.
-   An employee who shows up more than 2 hours late may be subject to being sent home without pay for any time not worked.

C.  **No Call/No Show = 2 Occurrences**

An employee fails to report an absence prior to the scheduled start of their shift or return to work from vacation or leave on the day and time set for return. Two (2) consecutive days without authorization or no call/no show notification to management will be considered a voluntary termination. The only exception for an employee unable to "no call/no show" is if they are personally hospitalized or otherwise unable to call due to unusual circumstances that are beyond the control of the employee. Two (2) NCNS within 12 months will, regardless of occurrence total, be grounds for termination.

Rev10 12/31/11                                         **Dependability**

**FRONTIER**

### 12.05.0.2  Occurrences of Absenteeism/Tardiness for Flight Attendants

The focus of this program shall be frequency of "occurrences" of absenteeism/tardiness based on a cumulative occurrence system. An occurrence shall be a continuous absence from scheduled duty or reporting late to work or failing to complete a scheduled shift. (Example: Reporting late more than 2 hours for a scheduled duty shift or an entire day's absence for a cold is one occurrence. Three consecutive day's absence due to having the flu shall be one occurrence or event). If an absence is expected to last more than one week for a single event, the employee must apply for an approved leave. If a leave is not approved, each day the employee is absent beyond the first week will count as an additional occurrence.

Occurrences shall occur and accumulate within an active rolling twelve-month period, beginning at 0 and resulting in termination at 8, within an active rolling twelve-month period. Occurrences will be issued as follows:

• **Tardiness/Lateness = 1/2 Occurrence**

An employee reports less than 2 hours late for a scheduled duty shift or fails to complete the scheduled shift.

• **Absenteeism/Sick Call = 1 Occurrence**
  - An employee is absent from scheduled work (more than 2 hours) or scheduled duty shift.
  - Employee fails to return to work from vacation or leave on the day and time set for return.
  - An employee who shows up more than 2 hours late may be subject to being sent home without pay for any time not worked.

• **No Call/No Show = 2 Occurrences**

An employee fails to report an absence prior to the scheduled start of their shift or return to work from vacation or leave on the day and time set for return. Two (2) consecutive days without authorization or no call/no show notification to management will be considered a voluntary termination. The only exception for an employee unable to "no call/no show" is if they are personally hospitalized or otherwise unable to call due to unusual circumstances that are beyond the control of the employee. Two (2) NCNS within 12 months will, regardless of occurrence total, be grounds for termination.

FRONTIER AIRLINES (R. BRIGHAM) - 0000367
0627

**FRONTIER**

EMPLOYEE HANDBOOK                                               12.05  Pg. 4

### 12.05.0.3  Progressive Policy

Corrective action is progressive in nature, but may be implemented or accelerated at any step, including termination, depending upon the severity of the situation and prior discipline for performance. Example: In the case of a no call/no show and an employee's failure to properly notify their supervisor/manager of absence pursuant to this policy for a period of two or more days, termination will be warranted on the first offense or considered voluntary separation of employment. Any step of corrective action may be issued without issuing the prior corrective action warnings if the employee accumulates the applicable number of occurrences.

| Time Period | Within Previous 12 Months | | | |
|---|---|---|---|---|
| Number of Occurrences | 4 | 6 | 7 | 8 |
| Type of Corrective Action | Verbal | Written | Final Suspension | Termination |

### 12.05.0.4  Corrective Actions for Excessive Dependability Occurrences

#### Step 1 - Verbal Warning

After the accumulation of 4 Dependability Occurrences within an active rolling twelve-month period, the employee will be notified by their supervisor/manager that their Dependability is a problem that needs their attention. During this discussion, the supervisor/manager will review the Dependability policy with the employee and ensure that the employee: 1) has a copy of the policy; 2) understands the policy; and: 3) the employee understands the corrective steps that will be taken if there are continued problems with Dependability. The employee is to sign that they have received a copy of the Attendance Policy. This First Warning and signature of receipt of this policy will be forwarded to the Human Resources Department and placed in the employee's personnel file.

#### Step 2 - Written Warning

After accumulating 6 Dependability Occurrences of tardiness/absence within an active rolling twelve month period, the employee will be given a Warning Letter to inform the employee that their Dependability is unacceptable and must improve. The letter will describe corrective actions that may be taken, up to and including termination if poor Dependability continues. This Warning Letter will be placed in the employee's personnel file.

Rev24 02/13/15                                               **Dependability**

**FRONTIER**

EMPLOYEE HANDBOOK                                    12.05  Pg. 5

### Step 3 - Final Warning/Suspension

If an employee accumulates 7 Dependability Occurrences in an active rolling twelve-month period, the employee will be issued a Final Warning Letter that their Dependability is unacceptable and that they will receive a three day unpaid suspension from work. The timing of the suspension will determined by the manager and Human Resources and based on operational needs. The employee will be informed that this is the final warning before termination. This Final Warning Letter will be placed in the employee's personnel file.

### Step 4 - Discharge or Termination

If the employee accumulates 8 Dependability Occurrences within a rolling twelve-month period, the employee will be subject to termination of employment with Frontier.

#### 12.05.0.5   Notification

Employees (not spouses, relatives or others, except in unusual circumstances) must personally contact their immediate supervisor or their supervisor's manager through local reporting procedures (Crews should contact Crew Scheduling) prior to the beginning of their scheduled shift if it will be necessary for the employee to be absent or late to work. If the employee knows in advance that they will be absent, notification should be made as far in advance as possible.

#### 12.05.0.6   Management Guidelines

Corrective actions should be administered by the employee's direct supervisor/manager within five (5) working days after the employee returns to work, unless unusual circumstance or other business demands prevail. Any level of discipline shall be reviewed and approved by the supervisor's manager prior to communications with the employee.

Management and Human Resources have the discretion to suspend an employee (with or without pay) pending an investigation before termination.

*NOTE: The appropriate Vice President of the Department must approve all terminations prior to informing the employee by any supervisor or manager. The Senior Director, Human Resources should also be notified in advance of any termination.*

FRONTIER AIRLINES (R. BRIGHAM) - 0000369
0629

**FRONTIER**

EMPLOYEE HANDBOOK                                    12.05  Pg. 6

### 12.05.0.7   Attendance Awards/Point Deductions

In an effort to recognize employees who achieve perfect attendance for a sustained period of time and to allow more flexibility, all regularly scheduled, non-salaried employees are eligible to receive the following attendance awards:

**Three Months - Rolling Calendar (Begins at last attendance occurrence)**

Perfect Attendance is defined as no attendance occurrences (tardy, absence, NCNS, etc.) other than approved vacations. Absence from work due to any type of approved leave of absence (LOA) will be counted as an attendance occurrence when determining Perfect Attendance.

After a block of 3 consecutive months of Perfect Attendance, an employee will earn back ½ occurrence; this ½ occurrence will be credited to their total. The employee may accumulate up to -2 (negative 2) occurrences. At no time can an employee's occurrence total ("occurrence bank") be lower than -2 (negative 2). If an employee is at -2 occurrences and becomes eligible to receive a Perfect Attendance award, no occurrences will be earned back (credited to their bank).

After receiving a Perfect Attendance award for 3 months of Perfect Attendance, an employee cannot earn additional occurrence credits under this provision until they have completed an additional 3 months of Perfect Attendance. For example, if an employee had no occurrences from March 1 through May 31, the employee would earn back ½ occurrence. In order to earn an additional ½ occurrence credit, the employee must then have Perfect Attendance from June 1 through August 31.

Perfect Attendance credits will be redeemed to cover future occurrences. Credits redeemed for an occurrence will not be added back to the point total when the occurrence rolls off.

**Six Months**

In addition to any earned Occurrence bank credits, each full-time employee who attains a consecutive six-month period of perfect attendance will be entitled to 4 hours of paid time off for each such period. An additional 4 hours will be awarded for each 12 consecutive months of perfect attendance. If an employee has perfect attendance for a rolling 12-month period, the employee would receive 4 hours of paid time off for the first six month period, 4 hours of paid time off for the second six month period, and 4 hours of paid time off for the rolling 12-month period, for a maximum attendance award of 12 hours.

Rev17 02/19/14                                    Dependability

**_FRONTIER_**

**EMPLOYEE HANDBOOK** | **12.05  Pg. 7**

Each part-time employee who attains a consecutive six-month period of perfect attendance will be entitled to 3 hours of paid time off for each such period. An additional 3 hours will be awarded for each rolling 12-month period of perfect attendance. If a part-time employee has perfect attendance for a rolling 12-month period, the employee would receive 3 hours of paid time off for the first six month period, 3 hours of paid time off for the second six month period, and 3 hours of paid time off for the rolling 12-month period, for a maximum attendance award of 9 hours.

### Flight Attendants

Full-time Flight Attendants achieving perfect attendance for a period of 6 consecutive months will be entitled to an award equal to 2 hours of pay for each 6-month period. An additional 2 hours will be awarded for perfect attendance over a rolling 12-month period. The maximum attendance award per 12-month period shall be 6 hours for full-time Flight Attendants.

Part-time or job share Flight Attendants achieving perfect attendance for a period of 6 consecutive months will be entitled to 1 hour of pay for each 6-month period. An additional 1 hour will be awarded for perfect attendance over a rolling 12-month period. The maximum attendance award per 12-month period shall be 3 hours for part-time and job share Flight Attendants.

FRONTIER AIRLINES (R. BRIGHAM) - 0000371

**FRONTIER**

EMPLOYEE HANDBOOK                                                      12.05  Pg. 8

## 12.05.1  GENERAL GUIDELINES

### 12.05.1.1  Probationary Employees
Newly hired employees at 9 or less months of employment may be terminated at any level of the corrective action process unless otherwise covered under a collective bargaining agreement.

### 12.05.1.2  Transfers/Promotions

**Corrective Action - Time Period**
Any corrective action administered under the Dependability policy will remain in effect for an active twelve-month period from the date of the warning at the level it was issued, even if the employee's Dependability Occurrences fall below the most recent disciplinary level. At the end of the twelve month period, the corrective action will no longer be effective, provided no other warnings have occurred. Example: A written warning for absence given on May 1 will no longer be effective on May 1 of the following year. Second example: If a final written warning was given for attendance on July 12, while the first written warning was still in effect (from May 1), the final written warning will remain in effect until twelve months have passed from the date it was issued (July 12), provided no other warnings have occurred. Regardless of the number and type of warning letters currently in effect, when 8 Occurrences are accumulated in a 12 month period, the employee will be subject to discharge or termination. The corrective action will remain in the employee's file.

### 12.05.1.3  Effect of Disciplinary Actions on Leaves of Absences
Any employee with a corrective action who is absent on any type of leave of absence in excess of thirty (30) days (example: Military, Medical, Personal, Workers' Comp, FMLA, STD, etc.) will have his/her corrective action effective period (rolling 12 month period) extended by the duration of their leave of absence.

### 12.05.1.4  Effect of Disciplinary Actions/Suspensions on Retiree Flight Benefits
Any employee who has been given notice of a hearing or suspension which could lead to employment termination will not be eligible for retiree flight benefits as outlined in the Travel Handbook.

Rev17 02/19/14                                                          **Dependability**

**FRONTIER**

EMPLOYEE HANDBOOK                                                          12.05  Pg. 9

### 12.05.1.5  Doctor's Statement(s)/Other Documentation

For absences affecting three or more workdays, a Doctor's statement(s) may be required. It is the employee's responsibility to provide Doctor's statement(s) or ensure statements are sent to their supervisor in a timely manner. It is not the responsibility of the supervisor or Frontier to follow up for the employee when the employee returns to work. In addition, the employee's manager may require a Doctor's statement(s) or other supporting documentation from other individuals or sources, for any Dependability Occurrences.

All Doctor's statement(s) submitted must include the names of treating physician(s), relevant dates/times under their care, and when the employee may return to work. A doctor's note does not excuse an employee's requirement to apply for a leave of absence (reference 08.05); a doctor's note only consolidates absences after the first week. An employee must apply for a leave of absence for one week (as defined by the employee's work schedule).

### 12.05.1.6  Status To Return - Company's Right

Frontier reserves the right to send an employee to a Doctor of its choosing, at Frontier's expense, to assist Frontier in determining an employee's ability to report, return or remain at work. Failure by an employee to cooperate in this matter could be subject to corrective action up to and including termination.

### 12.05.1.7  Falsified Claims

An employee who is found to have falsified a sick claim, failed to return from sick leave or a leave of absence as soon as physically able to do so or who is found to have incurred an event of absenteeism for a reason that was not beyond the control of the employee could be subject to corrective action up to and including termination.

FRONTIER AIRLINES (R. BRIGHAM) - 0000373

0633

**FRONTIER**

EMPLOYEE HANDBOOK                                             12.05  Pg. 10

Page Intentionally
Left Blank

FRONTIER AIRLINES (R. BRIGHAM) - 0000374
0634

**≢RONTIER**

EMPLOYEE HANDBOOK                                              13.05  Pg. 1

## CORRECTIVE ACTION

## 13.05.1  INTRODUCTION

Corrective action will be administered if an employee does not exhibit behaviors conducive to expectations explained in this manual. Violations of conduct, safety, other general rules, operating procedures and/or regulations will subject you to corrective actions up to and including separation from Frontier.

Any level of corrective action shall be reviewed and approved by the direct supervisor's manager before meeting with an employee. It is also recommended that a supervisor or manager consult with Human Resources to ensure corrective action is administered with regard to appropriate laws, regulations and/or policies.

In general, the following steps will be taken in any corrective proceeding and the process will generally be progressive in nature. However, in the case of flagrant, serious or continuous violations, at the discretion of Frontier, corrective action may begin at any of the levels listed below or may lead to termination of employment. For further information concerning the Appeal Process regarding corrective actions, see13.05.3 below.

### Step 1:
A Documented Verbal Warning is the first step in corrective action. The supervisor and employee should discuss the issue clearly and set expectations going forward. The supervisor should log the discussion for future reference. If the behavior or situation continues or if other violations occur the next step will be administered.

### Step 2:
A Written Warning will be issued. The supervisor should meet with the employee to further discuss the continued behavior and explain the severity of the written warning. If the behavior or situation continues or if other violations occur the next step will be administered.

FRONTIER AIRLINES (R. BRIGHAM) - 0000375
0635

# FRONTIER

**EMPLOYEE HANDBOOK**                                    **13.05  Pg. 2**

### Step 3:
A Final Warning/Suspension will be given. This may include a three day suspension from work without pay based on operational need. The supervisor should meet with the employee to discuss the situation.

### Step 4:
Discharge or Termination is the final step. If a situation or violation(s) has not been corrected or continues to occur, at the supervisor's discretion, the employee may be suspended (with or without pay) pending discharge review.

## 13.05.2   GENERAL GUIDELINES

### 13.05.2.1  Corrective Action Letter to Employee

#### (PCR - Performance Counseling Record)
During the corrective action discussion, the supervisor and employee should review the Corrective Action policy to ensure the employee knows the steps of the process. A copy of the PCR will also be provided to the employee and the employee will be encouraged to sign it. All original letters and PCRs and signature of receipt of this policy will be forwarded to the Human Resources Department (HR). HR will place the documents in the employee's Personnel File.

#### Corrective Action - Five Working Days
Corrective actions should be administered within five (5) working days (or sooner) after the violation or conduct, or when the employee returns to work, by the direct supervisor, unless unusual circumstance or other business demands exist. The supervisor and Human Resources has the discretion to suspend an employee (with or without pay) pending investigation prior to termination.

#### Corrective Action - Accelerated
The corrective action process is progressive in nature but may be implemented or accelerated at any step depending upon the severity of the situation. For example, if an employee does not call or show for his/her shift (no call - no show) for a period of two or more days, separation will be considered voluntary.

FRONTIER AIRLINES (R. BRIGHAM) - 0000376

0636

**FRONTIER**

EMPLOYEE HANDBOOK                                                    13.05  Pg. 3

### 13.05.2.2   Effect of Disciplinary Actions on Transfers/Promotions

Employees on a final written warning level of discipline will not be eligible for Employee initiated transfers or promotions within a twelve month period from the date of the final warning unless otherwise covered under a collective bargaining agreement, the department's handbook or Frontier determines, at its discretion, that an exception should be made due to current business needs.

### 13.05.2.3   Effect of Disciplinary Actions on Probationary Employees

Newly hired or probationary Employees at 9 or less months of employment may be terminated at any level during the disciplinary action process unless otherwise covered under a collective bargaining agreement or the department's handbook.

### 13.05.2.4   Disciplinary Action - Time Period

Any level of disciplinary action dispensed will remain in effect for a twelve-month period from the date of the warning at the level it was administered. At the end of the twelve month period, the disciplinary action will no longer be effective provided no other warnings have occurred.

> **Example:**   A first written warning for absence given on May 1 will no longer be effective on May 1 of the following year.

> **Example:**   If a second written warning was given for performance on July 12 of the same year, the second written warning will remain in effect until twelve months have passed from the date it was issued (or until July 12 of the following year) at the level it was issued. At the end of this twelve month period, the disciplinary action would no longer be in effect provided no other warnings have occurred. Disciplinary actions will remain in the Employee's file, even when they are no longer in effect, and Frontier may consider the conduct that led to the performance warning when determining the level of discipline to issue for similar conduct in the future. For some Employees covered under a collective bargaining agreement the disciplinary action may no longer be effective unless otherwise required for compliance regarding the Pilot Record Improvement Act (PRIA).

## 13.05.3   APPEAL PROCESS

In the course of your employment with Frontier, a situation may arise where you question the applicability of a Company policy or practice with

FRONTIER AIRLINES (R. BRIGHAM) - 0000377
0637

# FRONTIER

**EMPLOYEE HANDBOOK**                                    **13.05  Pg. 4**

respect to corrective action that has been taken against you. Our aim is to ensure that all employees are treated fairly and in accordance with Frontier policies and procedures.

As an employee, you have a right to present your appeal without fear of reprisal of any sort. An employee must complete the probationary period in order to utilize the appeal process. Appeals of discipline are allowable only at the written warning level or above. Any time period stated in this policy does not include weekends or holidays. Frontier believes that it is in the best interest of all parties to resolve any concerns in a prompt and fair fashion. Accordingly, the following procedure has been established to provide Frontier and the employee an avenue to address his/her concerns regarding disciplinary actions at the written warning level or above:

## 13.05.3.1

Any employee with a concern should first discuss the matter with their manager in an effort to resolve the problem before initiating the appeal process.

If the matter is not resolved the employee should submit a written statement to Human Resources, F9HRCommunications@FlyFrontier.com, within five (5) business days from the date of the cause of the appeal. Failure to make the submission within this time period will result in a waiver of appeal rights. The written statement must identify the basis for the appeal request and contain the full detailed complaint, including specific events, dates, names of parties involved, witnesses, policy that was violated, etc.

Human Resources will facilitate a telephonic hearing, which will be heard by the next level manager or appropriate designee not intimately involved in the decision that is being appealed.

An employee may ask another employee who is in good standing to join the telephonic hearing. This supporting employee can listen, but may not participate unless asked to do so by the Company representatives. Confidential hearing details should not be discussed outside of the hearing.

A decision will be communicated to the employee as soon as possible following the hearing. If an employee does not receive the decision within fourteen (14) calendar days they can contact the Human Resources representative who facilitated the appeal to inquire about the status. This decision is final and binding.

**Rev17 02/19/14**                                    **Corrective Action**

**FRONTIER**

### 13.05.3.2  Actions Not Appealable

The following actions are not appealable:

- Any disciplinary action, regardless of nature, that does not result in a Written Warning level of discipline or above;
- Actions caused by a reduction in workforce;
- Actions affecting an employee who is employed on a temporary basis or an employee who is in training;
- Non-selection for promotion when the sole basis for the appeal is the allegation by the employee that they are better qualified than the candidate selected for the position;
- Rate of pay;
- Performance evaluations;
- Company or employee benefits;
- Bonuses or profit sharing, or lack thereof;
- Work schedules; or
- Group appeals.

Disciplinary action resulting from gross misconduct or from violations of the Dependability Policy is also not eligible for appeal. In these situations, Human Resources will perform a secondary review of the disciplinary action to ensure consistency with established policy.

All employees covered by the appeal process have the right to present their complaint or appeal free from fear of reprisal, interference or discrimination. Any violation of this right will subject the violator to corrective action and should be reported to Human Resources.

**_FRONTIER_**

EMPLOYEE HANDBOOK                                    13.05  Pg. 6

Page Intentionally
Left Blank

Rev17 02/19/14                                    Corrective Action

**FRONTIER**

EMPLOYEE HANDBOOK                                    14.05  Pg. 1

## ANTI-CORRUPTION COMPLIANCE POLICY

This policy outlines Frontier's expectations of its employees who conduct company business with foreign customers, contractors, government officials, commercial partners or any other individuals covered by the Foreign Corrupt Practices Act ("FCPA") or any other applicable anti-corruption laws. Frontier's policy is to fully comply with the letter and spirit of the FCPA and all other anti-corruption laws to which it may be subject.

Specifically, it is Frontier's policy that Frontier personnel and third parties acting on its behalf shall not corruptly pay, offer, promise or authorize, or take, solicit or accept for his or her personal benefit, any bribe, kickback illicit payment or advantage, in money or in any kind, to or from any foreign official or to or from any other person or entity, including any representative of any actual or potential customer, partner or other counterparty. This policy applies to prohibit corrupt offers or payments to government personnel and private parties inside or outside the United States. In addition, this policy prohibits Frontier personnel from soliciting or receiving any bribe, kickback or other corrupt inducement.

### 14.05.1  THE FCPA'S GENERAL PROHIBITION AGAINST CORRUPT PAYMENTS

The FCPA makes it an offense to corruptly pay, offer to pay, promise, authorize the payment of or give anything of value, directly or indirectly, to a foreign official, a foreign political party (or official thereof) or candidate for foreign office for the purpose of: (1) influencing any official act or decision; (2) inducing those officials, parties or candidates to do or omit to do any act in violation of a lawful duty; (3) securing any improper business advantage; or (4) obtaining or retaining business for or with, or otherwise directing business to any person or entity.

Criminal penalties for violating the FCPA are quite severe. A corporation may be fined as much as $2,000,000 per violation, and criminal penalties regularly exceed $10,000,000. Individuals who violate the FCPA may be fined as much as $250,000 and imprisoned for up to five (5) years or more. In addition, corporations and individuals can be fined up to $10,000 for each civil violation of the FCPA's anti-bribery provision. Frontier is not permitted to reimburse any individual against whom a fine is imposed.

Rev16 12/03/13                          **Anti-Corruption Compliance Policy**

**FRONTIER**

EMPLOYEE HANDBOOK                                                    14.05  Pg. 2

### 14.05.1.1  Anything of Value

The corrupt payment under the law and this policy is not limited to money. Payment includes "anything of value" including non-monetary gifts, free trips and other forms of non-cash favors. Consummation of an improper payment is not required - meaning, a corrupt offer violates the FCPA and this policy. Any offer or payment - regardless of value – that is intended to corruptly influence someone violate the law and this policy.

### 14.05.1.2  Foreign Official

The categories of "Foreign Officials" who are covered by the FCPA and this policy are very broad. A Foreign Official includes:

- any official, officer, employee or representative of any federal, state, provincial, county or municipal government, or government agency or department, outside the United States;
- any official, officer, employee or representative of any commercial enterprise that is owned or controlled by any non-U.S. government (for example, a state-owned airline or state-owned utility); and
- any official, officer, employee or representative of any public international organization, such as the International Monetary Fund, the European Union or the World Bank.

In addition to Foreign Officials, the FCPA also prohibits corrupt payments to any non-U.S. political party, party official or candidates for non-U.S. political office (collectively, "Other Covered Parties").

### 14.05.1.3  To Obtain or Retain Business of To Gain Any Other Business Advantage

"To obtain business or any advantage" is also very broad and additionally includes any kind of favor or preferential treatment. The FCPA and this policy prohibit corrupt payments in any circumstance, including, without limitation:

- corrupt payments made to obtain approval of licenses or permits, to circumvent the approval process for licenses or permits or to avoid or reduce the cost of obtaining licenses or permits;
- corrupt payments made to avoid or reduce any airport, overfly or other fees, rate, taxes or charges;
- corrupt payments made to secure favorable business treatment, for instance, favorable treatment at airports, market access or other advantageous commercial benefit;

Rev16 12/03/13                         Anti-Corruption Compliance Policy

**FRONTIER**

EMPLOYEE HANDBOOK                                                      14.05 Pg. 3

- corrupt payments made to induce a public official to use his influence to assist in obtaining or retaining business or directing business to any person; and
- corrupt payments made to secure any other advantage.

## 14.05.2   OTHER ANTI-CORRUPTION LAWS

In addition to the FCPA, it is Frontier's policy that all personnel must comply with other applicable anti-corruption laws of the United States and other countries where we do business, which make it illegal to offer or pay bribes, kickbacks or other corrupt inducements to employees or representatives of wholly private enterprises. For this reason, this policy prohibits making these kinds of corrupt payments to any person, including employees or representatives of private companies.

Frontier personnel also are strictly prohibited from accepting, soliciting or receiving corrupt payments.

In addition, while the FCPA is focused on corrupt payments to Foreign Officials, Frontier personnel also are required to comply with other U.S. federal and state laws that may prohibit making corrupt payments to U.S. federal, state and local officials or in purely commercial transactions.

## 14.05.3   RELATIONSHIPS WITH THIRD PARTIES

The FCPA prohibits both direct and indirect payments. Thus, a company and its agents or representatives will be liable under the law even if they attempt to "funnel" a payment indirectly to a public official by using a third party as the conduit. As a result, a company can face FCPA liability based on improper payments made by its agents, consultants, joint venture partners or other business partners. Thus, it is Frontier's policy never to use any third party to make corrupt payments, directly or indirectly, to Foreign Officials, Other Covered Parties or any other person.

Frontier will conduct reasonable due diligence prior to engaging a third party and will include in new contractual agreements with third parties anti-corruption provisions specifically designed to mitigate against the risk of potential bribes or other illicit payments. Frontier will monitor its existing relationships with third parties and will be aware of "Red Flags," or signs that a third party may be involved in corrupt activities. See Exhibit 1 ("Examples of Third Party Red Flags").

FRONTIER AIRLINES (R. BRIGHAM) - 0000383
0643

**FRONTIER**

## 14.05.4   RECORD KEEPING REQUIREMENTS

It is Frontier's policy that personnel maintain the Company's books, records and accounts in reasonable detail, accurately and such that they fairly reflect all transactions and dispositions of assets. Frontier prohibits the mischaracterization or omission of any transaction on the Company's books or any failure to maintain proper accounting controls that result in such a mischaracterization or omission. No undisclosed or unrecorded funds, assets or liabilities should be established for any purpose.

## 14.05.5   EMPLOYEE RESPONSIBILITY

There are severe consequences of violating any laws governing anti-corruption. The consequences of failing to comply with the FCPA or other anti-corruption laws can result in civil and/or criminal fines against the Company and can subject the employee to prosecution, criminal fines, and imprisonment, as well as disciplinary action by the Company, up to and including, termination.

All team members are expected to conduct the Company's business with integrity and a manner that complies with the FCPA and other anti-corruption laws. If at any time any team member has a question about anti-corruption law and how it may apply to our business, he or she should consult with his or her supervisor or Frontier's Chief Accounting Officer & Vice President, Treasury at Holly.Nelson@flyfrontier.com and (720) 374-4297.

All conduct with outside parties should be in a strictly professional, business-like manner to avoid any potential or actual violation of the FCPA or other anti-corruption laws.

Each Frontier team member is expected to report any: (1) potential violations of this policy or any applicable anti-corruption law, including the FCPA; (2) solicitation or request for a bribe or illicit payment from any Foreign Official or any other person; or (3) discussion of a bribe or potential illicit payment or solicitation with any third party, to their immediate supervisor or Holly Nelson, Frontier Chief Accounting Officer & Vice President, Treasury. Supervisors who receive such reports should promptly notify Ms. Nelson, who shall coordinate appropriate action. It is Frontier's policy that personnel never will be subjected to any retribution for good-faith reports under this policy.

Rev16 12/03/13                          **Anti-Corruption Compliance Policy**

**FRONTIER**

### 14.05.5.1    Education and Guidance

This Policy only summarizes the FCPA and other anti-corruption laws.

Frontier will provide education and training on this policy, the FCPA and other anti-corruption laws to senior management and other appropriate Frontier personnel likely to have contact with Foreign Officials or Other Covered Parties on Frontier's behalf. These personnel will annually certify their compliance with this policy. See Exhibit 2 ("Certification under The Foreign Corrupt Practices Act and Other Applicable Anti-Corruption Laws").

## 14.05.6    FURTHER INFORMATION

Any questions about this policy or compliance with the FCPA or other anti-corruption laws should be directed to Frontier's Chief Accounting Officer & Vice President, Treasury.

### Exhibit 1 - Examples of Third Party Red Flags

The following are examples of "Red Flags," namely circumstances where anti-corruption risk is higher or signs that a Third Party may potentially be involved in corrupt activities. This list is not exhaustive. Personnel should report to the Chief Accounting Officer & Vice President, Treasury any circumstances that suggest improper payments or illegal activity.

- The Third Party, or a director, officer or employee of the Third Party (if a company), is a Foreign Official or Other Covered Party, or an immediate family member of a Foreign Official or Other Covered Party;
- The Third Party is owned in whole or in part, or controlled, by a government, Foreign Official or immediate family member of a Foreign Official;
- A Foreign Official recommended that the Company use the Third Party;
- The Third Party lacks experience with the product or industry, or lacks qualified staff or adequate facilities for the contemplated tasks;
- The Third Party refuses to cooperate with reasonable anti-corruption diligence requests or provides false information in response to diligence requests;

**FRONTIER**

EMPLOYEE HANDBOOK                                                14.05  Pg. 6

- The Third Party has a reputation for impropriety, unethical or illegal conduct, or corruption; has been the subject of allegations or investigations related to integrity; or is new to the business such that its reputation cannot be verified;
- The Third Party insists on sole control of government interactions or restricts Company access;
- The Third Party refuses to enter into a written contract or agreement without legitimate commercial justification;
- The Third Party requests an unreasonably high margin, fee, commission or compensation; seeks reimbursement for unusually high expenses; or seeks other unusual payment arrangements;
- The Third Party requests payment up-front without legitimate commercial justification;
- The Third Party requests payments to third countries (i.e., where the payee is not located) or third parties;
- The Third Party requests payments in cash or bearer instruments;
- Payments are allowed or made outside the scope of or not in accordance with the agreement;
- The Third Party requests advance of funds without a documented and legitimate basis for funds;
- The Third Party seeks reimbursement of any expenses without proper documentation;
- Reimbursement is requested or made for expenses incurred by, or for, a Foreign Official or Other Covered Party;
- Any payments are made to a Foreign Official or Other Covered Party not in accordance with the Company's policies and procedures;
- The Third Party seeks reimbursements of costs that are unrelated to a business purpose;
- The Third Party refuses to cooperate with reasonable requests to facilitate any investigation of allegations of misconduct related to the agreement; or
- The Third Party refuses to make certifications of compliance with the FCPA or other applicable anti-corruption laws or places unreasonable limits on such certifications.

Rev16 12/03/13                          **Anti-Corruption Compliance Policy**

**FRONTIER**

EMPLOYEE HANDBOOK                                          14.05  Pg. 7

### Exhibit 2 - Certification under The Foreign Corrupt Practices Act and Other Applicable Anti-Corruption Laws

The undersigned, being an employee or agent of Frontier Airlines, Inc. ("Frontier") a Colorado corporation (the "Company"), for purposes of insuring the Company's compliance with the provisions of The Foreign Corrupt Practices Act of 1977, as amended (the "FCPA") and other applicable anti-corruption laws, does hereby certify as follows:

1.  I have read the Frontier Anti-Corruption Compliance Policy ("Policy") and have not violated the Policy.

2.  I have not offered, made a gift, paid, transferred or promised, nor do I have any knowledge of any offer, gift, payment, transfer, or promise by any officer, director, employee, consultant or independent contractor retained by the Company, to any officer or employee of, or any person acting in an official capacity on behalf of, a foreign or U.S. government or any department, agency, or instrumentality thereof for the purpose of:
    a.  inducing the recipient to affect the enactment, promulgation or passage of legislation or regulations;
    b.  inducing the recipient to perform or refrain from performing any official responsibilities for the benefit of the Company;
    c.  inducing the recipient to direct business opportunities to the Company; or
    d.  inducing the recipient to divert business opportunities to the Company.

3.  I have not engaged in, nor do I have any knowledge of others engaging in, any:
    a.  tampering or falsification of the Company's business or accounting records for the purpose of disguising any activities referenced above;
    b.  payment of unreasonably high compensation to consultants hired to assist the Company with operations or contractual negotiations in any foreign countries;
    c.  bribes, kickbacks or other corrupt or illicit payments made on the Company's behalf to any person, including representatives or employees of private companies;
    d.  solicitation or acceptance of any bribe, kickback or other corrupt payment from any person in violation of applicable law.

Rev16 12/03/13                          **Anti-Corruption Compliance Policy**

**≡RONTIER**

**EMPLOYEE HANDBOOK**                                                   **14.05  Pg. 8**

4.  To my knowledge, the Company is in compliance with the national and local laws applicable to the Company in each foreign jurisdiction in which it conducts business.

5.  I will comply with the Policy in the future in relation to my employment with Frontier.

6.  I am not a Foreign Official or Other Covered Party (as defined in the Policy).

7.  If subsequent developments cause this Certification to no longer be accurate, I will immediately advise the Chief Accounting Officer & Vice President, Treasury of such change in circumstances.


IN WITNESS WHEREOF, I have signed this Certificate on this ___ day of _____, 2013.


_____

Signature


_____

Name


_____

Title


**Rev16 12/03/13**                                    **Anti-Corruption Compliance Policy**

**FRONTIER**

EMPLOYEE HANDBOOK                                              **15.05  Pg. 1**

## PROCUREMENT POLICY

### 15.05.1  INTRODUCTION

The purpose of this policy is to ensure that goods and services purchased by the Company are obtained in a cost effective manner and in compliance with federal regulations.

### 15.05.2  SCOPE

This policy applies to any employees authorized to initiate and/or approve purchases on behalf of the Company.

### 15.05.3  OVERVIEW

The Company requires buyers to perform some measure of cost/price analysis when making purchases or engaging third party vendors. Buyers shall avoid purchasing unnecessary items. All vendor bids and quotations must be evaluated on the basis of product quality, technical compliance with specifications, total cost, and the vendor's acceptance of the Company's terms and conditions

Before beginning vendor selection, buyers must be sure that they have a clear and accurate description of the requirements for the material, product, or service being acquired so that a fair and equitable comparison of the price and/or cost can be made. Whenever possible, three price quotes should be obtained for all goods and services.

### 15.05.4  CODE OF CONDUCT

All employees and representatives of the Company are expected to conduct themselves in a professional and ethical manner, maintaining high standards of integrity and the use of good judgment.

- Employees are expected to be principled in their business interactions.

Rev20  09/24/14                                              Procurement Policy

**FRONTIER**

EMPLOYEE HANDBOOK                                              15.05 Pg. 2

- No employee, officer, director, or agent of the Company shall participate in the selection or award of a bid or contract if a conflict of interest is real or apparent to a reasonable person. Conflicts of interest may arise when any employee, officer, director, or agent of the Company has a financial, family or any other beneficial interest in the vendor firm selected or considered for an award.
- No employee, officer, director, or agent of the Company shall do business with, award contract to, or show favoritism toward a member of his/her immediate family, spouse's family or to any company, vendor or concern who either employs or has any relationship with a family member.
- No employee, officer, director, or agent of the Company shall discriminate against minority and/or women-owned businesses in the procurement of goods, supplies and services.
- Procurement awards will be reviewed annually to assure compliance with this policy.

FRONTIER AIRLINES (R. BRIGHAM) - 0000390
0650

**FRONTIER**

## RECORDS RETENTION AND DESTRUCTION POLICY

### 16.05.1  INTRODUCTION

Frontier Airlines, Inc. (the "Company") has implemented the following Records Retention Policy (the "Policy") to ensure the efficient and lawful management of records that are created or maintained by or on behalf of the Company, whether paper or electronic ("Records"). This Policy applies to all Company employees or individuals working on behalf of the Company.

### 16.05.2  SCOPE

Federal and state law requires certain Records to be retained for specific periods of time. This Policy is intended to provide clear guidance to help ensure that our Records are managed in an efficient and lawful manner. Company employees must follow the directives set forth in this Policy, including the retention of Records set forth in Document Retention Schedule (Section VI), so that the Company complies with federal, state and local Record management laws. The early destruction of Records required to be retained under local, state or federal law can result in civil or criminal penalties for individual employees and the Company. Failure to comply with this Policy may also result in an employment action, including suspension or termination.

### 16.05.3  OVERVIEW

#### 16.05.3.1  Responsibility for Records

The responsibility over each Record rests with the individual or department that has access to and decision-making authority over that Record.

FRONTIER AIRLINES (R. BRIGHAM) - 0000391
0651

**FRONTIER**

### 16.05.3.2   Records Retention Administration

**Legal Department**

The Company's Legal Department shall be responsible for the drafting, revision and final interpretation of the Policy and shall update executive management on all compliance matters related thereto. It shall also serve as the initial point of contact for Company employees regarding the proper treatment of Records. In difficult or close cases, the General Counsel will be consulted for a final determination as to the appropriate retention period.

**Records Retention Committee**

Implementation and enforcement of the Policy shall be managed by the Records Retention Committee (the "Committee"). The Committee shall include the General Counsel (Chair), VP, Human Resources, Chief Accounting Officer, and VP, CIO. The Committee shall meet as frequently as necessary to maintain this Policy, but at least once per year.

### 16.05.3.3   The Official Record

Only one copy, in either paper or electronic format, of any particular Record is considered the "official" Record. It is the "official" Record copy which must be retained to meet legal, tax and auditing requirements. Duplicate copies of Records are to be destroyed as soon as they are no longer operationally necessary.

### 16.05.3.4   Electronic Records

The same Records management principles apply to Records on computers and other digital media as to those on paper.

### 16.05.3.5   Electronic Mail

All email to be retained must be placed in an electronic subfolder created within the Inbox. Any email in the following folders: General Inbox, Sent Items or Deleted Items will be permanently deleted after 90 days. The Company performs electronic mail deletions in order to manage and conserve electronic data storage resources.

### 16.05.3.6   Destruction of Records

A Record shall be destroyed unless: 1) it falls under a category that is assigned a retention period in Section VI; or 2) it must be retained to comply with other legal, tax, auditing, regulatory or business operational purposes. Once the conditions in 1) and/or 2) expire, each Record shall be destroyed.

Rev21  01/06/15                          **Records Retention and Destruction Policy**

**FRONTIER**

EMPLOYEE HANDBOOK                                                    16.05  Pg. 3

The method of destruction should be consistent with the type of Record being destroyed. Confidential Records should be disposed of in a manner that prevents them from being accessible to others (e.g., shredding, incineration in an authorized facility, etc.).

All electronic archives/backup tapes will be permanently erased by the IT Department thirty (30) days after creation.

## 16.05.4   TEMPORARY POLICY SUSPENSION

Upon becoming aware of potential or actual litigation, or a governmental audit, investigation or other similar proceeding involving the Company, the Company's General Counsel will notify affected Company employees of Records that could be subject to a document destruction suspension. A suspension on document destruction shall remain in effect until the matter is resolved, and the General Counsel authorizes its resumption.

## 16.05.5   AUDIT

The Company's Internal Audit Department shall periodically audit for compliance with this Policy.

## 16.05.6   RECORD RETENTION SCHEDULE

The following retention schedule assigns minimum timeframes a Record must be retained for the most common types of Records that have legal retention restrictions or potential long-term historical or operational value.

| RETENTION CATEGORY | RETENTION PERIOD |
|---|---|
| ACCOUNTING<br><br>Includes Records related to: banking activities; banking accounts; accounts payable/receivable; uncollected accounts; policy/audit compliance; general ledger; insurance policies; payroll; wage and income tax statements; and other accounting documents such as reports and statements. | 8 years<br><br>(10 years for fixed assets) |

Rev21  01/06/15                          Records Retention and Destruction Policy

**FRONTIER**

EMPLOYEE HANDBOOK                                                16.05  Pg. 4

| RETENTION CATEGORY | RETENTION PERIOD |
|---|---|
| AGREEMENTS<br><br>Includes Records related to contractual or other legally binding agreements between the Company and outside parties. | 5 years after agreement expires |
| COMMUNICATIONS<br><br>Includes Records related to press releases and media kits. | 5 years |
| CREDIT<br><br>Includes Records related to loan or credit agreements, note purchase agreements, bonds, debentures and indentures and related loan documentation. | 3 years after repayment or redemption |
| HUMAN RESOURCES<br><br>Includes Records related to personnel matters, employment contracts, payment of wages, leave Records, immigration Records, job evaluations, safety and accident reports, employment complaints, and company-sponsored benefit plans. | 7 years after the employee leaves the Company |
| LEGAL DOCUMENTS<br><br>Includes Records related to: legal compliance; deeds of ownership; federal, state or local tax returns; site or employee security reports; company's acquisition or divestitures of assets; Intellectual Property; and organizational and governance matters of the Company (including SEC filings, annual reports, articles of incorporation, board books or other presentations made to the Board of Directors, by-laws, stock Records, and minute books). | Permanent |

Rev21 01/06/15                    **Records Retention and Destruction Policy**

**FRONTIER**

| EMPLOYEE HANDBOOK | 16.05 Pg. 5 |

| RETENTION CATEGORY | RETENTION PERIOD |
| --- | --- |
| **MAINTENANCE RECORDS**<br><br>Includes aircraft maintenance and inspection records required to be preserved under lease agreements - in particular, sections of lease agreements addressing return conditions. | See 14 CFR 121.380 and applicable lease agreement |
| **REGULATORY DOCUMENTS**<br><br>Includes government filings, government correspondence, or Records required to be kept by the U.S. government or a state government. This includes Records related to the U.S. Department of Agriculture, U.S. Department of Labor, U.S. Internal Revenue Service, U.S. Federal Trade Commission, U.S. Food and Drug Administration, U.S. Department of Homeland Security and U.S. Department of Health. | Record requires a longer retention period |

**=FRONTIER**

EMPLOYEE HANDBOOK                                                16.05  Pg. 6

Page Intentionally
Left Blank

Rev21 01/06/15                    Records Retention and Destruction Policy

# FRONTIER

## Employee Handbook

**REVISION NUMBER: 27**                    **REVISION DATE: 06/11/15**

Instructions:
1. Insert the attached revision as instructed below.
   - Pages to be removed are listed in the left-hand column. A horizontal line in this column means no pages are to be removed.
   - Pages to be inserted are listed in the middle column. A horizontal line in this column means no pages are to be inserted.
   - A description of the revision is found in the right-hand column.
2. Fill in the Revision Date, Date Posted, and Posted By fields on the Record of Revisions page.

| REMOVE PAGES | ADD PAGES | REVISION HIGHLIGHTS |
|---|---|---|
| **Preface** | | |
| 00.00 Pg. 3, 4 | 00.00 Pg. 3, 4 | Revised List of Effective Pages |
| **Chapter 9- Safety and Health Program** | | |
| 09.05 Pgs. 5 - 6 | 09.05 Pgs. 5 - 6 | pg 5- no change<br>pg 6- Added "Flight Attendants" to two sentences in the first paragraph; revised language in 2nd paragraph to read "and the unions representing each work group" |

FRONTIER AIRLINES (R. BRIGHAM) - 0000397
0657



## Association of Flight Attendants-CWA AFL-CIO

# Frontier Airlines
# Flight Attendant Contract

# 2011-2016

FRONTIER AIRLINES (R. BRIGHAM) - 0000815

EXHIBIT 3

Appellate Case: 21-1335   Document: 010110614799   Date Filed: 12/06/2021   Page: 65

FRONTIER AIRLINES (R. BRIGHAM) - 0000816

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Article 1 | Recognition and Scope | 1 |
| Article 2 | Definitions | 3 |
| Article 3 | Compensation | 8 |
| Article 4 | Hours of Service and Crew Legality | 14 |
| Article 5 | Crew Planning and Crew Scheduling | 21 |
| Article 6 | Reserve Flight Attendants | 53 |
| Article 7 | Training | 68 |
| Article 8 | Sick Leave | 70 |
| Article 9 | Vacation | 75 |
| Article 10 | Seniority | 80 |
| Article 11 | Uniforms | 83 |
| Article 12 | Leaves of Absence | 84 |
| Article 13 | Vacancies | 91 |
| Article 14 | Furlough | 93 |
| Article 15 | Moving Expenses | 96 |
| Article 16 | Union Activities | 98 |
| Article 17 | Union Security and Dues Check-Off | 100 |
| Article 18 | Grievance Procedure | 105 |
| Article 19 | System Board of Adjustment | 109 |
| Article 20 | Missing, Internment, Hostage, or Prisoner of War Benefits | 112 |
| Article 21 | Drug and Alcohol Testing | 114 |
| Article 22 | Safety, Security, Health and EAP | 115 |
| Article 23 | General | 117 |
| Article 24 | Equity, Profit Sharing, and Wage Benefit Snapbacks | 121 |
| Article 25 | Duration | 123 |

FRONTIER AIRLINES (R. BRIGHAM) - 0000817

Appellate Case: 21-1335   Document: 010110614799   Date Filed: 12/06/2021   Page: 67

FRONTIER AIRLINES (R. BRIGHAM) - 0000818

# INDEX

**AFA, Association**
AFA Insignia ................................................................................ 99
Bulletin Board ............................................................................. 98
Definition .................................................................................... 3
Delinquent Dues .......................................................................... 100
Dues Check Off ........................................................................ 102-104
Dues Deduction .......................................................................... 104
Flight Pay for Union Business ........................................................ 99
New Hire .................................................................................... 98

**Alcohol Testing** ....................................... see Drug and Alcohol Testing

**Artificial Credit** ................................................................... 3,23,31,34

**Arbitration** ................................................................................... 2

**Available to Assign (AVA)** ...................................................... 45
Automated Bid System Error ...................................................... 26, 38
Credit Balancing ........................................................................ 31,34
Definition .................................................................................... 3
Double Coverage ........................................................................ 46
Eligible to Bid ............................................................................. 23
Non-Awarded Opentime ............................................................... 39
Open Time (DROP, SWAP) .......................................................... 33, 34
Pay .......................................................................................... 10
Rest Conflict .............................................................................. 17
Return from Leave ..................................................................... 84-85

**Base Transfer** ............................................... see Vacancies

**Bidding**
Aggressive Reserve ................................................................... 54
Bid Period Time Table ................................................................ 22
Eligible to bid ....................................................................... 22-23, 84, 88
Error ................................................................................. 26, 27, 35, 38
Initial Bid ............................................................................... 24-25
Mis-bid .................................................................................... 25
Mixed Line ............................................................................... 61
Pre-Award ............................................................................. 26-27
Results Page ............................................................................. 29
Training ................................................................................. 27-28
Vacancies ................................................................................ 91
Vacation ............................................................................... 76-78

**CDO (Stand-up)** ............................................................. 4, 28, 45

**Cancelled Flight(s)**
Commuter Corrective Action Protection ........................................ 118
Declared Irregular Ops ........................................................... 47-48
Pay Protection ...................................................................... 10-13
Per Diem ................................................................................ 9-10
Reassignment ...................................................................... 41-45

FRONTIER AIRLINES (R. BRIGHAM) - 0000819

**Charter Flights**.................................................................................................51-52
    Definition...........................................................................................................4
    Onboard Charter Coordinator.............................................................................52
    Premium Service................................................................................................52
    Reschedule........................................................................................................42
    Report Time   ..............................................................................................17-18
    Schedule Changes.............................................................................................21
    Scope...................................................................................................................1

**Check- In**
    Deadhead Deviation   .................................................................................49-50
    Per Diem......................................................................................................9-10
    Report Time...............................................................................................17-19

**COLA**.............................................................................................................85
    Definition  ........................................................................................................4
    Reduction in Force............................................................................................93
    Vacation Adjustments........................................................................................77

**Commuter, Flight Attendant (FAC)**
    Definition............................................................................................................5
    Policy ......................................................................................................117-119

**Company Business**
    Commuter Protection........................................................................................118
    Duty Limitations......................................................................................15, 26
    Eligible to Bid....................................................................................................22
    Jumpseat..........................................................................................................118
    Paid Time Off....................................................................................................10
    Pay......................................................................................................................12
    Pre-Award................................................................................................26-27, 29
    Reserve   ...................................................................................................55, 67
    Sick Leave Replenish..........................................................................................71
    Trips Dropped.....................................................................................................33
    Vacation Slides...................................................................................................29

**Compensation   (Article 3)**............................................................................8-13
    Automated Bid System Cost...........................................................................9-10
    Company Business.......................................................................................12-13
    Deadhead  (credit added to monthly block).......................................................12
    Expenses Away From Base/ Per Diem............................................................9-10
    Furlough ...........................................................................................................94
    Holiday… ...........................................................................................................11
    Hourly Rate......................................................................................................8-9
    Irregular Operations......................................................................................12-13
    Junior Assignment ............................................................................................12
    Missing/Hostage/POW Benefits ...............................................................112-113
    Moving Expenses.........................................................................................96-97
    Paid Time Off.....................................................................................................10
    Parking..............................................................................................................11
    Pay Dates .......................................................................................................8-9
    Reschedule/Reroute ....................................................................................10-11
    Sick....................................................................................................................73
    Training .............................................................................................................11
    Union Business..................................................................................................99

FRONTIER AIRLINES (R. BRIGHAM) - 0000820

**Contract / Agreement**
Definition................................................................. 3
Duration.................................................................123
Printing and Distribution............................................ 98
Recognition/Scope/Successorship................................ 1-2

**Credit Balancing**...................................................22, 31, 34, 63

**Crew Accommodations/Hotel**.................................. 20
Company Business..................................................... 12
Declared Irregular Ops............................................... 48
Out of Base.......................................................... 9, 20
Ready Reserve..........................................................56

**Crew Planning and Crew Scheduling  (Article 5)**......... 21-52
Bid Period Time Table..................................................22
Declared Irregular Ops............................................ 47-48
Displacement............................................................47
Double Covered.........................................................46
Equipment Downgrade..................................................47
Errors ...................................................26, 27, 35,38, 46
Notification of a Flight Attendant....................................44
Pre-Award...................................26-29, 64,65, 78, 79
Returning From Leave Mid Month (Table)............................24
Roles and Responsibilities............................................21
Schedule Changes/Reassignments.............................. 41-45
Trade Board Transfer.................................................. 38

**Daily Open-Time** .......................................**see  Open Time**

**Day(s) Off**
Definition................................................................. 4
Guaranteed – Lineholder............................................... 19
Guaranteed – Reserve............................................. 19, 53
Irregular Operations ...........................................12, 13, 15, 16
Schedule construction/adjustments .................16,17,19,25,33

**Deadhead (DH)** .....................................................48-51
Compensation – Lineholder ....................................... 12,13
Compensation – Reserve.............................................. 12
Definition................................................................. 4
Deviation ...........................................................49-51
Report time........................................................ 18,19
Reroute.................................................................. 43

**Declared Irregular Ops (DIO)** ..................................47-48

**Definitions** .......................................................... 3-7

**Discipline**...............................................**see Grievance Procedure**

**Displacement**
Flight...............................................................47, 120
Furlough..............................................................93, 94

**Diversion**...............................................................12

FRONTIER AIRLINES (R. BRIGHAM) - 0000821

**Double Covered**..................................................................................................46

**Drug and Alcohol Testing (Article 21)** ..............................................................114

**Dues**..................................................................see Union Securities and Dues Check Off

**Duty Periods/Duty Time**
    Definition.......................................................................................................4
    Limitations................................................................................................14-15
    End of Duty..........................................................................................15, 114
    Extension....................................................................................................15
    Reserve Release.........................................................................................57

**Emergency Leave**.............................................................................................4, 89

**Equity, Profit Sharing, and Wage Benefit Snapbacks (Article 24)**....................121-122
    Additional Provisions...................................................................................122
    Equity Participation......................................................................................121
    Profit Sharing Program ........................................................................121-122
    Snapbacks.................................................................................................122

**Equipment Downgrade**...................................................................................46-47

**Family Medical Leave (FMLA)**...........................................................................85
    Bidding...............................................................................................22, 33, 77
    Ineligible for/Exhaustion of............................................................................86
    Returning from Intermittent............................................................................84
    Sick Leave..................................................................................................87

**Funeral Leave**...........................................................................10, 55, 84, 88- 89

**Furlough (Article 14)**....................................................................................93-95
    Definition.......................................................................................................5
    Dues.........................................................................................................104
    Pay and Benefits.........................................................................................93
    Recall.........................................................................................................93
    Seniority................................................................................................80, 82
    Transfer to Other Department Prior to Furlough ......................................93-94
    Unused Accrued Vacation.................................................................64, 65, 75

**Grievance Procedure  (Article 18)**...............................................................105-108
    General......................................................................................................105
    Grievance Review Meetings .........................................................................108
    Investigations – Discipline and Discharge...............................................105-106
    Process..................................................................................................106-108
    Time Limits & Submissions............................................................................108

**Holiday**
    Pay.....................................................................................................11, 84, 88
    Recognized..................................................................................................11
    Snapback...................................................................................................122
    Staffing........................................................................................................36
    Verification of Illness..................................................................................73-74

**Hotel**................................................................................see Crew Accommodations

FRONTIER AIRLINES (R. BRIGHAM) - 0000822

**Irregular Ops**
Definition.................................................................................................................5
Duty Time Limitations....................................................................................... 13-15
Junior Assignment.................................................................................................. 40
Open Time Live ............................................................................................... 36-37
Pay ................................................................................................................. 12-13
Re-Route ........................................................................................................ 43-44
Reschedule............................................................................................................ 42
Reserve Trip from Opentime..........................................................................41, 58
Reserve Trip from Trade................................................................................41, 59
Rest Limitations.............................................................................. 15-17, 19, 28

**Job Share**
Definition...............................................................................................................4
Initial Bid........................................................................................................ 25-26
Sick Accrual.......................................................................................................... 70
Vacation Accrual................................................................................................... 76

**Junior Assignment**...................................................................................... 40-41
Definition ............................................................................................................... 5
Pay........................................................................................................................ 12

**Jury Duty** .......................................................................................................... 89
Pay..................................................................................................................10, 84
Pre-Award..............................................................................................................26

**Leaves of Absence  (Article 12)**.................................................................. 84-90
Company-Offered Leave........................................................................................85
Emergency Leave (EMR)........................................................................................89
Family Medical Leave............................................................................................ 85
Funeral Leave................................................................................................. 88-89
General Guidelines................................................................................................ 84
Jury Duty Leave.....................................................................................................89
Maternity Leave.............................................................................................. 85-86
Medical Leave................................................................................................. 86-87
Military Leave........................................................................................................ 90
On-the-Job Injury (OJI)................................................................................... 87-88
Personal Leave...................................................................................................... 88
Returning from Intermittent Leave of Absence............................................... 84-85
Returning from Leave of Absence........................................................................ 84

**Legalities**
Duty............................................................................................................... 14-15
Responsibility.......................................................................................... 14, 21, 26
Rest................................................................................................................ 15-17
Schedule Construction.......................................................................................... 19

**Low-Time Flight Attendants**......................................................................29-32
Definition................................................................................................................. 6
Returning from Leave Mid-Month..........................................................................24

**Management Rights**................................................................................... 120

**Maternity Leave**......................................................................................... 85-86
Uniform.................................................................................................................. 83

0666

FRONTIER AIRLINES (R. BRIGHAM) - 0000823

Medical Leave..................................................................................................86-87

Merger Protection.........................................................see Recognition and Scope

Military Leave.....................................................................................................90

Minimum Credit Requirements.......................................................................31, 34

Moving Expenses  (Article 15)......................................................................96-97
    Eligibility..................................................................................................96
    General.....................................................................................................97
    Moving Benefits...................................................................................96-97
    Moving Days.............................................................................................97

On-the-job Injury (OJI)
    Eligible to Bid...........................................................................................22
    Leave of Absence................................................................................87-88
    Medical Fees.............................................................................................72
    Returning to Work......................................................................................84
    Sick Call...................................................................................................72
    Vacation Bidding.......................................................................................77

Onboard Charter Coordinator (OCC)..................................................................52

Open Time ....................................................................................................32-36
    Errors...................................................................................................38-39
    Minimum Connection Time.................................................................. 33-54
    Minimum Credit Requirements............................................................34-35
    Non-Awarded Opentime Trips...................................................................39
    Open Time Live.................................................................................32, 35-36
    Open Time Split.................................................................................32, 36
    Sick bank replenishment.....................................................................70-71
    Timeline...............................................................................................35-36

Overtime
    Funeral Leave...........................................................................................88
    Hours over 86 ............................................................................................8
    Jury Duty..................................................................................................89
    Reserve..............................................................................................58-59
    Sick..........................................................................................................73

Pay/Pay Rate..................................................................see Compensation

Personal Leave.................................................................................................. 88

Positive Contact
    Furlough Recall.........................................................................................95
    Reroute....................................................................................................45
    Sick Calls.................................................................................................71

Pre-Award Periods ......................................................................................26-28

Probation/Probationary Flight Attendant........................................82, 100. 103, 104, 107

Ready Reserve.........................................................see Reserve Flight Attendants

0667

**Recognition and Scope  (Article 1)**......................................................................1-2
   Definitions..............................................................................................................2
   Expedited Arbitration............................................................................................2
   Merger Protection..................................................................................................2
   Recognition............................................................................................................1
   Scope.....................................................................................................................1
   Successor............................................................................................................1-2

**Recurrent Training  (RGS)**
   Pay........................................................................................................................ 11
   Pre-award....................................................................................................26-27, 29
   Requirements for Attending................................................................................ 68
   Reserves.........................................................................................................53, 55
   Rest requirements................................................................................................ 15
   Trading Dates.................................................................................................68-69

**Reduction in Force (RIF)**.........................................see COLA or Furlough

**Red-Eye**
   AVA....................................................................................................................... 45
   Definition..................................................................................................................6
   Reserve Assignments........................................................................................  56
   Spanning Bid Periods.....................................................................................28-29

**Report Time**
   Definition............................................................................................................... 6
   Limitations......................................................................................................17-19
   Reserve...........................................................................................................53-54
   To Aircraft............................................................................................................ 19

**Reserve Flight Attendants  (Article 6)**...................................................... 53-67
   Absence Proration Table .................................................................................. 53
   Aggressive Reserve Assignments  ............................................................54-55
   Codes..............................................................................................................66-67
   Contact and Report Time Guidelines  ..........................................................53-54
   General  ............................................................................................................. 65
   Mixed Lines.....................................................................................................61-65
   Ready Reserve (Airport Standby)..................................................................56-57
   Red-eye Assignments  ...................................................................................... 56
   Release From Duty  .......................................................................................57-58
   Reserve Codes...............................................................................................66-67
   Schedule Adjustments..................................................................................58-60
   Short Call List  ...............................................................................................60-61
   Trip Assignment Process ..............................................................................55-56
   Vacation...............................................................................................................65

**Rest Time**
   24 Hour............................................................................................................ 16-17
   Contact During...............................................................................................44,55
   Extended Duty...................................................................................................... 14
   Following Red-Eye (Reserve)............................................................................. 56
   In Base............................................................................................................ 15-16
   Out of Base.......................................................................................................... 15
   Scheduled............................................................................................................ 19
   Training..................................................................................................15, 28, 53

**Retirement Recognition** ..........................................................................119-120

FRONTIER AIRLINES (R. BRIGHAM) - 0000825

**Safety, Security, Health and EAP (Article 22)** ........................................................115-116
    Accident/Hijacking ........................................................... 116
    Air Safety, Health and Security Committee ........................ 115
    General ...................................................................... 115

**Schedule Changes/Reassignment**
    AVA ................................................................see Available to Assign
    Cancellation............................................................... 41
    Charter....................................................................... 51
    Pay.......................................................................10-11, 41
    Reroute............................................... 42-44, 46, 47, 50
    Reschedule.........................................41-42, 46, 47, 50

**Seniority (Article 10)** ................................................................80-82
    Accrual........................................................................ 80
    Definition....................................................................... 7
    Probation..................................................................... 82
    Protest of Seniority List ........................................ 81-82
    Seniority Rights Forfeited........................................ 82
    Transfers .............................................................. 80-81
    When Seniority Will Not Govern............................. 80

**Short Call**
    Definition....................................................................... 7
    Report Time...................................... 17, 18, 54, 60
    Short Call List........................................................ 60-61

**Sick Leave (Article 8)** ................................................... 70-74
    Accrual................................................32, 70, 84, 112
    Replenishment of Sick Bank.............................. 70-71
    Sick Calls............................................... 71-73, 93
    Pay Policy...........................................................10, 73
    Use of Sick Leave.......................................70, 86-87
    Verification of Illness/Injury ............................... 73-74

**Standing Bid**.............................................see Vacancies

**System Board of Adjustment (Article 19)** ..........................109-111
    Documents, Witnesses, Evidence and Representation................110
    Establishment..............................................................109
    Executive Session.......................................................110
    Expenses –Arbitrator/Witnesses/Hearing ................111
    Jurisdiction ...................................................109-110
    Location of Board Hearing.........................................110
    Membership................................................................109

**Trades**
    Definition....................................................................... 7
    Errors....................................................................38-39
    Mixed Line.......................................................59, 63-64
    Reserve.........................................................56, 58-59
    Rest Requirements...................................................... 16
    Scheduled Connect Time............................................. 33
    Timeline.............................................................22, 35-36
    TradeBoard...................................23, 26, 32, 37-38
    TradeBoard Transfer.................................................. 38

Training.................................................................................................28, 68-69
Vacation............................................................................................78, 85,89

**Training  (Article 7)**....................................................................................68-69
Bidding..............................................................................................27-28
Classroom Requirements.....................................................................68
Pay....................................................................................................11
Requirements for Attending Recurrent Training.....................................68
Rest..........................................................................................15, 28, 53
Trading Recurrent Training Date.....................................................68-69
Training Out of Base........................................................................20. 69

**Transition**...................................................................................................28

**Uniforms  (Article 11)**....................................................................................83
Credit and Maintenance......................................................................83
Purchase of Initial Uniform..................................................................83

**Union Activities   (Article 16)**......................................................................98-99
Committess and Insignia......................................................................99
Flight Pay Loss...................................................................................98
Leave...........................................................................................98-99
Union Business............................................10, 26, 27, 29, 55, 98, 99

**Union Security and Dues Check-Off  (Article 17)**....................................100-104
Agency Shop.....................................................................................100
Deduction.........................................................................................104
Delinquent.........................................................................................100
Dues Check-Off (DCO).................................................................102-104
Review Procedure........................................................................101-102
Strike or Work Stoppage.....................................................................104
Waived Dues......................................................................................104

**Vacancies  (Article 13)**.............................................................................91-92
Awarding and Assignment of Vacancies   ....................................91-92
Base Swaps........................................................................................92
Low Time...........................................................................................30
Notice of Vacancy..............................................................................91
Standing Bids.....................................................................................91

**Vacation  (Article 9)**.................................................................................75-79
Accrual...............................................................32, 75-76, 84, 112
Bid Periods........................................................................................78
Bidding.........................................................................................76-78
Credit...........................................................................................65, 76
During Leaves..................................................85, 86, 87, 88, 89, 90
General..............................................................................................75
Junior Assignment.............................................................................40
Mixed line......................................................................................64-65
Paid Time Off.....................................................................................10
Reserve..............................................................................................65
Slides...................................................................26, 27, 29, 78-79
Trades................................................................................................78
Transition Conflict..............................................................................28
Unused.............................................................................64, 65, 75, 94

**Willing to Fly**..................................................................................39, 40, 58, 119

FRONTIER AIRLINES (R. BRIGHAM) - 0000827

Appellate Case: 21-1335   Document: 010110614799   Date Filed: 12/06/2021   Page: 77

FRONTIER AIRLINES (R. BRIGHAM) - 0000828

## ARTICLE 25
### DURATION

A.    This Agreement will become effective on the date of signing and will continue in full force and effect until March 1, 2016 and will renew itself without change until each succeeding March 1 thereafter unless written notice of an intended change is served in accordance with Section 6, Title 1, of the Railway Labor Act, as amended, by either party hereto at least 30 days, but no more than 240 days, prior to March 1, 2016 or any March 1 of any subsequent year.

B.    Notwithstanding paragraph A. above, during the duration of this Agreement should Frontier Airlines, Inc. earn more than a 5% annual pretax profit, after payment of profit sharing payments, if any, for any two consecutive years, then the Association may reopen this Agreement for the limited purpose of negotiating over rates of pay, with the goal of achieving rates consistent with peer group (LCC) Flight Attendants.

C.    This Agreement shall be effective August 29, 2011 and shall remain in full force and effect as outlined by the terms of this Article.

IN WITNESS WHEREOF, the undersigned parties have signed this Agreement this ___14___ day of October, 2011.

FOR ASSOCIATION OF FLIGHT                    FOR FRONTIER AIRLINES, INC.
ATTENDANTS – CWA, AFL-CIO

_____          _____
Veda Shook                                                    Ron Henson
International President                               Vice President – Labor Relations

_____          _____
Erika Schweitzer                                         Jacalyn Peter
MEC President                                            Sr. Manager of Labor Relations

_____
Darol Glasscock
Negotiating Committee Member

_____
Theresa Owens
Negotiating Committee Member

_____
Suzanne Balzer
AFA-CWA Negotiator

FRONTIER AIRLINES (R. BRIGHAM) - 0000829

Appellate Case: 21-1335   Document: 010110614799   Date Filed: 12/06/2021   Page: 79

FRONTIER AIRLINES (R. BRIGHAM) - 0000830

Memorandum of Understanding
between
Association of Flight Attendants-CWA, AFL-CIO
and
Frontier Airlines, Inc.

### SCHEDULING AMENDMENTS AND CORRECTIONS

This agreement is made and entered into accordance with the provisions of the Railway Labor Act, as amended, by and between Frontier Airlines, Inc. ("Company") and the Flight Attendants in the service of Frontier Airlines, Inc., as represented by the Association of Flight Attendants-CWA (the "Association").

The parties agree to the following:

I.      CBA Article 5.W.2.h of the collective-bargaining agreement is amended as follows:

    h.      ~~If Crew Scheduling is unable to reach the Flight Attendant before he/she departs for the airport and he/she reports for the original departure time, his/her duty day begins at the originally scheduled report time.~~

II.     CBA Article 5.W.3.k.l.m of the collective-bargaining agreement will be amended to read:

    k.      When a Flight Attendant's originating trip of the day is delayed and he/she is notified prior to leaving for the airport, the trip report time will be modified by Crew Scheduling and the duty day will reflect the new report time.

    l.      If Crew Scheduling is unable to reach the Flight Attendant before he/she departs for the airport and he/she reports for the original departure time, his/her duty day begins at the originally scheduled report time.

    m.      A Reroute will be considered an irregular operation if the crew has reported for duty.

FOR:                                         FOR:

FRONTIER AIRLINES, INC.                      ASSOCIATION OF FLIGHT
                                             ATTENDANTS-CWA, AFL-CIO

Jacalyn Peter                                Kathie Weis
Director, Human Resources                    MEC President
and Labor Relations

CC: Toni Higgins
    Jay Trumble

0674

FRONTIER AIRLINES (R. BRIGHAM) - 0000831

**Letter of Agreement**
**between**
**Association of Flight Attendants-CWA, AFL-CIO**
**and**
**Frontier Airlines, Inc.**

**SCHEDULING AMENDMENTS AND CORRECTIONS**

This agreement is made and entered into accordance with the provisions of the Railway Labor Act, as amended, by and between Frontier Airlines, Inc. ("Company") and the Flight Attendants in the service of Frontier Airlines, Inc., as represented by the Association of Flight Attendants-CWA (the "Association").

The parties agree to the following:

I.      Article 4.C.2 of the collective-bargaining agreement is amended as follows:

| Scheduled Duty | Minimum Base Rest | Reducible to (Irregular ops) | Minimum Layover Rest | Reducible to (Irregular ops) |
|---|---|---|---|---|
| 14 hours or less | 10 hours | 9 hours | 9 hours | 8 hours* |
| Over 14 hours | 12 hours** | 10 hours** | 12 hours** | 10 hours** |
| All cases | 1 calendar day every 7 days | 24 hours every 7 days | 1 calendar day every 7 days | 24 hours every 7 days |

*Compensatory rest of 10 hours required to follow.
**Can be scheduled as reduced rest provided compensatory rest of 14 hours is scheduled.

II.     Article 4.B. of the collective-bargaining agreement is amended to read:

   11.      Provided that the duty period does not exceed sixteen (16) hours, a pairing may include a deadhead or limo back to domicile on the last day of the pairing.

         a.      Because the Flight Attendant(s) is no longer a required crew member, the rest requirements of 121.467 do not apply.

         b.      The Flight Attendant(s) will not be required to be available for reassignment, junior assignment or any company duty other than the deadhead or limo back to domicile.

         c.      If there are no seats available on the scheduled flight and the deadheading Flight Attendant does not want to occupy the jumpseat, the Company will provide a hotel room if a rest period is required prior to the next available flight.

         d.      The Flight Attendant(s) will have a minimum rest period of twelve (12) upon return to domicile

III.    Article 16.B.3. of the collective-bargaining agreement is amended to read:

         d      Company-Paid Flight Pay Loss

**0675**                              FRONTIER AIRLINES (R. BRIGHAM) - 0000832

> The Company will provide up to forty (40) hours of flight-pay loss per bid month to the Association for the purpose of compensating members of the Association's Scheduling Committee.  The MEC President shall be responsible for directing the Company how to apply such hours.  The hours will only be used for bid pairing and bid run purposes.  The Company and Union will mutually agree on participants.

IV.     Section I of this Sideletter of Agreement is a permanent change to the collective-bargaining agreement.  Sections II and III will apply only for the first three bid periods after the Date of Signing of this Agreement (*i.e.*, May, June and July 2012).  The parties may choose to extend the duration by written agreement.

FOR:

FRONTIER AIRLINES, INC.

_____ Date: 5-11-12

Jacalyn Peter
Director, Human Resources
and Labor Relations

FOR:

ASSOCIATION OF FLIGHT
ATTENDANTS-CWA, AFL-CIO

_____ Date: 5-11-12

Kathie Weis
MEC President

_____ Date: 6-11-12

Kimberley Chaput
AFA Staff Negotiator

_____ Date: 6-26-12

Veda M. Shook
International President

0676

FRONTIER AIRLINES (R. BRIGHAM) - 0000833

**LETTER OF AGREEMENT**
Between
**FRONTIER AIRLINES, INC.**
and the
**FLIGHT ATTENDANTS**
in the service of
**FRONTIER AIRLINES, INC.**
As represented by the
**ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO**

### CONTINUOUS DUTY OVERNIGHT (CDO) and FERRY FLIGHTS

This Letter of Agreement is made and entered into in accordance with the provisions of Title II of the Railway Labor Act, as amended, by and between Frontier Airlines, Inc. (the Company) and the Flight Attendants in the service of Frontier Airlines, Inc. as represented by the Association of Flight Attendants-CWA, AFL-CIO (the Union).

The undersigned parties agree as follows:

### CONTINUOUS DUTY OVERNIGHT (CDO)

1. As is past practice at Frontier Airlines, Inc., a Continuous Duty Overnight (CDO) is an overnight with less than contractually required minimum rest and will continue to be paid and credited at 6 hours or actual flight time, whichever is greater.

2. CBA Article 2.17. shall be amended to read as follows:

   **CDO (Continuous Duty Overnight/Standup)** – A scheduled duty period that begins in one Calendar Day and ends in the following Calendar Day, which includes an overnight stay out of Domicile that is scheduled for less than contractually required minimum rest.

### FERRY FLIGHTS

3. A Ferry Flight which positions an aircraft to another location and does not carry revenue passengers is considered a working segment and will receive full pay and credit.

Entered into this *30* day of July, 2012.

Frontier Airlines

Jacalyn Peter

AFA-CWA

Veda Shook

FRONTIER AIRLINES (R. BRIGHAM) - 0000834

Director, Human Resources and
Labor Relations

AFA-CWA International President

Kathie Weis
MEC President

Jay Trimble
Senior Staff Attorney

FRONTIER AIRLINES (R. BRIGHAM) - 0000835

# ARTICLE 1
## RECOGNITION AND SCOPE

A.   **RECOGNITION**

1.   In accordance with certification (R-7238) made by the National Mediation Board, the Company hereby recognizes the ASSOCIATION OF FLIGHT ATTENDANTS-CWA as the duly designated and authorized representative of the Flight Attendants in the employ of the Company for the purposes of the Railway Labor Act, as amended.

2.   The Company recognizes the right of Flight Attendants on the Frontier Flight Attendant System Seniority List to perform the Company's flying on the Company's aircraft as specified in this Agreement.

B.   **SCOPE**

1.   This Agreement covers all revenue flying performed on Company aircraft by Company Pilots.

2.   As used herein, the term "all revenue flying" will include, but not be limited to, all flying over the Company's present or future routes and extensions thereof, and any contract (government, military or commercial) flying, charter flying and any "wet-lease" flying performed by the Company

3.   All revenue flying covered by this Agreement will be performed by Flight Attendants whose names appear on the Frontier Airlines, Inc. Flight Attendant System Seniority Lists under the terms and conditions of the Agreement.

C.   **SUCCESSOR**

1.   The provisions of this Agreement will be binding upon any Successor.

2.   The Company will require any successor, assign, assignee, transferee, administrator, executor and/or trustee of the Company ("Successor") resulting from the transfer (in a single transaction or in multi-step transactions) to the Successor of the ownership and/or control of all or substantially all of the equity securities and/or assets of the Company (a "Successorship Transaction") to employ the Flight Attendants on the Frontier Airlines System Seniority List in accordance with the provisions of the Agreement and to assume and be bound by the Agreement.

3.   The Company and its Affiliates agree to give written notice of the terms of this Agreement to a proposed Successor, before concluding any Successorship Transaction. The Company agrees that no agreement or other legally binding commitment involving a

Page 1 of 123

Successorship Transaction will be signed or otherwise entered into, unless it is agreed in writing as a material and irrevocable condition of entering into, concluding and implementing the transaction, that this Agreement and recognition of the Association is assumed by the Successor(s), and that the Flight Attendants on the Frontier Airlines Flight Attendants' System Seniority List will be employed in accordance with the provisions of this Agreement. The Company will provide the Association with the details of, and material agreements related to, any such transaction in a timely manner.

D.   **MERGER PROTECTION**

In the event of a merger between the Company and another air carrier (i.e. the combination of all or substantially all the assets of the 2 carriers) where the pre-merger operations are integrated, the integration will be in accordance with Articles 2, 3, and 13 of the Labor Protective Provisions specified by the Civil Aeronautics Board in the Allegheny-Mohawk merger ("Allegheny-Mohawk LLP's"). The term merger as used herein means joint action by the 2 carriers whereby they unify, consolidate, merge, or pool in whole or in part their separate airline facilities or any of the operations or services previously performed by them through such separate facilities.

E.   **EXPEDITED ARBITRATION**

Disputes concerning alleged violation of this Article 1 will be resolved by final and binding arbitration on an expedited basis directly before the Flight Attendants System Board of Adjustment sitting with a neutral member. The dispute will be heard no later than thirty (30) days following the submission to the System Board and decided no later than sixty (60) days after submission, unless the parties agree otherwise in writing.

F.   **DEFINITIONS**

1.   "Company" means Frontier Airlines, Inc.

2.   "Control" means the ownership of more than 50% of the outstanding capital stock of an entity or voting securities representing more than 50% of the total voting power of outstanding securities then entitled to vote generally in the election of such entity's board of directors or other governing body.

FRONTIER AIRLINES (R. BRIGHAM) - 0000837

0680

## ARTICLE 2
## DEFINITIONS

1.      **Active** –The time a Flight Attendant is available for Duty Assignment or on paid time off.   A Flight Attendant on leave of absence, furlough, or another "no pay" status is not considered active, unless otherwise specified in this Agreement.

2.      **ADD –** To pick up additional trips in order to increase the value of a Flight Attendant's line or to replenish his/her sick bank.

3.      **Affiliate** – As used in this Agreement, the term "Affiliate" refers to: any Parent; any Entity that Controls or manages the Company or any Entity that the Company Controls or manages, or; any Entity under Common Control with the Company, or; any other corporate subsidiary, parent or division of the Company, a Parent or any other Affiliate.

4.      **Agreement (with capital "A")** – This Collective Bargaining Agreement (CBA) including any Letters of Agreement or Memorandum of Understanding between the Company and the Union.

5.      **Artificial Credit** – Unpaid credit used to adjust or build a schedule due to known absences.

6.      **Association** – See *Union*.

7.      **Automated Bid System** - A system that constructs monthly schedules for Flight Attendants based on his/her preference and seniority.

8.      **Available to Assign (AVA)** – A Flight Attendant available for assignment or reassignment per the terms of this Agreement.

9.      **Award** –An assignment given to a Flight Attendant based on his/her individual seniority and bid preferences, or as otherwise provided in this Agreement, as submitted through the Automated Bid System.

10.     **Base** - Any geographic locations designated by the Company where Flight Attendants are stationed and their duty assignments are scheduled to begin and end.

11.     **Bid –** Preferences submitted by a Flight Attendant through the Automated Bid System.

12.     **Bid Period** – A block of time, usually a calendar month, for which Flight Attendants bid and are awarded schedules.  Under no circumstances will a Bid Period be less than 30 days.

13.     **Block Hour/Block Time** – The period of time beginning when an aircraft's parking brake is released and the boarding door is closed and ending at Block In.

FRONTIER AIRLINES (R. BRIGHAM) - 0000838

14.  **Block In -** The time at which an aircraft reaches a destination (generally at a gate), the parking brake is set, and the boarding door is open.

15.  **Calendar day** – Beginning at 0001 and ending at 2400.

16.  **Call-out status** – A period of time when a Reserve Flight Attendant must be available to receive duty assignments from Crew Scheduling.

17.  **CDO (Continuous Duty Overnight/Standup)** - A scheduled duty period that begins in one Calendar Day and ends in the following Calendar Day, which includes an overnight stay out of Domicile that is scheduled for less than FAR required minimum rest.

18.  **Charter** – An offline or online revenue flight that is not a regularly scheduled flight.

19.  **COLA (Company Offered Leave of Absence)** – A voluntary unpaid leave of absence for a period of time as offered by the Company and awarded as described in Article 12.D.

20.  **Company** – Frontier Airlines, Inc.

21.  **Credit/Credit Time/Credit Hour** – The total amount of time added to a Flight Attendants schedule. Includes block time, company business, training, or any other time used for pay purposes.

22.  **Day off** - A calendar day off free of any duty.

23.  **Deadhead** – Transportation at Company direction to or from a duty assignment.

24.  **Debrief** – The time allowed for completing post flight duties.

25.  **Declared Irregular Operations (DIO)** – A short-term event including weather, airport closure, etc. that significantly disrupts or that is predicted to significantly disrupt at least 25% of the total daily system flight segments.

26.  **Domicile** – *See Base.*

27.  **DROP** – The removal of flight(s) from the Flight Attendant's schedule.

28.  **Duty Assignment-** The assignment of trip or other work by the Company.

29.  **Duty Period/Duty Time** – All time a Flight Attendant is on duty, commencing with report for duty and terminating when a Flight Attendant is released from duty.

30.  **Emergency Leave** – Unpaid time off for unavoidable serious circumstances up to 3 days with the approval of Inflight management.

31.  **Ferry** – A flight that does not transport revenue passengers used to reposition an aircraft to where it is needed.

FRONTIER AIRLINES (R. BRIGHAM) - 0000839

0682

32. **Flight Attendant** – An employee of the Company whose name appears on the Flight Attendant Seniority List as defined by Article 10 of this Agreement, and whose duties include the performance of inflight and ground cabin services.

33. **Flight Attendant Commuter (FAC)** – A Flight Attendant who lives in a different city other than his/her assigned base and commutes to base via air.

34. **Furlough** – The involuntary removal of a Flight Attendant from active duty as a Flight Attendant due to a reduction in force.

35. **GO** – Frontier Airlines, Inc., General Offices in Denver.

36. **Grievance** – A complaint against the Company or another department that alleges contract violations or unfair disciplinary action.

37. **Ground Time** – The amount of time between flight segments.

38. **International Flight** – Any flight operating to or from a city outside the United States of America.

39. **Irregular Operation** – Flights that are delayed or do not operate in accordance with the published schedule because of circumstances such as weather, maintenance, Air Traffic Control, acts of terror, security breaches or other similar circumstances.

40. **Job Share** – As described in Article 5.E.7., a position offered for one bid period when overstaffing occurs to allow Flight Attendants to work low-time hours.

41. **Junior Assignment** – An involuntary duty assignment given to a Flight Attendant on a scheduled day off.

42. **Layover** – An overnight rest period outside the Flight Attendant's base.

43. **Like Trip** – A replacement trip due to a cancellation, schedule change, or an administrative error. The replacement trip must fall within the following guidelines: Report time no more than 1 hour prior to the original report time and a release time of no more than 3 hours after the original release time for a "Reschedule" or 2 hours after the original release time for a "Reroute".

44. **Line** – A bid period award built in accordance with this Agreement that consists of assigned trips, days off, and pre-award requests.

45. **Line Holder** – A Flight Attendant who has been awarded a line.

46. **Longevity** – the period of time commencing on the Flight Attendant's date of hire (as a Flight Attendant) which shall begin on the first day a Flight Attendant is scheduled to and reports to the Company's Flight Attendant training program and continuing while the Flight Attendant is active, except where specifically stated otherwise in this Agreement.

FRONTIER AIRLINES (R. BRIGHAM) - 0000840

0683

47.   **Low-time** – As described in Article 5.I a position granted for a defined period of time to Flight Attendants who will be awarded between 37:30 and 58 hours and may work up to 59:59 hours per bid period.

48.   **Mixed Line** – A bid period award built in accordance with this Agreement that consists of trips, blocks of reserve days, days off, and pre-award requests.

49.   **Month -** A calendar month.

50.   **Open Time** – Trips or portions of trips that are unassigned or un-awarded with which Flight Attendants may ADD, or SWAP.

51.   **Positive Contact** – A live telephone or in-person conversation between a Flight Attendant and the Company.

52.   **Pre-award** – Request submitted prior to a bid period to accommodate pre-planned absences including, but not limited to: vacation, scheduled training, Company business, Union days, and jury duty.

53.   **Ready Reserve (RR)** – A period of time as defined in this Agreement when a Reserve Flight Attendant is required to be on reserve at his/her base airport or another base airport.

54.   **Red-eye** – Any Duty Period, other than a CDO, that reports prior to and releases after, or the entire Duty Period occurs between, 0100 and 0300 Local Base Time.

55.   **Release** – Time when a Flight Attendant is relieved from duty.

56.   **Report Time -** The time a Flight Attendant is scheduled to report for a flight assignment, training, or other Company-assigned duty.

57.   **Reroute -** A change to a trip after 1800 the day prior to initial trip report.

58.   **Reschedule** – A change to a trip before 1800 the day prior to an initial trip report.

59.   **Reserve** – A Flight Attendant who was awarded a reserve line.

60.   **Reserve day** – A calendar day when a Reserve Flight Attendant is available for duty assignment.

61.   **Reserve Line** – A bid period award built in accordance with work rules of this Agreement consisting of Reserve days, days off and pre-award requests.

62.   **RGS** – Recurrent Ground School code for the automated bid system.

63.   **RON** – Remain overnight.

64.   **Segment/Leg -** A flight between cities that may or may not terminate in base.

65. **Seniority/Seniority Date -** The length of service with the Company as a Flight Attendant.

66. **Short Call** – A notification from Crew Scheduling to a Reserve Flight Attendant that requires the Flight Attendant to report for a duty assignment no later than 2 hours from the time of the call.

67. **SWAP** – A trip swap with available Open Time via the automated bid system.

68. **Time Zones -** Unless otherwise specified all times listed in this agreement are Eastern Time.

69. **TRADE -** An exchange of flying, vacation or reserve days/duty periods (or other activities as allowed by this Agreement) between two Flight Attendants via the automated bid system.

70. **Transition -** The period of time when trips may overlap bid periods.

71. **Trip/Sequence/Pairing –** A segment or series of segments over one or more days that begin and end in a Flight Attendant's base.

72. **Union –** Association of Flight Attendants – CWA, AFL-CIO

73. **VAC** – Vacation code for the automated bid system.

74. **Vacancy** – Open Flight Attendant positions at a specified Base.

75. **Wet Lease** – An Agreement between the Company and another air carrier in which the Company provides aircraft(s) and crew(s) to the other air carrier.

FRONTIER AIRLINES (R. BRIGHAM) - 0000842
0685

## ARTICLE 3
## COMPENSATION

A.  **HOURLY RATE**

| Year of Service | Hourly Rate | Time and a Half Rate |
|---|---|---|
| 0-1 | $19.52 | $29.28 |
| 1-2 | $21.15 | $31.73 |
| 2-3 | $24.13 | $36.20 |
| 3-4 | $25.37 | $38.06 |
| 4-5 | $26.85 | $40.27 |
| 5-6 | $28.20 | $42.30 |
| 6-7 | $30.09 | $45.14 |
| 7-8 | $31.58 | $47.38 |
| 8-9 | $32.64 | $48.96 |
| 9-10 | $34.05 | $51.07 |
| 10-11 | $35.08 | $52.62 |
| 11-12 | $36.13 | $54.19 |
| 12-13 | $37.21 | $55.82 |

1.  Flight Attendant pay is based on the hourly rates listed above.

2.  Flight Attendant hourly rate is paid for hours flown plus credit time per bid period. Schedules will be evaluated upon completion of the bid period.

3.  Flight Attendants will be paid actual or scheduled block time, whichever is greater, for segments flown.

4.  Flight Attendants will be paid at their hourly rate for total bid period block hours up to 86 hours.

5.  Flight Attendants will be paid 1.5 times the hourly rate for total bid period block hours over 86.

6.  Time may be dropped to a minimum of 60 hours, coverage permitting. Time may not be dropped below 60 hours unless approved by Inflight Management, or otherwise provided for by this Agreement. Hours dropped by a Flight Attendant will not be paid.

7.  Flight Attendants on Reserve will be paid based on a 75-hour guarantee.

8.  Flight Attendant Line Holders will be paid based on hours flown, except as otherwise provided by this Agreement. Additional credit time will be paid at the applicable rate.

9.  There is no line guarantee in effect for Line Holders.

10.  Flight Attendants will be paid on the 5th and 20th of each month.

FRONTIER AIRLINES (R. BRIGHAM) - 0000843

0686

(If the 5th or 20th falls on a Saturday, Flight Attendants will be paid on the Friday before. If the 5th or the 20th falls on a Sunday, Flight Attendants will be paid on the Monday after). Any unforeseen circumstances that would cause a change to this policy will be published in a memo.

11.   The check on the 5th of the month includes 37:30 hours plus per diem for the previous bid period. The check on the 20th includes the remainder of the hours flown in the previous bid period plus any adjustments from the previous bid period (e.g., over time, sick, vacation).

B.   **AUTOMATED BID SYSTEM COST**

In order to access the Automated Bid System services from a personal computer, a Flight Attendant must submit a payroll deduction form to payroll allowing $4.00 per pay period to be deducted from his/her paycheck for the Automated Bid System expenses. To access the Automated Bid System services at no charge, a Flight Attendant must use a Company authorized computer either at DIA operations or at the GO.

C.   **EXPENSES AWAY FROM BASE (PER DIEM)**

1.   The Company will pay directly for any hotel room required away from base.

2.   Per diem will be paid from 1 hour prior to scheduled departure at the beginning of the trip to 15 minutes after actual or scheduled block in at the end of the trip, whichever is greater. For international flights, per diem ends 30 minutes after the actual or scheduled block-in at the end of the trip, whichever is greater.

3.   Per diem stops at block-in plus 15 when there is a cancellation of a flight while in the base and resumes the next day at check-in when the trip is continued.

4.   Per diem runs continuous when the cancellation is at an outstation until block-in plus 15 at base. Per diem runs continuous when there is cancellation in the base but the rest of the trip continues that same day.

**Example:** Trip comes in to DEN from OMA, and next segment is DEN/ABQ and back to DEN then on to MDW for a RON. The ABQ portion gets cancelled, but the MDW portion is scheduled to fly. Per diem continues without interruption.

5.   Per diem stops at block-in plus 15 when a flight is cancelled in base and Crew Scheduling releases the Flight Attendant(s) until a specified time later that same day, a legal rest period, whereupon the Flight Attendant(s) will be rescheduled for another flight later that day.

Page 9 of 123

**Example:** Trip comes in to DEN from OMA and has SFO turn. The SFO turn is cancelled. The crew is released by Crew Scheduling for a specified period of time and rescheduled to return and do an LAX turn later that day. Per diem stops after OMA at block-in plus 15 and resumes at check-in for the rescheduled flight(s).

6.  Any time a cancellation leads to a release from duty, per diem is not paid.

7.  A Flight Attendant required to be out of his/her base for Company-assigned business will be paid per diem for the actual hours spent away from base.

8.  Per diem will be paid at $1.85 per hour.

D.  **PAID TIME OFF**

1.  Company designated absences will be paid at hourly straight time rate according to established credit values and applies to 60-hour minimum or job share minimum: Vacation, Company Business, Union Business, Funeral Leave, Recurrent Training, Jury Duty, and any other absence approved for protection by management.

2.  Flight Attendants required to testify in court, on scheduled workdays, on behalf of Frontier Airlines will be pay protected for the court day according to section K below.

3.  Flight Attendants on paid time off or approved leave may not pick up trips during these absences except for awarded vacation.

4.  Sick leave is pay protected for all dropped time if the Flight Attendant has sick time accrued, unless the dropped time was Open Time picked up during an awarded vacation period. Sick time is paid at hourly straight time rate.

5.  Reserves are not given credit time for cancellations.

E.  **RESCHEDULE/REROUTE PAY**

1.  In the event that the Company cancels or revises a flight schedule for operational or marketing purposes, the Flight Attendant will be subject to reassignment per "Reschedule" or "Reroute" parameters as set forth in this Agreement.

2.  Any changes prior to 1800 (base local time) the day before the original flight will be coded as AVA on the Flight Attendant's schedule. The AVA code does not count toward premium pay.

3.  If the change occurs after 1800 (base local time) the day prior to the original flight, then the change will be coded as PAY and this time will be credited toward premium pay.

4.  Changes may occur either prior to original trip start or during mid-

sequence after a trip has already begun.

F.   **PARKING**

   1.   The Company will provide the cost of parking in the Flight Attendant's home base. The Company will not be required to pay for parking at more than 1 location per Flight Attendant.

   2.   Paying for parking at a location other than the Flight Attendant's base will be required only when such employee parking is available and only to the extent of what the parking would have cost at the Flight Attendant's base.

G.   **TRAINING PAY**

   1.   Flight Attendants attending recurrent training will be paid 1 hour of flight pay for every 2 hours in class. Flight Attendants will be in class for 9 hours to equal 4:30 hours pay. In addition, Flight Attendants will be paid 1:30 hours for the 3-hour computer-based training.

   2.   All non-classroom recurrent training completed throughout the year will be paid during the month the Flight Attendant attends his/her training.

   3.   Additional required training during the year will be paid at 1 flight hour per 2 hours training, up to a maximum of 4 pay hours per day.

H.   **HOLIDAY PAY**

   1.   Frontier recognizes three premium paid Company holidays per year: Memorial Day, Thanksgiving Day, and Christmas Day. Flight Attendants who fly on these holidays will receive time and a half pay (or double time if flying over 86 hours for the bid period) for those segments of which any portion is actually flown on the holiday. Holiday pay is calculated separately from other flight time during the bid period and does not apply towards monthly total.

   2.   In addition to premium pay, a Flight Attendant may purchase up to two round-trip Buddy Passes for each of the above-mentioned holidays the Flight Attendant was on duty.

   3.   Frontier also recognizes four non-premium paid Company holidays per year: New Year's Day, Independence Day, Labor Day, and the Friday following Thanksgiving Day. Flight Attendants who are working (including scheduled RON, flying, or scheduled Ready Reserve shift) on these non-paid holidays will receive free of charge two round-trip Buddy Passes. Passes will be good for 1 year from the date of that holiday.

   4.   Cancelled flights on the holiday are paid at the hourly straight time rate.

FRONTIER AIRLINES (R. BRIGHAM) - 0000846

0689

I.   **JUNIOR ASSIGNMENT PAY**

    1.    Flight Attendants who are junior assigned will be paid time and a half (1.5) of their hourly rate per scheduled block hour of the assigned trip.

    2.    Junior assignment pay is calculated separately from other flight time during the bid period and does not apply towards monthly total.

J.   **DEADHEAD PAY (CREDIT ADDED TO MONTHLY BLOCK TOTAL)**

    1.    Deadhead pay is 50% of the actual or scheduled block hours, whichever is greater. Reserve Flight Attendants do not receive deadhead pay unless their monthly flight time is over 75 hours.

    2.    While deadheading, Flight Attendants will receive free DIRECTV.

K.   **COMPANY BUSINESS PAY**

    1.    Company Business is considered a duty assignment other than training or flight-related functions. Company Business would include administrative meetings not disciplinary in nature, Company sponsored team meetings, or any other Company required duty that is not voluntary.

    2.    Flight Attendants removed on scheduled workdays will be pay protected for scheduled flight hours dropped and paid at hourly straight time rate.

    3.    Flight Attendants assigned Company Business on a scheduled day off will be paid 1 hour of flight pay for every 2 hours worked.

    4.    Per Diem is not paid for Company Business in base. A Flight Attendant required to be out of his/her base for Company Business will be paid per diem for the actual hours spent away from base unless Company pays for meals and hotel.

L.   **IRREGULAR OPERATIONS PAY**

    1.    An irregular operation occurs when there is an unforeseen operational stoppage, delay, or disruption of service. This will include extended aircraft mechanical conditions that require cancellations, delays, and/or diversions; extreme weather requiring cancellation, delays, and/or diversions; and any act of terror or security breaches causing cancellation, delay, and/or diversion. In such cases the Flight Attendant will be pay protected for any or all cancelled trips. If the Flight Attendant is subsequently reassigned, he/she will be paid for cancelled flight or reassigned trip, whichever is greater.

    2.    If such cancellations cause the Flight Attendant to remain at an outstation into a day off for an entire calendar day, the Flight Attendant will be compensated with 4 hours of credited time for

FRONTIER AIRLINES (R. BRIGHAM) - 0000847
0690

that calendar day in addition to the time for the cancelled segment(s). The Flight Attendant will also receive pay credit for the flight home once he/she is rerouted to return to base.

**Example:** A Flight Attendant is on a 4 day trip. On day 4 the last leg from LAS to DEN cancels due to a blizzard in DEN and the Flight Attendant is not able to return to base until day 6. In this example, pay credit is received for the cancelled leg on day 4, a pay credit of 4 hours is received for the calendar day on day 5, and pay credit for the return flight home is received for day 6. The value of the pay credit on day 6 will be determined based on whether the Flight Attendant works or deadheads on the flight (50% for deadheading).

3.   A request for the 4 hours of compensation must be submitted in writing to the Payroll by the last calendar day of the month in which the irregular operation occurred.

4.   If the Flight Attendant returns home on a day off, he/she will be credited for the scheduled or actual flying time, whichever is greater. If he/she deadheads home he/she will receive deadhead credit.

5.   Any pay issues not submitted by the Flight Attendant to the Payroll by the last day of the fiscal year will mean the forfeit of any such pay.

FRONTIER AIRLINES (R. BRIGHAM) - 0000848

0691

# ARTICLE 4
## HOURS OF SERVICE AND CREW LEGALITY

A.   **POLICY**

Crew legality as defined by the FARs is the shared responsibility between the Flight Attendant and the Company's Crew Scheduling Department. It is the Flight Attendant's responsibility to bring any legality problems he/she is aware of to the Company's attention. Crew Scheduling will make the final determination of whether a Flight Attendant is legal to fly and will assume responsibility for the decision.

B.   **DUTY TIME LIMITATIONS**

1.   A Flight Attendant will be scheduled in accordance with Federal Aviation Regulations (FARs).

2.   A Flight Attendant will not be scheduled for more than 14 hours on duty for regularly scheduled flying. A scheduled duty period may be scheduled to exceed 14 hours by increasing the number of Flight Attendants on the crew (FAR 121.467).

3.   A Flight Attendant is not considered to be scheduled on duty in excess of duty period limitations if the flights to which the Flight Attendant is assigned are scheduled and normally terminate within the limitations but due to circumstances beyond the control of the certificate holder, such as adverse weather conditions, are not at the time of departure expected to reach their destination within the scheduled time (FAR 121.467).

4.   Irregular operations may cause the duty day to be extended beyond scheduled hours, but the duty day will not exceed 16 hours. Exception: may exceed 16 hours enroute if the flight can reasonably expect to depart the gate prior to 16 hours in order to return a crew to base and to avoid a cancellation at an outstation. If a Flight Attendant's duty day exceeds 16 hours, the following rest period will be increased per the table below based upon the length of the actual duty day. It will be the Flight Attendant's responsibility to contact Crew Scheduling within 2 hours of duty release to request that his/her additional rest time is scheduled and any required adjustments to the next duty are made. Any trip segment that they may be unable to fly as a result of the additional duty time and rest period will be pay protected by the company. The Flight Attendant will pick up any remaining segments after the additional base rest is completed.

5.   If Actual Duty exceeds 16 hours, minimum layover rest will be 12 hours and reducible to 10 hours. . If rest is reduced, compensatory rest of 14 hours must be provided.

FRONTIER AIRLINES (R. BRIGHAM) - 0000849
0692

| Actual Duty Day | Base Rest |
|---|---|
| 16:01 - 17:00 Hours | 12 |
| 17:01 - 18:00 Hours | 14 |
| 18:01 - 19:00 Hours | 16 |
| 19:01 - 20:00 Hours | 18 |
| Over 20:01 Hours | 20 |

6.  A Flight Attendant will be replaced in base upon reaching 12 hours on duty unless the remaining flight legs can be completed within 14 hours. Crew scheduling will evaluate the Flight Attendant's duty time.

7.  A required training session, Company Business, or an additional required preflight training briefing before or after a trip will be treated as an extension of the duty period and subject to established duty limits and rest requirements. A day of Recurrent Training (8 hours or more) must be followed by a normal 10-hour rest before the next flight assignment.

8.  It is the Flight Attendant's responsibility to notify Crew Scheduling of any work-related circumstances (e.g., excessive hours due to irregular operations) that may impair his/her ability to perform required duties. If a Flight Attendant is removed from duty due to fatigue, he/she will not be credited (paid) for the flight hours removed.

9.  For domestic flights, a Flight Attendant's duty period ends 15 minutes after scheduled block-in or actual block-in, whichever is greater.

10.  For international flights, a Flight Attendant's duty period ends 30 minutes after scheduled block-in or actual block-in, whichever is greater.

C.  **REST LIMITATIONS**

1.  A Flight Attendant's rest periods begin when he/she is released from duty and end at the next report time.

2.  Rest period minimums are required as per the following:

| Scheduled Duty | Minimum Base Rest | Reducible to (Irregular ops) | Minimum Layover Rest | Reducible to (Irregular ops) |
|---|---|---|---|---|
| Under 14 hours | 10 hours | 9 hours | 9 hours | 8 hours* |
| 14 hours or longer | 12 hours** | 10 hours** | 12 hours** | 10 hours** |
| All cases | 1 calendar day every 7 days | 24 hours every 7 days | 1 calendar day every 7 days | 24 hours every 7 days |

*Compensatory rest of 10 hours required to follow.*
**Can be scheduled as reduced rest provided compensatory rest of 14 hours is scheduled.*

FRONTIER AIRLINES (R. BRIGHAM) - 0000850

0693

3.   A Flight Attendant must be given a minimum scheduled rest period of 9 consecutive hours between duty at outstations and 10 hours of rest between duty periods in base. In an irregular operation, Crew Scheduling can reduce the 9-hour rest period in an outstation to 8 hours rest between duty periods, provided compensatory rest does not apply. In an irregular operation, Crew Scheduling can reduce the 10-hour rest period in base to 9 consecutive hours between duty periods, provided compensatory rest does not apply

4.   A minimum reduced rest period of 8 hours may be scheduled at a layover city to accommodate the daylight savings time change transition.

5.   When a crew member is on legal rest at a layover station, and Crew Scheduling must contact them for a schedule adjustment, they will make every effort to do so in the first 2 hours or the last 2 hours of the rest period.

6.   Except as otherwise provided by this Agreement, a Flight Attendant must receive at least 10 hours rest in base between each trip (including ADD/SWAP/TRADE) and/or 8 hour or longer training event. A Flight Attendant may not waive this requirement.

7.   The required 24-hour rest period will be 1 calendar day at base. As a result of irregular operations, a rest period beginning no later than 0200 to the following 12 midnight will meet the 1 calendar day requirement. At no time will a Flight Attendant be scheduled for less than the FAA-mandated 24 hour break in any seven consecutive days.

8.   For the definition set forth in paragraph 7 above to apply, the following conditions must be met:

   a.   Release time on the 6th day is scheduled prior to midnight;

   b.   Because of a delay (irregular ops), the Flight Attendant returns to base after midnight into a scheduled day off;

   c.   The Flight Attendant is released from duty no later than 0200. If released after 0200, another calendar day off will be given prior to the next trip report and will be pay protected. The trip may be split to provide the calendar day;

   d.   The Flight Attendant has a consecutive 24-hour break within 7 consecutive days.

9.   A Flight Attendant will be scheduled with a minimum of 1 calendar day off in base during every 7-day period. A Flight Attendant MAY

FRONTIER AIRLINES (R. BRIGHAM) - 0000851

0694

NOT request to use a 24-hour break in a layover station to meet the 24/7 FAR rest requirement.

10.  In an irregular operation, Crew Scheduling may use a 24-hour break, in or out of base, to satisfy the 24/7 rest requirement.

11.  Reduced rest cannot be scheduled below any applicable compensatory rest.

12.  Base trip report time is scheduled for 60 minutes prior to departure time of the first segment and cannot be reduced to accommodate rest requirements. Report time for a Reserve on a short call-out may be adjusted.

13.  A Flight Attendant in an irregular operation that results in a base rest below the minimum 9 hours or less than 24 hours rest in a 7-day period will be required to contact Crew Scheduling to ensure proper rest is scheduled. To resolve the rest conflict:

   a.  Crew Scheduling will remove and release the Flight Attendant from the least amount of time in the trip that will allow the reduced rest requirement to be met.

   b.  If no portion of the trip can be removed to ensure legal rest, Crew Scheduling will remove the trip and assign the Flight Attendant to an alternate trip per reassignment parameters. If no trip is available, Crew Scheduling will release the Flight Attendant from the first day and assign Available per AVA rules for any subsequent day(s).

   c.  The Flight Attendant may request to be removed from the trip and waive the credit. Release will be determined by Crew Scheduling and be based upon adequate reserve staffing.

14.  While on a RON no Flight Attendant may board a flight for personal reasons with the intent to leave the assigned RON city without prior permission granted from Crew Scheduling. A captain's permission to travel from the RON city is not a substitute for Crew Scheduling approval. In all cases, the Captain must be given immediate contact information (e.g., cell phone number) should the Flight Attendant choose to RON in a location other than the crew hotel.

15.  In the event a Flight Attendant intentionally builds a schedule with a software system in use by the Company resulting in less than a calendar day off in 7 days, the Company will remove flying from the Flight Attendant's schedule to ensure a calendar day off and the Flight Attendant will not be pay protected for such flying.

D.  **REPORT TIME LIMITATIONS**

   1.  Report time is not scheduled less than 60 minutes prior to

FRONTIER AIRLINES (R. BRIGHAM) - 0000852

departure in base. Report time may be increased for charter operations in base and layover stations.

2.     For trip report in base, Flight Attendant must check in on Company-provided computers in designated airport location(s). Under no circumstances is another employee allowed to check in for a crewmember (exception being Crew Scheduling). Doing so may result in corrective action.

3.     All Flight Attendants will be provided with an individual Company log-on and check-in ability. It is the Flight Attendant's responsibility to retain his/her log-on once established. If log-on or password is lost, the Flight Attendant should contact IT help desk with sufficient time prior to scheduled check-in should there be difficulties with the Flight Attendant password or system log-on.

4.     If the computer system is down the Flight Attendant will need to contact Crew Scheduling to check-in.

5.     In domestic layover station, report time to the gate is not less than 45 minutes prior to departure.

6.     In an international layover station, report time to the ticket counter is not less than 1 hour 15 minutes prior to departure.

7.     Report time may be reduced to allow for adequate crew rest in a layover station per this Agreement. At no time will a reduced report time infringe upon the rest period required by FARs.

8.     A line-holding Flight Attendant who is unable to report for work due to illness or off-duty injury must notify Crew Scheduling at least 2 hours prior to trip report time.

9.     A Reserve Flight Attendant called out for a flight assignment with a 2-hour short call must report within the required time from the initial call.

10.    A Flight Attendant who checks in less than 20 minutes after report time will remain scheduled to work the trip.

11.    A Flight Attendant who checks in 20 minutes or more after trip report time may be placed by Crew Scheduling back on the missed portion of his/her trip with the concurrence of Inflight management and the Flight Attendant. This decision will be based on factors such as available replacement staffing or possible delay impact. The Flight Attendant will only be paid for the portion of the trip he/she works.

12.    A Flight Attendant scheduled to deadhead from base will report in CrewTrac no later than 60 minutes prior to departure and will report to the gate no later than 30 minutes prior to departure.

FRONTIER AIRLINES (R. BRIGHAM) - 0000853

0696

13.   A Flight Attendant scheduled to deadhead from an outstation will report to the gate no later than 30 minutes prior to departure.

E.   **REPORT TIME TO THE AIRCRAFT**

1.   Report time to the aircraft is 45 minutes prior to departure or as soon as the aircraft arrives at the gate if less than 45 minutes.

2.   During a turn of 45 minutes or less, Flight Attendants should remain on the aircraft to prevent boarding/departure delays.

3.   Flight Attendants reporting to the aircraft less than 30 minutes prior to departure may be replaced.

4.   Flight Attendants arriving late on inbound flights should report to the new aircraft as soon as possible upon arrival.

F.   **RULES GOVERNING PAIRING AND SCHEDULE CONSTRUCTION**

1.   A minimum of 11 days free of duty will be scheduled in every Reserve line.

2.   A minimum of 10 days free of duty will be scheduled in every line constructed in the Automated Bid System.

3.   A Flight Attendant will not be scheduled for more than 14 hours on duty for regularly scheduled flying.

4.   Scheduled hours on duty may be extended by increasing the number of Flight Attendants on the crew (FAR 121.467)

5.   Crew Planning will build trips with a minimum of 9 consecutive hours of scheduled rest at outstations. To accommodate the change from Standard Time to Daylight Savings Time, trips that would otherwise be scheduled for normal rest may be scheduled with a minimum of 8 consecutive hours of scheduled rest at outstations on the overnight of the daylight savings time change.

6.   The Automated Bid System will not create lines with less than 10 consecutive hours of rest at base.

7.   In an irregular operation, Crew Scheduling may choose to use a 24-hour break in or out of base to satisfy the 24/7 rest requirement.

8.   For purposes of the Automated Bid System, a calendar day off in base during every 7-day period will be required. A Flight Attendant may not waive this requirement

FRONTIER AIRLINES (R. BRIGHAM) - 0000854
0697

G.    **CREW ACCOMMODATIONS**

1.    For any Flight Attendant who has more than 4 hours scheduled
      ground time at a layover station, he/she will be provided an
      individual hotel room by the Company. This includes while a Flight
      Attendant is in training away from their base. Hotel rooms will not
      be provided at base.

2.    Flight Attendants on the Hotel Committee will work with the
      Company and the Pilot Hotel Committee to select hotels for
      layover stations that can best meet the needs of the crew as well
      as the financial needs of the Company. The Company makes the
      final decision regarding hotel decisions with crew member input.

FRONTIER AIRLINES (R. BRIGHAM) - 0000855
0698

## ARTICLE 5
## CREW PLANNING AND CREW SCHEDULING

A.   **GENERAL ITEMS**

  1.   Crew Scheduling is responsible for daily operational support. Responsibilities include but are not limited to:

   a.   Operational reassignments

   b.   Reserve assignments

   c.   Legality monitoring

   d.   Processing sick calls

   e.   Ensure coverage of daily flight schedule

   f.   Irregular operations

  2.   Crew Scheduling is available 24 hours per day, 7 days a week.

  3.   Crew Planning is responsible for administrative support. Responsibilities include but are not limited to:

   a.   Preferential bidding

   b.   Automated bidding functions including Open Time and trade board bidding Vacation award and vacation slide

   c.   Administrative processing of Pre-awarded Absences including Training, Committee Meetings

   d.   Building Reserve lines for new hire Flight Attendants upon completion of training

   e.   Post-bid marketing and charter changes

  4.   All telephone conversations between Crew Scheduling and Flight Attendants will be recorded. Recordings will be kept for a minimum of 60 days. Access to recorded conversations will be limited to Inflight Management and Crew Scheduling/Crew Planning management. In the event of a dispute, a Flight Attendant and/or the Union may submit a written request to the Company to review any applicable telephone recordings. The review will be conducted in the presence of the Flight Attendant and/or Union representative, Inflight and Crew Scheduling/Crew Planning management.

FRONTIER AIRLINES (R. BRIGHAM) - 0000856
0699

B.    **BID PERIOD TIME TABLE (EASTERN TIME)**

*NOTE: All times will be considered Local Headquarters Time (IND) unless otherwise noted*

| Date | Time | Event |
|---|---|---|
| 4th day of the month | 1400 | Pre-award bid period closes. |
| No later than the 5th day of the month | 1400 | New base awards posted |
| No later than the 6th of the month | 1400 | Monthly bids open and are posted (including pre-awards) |
| 7th day of the month | 1400 | Credit Balancing starts - Company may adjust schedules below 60 credit hours |
| 8th day of the month | 1400 | Credit Balancing ends |
| 11th day of the month | 1700 | Medical release is required no later than 1700 to bid for the upcoming bid period. |
| 12th day of the month | 1400 | Bids close. |
| 16th day of the month | 1400 | Bid awards are posted. |
| 16th day of the month | 1600 | Reserve mixed line bidding begins |
| 17th day of the month | 1400 | View schedule in the Automated Bid System. Reserve and Mixed lines close. |
| 18th day of the month | 1400 | Reserve and Mixed Lines posted in the Automated Bid System. Recurrent Training trades open. |
| 18th day of the month | 1400 | TradeBoard opens for Line Holders and Reserves – including split trip trades. |
| 19th day of the month | 1400 | Daily Open Time begins - DROP/ SWAP/ADD only – no splits |
| 21st day of the month | 1400 | Base vacancy bid opens |
| 22nd day of the month | 1400 | Pre-award bid period opens. |
| 26th day of the month | 1400 | Daily Open Time Split and TradeBoard Split for the current bid period close. Daily Open Time Split for the new bid period begins. |
| 28th day of the month | 1400 | Base vacancy bid closes |

*NOTE: To prevent any conflict with the preferential bidding process, trip trade and Open Time requests to ADD or SWAP duty periods on the Flight Attendant's schedule for the last 6 days of the bid period will not be allowed between 1100 on the 10th and 1400 on the 18th.*

C.    **ELIGIBLE TO BID**

   1.    Flight Attendants are considered eligible to bid unless they have been granted Company approved leaves (LOA, MED, FMLA, OJI, etc.) or removed for Company Business.

   2.    Flight Attendants who are ineligible to bid due to any medical

FRONTIER AIRLINES (R. BRIGHAM) - 0000857
0700

reason must submit a doctor's release prior to being considered eligible to bid. The release must be from the same doctor who removed the Flight Attendant from flight status or from a Frontier-designated doctor.

3. The doctor's release must be received no later than 1700 on the 11th of the month prior to the bid period, releasing the Flight Attendant back to work no later than the 15th day of the bid period.

   *NOTE: Artificial credit of 2:30 hours per day will help establish the bid award block hours. Flight Attendants are not paid for Artificial credit.*

4. Flight Attendants who receive a doctor's release after the 11th at 1700 will be considered available for flight status and will be expected to fly no less than the number of hours designated by the following chart.

5. The Flight Attendant must bid for Open Time on the Automated Bid System or contact Crew Scheduling to be assigned an AVA schedule of a minimum of 4 days per week (credit value 4 hours a day if he/she doesn't fly). Time picked up through the TradeBoard does not count toward the minimum required hours.

6. Flight Attendants whose return requires a re-entry drug test may not pick up trips from Daily Open Time Live or the Automated Bid System TradeBoard prior to clearance.

7. Reserves who return from leave will be given a Reserve schedule based on remaining days in the month and follow all Reserve rules. For the purposes of this paragraph a Reserve is any Flight Attendant who would have held a Reserve line if they had been eligible to bid for the applicable bid period.

FRONTIER AIRLINES (R. BRIGHAM) - 0000858

0701

D.    **RETURNING FROM LEAVE MID MONTH**

| Remaining Days | Required Minimum Hours for Full-time | Required Minimum Hours for Low-time |
|---|---|---|
| 1 | 2:06 | 1:21 |
| 2 | 4:18 | 2:41 |
| 3 | 6:24 | 4:01 |
| 4 | 8:36 | 5:22 |
| 5 | 10:42 | 6:04 |
| 6 | 12:54 | 8:03 |
| 7 | 15:00 | 9:23 |
| 8 | 17:06 | 10:43 |
| 9 | 19:18 | 12:04 |
| 10 | 21:24 | 13:24 |
| 11 | 23:36 | 14:45 |
| 12 | 25:42 | 16:05 |
| 13 | 27:54 | 17:25 |
| 14 | 30:00 | 18:46 |
| 15 | 32:06 | 20:18 |
| 16 | 34:18 | 21:27 |
| 17 | 36:24 | 22:47 |
| 18 | 38:36 | 24:12 |
| 19 | 40:42 | 25:28 |
| 20 | 42:54 | 26:05 |
| 21 | 45:00 | 28:09 |
| 22 | 47:06 | 29:29 |
| 23 | 49:18 | 30:49 |
| 24 | 51:24 | 32:10 |
| 25 | 53:36 | 33:30 |
| 26 | 55:42 | 34:51 |
| 27 | 57:54 | 36:11 |
| 28 or More | 60:00 | 37:31 |

E.    **INITIAL BID**

    1.    Detailed Initial Bidding Information

        For the most current information about bidding rules and techniques, a Flight Attendant should refer to www.MyFrontier.org/inflight/prefbid/index.asp or another Company designated website. Web page information is updated monthly with bidding tips, most common mistakes and other items which will provide assistance in the bidding process.

    2.    Bid Packet

        The Company will publish paper bid packets on a monthly basis and make them available in the crew room. Bid packets will be made available to all Flight Attendants by 1400 on the 6th day of each month.

FRONTIER AIRLINES (R. BRIGHAM) - 0000859

0702

3.     Bid Closing

It is the responsibility of the Flight Attendant to bid in the Automated Bid System. All formal bidding will be submitted on the Automated Bid System no later than 1400 on the 12th day of the month. The Company does not accept bids by faxes, e-mail or any other means.

4.     Bidding Timeline

a.     Bids will open on the 6th at 1400.

b.     Bids will close on the 12th at 1400.

c.     Bids will be posted on the 16th by 1400.

d.     Reserve awards will be posted on the 18th by 1400.

e.     For the initial bid, a Flight Attendant must have a minimum of 1 calendar day off in base during every 7-day period.

5.     Misbidding

Each Flight Attendant will be accountable for bidding correctly. In the event he/she fails to bid (including the default bid), there are trips left, and the Flight Attendant is senior enough to hold a line, the Automated Bid System will build a line for the Flight Attendant. If there are not enough trips to fill a line then the Flight Attendant will go on Reserve for the misbid.

6.     Mixed Lines

Flight Attendants awarded Reserve status during the monthly bid will normally have the opportunity to participate in a secondary bid for Mixed Lines.

7.     Job Shares

a.     The Automated Bid System allows Flight Attendants to work low time. Frontier will offer this option in months when overstaffing occurs.

b.     A Flight Attendant interested in a job share must submit a request via email to Inflight by the published time and date.

c.     Job shares will be granted in seniority order.

d.     Flight Attendants awarded a job share will build a line in the Automated Bid System of 37:30 to 58:00 hours.

FRONTIER AIRLINES (R. BRIGHAM) - 0000860

0703

e.      A Flight Attendant who is awarded a job share line may trade or SWAP trips but may not exceed 58:00 hours or go below 37:30 hours.

f.      It is the Flight Attendant's responsibility to ensure his/her monthly credit hours do not go above 59:59 or fall below 37:30 hours. Failure to do so may result in disciplinary action.

8.    Automated Bid System Errors

If an error is made within the Automated Bid System and a Flight Attendant is not awarded a trip that he/she should have been given, he/she has the following options:

a.      The Flight Attendant will be offered a like trip if it is available in Open Time. Trips will not be split. The Flight Attendant will be pay protected for the greater of the trips;

b.      If no like trip is available, the Flight Attendant may be considered AVA based on the trip that he/she should have been awarded;

c.      The Flight Attendant may choose to accept Reserve for the days in question; or

d.      The Flight Attendant may decline all of these options, forfeit the compensation and add to the schedule from Opentime or the TradeBoard.

## F.    PRE-AWARD PERIOD

1.    Pre-awards must be submitted via the Automated Bid System on a monthly basis from the 22nd at 1400 to the 4th at 1400 (e.g., March 22nd – April 4th for the May bid period).

2.    Requests submitted for pre-awards include the following: vacation slides, Recurrent Training and other scheduled training, scheduled Company Business, Union Business and jury duty. Company Business pre-planned meetings that are not blocked for an entire day in the Automated Bid System will allow for a Flight Attendant to fly that day, as long as it does not conflict with the Company Business time.

3.    Any trips on Company Business meeting days must meet the 14 hour duty day limitations. The 10 hour rest rule does not apply except before and after the maximum 14 hour duty day.

4.    It will be the Flight Attendant's responsibility to bid correctly to ensure that all legalities are met; should a trip violate any scheduling/FAA legality rules, the trip will be removed and will not be pay protected. Should the Flight Attendant request the day off,

Company Business day, and the system awards them a trip in error, they will be pay protected for the trip/portion of the trip that needs to be removed to make them legal for the Company Business. All other legal portions of the trip will be flown, that do not fall on the Company Business day.

5. Pre-awards are awarded by seniority except vacation slides, which will be granted according to Article 10.F.

6. Each pre-award request must be submitted separately.

7. Requests asking the Company/Crew Planning to pick any date for the award will not be granted.

8. If a Flight Attendant submits a pre-award request for any planned absence (e.g., vacation, recurrent training), he/she must verify that this request is listed in the Automated Bid System before entering his/her bid. If the Flight Attendant does not find the pre-award request, he/she must contact Crew Planning by 1700 on the 11th. Any problem arising after the Bid Award will be handled to eliminate the conflict as if the pre-award had been granted.

9. Pre-awards requests will be processed according to the following priority:

   a. Vacation;

   b. Training;

   c. Company Business;

   d. Union Business.

10. Company training events are presented throughout the year and attendance is a requirement of the job. The Company may assign individuals to specific months to attend this training, and Flight Attendants will be notified by Company email of their designated month. Flight Attendants will then be able to bid for their assigned month in the Automated Bid System between 1400 on the 22nd and 1400 on the 4th (e.g., March 22 to April 4 for May training). All training events are awarded via the Automated Bid System in seniority order.

11. Bidding for a training event:

   a. Changes to the designated month must be approved by the Inflight Training Administrator prior to bid opening on the 22nd of the month.

   b. Flight Attendants will bid for multiple programs/days in order of preference.

   c. Awards are published in the Automated Bid System at

FRONTIER AIRLINES (R. BRIGHAM) - 0000862

0705

1100 on the 4th.

d.      Awarded training events will be noted in the Automated Bid System.

e.      Training events require a scheduled 10 hour rest in base prior to and following the event. In the case of an irregular operation, this rest may be modified as provided by this Agreement.

f.      Once awarded, training events may not be dropped, but may be traded in accordance with the provisions of this Agreement.

G.   **TRANSITION**

1.      If a trip from the previous bid period ends on a day in the new bid period, but the Flight Attendant is legal to start a trip on that same day it arrives in base, the Automated Bid System will allow the Flight Attendant to bid or assign trips starting after the arrival time with respect to legalities.

2.      Flight hours flown for the new bid period from the previous bid period's trip will be credited to the new bid period's total block hours for credit purposes.

3.      In the event that a trip of the preceding bid period falls into the new bid period, the Flight Attendant will complete the trip. When it is time for a Flight Attendant to bid for the new bid period, he/she will not be able to bid those days of the new bid period in the Automated Bid System. Those days will automatically be blocked; therefore, there will not be a transition conflict.

4.      If a transition trip overlaps an awarded vacation day, the Flight Attendant may slide his/her vacation during the pre-award period to resolve the conflict.

5.      If a transition trip overlaps an awarded vacation day(s) and the Flight Attendant chooses not to slide his/her vacation, the overlapping portion of the trip will be dropped without pay if the trip can be split in base. Otherwise, the entire trip will be dropped to resolve the conflict, and the Flight Attendant will not be pay protected.

H.   **CDOS AND RED-EYE TRIPS THAT SPAN BID PERIODS**

1.      CDOs will be credited 3 hours for the present bid period and 3 hours for the new bid period.

2.      If a Flight Attendant checks in for a red-eye trip on the last day of a bid period that is scheduled to depart before 2359 (base local time) of the bid period and is still flying into a new bid period, the

FRONTIER AIRLINES (R. BRIGHAM) - 0000863

0706

block hours for that leg will be credited to the prior bid period's hours. Any legs flown after the red-eye within the same sequence will be credited to the following bid period as carry-in.

I.     **RESULTS PAGE/PRE-AWARDS**

    1.   Reviewing results page is the Flight Attendant's responsibility, which includes but is not limited to:

        a.   Carry-In.

           **Example:** Any trip that carries into the new bid period that conflicts with a pre- awarded, preplanned absence or any given credit for those hours will be dropped but not pay protected.

        b.   Vacation.

        c.   Recurrent training.

        d.   Company Business.

    2.   Parameters

        All administrative parameters are subject to the Company's discretion and operational necessity.

    3.   Vacation Awards And Slides

        a.   A Flight Attendant may slide his/her vacation period plus or minus three calendar days from the first day of the awarded period. A Flight Attendant will not be permitted to slide a vacation period between individual bid periods.

        b.   Vacation periods start on the first day of the listed dates in this Agreement unless the Flight Attendant exercises the slide option in the Automated Bid System.

        c.   A Flight Attendant who intends to slide his/her vacation period will do so during the pre-award period. Crew Planning will not add, change or cancel any slide request.

        d.   Vacation slide requests are processed prior to the processing of training, Company Business and Union Business requests.

J.     **LOW-TIME FLIGHT ATTENDANTS**

    1.   General

        Inflight will offer low-time Flight Attendant positions. A bid will be

FRONTIER AIRLINES (R. BRIGHAM) - 0000864

0707

distributed stating the timeline for application, the number of low-time Flight Attendant positions that will be offered, and the duration of the low-time period. The low-time positions will be awarded in Seniority order. The following will highlight the low-time Flight Attendant position requirements and benefits:

2.  Eligibility

a.  A Flight Attendant is eligible for the low-time position if he/she has been active for a minimum of 6 months, and is not on Reserve status.

b.  Any Flight Attendant interested in the low-time position must follow all procedures for application/acceptance that are supplied in the bid instructions.

c.  Flight Attendants must be active at the point of the start date of the program to be eligible to apply.

d.  Any Flight Attendant who is awarded a low-time position will be required to commit to the position for the entire term of the defined period of time.

e.  Flight Attendants will only be awarded a vacancy transfer while on low-time if the Company has posted for low-time vacancy transfers.

3.  Reversion from Low-Time Status

a.  If at any time during the low-time period a Flight Attendant's seniority falls within the bottom 15% of the seniority list within his/her base (i.e. projected to enter a Reserve status), the Company may, at its sole discretion, revert the Flight Attendant back to full-time status for the remainder of the term of the program.

b.  Should a life changing event occur (as defined by the Company's employee benefits policy), a Flight Attendant may request to be returned to full-time status provided the Company has vacancies for full-time positions. Should a Flight Attendant request to invoke this provision and return to full-time status, he/she should contact Inflight Management for vacancy information.

4.  Low-time Hours and Scheduling Requirements

a.  Any Flight Attendant who is awarded a low-time position must fly between 37:30 and 59:59 hours per monthly bid period. Flight Attendants awarded a part time position will build a line in the Automated Bid System of 37:30 to 58:00 hours. A Flight Attendant who is awarded a part time line may TRADE or SWAP trips in the

FRONTIER AIRLINES (R. BRIGHAM) - 0000865

0708

Automated Bid System, but may not exceed 58:00 hours or go below 37:30 hours.

b.  The Company may increase the low-time base to 47:30 hours up to three times per year and with prior notification based on seasonal operational necessity. Conditions that must be met pertaining to the 37:30 base, (e.g. paragraphs i, k, m,) will apply to the 47:30 base in designated months.

c.  If a Flight Attendant's projected credit value for the current bid period is less than 37:30 hours, the Company may adjust the Flight Attendant's schedule to bring the line value above 37:30 hours through credit balancing. If the Company opts to use credit balancing, the schedule will be adjusted between 1200 on the 7th and 1200 on the 8th of the month. Credit Balancing may include any of the following:

(i)  Adding trips to the schedule from Open Time
(ii)  Swapping trips on the schedule for trips in Open Time
(iii)  Assigning AVA days to the schedule

d.  If the Company assigns AVA days during the Credit Balancing process, these AVA days will be credited 4 hours or the value of the actual trip flown, whichever is greater. The availability window for the AVA days will be from 0001 until 2400 on each of the assigned AVA days.

e.  At the conclusion of each bid period the Company will calculate accumulated credit for each Flight Attendant, including actual credit and artificial credit. If a Flight Attendant's total bid period credit is less than 37:30 hours the Flight Attendant will be denied access to the Automated Bid System Open Time or the TradeBoard for three subsequent bid periods. During this three month penalty period the Flight Attendant will not be permitted to participate in any voluntary ADD/DROP/SWAP processes and must fly his/her line as awarded in the Automated Bid System.

f.  If the Flight Attendant is awarded a Reserve line through the Automated Bid System, then that bid period will not be counted as one of the three bid periods for purposes of this penalty.

g.  If a Flight Attendant is awarded a Reserve line while in the low-time program, he/she will be blocked from participating in any open-time processes in the Automated Bid System.

FRONTIER AIRLINES (R. BRIGHAM) - 0000866
0709

h.   In the event that a Flight Attendant goes over the 59:59 hour maximum part time credit window due to irregular operations (weather, mechanical, declared irregular operations, etc.), there will be no penalty to the Flight Attendant in these situations.

i.   Any Flight Attendant who accepts a low-time position must work a minimum of 540 flight hours (or as dictated by Federal Legislation) during the 12 month period prior to their anniversary date to receive a year's service toward retirement benefits. Anything less will result in a 1/2 year's service towards retirement.

5.   Benefit Changes for Low-Time Flight Attendants

| Benefit | Change from Full-Time Status |
| --- | --- |
| Sick | 50% Accrual |
| Vacation | 50% Accrual |
| Uniform Allowance | 50% Accrual |
| Buddy Passes | 1/2 of a Full-Time Employee |
| Health Benefits | See Company policy |
| Dental Vision | See Company policy |

*NOTE: All low-time Flight Attendants will bid in the Automated Bid System each bid period. Also, all low-time Flight Attendants will have access to Open Time and the TradeBoard just as all full-time Flight Attendants.*

K.   **OPEN TIME**

1.   All available Open Time will be available to view and print in the Automated Bid System.

2.   A Flight Attendant may bid in Daily Open Time Live via the Automated Bid System to ADD/DROP/SWAP trips within their base.

3.   All manual Open Time and Trip Trade processing (e.g., split trips) will be processed between the hours of 0900-0100.

4.   A Reserve is eligible to bid for trips in Daily Open Time Live within their base following the terms outlined in this Agreement.

5.   Daily Open Time Live trips may be split for the current bid period through 1400 on the 26th of the month. Daily Open Time Live trips may be split for the next bid period on the 26th of the previous month at 1400. See Bid Period Timetable.

6.   TradeBoard trips may be split for the current bid period through 1400 on the 26th of the month. TradeBoard splits for the next bid period will begin on the 18th of the previous month at 1400. See Bid Period Time Table.

FRONTIER AIRLINES (R. BRIGHAM) - 0000867

0740

7.   For purposes of adding Open Time and trades to an existing trip on a Flight Attendant's schedule, there will be a minimum of 60 minutes scheduled connect time in base between flights. The 60 minutes does not include any scheduled briefing or debriefing time. For international flying, the minimum connect time is increased to 75 minutes. The minimum connect time for Open Time purposes may be increased as operational needs require.

**Example:** A trip ends in DEN with a flight from SLC which is scheduled to arrive at 1400. A Flight Attendant scheduled for this trip would be allowed to trade/ pick up another trip which is scheduled to depart to MCI at 1500 on the same day. If the MCI flight was scheduled to depart at 1459, this request would be denied since the minimum connect time of 60 minutes would not be satisfied.

8.   A Flight Attendant is responsible for checking Open Time responses in the Automated Bid System. Approved bids will be considered confirmation of awards unless otherwise described in this Agreement.

9.   If a Flight Attendant goes on OJI, FMLA, medical, or maternity leave during any given bid period and is not able to complete his/her bid period, his/her remaining trips will be placed in Open Time for all eligible Flight Attendants to bid.

10.   Pay-protected trips dropped for Company Business may be assigned to Reserves to prevent excessive cost to the Company.

11.   The Company may put Ready Reserve shifts into Open Time. These days may be bid on as any other open trip and will be credited as outlined in the Reserve section.

12.   For purposes of ADD/SWAP requests, a minimum of 1 calendar day off scheduled in base during every 7-day period will be required. A Flight Attendant may not waive this requirement.

13.   If the Automated Bid System allows an approval of a transaction that contradicts these rules, the Company will not pay protect the Flight Attendant.

14.   AVA DROPS will be processed in the Automated Bid System and be based on staffing. A drop request will require the drop of all continuous AVA days that originated from the same multiday trip. Credit for AVA days will not be pay protected if dropped.

15.   AVA SWAPS for Open Time will be processed in the Automated Bid System. A swap request will require the drop of all continuous AVA days that originated from the same multiday trip. The SWAP request must meet minimum staffing and rest requirements. Credit from AVA will not be pay protected if the Flight Attendant opts to SWAP it for a trip in Open Time.

FRONTIER AIRLINES (R. BRIGHAM) - 0000868
0741

16.   AVA cannot be split for DROP/SWAP purposes.

17.   A Flight Attendant may add a trip adjacent to AVA status as long as duty and calendar day limits are not exceeded based on the combination of the trip's duty day and the scheduled AVA availability.

18.   In no case will the Flight Attendant be paid for both the AVA and a trip picked up in Open Time if the AVA trip and an added trip would have resulted in a conflict.

19.   An Open Time trip cannot be split to accommodate AVA SWAP requests.

**OPEN TIME – MINIMUM CREDIT REQUIREMENTS**

1.   At the completion of each Bid Period each Flight Attendant must accumulate a minimum of 60 credit hours. At no time will a Flight Attendant be allowed to drop below 45 credit hours, except as provided for in this Agreement. For purposes of the credit calculation described in this paragraph, artificial credit will be applied to unpaid absences. The value of such unpaid absences will be determined based on the "Returning from Leave Mid Month" table in paragraph 5.D above. Any artificial credit applied as outlined here will not be included in the actual pay calculation for the bid period.

2.   If a Flight Attendant's projected credit value for the current bid period is less than 60 hours, the Company may adjust the Flight Attendant's schedule to bring the line value above 60 hours through Credit Balancing. If the Company opts to use Credit Balancing, the schedule will be adjusted between 1400 on the 7th and 1400 on the 8th of the month. Credit Balancing may include any of the following:

   a.   Adding trips to the schedule from Open Time

   b.   Swapping trips on the schedule for trips in Open Time

   c.   Assigning AVA days to the schedule

3.   If the Company assigns AVA days during the Credit Balancing process, these AVA days will be credited 4 hours or the value of the actual trip flown, whichever is greater. The availability window for the AVA days will be from 0001 until 2400 (base local time) on each of the assigned AVA days.

4.   At the conclusion of each bid period the Company will calculate accumulated credit for each Flight Attendant including actual credit and artificial credit as described above. If a Flight Attendant's total bid period credit is less than 60 hours the Flight

FRONTIER AIRLINES (R. BRIGHAM) - 0000869
0712

Attendant will be denied access to the Automated Bid System Open Time or the TradeBoard for three subsequent bid periods. During this penalty period the Flight Attendant will not be permitted to participate in any voluntary ADD/DROP/SWAP/TRADE processes and must fly his/her line as awarded in the Automated Bid System. If the Flight Attendant is not awarded a regular line through the Automated Bid System then that bid period will not be counted as one of the three bid period for purposes of this penalty.

5.  In the event a Flight Attendant falls below the 60 or 37:30 hour requirement two consecutive bid periods in a row, the three bid period penalty period does not start over. It runs concurrent with the previous bid period's penalty.

**Example:** If FA Julie fell below 60 hours in June and she also fell below 60 hours in July, she would be restricted from the Automated Bid System for Daily Open Time and the TradeBoard for the bid periods of August, September, October, and November.

M.  **DAILY OPEN TIME LIVE (FIRST-COME FIRST-SERVED)**

1.  All available Open Time will be displayed in the Automated Bid System. A Flight Attendant may submit requests in the Automated Bid System to modify his/her schedule using ADD/DROP/SWAP with Open Time on a first-come first-served basis.

2.  It is the Flight Attendant's responsibility to enter or remove an Open Time request in the Automated Bid System. Crew Scheduling and/or Inflight Management will not enter, modify, or remove any request in the Automated Bid System for a Flight Attendant.

3.  Because trips that must be modified (irregular ops, sick calls mid-trip, schedule changes, etc.) are temporarily dropped into Open Time in order for Crew Planning/ Scheduling to make the adjustment, it is possible that a trip may appear to be available for ADD/DROP/SWAP when that is not the case. If a Flight Attendant is awarded one of these trips, Crew Planning/Scheduling may reverse the Automated Bid System award. This does not constitute an error on the part of Crew Planning/ Scheduling, and the Flight Attendant will not be pay-protected.

N.  **TIMELINE**

1.  Open Time Live will begin at 1400 on the 19th of each month and will be available through 1400 on the next to last day of the bid period. To prevent any conflict with the preferential bidding process, trip trades and Open Time requests to add or swap duty periods on the Flight Attendant's schedule on the last 6 days of the bid period will not be allowed between 1100 on the 10th and 1400 on the 18th.

FRO0743AIRLINES (R. BRIGHAM) - 0000870

2.  Unassigned trips will remain in Daily Open Time Live and available for ADD/SWAP requests until 1400 the day prior to the trip report.

3.  Unlimited requests for Daily Open Time Live are allowed until 1400 the day prior to trip report. (For next day requests, Open Time closes at 1400 the day prior to the trip start).

4.  Reserve coverage for carryover trips will not be available until after the next bid period's Reserve lines are posted at 1400 on the 18th.

O.  **DROPS, ADDS, SWAPS AND SPLITS**

1.  Open Time trips may only be split into two parts. The split must begin and end in base. A Flight Attendant may not split one day trips.

2.  A Flight Attendant may SWAP a portion of a trip for an entire trip or entire trip for a portion of a trip. A Flight Attendant may not SWAP a portion of one trip for a portion of another trip.

3.  Requests must be in compliance with duty and rest limitations as established by this Agreement.

4.  Minimum reserve staffing requirements will be set by the Company on a monthly basis for each day in the bid period. Weekends (Friday-Sunday), holiday periods, and the first and last 3 days of each bid period will have a higher reserve staffing minimum. DROPS will not be approved if the days impacted are at or below established minimum staffing requirements when the DROP request is processed.

5.  For purposes of DROP/SWAP in Open Time Live, the Company must consider staffing minimums on all days included in the trip.

    **Example:** If a Flight Attendant requests to drop a trip that reports at 1800 on the 23rd and releases at 0100 on the 25th, the Automated Bid System will consider staffing requirements for each day the trip touches, the 23rd, 24th, AND 25th.

6.  No SWAPS are allowed between bid periods.

    **Example:** If a Flight Attendant is trying to SWAP a trip in May, he/she must pick up a trip in May. The Flight Attendant cannot pick up a trip in June.

P.  **IRREGULAR OPERATIONS**

1.  At the discretion of the Company, during irregular operations, Flight Attendants may pick up Open Time trips after 1400 the day prior to a trip. The cut off time for picking up these trips will be three hours prior to the report time of the open trip. After that

FRONTIER AIRLINES (R. BRIGHAM) - 0000871

point, open trips will be assigned to the next legal and available Reserve Flight Attendant pursuant to the Reserve assignment procedures of this Agreement.

2.  Flight Attendants will only be able to request a trip ADD over the phone by calling Crew Scheduling. These will be awarded on a first come, first served basis. DROP/SWAP will continue to be pursuant to the terms contained in this Agreement. Flight Attendants will be notified when this provision is in effect via the Automated Bid System ticker message, an update to the Crew Scheduling phone greeting, and, if possible, a notice on the Inflight homepage of MyFrontier.org.

Q.  **TRIP TRADES**

1.  A Flight Attendant may trade any trip on his/her current schedule with another Flight Attendant. Requests must be in compliance with duty and rest limitations as established by this Agreement.

2.  The TradeBoard will open at 1400 on the 18th. Whole trip trades must be submitted by 2000 the day prior to trip report. Split trips must be submitted by 1400 the day prior to trip report.

3.  TradeBoard split closes for the current bid period at 1400 on the 26th of the month.

4.  All trip trades will be completed via the Automated Bid System TradeBoard or TradeBoard Split.

5.  Line holders and Reserves are eligible for trip trades. Reserves using the trip trade process will be subject to limitations set forth by this Agreement.

6.  One-way trip trades must also be submitted via the Automated Bid System TradeBoard.

7.  Unlimited trip trading between Flight Attendants is available through the Automated Bid System TradeBoard for full and partial trips within the parameters set forth in this Agreement or the FARs.

8.  The Flight Attendant is responsible for entering or removing a trip trade request in the Automated Bid System. Neither Crew Scheduling nor Inflight Management will enter, modify, or remove any request in the Automated Bid System for a Flight Attendant.

9.  No trades are allowed between bid periods.

    **Example:** If a Flight Attendant is trying to trade a trip in May, he/she must trade for a trip in May. The Flight Attendant cannot trade a trip in June.

10.  To prevent any conflict with the preferential bidding process, TRADE requests on the last 6 days of the bid period will not be allowed between 1100 on the 10th and 1400 on the 18th.

R.  **TRADE BOARD TRANSFER**

1.  At 1400, any DROP request on the TradeBoard for the following day may be transferred by the Company to Aggressive Reserve Open Time or assigned during the Reserve Trip Assignment process. The approval of these requests will be reflected in the Automated Bid System and based on, but not limited to, available staffing, length of trips, and operational factors.

2.  Flight Attendants will be responsible to check for approved requests in the TradeBoard Folder on the Automated Bid System after 2000 the day prior to the trip report time.

S.  **ADMINISTRATIVE AND/OR DAILY OPEN TIME ERRORS**

1.  If Crew Planning/Scheduling or Inflight Management makes an administrative error, or an error in Daily Open Time Live or Daily Open Time Split, and a Flight Attendant is removed from, or not awarded, a trip he/she should have been given, he/she has the option of the following:

   a.  The Flight Attendant will be offered a like trip if it is available. The like trip will be based on the Reschedule or Reroute parameters set forth in this Agreement, whichever is applicable. The Flight Attendant will be pay protected for the greater of the trips.

   b.  If no like trip is available, the Flight Attendant may be considered AVA.

   c.  The Flight Attendant may refuse the like trip or the AVA and receive no compensation.

2.  It is the Flight Attendant's responsibility to bring an error to the attention of Crew Planning/Scheduling for review as soon as he/she discovers the error. If the error is not brought to the attention of the Company in a timely manner, the Company may not be able to rectify the error and the Flight Attendant may forfeit any applicable pay protection.

   **Example**: On August 1st a Flight Attendant submits a request to add a trip on August 15th. The trip is awarded incorrectly to another Flight Attendant. The Flight Attendant who should have been awarded the trip discovers this error on August 2nd but does not contact Crew Planning regarding the error until August 15th - 1 hour prior to the scheduled report time of the trip. In this case there is no guarantee that the Company can rectify this error.

FRONTIER AIRLINES (R. BRIGHAM) - 0000873

0746

3.     If the ADD/DROP/SWAP/TRADE conflicts with any of the terms outlined in this Agreement, the Flight Attendant will not be pay protected for the trip.

T.     **NON-AWARDED OPEN TIME TRIPS**

Non-awarded Open Time trips will be awarded in the following order:

1.     Available to Assign (AVA).

2.     Reserve Flight Attendants (RSV).

3.     Willing to Fly (WIL).

4.     Junior Assignment (JRA) of Reserves and Line Holders.

5.     Any Frontier employee who is Flight Attendant qualified and current to perform Flight Attendant duties, including supervisors, instructors, and managers.

U.     **WILLING TO FLY LIST (WIL)**

1.     The Company will maintain a Flight Attendant's WIL status in CrewTrac.

2.     A Flight Attendant will contact Crew Scheduling by phone to request that he/she be added to Will Fly status. Crew Scheduling will place the WIL code on the Flight Attendant's line for each date he/she is available. Requests will only be taken once a bid period is available in CrewTrac. The Flight Attendant will also be responsible to contact Crew Scheduling to be removed from WIL.

3.     Open trips will be offered in seniority order to those Flight Attendants on WIL status.

4.     If the Flight Attendant cannot be contacted, Crew Scheduling will attempt to contact the next WIL Flight Attendant in seniority order, based on legality for the trip and number of days the Flight Attendant is available for WIL.

5.     Crew Scheduling will make an attempt to contact the Flight Attendant at up to two phone numbers, provided two are available.

6.     A Flight Attendant will have the option to pass on the assignment.

7.     A Reserve is eligible for WIL on days off.

FRONTIER AIRLINES (R. BRIGHAM) - 0000874

0747

V.   **JUNIOR ASSIGNMENT (JRA)**

    1.    JRA will be the last resort for Crew Scheduling.

    2.    JRA will be completed in reverse order of seniority.

    3.    A Flight Attendant on vacation will not be JRA'd.

    4.    JRA'd Flight Attendants will not be assigned more than one night away from base.

    5.    A Flight Attendant may request to remain on a trip that involves more than one night away from base.

    6.    JRA'd Flight Attendants will be compensated at one and a half times his/her hourly rate. No additional day off will be given in lieu of a JRA.

    7.    Flights that were originally scheduled to depart before midnight but do not, due to irregular operations, are not considered to be a JRA and will not be paid at JRA pay.

    8.    A Flight Attendant will not be JRA'd more than once during a bid period unless the Flight Attendant agrees to the assignment. If the company attempts to JRA a Flight Attendant while he/she is operating an assignment accepted through the Willing to Fly provisions of this Article, the Flight Attendant may decline the JRA.

    9.    Before the Company begins to JRA, Crew Scheduling may ask any Flight Attendant to volunteer for the open trip.

    10.    If Crew Scheduling is in a JRA position, the Crew Schedulers must identify themselves and state, "We are Junior Assigning Flight Attendants for _____ and we have reached your name on the Junior Assign List."

    11.    Prior to canceling a flight, the Company will contact any Frontier Company employee who is FAA-qualified and current to perform Flight Attendant duties.

    12.    Days worked by such Frontier Company employees will be considered duty for legality purposes.

    13.    The Company will maintain a JRA log including a minimum of the following information:

        a.    Flight Attendant's Name;

        b.    Seniority Number;

        c.    Telephone Numbers Contacted;

FRONTIER AIRLINES (R. BRIGHAM) - 0000875

0748

    d.       Beginning and End Time of JRA Process;

    e.       Result or Response; and

    f.       Name of Crew Scheduler processing the JRA list.

14.    If a Reserve Flight Attendant calls to request a release from duty while Crew Scheduling is Junior Assigning, he/she cannot be JRA'd without his/her consent during that phone call.

## W    SCHEDULE CHANGES/REASSIGNMENTS

1.    General

    a.       In the event that the Company cancels or revises a flight schedule for operational or marketing purposes, the Flight Attendant will be subject to reassignment per Reschedule or Reroute parameters as set forth in this section.

    b.       A Flight Attendant reassigned from his/her regularly scheduled assignment will receive the greater of the original scheduled assignment or actual reassignment for flight time pay and credit.

    c.       Any change that causes an illegality or conflict with the next trip or a training event on a Flight Attendant's line will be adjusted. Crew Scheduling will determine where the adjustment will be made to remove the conflict. The Flight Attendant will be pay protected for the adjustment resulting from a Reschedule or Reroute.

    d.       A Reserve Flight Attendant who picks up a trip on his/her day(s) off will be considered a "Line Holder" for any schedule changes or irregular operations that may impact the trip.

    e.       If a trip modification involves only a flight number change where no destinations or scheduled arrival or departure times are modified, the Company is not required to contact the Flight Attendant to advise of this change.

2.    Reschedule

    a.       "Reschedule" is defined as a change to a trip prior to 1800 (base local time) the day before an initial trip report.

    b.       "Initial Trip Report" is defined as the day and report time for the first day of a single or multiday trip.

FRONTIER AIRLINES (R. BRIGHAM) - 0000876

0749

c.    A Flight Attendant's availability will begin 1 hour prior to original trip report and will end no more than 3 hours after the original scheduled trip release time, not to exceed duty limitations.

d.    To be considered a Reschedule, the trip change and an attempt to notify the Flight Attendant must be made no later than 1800 (base local time) the day prior to Initial Trip Report.

e.    If the Flight Attendant desires to keep the revised trip, he/she may opt to accept a Reschedule with a report/release time earlier/later than the limitations in this provision.

f.    If a Reschedule requires a Flight Attendant to report earlier than originally scheduled, Crew Planning/Scheduling will make all reasonable efforts to notify the Flight Attendant in a timely manner. Upon receipt of a message regarding the Rescheduling, the Flight Attendant is responsible for confirming the message in a timely manner. If Crew Scheduling has not received confirmation from the Flight Attendant at least three hours prior to the new scheduled report time, the Flight Attendant will be removed and replaced on the trip until such point that it passes through base. The Flight Attendant will not be paid for the lost flight segments.

**Example:** A Flight Attendant is scheduled for a charter pairing on the 15th of the month. On the 1st of the month, a Reschedule occurs and the report time is adjusted from 1100 to 1015. Over the next two weeks, Crew Planning leaves multiple messages for the Flight Attendant at both contact numbers provided. The Flight Attendant personally receives these messages but does not confirm them with Crew Planning/Scheduling. At 0715 on the 15th, this Flight Attendant will be removed from this trip and the trip will be assigned to another Flight Attendant to ensure an on-time operation.

g.    For charter flying, a Flight Attendant's availability will begin 2 hours prior to original trip report and end no more than 5 hours after original trip release. All changes to charter trips will fall under this section, regardless of the time the change is made.

h.    If Crew Scheduling is unable to reach the Flight Attendant before he/she departs for the airport and he/she reports for the original departure time, his/her duty day begins at the originally scheduled report time.

i.    A Reschedule is not considered an irregular operation.

3.    Reroute

    a.    "Reroute" is defined as a change to a trip after 1800 (base local time) the day prior to initial trip report.

    b.    A Flight Attendant's availability will end no more than 2 hours after the original scheduled trip release time.

    c.    If a Flight Attendant has reported for a trip in base and his/her scheduled flight has been cancelled prior to report time, the Flight Attendant will be available for reassignment provided notification of the assignment is made within one hour of scheduled report time. The reassignment will be for a flight that is scheduled to depart within three hours of the original departure time of the cancelled flight.

    d.    If a Flight Attendant has reported for a trip and after report his/her scheduled flight is cancelled, the Flight Attendant will be available for reassignment provided notification of the assignment is made within one hour of the time of the flight's cancellation or within one hour of the Flight Attendant's inbound arrival time if operating from an outstation. The reassignment will be for a flight that is scheduled to depart within three hours of the original departure time of the cancelled flight.

    e.    In an operational Reroute, if a flight is cancelled and there is no other Frontier flight available to return the crew (working or deadhead status) to base within the 2-hour limit, the crew will be assigned on the next available Frontier flight.

    f.    If the next available Frontier flight is not scheduled to operate until the following calendar day and the crew is not required to operate that flight, then an alternate carrier may be considered for an earlier deadhead return to base.

    g.    A crew swap for operational needs will be considered a Reroute.

    h.    Crew Scheduling will attempt to notify a Flight Attendant of any change to a trip as soon as possible. If a Flight Attendant sees a change to his/her schedule or encounters an irregular operation, but has not been notified the Flight Attendant must contact Crew Scheduling for possible reassignment.

    i.    If a trip modification involves only a flight number change with no destination or scheduled arrival or

FRONTIER AIRLINES (R. BRIGHAM) - 0000878

0721

departure times modified, the Company is not required to contact the Flight Attendant to advise of this change.

j.     If the Flight Attendant desires to keep the revised trip, he/she may opt to accept a "Reroute" with a report/release time earlier/later than the limitations in this provision.

k.     When a Flight Attendant's originating trip of the day is delayed and he/she is notified of the delay prior to leaving for the airport, the trip report time will be modified by Crew Scheduling and the duty day will reflect the new report time.

l.     A Reroute will be considered an irregular operation if the crew has reported for duty.

4.     Notification Of A Flight Attendant

a.     Crew Scheduling will call up to two of the Flight Attendant's phone numbers available in CrewTrac (or replacement software) to notify him/her of a change to his/her schedule. If it is necessary to contact a Flight Attendant during a FAA required minimum rest period, Crew Scheduling may make one phone call attempt to each contact number listed by the Flight Attendant.

b.     In base, a Flight Attendant will not be called or paged between 2130-0630 (base local time) except when the Flight Attendant must be contacted immediately due to one of the following:

     (i)     Emergency;

     (ii)     To prevent an operational issue;

     (iii)     Junior assignment;

     (iv)     Reserve as required by this Agreement.

c.     On a layover, a Flight Attendant will not be called or paged between 2130- 0630 (base local time) except when the Flight Attendant must be contacted immediately due to one of the following:

     (i)     Emergency;

     (ii)     To prevent an operational issue;

     (iii)     Reserve as required by this Agreement.

d.     During a layover, Crew Scheduling will attempt to limit

calls to the first two hours or the last two hours of the layover, unless required to do otherwise due to the reasons outlined above.

e.    If a message is left at a Flight Attendant's phone contact number, it is the Flight Attendant's responsibility to make positive contact with Crew Scheduling to verify change(s) to his/her schedule.

X.    **AVAILABLE TO ASSIGN (AVA)**

1.    If the entire trip is cancelled, the Flight Attendant will be placed on Available to Assign (AVA) status.

2.    Assignment will be based on Reroute or Reschedule parameters, whichever is applicable. In addition:

a.    No Red-Eye/CDO pairing will be assigned, unless the original pairing contained a Red-Eye/CDO. Exception: AVA assigned as part of an Award when no trip had originally been on the Flight Attendant's schedule.

b.    There will be no pairing assigned that includes a sit time in excess of 3 hours in length, unless this sit time was part of an original pairing that was published in the monthly bid package or the sit time is part of a pairing that was created by a Flight Attendant through an Open Time or trade transaction.

3.    All Flight Attendants on AVA status will be available for assignment in a junior to senior order, after number of days and time available are considered.

4.    The Flight Attendant will be required to call to verify reassignment/release for each calendar day of AVA status. This call must be made between 1700 and 1800 base local time the day prior to each day of AVA status.

**Example:**  If a two-day trip reporting on the 21st and releasing on the 22nd is cancelled, and notification given per "Reschedule" parameters, the Flight Attendant must call in for reassignment/release between 1700 and 1800 base local time on the 20th and 21st. If the Flight Attendant is released they will be pay protected for the original trip credit.

5.    A Flight Attendant on AVA status will be assigned prior to a Reserve.

6.    If the Flight Attendant does not want to remain on AVA status, he/she may request to DROP/SWAP AVA through the Automated Bid System.

FRONTIER AIRLINES (R. BRIGHAM) - 0000880

0723

Y.   **DOUBLE COVERED**

1.   If more than one Flight Attendant is assigned the same trip and position and neither Flight Attendant has been notified of the double assignment before report, the most senior Flight Attendant has the option to fly the trip or be displaced. The displaced Flight Attendant will be pay protected for flight hours lost.

2.   If more than one Flight Attendant is awarded the same trip and position and the error is discovered prior to report, Crew Scheduling must offer a like trip to the Flight Attendants. The Flight Attendant first awarded the trip has the first option of the following:

   a.   Fly the awarded trip as scheduled;

   b.   Fly a like trip and receive compensation for the greater of the two trips;

   c.   Refuse to fly either trip and receive no compensation; or

   d.   Be assigned AVA as detailed under Reschedule.

3.   The second Flight Attendant has the option of 2.b–d above only when the first Flight Attendant has chosen to fly the awarded trip.

Z.   **EQUIPMENT DOWNGRADE**

1.   When a flight on an A320 is downgraded to an A319 or A318, the Company, at its sole discretion, will exercise one of the following options:

   a.   Operate the A319 or A318 with four working Flight Attendants to maintain schedule integrity and/or necessary crew routing.

   b.   Remove an extra Flight Attendant from the trip and reassign him or her to another trip employing Reschedule or Reroute parameters, whichever is applicable. The Flight Attendant to be reassigned will be determined as follows:

      (i)   If all Flight Attendants are on a single pairing, the opportunity for reassignment will be offered in seniority order to the Flight Attendants on the pairing carrying the surplus position, with the three most senior Flight Attendants having the right of refusal. The junior Flight Attendant will be reassigned if the three more senior Flight Attendants pass on the reassignment.

      (ii)   If a Flight Attendant was added to the pairing

FRONTIER AIRLINES (R. BRIGHAM) - 0000881
0724

from a different pairing, the added Flight Attendant will be reassigned.

2.  If there is no need to leave the A319 or A318 with four working crewmembers or there are no reassignment options available, one Flight Attendant will be released from duty and pay protected. The Flight Attendant to be released will be determined in the same manner as 1.b of this section.

3.  If any of the above provisions are exercised and there is a resulting vacancy in the FA, FB, or FC positions, the Flight Attendant originally assigned to the FD position will fill that vacant position.

AA.   **DISPLACEMENT**

1.  A Flight Attendant displaced by a Company employee who is FAA-qualified and current to perform Flight Attendant duties will be pay protected for any trip or part of trip from which he/she is removed. The Company will notify the displaced Flight Attendant as soon as possible of the displacement.

2.  A displaced Flight Attendant will be released from duty and may be offered any available Open Time by Crew Scheduling. The displaced Flight Attendant may accept or decline the Open Time offer.

BB.   **DECLARED IRREGULAR OPS**

1.  A Declared Irregular Operations (DIO) is defined as any short-term event such as weather or airport closure that significantly disrupts or that is predicted to significantly disrupt at least 25% of the total daily system flight segments. A DIO may be declared by the VP of Flight Operations or the Director of System Operations Control (or a position they report to) based on a known or predicted event.

2.  This provision is intended to provide the Company greater flexibility to operate during, and reestablish normal scheduled operations after, a DIO. Notice of the beginning and the end of a DIO will be included as a CrewTrac message to all Flight Attendants. Any DIO will also be posted on MyFrontier.org.

3.  During a DIO, Crew Scheduling will be allowed reasonable relief from Reschedule and Reroute limitations as necessary to conduct operations and to reestablish normal scheduled operations.

4.  During a DIO, information for Flight Attendants will be posted at www.MyFrontier.org\departments\inflight (if not on the myfrontier home page). Flight cancellations will be posted at www.FrontierAirlines.com, but crews must receive notification through Crew Scheduling.

Page 47 of 123

5.   During a DIO and recovery, a Flight Attendant who is sent to a Crew Hotel and remains an extended period of 8 hours and 15 minutes or more, beyond block-in will be considered to be released to rest until reassignment. 24 hours at rest in an out-station or in base will meet FAR requirements for the 24 hours in 7 days.

**Example:** A crew scheduled for a DFW turn is sent to the hotel in DFW at 2000 because the return segment is cancelled due to DIA closure. The crew begins normal lay-over rest (though they are not released from reassignment). They are reassigned at 1800 the second day to depart at 0600 the third day. This crew has had legal rest as well as a 24 in 7 break for purposes of legality.

CC.   **DEADHEADING (DH)**

1.   A deadheading Flight Attendant is one who is flying positive space on duty to or from a working assignment.

2.   In uniform

a.   Should not call undue attention to himself/herself, but may engage in personal endeavors (reading, writing letters, etc.); use discretion if seated on jumpseat in view of passengers.

b.   May sleep in an assigned passenger seat but may never sleep on the jumpseat.

c.   Must not consume alcohol.

d.   A deadheading Flight Attendant is not considered to be part of the minimum crew; therefore, the deadheading Flight Attendant must not interfere (unless specifically requested) in any aspect of the operation.

3.   Out of uniform:

a.   Must wear business attire appropriate for representing the Company.

b.   All other rules apply as stated above.

4.   A Flight Attendant scheduled to deadhead from base will report 60 minutes prior to departure in CrewTrac (or replacement software) and will report to the gate 30 minutes prior to departure.

5.   A Flight Attendant scheduled to Deadhead from an outstation will report to the gate 30 minutes prior to departure.

6.   A Flight Attendant may be assigned, in reverse seniority order, the Flight Attendant jumpseat if the flight is full and revenue

Page 48 of 123

passengers will be left behind. If the flight is full but only non-revenue passengers will be left behind, then the deadheading Flight Attendant may occupy the jumpseat at his/her discretion.

7.   A Flight Attendant who is required by the Company to deadhead to or from any station for the purpose of covering or returning from a flying assignment will be credited with 50 percent of the scheduled flight time of the deadhead trip. This provision will also apply when deadheading is by surface transportation and made in lieu of air transportation as though the deadheading were performed by air transportation.

8.   Deadhead time will be included in duty time. A Flight Attendant may not deadhead during any rest break required by crew legalities.

9.   A Flight Attendant deadheading at the end of a trip for the purpose of returning to his/her base will be scheduled on the first scheduled Company flight. A Flight Attendant must contact Crew Scheduling to be released from duty if the Flight Attendant alters or deviates from the original deadhead flight assignment.

10.  Deviation from Scheduled Deadheads

A Flight Attendant may deviate from Scheduled Deadheads under the provisions below. If the Flight Attendant deviates from the Scheduled Deadhead, the Flight Attendant will be responsible for arranging his/her own transportation.

a.   Lineholders – Outbound from Base

(i)   A Flight Attendant scheduled to Deadhead on the first leg of a Sequence will call Crew Scheduling no less than 24 hours in advance to notify them that they will not be taking the Deadhead flight.

(ii)  Following the initial notification, a Flight Attendant scheduled to Deadhead on the first leg of a Sequence will call Crew Scheduling to check-in at least 3 hours but no more than 4 hours prior to the scheduled departure of the Deadhead leg.

(iii) The Flight Attendant is also responsible for reporting to Crew Scheduling from his/her scheduled operating flight at the gate of departure at least 1 hour, but no more than 2 hours prior to scheduled departure for the first operating leg. For International flights, the check-in will be at least 1 hour and 15 minutes but no more than 2 hours and 15 minutes prior

to scheduled departure for the first operating leg.

(iv)   The Flight Attendant must contact Crew Scheduling as soon as possible if the Flight Attendant encounters any delays that might affect the Flight Attendant's check-in time for the operating flight.

(v)   Should a Flight Attendant decide to deviate from his/her scheduled deadhead, the deadhead leg will be removed and not paid. This will postpone the duty time and the Flight Attendant's per diem until his/her actual duty period begins.

(vi)   A Flight Attendant may be required to come to base if that Flight Attendant has been Rescheduled or Rerouted.

b.   Lineholders – Inbound to Base

(i)   If a Flight Attendant, scheduled to Deadhead on the last leg of a Sequence, intends not to Deadhead to base, the Flight Attendant will call Crew Scheduling in advance. The Flight Attendant will not be reassigned during this notification call to Crew Scheduling except to work the Deadhead leg.

(ii)   Flight Attendants electing to take an on-line flight other than their originally scheduled Deadhead flight may travel on a space-available basis in accordance with Company policy. Should a Flight Attendant decide to deviate from his/her scheduled deadhead, the deadhead leg will be removed and not paid. This will also end the Flight Attendant's per diem.

c.   Reserve Flight Attendants

(i)   A Reserve Flight Attendant may alter or deviate from the original deadhead flight assignment only if the deadhead is the final leg of a trip and he/she has previously contacted Crew Scheduling.

(ii)   Should a Reserve Flight Attendant decide to deviate from his/her scheduled deadhead, the deadhead leg will be removed and not paid. This will also end the Flight Attendant's per

FRONTIER AIRLINES (R. BRIGHAM) - 0000885

0728

diem

(iii)    If a Reserve Flight Attendant chooses to deviate from the original assigned deadhead assignment, he/she is responsible for his/her own travel and is still considered to be on duty at the arrival time of the originally scheduled deadhead flight unless released by Crew Scheduling.

**Example:** Flight Attendant Jenny is on Reserve. She was scheduled for a Kansas City overnight with a deadhead home the next afternoon at 1615. Jenny would like to come home immediately after arriving in Kansas City. She contacts Crew Scheduling and invokes her option to deviate from her assignment. Jenny will be released and allowed to travel home and will be placed back on duty (Reserve) the following day at 1700 when she was originally scheduled to arrive at her base.

DD.    **CHARTER FLYING**

1.    "Charter Flying" refers to a duty period that includes one or all of the following:

    a.    Scheduled service required to position to/from a charter;

    b.    Aircraft ferry flights required to position to/from a charter;

    c.    A charter flight.

2.    Charter flying may exceed duty limitations given the crew complement satisfies FAR requirements (FAR 121.467).

3.    All schedule changes made to charter flying will fall under the "Reschedule" provision of this section, regardless of the time made.

4.    Charter flying is client driven not schedule driven, so wait times may be extended.

5.    Inflight works with the charter client to plan and provide food and beverage selections on a charter flight. Inflight may provide flight-specific instructions for in-flight service. Flight Attendants working a charter flight must follow the instructions provided.

6.    The same FARs and Inflight procedures as scheduled service are in effect for charter flights. Required announcements, compliance checks, etc., must be performed along with any additional

FRONTIER AIRLINES (R. BRIGHAM) - 0000886
0729

instructions.

7.    The Onboard Charter Coordinator (OCC) provided by Frontier acts
as a liaison between the client and Frontier to facilitate
communication and handle issues that may arise. Not all charter
flights require an OCC.

8.    Premium Service

a.    For charter flights requiring premium service, an
additional Flight Attendant may be assigned

b.    Flight Attendant must be premium service qualified and
in good standing.

c.    Premium service qualified Flight Attendants will receive
written notification of upcoming charter trips for that bid
period.

d.    Premium service qualified Flight Attendants must
provide written notification to Inflight by the deadline.

e.    Trips are awarded based on seniority. Trips are assigned
before bids close.

FRONTIER AIRLINES (R. BRIGHAM) - 0000887
0730

## ARTICLE 6
## RESERVE FLIGHT ATTENDANTS

A.     **RESERVE FLIGHT ATTENDANTS - GENERAL**

    1.     General Guidelines

        a      A "Reserve" is an active Flight Attendant with assigned days on call but no assigned line of flying.

        b.     Reserve lines will be constructed with two or more consecutive days off. A Reserve may choose to waive down to a single day off via the Automated Bid System during the Reserve Automated Bid System process. Crew Planning may adjust a Reserve to a single day off only for transition periods.

        c.     Reserve Flight Attendants will be on-call 24 hours, midnight to midnight, as indicated by "R", "RSV" or "RSN" (RSN – for Mixed Line holders) on his/her schedule, unless released by Crew Scheduling.

        d.     Reserve lines will be constructed with a minimum of three consecutive "R" days unless adjusted by Crew Resources for transition periods, which could result in a single day of Reserve duty.

        e.     Reserve lines will be constructed with Recurrent Training as a pre-planned absence and will count toward the 75 hour guarantee. Recurrent Training must be scheduled adjacent to a group consisting of three or more consecutive Reserve days either prior to a block of Reserve days or following a block of Reserve days. Recurrent Training will not be scheduled in the middle of a block of Reserve days or scheduled to create a stand-alone Reserve day. Reserves attending Recurrent Training require a minimum of 10 hours rest in base before and after Recurrent Training.

        f.     A minimum of 11 days free from duty will be scheduled in every Reserve line per bid period. A Flight Attendant awarded a Mixed Line will be scheduled with a minimum of 10 days free from duty.

        g.     A Reserve Flight Attendant may be assigned scheduled and non-scheduled trips as well as Ready Reserve duty.

B.     **CONTACT AND REPORT TIME GUIDELINES**

    1.     A Reserve Flight Attendant will ensure that Crew Scheduling has reliable contact telephone number(s) for all periods of Reserve and must be available for contact at all times while on Reserve

FRONTIER AIRLINES (R. BRIGHAM) - 0000888
0731

status, unless released by Crew Scheduling. The contact phone number must have voicemail capability.

2.   A Reserve Flight Attendant must be able to report to the crew lounge or the aircraft, as assigned by Crew Scheduling, within two hours.

3.   In the event the Reserve Flight Attendant is left a message while on call-out status, he/she must respond to Crew Scheduling within 15 minutes. A Reserve Flight Attendant who fails to respond within 15 minutes will be listed as Unable To Contact. If the initial notification attempt was for a short call, the two-hour report time begins at the time Crew Scheduling made the initial call, not at the callback time. The Reserve Flight Attendant is responsible for making the original two-hour report time.

C.   **AGGRESSIVE RESERVE ASSIGNMENTS**

*NOTE: All times will be considered Local Headquarters Time (IND) unless otherwise noted.*

1.   From 1500 to 1800 all open trips that report on the following calendar day will be made available for bidding in the Aggressive Reserve Folder in the Automated Bid System. Aggressive Reserve awards will be processed prior to the normal Reserve assignment process and will be awarded on a first-requested, first-awarded basis. Aggressive Reserve requests are time-stamped in the Automated Bid System and will be processed in order of the earliest time-stamp to the latest time-stamp.

2.   A Reserve Flight Attendant can only bid Aggressive Reserve trips that fall within their available Reserve days. Trips will be awarded on a first-requested, first-awarded basis to Reserve Flight Attendants whose days of availability match the length of the trip. However, a trip may be awarded to a Reserve Flight Attendant that is shorter than the length of available days based on, but not limited to, operational factors and available staffing.

3.   Crew Scheduling may deny an Aggressive Reserve bid if the assignment of the trip will result in a Reserve having a projected credit of more than 75 hours for the bid period. This excludes Mixed Line Flight Attendants.

4.   A Reserve assignment for the current day will take precedence over an Aggressive Reserve award.

5.   Reserves may use the Aggressive Reserve process to combine open trips with an existing assignment. Minimum connection time (60 minutes for domestic; 75 minutes for international) will apply when combining Open Time trips.

6.   Reserve Flight Attendants will be responsible to check responses

FRONTIER AIRLINES (R. BRIGHAM) - 0000889
0732

(Approval/Denial) in the Aggressive Reserve Folder on the Automated Bid System. Approved/Denied bids (Trip, Ready Reserve, Reserve No-Fly Days, etc.), will be published by Crew Scheduling in the Automated Bid System, and will be considered confirmation of awards/denials. All release time requirements will apply.

7.   Crew Scheduling may deny an Aggressive Reserve bid if the bid does not satisfy all duty and rest requirements.

8.   Trips not awarded through Aggressive Reserve will be assigned through the Trip Assignment Process below.

D.   **TRIP ASSIGNMENT PROCESS**

1.   Reserve assignments are made based on, but not limited to, accrued bid period credit, days available, Ready Reserve shifts worked during the bid period, and Flight Attendant legality. If multiple Flight Attendants match a trip length (e.g. four days of availability for a four-day trip) the Flight Attendant with the lowest accrued bid period credit will usually receive the trip. A Reserve Flight Attendant's credit calculation will not include any credited time picked up on a Reserve's days off. However, the credit time will include accrued bid period paid days such as Vacation, Sick, Funeral, Jury, Company Business, Union Business and Recurrent Training or other scheduled training.

2.   Reserves will be provided as much advance notification of assignments as possible. Reserve assignments for the following day will begin after 1800 (base local time).

3.   When a Reserve Flight Attendant is on a day off and needs to be given an assignment for the next day, Crew Scheduling will attempt to contact the Flight Attendant by phone during the hours of 1400-2300 (base local time).

a.   The Flight Attendant is not required to answer the phone but is responsible for the assignment given.

b.   If the Flight Attendant chooses not to return a call from Crew Scheduling prior to the Reserve day beginning at 0001, Crew Scheduling will notify the Reserve while he/she is on call-out status.

4.   When a Reserve is on a legal rest and needs to be given a new assignment, Crew Scheduling will attempt to contact the Flight Attendant during the first two hours or last two hours of the rest period, unless there is an emergency or operational necessity.

5.   A courtesy telephone call from Crew Scheduling during a rest period or day off does not constitute an interruption of a Reserve's rest.

FRONTIER AIRLINES (R. BRIGHAM) - 0000890
0733

6.  Reserves will not be able to make requests to Crew Scheduling involving specific assignment preferences such as layovers, types of trips, or Ready Reserve shifts, with the exception of requests submitted during the Aggressive Reserve process.

7.  A Reserve may not drop or trade a trip assigned by Crew Scheduling.

E.  **RED-EYE ASSIGNMENTS**

1.  A Reserve Flight Attendant will be released to 12 hours free from duty when inbound from a red-eye flight into home base. The Reserve Flight Attendant should remind Crew Scheduling that he/she completed a red-eye flight when he/she calls to be released from duty so that the appropriate rest time can be reflected in CrewTrac (or replacement software). A Reserve Flight Attendant will not be assigned to a flight following a red-eye flight unless it is part of the original trip pairing.

2.  The Company will not assign a Reserve Flight Attendant to a red-eye flight after an AM Ready Reserve assignment or a previous trip that returns prior to 1400 the same day (base local time), unless the assignment will prevent a Junior Assignment.

F.  **READY RESERVE (AIRPORT STANDBY)**

1.  Ready Reserve shifts will usually be scheduled for six hours and may be adjusted to eight hours as required by operational or staffing needs. Shift start and end times may be adjusted to accommodate schedule changes. Reserve Flight Attendants will submit Ready Reserve shift preferences for the following day in the Automated Bid System Aggressive Reserve Folder between 1500 and 1800 and assignments will be based on a first-requested, first-awarded basis for those Flight Attendants who will be assigned Ready Reserve. At no time will a Flight Attendant be assigned a Ready Reserve shift that results in a legality conflict.

2.  A Flight Attendant assigned to sit Reserve in another base will be paid per diem as well as provided hotel accommodations when sitting multi-day Reserve assignments. These Reserve assignments will not exceed 6 consecutive days from report to release at his/her base. All work rules applicable to Reserve Flight Attendants apply when assigned Reserve shifts out of base.

3.  Ready Reserve shifts will be designated in CrewTrac (or replacement software) as follows:

    a.  RSA - AM shift
    b.  RSB - Mid-day shift
    c.  RSC - PM shift
    d.  RSD - Night Shift

FRONTIER AIRLINES (R. BRIGHAM) - 0000891

0734

4. Ready Reserve shifts will be paid at a 1-for-2 value (one Credit Hour for every two hours on Ready Reserve). If a Ready Reserve is released early or extended, the credit for the shift will reflect the change. If a Ready Reserve is given a trip while sitting a Ready Reserve shift, the release time and shift credit will be adjusted to reflect an updated 1-for-2 credit and an end time of 0:01 minute prior to the report of the trip assignment. The Ready Reserve will receive both the Ready Reserve shift credit in addition to any flight time flown that day.

**Example:** A Ready Reserve sits six hours in the crew lounge but is not given an assignment. The Ready Reserve is released for base rest and is given three hours credit toward the guarantee for the bid period.

**Example:** A Ready Reserve receives a call from Crew Scheduling for a 1000 report time, flying an ATL turn worth six hours of credit. The Ready Reserve started the day at 0700 and will receive 1:30 credit for their Ready Reserve shift from 0700 to 1000, as well as six hours credit for the ATL turn.

**Example:** A Ready Reserve is scheduled to sit for six hours and is released after five hours to crew rest for an early trip the next day. The Reserve will receive 2:30 of credit for actual sit time.

G. **RELEASE FROM DUTY**

1. A Reserve Flight Attendant completing any Reserve assignment will contact Crew Scheduling before leaving the airport for release or reassignment.

2. Reserves will be released from on-call duty after a flight assignment based on the duty day as follows:

   a. When the last duty period of an assignment is less than 10 hours, the Reserve will be: given an additional flight or Ready Reserve assignment; placed back on-call; or released.

   b. When the last duty period of an assignment is 10 hours or more, the Reserve will be released to rest or to days off, except in irregular operations situations.

3. Reserves will be released from Reserve status until report time of their next assignment upon notification of that assignment, based on when the assignment reports the next day. If an assignment for the next day reports before 1200 (base local time), the Reserve will be released at the time of notification until the report time. If the assignment for the next day reports on or after 1200 (base local time), the Reserve will be released at 2359 (base local time) until the report time.

4.   A Reserve returning from a flight assignment at 1600 (base local time) or later on the last day of a block of Reserve days will be: given another flight assignment or Ready Reserve assignment; or released into days off. A Reserve will not be placed back on-call. It will remain the Reserve's responsibility to contact Crew Scheduling for release.

5.   A Reserve Flight Attendant who has not been called on his/her last day of a block of Reserve days may call Crew Scheduling after 1800 (base local time) to be released into his/her days off.

H.   **SCHEDULE ADJUSTMENTS**

1.   Reserve Flight Attendants are able to pick up Open Time and utilize the Flight Attendant TradeBoard. Reserve Flight Attendants will also be permitted to sign up for Will-Fly (WIL) status provided all rest requirements are met.

2.   Reserve Flight Attendant Open Time Procedures

a.   Reserve Flight Attendants picking up Open Time will be required to have a minimum 10 hour rest period before/after any trip report/release. A Reserve must also be scheduled to have a calendar day off in any seven-day period. All trip additions are subject to all rest requirements as set forth by this Agreement and the FARs.

b.   Requests for trips that add duty periods for the last six days of a bid period will not be allowed until 1400 on the 18th.

c.   Reserves will be paid at straight time rate for hours picked up on days off in addition to their 75-hour guarantee. Should a Reserve fly more than 86 hours, the overtime rate (1.5) will be paid for the hours beyond 86. Credit for Ready Reserve shifts will apply towards the 86 hours.

d.   A Reserve Flight Attendant, on his/her last day of a Reserve period, who has picked up a trip for the following day that causes a 10-hour rest violation, will not be pay protected for the trip or any portion of the trip that makes them illegal. The Reserve Flight Attendant will complete any portion of the added trip that is legal.

e.   Reserve Flight Attendants who ADD/SWAP a non-Reserve trip from Open Time will be considered a Line Holder for any schedule changes or irregular operations during that trip.

FRONTIER AIRLINES (R. BRIGHAM) - 0000893

3.   Reserve Flight Attendant TradeBoard Procedures:

    a.   Reserve Flight Attendants picking up trips off the Flight Attendant TradeBoard will be required to have a minimum 10 hour rest period before/after any trip report/release. A Reserve must also be scheduled to have a calendar day off in any seven-day period. All trip additions are subject to all rest requirements of this Agreement.

    b.   Requests for trips that add duty periods for the last six days of a bid period will not be allowed until 1400 on the 18th.

    c.   Reserves will be paid at straight time rate for hours picked up on days off in addition to their 75-hour guarantee. Should a Reserve fly more than 86 hours, the overtime rate (1.5) will be paid for the hours beyond 86. Credit for Ready Reserve shifts will apply towards the 86 hours.

    d.   A Reserve Flight Attendant, on his/her last day of a Reserve period, who has picked up a trip for the following day that causes a 10-hour rest violation, will not be pay protected for the trip or any portion of the trip that makes them illegal. The Reserve Flight Attendant will complete any portion of the added trip that is legal.

    e.   A Reserve Flight Attendant wanting to trade a Reserve day must have at least one other Reserve day before/after the Reserve day being traded. The Reserve day trade cannot result in a single Reserve day. All Reserve Trades must be Reserve day for Reserve day.

    f.   Reserve Flight Attendants who ADD/TRADE a non-Reserve trip from the TradeBoard will be considered a Line Holder for any schedule changes or irregular operations during that trip.

    g.   Reserve Flight Attendants may trade Reserve days only with other Reserve Flight Attendants or Mixed Line holders.

4.   Reserve Day Drop (No-Fly)

    a.   On days of sufficient reserve coverage, the Company may offer Reserve No-Fly Days (RNF). Reserve Flight Attendants will submit a bid for a RNF in the Aggressive Reserve Folder in the Automated Bid System. Bids will only be considered for a single Reserve period for the following calendar day. Awards will be on a first-requested, first-awarded basis. Reserve Flight

FRONTIER AIRLINES (R. BRIGHAM) - 0000894

0737

Attendants awarded a RNF will lose the four hours credit for the dropped Reserve day.

b.  The approval/denial of any bids will be based on staffing, any potential system disruptions, and the ability to retain an adequate number of Reserves that are available for multi-day trips.

c.  A maximum of three RNFs may be awarded to any Reserve Flight Attendant in each bid period. A Flight Attendant will be considered notified of a RNF if the drop request is marked approved in the Automated Bid System. A Reserve Flight Attendant approved a RNF will not be released until 2359 (base local time), the end of the current Reserve period, unless released by Crew Scheduling.

**Example:** Sally P. has placed a request in Aggressive Reserve for a RNF day for tomorrow. At 1800, Crew Scheduling approves the request. Sally P. is still on Reserve for the remainder of today. Crew Scheduling calls Sally P. at 1900 for a Stand-up that night. Sally P. must take the trip, as today's operation takes precedence over tomorrow. Sally P.'s RNF day will now be removed.

**Example:** Johnny W. has placed a request in Aggressive Reserve for a RNF day for tomorrow. At 1800, Crew Scheduling approves the request. Johnny W. is still on Reserve for the remainder of today. At 2100, Johnny W. calls Crew Scheduling to be released for the day and they approve that request. Johnny W. will be released for the remainder of the night and will have a RNF day the next day.

I.  **SHORT CALL LIST**

1.  Reserves will have the daily option of placing themselves on a Short Call List (to be assigned for call-outs two hours or less) via a telephone call to Crew Scheduling. The Reserve Flight Attendant will inform Crew Scheduling of their desire to be on the Short Call List by stating, "(Flight Attendant name and Employee Number) – I would like to be placed on the Short Call List for today." Crew Scheduling may assign these Flight Attendants out of assignment order. If a Reserve is given an assignment based on this preference and criteria, the Reserve may not reject the assignment.

2.  All Contact and Report Time Guidelines will apply to a Short Call assignment.

**Example:** Mary calls Crew Scheduling at 1000 and says: "This is Mary Smith, employee number 9999, and I would like to be

FRONTIER AIRLINES (R. BRIGHAM) - 0000895
0738

placed on the Short Call List for today." Crew Scheduling calls Mary at 1230 and tells her that they have a trip for her that departs two hours from the time of the phone call. Mary is required to take the trip and will need to report within two hours of the original call from Crew Scheduling.

J.   **MIXED LINES**

    1.    General Guidelines

        a.    Flight Attendants awarded Reserve status during the monthly bid will have the opportunity to participate in a secondary bid, called Mixed Lines, when offered by the Company. Mixed Lines will be built by the Company and will have a credit value of at least 75 hours. Mixed Lines may not be offered every bid period. When the Company builds Mixed Lines, they may be built in one of the following ways:

            (i)    Mixed Lines may contain any combination of trips and Reserve days; or

            (ii)    Mixed Lines may contain only trips.

        b.    Each Reserve day on a Mixed Line will carry a minimum credit value of 4 hours.

        c.    Mixed Lines will be built by Crew Resources and will be posted in the Automated Bid System as a secondary bid after the initial Automated Bid System award and before the Reserve line award, when available. Mixed Line bidding will open each month on the 16th day at 1600. Bidding will conclude on the 17th day at 1400 each month.

        d.    Mixed Lines will be constructed with a minimum of 40 credited trip hours. Reserve days will be added to bring the Mixed Line value to a minimum of 75 credit hours. Reserve days for Mixed Lines will have a value of four hours each. When a Mixed Line Flight Attendant is assigned trips on Reserve days, pay protections apply only to the block of Reserve days, not single days of Reserve.

            **Example:** Mary has a block of three RSN days worth 12 hours total. Crew Scheduling assigns her a three-day trip worth 15 hours total, but the first day of the trip is only worth 2:30. Mary will be credited the full 15 hours of the trip and no further pay protections are necessary because the trip was worth more than 12 hours of RSN time for all three RSN days.

            **Example:** Johnny also has a block of three RSN days.

FROM**0739**AIRLINES (R. BRIGHAM) - 0000896

Crew Scheduling assigns him a two-day trip worth 7:17 and he stayed at home on the third RSN day. Johnny is pay protected 43 minutes since the original value of his two RSN days was eight hours. He still receives four hours credit for the third RSN day in this block because he sat at home waiting to be assigned.

e. A transition conflict is any interference or illegality from the current bid period to the following bid period. Transition conflicts for Mixed Line holders will be resolved in the following manner:

(i) If a trip that begins in the current bid period conflicts with another trip in the following bid period, the transition conflict will be resolved by dropping the minimum amount of time necessary to resolve the conflict or illegality. This adjustment will be made in the following bid period rather than the current bid period and such adjustment will be made at the beginning or end of a trip. The Flight Attendant will not be pay protected for the time dropped.

**Example:** Mary has a trip that reports on the last day of the current bid period and returns on the second of the following bid period. Mary's Mixed Line award for the following bid period begins with a two-day trip that reports on the first. Mary will be removed from the entire two-day trip, as it returns on the second, prior to the arrival of her four-day trip from the previous bid period. Mary lost 10 hours as a result of the removal. She is still at 65 hours so no adjustment needs to be made to her bid period.

(ii) If a trip that begins in the current bid period conflicts with a scheduled Reserve day in the following bid period, the transition conflict will be resolved by adjusting the Reserve code to begin immediately following the debrief of the trip. After completing the transition trip, the Mixed Line Flight Attendant will call Crew Scheduling before leaving the airport for a Reserve assignment or release. A Reserve assignment or release will be based on the duty day upon completing the carry-over trip:

a) If the duty day is less than 10 hours, the Flight Attendant will be: given a flight assignment or Ready Reserve assignment; placed on-call; or released. The Flight

FRONTIER AIRLINES (R. BRIGHAM) - 0000897

0740

Attendant will be pay credited for the greater of the flight time flown or 4.0 hours.

b)   If the duty day is 10 hours or more, the Flight Attendant will be released to rest or to days off, except in irregular operation situations. The Flight Attendant will be pay credited for the greater of the flight time flown or 4.0 hours.

**Example:**  Mary has a trip that reports on the last day of the current bid period and returns on the second of the following bid period. Mary's Mixed Line award for the following bid period begins with Reserve days scheduled on the second and third. Mary must call Crew Scheduling before leaving the airport to be released or given an assignment. She's been on duty for less than 10 hours so Crew Scheduling may assign her: to another trip or Ready Reserve; Reserve status; or release her to rest. Mary has already flown three hours on the second so her pay credit for the day depends on any additional assignments. If she is released from Reserve status, she will receive four hours of pay credit for the day.

f.   It is the Mixed Line Flight Attendant's responsibility to ensure he/she is above 60 credit hours by the end of the bid period. Flight Attendants may call Crew Planning before the 7th of the month to request Reserve days be added to their schedule to bring them above 60 hours. If the Flight Attendant falls below 60 hours, Crew Planning may balance the Flight Attendant on the 7th of the month by adding or swapping trips and/or adding additional Reserve days.

2.   Mixed Line Non-Reserve Day Guidelines

a.   Mixed Line Flight Attendants may not end the bid period below 60 credit hours.

b.   Mixed Line Flight Attendants have full access to all Open Time processes and Trip Trades.

c.   Mixed Lines will initially be built to a minimum credit of 75 hours. The minimum 75 credit hours will include trip credit, Reserve day credit, and any applicable absence credit.

FRONTIER AIRLINES (R. BRIGHAM) - 0000898
0741

    d.      All applicable rules pertaining to Line Holders will apply to Mixed Line Flight Attendants when not on a Reserve day.

3.      Mixed Line Reserve Day Guidelines

    a.      Mixed Line Flight Attendants will be on call 24 hours, midnight-to-midnight, as indicated by "RSN" on his/her schedule, unless released by Crew Scheduling.

    b.      Rules governing ADD/SWAP/TRADE adjacent to any Reserve days will apply.

    c.      Only credit time on RSN days and applicable absence credit will count towards the Reserve credit calculation and the assignment of Mixed Line Flight Attendants on RSN days.

    d.      All other Reserve rules will apply to Mixed Line Flight Attendants on their Reserve days.

    e.      A Mixed Line holder may trade Reserve days only with Reserves or other Mixed Line holders. All Reserve Trades must be Reserve day for Reserve day.

4.      Mixed Line Vacation

    a.      Flight Attendants will receive paid vacation. Flight Attendant vacation awards will be granted in seniority order. Flight Attendants will bid vacation based on their projected accrual as of December 31st.

    b.      The number of guaranteed days off in the bid award will be prorated during bid periods with pre-awarded absences (vacation, etc.). (See the Reserve FA Absence Proration Table below.)

    c.      Accrued but unused vacation will be paid in the event of furlough, retirement, or termination according to the terms of this Agreement. If any vacation days are not scheduled to be used by December 31st of the current year, they will be paid no later than January 21st of the next consecutive calendar year. Unused vacation for the current calendar year cannot be carried into the next calendar year.

    d.      Crew Planning will handle all vacation records and will administer the vacation bidding process via the Automated Bidding System.

    e.      All vacation days are earned based on accrual rate.

FRONTIER AIRLINES (R. BRIGHAM) - 0000899

Accrual rate increases on the Flight Attendant's 5- and 10-year Company anniversary dates. All vacation earned in the current year is taken next year.

f.   Mixed Line Flight Attendants may slide their vacation, a maximum of three days, during the pre-award period. Vacation slides may not be between bid periods.

g.   If Mixed Line Flight Attendant has a transition trip that overlaps an awarded vacation day(s) and the Flight Attendant chooses not to slide his/her vacation, the overlapping portion of the trip will be dropped without pay if the trip can be split in base. Otherwise, the entire trip will be dropped to resolve the conflict, and the Mixed Line Flight Attendant will not be pay protected.

h.   The credit value for each day of vacation will be 3 hours per vacation day.

K.   **RESERVE LINE VACATION**

1.   Reserve Flight Attendants will receive paid vacation. Flight Attendant vacation awards will be granted in seniority order. Flight Attendants will bid vacation based on their projected accrual as of December 31st.

2.   Number of guaranteed days off in bid award will be prorated during bid periods with pre-awarded absences (vacation, etc.)

3.   Accrued but unused vacation will be paid in the event of furlough, retirement, or termination according to the terms of this Agreement. If any vacation days are not scheduled to be used by December 31st of the current year, they will be paid no later than January 21st of the next consecutive calendar year. Unused vacation for the current calendar year cannot be carried over into the next calendar year.

4.   Crew Planning will handle all vacation records and will administer the vacation bidding process via the Automated Bid System.

5.   All vacation days are earned based on accrual rate. Accrual rate increases on the Flight Attendant's 5- and 10- year Company anniversary dates. All vacation earned in the current year is taken next year.

6.   Flight Attendants may slide their vacation, a maximum of three days, during the pre-award period. Vacation slides may not be between bid periods.

7.   The credit value for each day of vacation will be 3 hours per day.

L.    **RESERVE FLIGHT ATTENDANT ABSENCE PRORATION TABLE**

*NOTE: Awarded Days Off does NOT include Vacation Days, etc.*

| 30-DAY MONTH | | 31-DAY MONTH | |
|---|---|---|---|
| TOTAL DAYS ABSENT | AWARDED DAYS OFF | TOTAL DAYS ABSENT | AWARDED DAYS OFF |
| 1 | 11 | 1 | 11 |
| 2-4 | 10 | 2-4 | 10 |
| 5-6 | 9 | 5-7 | 9 |
| 7-9 | 8 | 8-9 | 8 |
| 10-12 | 7 | 10-12 | 7 |
| 13-15 | 6 | 13-15 | 6 |
| 16-17 | 5 | 16-18 | 5 |
| 18-20 | 4 | 19-21 | 4 |
| 21-23 | 3 | 22-23 | 3 |
| 24-25 | 2 | 24-26 | 2 |
| 26-28 | 1 | 27-29 | 1 |
| 29-30 | 0 | 30-31 | 0 |

**Example:**  John Q Reserve Flight Attendant has seven days of vacation (Total Absence Days) in a bid period that is a 30-day Month. According to the proration chart, John will get seven days of Vacation in his bid and will receive eight additional awarded days off.

M.    **RESERVE CODES**

*NOTE: Reserve codes are subject to change.*

| Code | Definition | Description |
|---|---|---|
| RSV and/or R | Reserve – Normal Line | Reserve day 0000-2359 (base local time) unless adjusted by Crew Scheduling due to assignment or legalities. |
| RSN | Mixed Line FAs Reserve Days | Reserve day on a Mixed Line 0000-2359 (base local time) unless adjusted by Crew Scheduling due to assignment or legalities. |
| RSA | Ready Reserve – AM | Reserve shift at the airport on immediate standby status during the AM hours. This counts as duty for legality purposes. |
| RSB | Ready Reserve – MID | Reserve shift at the airport on immediate standby status during the late AM / early PM hours. This counts as duty for legality purposes. |
| RSC | Ready Reserve – PM | Reserve shift at the airport on immediate standby status during the PM hours. This counts as duty for legality purposes. |
| RSD | Ready Reserve – Stand-up/Red-Eye | Reserve shift at the airport on immediate standby status during the late PM hours. This counts as duty for legality purposes. |

FRONTIER AIRLINES (R. BRIGHAM) - 0000901
0744

| RNF | Reserve No-fly Day | Day off from Reserve, bid via the Aggressive Reserve Process. A maximum of three RNF days may be awarded per Reserve Flight Attendant. |
|-----|--------------------|--------------------------------------------------|
| "X" | Required Day Off | In Reserve Awards on the Automated Bid System, this indicates a required day off due to legalities. |
| "W" | Pre-assigned Work Day | In Reserve Awards on the Automated Bid System, this indicates a work day that has been pre-awarded prior to the Reserve bid. Includes Recurrent Training, Company Business, etc. |
| "V" | Vacation Day | In Reserve Awards on the Automated Bid System, this indicates a Vacation Day. |
| "O" | Pre-assigned Day Off | In Reserve Awards on the Automated Bid System, this is a pre-assigned day off that will count as one of the required days off. |
| "L" | Pre-assigned Leave | In Reserve Awards on the Automated Bid System, this indicates a non-work day, and required days off will be prorated. (See the Reserve Flight Attendant Absence Proration Table above). |
| "P" | Transition Pairing | In Reserve Awards on the Automated Bid System, this indicates a work day, but it may not exceed six days in a row (i.e., 1 in 7 applies). |

Page 67 of 123

## ARTICLE 7
## TRAINING

A.  **CLASSROOM REQUIREMENTS**

     1.    Due to FAA classroom content restrictions, Inflight Training must operate under strict attendance policies. The following policies apply to all required training events.

     2.    Class begins promptly at the published start time.

     3.    If a Flight Attendant arrives to training up to 9 minutes late, he/she will be allowed to stay in class, but may be subject to discipline.

     4.    If a Flight Attendant arrives to training 10 or more minutes late, he/she will be dismissed from class, re-scheduled for another training date on a day off, and may be subject to discipline.

B.  **REQUIREMENTS FOR ATTENDING RECURRENT TRAINING**

Online Exam:

     1.    All Flight Attendants must successfully pass Recurrent Training exam before attending class.

     2.    Exam will be posted on the Company's computer based training website by the 5th of the month prior to attending Recurrent Training. First attempt of the exam is offered online. If a Flight Attendant fails the online exam, a second attempt will be conducted using a paper test. The Flight Attendant must contact Inflight Training to schedule a retake of a failed online examination. If the second attempt is unsuccessful, the Flight Attendant will be separated from company.

     3.    If a Flight Attendant attends class without taking or passing the exam, the Flight Attendant will be dismissed from class, re-scheduled for another training date on a day off, and may be subject to discipline.

C.  **TRADING RECURRENT TRAINING DATES**

     1.    The Inflight Training department will handle all qualification training records and Crew Planning will administer the training bidding/trading process via the Automated Bid System.

     2.    A Flight Attendant may trade a scheduled recurrent training date with any open recurrent date or with another Flight Attendant. Requests must be in compliance with duty and rest limitations as established by this Agreement and FARs.

     3.    TRADE/SWAP of Recurrent Training dates starts at noon on the

FRONTIER AIRLINES (R. BRIGHAM) - 0000903
0746

18th of the month prior to attending class. TRADES/SWAPS are allowed until 72 hours prior to scheduled Recurrent Training date. TRADE/SWAP requests are made via the Automated Bid System.

4.   Two options are available for trading a scheduled recurrent training date:

   a.   Trade with open class slots:  Trades are granted only if space is available in the requested class date and awarded first come, first serve via the Automated Bid System.

   b.   Trades with another Flight Attendant:  All Recurrent Training trades will be completed via the Automated Bid System.

5.   Line Holders and Reserve Flight Attendants are eligible for Recurrent Training trades. Reserves using the Recurrent Training trade process will be subject to the limitations set forth in this Agreement, as well as the limitations outlined above.

6.   Neither Crew Scheduling/Crew Planning, nor Inflight Management will enter, modify or remove any request in the Automated Bid System for a Flight Attendant.

7.   Notifications of status of trades will be reflected in the Automated Bid System as well as CrewTrac (or replacement software).

8.   Trades must be made on scheduled days off and all legalities must be met.

9.   All Recurrent Training trades must be done in the bid period of the Flight Attendant's Recurrent Training event. Recurrent Training trades cannot take place from one bid period to another.

D.   **TRAINING OUT-OF-BASE**

   1.   Travel to a training event away from a Flight Attendant's base will be positive space must ride.

   2.   The Company is solely responsible for arranging travel for any Flight Attendant attending a training event away from his/her base. The Company will consider any personal schedule conflicts brought to its attention by the Flight Attendant regarding the day of travel and will make an effort to work with the Flight Attendant arrange an accommodating travel itinerary for the scheduled day of travel.

FRONTIER AIRLINES (R. BRIGHAM) - 0000904

# ARTICLE 8
# SICK LEAVE

A.   **ACCRUAL**

1.   Sick leave will accrue at the rate of 3.87 hours per month while the Flight Attendant is on active service. This accrual for full-time Flight Attendants is equal to 8 days for a full year of service.

2.   Sick leave is not accrued while on furlough or leave of absence.

3.   Sick leave accrual will be reduced by 50% each month that a Flight Attendant elects to job share, and during all months a Flight Attendant is on low-time status.

4.   A Flight Attendant will accrue a maximum of 696 hours.

5.   Earned but unused sick leave will not be paid in the event of furlough, retirement, or termination of employment, whether voluntary or involuntary, but will be retained while a Flight Attendant is on approved leaves of absence or furlough.

6.   Accrued sick leave is the manner in which an employee is paid when unable to work due to illness or injury. Accrued sick leave does not guarantee leave approval.

B.   **USE OF SICK LEAVE**

1.   Sick leave will be deducted from the Flight Attendant's bank on a one-for-one basis for each block hour, or portion thereof, missed because of illness or injury. If sick leave taken exceeds a Flight Attendant's bank of sick hours, he/she may take credit time from his/her vacation bank (each vacation day will be applied to sick leave in three hour increments).

2.   A Flight Attendant who wishes to apply hours from his/her vacation bank to sick leave must submit such request in writing to payroll (or as otherwise specified by the Company) by the last calendar day of the month. When all accrued days are exhausted, the Flight Attendant may be placed on unpaid medical leave. If the illness is covered by the Family and Medical Leave Act, the Flight Attendant must use all available sick accrual.

3.   A Flight Attendant may not use company pass benefits (including pass riders) while on sick leave without management approval.

C.   **REPLENISHMENT OF SICK BANK**

1.   A Flight Attendant may replenish his/her sick leave bank by picking up Open Time, unless he/she subsequently drops, or calls in sick for, that Open Time.

FRONTIER AIRLINES (R. BRIGHAM) - 0000905

0748

2.  A Reserve Flight Attendant may only replenish his/her sick leave bank by picking up Open Time on a scheduled day off, or by adding a Reserve block to the beginning or end of an already scheduled Reserve block, provided the additional Reserve block is within the duty time and rest limitations of this Agreement and the FARs.

3.  Replenishment of sick leave bank will be on a one-for-one basis for each block hour flown, or portion thereof, that the Flight Attendant designates in accordance with this Article. Open Time that is picked up and subsequently replaced with Company Business may also be used to replenish the sick leave bank.

4.  If a Flight Attendant wishes to replenish his/her sick leave bank, he/she must do so within the next two full Monthly Bid Periods of using such sick leave.

    **Example:** Bill calls in sick for a 6 hour trip on July 10. If he wishes to replenish his sick bank, he must do so no later than the end of September (i.e. the next two full Monthly Bid Periods following July are August and September).

5.  A Flight Attendant must designate to payroll the sick date(s) for which the Flight Attendant wishes to apply picked up Open Time by the end of the Monthly Bid Period in which he/she picked up the Open Time.

    **Example:** Same facts as above. Bill picks up an 8 hour turn on his day o ff on August 12. Bill must contact payroll by August 31 to designate these hours to replenish his sick bank for the hours deducted on July 10. Payroll will apply 6 of the 8 hours to replenish Bill's sick bank, and the remaining two hours will be credited to his regular paycheck.

    **Example:** Jenny calls in sick for three Reserve days in February. Twelve hours will be deducted from her sick bank (four hours per day). She picks up an 8 hour two-day trip on her days off in March. She must contact payroll no later than March 31 if she wishes to apply those 8 hours to replenish 8 of the 12 sick bank hours deducted for her February sick call.

D.  **SICK CALLS**

1.  A Flight Attendant who is unable to report for work because of illness or off-the-job injury will notify Crew Scheduling as soon as possible.

2.  If a Flight Attendant is not able to contact Crew Scheduling, he/she may leave a message but must have positive contact with Crew Scheduling prior to his/her flight.

Page 71 of 123

3.  A 2-hour notice prior to report time is required when calling in sick as a Line Holder or as a Reserve who has previously been given a trip assignment and 3-hour notice for a Reserve Flight Attendant who has not been previously assigned a trip.

4.  All calls must be made to Crew Scheduling. A Flight Attendant on Reserve duty will notify Crew Scheduling at the start of his/her duty day, not at the time of trip notification. If a Reserve is calling in sick on a day off for the following day (and has not previously been given a flight assignment), the Reserve FA has until 2200 (base local time) to call in. A Reserve Flight Attendant may be subject to discipline if he/she refuses an assignment due to illness during the actual Reserve period.

5.  If a Flight Attendant becomes too ill to complete his/her trip and must call in sick at an outstation, he/she is responsible for notifying both Crew Scheduling and the captain as soon as possible, preferably at least 2 hours prior to report time.

6.  If a sick call is either an OJI, or one of extreme circumstances, or could create any form of liability against the Company, the Flight Attendant is responsible to seek medical attention at the request of his/her Inflight Manager. If Frontier management requires the Flight Attendant to seek medical attention due to OJI or extreme circumstances, the Company will cover the medical fee.

7.  Crewmembers who become ill/injured at an outstation and cannot complete their schedule will be listed as positive space on the next available Frontier flight out (the crewmember will not bump revenue passengers).

8.  When a Reserve Flight Attendant calls in sick, he/she must call and advise Crew Scheduling the number of Reserve days he/she is expected to miss due to illness, but not to exceed the number of Reserve days remaining in their current or upcoming block of Reserve days. A Line Holder need only call in prior to each new trip when on sick leave.

9.  Line Holding Flight Attendants who are removed from a trip or a portion of a trip due to illness will not have the ability to rejoin the portion of the trip previously called in sick for or "call in well." However, Line Holding Flight Attendants may call in sick for a portion of a trip if the Flight Attendant reasonably expects to be able to return to duty from illness during the duration of the trip. If a Flight Attendant chooses to call in sick for a portion of a trip, the removal must be for an entire duty day and must begin and end in base except in cases in which the Flight Attendant is sick in an outstation.

10. Flight Attendants will only have the opportunity to split a trip due to illness once. Any subsequent sick calls for the same trip will

FRONTIER AIRLINES (R. BRIGHAM) - 0000907

result in the remainder of that trip dropped in its entirety as sick.

11.   A Flight Attendant who has completely recovered from an illness, but is unable to rejoin their original trip due to the above provision, may pick up Open Time if available to replace his/her original trip.

**Example:**  Bob has a four day trip and needs to be removed from the trip due to illness. He has the following options:  Call in sick for the entire four day trip and not have the ability to rejoin the trip if he is feeling better later and be charged sick leave for the hours missed; or call in sick for a portion of the trip as he feels he will be better by day two of the trip. In this case he will be removed from the first turn and overnight of his trip as sick and rejoin the trip at the first point it reenters base on day two. Bob will be charged sick leave for those hours he missed. Bob will not be able to rejoin the trip at any point during the first duty day, nor will he be able to call in sick for just the first turn as the sick call must be for an entire duty day.

*NOTE: For the purposes of this example, the sick call was recovered on day two. Flight Attendants may choose to recover the trip on any day of a trip as long as the entire duty day and subsequent days are recovered.*

**Example:**  Bob has a four day trip and needs to be removed from the trip due to illness. He opts to call in sick for the first duty day and recover the trip on the second duty day. Later that night Bob is not getting better and needs to call in sick for the next duty day. Because trips may only be split due to illness once, the remaining three days will be marked as sick and Bob will not be able to rejoin the sequence if he is feeling better on day three. Bob may pick up Open Time over the final two sick days of the original sequence to save his sick bank.

E.   **SICK LEAVE PAY POLICY**

1.   Sick time will be paid at a straight hourly rate. Sick time will not be included in the overtime for those who fly over 86 hours.

2.   If a Flight Attendant has submitted his/her resignation and calls in sick within the two week period prior to the resignation date, a valid doctor's note will be required in order for the Flight Attendant to receive sick pay and remain eligible for rehire.

F.   **VERIFICATION OF ILLNESS/INJURY**

1.   At the Company's discretion, a Flight Attendant may be required to produce a physician's note documenting illness or injury. The note, when required, will state:

a.   The date of illness;

FRONTIER AIRLINES (R. BRIGHAM) - 0000908

0751

b.      Date and time of examination;

c.      Medical release to return to work without restriction.

2.      During a period (e.g., Christmas Holidays, Superbowl weekend) when all Flight Attendants are required to present a doctor's note for sick calls, prior notice will be given.

3.      Frontier may request that a Flight Attendant be seen by Frontier's designated physician to ensure fitness for duty. The cost of this examination will be borne by Frontier.

FRONTIER AIRLINES (R. BRIGHAM) - 0000909
0752

## ARTICLE 9
## VACATION

A.   **GENERAL**

    1.    Flight Attendants will receive paid vacation. Flight Attendant vacation awards will be granted in seniority order. Flight Attendants will bid vacation based on their projected accrual as of December 31st.

    2.    Number of guaranteed days off in bid award will be prorated during bid periods with vacation days. See Inflight website or company provided preferential bidding info website for Vacation/Days Off Proration table.

    3.    Accrued but unused vacation will be paid in the event of furlough, retirement, or termination according to the terms of this Agreement. If any vacation days are not scheduled to be used by December 31st of the current year, they will be paid no later than January 21st of the next consecutive calendar year. Unused vacation for the current calendar year cannot be carried over into the next calendar year.

    4.    Crew Planning will handle all vacation records and will administer the vacation bidding process via the Automated Bid System.

    5.    If a Flight Attendant changes base, any scheduled unused vacation period is forfeited. Forfeited vacation periods must be replaced from Flight Attendant Vacation Open Time in the Automated Bid System for the new base.

B.   **ACCRUAL**

    1.    Vacation days will be accrued in the current calendar year to be taken in the following calendar year according to the following rates:

        a.    A Flight Attendant who, as of December 31 of any year, has less than 1 calendar year of active service with the Company will be entitled to vacation days on the basis of .58 calendar days per pay period.

        b.    A Flight Attendant who has completed 1 year or more of active service with the Company but less than 5 years of active service will accumulate vacation days on the basis of .58 calendar days per pay period, or 14 days per year.

        c.    A Flight Attendant who has completed 5 years or more of active service but less than 10 years of active service with the Company will accumulate vacation days on the basis of .88 calendar days per pay period, or 21 days per year. The Flight Attendant will accumulate 14 days plus

FRONTIER AIRLINES (R. BRIGHAM) - 0000910
0753

the additional time earned with the higher accrual after
the completion of 5 years.

d.   A Flight Attendant who has completed 10 years or more
of active service with the Company will accumulate
vacation days on the basis of 1.17 calendar days per pay
period, or 28 days per year. The Flight Attendant will
accumulate 21 days plus the additional time earned with
the higher accrual after the completion of 10 years.

2.   Vacation accrual will not continue during periods of leave without
furlough.

3.   Vacation accrual will be reduced by 50% each bid period that a
Flight Attendant elects to job share, and during all bid periods a
Flight Attendant is on low-time status.

4.   The credit value of a vacation day is 3 hours per vacation day.

C.   **VACATION BIDDING**

1.   Bidding for annual vacation will be accomplished in four rounds.
Vacation periods that are bid consecutively (adjacent periods) will
count as one choice. A Flight Attendant who does not bid a
sufficient number of choices in any round to receive an award will
have any remaining vacation carried into the next round.

2.   Vacation periods of 10 days or fewer will be taken as one period.

3.   Any vacation period of 11 days or more may be split.

4.   Split vacation periods will contain one period of not fewer than 7
calendar days.

5.   Vacations may be split according to the following:

a.   Blocks of 7 days;

b.   Multiples of 7 days (e.g. 7, 14, 21);

c.   Blocks of 7 plus any additional days up to 13;

d.   10 days or fewer cannot be split.

6.   Vacation days may be bid at once in any one round or split in
accordance with the above.

7.   Vacation days must be bid consecutively during a vacation round.

8.   Following the fourth round awards, a Flight Attendant who has
unawarded vacation will have that vacation assigned by the
Company.

FRONTIER AIRLINES (R. BRIGHAM) - 0000911
0754

9.     Vacation bidding rounds will occur as follows:

     a.     Vacation adjustments will be made prior to the opening of the First Round Vacation Bid with company seniority and all Flight Attendant leave information (FMLA, MED, OJI, COLA, PLA, VLOA, etc.) as of August 27 of that year.

     b.     Any leaves taken after that date will require adjustments of the leave information for those Flight Attendants. When adjustments are made, a phone call will be made to the Flight Attendant notifying him/her of the vacation accrual change in the Automated Bid System. A message will be left for the Flight Attendant if positive phone contact cannot be made.

     **Example:** Suzy Flight Attendant has 2 weeks of vacation earned to bid for the following year. If Suzy elects to take a COLA (which will reduce her accrual of vacation time) prior to the close of the vacation bid, reducing her vacation to 10 days, then Suzy's vacation will be combined into one vacation slot. However, if the COLA was awarded after the bid has closed for the vacation, then Suzy will be awarded her first round choice of 7 days and her second round choice of the remaining 3 days.

10.    No later than September 1, the Company will post the First Round Vacation Bid on the Automated Bid System, covering the following calendar year. Bidding will commence immediately and close at 1100 hours on September 15. First round bids will be awarded no later than 1900 hours on September 15.

11.    No later than September 16, the Company will post the Second Round Vacation Bid on the Automated Bid System, covering the remaining vacation bid periods for the following calendar year. Bidding will commence immediately and close at 1100 hours on September 30. Second round bids will be awarded no later than 1900 hours on September 30.

12.    No later than October 1, the Company will post the Third Round Vacation Bid on the Automated Bid System, covering the remaining vacation bid periods for the following calendar year. Bidding will commence immediately and close at 1100 hours on October 15. Third round bids will be awarded no later than 1900 hours on October 15.

13.    No later than October 16 at 1900, the Company will post the Fourth Round Vacation Bid on the Automated Bid System, covering the remaining vacation bid periods for the following calendar year. Bidding will commence immediately and close at 1100 hours on November 1. Fourth round bids will be awarded no

later than 1900 hours on November 1.

14.    Flight Attendants may pick up Open Time or trip trades while on their scheduled vacation in accordance with the terms of this Agreement.

D.    **VACATION BID PERIODS**

The following periods will be used for bidding vacations:

| DATE (PERIOD) | DATE (PERIOD) | DATE (PERIOD) | DATE (PERIOD) |
|---|---|---|---|
| Jan 2-8 (1) | Jan 9-15 (2) | Jan 16-22 (3) | Jan 23-29 (4) |
| Feb 2-8 (5) | Feb 9-15 (6) | Feb 16-22 (7) | Feb 23-29 (8) |
| Mar 2-8 (9) | Mar 9-15 (10) | Mar 16-22 (11) | Mar 23-29 (12) |
| Apr 2-8 (13) | Apr 9-15 (14) | Apr 16-22 (15) | Apr 23-29 (16) |
| May 2-8 (17) | May 9-15 (18) | May 16-22 (19) | May 23-29 (20) |
| Jun 2-8 (21) | Jun 9-15 (22) | Jun 16-22 (23) | Jun 23-29 (24) |
| July 2-8 (25) | July 9-15 (26) | July 16-22 (27) | July 23-29 (28) |
| Aug 2-8 (29) | Aug 9-15 (30) | Aug 16-22 (31) | Aug 23-29 (32) |
| Sept 2-8 (33) | Sept 9-15 (34) | Sept 16-22 (35) | Sept 23-29 (36) |
| Oct 2-8 (37) | Oct 9-15 (38) | Oct 16-22 (39) | Oct 23-29 (40) |
| Nov 2-8 (41) | Nov 9-15 (42) | Nov 16-22 (43) | Nov 23-29 (44) |
| Dec 2-8 (45) | Dec 9-15 (46) | Dec 16-22 (47) | Dec 23-29 (48) |

*NOTE: There will be adjustment of vacation bid periods for leap year.*

E.    **VACATION TRADES**

A Flight Attendant may trade vacation periods with the following constraints:

1.    Vacation trades must be within the same calendar year;

2.    Trades must be made by the 4th of the month preceding the month in which the vacation trade would be effective (e.g., before March 4 at 1200 for an April vacation trade);

3.    Trades may be made between two Flight Attendants or between a Flight Attendant and posted open vacation slots;

4.    All trades must be submitted via the Automated Bid System. Crew Planning will not submit, modify or remove any trade request from the Automated Bid System;

5.    No vacation trade or slide will be awarded after the pre-award time frame has closed for the bid period requested. This includes both the vacation slot being traded from and traded to.

F.    **VACATION SLIDES**

1.    Vacation slides of up to 3 days are allowed. Slides may not go from one bid period to another.

FRONTIER AIRLINES (R. BRIGHAM) - 0000913

0756

2.  A Flight Attendant may slide his or her vacation period plus or minus 3 calendar days from the first day of the awarded period. Multiple slide requests will not be approved.

3.  All slides must be submitted via the Automated Bid System during the pre-award period.

4.  No vacation slide will be awarded after the pre-award time frame has closed for the bid period requested.

FRONTIER AIRLINES (R. BRIGHAM) - 0000914

## ARTICLE 10
## SENIORITY

A.   **SENIORITY ACCRUAL**

    1.    The Frontier System Seniority List ("seniority list") in effect on the date of the signing of this Agreement will be the official seniority list and, thereafter, the seniority of a newly hired Flight Attendant (including transferees from another department within the Company) will commence on the first day a Flight Attendant enters training and will continue to accrue thereafter during his/her period of service with the Company, except as otherwise provided for in this Agreement. A Flight Attendant's longevity will commence concurrently with his/her seniority date, and will accrue thereafter during his/her active service with the Company, excluding leaves of absence, furlough, or other periods as may be provided for in this Agreement.

    2.    A former Frontier Flight Attendant who is re-hired as a Flight Attendant for the Company, and who is not required to attend initial Flight Attendant training, will be placed on the seniority list as of the Flight Attendant's new date of hire.  A re-hired Flight Attendant who is required to attend initial Flight Attendant training will be treated, for purposes of placement on the seniority list, as a newly hired Flight Attendant.

    3.    When two or more Flight Attendants have their names placed on the seniority list on the same date, their position on the seniority list will be determined by their Social Security number, highest number the most senior.

    4.    Except as otherwise provided for in this Agreement, seniority will govern all Flight Attendants for retention in case of reduction in force, recall from furlough, preference of vacation periods, filling of vacancies, base assignments, Company-offered voluntary leaves of absence, and bidding rights.

B.   **WHEN SENIORITY WILL NOT GOVERN**

Except as otherwise provided for in this Agreement, seniority will not in any respect govern: transfers into other departments outside of the Inflight Department, transfers into positions within the Inflight Department not covered under this Agreement (e.g., administrative positions), selection and promotion to Inflight instructor, selection and promotion to supervisory duty, assignment to non-flying duty (e.g., light duty), or special assignment duty.

C.   **TRANSFERS**

    1.    A Flight Attendant transferring or who has transferred to a position(s) within the Inflight Services Department outside the coverage of this Agreement will retain and accrue seniority for a period of 2 years and if transfers back to a Flight Attendant position within that time will have his/her seniority reinstated as if

FRONTIER AIRLINES (R. BRIGHAM) - 0000915

0758

he/she had not transferred. After a 2 year period the Flight Attendant occupying such position(s) will retain but not accrue seniority.

2.  Any Flight Attendant who directly transfers to any position(s) outside of the Inflight Department will retain (but not accrue) seniority and longevity for 1 year from the effective date of the transfer. Upon Company approval, such individuals may return to a position covered under this Agreement prior to the end of the one-year period. If such an individual does not return to a position covered under this Agreement prior to the one-year expiration date, his/her name will be removed from the seniority list.

3.  A Flight Attendant who is elected to or accepts a full-time position with the Union will retain and accrue seniority and longevity while working for the Union.

4.  If a Flight Attendant is permitted by the Company to transfer to a position outside of the Flight Attendant craft or class on account of physical incapacity, illness, or injury, he/she will retain and accrue seniority for a period not to exceed 2 years of "continuous" service in such position after which the Flight Attendant will be removed from the seniority list. A period of service will be deemed "continuous" service until it is broken by a transfer back to the position of Flight Attendant.

5.  Paragraph E (Seniority Rights Forfeited) also applies to employees covered under this Paragraph C. for purposes of removal from the seniority list.

D.  **PROTEST OF SENIORITY LIST**

1.  An employee covered under this Agreement will have 30 calendar days after the posting of the seniority list to protest any omission or incorrect posting affecting her seniority or position on the posted list. A covered employee, who fails to protest a seniority list within the time limits set forth in this paragraph, will forfeit his/her right to protest the seniority list.

2.  The official system seniority list will be posted quarterly, no later than the fifteenth day of the quarter, in each calendar year. A covered employee is permitted to protest a seniority list only if it varies from the seniority list immediately preceding it.

3.  All protests to the seniority list must be made in writing and provided to the Director of Inflight, or his/her designee, by hand-delivery, via overnight mail, via express mail, U.S. mail certified-return receipt requested, or e-mailed. Protests should not be faxed. The employee must be able to provide a form of delivery confirmation to substantiate transmission or delivery of the

FRO**0759**AIRLINES (R. BRIGHAM) - 0000916

written protest. The Company will investigate the protest and will
respond to the Flight Attendant in writing within 30 calendar days.

E.   **SENIORITY RIGHTS FORFEITED**

A Flight Attendant covered under this Agreement, whose employment with
the Company is permanently severed, will forfeit his/her seniority rights and
that Flight Attendant's name will be removed from the seniority list. Such
circumstances include, but are not limited to: resignation, discharge for
cause, retirement, failure to return to active service following an authorized
leave of absence, the covered Flight Attendant is not recalled from furlough
within 3 years from the date of furlough, or the covered Flight Attendant
does not comply with policies and procedures relating to furlough and
recall. The recall period for any Flight Attendant(s) can be extended 2
additional years by mutual agreement of the Union and the Company.

F.   **PROBATION**

1.   A Flight Attendant will be on probation from date of hire through
the first 9 months of active service following completion of
training.

2.   Active service will commence upon the successful completion of
training. For purposes of this provision, Flight Attendants will be
considered to be in active service unless on medical leave,
furloughed, granted a leave of absence, or in another "no pay"
status. A Flight Attendant's probation will be extended by the
number of elapsed calendar days the Flight Attendant was
inactive. Inactive periods of less than 7 consecutive workdays will
not be counted.

3.   Nothing in this Agreement will be construed to prevent the
Company from releasing a Flight Attendant, with or without cause,
during the probationary period. An employee may not be placed on
the Frontier Flight Attendant Seniority List unless he/she
successfully completes initial training and the period of probation.

FRONTIER AIRLINES (R. BRIGHAM) - 0000917
0760

# ARTICLE 11
# UNIFORMS

**A.     PURCHASE OF INITIAL UNIFORM**

1.     The Company will not provide the initial investment of the Flight Attendant uniform. The Flight Attendant must purchase all accessories.

2.     Initial uniform costs may be deducted from the Flight Attendant's paycheck or may be paid in full. Deductions will be at the following rates:

$1 - $300          Minimum of $25 per pay check
$301-$600          Minimum of $50 per pay check ($600 cap)

**B.     UNIFORM CREDIT AND MAINTENANCE OF UNIFORM**

1.     Flight Attendants will receive a $150 annual credit with the designated uniform vendor.

2.     A Flight Attendant is eligible for the $150 annual credit if he/she is employed with Frontier on January 1 of that year.

3.     The $150 will be credited to the designated uniform vendor on April 1. Any credit unused by March 31 will be forfeited and will not rollover into the new fiscal year.

4.     A maternity uniform consisting of one top and one bottom will be made available at the Company's expense to a Flight Attendant who has notified the Company of her pregnancy. Such uniform will be returned to the Company cleaned, pressed, and in a dry cleaning bag with the dry cleaning tag attached.

5.     If a Flight Attendant resigns or is terminated, he/she will be responsible for the remaining uniform balance.

FRONTIER AIRLINES (R. BRIGHAM) - 0000918
0761

## ARTICLE 12
## LEAVES OF ABSENCE

A.   **GENERAL GUIDELINES**

   1.   A Flight Attendant on a Leave of Absence will not accrue vacation or sick leave hours and must pay for elected benefits.

   2.   Holiday pay, funeral pay, or jury duty pay will not be granted during a leave.

   3.   A Flight Attendant off payroll on a Leave of Absence will not be compensated for a parking permit.

   4.   For leaves of 30 or more days in which sick pay is applied, a Flight Attendant's sick bank will be reduced on an hour-for-hour basis, but no more than 82 hours per 30 day period.

   5.   Accrued sick leave does not guarantee leave approval.

B.   **RETURNING FROM LEAVE OF ABSENCE**

   1.   To be eligible to return to work and bid for a line of flying, the Flight Attendant must complete required training, if applicable. If a Flight Attendant requires only Recurrent Training, he/she may bid for the next bid period if Recurrent Training is scheduled and a doctor's release has been submitted.

   2.   If a Flight Attendant has been de-qualified during a leave of absence, he/she will not be allowed to pick up Open Time or to be assigned Reserve days until required training has been completed successfully.

   3.   A Flight Attendant returning from a Leave of Absence must coordinate his/her schedule with the Inflight Services Supervisor, and meet with Inflight Manager or Instructor to make certain the Flight Attendant's manual is current.

   4.   Upon returning to work from a Leave of Absence, a Flight Attendant must purchase a parking permit for the first month he/she is returning to work. A request must be submitted in writing to Payroll for reimbursement of the parking permit purchased by the last calendar day of that month.

C.   **RETURNING FROM INTERMITTENT LEAVE OF ABSENCE**

A Flight Attendant who has missed a portion of a trip or a complete trip due to an intermittent leave (FMLA, MED, OJI, etc.) and has been completely released will be returned to his/her original trip, if available. If the trip was picked up in Open Time, the Flight Attendant may pick up Open Time to replace the trip credit. If the there are no trips that the Flight Attendant wants to pick up, the Flight Attendant can opt to be placed on AVA status for

the time of the original pairing. All AVA rules apply if this option is chosen by the Flight Attendant. If AVA or no trips are chosen by the Flight Attendant, then the original trip credit goes unpaid.

### D. COMPANY-OFFERED LEAVE

1. Company-offered leaves of absence (COLA) may be offered when overstaffing occurs in order to reduce payroll. Only Flight Attendants on active flight status (not on leave and currently eligible to bid) may apply. Leaves are granted in seniority order. Leaves are normally granted in 1-bid period increments.

2. A Flight Attendant on COLA will retain pass privileges on Frontier; travel on other airlines will be according to interline agreements.

3. Flight Attendants on COLA will retain and accrue seniority, and will retain longevity.

4. COLAs may be granted even if the Flight Attendant has scheduled vacation that bid period. The Flight Attendant may trade the vacation for an open slot. The Flight Attendant may keep the scheduled vacation period and be paid his/her vacation credit at the Flight Attendant's hourly rate. A request must be submitted in writing by the last calendar day of the month.

### E. FAMILY MEDICAL LEAVE

1. Flight Attendants will receive Family Medical Leave under the Family Medical Leave Act, as amended ("FMLA"), in accordance with the eligibility requirements of the Act.

2. Flight Attendants whose base has less than 50 employees will be covered by FMLA.

3. Flight Attendants will retain and accrue seniority and longevity while on FMLA leave. Pass benefits will continue while the Flight Attendant is on FMLA leave.

### F. MATERNITY LEAVE

1. A Flight Attendant is required to advise the Company immediately upon confirmation of pregnancy by her doctor. The Flight Attendant must present a release from her doctor to the Company acknowledging her ability to perform Flight Attendant duties. The Flight Attendant will also be responsible for submitting a letter from her doctor each month stating that she is still fit and able to perform the necessary Flight Attendant duties.

2. If qualification status will expire while on leave, the Flight Attendant must attend Recurrent Training before going on maternity leave.

FRONTIER AIRLINES (R. BRIGHAM) - 0000920

3.    Sick leave must be used, and vacation days may be used, during the maternity leave; otherwise, the leave is without pay.

4.    The Flight Attendant will retain and accrue her seniority and longevity during maternity leave.

5.    A Flight Attendant on maternity leave will retain Frontier pass benefits including buddy passes.

## G.    MEDICAL LEAVE

1.    Flight Attendants who do not meet the eligibility requirements for FMLA may be provided a Medical Leave of Absence in limited circumstances. Such a leave would include time off for a Flight Attendant's illness, injury or pregnancy.

2.    A Flight Attendant must have completed 90 days of employment with the Company to qualify for Medical Leave.

3.    Medical Leaves may be approved in up to 30-day intervals.

4.    Medical Leave may be granted up to a maximum period of 23 consecutive months. If the Flight Attendant is eligible and initially granted leave under FMLA, a Medical Leave may be granted beyond the 12 weeks allowed under the FMLA, but that extension may not exceed a combined total of 23 consecutive months under this policy. Periods of active service of less than 90 days will not constitute a break in the period of leave.

5.    A Flight Attendant requiring a leave beyond 23 consecutive months will be separated from the Company with the ability to re-apply.

6.    A Flight Attendant may request an unpaid leave of absence for his/her own illness or injury when he/she cannot return to work after exhausting FMLA leave or if he/she is not eligible for FMLA. Any Medical Leave of Absence request must have a supporting doctor's statement attached. This must include the date the Flight Attendant became unable to work and the expected date of return, if known.

7.    If an Flight Attendant is on FMLA leave and anticipates that FMLA leave will be exhausted before the Flight Attendant is released to return to work and the Flight Attendant intends to seek a Medical Leave, the Flight Attendant must certify the need for the Medical Leave of absence prior to the expiration (end date) of FMLA leave.

8.    If an extension of an existing Medical Leave is needed, the Flight Attendant must certify the need for the extension of the Medical Leave prior to the expiration (end date) of the current Medical Leave.

FRONTIER AIRLINES (R. BRIGHAM) - 0000921
0764

9.   Unless an emergency exists, requests for unpaid Medical Leave along with proper medical certification must be submitted at least two weeks prior to the requested leave date. If the Flight Attendant is unable to provide the request and medical certification prior to the medically related absence because of an emergency or urgent situation, the Flight Attendant's absence from work will be treated as an unexcused absence and the Flight Attendant will have 15 days from the date of the absence to submit proper medical certification. If proper medical certification is provided within the stated time period and the request for leave is approved, the unexcused absence will be changed to reflect an approved Medical Leave. If proper medical certification is not submitted within the stated time period and/or the leave is not approved, the Flight Attendant's absences will be unapproved and may subject the Flight Attendant to corrective action, up to and including termination.

10.  If the Flight Attendant has any accrued sick time, sick time will be applied to FMLA or Medical Leave. If there is no accrued sick time remaining and the Flight Attendant would like to continue to be paid, the Flight Attendant must submit in writing to the payroll department what accrued time they would like to use, i.e. vacation.

11.  Failure to follow the policies outlined above in seeking leave approval in advance of taking time off may lead to corrective action.

12.  Leaves will be limited to 30 days with extensions allowed in limited circumstances.

13.  While on Medical Leave, Flight Attendants will retain and accrue seniority, and retain and, up to 90 days, accrue longevity. Flight Attendants on Medical Leave are not eligible for pass benefits.

## H.   ON-THE-JOB INJURY (OJI)

1.   A Flight Attendant may file an occupational injury claim within the timelines set forth by Company policy if he/she believes he/she has suffered an injury or illness on the job. The state law of the state in which the Flight Attendant is domiciled will govern whether an individual claim is compensable.

2.   The first three days of OJI may be covered by sick days, or the Flight Attendant may immediately be assigned light/modified duty.

3.   The Flight Attendant may use pass privileges if he/she is on modified duty, completing the hours necessary each week; otherwise pass benefits are suspended until released.

4.   A Flight Attendant on OJI leave may not occupy the jumpseat aboard any Frontier aircraft.

FRONTIER AIRLINES (R. BRIGHAM) - 0000922
0765

5. In order to bid following an OJI, the Flight Attendant must have a doctor's note by the 11th of the month at 1700, releasing him/her back to work no later than the 15th day of the bid period he/she will return to duty. The release must be given to Human Resources by 1100 on the 10th of the month prior to bidding.

## I. PERSONAL LEAVE

1. A Personal Leave of Absence may be granted in limited circumstances based upon staffing and operational needs. A Flight Attendant who has not completed 90 active days of service is not eligible to apply for a personal leave.

2. Personal Leave requests must be made in writing to Inflight Management.

3. Personal Leaves may be granted if the Flight Attendant has scheduled vacation that month. The Flight Attendant may trade the vacation for an open slot. The Flight Attendant may keep the scheduled vacation period and be paid accordingly. A request must be submitted in writing to the Payroll by the last calendar day of the month.

4. A Personal Leave will be granted for a period from 1 to 30 days and must be approved by Inflight Management. Prior to the expiration of the original leave, Inflight management must approve any extension beyond 30 days. Personal Leave is always without pay.

5. A Flight Attendant on a Personal Leave will retain seniority and longevity, and continue to accrue each for the original 30 days of approved leave. Sick leave and vacation will not accrue during a personal leave. Pass benefits for a Flight Attendant and his/her eligible pass riders will be suspended for the duration of the leave. Holiday, funeral pay or employer's jury duty pay will not be granted during the leave.

6. Failure to follow policies as outlined above in seeking approval in advance of taking time off may lead to corrective action.

## J. FUNERAL LEAVE

1. Paid Funeral Leave will be granted for up to 4 working days to attend the funeral services of an immediate family member. Additional time off without pay may be granted at the discretion of the Company. For purposes of this section, "immediate family member" is defined as the Flight Attendant's: parents, stepparents, stepchildren, stepsiblings, spouse, children, siblings, parents-in-law, brother/sister-in-law, daughter/son-in-law, grandparents, grandchildren, and domestic partner.

FRONTIER AIRLINES (R. BRIGHAM) - 0000923

0766

2.   Flight Attendants will be pay protected for the hours they would have flown during that time period. Pay will be at the regular rate of pay and will not be used in the calculation of overtime.

3.   An Unpaid Funeral Leave of up to 3 days may be requested for attending the funeral of another family member, neighbor, or friend but must be approved by an Inflight Manager. Unpaid Funeral Leave is unpaid leave or available vacation may be used. A request to use the vacation credit must be submitted in writing to payroll by the last calendar day of the month. Documentation may be requested by Inflight Management.

## K.   EMERGENCY LEAVE (EMR)

1.   A Flight Attendant will be authorized Emergency Leave ("EMR") for an unavoidable, serious circumstance with the approval of Inflight Management. An Emergency Leave may be granted for up to 3 days. A Flight Attendant seeking EMR must contact his/her Inflight Manager or designee and present verifying documentation.

2.   The Flight Attendant will be removed from his/her trip without pay. The Flight Attendant has the option of using vacation credit that has not been awarded in a monthly bid in lieu of no pay; however, the request must be submitted in writing to the Payroll by the last calendar day of the month.

3.   Off-the-job injury is a sick call, not an emergency leave. The Flight Attendant should make arrangements to take care of personal appointments on his/her day off. Child care issues, car problems, etc., are not excused absences. Personal court appearances and subpoenas do not qualify for emergency leave.

4.   More than two emergency leave requests in a 12-month period may be considered excessive.

## L.   JURY DUTY LEAVE

1.   The Flight Attendant is required to submit the jury summons to his/her Inflight Manager prior to the assigned date. The Inflight Manager will coordinate the removal from any assigned trips with Crew Scheduling.

2.   Pay will be at the regular rate of pay for flight assignments missed and will not be used in the calculation of overtime.

FRONTIER AIRLINES (R. BRIGHAM) - 0000924

**M.**       **MILITARY LEAVE**

Flight Attendants are granted unpaid military leaves of absence, subject to
Federal Law. Members of the U.S. Armed Forces or National Guard are
granted an unpaid Leave of Absence when called for active duty or training.
This time is granted in addition to earned vacation and sick time. However,
if a Flight Attendant desires to use vacation time for this purpose, he/she
may voluntarily do so if you make a request in writing to the Company.

FRONTIER AIRLINES (R. BRIGHAM) - 0000925

0768

# ARTICLE 13
# VACANCIES

A.   **STANDING BIDS**

    1.   A standing bid is a request to change bases that will remain in effect until the Flight Attendant makes a change to the bid or is awarded the base change.

    2.   Flight Attendants must submit a standing bid to indicate the order of preference for base vacancies. The Company may require Flight Attendants to submit new or updated standing bids at least 30 days prior to any circumstances that may cause the existing bid file to become outdated (base closures, base openings or other substantial operational changes, etc.). The Company will attempt to give at least 30 days notice to afford Flight Attendants the opportunity to change their standing bids.

    3.   The standing bid file will be maintained by the Company. Standing bids will be available for inspection by any Flight Attendant during office hours.

    4.   A Flight Attendant may change his/her standing bid at any time by submitting a new standing bid to the Company. A Flight Attendant must submit his/her standing bid through the Automated Bid System, if available, or otherwise via e-mail to Inflight.

B.   **NOTICE OF VACANCY**

    1.   The Company will determine when a vacancy exists and will post the notice of when a vacancy will occur. Any vacancies, as well as projected vacancies, will be posted by the Company on the 21st of the month prior to the next bid period.

    2.   Bidding will close at 1400 hours 7 days after posting the notice of vacancy.

C.   **AWARDING AND ASSIGNMENT OF VACANCIES**

    1.   Awards will be posted no later than 1400 on the 5th of the month.

    2.   Bids for vacancies will be awarded in order of seniority using standing bids on file as of the date bidding is closed.

    3.   All Flight Attendants awarded a base transfer to fill a vacancy must remain in the new base for at least 3 bid periods (excluding base swaps). An exception may be made to this rule at such point whereby the Company elects to open a new base within the 3 bid periods.

    4.   The Company will determine the effective date of an award, which may be changed provided adequate notice is given and the

FRONTIER AIRLINES (R. BRIGHAM) - 0000926

0769

change is not made for arbitrary reasons. The Company may cancel an award at any time before its effective date.

5.    A Flight Attendant awarded a vacancy will fill the vacancy within 60 days after the effective date of the award.

**Example:** There are 3 openings in the MKE base for July. Frontier will post a Notice of Vacancy on May 21st that will close on May 28th. Flight Attendant Donna has a standing bid requesting a MKE base. On June 5th the bids are awarded and she is senior enough to be granted her base transfer. In the July bid, Donna will be bidding in the MKE base.

**Example:** There are 15 openings at the MKE base for July. Frontier will post a Notice of Vacancy on May 21st that will close on May 28th. Flight Attendant Donna has a standing bid for the MKE base. On June 5th, the bids are awarded and 15 people senior to Donna requested the MKE base and were awarded it. Donna's request to transfer to MKE will be denied as there are no more vacancies. Donna will remain in the DEN base. Donna's standing bid will remain in effect until she changes it.

**Example:** There are 10 openings at the MKE base for July. Frontier will post a Notice of Vacancy on May 21st that will close on May 28th. Flight Attendant Donna has a standing bid for the MKE base. However, Donna decides she no longer wants to go to MKE and must change her standing bid. She has until May 28th at 1159 local base time to change her standing bid. If she does not change her standing bid and is awarded MKE, she must transfer to the MKE base.

D.    **BASE SWAPS**

Flight Attendants requesting a mutual base swap must submit a request electronically if available, or otherwise via e-mail to Inflight, no later than the 21st of the month prior to the bid period. Approval of a swap is subject to the following:

1.    The Company will review the mutual swaps on file no later than the 28th of the month and post awarded swaps that will become effective with the following month's bid award.

2.    Flight Attendants may not request base swaps between entities with separate operating certificates.

FRONTIER AIRLINES (R. BRIGHAM) - 0000927

0770

# ARTICLE 14
## FURLOUGH

A.  **FURLOUGH**

1.  In the event a furlough or displacement becomes necessary, Flight Attendants will be furloughed in inverse seniority order.

2.  A Flight Attendant who is furloughed and subsequently recalled will retain, but not accrue, longevity during a furlough, unless recalled within a period of less than 30 calendar days from the date of the furlough.

3.  Should an impacted Flight Attendant call out sick during the 14 calendar day period prior to the furlough start date, the Flight Attendant must provide a doctor's note in order to receive sick pay. Failure to provide documentation will result in a forfeiture of all recall rights.

4.  In the event there is a planned reduction in force, the Company must offer COLA prior to involuntary furloughs.

5.  The Company will, within 14 days prior to a reduction in force at base, send certified/return receipt letters to all affected Flight Attendants at that base, as well as post the reason for the reduction via Company communication to all Flight Attendants.

6.  So long as the system is comprised of no more than two bases, the specific base having a reduction in force will offer all Flight Attendants being furloughed or displaced the following options in seniority order:

    a.  If the total number of Flight Attendants in the system is being reduced, then the Flight Attendant may:

        (i)    Transfer to vacancies at the other base;

        (ii)   Displace a Flight Attendant at the other base in seniority order;

        (iii)  Accept furlough.

    b.  If the total number of Flight Attendants in the system is not being reduced, then the Flight Attendant may:

        (i)    Transfer to vacancies at the other base

        (ii)   Displace a Flight Attendant at the other base in seniority order

7.  In no event may a Flight Attendant accept and remain on furlough with recall rights if doing so would cause the Company to hire a

FRONTIER AIRLINES (R. BRIGHAM) - 0000928

07771

new Flight Attendant.

8.   In the event more than two bases are established, then provisions relating to displacement and furlough will be negotiated at that time to take into account those changed circumstances.

9.   Once these procedures above have been completed, all surplus Flight Attendants will be furloughed and will be eligible for recall based on the Furlough recall procedures.

B.   **FURLOUGH PAY AND BENEFITS**

1.   A Flight Attendant who is furloughed will be paid for any accrued unused vacation in a lump sum included with their final regular paycheck.

2.   A furloughed Flight Attendant may continue his/her medical and other eligible group insurance for a period as specified under Consolidated Omnibus Budget Reconciliation Act ("COBRA").

C.   **TRANSFER TO OTHER DEPARTMENT PRIOR TO FURLOUGH**

1.   If a Flight Attendant has transferred to another department within the Company, and retains a position on the seniority list, and subsequently receives a furlough notice from the Inflight Department, he/she will retain rights to a Flight Attendant position as provided for in Article 10 "Seniority" of this Agreement.

2.   If a furloughed Flight Attendant is terminated from another department, he/she will lose his/her recall rights to the Flight Attendant position. However, a Flight Attendant who resigns from another department will be on furlough status and will retain recall rights as provided herein.

3.   A Flight Attendant may decline voluntary recall to a vacancy one time during his/her furlough. Such Flight Attendant will thereafter be recalled only after the remaining Flight Attendants on the recall list have been contacted.

4.   If the Flight Attendant declines recall to Inflight a second time, the Flight Attendant will forfeit all rights under this rule and will be removed from the Flight Attendant Seniority List.

5.   If a Flight Attendant accepts recall, the timeline for returning to active status in the Inflight Department will be coordinated with the Company.

D.   **RECALL**

1.   All Flight Attendants furloughed by the Company will provide current contact information to the Company at the time of furlough. Any change in contact information must be supplied to the Company promptly. A Flight Attendant who cannot be

FRONTIER AIRLINES (R. BRIGHAM) - 0000929

0772

contacted due to failure to maintain updated contact information with the Company will forfeit all seniority and recall rights.

2. Recall from furlough will be in seniority order. A Flight Attendant will be notified by the Company of his/her recall with the Company via expedited mail, return receipt requested, e-mail, or positive contact (in person or by telephone). After delivery of such notice to the last address or telephone number on file with the Company, the Flight Attendant must notify the Company in writing of his/her intent to return to work or bypass recall within 10 calendar days.

3. A Flight Attendant may decline voluntary recall to the vacancy one time during his/her furlough. A Flight Attendant who fails to respond within 10 days will be deemed to have declined the recall and will remain on the recall list. Such Flight Attendant will thereafter be recalled only after the remaining Flight Attendants on the recall list have been contacted.

4. The Company will provide a furloughed Flight Attendant no fewer than 15 calendar days to report for duty at the base specified by the Company following his/her acceptance of recall. The Company may extend this time period.

FRONTIER AIRLINES (R. BRIGHAM) - 0000930

0773

## ARTICLE 15
## MOVING EXPENSES

A.  **ELIGIBILITY**

The Company will pay moving expenses only when a Flight Attendant is involuntarily displaced to another base for any reason.

B.  **MOVING BENEFITS**

1.  An eligible Flight Attendant will be entitled to:

a.  Actual moving expenses for a professional mover, including packing materials, shipping and insurance, of household goods and effects up to a total weight of 10,000 lbs. Packing, unpacking, extra insurance and storage are not covered. The mover must be approved by the Company.

b.  The Company will reimburse a Flight Attendant at the current Company mileage rate or $.36 per mile, whichever is greater, for up to two of the Flight Attendant's registered vehicles driven to the new base, using the most direct mileage between bases. One car may be moved prior to moving to the new primary residence, and the other (or both) car(s) would be moved in conjunction with the actual move.

c.  The Company will reimburse a Flight Attendant for meals and lodging for the Flight Attendant and his/her immediate family, up to five days, for the time required to travel to the base. A Flight Attendant will be removed from, and pay protected for, the trips that conflict with the time allowed for travel. A day of travel will be considered a minimum of 350 miles by the most direct AAA mileage. The daily allowance for meals will be $25.00 per day for the Flight Attendant, and $15.00 per day for each dependent traveling with the Flight Attendant.

d.  The Company will pay up to $200.00 for termination and/or activation fees of gas and electric utilities, telephone and cable television (excluding deposits) resulting from a move to a new base.

e.  If a lease is broken as a result of moving to a new base and a penalty is incurred, the Company will pay the penalty, not to exceed 2 month's rent.

f.  If immediate occupancy of the new residence is impracticable because of time constraints imposed by the Company, the Company will pay meal and lodging

FRONTIER AIRLINES (R. BRIGHAM) - 0000931

0774

expenses for up to 7 days. The Flight Attendant will make every effort to minimize this expense. If the moving company reimburses the Flight Attendant for these expenses, the Company will have no obligation to make any additional payment.

2. The Company's liability for moving expenses will not exceed $7,000. Payment for cost of moving household goods will be paid directly from the Company to the moving vendor.

## C. MOVING DAYS

A Flight Attendant who is moving his/her primary residence will be entitled to four consecutive days off (inclusive of scheduled days off) for a move of 700 miles or less, plus one additional day off for each 350 additional miles. These days off are to be taken in conjunction with the actual move. The Flight Attendant will be paid for the value of any trip(s) missed. Moving days may not be requested during the weeks of Thanksgiving, Christmas, and New Year's. The Flight Attendant will coordinate scheduling days off for moving with the Director of Inflight.

## D. GENERAL

1. If a Flight Attendant elects not to move, the Company will pay the Flight Attendant $250.00, which need not be verified by receipts.

2. When the Company is required to pay moving expenses, the Company and the Flight Attendant may agree to an amount to be paid to the Flight Attendant in lieu of the expenses.

3. When the Company is required to pay moving expenses, the move must be coordinated with the Company. Receipts verifying moving expenses should be submitted within 30 days after incurring the expenses. The Company will not be liable for any damages incurred during moving.

4. The Company will not be responsible for paying any expenses after one year from the actual effective date of the Flight Attendant's assignment to the new base.

5. If a Flight Attendant elects to move him/herself, the rental truck and/or trailer, packing materials, insurance, fuel, and $200.00 to offset other costs not included in this paragraph, will be paid to the Flight Attendant.

6. An eligible Flight Attendant may elect to move from a location other than the base from which the Flight Attendant is being transferred. However, the Company's financial responsibility will not exceed the cost of moving the Flight Attendant from the former base to his/her new base.

FRONTIER AIRLINES (R. BRIGHAM) - 0000932

0775

# ARTICLE 16
## UNION ACTIVITIES

A.   **GENERAL**

    1.    The Company agrees to provide space at each Flight Attendant base for the placement of a glass-enclosed secured bulletin board. Such bulletin board will be purchased by the Union for future bases and installed by the Company. . The bulletin board may be no larger than the predominant size bulletin board used by the Company for its other bulletin boards. . The Union may post notices signed by authorized Union officials and related to Union business on such bulletin boards. No notice posted on such board will contain derogatory or inflammatory material.

    2.    The Company and the Union will each pay half of the cost of printing and distributing copies of this Agreement to the Flight Attendants. Any subsequent side letters will be posted electronically and will be accessible to all Flight Attendants.

    3.    All new hires will be given a copy of this Agreement during initial training.

    4.    The Company will provide the Union with the names (in order of seniority), mailing addresses, telephone numbers, and domiciles of Flight Attendants after the initial assignment to a domicile.

    5.    Upon request, but no more frequently than every three months, the Company will provide to the AFA International Office a seniority list that includes name, employee number, telephone number, address and domicile. The list will also identify Flight Attendants who have been terminated or experienced changes to their status lasting longer than 30 days, such as furloughs, leaves of absence, and transfers to non-flying or supervisory duties.

    6.    A Union representative will be permitted to address new hire Flight Attendants during a training day. The Company and the Union will mutually agree upon the date and time for such a meeting. The time permitted will not be less than 1 hour or more than 2 hours.

    7.    The Union will advise the Company in writing of the names of its designated representatives and such designation will remain effective until revoked by written notice.

B.   **UNION BUSINESS LEAVE**

    1.    Subject to staffing and operational requirements, the Company will release Flight Attendants in accordance with this Section for the purpose of conducting official Union business.

    2.    Requests for union leave must be submitted in writing to the Director of Inflight Services or his/her designee at least seven

FRONTIER AIRLINES (R. BRIGHAM) - 0000933

0776

days before the requested day off. The Company may waive the 7-day requirement. The request must include the names of the Flight Attendants, the date and time of the release, the date and time of return to duty, and specific business for which the release is requested.

3.   Flight Pay Loss for Union Business Leave:

    a.   **Blocked Days**:  Union Business leave will be pre-blocked via use of PBS whenever possible. Pre-blocked Union Business leave will be credited at 5 hours per day and will be applied towards the Flight Attendant's minimum monthly guarantee.

    b.   **Days Not Blocked**:  When a Flight Attendant is released from previously assigned/awarded flight duty for Union Business leave, and the leave was not previously blocked out via PBS, the Company will pay the Flight Attendant the scheduled value of the trip(s) dropped. A Flight Attendant taking Union Business leave on a previously scheduled Reserve day will be credited with 4 hours towards his/her guarantee.

    c.   The Union will reimburse the Company, within 45 days after receipt of a statement from the Company, for the amount of  the flight pay loss paid to the Flight Attendant, plus an override of 23% to cover the cost of fringe benefits, FICA, etc. The Company will forward such statements to the Union on a monthly basis.

C.   **UNION COMMITTEES AND INSIGNIA**

1.   Flight attendants may wear a current official Union insignia pin on their uniforms, provided it is no larger than 1" in diameter.

2.   The Union will supply the Company with a list of standing committees. The Company will endeavor to meet with these committee members as reasonably requested.

FRONTIER AIRLINES (R. BRIGHAM) - 0000934

## ARTICLE 17
## UNION SECURITY AND DUES CHECK-OFF

A.    **AGENCY SHOP**

Each Flight Attendant covered by this Agreement who fails to voluntarily acquire or maintain membership in the Union will be required as a condition of continued employment beginning 30 days after the signing of this Agreement or completion of his/her probationary period, whichever is later, to pay the Union each month a service charge as a contribution for the administration of the Agreement and representation of such Flight Attendant. The service charge will be an amount equal to the Union's regular or usual monthly dues, initiation fee or periodic assessments, all levied in accordance with the Railway Labor Act and Union's Constitution and By-laws, which would be required of the Flight Attendant if a member.

B.    **DELINQUENT DUES**

1.    If a Flight Attendant of the Company covered by this Agreement becomes more than 30 days delinquent in the payment of service charges, initiation fees, assessments and/or membership dues, the Union will notify such Flight Attendant by certified mail, return receipt requested, copy to Director of Inflight and the MEC President that she/he is delinquent in the payment of such service charge, initiation fee, assessments and/or membership dues as specified herein and subject to discharge as an Flight Attendant, and must remit the required payment within 15 days or be discharged. The notice of delinquency required under this paragraph will be deemed to be received by the Flight Attendant, whether or not it is personally received when mailed by the International Secretary-Treasurer of the Union by certified mail, return receipt requested, postage prepaid to the Flight Attendant's last known address, or to any other address which has been designated by the Flight Attendant. It will be the duty of every Flight Attendant covered by this Agreement to notify the Union's Membership Department of every change in home address, or of an address where the notice required by this paragraph can be sent and received by the Flight Attendant if the Flight Attendant's home address is at any time unacceptable for this purpose.

2.    If, upon the expiration of the 15 day period, the Flight Attendant still remains delinquent, the Union will certify in writing to the Director of Inflight with a copy to the Flight Attendant that the Flight Attendant has failed to remit payment within the grace period allowed and is, therefore to be discharged. The Director of Inflight will thereupon take proper steps to discharge such Flight Attendant from the service of the Company. The effective date of termination will be 15 days from the date of the Company's written notice of termination. The Union will also be so advised. Such discharge will be for "failure to comply with the terms and conditions of Article 17 of the Collective Bargaining Agreement" which is stipulated to be for just cause.

FRONTIER AIRLINES (R. BRIGHAM) - 0000935

0778

C.   **REVIEW PROCEDURE**

    1.    A grievance by a Flight Attendant who is to be discharged as a result of an interpretation or application of the provisions of this Section will be subject to the following procedures.

    a.    A Flight Attendant who believes that the provisions of this section have not been properly interpreted or applied as it pertains to her/him, may submit a request for a review in writing within five business days from the date of notification by the Director of Inflight as provided in paragraph B.2. above (not from the effective date of the termination). The request must be submitted to the Director of Inflight who will review the grievance and render a decision in writing not later than five business days following receipt of the grievance.

    b.    If a request in writing is not submitted within five business days from the date of notification by the Director of Inflight as provided in paragraph B.2. above, the Flight Attendant will be deemed to have waived the right of appeal and will, therefore be terminated as soon as possible

    c.    The Director of Inflight or his/her designee will forward a decision to the Flight Attendant with a copy to the International Secretary-Treasurer of the Union. Said decision will be final and binding on all interested parties, unless appealed as hereinafter provided. If the decision is not satisfactory to either the Flight Attendant or the Union, then either may appeal the grievance within 10 business days from the date of the receipt of such decision directly to the System Board of Adjustment as established in Article 18 of this Agreement. All such grievances will be processed by the System Board of Adjustment in accordance with the provisions of Article 19 provided, however, that the members of the System Board appointed by the Union and the Company in accordance with the provisions of Article 19 will not participate in the hearings, deliberations, or decisions of the Board. Such grievances will be presented solely to a neutral referee selected in accordance with Article 19, who will hear and determine such grievance. Such grievances will be heard by the System Board within 21 days of the receipt of the decision by the Director of Inflight. The parties to the System Board proceeding will be the Grievant, the Union and the Company.

    d.    The decision of the neutral referee will be requested within 30 days after the hearing of the appeal, unless otherwise agreed by the Flight Attendant, the Union and

FRONTIER AIRLINES (R. BRIGHAM) - 0000936

0779

the Company, and will be final and binding on all parties to the dispute. The fees, charges and other reasonable expenses of such neutral will be borne equally by the Grievant and the Union.

2.   During the period a grievance is being handled under the provisions of this Article and until the final award by the System Board of Adjustment, the Flight Attendant will not be discharged from the Company nor lose any seniority rights because of non-compliance with the terms and provisions of this Article.

   a.   A Flight Attendant discharged by the Company under the provisions of this paragraph will be deemed to have been discharged for cause within the meaning of the terms and provisions of this Agreement.

   b.   The Union agrees that it will indemnify and hold the Company harmless against all forms of liability that will arise out of or by reason of action taken by the Company, which action was requested by the Union under the provisions of this Section or arising out of the Company's compliance with this Section.

D.   **DUES CHECK-OFF**

1.   The Company will deduct from the pay of each Flight Attendant covered by this Agreement an amount equal to the standard monthly membership dues, service charges, initiation fees and assessments, uniformly levied in accordance with the Railway Labor Act, as amended, and the Constitution and By-laws of the Union, provided such Flight Attendant Union executes the following agreed upon form known as a "Check-Off Form."

2.   For Flight Attendants who have executed a Check-Off Form, deductions will be made in the following manner:

   a.   One-half of the deduction for dues or service charge will be made in the first paycheck of the month, and one-half of the deduction will be made in the second paycheck of the month.

   b.   Initiation fees will be split into equal payments each paycheck over the period of 6 months.

**ASSIGNMENT AND AUTHORIZATION FOR VOLUNTARY CHECK-OFF OF UNION DUES TO: FRONTIER AIRLINES, INC.**

**I,_____, hereby authorize and direct FRONTIER AIRLINES to deduct from my pay dues, in an amount equal to such monthly dues, service charges, initiation fees, and/or assessments, as now or may hereinafter be established in accordance with the Constitution and By-laws of the Union, for remittance to the Association of Flight Attendants-CWA.**

FRONTIER AIRLINES (R. BRIGHAM) - 0000937
0780

I agree this authorization will be irrevocable for one (1) year from the date hereof or until termination of the Check-Off agreement between Frontier Airlines and the Association of Flight Attendants-CWA, whichever occurs sooner.

If the Check-Off agreement is terminated this authorization will be automatically terminated. In the absence of a termination of the Check-Off agreement, this authorization may be revoked effective as of any anniversary date of the signing hereof by written notice given by me to Frontier and the Association of Flight Attendants-CWA by certified mail, return receipt requested, during the ten (10) days immediately preceding such anniversary.

Signature of Flight Attendant_____
Company Seniority Date_____
Inflight Seniority Date_____
Base_____
Date of First Deduction_____

*(The Company will have this form and the process in place no later than 30 days after date of signing of the Agreement)*

3. During Flight Attendant's initial training, the Company will make known the dues Check-Off provisions of this Agreement. Those desiring to participate in the payroll deduction plan for the remittance of dues will at the time complete 2 copies of the above Check-Off form.

   a. One copy of each completed form will be forwarded to the Union's headquarters office and the other copy to the Company's Payroll Department. On the first paycheck of the month following completion of the Flight Attendant's probationary period, the Payroll Department will begin the appropriate deduction.

   b. The Company will also make available to the Union the names and base assignments of those Flight Attendants from each graduating class who have elected not to participate in the Check-Off arrangement.

4. All other Check-Off forms will be submitted from the Union's headquarters office to the Company's Payroll Manager. A properly executed Check-Off form, filed before the 15th of any month, will become effective the 1st of the month following its receipt by the Company's payroll personnel. Illegible or improperly executed forms will be returned to the MEC President.

5. Any notice of revocation as set forth in the Check-Off must be in writing, signed by the Flight Attendant, and delivered by certified mail, return receipt requested, addressed to the Company's Payroll Manager with a copy to the MEC President as soon as it is processed through the Company's payroll procedures. Check-Off forms and notices so received by the Company will be stamp-dated on the date received and will constitute notice to the

FRONTIER AIRLINES (R. BRIGHAM) - 0000938
0781

Company on the date received, not mailed.

6. With 30 days notice from the Union, the Company will deduct from Flight Attendant's earnings any assessments levied by the Union.

7. The Company will prepare a monthly report that provides to the Union a list of all Flight Attendants on leave of absence, newly hired with probation end date, furloughed or recalled and Flight Attendants who have terminated employment. This list will be provided to the MEC President and can be transmitted in electronic format.

E. **DUES DEDUCTION**

1. Deductions of total membership dues, service charges and assessments will be split at the time of the issuance of the first and second paychecks issued each month provided there is a sufficient balance due the Flight Attendant at those times after all other deductions authorized by the Flight Attendant or required by law have been satisfied. Within fifteen (15) days after each payday, the Company will remit to the Union via Electronic Money Transfer all dues, service charges and assessments collected on each payday pursuant to the outstanding and unrevoked Check-Off forms. The Company will promptly send to the Union via electronic medium a separate list of names, bases, pay periods and total amounts deducted for those Flight Attendants for whom such deductions have been made.

2. No dues, service charges or assessments will be deducted from the wages of any Flight Attendant who has executed a Check-Off Form and who has transferred to a job not covered by this Agreement, who is on furlough, or who is on leave without pay. Upon such Flight Attendant's return to work within a classification covered by this Agreement, whether by transfer, return from a leave without pay, or a recall from furlough, payroll deductions of dues will automatically be resumed, unless the Flight Attendant has revoked his/her Check-Off Form in accordance with the appropriate provisions of this Article and Railway Labor Act, as amended.

3. In the event of a strike or work stoppage by the Union, the Company's obligation under this Article will be suspended and be of no force or effect for the duration of such strike or work stoppage.

FRONTIER AIRLINES (R. BRIGHAM) - 0000939

0782

## ARTICLE 18
## GRIEVANCE PROCEDURE

A.    **GENERAL**

Unless otherwise provided in this Agreement, a Flight Attendant, or the Union on behalf of a Flight Attendant, may file a grievance concerning any dispute:

1.    Arising out of the interpretation or application of any of the provisions of this Agreement; or

2.    To dispute discipline or discharge that the Flight Attendant believes was imposed without just cause.

B.    **INVESTIGATIONS – DISCIPLINE AND DISCHARGE**

1.    Investigatory Meetings

a.    A Flight Attendant will not be disciplined or discharged without just cause and without previously being afforded a meeting before the Director of Inflight or his/her designee, provided that the Flight Attendant has made him/herself available for the meeting.

b.    The Flight Attendant will be notified of the time and place of the meeting and the nature of the matter to be discussed. When a Flight Attendant is required to attend an investigatory meeting, the Flight Attendant will be permitted to have Union representation if a representative is reasonably available on the date and time of the scheduled investigatory meeting.

c.    If a Union representative is not reasonably available or if the Flight Attendant declines Union representation, the Flight Attendant may request the presence of another available Frontier Flight Attendant during the investigatory meeting. The Company may deny the presence of a particular Flight Attendant(s) pursuant to this paragraph if that Flight Attendant is involved in any manner in the incident under investigation. Upon agreement of the parties, the Flight Attendant may be permitted to attend an investigatory meeting via telephone conference.

2.    Nothing herein will prevent the Company from holding a Flight Attendant out of service with or without pay during an investigation. Flight Attendants will not be eligible for pass travel benefits while held out of service, except to attend an investigatory meeting.

FRONTIER AIRLINES (R. BRIGHAM) - 0000940
0783

3. When a Flight Attendant is disciplined or discharged, the Company will furnish him/her with a written statement of the precise charge(s) against him/her.

4. A documented verbal discussion, verbal counseling or verbal warning does not constitute an action of discipline.

5. A notice of discipline or discharge will be delivered to the Flight Attendant and the Union by any of the following methods: hand-delivery in person; v-file or e-mail (in either case, emailed concurrently to the Union); regular U.S. mail; U.S. certified mail/return receipt requested; or express delivery (e.g., DHL, UPS, FedEx, USPS, etc.).

## C. THE GRIEVANCE PROCESS

1. Discipline and Discharge

   a. To be considered timely, a grievance challenging an action of discipline or discharge will be in writing, signed by the affected Flight Attendant or the Union representative and must be submitted to the Director of Inflight no later than 14 calendar days following the date upon which the Flight Attendant receives written notice of the discipline or discharge.

   b. Grievances must be submitted to the Director of Inflight or his/her designee and will be deemed filed upon receipt.

   c. Failure to file a grievance within the specified time limits constitutes a waiver of the grievance.

   d. An investigation and hearing will be held by the Director of Inflight or his/her designee no later than 30 calendar days following the Flight Attendant's submittal of the grievance to the Director of Inflight. Such hearing will not be conducted by the same person who initiated the disciplinary action, or by anyone subordinate to that person.

   e. The parties may agree to hold a Hearing for the purposes of hearing multiple grievances (i.e., "consolidated Hearing"). If that is the case, then the 30 calendar day time period above may be extended for the grievances to be heard during the consolidated Hearing.

   f. Upon agreement of the parties, Hearings may be held telephonically.

   g. Within 14 calendar days following the date of the

FRONTIER AIRLINES (R. BRIGHAM) - 0000941
0784

Hearing, the Company will issue a decision in writing to the affected Flight Attendant and the Union. For group grievances or consolidated Hearings, the Company will issue a decision in writing to the Union within 30 calendar days following the hearing date.

h.   The decision of the Company may be appealed to the System Board of Adjustment in accordance with Article 19 "System Board of Adjustment" within 14 calendar days of receipt of the Company's written decision provided pursuant to Section 1.g. above.

i.   A Flight Attendant disciplined or discharged during his/her probationary period may not dispute or challenge such discipline or discharge through the grievance procedure.

2.   Non-Disciplinary Grievances

a.   A Flight Attendant or the Union on behalf of a Flight Attendant or group of Flight Attendants may file a grievance concerning any action of the Company affecting them that they believe violates the terms of this Agreement. Prior to filing such a grievance, the Flight Attendant should discuss the matter with his/her supervisor, and the Union should discuss the matter with the Director of Inflight in an effort to resolve the matter.

b.   Non-Disciplinary Grievances will be in writing, signed by the affected Flight Attendant or Union official and will state in reasonable detail the facts upon which the claim is based, identifying the specific provisions of the Agreement claimed to have been violated and the relief sought. The grievance must be submitted to the Director of Inflight or his/her designee within 30 calendar days from the time the Flight Attendant knew or reasonably should have known, of the event(s) giving rise to the grievance, whichever is earlier.

c.   An investigation and hearing will be held by the Director of Inflight or his/her designee no later than 30 calendar days following the Flight Attendant's request.

d.   The parties may agree to hold a Hearing for the purposes of hearing multiple grievances (i.e., "consolidated Hearing"). If that is the case, then the 30 calendar day time period above may be extended for the grievances to be heard during the consolidated Hearing.

e.   Upon agreement of the parties, Hearings may be held telephonically.

f.   Within 14 calendar days following the date of the

Hearing, the Company will issue a decision in writing to the affected Flight Attendant and the Union. For group grievances or consolidated Hearings, the Company will issue a decision in writing to the Union only within 30 calendar days following the hearing date.

g.    The decision of the Company may be appealed to the System Board of Adjustment in accordance with Article 19 "System Board of Adjustment" within 14 calendar days of receipt of the Company's written decision provided pursuant to Section 2.f. above.

## D.    GRIEVANCE REVIEW MEETINGS

The Company and Union will schedule meetings regularly to review grievances pending at the System Board level in an effort to resolve as many grievances as possible. Both Company and Union will be represented by individuals with full authority to approve binding settlement agreements. Rejected offers of settlement made by the Company or Union and all other case evaluation(s) and discussion(s) will be without prejudice to either party and will be inadmissible in any System Board of Adjustment hearings. The parties may mutually agree to bypass this step in the grievance process.

## E.    TIME LIMITS & SUBMISSIONS

1.    Any time limits set forth in this Article for holding a grievance hearing may be extended by mutual agreement.

2.    If any action or decision made by the Company is not grieved or appealed by the Union or Flight Attendant within the time limits set forth in this Article, the action or decision of the Company will become final and binding.

3.    If the Company fails to render a decision within the time limits set forth in this Article, unless extended by mutual written agreement by the parties, the Union may advance the grievance to the next level in the Grievance process.

FRONTIER AIRLINES (R. BRIGHAM) - 0000943

0786

# ARTICLE 19
## SYSTEM BOARD OF ADJUSTMENT

**A.   ESTABLISHMENT**

In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of the Agreement, and which are properly submitted to it as set forth in Article 18, which Board will be known as the "Frontier Flight Attendants' System Board of Adjustment."

**B.   MEMBERSHIP**

1.   The Board will be comprised of a Company Board Member, a Union Board Member, and a single neutral member (i.e., the Chairperson).

2.   Each Board member will be free to discharge his/her duty in an independent manner, without fear that his/her individual relations with the Company or with the Union may be affected by action taken in good faith in his/her capacity as a Board member. Board members who are employees of the Company will be granted time off to attend the hearing and subsequent executive session(s).

3.   The parties will agree on a panel of nine approved arbitrators from which neutral members will be selected using the alternate strike method. The panel will be established within 45 calendar days of the signing of this Agreement. Once selected, a party may permanently remove a neutral from the panel after one year; however, the neutral may not be removed from any case to which he/she has already been assigned without agreement between the Company and the Union. If a panel member is removed by a party, voluntarily removes him/herself from the panel, or can no longer act as a neutral (e.g., death, illness, retirement), the parties will select a mutually agreeable permanent replacement.

4.   Notwithstanding the foregoing, the parties may at any time agree to select a neutral who is not a member of its standing panel to sit as the Chairperson of the System Board of Adjustment.

**C.   JURISDICTION**

1.   The Board will have jurisdiction over any grievance between any Flight Attendant and the Company, or the Union and the Company, growing out of grievances or out of interpretation of any of the terms of this Agreement; provided, however, that the jurisdiction of the Board will not extend to changes in hours of employment, rates of compensation or working conditions. The Board will consider any grievances properly submitted to it by the Union or the Company when such grievances have been previously

submitted to, but not settled, in accordance with the grievances procedure provided for in this Agreement.

2.    Each grievance presented to the Board will be treated as a separate case, unless the parties mutually agree otherwise.

3.    Appeals to the Board will be made in writing with a copy of the grievance attached, and will contain the following:

    a.    A statement of facts;

    b.    The question(s) at issue;

    c.    The position of the appealing party;

    d.    The understood position of the other party;

    e.    Specific provisions of the Agreement alleged to have been violated; and

    f.    The remedy sought by the appealing party.

**D.    DOCUMENTS, WITNESSES, EVIDENCE AND REPRESENTATION**

1.    The Union will designate its representative and the Company will designate its representative. Evidence may be presented either orally, in writing, or both.

2.    Witnesses may testify telephonically, provided that the party, whose witness(s) will testify telephonically, has notified the other party prior to the hearing date.

3.    The number of witnesses summoned at any time will not be greater than the number which can be spared from the Company's operation without interference with the services of the Company.

4.    Unless the parties mutually agree otherwise, a stenographic report is to be taken.

**E.    EXECUTIVE SESSION**

Following the hearing, or at any time prior to the issuance of a final decision in the matter, upon the request of any member of the Board, the members of the Board will convene in executive session.

**F.    LOCATION OF BOARD HEARINGS**

Board hearings will be held at a location agreed to by the parties on a case by case basis. If the parties are unable to agree to a location, the case will be heard at the Company's corporate headquarters or within the general vicinity of the Company's corporate headquarters.

FRONTIER AIRLINES (R. BRIGHAM) - 0000945

**G.     EXPENSES – ARBITRATOR/WITNESSES/HEARING**

    1.    The parties will each pay the cost and expenses of their own attorneys and/or advocates, witnesses and Board Members.

    2.    Unless otherwise provided in this Agreement, all fees and expenses of the arbitrator and those related to the conduct of the hearing will be borne equally by the Company and the Union (e.g., hearing room rental, arbitrator fees and travel expenses, court reporter, transcript, etc.)

    3.    The grievant (whether an employee of the Company or not), employee witnesses, employee board members, and representatives who are employees of the Company will be provided roundtrip positive space transportation on the lines of the Company from their point of duty or assignment, if applicable, to the location at which they must appear as witness or representatives.

    4.    Should a hearing before the Board be postponed or canceled without mutual consent of the Company and the Union, the party postponing or cancelling will bear any and all expenses incurred by the arbitrator and those related to the postponement or cancellation of the hearing (e.g., arbitrator cancellation fee and travel expenses, hearing room rental, etc.).

FRONTIER AIRLINES (R. BRIGHAM) - 0000946

0789

## ARTICLE 20
## MISSING, INTERNMENT, HOSTAGE, OR PRISONER OF WAR BENEFITS

A.   **GENERAL**

Any Flight Attendant who, while in the performance of duties for the Company, through no fault of his/her own becomes illegally interned (e.g., jailed, confined, etc.), is held as a prisoner of war, is hijacked or is held hostage (hereafter collectively referred to as "illegally interned") will accrue seniority and longevity, and will receive the following benefits until he/she returns to active employment with the Company or as otherwise provided in this Section:

1.   The Flight Attendant will be paid his/her average monthly compensation received during the last 3 months of the last 6 months she/he worked with the Company, less legally mandated deductions and deductions and contributions previously authorized by the Flight Attendant. Where the Flight Attendant would be entitled to longevity raises, the Flight Attendant will be paid in accordance with those raises.

2.   Full vacation and sick leave credit will continue to accrue.

3.   This Article does not apply in situations where the Flight Attendant is interned/held/retained legally in another country (e.g. held pursuant to Canada's Immigration and Refugee Protection Act) or otherwise missing.

4.   To the extent permitted by law, travel agreements (including interline agreements) and Company policy, continuation of travel benefits for dependents of the Flight Attendant will continue.

B.   **DEATH AND SURIVOR BENEFITS**

1.   If death of a Flight Attendant is established, or if there is sufficient presumption of death, all benefits set forth in paragraphs A (1) through (3) above will cease and death/survivor benefits, if any, will be paid.

2.   If the parties are unable to confirm whether a Flight Attendant falling under this Section is alive or dead, compensation and other benefits under this Section will continue to be paid by the Company to the beneficiaries (or trust account) indicated in the Flight Attendant's letter of instruction to the Company until death/survivor benefits, if any, are paid or until a twelve-month period has passed, whichever occurs first.

3.   The Company will require each Flight Attendant to execute and deliver to the Company a written direction in the form set forth in Paragraph 5 below. The monthly compensation set forth in Section A. above will be credited to such Flight Attendant and will

be distributed according to written directions from the Flight Attendant.

4.  If a Flight Attendant due compensation under this Article has not completed a direction as per Paragraph 3 above, such compensation will be held in an interest bearing account at a federally-insured financial institution until the Flight Attendant is found or released and is able to claim the compensation. In the event of the Flight Attendant's death, the proceeds of said account will be paid to the legal representative of the Flight Attendant's estate.

5.  Form Of Written Direction

WRITTEN DIRECTION FOR DISBURSEMENT OF BENEFITS

TO:  Frontier Airlines

DATE:  _____

In the event payment directly to me is not possible, you are hereby directed to pay all monthly compensation due me and any other benefits stipulated in the Agreement as follows:

$_____ or _____% per month to (name) _____, (address) _____, as long as living, and thereafter to (name) _____, (address) _____. The balance, if any amounts accruing after the death of the persons named above will be held for me and distributed as stipulated by Article 20 of the Collective Bargaining Agreement.

The foregoing directions may be modified from time to time by letter addressed to the Company and signed by the undersigned. Upon receipt by the Company, any such modification will become effective as of the postmarked date.

(Signature)                                    _____

(Print name)                                  _____

(Employee number)                         _____

FRONTIER AIRLINES (R. BRIGHAM) - 0000948

0791

## ARTICLE 21
## DRUG AND ALCOHOL TESTING

A.   The Company will maintain and administer drug and alcohol testing programs in accordance with applicable federal laws and regulations and the Company's drug testing program.

B.   A Flight Attendant will be considered to be on duty for pay purposes during the time he/she is required to undergo random drug/alcohol testing. If the testing occurs after scheduled release from duty at the end of a duty period, the Flight Attendant will notify Crew Scheduling of his/her release time immediately following such test.

C.   No Flight Attendant will be required to take a random alcohol/drug test on a scheduled day off.

D.   A Flight Attendant ordered to submit to a "reasonable suspicion" test will be permitted to contact a Union representative prior to the test provided that doing so does not delay the test.

E.   A Flight Attendant who is removed from a trip for drug/alcohol testing that does not result in a positive result will be made whole for any time lost.

F.   All Flight Attendants will be provided a copy of the Company's FAA approved drug and alcohol program.

FRONTIER AIRLINES (R. BRIGHAM) - 0000949
0792

## ARTICLE 22
## SAFETY, SECURITY, HEALTH AND EAP

**A.   GENERAL**

1.   The Company recognizes that safety, security and health are subjects that are an essential part of the Flight Attendant's working environment and will work with the Union's Safety, Security, ASAP, EAP and Health committees to resolve concerns.

2.   Flight Attendants are not responsible for security sweeps, except in extreme circumstances.

3.   In the event of a bomb threat, Flight Attendants will not be required to search for bombs and/or suspicious and potentially dangerous items on an aircraft, or to remain on board during such a search while the aircraft is on the ground.

4.   The Company will maintain zero tolerance for assaults and/or interference involving crew members.

5.   The Company will notify a Flight Attendant upon learning that he/she may have been exposed to Hepatitis B, Tuberculosis and/or HIV virus in the course of his/her duties and will provide testing should an exposure event occur.

6.   Reasonable efforts will be made to standardize the configuration of safety/emergency equipment on each series of aircraft.

7.   Whenever the Company refers Flight Attendants for voluntary participation in the Company EAP, either verbally or in writing, the Company will also inform the Flight Attendant of the existence of the Union EAP.

8.   Professional Standards - When a conflict between Flight Attendants is brought to the attention of the Company in the first instance, the Company may refer the matter to the Union EAP.

**B.   AFA SAFETY, SECURITY AND HEALTH COMMITTEE**

1.   Upon request, the Company will meet with the Union's Safety, Security and Health Committee Chairs and EAP Chairs to address important issues.

2.   Upon request the Company will provide the Union a copy of the OSHA300A report as provided to OSHA.

3.   The Company recognizes the Union Accident Investigation Team ("Go Team") as potentially active participants in an accident investigation under the purview of the NTSB.

FRONTIER AIRLINES (R. BRIGHAM) - 0000950
0793

C.   **ACCIDENT/HIJACKING**

1.   Upon learning of an aircraft accident or hijacking involving a Company aircraft with a Flight Attendant onboard, the Company will promptly notify the MEC President or designee.

2.   The Company will provide the Union with the reports pertaining to accidents or hijackings, provided such reports:

   a.   Are reasonably related to the duties and responsibilities of the Union as representative of the Frontier Flight Attendants;

   b.   Are reasonably available or producible without undue burden to the Company;

   c.   Do not contain or refer to confidential information of the Company or its employee, partners, or affiliates; and

   d.   Are not precluded from disclosure based on state or federal privacy laws or any other law or regulation.

FRONTIER AIRLINES (R. BRIGHAM) - 0000951

0794

## ARTICLE 23
## GENERAL

A.   **COMMUTER POLICY**

1.   The Company recognizes Flight Attendants' desire to live in locations other than their base. The Company's commuter policy is intended to protect registered Flight Attendant Commuters ("FACs") from a dependability infraction when unable to report for duty in base. Once registered with the Company as a commuter, the Flight Attendant is responsible for reporting to assignments in a timely manner and rested for a full duty period. The following provisions are not intended to relieve Flight Attendants of that responsibility.

2.   The FAC policy does not alleviate the FAC's responsibility to attend mandatory personal meetings scheduled with Company management.

3.   Commuting crew members are not exempt from the Company's carry-on baggage policy which has been approved and is monitored by the FAA. This policy is in effect for Flight Attendants traveling to and from work. Please refer to the carry-on baggage policy posted on the Company's public website, www.FrontierAirlines.com, for the current policy.

4.   Registered City

A FAC must register his/her commuter city with the Company. Flight Attendants may commute from sister-cities that are within 180 miles of their commuter city. The commuter city may not be changed more than three times a year unless individual authorization is given by Inflight Management. The FAC policy applies only on Frontier Airlines and to carriers on which the Company has direct access to their computer reservation system.

5.   Flight Listing

a.   The FAC will select a primary and back-up flight with available seats. "Available" is defined as at least one seat open through https://ifc.id90.com/, or other designated online flight listing system, when the Flight Attendant lists within 12 hours of departure from the FAC's registered city. The number of non-revenue passengers listed does not impact this policy.

b.   The back-up flight, per the published schedule, must allow the FAC to report at base and check-in on-time.

c.   The cabin jumpseat may be utilized as the FAC's primary flight but may not be considered as his/her back-up flight. At times, Company management or training

personnel (e.g., Check Flight Attendants, Instructors on
Company Business) will occupy the additional jumpseat,
and the FAC must plan accordingly.

d.     A FAC receives no preferential treatment regarding
priority for the cabin jumpseat in either direction from
his/her registered city; all published jumpseat guidelines
are in effect.

6.     Documentation

The FAC must be able to provide documentation to his/her Inflight
Manager to substantiate listing and standing-by for two available
flights. Listing and standing-by documentation includes:

a.     Printout of F9-generated listings (e.g., auto-confirmation
generated from website);

b.     Boarding coupon;

c.     Printout from customer service agent displaying non-
revenue stand-by list;

d.     ACM form.

7.     Corrective Action Protection

a.     The FAC policy protects the FAC from the dependability
corrective action if a circumstance beyond the FAC's
control prevents reporting at base on-time for their trip.
The four excusable incidents are:

(i)     Weather delay or cancellation;

(ii)    Mechanical delay or cancellation;

(iii)   Denied jumpseat due to seniority, or by ACM on
Company Business;

(iv)    Unforeseen significant event (e.g. weight &
balance, airport security breach, etc.).

b.     If the FAC's flights are significantly delayed and the
revised scheduled arrival into base is within 30 minutes
prior to the FAC's report time, he/she must contact with
Crew Scheduling and advise a Crew Scheduler of the
delay and anticipated arrival into base. The FAC must be
on the aircraft 40 minutes prior to departure in order to
take the trip.

c.     Any issues other than the four types of events listed
above will not be excused for the FAC under this policy

FRONTIER AIRLINES (R. BRIGHAM) - 0000953
0796

(e.g., traffic, car problems, weather on the drive to the airport).

8. Responsibilities

    a. A FAC unable to report to the aircraft within 20 minutes of his/her scheduled report time in base may be removed from that trip and replaced with a Reserve Flight Attendant.

    b. The Flight Attendant may be released from duty without pay for the portion of the trip he/she missed. The Flight Attendant may use the Automated Bid System, or Will Fly to replace the hours lost. A FAC must pick up time to meet the 60 hours requirement if the missed trip brings the Flight Attendant's hours below 60. If the trip missed is the last trip of the month, the FAC must contact the Company.

    c. The Flight Attendant may resume the original trip, if applicable, on its return through base. The Reserve Flight Attendant would be removed at that time, and the FAC would resume the trip and paid according to hours flown for the remainder of the trip. The FAC will not be allowed to resume the trip out of base. The FAC must make every effort to reach base to complete the assigned trip.

9. Training

Training assignments for FACs will be treated the same as reporting for a scheduled trip, and the FAC must follow all procedures outlined in this Section A and Article 7. The FAC is responsible for contacting the Training Administrator for rescheduling the missed class. The FAC is solely responsible for maintaining in-flight qualification.

10. Reserve

A Flight Attendant on Reserve may be registered as a FAC. Using the above-stated reporting procedures, the Reserve FAC must be able to arrive in base prior to 0001 of Day 1 of a series of days on Reserve. A Reserve Flight Attendant pre-assigned a trip, if released by Crew Scheduling until report time, may utilize the above-stated reporting procedures with regards to reporting in base for the assigned trip. Reserve FACs will not receive, nor request, preferential treatment from Crew Scheduling with regard to trip assignment or scheduling.

**B.  INFLIGHT RETIREMENT RECOGNITION**

The steps to take when preparing for retirement as a Flight Attendant from the Company are:

FRONTIER AIRLINES (R. BRIGHAM) - 0000954

0797

1.  A Flight Attendant must have at least 5 years in Inflight Services to qualify for Inflight Retirement Recognition.

2.  The Flight Attendant will make an appointment with his/her Inflight Manager at least 30 days prior to his/her last flight, preferably prior to the Flight Attendant's last bid.

3.  The Flight Attendant will not set a date for his/her last flight until he/she has met with the Inflight Manager; this is the time the date will be set.

4.  The Flight Attendant may have up to four family members join him/her on his/her last flight. The Flight Attendant will provide the names to the Inflight Manager at least a week prior to the last flight, so positive space reservations may be made.

C.  **RETAINED MANAGEMENT RIGHTS**

1.  Except as restricted by the express terms of this Agreement, the Company will retain all rights to manage and operate its business and work force, including but not limited to: the right to sell or discontinue all or part of the business; to sell or lease aircraft or facilities; to determine where and when to operate scheduled or unscheduled flights; to determine its marketing methods and strategies, and to enter into code sharing, affiliation or marketing agreements with other carriers; to invest (including equity investments) in other business entities including, without limitation, other air carriers; and to determine the number and type of aircraft it will utilize.

2.  The exercise of any right reserved herein to management in a particular manner, or the non-exercise of such right, will not operate as a waiver of the Company's rights hereunder, or preclude the Company from exercising the right in a different manner.

3.  Nothing in this Agreement will restrict the right of Inflight Management to fly as crew members to maintain proficiency and to provide expertise and assistance to Flight Attendants in the form of supervision, instruction and demonstration to achieve the goal of superior service to all passengers. When a Flight Attendant is displaced from his/her scheduled flight assignment by a management/supervisory/inflight Flight Attendant, he/she will be released from all duty and paid as if flown. The Company will provide as much notice as possible of the displacement to the Flight Attendant.

FRONTIER AIRLINES (R. BRIGHAM) - 0000955

0798

## ARTICLE 24
## EQUITY, PROFIT-SHARING, AND WAGE & BENEFIT SNAPBACKS

### A.    EQUITY PARTICIPATION

Flight Attendants will be entitled to equity in the Company (the "Equity Participation") as described herein:

1.    The value of the Equity Participation is $16.0 million.

2.    The Equity Participation value will be converted to first dollar equity in the Company at a ratio of the greater of $0.18 per dollar of new equity invested in the Company, or any higher rate offered to any other key stakeholder in the restructuring process.

3.    The terms of the Equity Participation by and for the benefit of the Participating Flight Attendants will be equal to the terms obtained by a third party investor in an Equity Event or, if the Equity Event is a public offering of securities in the Company, the form of securities offered in the public offering.

4.    Other minority investor rights by and for the benefit of the Participating Flight Attendants will be negotiated, including tagalong rights and customary dragalong rights.

5.    Vesting:  The Equity Participation will vest in proportion to the actual Investments as set forth in the letter dated October 11, 2011 between the Company and the Union entitled "Flight Attendant Restructuring Investments".  To the extent the Investments as set forth in the referenced letter cease or are not made, the value of the Equity Participation in Paragraph A.1.a above will be reduced by the net present value discount rate of 15%

### B.    PROFIT SHARING PROGRAM.

The Company has established a Profit Sharing Plan (the "PSP") for employees participating in the Company's restructuring efforts. According to the terms of the PSP, the Company will make contributions as follows:

1.    For pre-tax earnings greater than 2%, but less that 4% of total Company revenue, 50% will be contributed to the PSP.

2.    For pre-tax earnings greater than 4%, but less than 6% of total Company revenue, 25% will be contributed to the PSP.

3.    For pre-tax earnings greater than 6% of total Company revenue. 10% will be contributed to the PSP.

4.    50% of contributions to the PSP will be allocated to the Frontier

Page 121 of 123

pilots and the remaining 50% will be allocated to the other participating Frontier employee groups in proportion to their contribution. The proportional share of the Flight Attendant group is 18% of the 50% share of the non-pilot groups.

5.    The Company will distribute all profit sharing payments no later than April 30 of each year based on the audited results from the preceding calendar year.

## C.   SNAPBACKS

1.    The overtime threshold, per diem and holiday pay will be reinstated if the Company is profitable for two consecutive years with pretax profits in excess of 5%, after profit sharing.

2.    The Company's matching contribution to the 401K Plan will be reinstated if the Company posts 2 straight years of pre-tax profits in excess of 5%, after profit sharing. The Company retains the right to restore the Company's matching contribution partially or fully in its discretion. Effective with the first paycheck in July 2016, the Company's matching contribution to the 401k Plan will be reinstated.

## D.   ADDITIONAL PROVISIONS

Equity Participation as set forth in Paragraph A above and participation in the PSP as set forth in Paragraph B above, will be exclusively for Frontier Flight Attendants on the Frontier Flight Attendant Seniority List as of January 1, 2012. This exclusion includes anyone who changes Class and Craft as outlined in Article 10 Seniority of this Agreement.

FRONTIER AIRLINES (R. BRIGHAM) - 0000957

0800

## ARTICLE 25
## DURATION

A.  This Agreement will become effective on the date of signing and will
continue in full force and effect until March 1, 2016 and will renew itself
without change until each succeeding March 1 thereafter unless written
notice of an intended change is served in accordance with Section 6, Title
1, of the Railway Labor Act, as amended, by either party hereto at least 30
days, but no more than 240 days, prior to March 1, 2016 or any March 1 of
any subsequent year.

B.  Notwithstanding paragraph A. above, during the duration of this Agreement
should Frontier Airlines, Inc. earn more than a 5% annual pretax profit, after
payment of profit sharing payments, if any, for any two consecutive years,
then the Association may reopen this Agreement for the limited purpose of
negotiating over rates of pay, with the goal of achieving rates consistent
with peer group (LCC) Flight Attendants.

C.  This Agreement shall be effective August 29, 2011 and shall remain in full
force and effect as outlined by the terms of this Article.

IN WITNESS WHEREOF, the undersigned parties have signed this
Agreement this _____ day of October, 2011.

FOR ASSOCIATION OF FLIGHT
ATTENDANTS – CWA, AFL-CIO                FOR FRONTIER AIRLINES, INC.


_____          _____
Veda Shook                               Ron Henson
International President                   Vice President – Labor Relations


_____          _____
Erika Schweitzer                         Jacalyn Peter
MEC President                            Sr. Manager of Labor Relations


_____
Darol Glasscock
Negotiating Committee Member


_____
Theresa Owens
Negotiating Committee Member


_____
Suzanne Balzer
AFA-CWA Negotiator

FRONTIER AIRLINES (R. BRIGHAM) - 0000958
0801

| **FRONTIER** | **Inflight Dependability** **Performance Counseling Record** | Form Number: 30696 Effective Date: 07/14/08 |
|---|---|---|

EMPLOYEE NAME   Rebecca Kruger

DEPARTMENT   Inflight Services

POSITION   Flight Attendant                                   DATE   9/5/07

**TYPE OF PERFORMANCE COUNSELING:**
☐ Documented Verbal Warning   ☐ Written Warning   ☑ Final Termination Warning   ☐ Suspension
(Refer to Frontier Airlines Employee Handbook regarding performance and conduct for additional information.)

Was EAP offered?   ☐ YES   ☑ NO

**REASON(S) FOR PERFORMANCE COUNSELING** (Be specific; refer to previous performance counselings as appropriate.)
On 8/16/07, crew scheduling called reserve Flight Attendant Rebecca Kruger to give her an assignment.  At that time, Rebecca informed crew scheduling that she was sick resulting in a missed trip.

On 8/23/07, Rebecca misplaced her keys and was unable to report for duty resulting in a missed trip.

**EXPECTATION(S) FOR SUSTAINED CHANGE IN BEHAVIOR AND/OR PERFORMANCE**
Rebecca understands the importance of being dependable and available to crew scheduling while on reserve.  She is expected to adhere to the policies and procedures outlined in the Frontier Airlines Flight Attendant Handbook.

Effective   8/23/07   , you begin a warning/suspension period for up to   365   calendar days, ending   8/23/08   . You are expected to immediately take whatever action is necessary to meet the expectations for sustained change in your behavior and/or performance as outlined in this document. If, at any time during the warning period or thereafter, you fail to meet expectations or fail to make sufficient and sustained progress toward meeting stated expectations, additional action may be taken, up to and including termination of your employment.

Issued By:
SUPERVISOR SIGNATURE   *Kari Thompson*                      Date  9/5/07

I acknowledge and understand the following:

☐ The information in this document was discussed with me and my signature indicates that I have received a copy of the Performance Counseling Record, but does not necessarily mean that I agree with this action or the reasons given for it.

☐ Failure to improve my performance and/or behavior as described may result in further action, including termination.

☐ I have the right to appeal this action in accordance with Frontier's Internal Appeal Procedures. If I choose to exercise that right, I must indicate that intention in writing to my Manager and Human Resources within (15) fifteen calendar days from the date I receive this notice.   N/A

☐ I am not eligible to apply for another position within the Company for 90 days from the date of this action.

Employee Signature   *Rebecca F. Kruger*                      Date   9-16-07

Document distribution: Signed Original to Human Resources; copies to both the named employee, and to the supervisor issuing the Performance...

> **EXHIBIT**
> A

FRONTIER AIRLINES (R. BRIGHAM) - 0001115

ESI00000008-1

**EXHIBIT**
16

EXHIBIT 4
0862

# FRONTIER AIRLINES

To:     Rebecca Kruger
From:  Kari Thompson
Date:   8/23/07
Re:     Dependability Record

*sick    couldn't find keys*

According to your record, you currently have 2 missed trips, 8/16/07 & 8/23/07. I would like the opportunity to discuss the occurrences with you. Please stop by the office on the 4ᵗʰ floor above Jimmy's the next time you fly or call to schedule an appointment. Thank you in advance for your time.

Kari Thompson
303-348-7609-W

*8/29 Left voicemail to call me - KT*
*8/29 Called back - will call me this weekend once she is assigned a trip.*

0803

# FRONTIER AIRLINES

To:        Rebecca Kruger, 13206
From:      Robert Mitchell, inflight manager
Date:      17 November 2008
RE:        Four Sick Instances Reminder

Hi, Rebecca,
As you know, Frontier takes a great deal of pride in maintaining an outstanding
completion factor and on-time performance record with the Department of
Transportation. This record positions us favorably with our customers and
contributes to the recognition we receive such as "Best Low-Cost Carrier."

From an Inflight standpoint, we play a significant role in supporting the airline's
success by maintaining a consistent level of dependability within our Flight
Attendant workgroup. To accomplish this, it is important we advise you that our
records reflect that you currently have 4 sick instances in a rolling 12 month
period. The purpose of this letter is for advisement only. However, I ask that you
review Flight Attendant Handbook 70.00 to understand our concern should you
reach five instances within any 12-month period.

I have listed the dates below for your review. If you feel this is in error, have any
questions, or need assistance, please stop by the Inflight office to see me or call
any time.

Sick occurrences-
   1.  12.22.7
   2.  9.14.8
   3.  9.28-30.8
   4.  10.13-15.8

I appreciate your commitment to maintaining a dependable airline.

Sincerely,


Robert Mitchell
Inflight manager

720.226.1583
rmitchell@flyfrontier.com

0804

FRONTIER AIRLINES (R. BRIGHAM) - 0001117

ESI00000008-3

# FRONTIER AIRLINES

To:        Rebecca Kruger, 13206
From:      Robert Mitchell, inflight manager
Date:      29 December 2008
RE:        Four Sick Instances Reminder

HI, Rebecca,
As you know, Frontier takes a great deal of pride in maintaining an outstanding completion factor and on-time performance record with the Department of Transportation. This record positions us favorably with our customers and contributes to the recognition we receive such as "Best Low-Cost Carrier."

From an Inflight standpoint, we play a significant role in supporting the airline's success by maintaining a consistent level of dependability within our Flight Attendant workgroup. To accomplish this, it is important we advise you that our records reflect that you currently have 4 sick instances in a rolling 12 month period. The purpose of this letter is for advisement only. However, I ask that you review Flight Attendant Handbook 70.00 to understand our concern should you reach five instances within any 12-month period.

I have listed the dates below for your review. If you feel this is in error, have any questions, or need assistance, please stop by the Inflight office to see me or call any time.

Sick occurrences-
   1. 9.14.8   (I am not counting the instance from 12.22.7, which has "dropped off".)
   2. 9.28-30.8
   3. 10.13-15.8
   4. 12.3-7.8

I appreciate your commitment to maintaining a dependable airline.

Sincerely,


Robert Mitchell
member, inflight manager team

720.226.1583
rmitchell@flyfrontier.com

0805

# FRONTIER

**Inflight**
**Performance Counseling Record**

Form Number: 30896
Effective Date: 04/10/08

EMPLOYEE NAME **Rebecca Kruger, 13206**

DEPARTMENT **Inflight**

POSITION **Flight Attendant**                                    DATE **2.16.9**

**TYPE OF PERFORMANCE COUNSELING:**
☑ Documented Verbal Warning   ☐ Written Warning   ☐ Final Termination Warning   ☐ Suspension
(Refer to Frontier Airlines Employee Handbook regarding performance and conduct for additional information.)

Was EAP offered?   ☐ YES   ☑ NO

**REASON(S) FOR PERFORMANCE COUNSELING** (Be specific; refer to previous performance counselings as appropriate.)

Rebecca had her fifth sick instance within the last 12 months, and we discussed it briefly on
the concourse today. The active instances are: 9.14.8, 9.28-30.8, 10.13-15.8, 12.3-7.8,
and 1.19.9. According to the Flight Attendant Handbook (FAH) 70.00, p. 1, four sick
instances are allowed in any 12-month period without penalty. The fifth within 12 months
results in a documented verbal warning.

**EXPECTATION(S) FOR SUSTAINED CHANGE IN BEHAVIOR AND/OR PERFORMANCE**

I expect Rebecca to manage her dependability in accordance with Frontier's sick leave policy, as well as her own health needs.
Failure to do so will result in additional and progressive action in accordance with the FAH.

Rebecca informed me that she may be applying for intermittent FMLA to cover absences due to pregnancy. I encourage her to
review FAH 80.00, pp. 3-4, especially the requirement to provide a medical release ASAP concerning her ability to continue flying.

*Note that while individual sick instances remain active for 365 days, the level of discipline will adjust downward as the number of
instances remaining within any 12-month period decreases.

Effective 1.19.9            , you begin a warning/suspension of 365*    calendar days, ending 1.18.10            .

You are expected to immediately take whatever action is necessary to meet the expectations for sustained change in your
behavior and/or performance as outlined in this document. If, at any time during the warning period or thereafter, you fail
to meet expectations or fail to make sufficient and sustained progress toward meeting stated expectations, additional
action may be taken, up to and including termination of your employment.

Issued By:
SUPERVISOR SIGNATURE *Robert N. Hull*                    Date **2·16·9**

I acknowledge and understand the following:

☑ The information in this document was discussed with me and my signature indicates that I have received a copy of the
Performance Counseling Record, but does not necessarily mean that I agree with this action or the reasons given for it.

☑ Failure to improve my performance and/or behavior as described may result in further action, including termination.

☐ I have the right to appeal this action in accordance with Frontier's Internal Appeal Procedures. If I choose to exercise that
right, I must indicate that intention in writing to my Manager and Human Resources within (15) fifteen calendar days from
the date I receive this notice.

N/A

☑ I am not eligible to apply for another position within the Company for 90 days from the date of this action.

Employee Signature *Rebecca J. Kruger*                    Date **2-21-09**

Document distribution: Signed Original to Human Resources; copies to both the named employee, and to the supervisor issuing the Performance Counseling Record.

FRONTIER AIRLINES (R. BRIGHAM) - 0001119

ESI00000008-5

# FRONTIER AIRLINES

| | |
|---|---|
| To: | Rebecca Kruger # 13206 |
| From: | Jerry Arellano |
| Date: | October 21, 2009 |
| RE: | Sick Instances |

Hi Rebecca,

As you know, Frontier takes a great deal of pride in maintaining an outstanding completion factor and on-time performance record with the Department of Transportation. This record positions us favorably with our customers and contributes to the recognition we receive such as "Best Low-Cost Carrier."

From an Inflight standpoint, we play a significant role in supporting the airline's success by maintaining a consistent level of dependability within our Flight Attendant workgroup. To accomplish this, it is important we advise you that our records reflect you have 4 sick instances in a rolling 12 month period. The purpose of this letter is for advisement only. However, I would like to suggest you review the Flight Attendant Handbook to understand our concern should you have an additional occurrence within the next 12 month window.

I have listed the dates below for your review. If you feel this is in error, have any questions or need assistance, please feel free to stop by the Inflight office to see me or call me at 303-348-1043.

Sick occurrences-
1. 12/03/08
2. 01/19/09
3. 09/20/09
4. 10/10/09

Thank you for considering the importance of maintaining a dependable airline.

Sincerely,

Jerry Arellano
Manager, Inflight Administration
303-348-1043
garellano@flyfrontier.com

FRONTIER AIRLINES (R. BRIGHAM) - 0001120

ESI000000008-6

# FRONTIER AIRLINES

To:       Rebecca Kruger # 13206
From:     Jerry Arellano
Date:     January 12, 2010
RE:       Sick Instances

Hi Rebecca,

As you know, Frontier takes a great deal of pride in maintaining an outstanding completion factor and on-time performance record with the Department of Transportation. This record positions us favorably with our customers and contributes to the recognition we receive such as "Best Low-Cost Carrier."

From an Inflight standpoint, we play a significant role in supporting the airline's success by maintaining a consistent level of dependability within our Flight Attendant workgroup. To accomplish this, it is important we advise you that our records reflect you have 4 sick instances in a rolling 12 month period. The purpose of this letter is for advisement only. However, I would like to suggest you review the Flight Attendant Handbook to understand our concern should you have an additional occurrence within the next 12 month window.

I have listed the dates below for your review. If you feel this is in error, have any questions or need assistance, please feel free to stop by the Inflight office to see me or call me at 303-348-1043.

Sick occurrences-
   1.  01/19/09
   2.  09/20/09
   3.  10/10/09
   4.  01/01/10

Thank you for considering the importance of maintaining a dependable airline.

Sincerely,


Jerry Arellano
Manager, Inflight Administration
303-348-1043
garellano@flyfrontier.com

FRONTIER AIRLINES (R. BRIGHAM) - 0001121

ESI00000008-7

# FRONTIER.

**Inflight**
**Performance Counseling Record**

Form Number: 30696
Effective Date: 04/10/08

EMPLOYEE NAME  Rebecca Kruger #413206

DEPARTMENT  Inflight Services

POSITION  Flight Attendant                                            DATE  03/29/12

**TYPE OF PERFORMANCE COUNSELING:**
☐ Documented Verbal Warning   ☑ Written Warning   ☐ Final Termination Warning   ☐ Suspension
(Refer to Frontier Airlines Employee Handbook regarding performance and conduct for additional information.)

Was EAP offered?  ☐ YES  ☑ NO

**REASON(S) FOR PERFORMANCE COUNSELING** (Be specific; refer to previous performance counselings as appropriate.)
On 03/16/12, you incurred a sixth (6th) sick instance within a 12-month rolling period, which warrants a Written Warning. This Written Warning will include sick instances effective 05/13/11 through 03/16/12.

Previous sick instances:

05/13/11
05/27/11
08/16/11
09/02/11
09/30/11
03/16/12

**EXPECTATION(S) FOR SUSTAINED CHANGE IN BEHAVIOR AND/OR PERFORMANCE**

Rebecca, we expect you to manage your dependability in accordance with the Company's dependability policy (FAH 85.00, pg 2) and to make on-time performance and dependability a suitably high priority in your personal planning. Failure to do so will result in additional and progressive action up to and including termination in accordance with the FAH.

Note:  This occurrence will remain active for 365 days; however, the level of discipline will adjust as previous occurrences roll off due to the rolling 12-month period.

Effective 03/16/12_____, you begin a warning/suspension of 365___ calendar days, ending 03/15/13_____.

You are expected to immediately take whatever action is necessary to meet the expectations for sustained change in your behavior and/or performance as outlined in this document. If, at any time during the warning period or thereafter, you fail to meet expectations or fail to make sufficient and sustained progress toward meeting stated expectations, additional action may be taken, up to and including termination of your employment.

Issued By:
SUPERVISOR SIGNATURE _____ Date 3/29/12

I acknowledge and understand the following:

☑ The information in this document was discussed with me and my signature indicates that I have received a copy of the Performance Counseling Record, but does not necessarily mean that I agree with this action or the reasons given for it.

☑ Failure to improve my performance and/or behavior as described may result in further action, including termination.

☐ I have the right to appeal this action in accordance with Frontier's Internal Appeal Procedures. If I choose to exercise that right, I must indicate that intention in writing to my Manager and Human Resources within (15) fifteen calendar days from the date I receive this notice.

☑ I am not eligible to apply for another position within the Company for 90 days from the date of this action.

Employee Signature  _Rebecca L Kruger_____ Date 3/30/12

Document distribution: Signed Original to Human Resources; copies to both the named employee, and to the supervisor issuing the Performance Counseling Record.

0809

FRONTIER AIRLINES (R. BRIGHAM) - 0001122

ESI00000008-8

Attendance Warning - Verbal          CH sent on 7/3/13        Page 1 of 1

# FRONTIER.

Frontier Airlines, Inc.      P 720.374.4200        frontierairlines.com
Frontier Center One          F 720.374.4375
7001 Tower Road
Denver, CO 80249

## Attendance Warning

Name: REBECCA BRIGHAM                         Employee #: 413205
Department: Inflight                          Date: 7/3/2013
Date of Hire: 05/24/2007

__X__Verbal          ____Written          ____Final          ____Termination

As of 02/08/2013, in the past twelve (12) months of active service, you have accumulated four (4) separate occurrences involving your attendance. Per the Associate Handbook, four (4) occurrences will place you on a verbal warning for attendance.

The occurrences are listed as follows:

| OCC Date | Display Code | Bid Base | Count |
|----------|--------------|----------|-------|
| 03/16/2012 | UNA | DEN | 1 |
| 08/10/2012 | Sick | DEN | 1 |
| 09/30/2012 | Sick | DEN | 1 |
| 12/01/2012 | Sick | DEN | 1 |
| 02/08/2013 | MED | DEN | 1 |

This letter serves as a record of the above disciplinary action and a notice advising you that your behavior must be corrected immediately. Although this responsibility falls to you, management is here to assist you in doing so. Should you have any questions or concerns regarding your situation, please do not hesitate to contact your base supervisor or myself to discuss.

Any future dependability/attendance issues or violations of job performance can lead to further disciplinary action, up to and including termination. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is needed

If you have any questions, please don't hesitate to contact the Inflight Reliability team at inflight.reliability@rjet.com.

Thank You
Inflight Management

cc: Personnel File

A whole different animal.

http://cats/Search.aspx                                        7/3/2013

0810

FRONTIER AIRLINES (R. BRIGHAM) - 0001123

ESI00000008-9

**Williams, JaJuan**

| | |
|---|---|
| **From:** | Williams, JaJuan |
| **Sent:** | Tuesday, September 03, 2013 10:53 AM |
| **To:** | Brigham, Rebecca L. |
| **Subject:** | Personal Counseling Record |

# FLYFRONTIER.COM

Inflight: 303-342-7707
Fax: 303-348-1035

### Attendance Warning

Name: REBECCA BRIGHAM                          Employee #:413206
Department: Inflight                                        Date:9/3/2013
Date of Hire:05/24/2007

____Verbal          __X__Written          ____Suspension          ____Final Warning

As of 08/30/2013, in the past twelve (12) months of active service, you have accumulated six (6) separate Occurrences involving your attendance. Per the Frontier Employee Handbook, six (6) Occurrences will place you on a Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|---|---|---|---|
| 03/16/2012 | UNA | DEN | 1 |
| 08/10/2012 | Sick | DEN | 1 |
| 09/30/2012 | Sick | DEN | 1 |
| 12/01/2012 | Sick | DEN | 1 |
| 02/08/2013 | MED | DEN | 1 |
| 08/30/2013 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

**Time Period Within Previous 12 Months**

| | | | | |
|---|---|---|---|---|
| Number of Occurrences | 4 | 6 | 7 | 8 |
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via Anthem (1-800-865-1044) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

If you have any questions, please don't hesitate to contact your Inflight Supervisor.

1

0811

FRONTIER AIRLINES (R. BRIGHAM) - 0001124

ESI00000008-10

Williams, JaJuan

# FLYFRONTIER.COM

Inflight: 303-342-7707
Fax: 303-348-1035

### Attendance Warning

**Name:** REBECCA BRIGHAM
**Department:** Inflight
**Date of Hire:** 05/24/2007

**Employee #:** 413206
**Date:** 09/28/2013

____Verbal ____Written ____Suspension __X__Final Warning

As of 09/27/2013 in the past twelve (12) months of active service, you have accumulated seven (7) separate occurrences involving your attendance. Per the Frontier Employee Handbook, seven (7) Occurrences will place you on a Final Termination Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|----------|-------------|----------|-------|
| 08/10/2012 | Sick | DEN | 1 |
| 09/30/2012 | Sick | DEN | 1 |
| 12/01/2012 | Sick | DEN | 1 |
| 02/08/2013 | MED | DEN | 1 |
| 08/30/2013 | Sick | DEN | 1 |
| 09/12/2013 | Sick | DEN | 1 |
| 09/27/2013 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

**Time Period Within Previous 12 Months**

| | | | | |
|---|---|---|---|---|
| **Number of Occurrences** | 4 | 6 | 7 | 8 |
| **Type of Corrective Action** | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via Anthem (1-800-865-1044) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

Thank You
Inflight Management

1

0812

FRONTIER AIRLINES (R. BRIGHAM) - 0001125

ESI00000008-11

Cm 10/22

**Williams, JaJuan**

# FLYFRONTIER.COM

Inflight: 303-342-7707
Fax: 303-348-1035

### Attendance Warning

Name:REBECCA BRIGHAM                                    Employee #:413206
Department: Inflight                                          Date:10/18/2013
Date of Hire:05/24/2007
____Verbal           ____Written           ____Suspension           __X__Final Warning

As of 10/18/2013 in the past twelve (12) months of active service, you have accumulated seven (7) separate occurrences involving your attendance. Per the Frontier Employee Handbook, seven (7) Occurrences will place you on a Final Termination Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|----------|--------------|----------|-------|
| 08/10/2012 | Sick | DEN | 1 |
| 09/30/2012 | Sick | DEN | 1 |
| 12/01/2012 | Sick | DEN | 1 |
| 02/08/2013 | MED | DEN | 1 |
| 08/30/2013 | Sick | DEN | 1 |
| 09/12/2013 | Sick | DEN | 1 |
| 09/27/2013 | Sick | DEN | 1 |
| 10/18/2013 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

| | Time Period Within Previous 12 Months | | | |
|---|---|---|---|---|
| Number of Occurrences | 4 | 6 | 7 | 8 |
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via Anthem (1-800-865-1044) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

Thank You
Inflight Management

0813

FRONTIER AIRLINES (R. BRIGHAM) - 0001126

ESI00000008-12

Attendance Warning - Verbal                    *CAU 31 LITTS*  Page 1 of 1



Inflight: 303-342-7707
Fax: 303-348-1035

## Attendance Warning

**Name:** REBECCA BRIGHAM                      **Employee #:** 413206
**Department:** Inflight                       **Date:** 3/6/2015
**Date of Hire:** 05/24/2007

__X__ Verbal          ____Written          ____Suspension          ____Final Warning

As of 02/28/2015, in the past twelve (12) months of active service, you have accumulated four (4) separate occurrences involving your attendance. Per the Associate Handbook, four (4) occurrences will place you on a Verbal Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|---|---|---|---|
| 01/19/2014 | Sick | DEN | 1 |
| 10/10/2014 | MED | DEN | 1 |
| 01/21/2015 | Sick | DEN | 1 |
| 02/01/2015 | Sick | DEN | 1 |
| 02/28/2015 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

| Time Period Within Previous 12 Months | | | | |
|---|---|---|---|---|
| **Number of Occurrences** | 4 | 6 | 7 | 8 |
| **Type of Corrective Action** | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via UNUM (1-800-854-1446) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

If you have any questions, please don't hesitate to contact your Inflight Supervisor.

Thank You
Inflight Management

cc: Personnel File
AFA

3/13-15

*[signature]*

FRONTIER AIRLINES (R. BRIGHAM) - 0001127

ESI00000008-13

CM-3/12/15

# FRONTIER.

**Inflight**
**Performance Counseling Record**

Form Number: 30696
Effective Date: 04/10/08

EMPLOYEE NAME   Rebecca Bringham #413206

DEPARTMENT   Inflight Services

POSITION   Flight Attendant                                    DATE   03/12/2015

**TYPE OF PERFORMANCE COUNSELING:**
☐ Documented Verbal Warning   ☑ Written Warning   ☐ Final Termination Warning   ☐ Suspension
(Refer to Frontier Airlines Employee Handbook regarding performance and conduct for additional information.)

Was EAP offered?   ☐ YES   ☑ NO

**REASON(S) FOR PERFORMANCE COUNSELING** (Be specific; refer to previous performance counselings as appropriate.)

On March 12, 2015, Rebecca called in sick with less than 2 hours to report time.
Per Article 8, Section D, #3 of the Flight Attendant Contract, A 2-hour notice prior to report time is required when calling in sick as a Line Holder or as a Reserve who has previously been given a trip assignment and a 3-hour notice for a Reserve Flight Attendant who has not been previously assigned a trip.

**EXPECTATION(S) FOR SUSTAINED CHANGE IN BEHAVIOR AND/OR PERFORMANCE**

Rebecca, we expect you to manage your dependability in accordance with the Company's dependability policy (FAH 85.00, pg 2) and to make on-time performance and dependability a suitably high priority in your personal planning. Failure to do so will result in additional and progressive action up to and including termination in accordance with the FAH.

Note:  This occurrence will remain active for 365 days; however, the level of discipline will adjust as previous occurrences roll off due to the rolling 12-month period.

Effective 03/11/15 _____, you begin a warning/suspension of 365 __ calendar days, ending 03/11/16 _____.

You are expected to immediately take whatever action is necessary to meet the expectations for sustained change in your behavior and/or performance as outlined in this document. If, at any time during the warning period or thereafter, you fail to meet expectations or fail to make sufficient and sustained progress toward meeting stated expectations, additional action may be taken, up to and including termination of your employment.

Issued By:
SUPERVISOR SIGNATURE _____   Date 3-13-15

I acknowledge and understand the following:

☑ The information in this document was discussed with me and my signature indicates that I have received a copy of the Performance Counseling Record, but does not necessarily mean that I agree with this action or the reasons given for it.

☑ Failure to improve my performance and/or behavior as described may result in further action, including termination.

☐ I have the right to appeal this action in accordance with Frontier's Internal Appeal Procedures. If I choose to exercise that right, I must indicate that intention in writing to my Manager and Human Resources within (15) fifteen calendar days from the date I receive this notice.

☐ I am not eligible to apply for another position within the Company for 90 days from the date of this action.

Employee Signature _____   Date 3-13-15

Document distribution: Signed Original to Human Resources; copies to both the named employee, and to the supervisor issuing the Performance Counseling Record.

0815

FRONTIER AIRLINES (R. BRIGHAM) - 0001128

ESI00000008-14

Attendance Warning - Written                                    CM 3/16 115      Page 1 of 1



Inflight: 303-342-7707
Fax: 303-348-1035

## Attendance Warning

**Name:** REBECCA BRIGHAM                          **Employee #:** 413206
**Department:** Inflight                           **Date:** 3/16/2015
**Date of Hire:** 05/24/2007

____Verbal        __X__Written        ____Suspension        ____Final Warning

As of 03/12/2015, in the past twelve (12) months of active service, you have accumulated six (6) separate Occurrences involving your attendance. Per the Frontier Employee Handbook, six (6) Occurrences will place you on a Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|----------|-------------|----------|-------|
| 01/19/2014 | Sick | DEN | 1 |
| 10/10/2014 | MED | DEN | 1 |
| 01/21/2015 | Sick | DEN | 1 |
| 02/01/2015 | Sick | DEN | 1 |
| 02/28/2015 | Sick | DEN | 1 |
| 03/12/2015 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ulitpro for your reference.

**Time Period Within Previous 12 Months**

| Number of Occurrences | 4 | 6 | 7 | 8 |
|----------------------|---|---|---|---|
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via UNUM (1-800-854-1446) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

If you have any questions, please don't hesitate to contact your Inflight Supervisor.

Thank You
Inflight Management

cc: Personnel File
AFA

http://f9cats/Search.aspx                                              3/16/2015

FRONTIER AIRLINES (R. BRIGHAM) - 0001129

ESI00000008-15

*Cm 5/14*



Inflight: 303-342-7707
Fax: 303-348-1035

### Attendance Warning

**Name:** REBECCA BRIGHAM                                          **Employee #:** 413206
**Department:** Inflight                                                    **Date:** 5/12/2015
**Date of Hire:** 05/24/2007
____Verbal        __X__Written        ____Suspension        ____Final Warning

As of 05/12/2015, in the past twelve (12) months of active service, you have accumulated six (6) separate Occurrences involving your attendance. Per the Frontier Employee Handbook, six (6) Occurrences will place you on a Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|---|---|---|---|
| 10/10/2014 | MED | DEN | 1 |
| 01/21/2015 | Sick | DEN | 1 |
| 02/01/2015 | Sick | DEN | 1 |
| 02/28/2015 | Sick | DEN | 1 |
| 03/12/2015 | Sick | DEN | 1 |
| 05/12/2015 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

**Time Period Within Previous 12 Months**

| Number of Occurrences | 4 | 6 | 7 | 8 |
|---|---|---|---|---|
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via UNUM (1-800-854-1446) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

If you have any questions, please don't hesitate to contact your Inflight Supervisor.

Thank You
Inflight Management

cc: Personnel File
AFA

0817

FRONTIER AIRLINES (R. BRIGHAM) - 0001130

ESI00000008-16



**FRONTIER AIRLINES**

Inflight: 303-342-7707
Fax: 303-348-1035

### Attendance Warning

**Name:** REBECCA BRIGHAM                                    **Employee #:** 413206
**Department:** Inflight                                            **Date:** 5/26/2015
**Date of Hire:** 05/24/2007

___ Verbal          ___ Written          ___ Suspension          _X_ Final Warning

As of 05/26/2015 in the past twelve (12) months of active service, you have accumulated seven (7) separate occurrences involving your attendance. Per the Frontier Employee Handbook, seven (7) Occurrences will place you on a Final Termination Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|---|---|---|---|
| 10/10/2014 | MED | DEN | 1 |
| 01/21/2015 | Sick | DEN | 1 |
| 02/01/2015 | Sick | DEN | 1 |
| 02/28/2015 | Sick | DEN | 1 |
| 03/12/2015 | Sick | DEN | 1 |
| 05/12/2015 | Sick | DEN | 1 |
| 05/26/2015 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

#### Time Period Within Previous 12 Months

| Number of Occurrences | 4 | 6 | 7 | 8 |
|---|---|---|---|---|
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via UNUM (1-800-854-1446) or the AFA (1-800-424-2406).

Any future Dependability/Attendance Issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

Thank You
Inflight Management

0818

FRONTIER AIRLINES (R. BRIGHAM) - 0001131

ESI00000008-17

*Cw/7/10/15*



Inflight: 303-342-7707
Fax: 303-348-1035

## Attendance Warning

**Name:** REBECCA BRIGHAM
**Department:** Inflight
**Date of Hire:** 05/24/2007

**Employee #:** 413206
**Date:** 7/03/2015

___Verbal          ___Written          ___Suspension          _X_Final Warning

As of 07/03/2015 in the past twelve (12) months of active service, you have accumulated seven (7) separate occurrences involving your attendance. Per the Frontier Employee Handbook, seven (7) Occurrences will place you on a Final Termination Written Warning Level.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|----------|--------------|----------|-------|
| 10/10/2014 | MED | DEN | 1 |
| 01/21/2015 | Sick | DEN | 1 |
| 02/01/2015 | Sick | DEN | 1 |
| 02/28/2015 | Sick | DEN | 1 |
| 03/12/2015 | Sick | DEN | 1 |
| 06/11/2015 | Sick | DEN | 1 |
| 07/03/2015 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ultipro for your reference.

### Time Period Within Previous 12 Months

| Number of Occurrences | 4 | 6 | 7 | 8 |
|-----------------------|---|---|---|---|
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via UNUM (1-800-854-1446) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

Thank You
Inflight Management

cc: Personnel File
AFA

0819

FRONTIER AIRLINES (R. BRIGHAM) - 0001132

ESI00000008-18

CM/8/12/15



Inflight: 303-342-7707
Fax: 303-348-1035

## Attendance Warning

**Name:** REBECCA BRIGHAM          **Employee #:** 413206
**Department:** Inflight          **Date:** 8/07/2015
**Date of Hire:** 05/24/2007
____Verbal      ____Written      ____Suspension      _X__Final Warning

As of 08/07/2015 in the past twelve (12) months of active service, you have accumulated eight (8) separate occurrences involving your attendance. Per the Frontier Employee Handbook, eight (8) Occurrences will place you on a Final Termination Written Warning Level. With the MED counting as one point, you will be granted a reprieve bringing your point total back down to 7.

You have the right to AFA Union Representation. It is your responsibility to arrange a meeting/conference call with your Supervisor and Representative should you want to discuss your attendance record further.

| OCC Date | Display Code | Bid Base | Count |
|---|---|---|---|
| 10/10/2014 | MED | DEN | 1 |
| 01/21/2015 | Sick | DEN | 1 |
| 02/01/2015 | Sick | DEN | 1 |
| 02/28/2015 | Sick | DEN | 1 |
| 03/12/2015 | Sick | DEN | 1 |
| 06/11/2015 | Sick | DEN | 1 |
| 07/03/2015 | Sick | DEN | 1 |
| 08/07/2015 | Sick | DEN | 1 |

The Frontier Airlines Employee Handbook Section 12.05 outlines the Flight Attendant Dependability Expectations. The Employee Handbook can be located on Ulitpro for your reference.

| | Time Period Within Previous 12 Months | | | |
|---|---|---|---|---|
| Number of Occurrences | 4 | 6 | 7 | 8 |
| Type of Corrective Action | Verbal | Written | Final Warning | Termination |

This letter will serve as your Personal Counseling Record (PCR). Please keep this for your records. Upon your next return to work, please stop by the Inflight Office to sign a copy of this PCR.

Your Inflight Supervisors are here to address any concerns you may have. Should you need to contact the Leave Department for questions about a possible leave, please email them at LOA@flyfrontier.com. In addition, EAP Services are available through the Company via UNUM (1-800-854-1446) or the AFA (1-800-424-2406).

Any future Dependability/Attendance issues can lead to Progressive Discipline. This letter will stay in your file for one year of active service and will be removed at that time if no other disciplinary action is required.

Thank You
Inflight Management

cc: Personnel File
APA

FRONTIER AIRLINES (R. BRIGHAM) - 0001133

ESI00000008-19



Frontier Airlines, Inc.      P 720.374.4397      loa@flyfrontier.com
Frontier Center One          F 720.374.8013
7001 Tower Road
Denver, CO 80249

## FMLA DESIGNATION NOTICE

**Employee Name:** Rebecca Brigham          **Date:** 9/16/2014

We have received your request for leave under the Family Medical Leave Act (FMLA) and any supporting documentation that you may have provided.  We received your most recent information on 9/12/2014 and have determined that:

☒ Your FMLA leave request is approved. All leave taken for this reason will be designated as FMLA leave.

You are approved for:  ☒ Continuous leave (single block of time)      ☐ Intermittent leave

You are approved for:  ☒ Your own serious health condition            ☐ Family member: _____

*Please be sure to read the information in the "If your leave has been approved..." and "Employee Rights and Responsibilities" sections (page 1 and 2 of this document) carefully as it contains additional information that is relevant to you.*

☐ Your FMLA leave request is not approved for the following reason(s):

  ☐ Your leave has not been approved because the certification that you have provided is incomplete and/or insufficient to determine whether the FMLA applies to your leave request. You must provide the following information **no later than** _____ (unless it is not practicable despite your diligent, good faith efforts due to your own circumstances) or your leave may be denied. Information required: _____

  ☐ The FMLA does not apply to your leave request

  ☐ You have exhausted your leave entitlement

☐ We are exercising our right to have you obtain a second or third opinion medical certification at our expense and we will provide further details at a later time.

### IF YOUR LEAVE HAS BEEN APPROVED...

*Please read the following information carefully as it contains additional detail specific to your FMLA leave of absence and outlines your rights and responsibilities while on leave.*

- Provided there is no deviation from your anticipated leave schedule, the following time (number of hours, days, or weeks) will be counted against your leave entitlement: 9/7/2014-10/7/2014 FLA, 10/8/2014-11/7/2014 MED.

  *If the leave you require is unscheduled, it may not possible to provide the hours, days or weeks that will be counted against your FMLA entitlement at the time this Designation is sent.  Please be advised that you have the right to request this information once in a 30 day period (provided that leave is taken in the 30 day period).*

- If you are certified for intermittent FMLA leave, the guidelines (i.e. frequency and duration) that your healthcare provider has provided for your leave are: _____.

FRONTIER AIRLINES (R. BRIGHAM) - 0001394

EXHIBIT 5

FLYFRONTIER.COM

Frontier Airlines, Inc.       P 720.374.4397        loa@flyfrontier.com
Frontier Center One           F 720.374.8013
7001 Tower Road
Denver, CO 80249

**EMPLOYEE RIGHTS AND RESPONSIBILITIES WHILE ON FMLA LEAVE OF ABSENCE**

- If your are approved for FMLA leave of absence for *your own serious health condition*, you will be required to present a fitness for duty certificate to be restored to employment if you are taking continuous leave. If such certification is not received in a timely manner, your return to work may be delayed until certification is provided.

- The FMLA requires that you notify us as soon as practicable if the dates of your scheduled leave change, are extended, or were initially unknown.

- While out on leave, you will be paid sick and/or vacation time in accordance with company policy and/or Collective Bargaining Agreement. Please be advised that if any time is paid out, time missed will still count toward your FMLA leave entitlement. Crew FMLA time will be tracked in days and non crew time will be tracked in hours.

  If you have elected Short Term Disability benefits and are approved to receive such, you may opt not to utilize accrued vacation time. If you meet this criteria and would like to preserve your vacation time, you must contact the Leave of Absence Department at LOA@flyfrontier.com to notify them of your election.

- Please note your schedule is your primary responsibility and you are responsible to call off your schedule through established department procedure notifying them of your absence. Employees must adhere to established company policy for calling in. After completing this step, please contact us the same day via email at LOA@flyfrontier.com or by voicemail at (720) 374-4245.

**If you have any questions about your FMLA leave of absence, please contact the Leave of Absence Department at LOA@flyfrontier.com or (720) 374-4397.**

0822          FRONTIER AIRLINES (R. BRIGHAM) - 0001395

Case 1:19-cv-03417-WJM-STV   Document 38-8   Filed 11/17/20   USDC Colorado   Page 1 of 7

Appellate Case: 21-1335   Document: 010110614799   Date Filed: 12/06/2021   Page: 229
To:   Page 1 of 7                    2014-11-08 00:30:08 (GMT)              18189755096  From: Matt Riemann

## FAX COVER SHEET

| | |
|---|---|
| TO | |
| COMPANY | |
| FAX NUMBER | 17203748013 |
| FROM | Matt Riemann |
| DATE | 2014-11-08 00:29:37 GMT |
| RE | Rebecca Brigham Release |

## COVER MESSAGE

Rebecca Brigham Release Documentation.

Cordially,
Scot Spitler RAS
Registered Addiction Specialist
Clinical Supervisor of Outpatient Services
Discovery Transistions
sspitler@thediscoveryhouse.com<mailto:sspitler@thediscoveryhouse.com>
818-654-4907 Ext 310
818-514-2914 Fax

[https://lh5.googleusercontent.com/-
RrRUFV8KsJI/UuanRmLtlul/AAAAAAAAABs/WhxfraK0xV8/w413-h134-
no/DTRANSITIOSN_4C.jpg]
[cid:image003.gif@01CFDC01.694596C0]
JACHO ACCREDITATION #515005
"Nothing is so strong as gentleness, and nothing is so gentle as true strength."
– Ralph W.
Sockman<http://www.goodreads.com/author/show/3445330.Ralph_W_Sockman>
This email and any files transmitted with it are confidential and are intended solely for
the use of the individual or entity to which they are addressed. This communication may
contain material protected by HIPAA legislation (45 CFR, Parts 160 164). If you are not
the intended recipient or the person responsible for delivering this email to the intended
recipient, be advised that you have received this email in error and that any use,
dissemination, forwarding, printing or copying of this email is strictly prohibited. If you
have received this email in error, please notify the sender by replying to this email and
then delete the email from your computer. All calls may be recorded for quality
assurance.

FRONTIER AIRLINES (R. BRIGHAM) - 0001624

EXHIBIT 6

# DISCOVERY TRANSITIONS

## OUTPATIENT

FRONTIER AIRLINES (R. BRIGHAM) - 0001625



FRONTIER AIRLINES (R. BRIGHAM) - 0001626



DISCOVERY
TRANSITIONS
OUTPATIENT

# Fax

| TO:FRONTIER LEAVE DEPTS | | FROM: | Scot Spitler@ Discovery Transitions | |
|---|---|---|---|---|
| FAX:818 975-5096. | | PAGES:1 | | |
| PHONE: | 818 654-4907 xt 310 | DATE: | November 7, 2014 | |
| RE: REBECCA BRIGHAM | | CC: | | |

| ☐ Urgent | ☐ For review | ☐ Please comment | ☐ Please reply | ☐ Please recycle |
|---|---|---|---|---|

Comments:

Please find attacjed hereto, this clients return to full duty release.

FRONTIER AIRLINES (R. BRIGHAM) - 0001627

FRONTIER AIRLINES (R. BRIGHAM) - 0001628

FLYFRONTIER.COM

Frontier Leave Department
Fax: (720) 374-8013
loa@flyfrontier.com

## FRONTIER AIRLINES

### Fitness-for-Duty Certification

Employee name. Rebecca Brigham  Employee # 413206 Department: InFlight

### INSTRUCTIONS

| | |
|---|---|
| Employee: | Have your health care provider review your attached job description and complete as appropriate. Return the completed form to the Frontier Leave of Absence Department at (720) 374-8013 or loa@flyfrontier.com. Delays in returning this document to the Leave Department may result in a delay in your release to return to work. |
| Health Care Provider: | Please review the attached job description detailing the essential functions and requirements of the employee's position, complete sections 1-3 below, and return the completed form to the employee. |

1. Date employee's medical condition began: 9/7/14

2. Please check one of the following:

   X Employee is able to work a *full, regular schedule* with no restrictions, beginning 11/17/14 (date).

   ___ Employee is able to return to work on a *reduced schedule* for _____ hours per _____ (day or week)

   from _____ (date) through _____ (date).

   ___ Employee is able to return to work *with restrictions* from _____ (date) through _____ (date).

   ___ Employee is *unable to return to work* until _____ (date).

3. If the employee has restrictions, please detail below:

   Standing (e.g., number of hours, etc.):
   No Restrictions

   Walking (e.g., number of hours, distance, etc.):
   No Restrictions

   Sitting (e.g., number of hours, etc.):
   No Restrictions

   Lifting/Pushing/Pulling (e.g., number of pounds, position, etc.):
   No Restrictions

Page 1 of 2

FRONTIER AIRLINES (R. BRIGHAM) - 0001629

FLYFRONTIER.COM

Frontier Leave Department
Fax (720) 374-8013
loa@flyfrontier.com

Carrying (e.g., number of pounds, distance, etc.):

NO Restrictions

Use of hands (repetitive motions, pushing, pulling):

No Restrictions

Detail any additional restrictions below: NONE

Signature of Health Care Provider: Walter          Date: _____

Printed Name of Health Care Provider: Dr. Walter Thomas

Address: _____

Phone: (805) 527-1804

Page 2 of 2

FRONTIER AIRLINES (R. BRIGHAM) - 0001630



Frontier Airlines, I
Frontier Center One
7001 Tower Road
Denver, CO 80249

P 720.374.4245
F 720.374.8013

loa@flyfrontier.com

## CERTIFICATION OF HEALTH CARE PROVIDER FOR
## EMPLOYEE'S SERIOUS HEALTH CONDITION
## (FAMILY AND MEDICAL LEAVE ACT)
## INTERMITTENT LEAVE OF ABSENCE

Frontier Contact: LOA Coordinator
LOA@flyfrontier.com

### EMPLOYEE INFORMATION

### TO BE COMPLETED BY EMPLOYEE

**EMPLOYEE:** Please complete this section before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. Per 29 U.S.C. §§ 2613, 2614(c)(3), if requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. Per 20 C.F.R. § 825.313, failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request.

Employee Name: Rebecca Brigham

Employee ID #: 413206

Employee Phone: 303-913-6376

Job Title: Flight Attendant

Manager: Stephany C

Base/Location: Den

### MEDICAL CERTIFICATION

### MEDICAL PROVIDER IS TO COMPLETE PARTS A AND B AND ANY ADDITIONAL INFORMATION

**MEDICAL PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

THE GENETIC INFORMATION NON-DISCRIMINATION ACT OF 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law.  To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information.  "Genetic information", as defined by GINA, includes an individual's family medical history, the results of an individual's or their family member's genetic tests, the fact that an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual.

Page 1 of 4

BrighamR_PlaintiffRecords0670

EXHIBIT 7
0830

**FRONTIER**

## PART A: MEDICAL FACTS

Approximate date condition commenced: _June 2014_

Probable duration of condition: _Lifetime Recovery_

Date(s) you treated the patient for condition: _1-2 times per week except 9/7/14-11/7/14_

1. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?  ☐ No   ☐ Yes

   If yes, dates of admission: _Sept 7 2014 - Nov 7 2014_

2. Will the patient need to have treatment visits at least twice per year due to the condition?
   ☐ No   ☑ Yes

3. Was medication, other than over-the-counter medication, prescribed?
   ☐ No   ☑ Yes

4. Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?   ☐ No   ☑ Yes

   If yes, state the nature of such treatments and expected duration of treatment: _Psychiatrist_
   _w/ DOT_

5. Is the medical condition pregnancy?   ☑ No   ☐ Yes

   If yes, expected delivery date: _____

6. Use the information provided by the employer to answer this question. If the employer does not provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to their condition?
   ☑ No   ☐ Yes

   If so, identify the job functions the employee is unable to perform: _____

7. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   _Rebecca's diagnosis of 291.81 - Alcohol W/D (Primary) can last up to a_
   _year and results in anxiety psychomotor agitation, insomnia episodes, and_
   _at times inability to carry out daily activity. Symptoms are decreasing at a steady_
   _rate. Cravings for alcohol persist. Relapse prevention is priority as this_
   _condition had been chronic._ (CONTINUED ON NEXT PAGE)

Page 2 of 4

**FRONTIER**

## PART B: AMOUNT OF LEAVE NEEDED

1. Please indicate if any of the following apply to the patient:

   ☑ They will experience intermittent incapacitation that will require FMLA Leave

   ☑ They will require treatment appointments for their condition

2. Please detail below based on your previous answer:

   - If you indicated that the patient will experience ***intermittent incapacitation*** requiring FMLA Leave, based upon the patient's medical history and your knowledge of the medical condition, please ***estimate the maximum frequency and duration*** of intermittent leave time they might require. Note that terms such as "indefinite, unknown, n/a and undetermined cannot be accepted and will result in a denial of the leave request:

     _4_
     (Number)

     ☐ hours     per     ☐ day        ☐ quarter
     ☒ days              ☐ week       ☐ year
                         ☒ month

     Please indicate the beginning and ending dates for the period of intermittent incapacitation:

     **Begin (mm/dd/yyyy):** _03/01/2015_     **End (mm/dd/yyyy):** _03/01/2016_

   - If you indicated that the employee will need to attend follow-up treatment appointments, is it medically necessary for the employee to be absent from work to attend these appointments?
     ☐ No          ☑ Yes

     If yes, please estimate treatment schedule:
     Frequency: _1 x per week_

     Length of Appointment (including any recovery period): _2 hours +_

     If yes, please also provide a general description of this regimen (e.g. Physical Therapy,

     medication administration, etc.):

     _Rebecca is in the first phase of recovery from_
     _alcoholism She is provided weekly therapeutic_
     _support and attends up to 2 group sessions_
     _per week to avoid relapse at this time. Within_

### (CONTINUED ON NEXT PAGE)

Page 3 of 4

**FRONTIER**

**ADDITIONAL INFORMATION (Please identify the question number with your additional answer):**

a year timeframe she is hopeful to be in a place that will allow her to scale back on the levels of support she currently needs. She continues to have setbacks and struggles as she is learning new skills and a shift in mindset to see recovery through her lifetime

_Marla M. Madrid, LCSW_                    10 MAR 15
Signature of Health Care Provider              Date

Provider's Name (printed):   Marla M. Madrid

Business Address:   PO Box 554

Strasburg, CO 80136

Telephone: ( 720 ) 937 2332 (c)   Fax: ( 303 ) 622 9201
303  622  9250 (o)
Type of practice / Medical specialty:   Behavioral Health - Private Practice

BrighamR_PlaintiffRecords0673
0835

1                CIVIL ACTION NO. 19-cv-03417-STV

2

3    REBECCA BRIGHAM,

4             Plaintiff,

5    vs.

6    FRONTIER AIRLINES, INC.

7             Defendant.

8    _____/

9

10

11           TRANSCRIPTION OF RECORDING:

12       BrighamR_Plaintiff Records0633 [6-4-15]

13

14

15

16

17

18

19

20

21

22

23

24

25



H+G

Hunter+Geist, Inc.

303.832.5966    1900 Grant Street, Suite 1025    ■ www.huntergeist.com
800.525.8490    Denver, CO 80203    ■ scheduling@huntergeist.com

Your Partner in Making the Record

Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004274

EXHIBIT 8
0834

BrighamR_Plaintiff Records 0633 (06.04.15)  06/04/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES

1                          CIVIL ACTION NO. 19-cv-03417-STV

2

3      REBECCA BRIGHAM,

4                Plaintiff,

5      vs.

6      FRONTIER AIRLINES, INC.

7                Defendant.
       _____/

8

9

10

11                       TRANSCRIPTION OF RECORDING:

12           BrighamR_Plaintiff Records0633 [6-4-15]

13

14

15

16

17

18

19

20

21

22

23

24

25

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004275

1       REBECCA BRIGHAM:      I am heading into the

2   Frontier Airline's general office.                    It's

3   2:17 on June 4th.

4       UNIDENTIFIED SPEAKER:      Thank you for

5   calling Frontier Airline's corporate office.

6   How may I direct your call?

7       UNIDENTIFIED SPEAKER:      Hi.     I just called

8   and I don't actually need (indiscernible)

9   because the young lady (indiscernible) told me

10  that I can no longer log onto (indiscernible)

11  apparently --

12      UNIDENTIFIED SPEAKER:      Uh-huh.

13      UNIDENTIFIED SPEAKER:      (Indiscernible)

14      UNIDENTIFIED SPEAKER:      Hold just one --

15      UNIDENTIFIED SPEAKER:      How would I get a

16  copy (indiscernible).

17      UNIDENTIFIED SPEAKER:       okay.     Hold for

18  just one moment.

19      So I set up a (indiscernible) John since

20  he was the help desk.          Who should she go to

21  (indiscernible)?

22      UNIDENTIFIED SPEAKER:      Hi.

23      REBECCA BRIGHAM:      Hi.     I'm here to see

24  Cassandra.     I was supposed to be here at 2:30.

25  I'm a little early.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0836

FRONTIER AIRLINES (R. BRIGHAM) - 0004276

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 3
REBECCA BRIGHAM v. FRONTIER AIRLINES

1       UNIDENTIFIED SPEAKER:       Okay.

2    (Indiscernible) have a seat.

3       REBECCA BRIGHAM:       Okay.

4       UNIDENTIFIED SPEAKER:       Do you have an

5    I.D.?

6       REBECCA BRIGHAM:       Yeah, in the car.       Let

7    me grab it.

8       Going to grab my I.D.

9       UNIDENTIFIED SPEAKER:       You said Cassandra?

10      REBECCA BRIGHAM:       Cassandra.

11      UNIDENTIFIED SPEAKER:       (Indiscernible) for

12   you, Cassie.

13      (Background conversation.)

14      UNIDENTIFIED SPEAKER:       Thank you so much.

15   Let's stay in touch sure.

16      UNIDENTIFIED SPEAKER:       Keep in touch.

17   Take care.

18      REBECCA BRIGHAM:       You're fine.

19      CASSANDRA:       Rebecca?

20      REBECCA BRIGHAM:       Yeah, hi.

21      CASSANDRA:       Hello.

22      How are you?

23      UNIDENTIFIED SPEAKER:       Good.       How are you?

24      CASSANDRA:       Good.       How have you been?

25      UNIDENTIFIED SPEAKER:       Great.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0837          FRONTIER AIRLINES (R. BRIGHAM) - 0004277

1    (Indiscernible conversation.)            (Walking.)

2    CASSANDRA:      (Indiscernible) right in.

3    JERRY:      I'm Jerry.

4    REBECCA BRIGHAM:      Rebecca.

5    JERRY:      How you doing?

6    REBECCA BRIGHAM:      Jerry --

7    (Indiscernible.)

8    JERRY:      Yes.    We might have spoken way

9    back when.

10    REBECCA BRIGHAM:      Way back in the

11    (indiscernible).

12    JERRY:      Yes.    How are you?

13    REBECCA BRIGHAM:      Good.

14    JERRY:      Your hair's gotten much shorter.

15    REBECCA BRIGHAM:      Yes, I chopped it.

16    REBECCA BRIGHAM:      So Jerry's coming in on

17    behalf of kind of the paperwork --

18    REBECCA BRIGHAM:      Okay.

19    CASSANDRA:      -- that's received.        Based on

20    your schedule --

21    REBECCA BRIGHAM:      Uh-huh.

22    CASSANDRA:      -- I was able to accommodate

23    and help you yesterday for your trips today and

24    the --

25    REBECCA BRIGHAM:      Right.

H+G  Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0838                        FRONTIER AIRLINES (R. BRIGHAM) - 0004278

1    CASSANDRA:        -- next few days.

2    Unfortunatley, like, I'm only allowed a little

3    leeway --

4        REBECCA BRIGHAM:        Right.

5        CASSANDRA:        -- to do things like that.                So

6    yesterday when you reached out to me, based on

7    the circumstances, I was like, yes, you

8    definitely --

9        REBECCA BRIGHAM:        Right.

10       CASSANDRA:        -- need to be removed.

11       REBECCA BRIGHAM:        Right.

12       CASSANDRA:        But now kind of with the

13   paperwork that we've received.

14       REBECCA BRIGHAM:        Uh-huh.

15       CASSANDRA:        Moving forward like, there's

16   not a whole lot that I can do to help out --

17       REBECCA BRIGHAM:        Okay.

18       CASSANDRA:        -- in regards to the layovers.

19       REBECCA BRIGHAM:        Right.

20       CASSANDRA:        So that's kind of where Jerry

21   is gonna --

22       REBECCA BRIGHAM:        Okay.

23       CASSANDRA:        -- come into play with that

24   scenario.

25       REBECCA BRIGHAM:        Okay.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0839

FRONTIER AIRLINES (R. BRIGHAM) - 0004279

1    CASSANDRA:    So I just in kind of wanted to

2    touch base with you on that.

3    REBECCA BRIGHAM:    Yeah.    Sure.

4    CASSANDRA:    To make sure it's okay.

5    REBECCA BRIGHAM:    Oh, yeah.

6    CASSANDRA:    Okay.

7    REBECCA BRIGHAM:    You're good.

8    CASSANDRA:    Okay.    So I know that that's

9    what you're talking about with the big

10   struggle --

11   REBECCA BRIGHAM:    Yes.

12   CASSANDRA:    -- with layovers.

13   REBECCA BRIGHAM:    Yes.

14   CASSANDRA:    And looks like you are doing a

15   lot more with your program.

16   REBECCA BRIGHAM:    Yes.

17   CASSANDRA:    I'm going to call it.

18   REBECCA BRIGHAM:    Yeah.

19   CASSANDRA:    Okay.    So I'll let Jerry kind

20   of.

21   REBECCA BRIGHAM:    Okay.

22   CASSANDRA:    Take over from here.

23   JERRY:    So Cassie and I had a good

24   opportunity to kind of review what the doctor

25   indicated and what the requirements are.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0840

FRONTIER AIRLINES (R. BRIGHAM) - 0004280

1    Things of that nature.

2         REBECCA BRIGHAM:      Okay.

3         JERRY:      So what we ended up doing, we

4    wanted to make sure that first let's see

5    Rachel's okay.        So that was one of the reasons

6    that we wanted to pull you off of that --

7         REBECCA BRIGHAM:      Rachel?

8         JERRY:      I'm sorry, Rebecca.

9         REBECCA BRIGHAM:      I'm like who's Rachel?

10        CASSANDRA:      She's like wait.

11   (Talking simultaneously.)

12        REBECCA BRIGHAM:      Doing in another person.

13        JERRY:      Right exactly.          My apologies

14        REBECCA BRIGHAM:      No, you're good.

15        JERRY:      So we wanted to make sure that you

16   were okay.

17        REBECCA BRIGHAM:      Okay.

18        JERRY:      And so based on the conversation

19   that Cassie had with you, we felt that it was

20   definitely urgent for us to get you off that

21   3-day trip.

22        REBECCA BRIGHAM:      Yes.

23        JERRY:      So with that, we looked at your

24   schedule.      We see that you've been bidding

25   primarily turns --

H+G   Hunter + Geist, Inc.    800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0841          FRONTIER AIRLINES (R. BRIGHAM) - 0004281

1    REBECCA BRIGHAM:      Right.

2    JERRY:      -- what we call based on

3    seniority.

4    REBECCA BRIGHAM:      Uh-huh.

5    JERRY:      But one of the concerns that we

6    have is, you have I think an overnight at the

7    end of this month.

8    REBECCA BRIGHAM:      There's two.

9    JERRY:      Two.

10   REBECCA BRIGHAM:      There's two.      I think

11   they're Indie.        They're just like the redeyes,

12   yeah.

13   JERRY:      (Indiscernible) concerns for you.

14   REBECCA BRIGHAM:      Yes.      I won't do

15   layovers.      So my only other option is pretty

16   much if somebody doesn't take it, I mean, I

17   don't have a lot of money, but I can offer like

18   20 bucks for somebody to pick it up or

19   something, and if that doesn't happen, then I

20   would use my intermittent FMLA.

21   JERRY:      So they did an audit of the

22   intermittent FMLA and you've exhausted what

23   you've been actually allowed.

24   REBECCA BRIGHAM:      Okay.

25   JERRY:      So you can only qualify for a

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0842

FRONTIER AIRLINES (R. BRIGHAM) - 0004282

1    maximum of 12 weeks.

2         REBECCA BRIGHAM:      Okay.

3         JERRY:      Within a rolling calendar year.

4         REBECCA BRIGHAM:      Right.

5         JERRY:      (Indiscernible).

6         REBECCA BRIGHAM:      Because it switched to

7    rolling calendar, right?

8         JERRY:      Yeah, so you've exhausted that

9    amount.

10        REBECCA BRIGHAM:      Okay.

11        JERRY:      And that's so I had Shelly, she's

12   a supervisor of LOA do an audit.

13        REBECCA BRIGHAM:      Okay.

14        JERRY:      She said unfortunately there's no

15   more for you to use of that piece.

16        REBECCA BRIGHAM:      Okay.

17        JERRY:      Your only other option would be to

18   apply for personal leave for those incidences.

19        REBECCA BRIGHAM:      Okay.

20        JERRY:      But that aside, the biggest

21   concern, we wanted to make sure is what can we

22   do --

23        REBECCA BRIGHAM:      Uh-huh.

24        JERRY:      -- to better support you in terms

25   of our hands are pretty tied with --

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0843                       FRONTIER AIRLINES (R. BRIGHAM) - 0004283

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 10
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:        Right.

2    JERRY:        -- trying to do schedule

3    adjustments.

4    REBECCA BRIGHAM:        Right.

5    JERRY:        And as Cassie said, that it was a

6    one-time ability for us to do that.

7    REBECCA BRIGHAM:        Uh-huh.        And I

8    appreciate it.

9    JERRY:        And I'm not sure we would be able

10   to have that flexibility in the future.

11   REBECCA BRIGHAM:        Right.

12   JERRY:        So we wanted to see what other

13   options might be available to you.

14   REBECCA BRIGHAM:        Okay.

15   JERRY:        And I wanted to see how you

16   thought about maybe other opportunities, or is

17   this the flight attnedant position --

18   REBECCA BRIGHAM:        Like finding a new job

19   you mean?

20   JERRY:        Or just is the flight attendant

21   position the one for you given what you're

22   going through right now?

23   REBECCA BRIGHAM:        I love the fact that it

24   has so much flexibility and the fact that I can

25   work five days --

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004284

BrighamR_Plaintiff Records 0633 (06.04.15)  06/04/2015                    Page 11
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      JERRY:      Right.

2      REBECCA BRIGHAM:      -- or I can work one --

3      JERRY:      Exactly.

4      REBECCA BRIGHAM:      -- in a week.        That for

5    me is awesome.

6      JERRY:      Okay.

7      REBECCA BRIGHAM:      The layovers, of course

8    I'm not senior enough to hold that.

9      JERRY:      Right.

10     REBECCA BRIGHAM:      So that's the one --

11   like, I won't do layovers.            So it's -- then it

12   does come down to evaluating, okay -- they say

13   not to make any major changes in the first year

14   of recovery if you can help it.           Now, if

15   Frontier were to go under, not that I think it

16   would, and then those are things that are

17   beyond your control.

18     JERRY:      Right.

19     REBECCA BRIGHAM:      But if there are things

20   that you can control and kind of keep it an

21   even keel --

22     JERRY:      Okay.

23     REBECCA BRIGHAM:      -- so you don't throw

24   yourself out of whack --

25     JERRY:      Uh-huh.



H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004285

1      REBECCA BRIGHAM:        -- so I have not

2    honestly -- at one point I had thought about

3    transferring internally into the company.

4      JERRY:      Okay.

5      REBECCA BRIGHAM:      Into like an inflight

6    manager's position or something like that.

7    However, there's no in flight positions

8    available.

9      JERRY:      Well, let me ask you --

10     REBECCA BRIGHAM:      Uh-huh.

11     JERRY:      -- is relocation an opportunity?

12   Is that like something --

13     REBECCA BRIGHAM:      Wait.

14     JERRY:      So they just announced they're

15   going to open up a base in Orlando.

16     REBECCA BRIGHAM:      Oh, yeah.

17     JERRY:      So.

18     REBECCA BRIGHAM:      No.

19     (Talking simultaneously.)

20     REBECCA BRIGHAM:      I'm like what do you

21   mean.

22     JERRY:      -- open up.

23     REBECCA BRIGHAM:      Is there an office in

24   like Lakeland?      No.

25     CASSANDRA:      So there would be an

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0846

FRONTIER AIRLINES (R. BRIGHAM) - 0004286

1    opportunity in inflight.            Unless somebody from

2    Denver decides to say, hey, I want the

3    Orlando --

4        REBECCA BRIGHAM:       Right.

5        JERRY:       -- then there's an opportunity

6    that might possibly open up here.

7        REBECCA BRIGHAM:       Right.     Right.     Yes.

8    And right now with my family and --

9        JERRY:       Perfect.

10       REBECCA BRIGHAM:       -- my husband just

11   started his own business.

12       JERRY:       Okay.

13       REBECCA BRIGHAM:       And my main thing also

14   is health insurance.

15       JERRY:       Right.

16       REBECCA BRIGHAM:       Mean I have to carry

17   health insurance for my husband and the kids,

18   and of course myself, but I'm more concerned

19   about them.

20       JERRY:       Okay.

21       REBECCA BRIGHAM:       So, yeah, I just -- I

22   don't know where to go from here.

23       JERRY:       Okay.

24       REBECCA BRIGHAM:       Before it wasn't an

25   issue.     I was always able to swap my trips out

H+G   Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0847                FRONTIER AIRLINES (R. BRIGHAM) - 0004287

1    for turns.

2        JERRY:        Right.

3        REBECCA BRIGHAM:        But last month and this

4    month were the months where I could not get rid

5    of them.

6        JERRY:        Especially now that we're going

7    into out busy season.

8        REBECCA BRIGHAM:        Exactly.

9        JERRY:        The way the flying has been

10   completely revamped.

11       REBECCA BRIGHAM:        Uh-huh.

12       JERRY:        It's kind of making it difficult.

13       REBECCA BRIGHAM:        Yes.

14       JERRY:        Let's do this, since we've got a

15   bit of time before the end of the month --

16       REBECCA BRIGHAM:        Uh-huh.

17       JERRY:        -- kind of see how things are

18   going.        See if you can drop those trips.

19   Continue --

20       REBECCA BRIGHAM:        Okay.

21       JERRY:        -- doing what you're doing with

22   your bidding.

23       REBECCA BRIGHAM:        Okay.

24       JERRY:        Because I did see -- we were

25   looking at your schedule and we see that you're

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0848

FRONTIER AIRLINES (R. BRIGHAM) - 0004288

1   getting a good chunk of turns for the most

2   part.

3       REBECCA BRIGHAM:      Uh-huh.

4       JERRY:      See if you can drop and swap, or

5   maybe put incentives out there for folks who --

6       REBECCA BRIGHAM:      Right.

7       JERRY:      -- take those friendships you so

8   you can manage that better.

9       REBECCA BRIGHAM:      Right.

10      JERRY:      And hopefully that will work for

11  you down the road.

12      REBECCA BRIGHAM:      Okay.

13      JERRY:      So we just want to kind of have

14  that face-to-face conversation to see.

15      REBECCA BRIGHAM:      Yeah, no, that's

16  awesome.

17      JERRY:      -- if there's anything else --

18      REBECCA BRIGHAM:      So thank you.

19      JERRY:      -- that we can do.

20      REBECCA BRIGHAM:      No, that's pretty much

21  my only area of concern, and then now that I

22  have, exhausted my intermittent FMLA, what am I

23  going to do if something arises where I need to

24  get to a meeting rather than get on the

25  airplane?



BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                  Page 16
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      JERRY:        Okay.

2      REBECCA BRIGHAM:        What are my options

3   going from there?

4      JERRY:        Cassie.

5      REBECCA BRIGHAM:        So if it is something,

6   you know, where you have to be compliant on

7   their side.

8      REBECCA BRIGHAM:        Uh-huh.

9      CASSANDRA:        In regards to meetings and

10   things like that.

11      REBECCA BRIGHAM:        Uh-huh.

12      CASSANDRA:        I mean, it's something that

13   you have to bring to my attention as quickly as

14   possible.        It can't be like five minutes

15   before, hey, I forgot or, hey, you know, I

16   scheduled this meeting.        Kind of keeping me in

17   the loop as well.

18      REBECCA BRIGHAM:        Right.

19      CASSANDRA:        Because like we stated in the

20   very beginning when we bring you back to work,

21   like it says that you have to be compliant on

22   their side as well --

23      REBECCA BRIGHAM:  Right.

24      CASSANDRA:        -- as our side.        So in those

25   scenarios, like, yes, we want to make sure that

H+G   Hunter + Geist, Inc.   800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0850

FRONTIER AIRLINES (R. BRIGHAM) - 0004290

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015          Page 17
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    you're getting the treatment that you need and

2    that we're here to support you.

3       REBECCA BRIGHAM:     Okay.

4       CASSANDRA:     You know, to get the treatment

5    that you need.

6       REBECCA BRIGHAM:     Right.

7       CASSANDRA:     But it's just keeping me in

8    the loop to make sure that I'm aware of what's

9    going on as well.

10      REBECCA BRIGHAM:     Okay.    Because sometimes

11   like something will -- some event or something

12   will happen that will sort of trigger me.

13      JERRY:     Okay.

14      REBECCA BRIGHAM:     No matter what it is.

15   Like last month like I told you it was the

16   six-year anniversary of my daughter's death,

17   and that was only -- such a hard month and I

18   went to so many meetings, and it was my first

19   time going through it sober.          So when it comes

20   to stuff like that, when I talk to my sponsor

21   and I talk to her about what's going on and

22   what I'm struggling with at the moment, and her

23   first response is always, "Get to a meeting.

24   Get to one now."

25      CASSANDRA:   In the event that that happens


H+G  Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0851          FRONTIER AIRLINES (R. BRIGHAM) - 0004291

1    and that's what she's recommending.

2        REBECCA BRIGHAM:        Uh-huh.

3        CASSANDRA:       I don't know who she is and

4    you don't have to give me that information.

5        REBECCA BRIGHAM:        Right.

6        CASSANDRA:       As long as she's documenting

7    as well.

8        REBECCA BRIGHAM:        Okay.

9        CASSANDRA:       She has her documentation, I

10   have my documentation, and it comes together.

11       REBECCA BRIGHAM:        Okay.

12       CASSANDRA:       You should be fine.

13       REBECCA BRIGHAM:        Okay.    Perfect.

14       CASSANDRA:       Okay?

15       REBECCA BRIGHAM:        Okay.

16       JERRY:       Definitely keep in communication

17   with Cassie.

18       REBECCA BRIGHAM:        Okay.    Perfect.

19       JERRY:       That way she's up-to-date on

20   what's going.

21       REBECCA BRIGHAM:        Okay.

22       JERRY:       But she'll definitely be the one

23   to contact.

24       REBECCA BRIGHAM:        Perfect.

25       JERRY:       If there's anything outside of the

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0852                       FRONTIER AIRLINES (R. BRIGHAM) - 0004292

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 19
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    program or anything like that, you can always

2    give me a call.

3        REBECCA BRIGHAM:    Okay.

4        JERRY:    And I can try and help you through

5    that process as well.

6        REBECCA BRIGHAM:    Okay.    Perfect.

7        So, yeah, I think that I'll just keep our

8    fingers crossed for the end of the month and I

9    guess cross that bridge when it comes if --

10   yeah, I don't know what to do.

11       JERRY:    Okay.

12       REBECCA BRIGHAM:    I guess we'll figure it

13   out.

14       JERRY:    All right.    That's all we can do.

15       REBECCA BRIGHAM:    Right, I know, and I

16   don't want to -- you can throw yourself for a

17   loop if you think too far ahead like, uhhh

18   (phonetic).

19       JERRY:    Right.    Right.

20       REBECCA BRIGHAM:    So, yeah, I guess we'll

21   just cross that bridge when it comes, but I

22   know that I will not do another layover at this

23   point in my recovery.

24       JERRY:    Okay.

25       REBECCA BRIGHAM:    I just ...

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0853

FRONTIER AIRLINES (R. BRIGHAM) - 0004293

1        JERRY:        It sounds like you're doing

2     everything that you need to take care of

3     yourself.

4        REBECCA BRIGHAM:        Yes.

5        JERRY:        And go to meetings and things like

6     that, which is good.

7        REBECCA BRIGHAM:        Yes.     Yes.

8        JERRY:        So keep on that --

9        REBECCA BRIGHAM:        And then my other

10    question I was just thinking of today, so for

11    me to become compliant with part of Frontier's

12    requirement was that I meet with a therapist

13    once a week.

14       JERRY:        Okay.

15       REBECCA BRIGHAM:        Is there any way to

16    submit -- because my copays are $55 a week.

17       JERRY:        Okay.

18       REBECCA BRIGHAM:        Is there any way to

19    submit to get any type of help with that when

20    funds are short?         I was just curious because it

21    is a requirement, if that's something that

22    Frontier would help out with, or if I'm pretty

23    much --

24       JERRY:        Yeah, unfortunately, we don't --

25    we don't reimburse for those costs.



H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0854

FRONTIER AIRLINES (R. BRIGHAM) - 0004294

1      REBECCA BRIGHAM:      Right.      Okay.

2      JERRY:      But there's a program which -- I

3   just recently came back to Frontier.              Is the

4   Hopely still in place?

5      CASSANDRA:      I think it is because --

6      REBECCA BRIGHAM:      I did, and I applied for

7   that.

8      JERRY:      Oh, you did?      Okay.

9      REBECCA BRIGHAM:      And I got nowhere with

10  that.      I had gotten some assistance with

11  some medical -- not past due, but when I was on

12  leave --

13     JERRY:      Yeah.

14     REBECCA BRIGHAM:      -- when I went on for my

15  son when he was born, they had helped me out.

16  So it was within the two years.              They wanted me

17  to still submit for help, but they said that

18  based on when I submitted, they weren't able to

19  help at that time.              There were other people

20  that were --

21     JERRY:      Okay.

22     REBECCA BRIGHAM:      -- a little more dire

23  straits.      Which is fine.

24     CASSANDRA:      Have you reached out to UNIF

25  (phonetic) at all?

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0855                    FRONTIER AIRLINES (R. BRIGHAM) - 0004295

BrighamR_Plaintiff Records 0633 (06.04.15)  06/04/2015                Page 22
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:       Oh, the um ...

2    CASSANDRA:       I know that they're like our

3    substance abuse, our EEAP (phonetic).

4    REBECCA BRIGHAM:       Uh-huh.

5    CASSANDRA:       But I'm wondering if they have

6    anything.

7    JERRY:     Any programs.

8    CASSANDRA:       Or could like refer you to

9    like, hey, you know, we don't specifically,

10   but, hey, you might try reaching out to ...

11   REBECCA BRIGHAM:       To these people.        Okay.

12   CASSANDRA:       To these people and they could

13   help.

14   JERRY:     That's true.

15   REBECCA BRIGHAM:       Okay.    That's awesome.

16   CASSANDRA:       They're kind of the only one I

17   can think of at the moment.

18   REBECCA BRIGHAM:       Right.    Okay.    Awesome.

19   CASSANDRA:       If I think think of some more

20   ideas --

21   REBECCA BRIGHAM:       Then let me know.

22   CASSANDRA:       I'll let you know.

23   REBECCA BRIGHAM:       Yeah, for sure because I

24   can reach out to them and just see what options

25   are out there for them to help cover some of

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0856                FRONTIER AIRLINES (R. BRIGHAM) - 0004296

1   the finances with counseling.

2       JERRY:      Okay.    All right.        And that was

3   it.

4       REBECCA BRIGHAM:       Okay.     Awesome.

5       JERRY:     Thank you for coming in.

6       REBECCA BRIGHAM:       Yeah.    No.    Thank you,

7   guys.    It's so much easer to have a face to

8   face rather than over the phone.

9       Um, I'm trying to think if there's

10  anything else I needed to ask, and, of course,

11  I don't remember.        So, yeah, okay.        Perfect.

12      CASSANDRA:      I don't know -- like your

13  husband, because you say like he's

14  self-employed --

15      REBECCA BRIGHAM:       Yes.

16      CASSANDRA:      -- and just started his

17  business --

18      REBECCA BRIGHAM:       Uh-huh.

19      CASSANDRA:      -- and then with you, I mean I

20  I don't know like hours worked and things like

21  this, I'm just throwing this out there --

22      REBECCA BRIGHAM:       Uh-huh.

23      CASSANDRA:      -- but I know that if you

24  contact like Medicaid --

25      REBECCA BRIGHAM:       Uh-huh.



H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0857          FRONTIER AIRLINES (R. BRIGHAM) - 0004297

1     CASSANDRA:        -- and you tell them your

2     scenario.

3     REBECCA BRIGHAM:        Uh-huh.

4     CASSANDRA:        There's an -- I think even on

5     the website.        Like if you go to Medicaid, it

6     will run you through and ask you like all these

7     questions.

8     REBECCA BRIGHAM:        Uh-huh.

9     CASSANDRA:        It asks you like how many

10    people are in your household, the income for

11    the month.

12    REBECCA BRIGHAM:        Okay.

13    CASSANDRA:        Like, if you just had a baby.

14    If you've inquired medical bills.

15    REBECCA BRIGHAM:        Uh-huh.

16    CASSANDRA:        Like, it brings you like this

17    whole thing, and then at the very end.

18    REBECCA BRIGHAM:        Uh-huh.

19    CASSANDRA:        It will give you printout and,

20    that printout says what you can qualify for

21    REBECCA BRIGHAM:        Oh, cool.        Okay.

22    CASSANDRA:        So that's another thing that I

23    can think of --

24    REBECCA BRIGHAM:        Cool.

25    CASSANDRA:        -- that might help you as

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0858

FRONTIER AIRLINES (R. BRIGHAM) - 0004298

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 25
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    well.

2         REBECCA BRIGHAM:     Okay.    Perfect.

3         CASSANDRA:      But, yeah, if I think of any

4    more, I'll let you know.

5         REBECCA BRIGHAM:      Awesome.    Well, thank

6    you guys so much.

7         JERRY:     Thank you.

8         REBECCA BRIGHAM:      And then I'll just be in

9    contact with you at the end of the month if I'm

10   not able to get rid of those, and we'll just

11   kind of see what to do.

12        CASSANDRA:      Okay.

13        REBECCA BRIGHAM:      I guess.    And then my

14   other question is, I think that -- because with

15   her doing an audit, is it going to go back and

16   take out some of those intermittent FMLAs?

17        REBECCA BRIGHAM:      No.

18        REBECCA BRIGHAM:      Okay.

19        JERRY:     No.    So we -- I asked her to leave

20   everything as is --

21        REBECCA BRIGHAM:      As is, okay.

22        JERRY:      -- (indiscernible) moving forth.

23   We (indiscernible).

24        REBECCA BRIGHAM:      Okay.    Right.    Exactly.

25   So moving forth.

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0859

FRONTIER AIRLINES (R. BRIGHAM) - 0004299

1    And then is there any way that we -- I can

2    get a printout or whatever from her to see when

3    intermittent FMLAs drop off from last year.

4        JERRY:      Yes.

5        REBECCA BRIGHAM:      That way I can kind

6    of --

7        JERRY:      Definitely.

8        REBECCA BRIGHAM:      -- have that.        Because

9    if I have like four that are going to drop off.

10       JERRY:      Right.

11       REBECCA BRIGHAM:      Like next week --

12       JERRY:      Right.

13       REBECCA BRIGHAM:      -- then I know that

14   those two are covered.

15       JERRY:      Excellent.

16       REBECCA BRIGHAM:      Just in case.

17       JERRY:      Okay.

18       REBECCA BRIGHAM:      So if while I'm here, if

19   I could try and get some type of something like

20   that, or even.

21       JERRY:      So Shelly's working from home.

22       REBECCA BRIGHAM:      Oh, okay.

23       JERRY:      So I have to shoot her an email.

24       REBECCA BRIGHAM:      Okay.

25       JERRY:      But I can have her email that to

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0860

FRONTIER AIRLINES (R. BRIGHAM) - 0004300

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 27
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    you.

2        REBECCA BRIGHAM:      That's perfect.

3        JERRY:      Okay?

4        REBECCA BRIGHAM:      Yeah.

5        JERRY:      Do you have her email address?

6        CASSANDRA:      Yep.

7        JERRY:      Okay.      Perfect

8        REBECCA BRIGHAM:      Okay.      Awesome.

9        JERRY:      I'll have her send you the break

10   down.

11       REBECCA BRIGHAM:      Okay.

12       JERRY:      And then I'll have her explain

13   when you will requalify, or what days would

14   rule off where you'll get some additional time

15   added to your FMLA.

16       REBECCA BRIGHAM:      Okay.      Perfect.      And

17   then my other question is going to be to her

18   is, even though I'm exceeded, as stuff drops

19   off do we just start counting these, or are we

20   just starting over from this day?

21       JERRY:   Let me check with her.

22       REBECCA BRIGHAM:      Okay.

23       JERRY:      That's a question she would have

24   to answer.

25       REBECCA BRIGHAM:      Okay.      Perfect.      Yeah,

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0861   FRONTIER AIRLINES (R. BRIGHAM) - 0004301

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                  Page 28
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    if you could just check with her on that just

2    so I'm -- I know exactly where I stand with

3    that.

4        JERRY:      Okay.     Makes sense.

5        REBECCA BRIGHAM:      Okay.

6        JERRY:      Definitely.

7        REBECCA BRIGHAM:      And then would I also

8    talk to leave of absence to do like, let's say

9    at the end of the month those two days --

10       JERRY:      Uh-huh.

11       REBECCA BRIGHAM:      -- and I contact you,

12   like I haven't been able to get rid of them,

13   how do I -- do I contact leave of absence to do

14   a personal leave for those trips or ...

15       JERRY:      You need to work with your manager

16   Kari Thompson.      I would start with her first.

17       REBECCA BRIGHAM:      Okay.

18       JERRY:      And ultimately --

19       REBECCA BRIGHAM:      And I think my manager's

20   Stephanie.

21       JERRY:      Oh, Stephanie.      Okay.

22       REBECCA BRIGHAM:      She's the one that knows

23   my situation.

24       JERRY:      Continue working with Stephanie.

25       REBECCA BRIGHAM:      Okay.     I'm like ...

H+G   Hunter + Geist, Inc.    800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0862

FRONTIER AIRLINES (R. BRIGHAM) - 0004302

1    CASSANDRA:     I was going to say, yeah, you

2    don't have to disclose anything.

3    JERRY:     Correct.

4    REBECCA BRIGHAM:     Right.

5    CASSANDRA:     You just, yeah.

6    REBECCA BRIGHAM:     Okay.    And I did

7    disclose to Stephanie.

8    JERRY:     Okay.

9    CASSANDRA:     Okay.

10    REBECCA BRIGHAM:     So knows.     She's in the

11    loop.    JJ knows and Jeff knows.

12    JERRY:     Okay.

13    REBECCA BRIGHAM:     And Fadia (phonetic) did

14    until she left, but those are the ones, I'd

15    like to keep them ...

16    JERRY:     Just keep working with Stephanie.

17    CASSANDRA:     Yeah.

18    REBECCA BRIGHAM:     Okay.

19    JERRY:     She'll definitely be your best

20    person --

21    REBECCA BRIGHAM:     Okay.

22    JERRY:     -- working through that.

23    REBECCA BRIGHAM:     Perfect.

24    JERRY:     Um, depending how many days were

25    those going to be?



1      REBECCA BRIGHAM:      They're just two days.

2      JERRY:      Just two days --

3      REBECCA BRIGHAM:      They were like -- like,

4   they were the weird like report day, like where

5   you report at like 11 something at night.

6      JERRY:      Okay.

7      REBECCA BRIGHAM:      And then you do the link

8   to Indie.      You stay for like 10 to 12 hours or

9   whatever.

10      JERRY:      Okay.

11      REBECCA BRIGHAM:      And then work a couple

12   flights home.

13      JERRY:      Perfect.

14      REBECCA BRIGHAM:      So technically, it's two

15   days.

16      JERRY:      Two days, okay.

17      REBECCA BRIGHAM:      So that would be four

18   total.

19      JERRY:      The other option, if you come

20   across one where maybe it's four days --

21      REBECCA BRIGHAM:      Uh-huh.

22      JERRY:      -- to qualify for a medical leave,

23   non FMLA medical leave, it has to be a minimum

24   of three days.

25      REBECCA BRIGHAM:      Minimum of three.      Okay.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0864   FRONTIER AIRLINES (R. BRIGHAM) - 0004304

1      JERRY:      Minimum of three.      Just keep that

2    in mind if you come across a situation --

3      REBECCA BRIGHAM:      Okay.

4      JERRY:      Granted, those are still based on

5    operational (indiscernible) demands.

6      REBECCA BRIGHAM:      Right.

7      JERRY:      But it still gives you an option.

8      REBECCA BRIGHAM:      And then my other

9    concern, though, with going on a medical leave,

10   even if it's for that just four days or

11   whatever, that counts as a point.

12     JERRY:      Oh.

13     REBECCA BRIGHAM:      As per our contract, it

14   counts as a point.

15     JERRY:      Okay.

16     REBECCA BRIGHAM:      Now, I have been told

17   that if you get to the final term -- or to the

18   termination --

19     JERRY:      Uh-huh.

20     REBECCA BRIGHAM:      -- they will take those

21   away before they can actually terminate you.

22     JERRY:      Okay.

23     REBECCA BRIGHAM:      I mean, that's what I

24   was told.      I don't know if that's actually

25   accurate or not.

 Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004305

1    JERRY:    Let me research that for you.

2    REBECCA BRIGHAM:    Okay.    Perfect.

3    JERRY:    And I I'll find out.

4    REBECCA BRIGHAM:    Okay.

5    JERRY:    Because I need to know for myself.

6    REBECCA BRIGHAM:    Awesome.

7    JERRY:    Okay.    Any other questions?

8    REBECCA BRIGHAM:    No, that's it.        I think

9    I will contact Stephanie and see.

10   JERRY:    Perfect.

11   REBECCA BRIGHAM:    Just kind of let her --

12   that way she's in the loop --

13   JERRY:    Okay.

14   REBECCA BRIGHAM:    -- a little bit too.

15   JERRY:    Maybe she has other options that

16   she could --

17   REBECCA BRIGHAM:    Right.    True.

18   JERRY:    -- or somebody that knows that

19   might pick up those trips from you.

20   REBECCA BRIGHAM:    Right.    Exactly.    Throw

21   it out there.

22   JERRY:    Perfect.    Yeah.    It doesn't hurt.

23   REBECCA BRIGHAM:    Perfect.    And then I

24   also am going to going to reach out to her

25   about that I may have to do a request for

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0866

FRONTIER AIRLINES (R. BRIGHAM) - 0004306

1    personal leave for these -- those two to two

2    days.

3        JERRY:        Perfect.

4        REBECCA BRIGHAM:        Yeah, and then I guess

5    do my bid and see what I get for --

6        JERRY:        Excellent.

7        REBECCA BRIGHAM:        -- July.

8        JERRY:        And maybe things change where your

9    seniority goes up and --

10       REBECCA BRIGHAM:        Right.

11       JERRY:        -- because --

12       REBECCA BRIGHAM:        Well, with the Orlando

13   base, I mean.

14       JERRY:        There's a lot of people --

15       REBECCA BRIGHAM:        Lots of people that want

16   to go.

17       JERRY:        There's a lot (indiscernible).

18       REBECCA BRIGHAM:        And as long as they're

19   senior to me, I'm good.

20       JERRY:        Exactly.        You never know, but

21   there's a lot of people that commute right now.

22   So that might be the case.

23       REBECCA BRIGHAM:        Exactly.        But from my

24   understanding, Frontier is not growing,

25   correct?        Just kind of letting --

H+G   Hunter + Geist, Inc.    800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0867                    FRONTIER AIRLINES (R. BRIGHAM) - 0004307

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 34
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      JERRY:      We just ordered 12 aircraft.

2      REBECCA BRIGHAM:      Okay.    So then w're --

3      JERRY:      We're expanding and we are growing

4    quite a bit.

5      REBECCA BRIGHAM:      Okay.    In Denver?

6      JERRY:      In Denver.

7      REBECCA BRIGHAM:      Okay.

8      JERRY:      Growing, I don't know in Denver.

9    Growing as a company.

10     REBECCA BRIGHAM:      As a company.

11     JERRY:      Yes.

12     REBECCA BRIGHAM:      Because my own -- my

13   main concern also going forward from here --

14     JERRY:      Uh-huh.

15     REBECCA BRIGHAM:      -- and this is way down

16   the road, but I mean, if they're not going to

17   grow Denver and people are going to Orlando or

18   whatever --

19     JERRY:      Yeah.

20     REBECCA BRIGHAM:      -- and it shrinks, I

21   mean, I will have to pin up my wings if I ever

22   go back on reserve, because there's no possible

23   way to do any of that.            So I guess that was

24   just a future way down the road, don't want to

25   think too much about it.

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0868

FRONTIER AIRLINES (R. BRIGHAM) - 0004308

1        JERRY:        Right.

2        REBECCA BRIGHAM:        But if Denver is not

3    growing, then --

4        JERRY:        That's true.

5        REBECCA BRIGHAM:        -- that's something else

6    I have to consider.

7        JERRY:        I know we're growing, but I don't

8    know where those flights necessarily are going

9    to be.

10       REBECCA BRIGHAM:        Right.

11       JERRY:        Because we're tasked to hiring

12   500 --

13       REBECCA BRIGHAM:        Oh.

14       JERRY:        -- flight attendants.

15       REBECCA BRIGHAM:        Wow.

16       JERRY:        So it depends on where those --

17   they're going to be based.            Right now,

18   obviously, Orlando's going to be primarily

19   where a lot of people will be going.

20       REBECCA BRIGHAM:        Right.

21       JERRY:        Where that leaves Denver it's

22   unknown?

23       REBECCA BRIGHAM:        Okay.    Perfect.        And

24   then my other question, which is totally just

25   curiosity, somebody -- I mean, of course flight

H+G   Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0869

FRONTIER AIRLINES (R. BRIGHAM) - 0004309

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 36
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      attendants, we like to talk all the time.                    Is

2      attrition really that bad right now.

3          JERRY:      Yeah --

4          REBECCA BRIGHAM:      Is it?      Okay.

5          JERRY:      And it's primarily the junior

6      folks.

7          REBECCA BRIGHAM:      That's what I've heard

8      too.

9          JERRY:      They're not lasting that long.

10     They come on board, the reserve is not what

11     they thought it was, and as soon as they come

12     in they're leaving quite a bit.                    But

13     attritian's pretty high.

14         REBECCA BRIGHAM:      Okay.

15         JERRY:      To the point where we can't even

16     keep them.

17         REBECCA BRIGHAM:      Wow.

18         JERRY:      So, yeah, it's interesting.

19         REBECCA BRIGHAM:      Wow.

20         JERRY:      And with all the other airlines

21     hiring, a lot of them are jumping to the big

22     carriers.

23         REBECCA BRIGHAM:      Yep.

24         JERRY:      Primarily Delta and United.

25         REBECCA BRIGHAM:      Yep.    Which is -- wow.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
       Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004310

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                     Page 37
REBECCA BRIGHAM v. FRONTIER AIRLINES

1     JERRY:      Yeah, quite a few of them have

2     left.

3     REBECCA BRIGHAM:      Yeah.

4     JERRY:      It is interesting.

5     REBECCA BRIGHAM:      I know, right, what can

6     you do?      Yeah.    All right.        Well thank you guys

7     so much for meeting with me.

8     JERRY:      You bet.

9     REBECCA BRIGHAM:      And, yeah, I'll just be

10    in touch with you, like, as I need to.

11    CASSANDRA:      Okay.    And then now that I

12    know that she has, you know, your information

13    as well as like, I'll just --

14    REBECCA BRIGHAM:      Yeah, Stephanie is in

15    the loop protection on all that stuff.                So ...

16    CASSANDRA:      Okay.    If you come up with any

17    questions or concerns, you know, just contact

18    me or Jerry.

19    REBECCA BRIGHAM:      Okay.    Perfect.

20    JERRY:      Excellent.

21    REBECCA BRIGHAM:      Awesome.    Thank you guys

22    so much.

23    And I'll just be in touch with you

24    whenever

25    CASSANDRA:      Okay.



H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004311

BrighamR_Plaintiff Records 0633 (06.04.15)  06/04/2015                    Page 38
REBECCA BRIGHAM v. FRONTIER AIRLINES

1     JERRY:      Have a good rest of your day.

2     REBECCA BRIGHAM:      Okay.    You too, Jerry.

3  Thank you.

4     REBECCA BRIGHAM:      Make sure I didn't leave

5  anything.      I always leave my phone in my

6  pocket.

7     (Background conversation.)

8     REBECCA BRIGHAM:      Yeah, thank you.

9  (Indiscernible).

10     (Background conversation.)

11     REBECCA BRIGHAM:      Right.    Exactly.    If is

12  he still gonna -- I know when I first started

13  he was like the drug administrator or whatever

14  called us.

15     CASSANDRA:      (Indiscernible) when he left

16  the company (indiscernible) to go to a

17  different airline now he came back.            So

18  (indiscernible)

19     REBECCA BRIGHAM:      Okay.

20     CASSANDRA:      So the reason why

21  (indiscernible) you were kind of

22  (indiscernible) here (indiscernible) manager.

23     REBECCA BRIGHAM:      Right.

24     CASSANDRA:      Like, he'll just

25  (indiscernible)

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0872    FRONTIER AIRLINES (R. BRIGHAM) - 0004312

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015          Page 39
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:      Okay.    Awesome.    And

2    then my other question is, how do I find out if

3    there are any other options for internal

4    transfers besides like inflight managers?  I

5    mean.

6        CASSANDRA:      Did you check the website?

7        REBECCA BRIGHAM:      I don't -- what -- is it

8    just on the --

9        CASSANDRA:      So if you go to

10   myfrontier.org.

11       REBECCA BRIGHAM:      Okay.

12       CASSANDRA:      It's on there.

13       REBECCA BRIGHAM:      Okay.

14       CASSANDRA:      Myfrontier.org on the section

15   there's like departments.              All kinds of stuff

16   across the top.

17       REBECCA BRIGHAM:      Okay.

18       CASSANDRA:      There's a hole bunch of links.

19   There's a drop down that says all about

20   hostings.       You should be able to see them.  I

21   don't know how frequently they post them or

22   when it's updated.        But I know --

23       REBECCA BRIGHAM:      Nice.    Okay.    Because

24   that's always an option.           If it's the not

25   looking like it's going to be easy at all to

**H+G**   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0873          FRONTIER AIRLINES (R. BRIGHAM) - 0004313

1    get rid of layovers, I guess that's an option

2    to kind of transfer somewhere else.

3        And then, I don't know -- sorry, I have a

4    million questions.

5        CASSANDRA:      No problem.

6        REBECCA BRIGHAM:      Like if I were to, let's

7    say I were transfer out to receptionist.                Okay?

8    I do the option of going back to inflights?

9        CASSANDRA:      So (indiscernible).

10       REBECCA BRIGHAM:      Okay.

11       CASSANDRA:      I'm going to verify this

12   because (indiscernible).

13       REBECCA BRIGHAM:      Okay.

14       CASSANDRA:      If you transfer, and then you

15   say I want it go back to the line, right?

16       REBECCA BRIGHAM:      Right.

17       CASSANDRA:      So I'm not 100 percent sure

18   how this works, and I will verify it with

19   Jerry, but I can also just randomly throw it

20   out there to (indiscernible) inflight and ask.

21       REBECCA BRIGHAM:      Okay.

22       CASSANDRA:      I believe as long as you

23   maintain your certifications --

24       REBECCA BRIGHAM:      Okay.

25       CASSANDRA:      -- and stay current or --

H+G  Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0874

FRONTIER AIRLINES (R. BRIGHAM) - 0004314

1      REBECCA BRIGHAM:      Yeah.

2      CASSANDRA:      As long as you stay current

3   you're okay.      So let's say like you've been

4   gone for a year because I think -- do they

5   expire yearly?

6      REBECCA BRIGHAM:      Well, the way that it

7   works is you're on leave longer than a year,

8   you have to do like a three day --

9      CASSANDRA:      Like a recert type thing?

10      REBECCA BRIGHAM:      Yes.

11      CASSANDRA:      Yeah.      So I think like in that

12   scenario, as long as there was a demand for

13   them, you would go back, but you would go

14   through that three-day first.

15      REBECCA BRIGHAM:      Okay.

16      CASSANDRA:      To get everything.      I believe.

17      REBECCA BRIGHAM:      Okay.

18      CASSANDRA:      And I'll double-check that for

19   you.

20      REBECCA BRIGHAM:      Okay.      Awesome.      Yeah,

21   because I'm just -- because then if were to

22   eventually -- like, let's say next month that's

23   all I get is trips and I can't get rid of them,

24   and then if I were to transfer somewhere into

25   the company, I would just want to know that

H+G   Hunter + Geist, Inc.   800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0875                    FRONTIER AIRLINES (R. BRIGHAM) - 0004315

1   when -- like, let's say after hiring all these

2   flight attendants and then Denver, like a bunch

3   of senior people go to Orlando, my seniority

4   would jump up, you know, and then all of a

5   sudden I'd be able to hold (indiscernible).  I

6   would much rather probably go back to the line.

7   So I would want to make sure that --

8       CASSANDRA:      Your question is

9   (indiscernible) decide to go back what the

10  process (indiscernible)

11      REBECCA BRIGHAM:     Yes, like --

12      (Talking simultaneously.)

13      REBECCA BRIGHAM:     -- if I keep my

14  seniority and what the process is like.                    Do you

15  have to make like let's say a six-month

16  commitment at the other position?

17      CASSANDRA:      I think that no matter what it

18  is, like your position, I'm pretty sure it is

19  six months.

20      REBECCA BRIGHAM:     Okay.

21      CASSANDRA:      They don't allow anybody to

22  transfer.

23      REBECCA BRIGHAM:     So just go --

24      CASSANDRA:      Unless there's like a

25  circumstances where a manager is like, no, it's

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0876

FRONTIER AIRLINES (R. BRIGHAM) - 0004316

1    okay.      Like, they give their approval, but

2    those are like few --

3         REBECCA BRIGHAM:        Okay.

4         CASSANDRA:         -- where that happens.

5         REBECCA BRIGHAM:        And then my other

6    question is, is there an option for -- you

7    know, how like OJI, you come to the GO and you

8    do whatever.       Is that ever an option if they're

9    like -- let's say, because I don't want to get

10   in trouble.       I don't want to get these sick

11   instances or (indiscernible) instances, points.

12   You know, is there ever an option that if it

13   comes down to it -- like this three day that I

14   had you pull me off.

15        CASSANDRA:       Uh-huh.

16        REBECCA BRIGHAM:        Like, let's say that

17   happens again, let's say it's next month or

18   whatever, I mean, is there an option for me to

19   come work at the GO and file paperwork or

20   something?      That way it's not like anybody --

21   nobody thinks that I'm like, oh, she just wants

22   these days off so she's trying to get out of

23   it.    Because that's not it at all.            I mean, I

24   would have loved to picked up a turn today and

25   tomorrow.     You know what I mean?        But is that

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0877

FRONTIER AIRLINES (R. BRIGHAM) - 0004317

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015            Page 44
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    an option to kind of that way I can still

2    get -- it wouldn't be like a point.                Like,

3    instead of getting a point, I would come to the

4    GO and work, or inflight paperwork.            Whatever

5    it may be.        I don't know if that's actually an

6    option, but ...

7        CASSANDRA:        And I honestly don't know, but

8    that's another thing that I can ask.

9        REBECCA BRIGHAM:        Okay.

10       CASSANDRA:        And just -- I mean, I'm not

11   going to say that I'm asking on your behalf.

12       REBECCA BRIGHAM:        Right.

13       CASSANDRA:        I'm just going to throw it out

14   there and say, hey, you know --

15       (Talking simultaneously.)

16       REBECCA BRIGHAM:        Just be like --

17       CASSANDRA:        Yeah.

18       REBECCA BRIGHAM:        Right.

19       CASSANDRA:        (Indiscernible) happens in the

20   future, like is this something that we can do.

21       REBECCA BRIGHAM:        Right.

22       CASSANDRA:        And then I can definitely let

23   you know that one as well.

24       REBECCA BRIGHAM:        Okay.    Awesome.    Yeah,

25   and just -- I just kind of want to know all

H+G   Hunter + Geist, Inc.    800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0878

FRONTIER AIRLINES (R. BRIGHAM) - 0004318

BrighamR_Plaintiff Records 0633 (06.04.15)  06/04/2015                    Page 45
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    like of my options I guess, you know.

2         CASSANDRA:      Yeah.

3         REBECCA BRIGHAM:      Just like because I've

4    been a flight attendant for eight years.  I

5    don't know what else I'd want to do.              You know,

6    like, I love it.

7         CASSANDRA:      Yeah.

8         REBECCA BRIGHAM:      Like, I get a lot of

9    time with my kids.          Like, I wouldn't get that 9

10   to 5.     I'd get like the weekends, you know, and

11   it's like pick them up after a long day of

12   work.     You know, like have just enough time to

13   do dinner, bath bed.          You know.

14        CASSANDRA:      That's exactly how it is.

15        REBECCA BRIGHAM:      Being a flight attendant

16   it's like -- I mean.

17        CASSANDRA:      You have a lot more

18   flexibility.

19        REBECCA BRIGHAM:      Yeah, and like I've been

20   doing a lot of those early morning Dallas turns

21   where, I mean, you have to be at the airport at

22   5 in the morning, but I land at 10:30.              So then

23   I just go.      I can pick up my kids.          We've got

24   the whole afternoon and whole night together.

25   So it's like, yeah, I don't know what else I'd

H+G  Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
          Court Reporting, Legal Videography, and Videoconferencing

0879

FRONTIER AIRLINES (R. BRIGHAM) - 0004319

1    want to do that would allow me that type of

2    time with them, you know?

3        CASSANDRA:       Yeah.

4        REBECCA BRIGHAM:       So it's hard to know

5    what to do.

6        CASSANDRA:       I totally understand.

7        REBECCA BRIGHAM:       Yeah.

8        CASSANDRA:       I would definitely, like I

9    said, I would go to Medicaid.               Even though

10   you're (indiscernible) from Medicaid.

11       REBECCA BRIGHAM:       Right just see where we

12   stand.

13       CASSANDRA:       And also like, if you want to

14   apply for Medicaid because you don't make a

15   certain amount --

16       REBECCA BRIGHAM:       Uh-huh.

17       CASSANDRA:       -- in a monthly, you can

18   qualify for it.

19       REBECCA BRIGHAM:       Right.

20       CASSANDRA:       But then there's all kinds of

21   things too, you know what I mean, like that pop

22   up on there as options.               So like it could say,

23   you know, like if you go to your -- I don't

24   know where you live.               Like (indiscernible) you

25   live, you go to them and, you know, ask first.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004320

1    Things like doctor bills and things like that.

2    There might be some kind of program where they

3    say, you know, we can give you like a lump sum

4    towards that, or --

5         REBECCA BRIGHAM:      Okay.

6         CASSANDRA:      -- we can refer or, you know,

7         REBECCA BRIGHAM:      Right.

8         CASSANDRA:      They could probably be a good

9    source, but I would also reach out to UNIM

10   (phonetic).

11        REBECCA BRIGHAM:      Okay.

12        CASSANDRA:      UNIMs told me a couple of

13   times, oh, no, it's not just that, like we have

14   interpreters.        We have like people who can help

15   you.    Like, (indiscernible) you need a rental

16   car.    Just like a whole bunch of information

17   they told us that I didn't even know existed

18   with them.

19        REBECCA BRIGHAM:      Nice.    Well, cool.      I'll

20   definitely -- yeah, tomorrow I'll probably sit

21   down and figure out where to, you know --

22   because, I mean, honestly, it's like $220 a

23   month that we're paying for me to go see the

24   therapist, you know.        And it's great, but I'm

25   like it's so breaking the bank right now, and

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0881

FRONTIER AIRLINES (R. BRIGHAM) - 0004321

1    I'm like, oh, my God.            And I just kind of

2    figured since it was a requirement, I'm like,

3    well, maybe since they're requiring it, maybe

4    they would take care of some of it.            Like,

5    split the bill with me, but, honestly, I'll get

6    in touch with you and then figure it out.

7        CASSANDRA:        Yeah, see what they have.

8    They might have some good recommendations.

9        REBECCA BRIGHAM:        Okay.    Cool.

10       CASSANDRA:        And if I think of any, I'll

11   definitely --

12       REBECCA BRIGHAM:        Yeah.

13       CASSANDRA:        Get in touch with you and let

14   you know --

15       REBECCA BRIGHAM:        Yeah.

16       CASSANDRA:        (indiscernible) think about --

17   (indiscernible).        I might reach out to some of

18   my, you know, people that are in the hospital.

19       REBECCA BRIGHAM:        Uh-huh.

20       CASSANDRA:        And just ask them like what

21   they do.

22       REBECCA BRIGHAM:        Okay.

23       CASSANDRA:        With people.        You know, a lot

24   of them, they set up a payment plan for things

25   like that.



BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 49
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:       Right.

2    CASSANDRA:      Some of them (indiscernible)

3    oh, no, you have to, you know, this company

4    or --

5    REBECCA BRIGHAM:       Right.      Just have to

6    apply.

7    CASSANDRA:      Right.

8    REBECCA BRIGHAM:       Okay.      Cool.

9    CASSANDRA:      So I'll definitely keep in

10   touch with you on that.

11   REBECCA BRIGHAM:       Perfect.      Okay.      Thank

12   you so much, Cassandra.

13   CASSANDRA:      You're welcome.       If you

14   (indiscernible) give me a call (indiscernible)

15   REBECCA BRIGHAM:       Perfect.      Awesome.      And

16   then so what I'll do is, if you don't want to

17   call me later and you just want to put all this

18   stuff in an email, just feel free to do that,

19   or you can give me a call too.

20   CASSANDRA:      Uh-huh (indiscernible).

21   REBECCA BRIGHAM:       Right.      Oh, I don't

22   know.      Let me give it to you.

23   CASSANDRA:      Okay.

24   REBECCA BRIGHAM:       Really quick.

25   REBECCA BRIGHAM:       It's Rebecca Brigham.

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0883

FRONTIER AIRLINES (R. BRIGHAM) - 0004323

BrighamR_Plaintiff Records 0633 (06.04.15)  06/04/2015                    Page 50
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    CASSANDRA:    No periods or anything, right?

2    REBECCA BRIGHAM:    No.

3    CASSANDRA:    All together.    Okay.

4    REBECCA BRIGHAM:    At -- no, the Number 4.

5    Sorry.

6    CASSANDRA:    Rebecca Brigham4?

7    REBECCA BRIGHAM:    4@gmail.com.

8    CASSANDRA:    Okay.    Perfect.

9    REBECCA BRIGHAM:    Yeah.

10    CASSANDRA:    That works.

11    REBECCA BRIGHAM:    Perfect.    And then, um,

12    yeah, I'll just be in touch with you towards

13    the end of the month and let you know where

14    we're at for those, and then I'll talk to

15    Stephanie.    I work again Sunday.    So I'll talk

16    to her on Sunday.

17    CASSANDRA:    (Indiscernible).

18    REBECCA BRIGHAM:    Uh-huh.

19    CASSANDRA:    Can you (indiscernible)?

20    REBECCA BRIGHAM:    Not if they are actually

21    on like --

22    CASSANDRA:    Because I know they can be on

23    call.

24    REBECCA BRIGHAM:    Right, if they're on

25    call, I can't give it to them.    The only way

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0884

1    for them to take it is if I call in.

2         CASSANDRA:       Right.

3         REBECCA BRIGHAM:       But if they're on days

4    off and they want to make extra money and

5    they're not going to do one of the one in seven

6    violations, then they can break it up in a

7    heartbeat.       So what I think I'm going to do,

8    we've got like a flight attendants Facebook

9    page or whatever.        So I'll probably post the

10   two trips on there, and just say 20 bucks and

11   you'll be (indiscernible) if you can pick

12   either one of these up.          Because money talks

13   with flight attendants.          Like, huh, I could use

14   20 bucks and it's only technically kind of a

15   one.

16        CASSANDRA:       Okay.

17        REBECCA BRIGHAM:       So, yeah.       So I think

18   I'm going to do that and just hopefully we

19   don't have to do that.          And then if it does

20   come down to like what I was talking about in

21   there, like if there's like a panic moment

22   where I have to go to a meeting, I will just

23   have -- I'll just give you a call first.

24        CASSANDRA:       Uh-huh.

25        REBECCA BRIGHAM:       Depending on -- like,

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0885

FRONTIER AIRLINES (R. BRIGHAM) - 0004325

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 52
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    sometime's it's like three hours

2    (indiscernible) and my sponsor will be like get

3    to a meeting.          Do you want me to contact

4    scheduling very first so they can get somebody

5    to cover it?          Like, and I'll just say remove

6    pending paperwork, and then reach out to you,

7    and then I can get (indiscernible) say

8    something that, you know, she went to a meeting

9    this day because -- you know, she probably

10   won't tell you exactly what's going on.

11       CASSANDRA:          Right.

12       REBECCA BRIGHAM:          But it was my

13   recommendation that she get to a meeting

14   immediately.          And then I can get that on to

15   you, and then I don't know how to have that

16   coded.     You know, what I mean like ...

17       CASSANDRA:          That's something

18   (indiscernible) --

19       REBECCA BRIGHAM:          Okay.

20       CASSANDRA:          -- because as long as like

21   she's providing something because you're being

22   compliant with what she's telling you

23   (indiscernible) in time.                    So as long as there's

24   documentation that (indiscernible) to you.

25       REBECCA BRIGHAM:          Right.

 Hunter + Geist, Inc.   800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004326

1     CASSANDRA:      (indiscernible) okay, she dis

2     what she's (indiscernible).               Now --

3          REBECCA BRIGHAM:      Okay.

4     CASSANDRA:      -- what do we do.        You know,

5     what I mean?

6          REBECCA BRIGHAM:      Right.

7     CASSANDRA:      So that it's not affecting

8     your --

9          REBECCA BRIGHAM:      Perfect.      Awesome.

10    Okay.   I think that's it for questions.

11         CASSANDRA:      Okay.

12         REBECCA BRIGHAM:      Well, thank you.

13         CASSANDRA:      Yeah.

14         REBECCA BRIGHAM:      And then if you could

15    give that email to Jerry, and just have him

16    send me an email.

17         CASSANDRA:      I'll give it to Shelly so that

18    way she can look at your (indiscernible) --.

19         REBECCA BRIGHAM:      Awesome.

20         CASSANDRA:      -- that way you know about the

21    drop offs also.

22         REBECCA BRIGHAM:      Perfect.

23         CASSANDRA:      Okay.

24         REBECCA BRIGHAM:      Thank you so much --

25         CASSANDRA:      You're welcome.

H+G  Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

0887                    FRONTIER AIRLINES (R. BRIGHAM) - 0004327

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015                    Page 54
REBECCA BRIGHAM v. FRONTIER AIRLINES

1     REBECCA BRIGHAM:     -- Cassandra.

2     CASSANDRA:     Good luck.

3     REBECCA BRIGHAM:     Thanks.

4     UNIDENTIFIED SPEAKER:     (Indiscernible).

5     REBECCA BRIGHAM:     What's that.

6     UNIDENTIFIED SPEAKER:     Does it start with

7     a beep.

8     REBECCA BRIGHAM:     It does.     Thanks.     Have

9     a good one.

10     Buy, ladies.

11     UNIDENTIFIED SPEAKER:     Bye.     Have a good

12     one.

13     (End of recording.)

14

15

16

17

18

19

20

21

22

23

24

25

BrighamR Plaintiff Records 0633 (6415)

55

1                          CERTIFICATE

2

3          I, ERINN GREEN, Professional Court

4   Reporter/Transcriptionist, do hereby certify that I

5   was authorized to transcribe the foregoing recorded

6   proceeding, and that the transcript is a true and

7   accurate transcription of my shorthand notes, to the

8   best of my ability, taken while listening to the

9   provided recording.

10

11         I further certify that I am not of counsel or

12  attorney for either or any of the parties to said

13  proceedings, nor in any way interested in the events

14  of this cause, and that I am not related to any of

15  the parties thereto.

16

17         Dated this 22nd day of January, 2020.

18

19

20  _____

21    ERINN L. GREEN, Professional Court Reporter
      Notary Public, State of Florida

22

23

24

25

U.S. LEGAL SUPPORT
866-339-2608

0889

FRONTIER AIRLINES (R. BRIGHAM) - 0004329

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015   Page 56
REBECCA BRIGHAM v. FRONTIER AIRLINES

**$**

$220 47:22

$55 20:16

**1**

10 30:8

100 40:17

10:30 45:22

11 30:5

12 9:1 30:8 34:1

**2**

20 8:18 51:10,14

2:17 2:3

2:30 2:24

**3**

3-day 7:21

**4**

4 50:4

4@gmail.com 50:7

4th 2:3

**5**

5 45:10,22

500 35:12

**9**

9 45:9

**A**

ability 10:6

absence 28:8,13

abuse 22:3

accommodate 4:22

accurate 31:25

added 27:15

additional 27:14

address 27:5

adjustments 10:3

administrator 38:13

affecting 53:21

afternoon 45:24

ahead 19:17

aircraft 34:1

airline 38:17

Airline's 2:2,5

airlines 36:20

airplane 15:25

airport 45:21

allowed 5:2 8:23

amount 9:9 46:15

anniversary 17:16

announced 12:14

apologies 7:13

apparently 2:11

applied 21:6

apply 9:18 46:14 49:6

approval 43:1

area 15:21

arises 15:23

asks 24:9

assistance 21:10

attendant 10:20 45:4,
15

attendants 35:14 36:1
42:2 51:8,13

attention 16:13

attnedant 10:17

auxiliary 53:3

attrition 36:2

audit 8:21 9:12 25:15

aware 17:8

awesome 11:5 15:16
22:15,18 23:4 25:5 27:8
32:6 37:21 39:1 41:20
44:24 49:15 53:9,19

**B**

baby 24:13

back 4:9,10 16:20 21:3
25:15 34:22 38:17 40:8,
15 41:13 42:6,9

background 3:13 38:7,
10

bad 36:2

bank 47:25

base 6:2 12:15 33:13

based 4:19 5:6 7:18 8:2
21:18 31:4 35:17

bath 45:13

bed 45:13

beep 54:7

beginning 16:20

behalf 4:17 44:11

bet 37:8

bid 33:5

bidding 7:24 14:22

big 6:9 36:21

biggest 9:20

bill 48:5

bills 24:14 47:1

bit 14:15 32:14 34:4
36:12

board 36:10

born 21:15

break 27:9 51:6

breaking 47:25

bridge 53:3

Brigham 2:1,23 3:3,6,
10,18,20 4:4,6,10,13,

15,16,18,21,25 5:4,9,
11,14,17,19,22,25 6:3,
5,7,11,13,16,18,21 7:2,
7,9,12,14,17,22 8:1,4,8,
10,14,24 9:2,4,6,10,13,
16,19,23 10:1,4,7,11,
14,18,23 11:2,4,7,10,
19,23 12:1,5,10,13,16,
18,20,23 13:4,7,10,13,
16,21,24 14:3,8,11,13,
16,20,23 15:3,6,9,12,
15,18,20 16:2,5,8,11,
18,23 17:3,6,10,14
18:2,5,8,11,13,15,18,
21,24 19:3,6,12,15,20,
25 20:4,7,9,15,18 21:1,
6,9,14,22 22:1,4,11,15,
18,21,23 23:4,6,15,18,
22,25 24:3,8,12,15,18,
21,24 25:2,5,8,13,17,
18,21,24 26:5,8,11,13,
16,18,22,24 27:2,4,8,
11,16,22,25 28:5,7,11,
17,19,22,25 29:4,6,10,
13,18,21,23 30:1,3,7,
11,14,17,21,25 31:3,6,
8,13,16,20,23 32:2,4,6,
8,11,14,17,20,23 33:4,
7,10,12,15,18,23 34:2,
5,7,10,12,15,20 35:2,5,
10,13,15,20,23 36:4,7,
14,17,19,23,25 37:3,5,
9,14,19,21 38:2,4,8,11,
19,23 39:1,7,11,13,17,
23 40:6,10,13,16,21,24
41:1,6,10,15,17,20
42:11,13,20,23 43:3,5,
16 44:9,12,16,18,21,24
45:3,8,15,19 46:4,7,11,
16,19 47:5,7,11,19
48:9,12,15,19,22 49:1,
5,8,11,15,21,24,25
50:2,4,7,9,11,18,20,24
51:3,17,25 52:12,19,25
53:3,6,9,12,14,19,22,24
54:1,3,5,8

Brigham4 50:6

bring 16:13,20

brings 24:16

bucks 8:18 51:10,14

bunch 39:18 42:2
47:16

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015   Page 57
REBECCA BRIGHAM v. FRONTIER AIRLINES

business 13:11 23:17

busy 14:7

Buy 54:10

Bye 54:11

**C**

calendar 9:3,7

call 2:6 6:17 8:2 19:2 49:14,17,19 50:23,25 51:1,23

called 2:7 38:14

calling 2:5

car 3:6 47:16

care 3:17 20:2 48:4

carriers 36:22

carry 13:16

case 26:16 33:22

Cassandra 2:24 3:9, 10,19,21,24 4:2,19,22 5:1,5,10,12,15,18,20,23 6:1,4,6,8,12,14,17,19, 22 7:10 12:25 16:9,12, 19,24 17:4,7,25 18:3,6, 9,12,14 21:5,24 22:2,5, 8,12,16,19,22 23:12,16, 19,23 24:1,4,9,13,16, 19,22,25 25:3,12 27:6 29:1,5,9,17 37:11,16,25 38:15,20,24 39:6,9,12, 14,18 40:5,9,11,14,17, 22,25 41:2,9,11,16,18 42:8,17,21,24 43:4,15 44:7,10,13,17,19,22 45:2,7,14,17 46:3,6,8, 13,17,20 47:6,8,12 48:7,10,13,16,20,23 49:2,7,9,12,13,20,23 50:1,3,6,8,10,17,19,22 51:2,16,24 52:11,17,20 53:1,4,7,11,13,17,20, 23,25 54:1,2

Cassie 3:12 6:23 7:19 10:5 16:4 18:17

certifications 40:23

change 33:8

check 27:21 28:1 39:6

chopped 4:15

chunk 15:1

circumstances 5:7 42:25

coded 52:16

commitment 42:16

commit
BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES

commute 33:21

company 12:3 34:9,10 38:16 41:25 49:3

completely 14:10

compliant 16:6,21 20:11 52:22

concern 9:21 15:21 31:9 34:13

concerned 13:18

concerns 8:5,13 37:17

contact 18:23 23:24 25:9 28:11,13 32:9 37:17 52:3

Continue 14:19 28:24

contract 31:13

control 11:17,20

conversation 3:13 4:1 7:18 15:14 38:7,10

cool 24:21,24 47:19 48:9 49:8

copays 20:16

copy 2:16

corporate 2:5

correct 29:3 33:25

costs 20:25

counseling 23:1

counting 27:19

counts 31:11,14

couple 30:11 47:12

covered 26:14

cross 19:9,21

crossed 19:8

curiosity 35:25

curious 20:20

current 40:25 41:2

**D**

Dallas 45:20

daughter's 17:16

day 27:20 30:4 38:1 41:8 43:13 45:11 52:9

days 5:1 10:25 27:13 28:9 29:24 30:1,2,15, 16,20,24 31:10 33:2 43:22 51:3

death 17:16

decide 42:9

decides 13:2

Delta 36:24

demand 41:12

demands 31:5

Denver 13:2 34:5,6,8, 17 35:2,21 42:2

departments 39:15

depending 29:24 51:25

depends 35:16

desk 2:20

difficult 14:12

dinner 45:13

dire 21:22

direct 2:6

dis 53:1

disclose 29:2,7

doctor 6:24 47:1

documentation 18:9, 19 52:24

documenting 18:6

double-check 41:18

drop 14:18 15:4 26:3,9 39:19 53:21

drops 27:18

drug 38:13

due 21:11

**E**

early 2:25 45:20

easer 23:7

easy 39:25

EEAP 22:3

email 26:23,25 27:5 49:18 53:15,16

end 8:7 14:15 19:8 24:17 25:9 28:9 50:13 54:13

ended 7:3

evaluating 11:12

event 17:11,25

eventually 41:22

exceeded 27:18

Excellent 26:15 33:6 37:20

exhausted 8:22 9:8 15:22

existed 47:17

expanding 34:3

expire 41:5

explain 27:12

extra 51:4

**F**

face 23:7,8

face-to-face 15:14

Facebook 51:8

fact 10:23,24

Fadia 29:13

family 13:8



BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015   Page 58
REBECCA BRIGHAM v. FRONTIER AIRLINES

feel 49:18

felt 7:19

figure 19:12 47:21 48:6

figured 48:2

file 43:19

final 31:17

finances 23:1

find 32:3 39:2

finding 10:18

fine 3:18 18:12 21:23

fingers 19:8

flexibility 10:10,24 45:18

flight 10:17,20 12:7 35:14,25 42:2 45:4,15 51:8,13

flights 30:12 35:8

flying 14:9

FMLA 8:20,22 15:22 27:15 30:23

FMLAS 25:16 26:3

folks 15:5 36:6

forgot 16:15

forward 5:15 34:13

free 49:18

frequently 39:21

friendships 15:7

Frontier 2:2,5 11:15 20:22 21:3 33:24

Frontier's 20:11

funds 20:20

future 10:10 34:24 44:20

**G**

general 2:2

give 18:4 19:2 24:19 43:1 47:3 49:14,19,22 50:25 51:23 53:15,17

God 48:1

good 3:23,24 4:13 6:7, 23 7:14 15:1 20:6 33:19 38:1 47:8 48:8 54:2,9, 11

grab 3:7,8

Granted 31:4

great 3:25 47:24

grow 3:4

growing 33:24 34:3,8,9 35:3,7

guess 19:9,12,20 25:13 33:4 34:23 40:1 45:1

guys 23:7 25:6 37:6,21

**H**

hair's 4:14

hands 9:25

happen 8:19 17:12

hard 17:17 46:4

he'll 38:24

heading 2:1

health 13:14,17

heard 36:7

heartbeat 51:7

helped 21:15

hey 13:2 16:15 22:9,10 44:14

high 36:13

hiring 35:11 36:21 42:1

hold 2:14,17 11:8 42:5

hole 39:18

home 26:21 30:12

honestly 12:2 44:7 47:22 48:5

Hopely 21:4

hospital 48:18

hostings 39:20

hours 23:20 30:8 52:1

household 24:10

hurt 32:22

husband 13:10,17 23:13

**I**

I.D. 3:5,8

immediately 52:14

incentives 15:5

incidences 9:18

income 24:10

Indie 8:11 30:8

indiscernible 2:8,9,10, 13,16,19,21 3:2,11 4:1, 2,7,11 8:13 9:5 25:22, 23 31:5 33:17 38:9,15, 16,18,21,22,25 40:9,12, 20 42:5,9,10 43:11 44:19 46:10,24 47:15 48:16,17 49:2,14,20 50:17,19 51:11 52:2,7, 18,23,24 53:1,2,18 54:4

inflight 12:5 13:1 39:4 40:20 44:4

inflights 40:8

information 18:4 37:12 47:16

inquired 24:14

instances 43:11

insurance 13:14,17

interesting 36:18 37:4

intermittent 8:20,22 15:22 25:16 26:3

internal 39:3

internally 12:3

interpreters 47:14

issue 13:25

Jeff 29:11

Jerry 4:3,5,6,8,12,14 5:20 6:19,23 7:3,8,13, 15,18,23 8:2,5,9,13,21, 25 9:3,5,8,11,14,17,20, 24 10:2,5,9,12,15,20 11:1,3,6,9,18,22,25 12:4,9,11,14,17,22 13:5,9,12,15,20,23 14:2,6,9,12,14,17,21,24 15:4,7,10,13,17,19 16:1,4 17:13 18:16,19, 22,25 19:4,11,14,19,24 20:1,5,8,14,17,24 21:2, 8,13,21 22:7,14 23:2,5 25:7,19,22 26:4,7,10, 12,15,17,21,23,25 27:3, 5,7,9,12,21,23 28:4,6, 10,15,18,21,24 29:3,8, 12,16,19,22,24 30:2,6, 10,13,16,19,22 31:1,4, 7,12,15,19,22 32:1,3,5, 6,8,11,14,17,20 33:3, 6,8,11,14,17,20 34:1,3, 6,8,11,14,19 35:1,4,7, 11,14,16,21 36:3,5,9, 15,18,20,24 37:1,4,8, 18,20 38:1,2 40:19 53:15

Jerry's 4:16

JJ 29:11

job 10:18

John 2:19

July 33:7

jump 42:4

jumping 36:21

June 2:3

junior 36:5

**K**

Kari 28:16

keel 11:21

keeping 16:16 17:7

kids 13:17 45:9,23

kind 4:17 5:12,20 6:1, 19,24 11:20 14:12,17 15:13 16:16 22:16 25:11 26:5 32:11 33:25



BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015   Page 59
REBECCA BRIGHAM v. FRONTIER AIRLINES

38:21 40:2 44:1,25 47:2
48:1 51:14

**kinds**  39:15 46:20

---

**L**

**ladies**  54:10

**lady**  2:9

**Lakeland**  12:24

**land**  45:22

**lasting**  36:9

**layover**  19:22

**layovers**  5:18 6:12
8:15 11:7,11 40:1

**leave**  9:18 21:12 25:19
28:8,13,14 30:22,23
31:9 33:1 38:4,5 41:7

**leaves**  35:21

**leaving**  36:12

**leeway**  5:3

**left**  29:14 37:2 38:15

**letting**  33:25

**link**  30:7

**links**  39:18

**live**  46:24,25

**LOA**  9:12

**log**  2:10

**long**  18:6 33:18 36:9
40:22 41:2,12 45:11
52:20,23

**longer**  2:10 41:7

**looked**  7:23

**loop**  16:17 17:8 19:17
29:11 32:12 37:15

**lot**  5:16 6:15 8:17 33:14,
17,21 35:19 36:21 45:8,
17,20 48:23

**Lots**  33:15

**love**  10:23 45:6

**loved**  43:24

**luck**  54:2

**lump**  47:3

---

**M**

**main**  13:13 34:13

**maintain**  40:23

**major**  11:13

**make**  6:4 7:4 15:9 21:
11:13 11:14,24 24:19
42:7,15 46:14 51:4

**Makes**  28:4

**making**  14:12

**manage**  15:8

**manager**  28:15 38:22
42:25

**manager's**  12:6 28:19

**managers**  39:4

**matter**  17:14 42:17

**maximum**  9:1

**Medicaid**  23:24 24:5
46:9,10,14

**medical**  21:11 24:14
30:22,23 31:9

**meet**  20:12

**meeting**  15:24 16:16
17:23 37:7 51:22 52:3,
8,13

**meetings**  16:9 17:18
20:5

**million**  40:4

**mind**  31:2

**minimum**  30:23,25
31:1

**minutes**  16:14

**moment**  2:18 17:22
22:17 51:21

**money**  8:17 51:4,12

**month**  8:7 14:3,4,15
17:15,17 19:8 24:11
25:22 30:14 47:15,17,20
47:23 50:13

**monthly**  46:17

---

**months**  14:4 42:19

**morning**  45:20,22

**moving**  5:15 25:22,25

**Myfrontier.org**  39:14

**myfrontier.org.**  39:10

---

**N**

**nature**  7:1

**necessarily**  35:8

**needed**  23:10

**Nice**  39:23 47:19

**night**  30:5 45:24

**Number**  50:4

---

**O**

**offer**  8:17

**office**  2:2,5 12:23

**offs**  53:21

**OJI**  43:7

**one-time**  10:6

**open**  12:15,22 13:6

**operational**  31:5

**opportunities**  10:16

**opportunity**  6:24
12:11 13:1,5

**option**  8:15 9:17 30:19
31:7 39:24 40:1,8 43:6,
8,12,18 44:1,6

**options**  10:13 16:2
22:24 32:15 39:3 45:1
46:22

**ordered**  34:1

**Orlando**  12:15 13:3
33:12 34:17 42:3

**Orlando's**  35:18

**overnight**  8:6

---

**P**

**panic**  51:21

---

**paperwork**  4:17 5:13
43:19 44:4 52:6

**part**  15:2 20:11

**past**  21:11

**paying**  47:23

**payment**  48:24

**pending**  52:6

**people**  21:19 22:11,12
24:10 33:14,15,21
34:17 35:19 42:3 47:14
48:18,23

**percent**  40:17

**perfect**  13:9 18:13,18,
24 19:6 23:11 25:2
27:2,7,16,25 29:23
30:13 32:2,10,22,23
33:3 35:23 37:19 49:11,
15 50:8,11 53:9,22

**periods**  50:1

**person**  7:12 29:20

**personal**  9:18 28:14
33:1

**phone**  23:8 38:5

**phonetic**  19:18 21:25
22:3 29:13 47:10

**pick**  8:18 32:19 45:11,
23 51:11

**picked**  43:24

**piece**  9:15

**pin**  34:21

**place**  21:4

**plan**  48:24

**play**  5:23

**pocket**  38:6

**point**  12:2 19:23 31:11,
14 36:15 44:2,3

**points**  43:11

**pop**  46:21

**position**  10:17,21 12:6
42:16,18

**positions**  12:7

BrighamR_Plaintiff Records 0633 (06.04.15)   06/04/2015   Page 60
REBECCA BRIGHAM v. FRONTIER AIRLINES

possibly 13:6

post 39:21 51:9

pretty 8:15 9:25 15:20 20:22 36:13 42:18

primarily 7:25 35:18 36:5,24

printout 24:19,20 26:2

problem 40:5

process 19:5 42:10,14

program 6:15 19:1 21:2 47:2

programs 22:7

protection 37:15

providing 52:21

pull 7:6 43:14

put 15:5 49:17

**Q**

qualify 8:25 24:20 30:22 46:18

question 20:10 25:14 27:17,23 35:24 39:2 42:8 43:6

questions 24:7 32:7 37:17 40:4 53:10

quick 49:24

quickly 16:13

**R**

Rachel 7:7,9

Rachel's 7:5

randomly 40:19

reach 22:24 32:24 47:9 48:17 52:6

reached 5:6 21:24

reaching 22:10

reason 38:20

reasons 7:5

Rebecca 2:1,23 3:3,6, 10,18,19,20 4:4,6,10,

13,15,16,18,21,25 5:4, 9,11,14,17,19,22,25 6:3,5,7,11,13,16,18,21 7:2,7,8,9,12,14,17,22 8:1,4,8,10,14,24 9:2,4, 6,10,13,16,19,23 10:1, 4,7,11,14,18,23 11:2,4, 7,10,19,23 12:1,5,10, 13,16,18,20,23 13:4,7, 10,13,16,21,24 14:3,8, 11,15,18,20,24 15:6,9, 12,15,18,20,24 16:2,5,8, 9,12,15,18,20 16:2,5,8, 11,18,23 17:3,6,10,14 18:2,5,8,11,13,15,18, 21,24 19:3,6,12,15,20, 25 20:4,7,9,15,18 21:1, 6,9,14,22 22:1,4,11,15, 18,21,23 23:4,6,15,18, 22,25 24:3,8,12,15,18, 21,24 25:2,5,8,13,17, 18,21,24 26:5,8,11,13, 16,18,22,24 27:2,4,8, 11,16,22,25 28:5,7,11, 17,19,22,25 29:4,6,10, 13,18,21,23 30:1,3,7, 11,14,17,21,25 31:3,6, 8,13,16,20,23 32:2,4,6, 8,11,14,17,20,23 33:4, 7,10,12,15,18,23 34:2, 5,7,10,12,15,20 35:2,5, 10,13,15,20,23 36:4,7, 14,17,19,23,25 37:3,5, 9,14,19,21 38:2,4,8,11, 19,23 39:1,7,11,13,17, 23 40:6,10,13,16,21,24 41:1,6,10,15,17,20 42:11,13,20,23 43:3,5, 16 44:9,12,16,18,21,24 45:3,8,15,19 46:4,7,11, 16,19 47:5,7,11,19 48:9,12,15,19,22 49:1, 5,8,11,15,21,24,25 50:2,4,6,7,9,11,18,20, 24 51:3,17,25 52:12,19, 25 53:3,6,9,12,14,19, 22,24 54:1,3,5,8

received 4:19 5:13

recently 21:3

receptionist 40:7

recert 41:9

recertified 5:22 52:13

recommendations 48:8

recommending 18:1

recording 54:13

recovery 11:14 19:23

redeyes 8:11

refer 22:8 47:6

relocation 12:11

remember 23:11

remove 52:5

removed 5:10

rental 47:15

report 30:4,5

requalify 27:13

request 32:25

requirement 20:12,21 48:2

requirements 6:25

requiring 48:3

research 32:1

reserve 34:22 36:10

response 17:23

rest 38:1

revamped 14:10

review 6:24

rid 14:4 25:10 28:12 40:1 41:23

road 15:11 34:16,24

rolling 9:3,7

rule 27:14

run 24:6

**S**

scenario 5:24 24:2 41:13

scenarios 16:25

schedule 4:20 7:24 10:2 14:25

scheduled 16:16

scheduling 52:4

season 14:7

seat 3:2

section 39:14

self-employed 23:14

send 27:9 53:16

senior 11:8 33:19 42:3

seniority 8:3 33:9 42:3, 14

sense 28:4

set 2:19 48:24

she'll 18:22 29:19

Shelly 9:11 53:17

Shelly's 26:21

shoot 26:23

short 20:20

shorter 4:14

shrinks 34:20

sick 43:10

side 16:7,22,24

simultaneously 7:11 12:19 42:12 44:15

sit 47:20

situation 28:23 31:2

six-month 42:15

six-year 17:16

sober 17:19

sometime's 52:1

son 21:15

sort 17:12

sounds 20:1

source 47:9

SPEAKER 2:4,7,12,13, 14,15,17,22 3:4,9,11, 14,16,23,25 54:4,6,11

specifically 22:9

split 48:5