No. 21-1335

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

REBECCA BRIGHAM,
*Plaintiff-Appellant,*

v.

FRONTIER AIRLINES, INC.,
*Defendant-Appellee.*

———————————————

**On Appeal from the United States District Court for the District of Colorado (Civil Action No. 19-cv-03417-WJM-STV, Hon. William J. Martinez)**

---

**APPENDIX – VOLUME 4**

---

John R. Crone
*Counsel of Record*
The Law Office of John R. Crone, LLC
2717 South Forest Street
Denver, CO 80222
(303) 598-3526
john@crone-law.com

*Counsel for Rebecca Brigham*

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Defendant's Motion for Summary Judgment with Exhibits          895-1177

Plaintiff's Response to Defendant's Motion for Summary Judgment   1178-1192

spoken 4:8

sponsor 17:20 52:2

stand 28:2 46:12

start 27:19 28:16 54:6

started 13:11 23:16 38:12

starting 27:20

stated 16:19

stay 3:15 30:8 40:25 41:2

Stephanie 28:20,21,24 29:7,16 32:9 37:14 50:15

straits 21:23

struggle 6:10

struggling 17:22

stuff 17:20 27:18 37:15 39:15 49:18

submit 20:16,19 21:17

submitted 21:18

substance 22:3

sudden 42:5

sum 47:3

Sunday 50:15,16

supervisor 9:12

support 9:24 17:2

supposed 2:24

swap 13:25 15:4

switched 9:6

**T**

talk 17:20,21 28:8 36:1 50:14,15

talking 6:9 7:11 12:19 42:12 44:15 51:20

talks 51:12

tasked 35:11

technically 30:14 51:14

telling 52:22

term 31:17

terminate 31:21

termination 31:18

terms 9:24

therapist 20:12 47:24

thing 13:13 24:17,22 41:9 44:6

things 5:5 7:1 11:16,19 14:17 16:10 20:5 23:20 33:8 46:21 47:1 48:24

thinking 20:10

thinks 43:21

Thompson 28:16

thought 10:16 12:2 36:11

three-day 41:14

throw 11:23 19:16 32:20 40:19 44:13

throwing 23:21

tied 9:25

time 14:15 17:19 21:19 27:14 36:1 45:9,12 46:2 52:23

times 47:13

today 4:23 20:10 43:24

told 2:9 17:15 31:16,24 47:12,17

tomorrow 43:25 47:20

top 39:16

total 30:18

totally 35:24 46:6

touch 3:15,16 6:2 37:10,23 48:6,13 49:10 50:12

transfer 40:2,7,14 41:24 42:22

transferring 12:3

transportation 12:3

treatment 17:1,4

trigger 17:12

trip 7:21

trips 4:23 13:25 14:18 28:14 32:19 41:23 51:10

trouble 43:10

true 22:14 32:17 35:4

turns 7:25 14:1 15:1 45:20

type 20:19 26:19 41:9 46:1

**U**

Uh-huh 2:12 4:21 5:14 8:4 9:23 10:7 11:25 12:10 14:11,16 15:3 16:8,11 18:2 22:4 23:18,22,25 24:3,8,15, 18 28:10 30:21 31:19 34:14 43:15 46:16 48:19 49:20 50:18 51:24

uhhh 19:17

ultimately 28:18

understand 46:6

understanding 33:24

Unfortunatley 5:2

UNIDENTIFIED 2:4,7, 12,13,14,15,17,22 3:1, 4,9,11,14,16,23,25 54:4,6,11

UNIF 21:24

UNIM 47:9

UNIMS 47:12

United 36:24

unknown 35:22

up-to-date 18:19

updated 39:22

urge 52:11

**V**

verify 40:11,18

violations 51:6

**W**

w're 34:2

wait 7:10 12:13

Walking 4:1

wanted 6:1 7:4,6,15 9:21 10:12,15 21:16

website 24:5 39:6

week 11:4 20:13,16 26:11

weekends 45:10

weeks 9:1

weird 30:4

whack 11:24

wings 34:21

wondering 22:5

work 10:25 11:2 15:10 16:20 28:15 30:11 43:19 44:4 45:12 50:15

worked 23:20

working 26:21 28:24 29:16,22

works 40:18 41:7 50:10

wow 35:15 36:17,19,25

**Y**

year 9:3 11:13 26:3 41:4,7

yearly 41:5

years 21:16 45:4

yesterday 4:23 5:6

young 2:9

# #1

June 4th, 2015
TRT 44:12

I am heading into the Frontier Airlines general office.  Its 2:17 on June 4th.

GETTING OUT OF CAR / WALKING INTO GENERAL OFFICE

Thank you for calling Frontier Airlines corporate office. How may I direct your call?
HEAR PHONE CALL / CUSTOMER ASKING QUESTION
PUTTING CUSTOMER ON HOLD

[00:01:33.20]
Hi, I'm here to see Cassandra. I was supposed to be here at 2:30. I am a little early.
ASKING FOR ID -- GOING TO CAR TO GRAB ID

LOBBY ACTIVITY
WAITING

[00:11:56.04]
JERRY:
Hi, I'm Jerry.
I think we might have spoken way back when.

REBECCA: Way back in the day.

JERRY: How are you? Your hair has gotten much shorter.

REBECCA: Yes, I chopped it.

CASSIE: So Jerry is coming in and we have the paperwork that is received.  Based on
your schedule I was able to accommodate and help you yesterday for your trips today and
the next 3 days.  Uh -- unfortunately like I am only a little leeway to do things like that.
So yesterday when you reached out to be based on the circumstances - I was like yes you
definitely need to be removed.

REBECCA: Right.

CASSIE: But now kind of with the paperwork that we received uh -- moving forward like
there is not  whole lot that I can do to help out in regards to the layovers.  Uh -- so that's
kind of where Jerry is going to come into play with that scenario.  So I just kind of
wanted to touch base with you on that.  And make sure that its ok --

REBECCA: You're good.

1

BRIGHAM LM 0000001

EXHIBIT 9
0896

CASSIE: So I know that that's what you were talking about with the struggle with layovers. And it looks like you are doing a lot more with your -- program.

REBECCA: Yes.

CASSIE: I am going to call it. So I'll let Jerry kind of take over from here.

JERRY: So Cassie and I had a good opportunity to kind of review what the doctor had indicated and what the requirements are and things of that nature. So we ended up doing - we wanted to make sure that first let's see and make sure Rachel's ok. So that was one of the reasons what we wanted to pull you off of that...

REBECCA: Rachel?

JERRY: I'm sorry. Rebecca.

REBECCA: I'm like who is Rachel? Do we need another person?

JERRY: 500 apologies. And so we wanted to make sure that you were ok. Uh and so based on the conversation that Cassie had with you we felt that it was definitely urgent for us to get you off that 3 day trip. And so with that said we had looked at your schedule and we see that you've been bidding primarily turns. What we -- based on seniority uh but one of the concerns that we have is you have I think an overnight at the end of this month.

REBECCA: There is two. There is two - I think they're Indy. They are just like the red eyes yes.

JERRY: Are those going to be concerns for you?

REBECCA: Yes. I won't do layovers. So uh -- my only other option is pretty much is if somebody doesn't take it I mean I don't have a lot of money but I can offer like $20 for somebody to pick up or something. Uh and if that doesn't happen then I would use my intermittent off my FMLA.

JERRY: So they did an audit of your intermittent for FMLA and you've exhausted what you've been actually allowed.

REBECCA: Ok.

JERRY: So you can only qualify for maximum of 12 weeks within a rolling calendar year.

REBECCA: Right. Because it switched rolling calendar right?

2

BRIGHAM LM 0000002

JERRY: So you've exhausted that met amount. Uh and that's - so I had Shelly - she's a supervisor of LOA(?) doing an audit and she goes yes unfortunately there is no more for you to use of that piece. [00:14:52.01] Uh your only other option would be to apply for a personal needs for those incidences. But that aside, the biggest concern - we wanted to make sure is what can we do to better support you uh in terms of -- our hands are pretty tied with trying to do schedule adjustments and as Cassie said that was a one time ability for us to do that.

REBECCA: And I appreciate it.

JERRY: And I am not sure we would be able to have that flexibility in the future.

REBECCA: Right.

JERRY: And so we wanted to see what other options might be available to you. And I kind of wanted to see what you thought about maybe other opportunities or is the Frontier position --

REBECCA: Like finding a new job you mean?

JERRY: Or just is the flight attendant position the one for you given what you are going through right now?

REBECCA: Uh, I love the fact that it has so much flexibility and the fact that I can work 5 days or I can work 1 in a week. Uh that for me is awesome. Uh the layover -- no question I am not senior enough to hold that. So that's the one like I won't do layovers. So its -- then it does come down to -- evaluating ok uh -- they say not to make any major changes in the first year of recovery if you can help it. [00:16:04.12] Now, if Frontier were to go under - not that I think it would - then those are things that are beyond your control. Uh but if there are things that you can control and kind of keep it an even keel - so you don't throw yourself out of whack uh -- so I have not honestly - at one point I had though about transferring internally into the company. Uh into like an in flight manager position or something like that, however there is no in flight uh positions available. [00:16:36.01] Uh --

JERRY: Well let me ask you is your location an opportunity? Is that something that --

REBECCA: What do you mean?

JERRY: So they just announced they are going to open up a base in Orlando.

REBECCA: Oh yes.

JERRY: So I don't know --

REBECCA: No.

BRIGHAM LM 0000003

JERRY: In Flight supervisor - that will open up.

REBECCA: Is there an office is like -- Lakewood? No.

JERRY: So that would be an opportunity in In Flight unless somebody from Denver decides to say I want the Orlando. And then there's an opportunity possible that might open up.

REBECCA: Right and yes right now with my family and my husband just started his own business so and my main thing also is health insurance. I mean I have to carry health insurance for my husband and the kids. And of course myself, but I am more concerned about them. Uh so yes, I just - I don't know where to go from here. Before it wasn't an issue. I was always able to swap my trips out for turns. Uh -- but last month and this month were the months where I could not get rid of them.

JERRY: Especially now that we are going into our busy season. The way the flying has been completely revamped. Its kind of making it difficult.

REBECCA: Yes.

JERRY: Let's do this. Since we got a bit of time before the end of the month of June uh kind of see how things are going. See if you can drop those trips, continue what you are doing with your bidding because I did see - we were looking at your schedule and we see that you get a good chunk of turns for the most part. [00:17:56.02] See if you can drop and swap or maybe put incentives out there for folks who may take those trips from you so you can manage that better and hopefully that will work for you down the road.

REBECCA: Ok.

[00:18:09.10]
JERRY: So we just want to kind of have that face to face conversation.

REBECCA: Yes that is awesome.

JERRY: If there is anything else that we can do?

REBECCA: No, that's pretty much my only area of concern and then now that I've exhausted my intermittent FMLA -- uh -- what am I going to do if something arises where I need to get to a meeting rather than get on the airplane - what are my options going from there?

JERRY: Kick it to Cassie.

CASSIE: So if it is something where you have to be compliant on their side in regards to meetings and things like that -- I mean its something that you have to bring to my

4

0899

BRIGHAM LM 0000004

attention as early as possible. It can't be like 5 minutes before - hey I forgot or hey you know I scheduled this meeting. Kind of keeping me in the loop as well because you know like we stated in the very beginning when we bring you back to work like it says you have to be compliant on their side as well as our side. [00:19:06.00] So I mean in those scenarios yes we want to make sure that you're getting the treatment that you need and that we're here to support you you know to get the treatment that you need, but its just keeping me in the loop to make sure that I am aware of what's going on as well.

REBECCA: Because sometimes like something will -- some event or something will happen that will sort of trigger me uh no matter what it is. Like last month like I told you it was the 6 year anniversary of my daughter's death. And that -- was oh my gosh it was such a hard month and I went to so many meetings and it was my first time going through it sober. [00:19:44.15] So uh -- so when it comes to stuff like that uh -- when I talk to my sponsor and I talk to her about what's going on and what I am struggling with at the moment and her first response is always get to a meeting. Get to one now. Uh --

CASSIE: In the event that that happens and that's what she is recommending - I don't know show she is and you don't have to give that information uh -- as long as she is documenting as well --

REBECCA: Ok.

CASSIE: She has her documentation. I have my documentation and it comes together you should be fine.

REBECCA: Ok. Perfect.

JERRY: Definitely keep communication with Cassie.

REBECCA: Perfect.

JERRY: That way she is up to date with what is going on. But she will definitely be your point of contact.

REBECCA: Perfect.

JERRY: Is there anything outside of the program or anything like that you can always give me a call. Uh and I can try and help you through that process as well.

REBECCA: Ok. Perfect. Uh so yes I think that -- we will just keep our fingers crossed for the end of the month I guess. Cross that bridge when it comes if - yes. I don't know -- what to do. I guess we will figure it out.

JERRY: It's all we can do.

BRIGHAM LM 0000005

REBECCA: Right and I don't want to - you can throw yourself for a loop if you think too far ahead like oh -- so -- so yes I guess we will just cross that bridge when it comes uh -- but I know that I will not do another layover at this point in my recovery. I just --

JERRY: But it sounds like you are doing everything that you need to take care of yourself. Including meetings and things like that which is good.

REBECCA: Yes.

JERRY: Keep on that.

REBECCA: And then my other question - I was just thinking of today uh so for me to be compliant uh part of Frontier's requirement was that I meet with a therapist once a week. Uh is there any way to submit because my co-pays are 55 dollars a week. Is there a way to submit to get any type of help with that uh when funds are short? Uh -- I was just curious because it is a requirement if that is something that Frontier would help out with or if I am pretty much --

JERRY: Unfortunately we don't -- we don't reimburse for those costs. But there is a program, which I just recently came back to Frontier, is the Hope League still in place?

CASSIE: I think it is because I --

REBECCA: I did and I applied for that and uh -- I got nowhere with that. Uh I had gotten some assistance with some medical uh -- not past due, but when I was on leave - when I went on leave uh for my son when he was born they had helped me out so it was within the 2 years. They wanted me to still submit for help uh but they said that based on what I submitted uh -- they weren't able to help that time. There were other people that were a little more dire straits which is fine.

CASSIE: Have you reached out to Unum(?) Because I know that they are like our substance abuse or EAP but I am wondering if they have anything --

JERRY: Any programs?

CASSIE: Or could like refer you to like hey you know we don't specifically but hey you might try reaching out to --

REBECCA: To these people --

CASSIE: To these people and they could help?

REBECCA: Ok that's awesome. Ok.

CASSIE: They are kind of the only ones I could think of at the moment.

BRIGHAM LM 0000006

REBECCA: Ok.

CASSIE: If I think of some more ideas --

REBECCA: Then let me know.

CASSIE: I'll let you know.

REBECCA: For sure, because I can reach out to Unum and see what options are out there for them to help cover some of the finances with counseling.

JERRY: Ok. All right that is it.

REBECCA: Ok. Awesome.

JERRY: Thank you for coming in.

REBECCA: Yes, no thank you guys. Uh it's so much easier to have a face to face rather than over the phone. Uh -- trying to think if there is anything else I needed to ask? Of course, I don't remember.

JERRY LAUGHS

REBECCA: Ok perfect.

CASSIE: I don't know -- like your husband because you say he is self employed and just started his business and then with you I mean I don't know like hours worked and things like this - I am just throwing this out there, but I know that if you contact like Medicaid and you tell them your scenario - there is - I think even on the website like if you go to Medicaid - it will run you through and like ask you all these questions. It asks you like how many people are in your household uh -- the income for the month and if you've just had a baby. If you've inquired medical bills. Like it brings you like this whole thing and then at the very end it will give you a print out and that print out says what you can qualify for.

REBECCA: Oh cool.

CASSIE: So that's another thing that I can think that might help you as well.

REBECCA: Ok. Perfect.

CASSIE: But yes if I think of any more I will let you know.

REBECCA: Well thank you guys so much. And then I will just be in contact with you at the end of the month if I am not able to get rid of those and then just kind of see what to

7

0902

BRIGHAM LM 0000007

do I guess. And then my other question and I think that -- because uh with her doing the audit is it going to go back and take out some of those intermittent FMLAs?

JERRY: No.

REBECCA: Ok.

JERRY: So we - I asked her to leave everything as is. So as of June 4th.

REBECCA: Right. Exactly. So moving forth - uh and then any way that we - I can get a uh -- print out or whatever from her to see when intermittent FMLAs drop off from last year?

JERRY: Yes.

REBECCA: That way I can kind of -- have that because if I have like 4 that are going to drop off like next week than I know that those two are covered. Just in case. So if while I'm here if I could try and get some type of something like that or even --

JERRY: Shelly is working from home so I have to shoot her an email. But I can have her email that to you.

REBECCA: That's perfect.

JERRY: Do you have her email address?

CASSIE: Yep.

REBECCA: Excellent.

JERRY: So I will have her send you the breakdown uh and then I will have her explain when you would re-qualify or what days would roll off where you would get some additional time added to your FMLA.

REBECCA: Ok. Perfect. And then my other question is going to be her is -- even though I am exceeded as stuff drops off do we just start counting these or are we just starting over from this?

JERRY: Let me check with her. That's a question that she would have to answer.

REBECCA: Ok. Perfect. Yes if you could just check with her on that -- just so I know exactly where I stand with that.

JERRY: Ok makes sense.

BRIGHAM LM 0000008

REBECCA: And then -- would I also talk to leave of absence to do like let's say at the
end of the month those two two days uh and then I contact you like I haven't been able to
get rid of them uh -- how do I -- do I contact leave of absence to do a personal leave for
those trips.

JERRY: And you don't work with your manager Kerri Thompson? I would talk to her
first.

REBECCA: And I think my manager is Stefanie. She's the one that knows -- my
situation.

JERRY: Continue working with Stefanie.

REBECCA: Ok.

CASSIE: I was going to say you don't have to disclose anything like you just --

REBECCA: Ok. And I did disclose to Stefanie so she knows she is the loop. JJ knows
and Jeff knows. And (?) did until she left, but those are the ones I would like to keep
them --

JERRY: Just keep working with Stefanie.

REBECCA: Ok.

JERRY: She will definitely be your best person to work you through that.

REBECCA: Ok. Perfect.

JERRY: Uh depending - how many days were those going to be?

REBECCA: They are just two days.

JERRY: Because I think --

REBECCA: They were the weird like report day where you report at like 11 something at
night. And then you do the one leg to Indy. You stay for like 10 to 12 hours or whatever
and then work a couple flights home. So technically its two days. So that would be 4
total.

JERRY: The other option if you come across one or maybe its 4 days --

REBECCA: Uh huh --

JERRY: To qualify for a medical leave - non FMLA medical leave it has to be a
minimum of three days.

9

0904                                                        BRIGHAM LM 0000009

REBECCA: Minimum of three. Ok.

JERRY: Minimum of three. Keep that in mind. If you come across a situation -- granted these are still based on operational needs being met but that still gives you an option.

[00:27:27.11]
REBECCA: Uh and then my other concern though with going on a medical leave even if it's for that just 4 days or whatever uh that counts as a point.

JERRY: Oh!

REBECCA: As per our contract - it counts as a point. Now I have been told uh that -- if you get to the final term - or to the termination they will take those away. Uh -- before they can actually terminate you. I mean that's what I was told. I don't know if that's actually accurate or not. [00:27:54.20]

JERRY: Let me research that for you.

REBECCA: Ok. Perfect.

JERRY: And I will find out. I need to know for myself. Ok, any other questions.

REBECCA: No that's it. I think I will contact Stefanie and see uh -- and just kind of let her - that way she is the loop a little bit too.

JERRY: Maybe she has other options that she can think of or maybe she has somebody that knows that might pick up those trips from you.

REBECCA: Right exactly. Throw it out there.

JERRY: Perfect.

REBECCA: Perfect. And then I also am going to reach out to her about uh -- that I may have to still request for personal leave for these - for those two two days. Yes, and then I guess do my bid and see what I get for July.

JERRY: Excellent. All right and maybe things change where your seniority goes up and --

REBECCA: Right, well with the Orlando base I mean --

JERRY: There is a lot of --

REBECCA: Lots of people that want to go.

10

0905

BRIGHAM LM 0000010

JERRY: There's a lot of people --

REBECCA: And as long as they are senior to me I am good.

JERRY LAUGHING: You never know but there is a lot of people that will commute right now so it might --

REBECCA: Exactly. But from my understanding Frontier is not growing correct?

JERRY: We just ordered 12 aircraft. And so yes so we are not expanding, but we are growing quite a bit.

REBECCA: Ok. In Denver?

JERRY: In Denver. Uh -- growing and I don't know in Denver - growing as a company.

REBECCA: As a company. Because my main concern also going forward from here and this is way down the road, but I mean if they are not going to grow Denver and people are going to Orland or whatever and it shrinks. I mean I will have to pin up my wings if I ever go back on reserve because there is no possible way to do any of that. Uh so I guess that was just a future way down the road - don't want to think too much about it, but uh if Denver is not growing then -- that's something else I have to consider.

JERRY: I know we are growing but I don't know where those flight attendants are going to be.

REBECCA: Right.

JERRY: Because we are tasked to hiring 500 flight attendants so uh --

REBECCA: Wow!

JERRY: So it depends on where they are going to be based. Right now it looks like Orlando is going to be primarily where a lot of people are going to be going. Where that leaves Denver its unknown.

REBECCA: Ok. Perfect. And the my other question which is totally just curiosity uh -- somebody - I mean of course, flight attendants we like to talk all the time is attrition really all that bad right now?

JERRY: Yes, unfortunately. And it's primarily the junior folks. They are not lasting that long. They come on board and the reserve is not what they thought it was and as soon as they come in they are -- they need quite a bit but the attrition is pretty high. Uh to the point where we can't even keep them.

REBECCA: Wow.

BRIGHAM LM 0000011

JERRY: So yes it's interesting. And with all the other airlines hiring a lot of them are jumping to the big carriers primarily Delta and United.

REBECCA: Which is wow --

JERRY: Yes, quite a few have left. But it is what it is.

REBECCA: I know right. What can you do? All right well thank you guys so much for meeting with me and yes I will just be in touch with you like as -- I need to.

CASSIE: And then now that I know that she has your information like I will just --

REBECCA: Stefanie is in the loop on all that stuff.

CASSIE: Ok. And then if you come up with any questions or concerns you know just contact me or Jerry and we will help you out.

REBECCA: Ok. Perfect.

JERRY: Excellent. Thank you so much.

REBECCA: And I will just be in touch with you whenever.

JERRY: Have a good rest of your day.

REBECCA: Thank you.

I can keep my phone in my pocket?

WALKING

Yes thank you. TALKING WHEN WALKING -- it will just be easier. I can't speak to their side -- so that's...

REBECCA: I know when I first started was like a drug -- administrator whatever.

CASSIE: When he left the company he took over -- so I know you were kind of in the --

REBECCA: And then my other question is how do I find out if there are any other options for FMLA transfers besides like in flight managers? I mean --

CASSIE: Did you check the website?

REBECCA: I don't. Is it just --

12

0907

BRIGHAM LM 0000012

CASSIE: So if you go to -- MyFrontier.org.

REBECCA: Ok so it's on that.

CASSIE: Yes, MyFrontier.org on the section there is like departments -- all kinds of stuff across the top. There is a whole bunch of links. There's a drop down that says all of our postings. You should be able to see them. I don't know how frequently they post them or when its updated but I know they are there.

REBECCA: Ok because that is -- and if its not looking like its going to be easy at all to get rid of layovers -- I guess that's an option is to kind of transfer somewhere else and then I don't know -- sorry your time. Like if I were to transfer out to reception ok uh do I have the option of going back to in flight.

CASSIE: So -- I'm going to because we don't want to tell you indirectly - you do a transfer and then you say you want to go back to the line --

REBECCA: Right.

CASSIE: So -- I'm not 100 percent sure how this works and I will verify it with Geri, but I can also just randomly throw it out there to in flight and ask uh -- I believe as long as you maintain your certifications -- and stay current or -- get them -- as long as you stay current you're ok. So let's say you've been gone for a year because I think its -- did they expire yearly.

REBECCA: Well the way that it works is if you are on leave longer than a year you have to do like a three day training.

CASSIE: Like a re-cert type thing.

REBECCA: Yes.

CASSIE: So I think in that scenario as long as there was the demand for them you would go back but you would go through that three day first to get everything I believe. But I will double check that for you.

REBECCA: Ok. Awesome. Because I am just - because if I were to eventually like lets say next month that is all I get are trips and I can't get rid of them uh and then if I were to transfer somewhere into the company I would just want to know that when like let's say after hiring all these flight attendants and then Denver like a bunch of people go to Orlando - my seniority would jump up you know and then all of the sudden I'd be able to hold turns - I would much rather probably go back to the line. [00:34:47.03] So I would want to make sure that --

CASSIE: So your question is -- you know to a position and then you decided to go back. What that process is and if you --

13

0908

REBECCA: How long if I keep my seniority and what the process is like -- do you have to make like let's say a 6 month commitment at the other position?

CASSIE: I think that no matter what it is like your position I am pretty sure it is 6 months because we don't allow anybody to transfer.  Unless there is like a circumstance where a manager is like no it's approved - like they give their approval but those are like few.

REBECCA: Ok.

CASSIE: When that happens.

BECKY: And then my other question is - is there an option for you know how like OJI. You come to the GO and you do whatever.  Is that ever an option if they're - like lets say because I don't want to get in trouble. I don't want to get these sick instances or they used to be instances - points. You know is there ever an option that if it comes to down to it - like this 3 day that I had you pull me off of -- uh like let's say that happens again -- let's say its next month or whatever I mean is there an option for me to come work at the GO and file paperwork or something. That way its not like anybody - nobody thinks that I am like oh she just wants these days off so she is trying to get out of it because that's not it at all. I mean I would have loved to have to picked up a turn today and tomorrow. You know what I mean? But is that an option to kind of that way I can still get - it wouldn't be like a point. Like instead of getting a point I would come to the GO and or in flight and file paperwork. Whatever it may be. I don't know if that is actually an option, but --

CASSIE: And I honestly don't know but that's another thing that I can ask.  And just kind of throw it out there - I mean I am not going to say it and ask it on your behalf. I am just going to throw it out there and say hey -- say it happens in the future like is it something that we can do? And then I can definitely let you know that one as well.

REBECCA: Ok. Awesome. And I just kind of want to know like all of my options I guess you know -- just like -- because I've been a flight attendant for 8 years. I don't know what else I'd want to do you know like I love it.

CASSIE: Yes.

REBECCA: I get a lot of time with my kids. Like I wouldn't get that with a 9 to 5. I'd get like the weekends you know and its like picking them up after a long day of work and you know like have just enough time to do dinner, bath, bed.  You know.  As a flight attendant is like --

CASSIE: You have a lot more flexibility.

REBECCA: Yes.  And like I have been doing a lot of those early morning Dallas turns where I mean you have to be at the airport at 5 in the morning, but I land at 10:30 so then I just go - I can pick up my kids. We've got the whole afternoon and whole night together

14

BRIGHAM LM 0000014

so it's like yes I don't know what else I would want to do. That would allow me that type of time. You know? So it's hard to -- know what to do.

CASSIE: I totally understand. I would definitely -- I would go -- even though -- apply for Medicaid --

REBECCA: See where we stand.

CASSIE: And also like even if you want to apply for Medicaid - you know what I mean because you don't make a certain amount within a month - you can qualify for it. But then there is all kinds of things too you know what I mean like that pop up on there -- solutions. And so like it could say you know like you could go to your - I don't know where you go - but let's say Littleton - you go to them and you ask for assistance with doctor bills and things like that - there might be some kind of program where they say you know we can give you like a lump sum to put towards that or like we can refer you or you know they could probably be a good source, but I would also reach out to Unum because Unum is - a couple of times like oh no its not just that like we have interpreters. We have like people who can help you like in the event that you need a rental car. Just like a whole bunch of information they told us that I didn't even know existed with them.

REBECCA: Nice. Well cool. Yes I will definitely. Yes tomorrow I will probably sit down and figure out -- where to -- you know because I mean honestly its like \$220 a month that we are paying for me to see a therapist and its great, but I am like its so breaking the bank right now and I am like oh my god and I just kind of figure since it was like a requirement I am like well maybe they would since they are requiring it maybe they would take care of some of it - like split the bill with me, but honestly I will get in touch with you and then figure it out. [00:39:31.12]

CASSIE: See what they have and they might have some good recommendations too. And if I think of any I will definitely keep in touch with you and let you know. I can't think of them off the top of my head. I might reach out to some of my you know people that are in the hospital and just like ask them what they do.

REBECCA: Ok.

CASSIE: With people. You know a lot of them they set up like payment plans and things like that but some of them - oh you had these - this company or this group -- just have her apply.

REBECCA: Ok cool.

CASSIE: So I will definitely keep in touch with you on that.

REBECCA: Awesome. Thank you so much Cassandra.

CASSIE: If you run into anything - give me a call. If I don't answer leave me a message.

15

0910

BRIGHAM LM 0000015

REBECCA: And then so what I will do is if you don't want to call me later and you just want to put all this stuff in an email and just feel free to do that or you can give me a call too.

CASSIE: Do we have your personal email? Because I know you guys don't have the --

REBECCA: Right. Oh I don't know. Let me give it to you really quick. It's uh Rebecca Brigham.

CASSIE: No periods -- all together. Ok.

REBECCA: No the number 4 -- at gmail.com.

CASSIE: Ok perfect. That works.

REBECCA: And then uh yes I will just be in touch with you uh towards the end of the month and let you know where we are at for those and then I will talk to Stefanie. I work again Sunday so I will talk to her on Sunday.

CASSIE: Because I don't know -- I hope I am not overstepping boundaries, but if there is somebody who -- can you give them...

REBECCA: Not if they are actually on -- like -- if they are on reserve -- right if they are on call I can't give it to them - the only way for them to take it is if I call in. But if they are on days off and they want to make extra money and they are not going to do one of the one ends that is violation then they can pick it up in a heartbeat. So what I think I am going to do - we've got like a flight attendants Facebook page or whatever so I will probably post the two trips on there and just say $20 and then you file if you can pick either one of these up. Because money talks with flight attendants. I am like oh I could use $20 and its only technically kind of a fund -- so yes. So I think I am going to do that and just hopefully you don't have to do that and then if it does come down to like what I was talking about in there if like there is like a - panic moment or I -- uh I will just give you a call first. [00:42:04.20] Uh depending on like -- sometimes it's like three hours depression. And my sponsor will be like get to the meetings. Do you want me to contact scheduling very first so that they can get somebody to cover it. Like and I will just say remove pending paperwork and then reach out to you -- and then I can get -- of course my phone will say something that you know meeting this day because she probably won't tell you exactly what is going on. But it was my recommendation that she told me immediately and then I can get that on to you. And then -- I don't know how to have that code you know what I mean like --

CASSIE: That is something - like how to code that because as long as like she is providing something because you are being compliant with what she is telling you at the time. So as long as there is documentation that she -- over to me. Then -- like ok she did

BRIGHAM LM 0000016

what she was supposed to do compliant now do what do we do. You know what I mean
to call it -- affecting you or hurting you.

REBECCA: Ok. I think that is it for questions. Well thank you.

CASSIE: You're welcome.

REBECCA: And then if you could give that email to Jerry and have him just send me an
email or whatever.

CASSIE: You know give it to Shelly so that way she can look at your FMLA and so you
know about it also.

REBECCA: Perfect. Thank you so much.

CASSIE: Good luck.

REBECCA: Thanks.
[00:43:37.16]

GETTING IN CAR AND LEAVING

17

0912

BRIGHAM LM 0000017

Jun 02 15 08:38a        COMANCHE CROSSING LLC                    3036229201                    p.1

Comanche Crossing Counseling, LLC
Marla M. Madrid, LCSW
P.O. Box 554
Strasburg, CO 80136
303.622.9280 (o) 303.622.9201 (f)

**Fax Cover Sheet**

DATE: _2 June 2015_

ORIGINATOR: _Marla M. Madrid_

TO: _LOA Coordinator_

FAX NUMBER: _720.374.8013_

CONFIRMATION: _303.622.~~6982~~ 9280_

NUMBER OF PAGES: _5_

(INCLUDING THIS ONE)

MESSAGE/SUBJECT: _____

_____

_____

_____

CONFIDENTIATLITY NOTE: This fax transmission and accompanying documents contain information
belonging to the sender, which may be confidential and legally privileged. This information is intended
only for the use of the recipient, and any disclosure, copying distribution, or action taken in reliance
on the recipient as prohibited. If this transmission is received in error, please call me collect to arrange
for a return of the document at my expense. Thank you.

FRONTIER AIRLINES (R. BRIGHAM) - 0004175

EXHIBIT 10

**FRONTIER**

Frontier Airlines, Inc.    P 720.374.4245    lca@flyfrontier.com
Frontier Center One    F 720.374.8013
7001 Tower Road
Denver, CO 80249

## CERTIFICATION OF HEALTH CARE PROVIDER FOR
## EMPLOYEE'S SERIOUS HEALTH CONDITION
## (FAMILY AND MEDICAL LEAVE ACT)
## INTERMITTENT LEAVE OF ABSENCE

Frontier Contact: LOA Coordinator
LOA@flyfrontier.com

### EMPLOYEE INFORMATION

#### TO BE COMPLETED BY EMPLOYEE

**EMPLOYEE:** Please complete this section before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. Per 29 U.S.C. §§ 2613, 2614(c)(3), if requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. Per 20 C.F.R. § 825.313, failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request.

Employee Name: Rebecca Brigham        Employee ID #: 413206

Employee Phone: 303-913-6370        Job Title: Flight attendant

Manager: Stephany C.        Base/Location: Den

### MEDICAL CERTIFICATION

#### MEDICAL PROVIDER IS TO COMPLETE PARTS A AND B AND ANY ADDITIONAL INFORMATION

**MEDICAL PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

THE GENETIC INFORMATION NON-DISCRIMINATION ACT OF 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information", as defined by GINA, includes an individual's family medical history, the results of an individual's or their family member's genetic tests, the fact that an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual.

Page 1 of 4

# FRONTIER

## PART A: MEDICAL FACTS

Approximate date condition commenced: _June 2014_

Probable duration of condition: _Lifetime Recovery_

Date(s) you treated the patient for condition: _1-2 x per week until 9/7/14 ; 1 x per week currently._

1. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?  ☐ No  ☒ Yes

   If yes, dates of admission: _Sept. 7, 2014 – Nov. 7, 2014_

2. Will the patient need to have treatment visits at least twice per year due to the condition?  ☐ No  ☒ Yes

3. Was medication, other than over-the-counter medication, prescribed?  ☐ No  ☒ Yes

4. Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?  ☐ No  ☒ Yes

   If yes, state the nature of such treatments and expected duration of treatment: _psychiatry_

5. Is the medical condition pregnancy?  ☒ No  ☐ Yes

   If yes, expected delivery date: _____

6. Use the information provided by the employer to answer this question. If the employer does not provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to their condition?  ☒ No  ☐ Yes

   If so, identify the job functions the employee is unable to perform: _____

7. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   _Update: Rebecca continues to struggle with cravings for alcohol and vulnerable situations are challenging. Relapse prevention continues to be the priority in treatment as she has noticed desire has increased as home life is stressful as she continues to adjust (CONTINUED ON NEXT PAGE) to sobriety._

Page 2 of 4

0915

# ≡FRONTIER

## PART B: AMOUNT OF LEAVE NEEDED

1. Please indicate if any of the following apply to the patient:

    ☑ They will experience intermittent incapacitation that will require FMLA Leave

    ☑ They will require treatment appointments for their condition

2. Please detail below based on your previous answer:

    • If you indicated that the patient will experience ***intermittent incapacitation*** requiring FMLA Leave, based upon the patient's medical history and your knowledge of the medical condition, please ***estimate the maximum frequency and duration*** of intermittent leave time they might require. Note that terms such as "indefinite, unknown, n/a and undetermined cannot be accepted and will result in a denial of the leave request:

    <u>12</u>      ☐ hours    per    ☐ day       ☐ quarter
    *(Number)*   ☑ days              ☐ week      ☐ year
                                     ☑ month

    Please indicate the beginning and ending dates for the period of intermittent incapacitation:

    **Begin (mm/dd/yyyy):** <u>05/01/2015</u>    **End (mm/dd/yyyy):** <u>11/01/2015</u>

    • If you indicated that the employee will need to attend follow-up treatment appointments, is it medically necessary for the employee to be absent from work to attend these appointments?
    ☐ No        ☑ Yes

    If yes, please estimate treatment schedule:

    Frequency: <u>1 x per week; group 2x per week.</u>

    Length of Appointment (including any recovery period): <u>2 hours +</u>

    If yes, please also provide a general description of this regimen (e.g. Physical Therapy,

    medication administration, etc.):

    <u>Rebecca is receiving support to prevent relapse. She is</u>
    <u>now in her 8th - 9th month of sobriety and her increase</u>
    <u>of cravings is frightening her. She is increasing face</u>
    <u>to face time in individual, group, and sponsorship arenas.</u>

*(CONTINUED ON NEXT PAGE)*

Page **3** of **4**

0916

FRONTIER AIRLINES (R. BRIGHAM) - 0004178

# FRONTIER

**ADDITIONAL INFORMATION (Please identify the question number with your additional answer):**

Rebecca and husband are adapting the various stages in recovery. Within the next 6 months she will work diligently at being proactive in reaching out to supports as she is doing now, she will have reached a milestone in recovery (1st anniversary in sobriety), and will have crafted further her self-regulation skills. Additionally, after a year of sobriety she will undergo full physical exam and the hope is that her mindset is strong and changed.

Marla M. Madrid, LCSW

Signature of Health Care Provider

28 may 2015

Date

| | |
|---|---|
| Provider's Name (printed): | Marla M. Madrid |
| Business Address: | P.O. Box 554 |
| | Strasburg, CO 80136 |

Telephone: (303) 622-9280          Fax: (303) 622-9201

Type of practice / Medical specialty: Behavioral Health - Private Practice

0917

FRONTIER AIRLINES (R. BRIGHAM) - 0004179



| Name: Rebecca Brigham | Claim #: 413206 IFM SELF | Doctor: Madrid, Marla |
|---|---|---|
| Phone: REDACTED | Date: 6/22/2015 LOA - FMLA Self | Phone: (303) 622-9280 |
| Job: Flight Attendant | Body Part: | Specialty: |
| Site: DEN Inflight | Nature: NO EXCEPTIONS | Adjuster: |
| Status: Left Employment/Termination | Status: Closed/Closed | Phone: ( ) - |

| « | Employee | Job/Site | Shift/Wage | Claim | Work Status | Claim Status | Notes | » |

Social Security #  REDACTED

Birthdate  REDACTED  Age 31

Last Name  Brigham

Sex  Female

First Name  Rebecca

Marital Status  Married

Middle Name  Leigh

Dependents

Home Phone  REDACTED

Education

Work Phone

Language  English

Address  REDACTED

Email  REDACTED

REDACTED

Employee Name

| Name: Rebecca Brigham | Claim #: 413206 IFM SELF | Doctor: Madrid, Maria |
|---|---|---|
| Phone: REDACTED | Date: 6/22/2015 LOA - FMLA Self | Phone: (303) 622-9280 |
| Job: Flight Attendant | Body Part: | Specialty: |
| Site: DEN Inflight | Nature: NO EXCEPTIONS | Adjuster: |
| Status: Left Employment/Termination | Status: Closed/Closed | Phone: ( ) - |

| « | Employee | Job/Site | Shift/Wage | Claim | Work Status | Claim Status | Notes | » |

Job  Flight Attendant

Supervisor  Rush, Laura

W/C Class  Crew

Site  DEN Inflight

Title  FA

Phone  (303) 342-7707

Date of Hire  05/24/2007

Fax  ( ) -

State of Hire  CO

Address  8700 Pena Blvd
Gate 38
Denver, CO 80249

Started Position  05/24/2007

Section

Division  Crew

Employee #  413206

Company

FRONTIER AIRLINES (R. BRIGHAM) - 0004809

EXHIBIT 11
0918

**Name:** REDACTED
**Phone:**
**Job:** Flight Attendant
**Site:** DEN Inflight
**Status:** Left Employment/Termination

**Claim #:** 413206 IFM SELF
**Date:** 6/22/2015 LOA - FMLA Self
**Body Part:**
**Nature:** NO EXCEPTIONS
**Status:** Closed/Closed

**Doctor:** Madrid, Marla
**Phone:** (303) 622-9280
**Specialty:**
**Adjuster:**
**Phone:** ( ) -

| « | Employee | Job/Site | Shift/Wage | Claim | Work Status | Claim Status | Notes | » |

| | |
|---|---|
| Days Per Week | 0 |
| Hours Per Shift | 0 |
| Average Hours | 75 |
| Shift Begins | 12:00:00 AM |
| Shift Ends | 12:00:00 AM |
| Normal Shift | Day |
| Variations | |

| | |
|---|---|
| Employment Status | Fulltime |
| Wage/Salary | |
| | |
| Variations | |
| Average Pay | |
| Value of Pay in Kind | |
| Allowable T/L Payment | |

**Days Off**  ☐ Sat  ☐ Sun  ☐ Mon
☐ Tue  ☐ Wed  ☐ Thu  ☐ Fri

☐ Secondary Job
☐ Officer/Partner

---

**Name:** REDACTED
**Phone:**
**Job:** Flight Attendant
**Site:** DEN Inflight
**Status:** Left Employment/Termination

**Claim #:** 413206 IFM SELF
**Date:** 6/22/2015 LOA - FMLA Self
**Body Part:**
**Nature:** NO EXCEPTIONS
**Status:** Closed/Closed

**Doctor:** Madrid, Marla
**Phone:** (303) 622-9280
**Specialty:**
**Adjuster:**
**Phone:** ( ) -

| « | Employee | Job/Site | Shift/Wage | Claim | Work Status | Claim Status | Notes | » |

| | |
|---|---|
| Claim # | 413206 IFM SELF |
| Claim Type | LOA - FMLA Self |
| Injury Date | 06/22/2015  Monday |
| Injury Time | |
| Body Part | |
| | |
| Nature | NO EXCEPTIONS |
| Cause | |
| Object | |

| | |
|---|---|
| Date Employer Notified | 02/06/2015 |
| Date Last Worked | |
| Time Left Work | |
| Claim Assigned To | |
| Date Assigned | 12/18/2014 |

☐ Body Part Injured Before
☐ Lost One Full Day
☐ Full Pay For Day of Injury
☐ Salary Continued

FRONTIER AIRLINES (R. BRIGHAM) - 0004810

**Name:** R_____ _____m
**Phone:** REDACTED
**Job:** Flig__ _____
**Site:** DEN Inflight
**Status:** Left Employment/Termination

**Claim #:** 413206 IFM SELF
**Date:** 6/22/2015 LOA - FMLA Self
**Body Part:**
**Nature:** NO EXCEPTIONS
**Status:** Closed/Closed

**Doctor:** Madrid, Marla
**Phone:** (303) 622-9280
**Specialty:**
**Adjuster:**
**Phone:** ( ) -

| « | Employee | Job/Site | Shift/Wage | Claim | Work Status | Claim Status | Notes | » |

☐ OSHA Recordable ☐ Privacy Concern Case

Report of Injury Filed [          ]

Type of Case [              ▼]

Estimated Restricted Release [          ]

Date of Death [              ]

Estimated Return to Work [          ]

| Status ▲ | Detail | Date | Days | Lost | Away | Restr. |
|---|---|---|---|---|---|---|
| Full Duty | Accomodated | 11/26/2014 | 95 | 0 | 0 | 0 |
| Full Duty | Intermittent LOA | 03/01/2015 | 61 | 0 | 0 | 0 |
| Full Duty | Intermittent LOA | 05/01/2015 | 186 | 0 | 0 | 0 |
| Full Duty | Accomodated | 11/03/2015 | 8 | 0 | 0 | 0 |
| Left Employment | Termination | 11/11/2015 | 1682 | 0 | 0 | 0 |
| | | | 2032 | 0 | 0 | 0 |

| + | ✎ | 🗑 | ↻ |

---

**Name:** R_____ _____m
**Phone:** REDACTED
**Job:** Flig__ _____
**Site:** DEN Inflight
**Status:** Left Employment/Termination

**Claim #:** 413206 IFM SELF
**Date:** 6/22/2015 LOA - FMLA Self
**Body Part:**
**Nature:** NO EXCEPTIONS
**Status:** Closed/Closed

**Doctor:** Madrid, Marla
**Phone:** (303) 622-9280
**Specialty:**
**Adjuster:**
**Phone:** ( ) -

| « | Employee | Job/Site | Shift/Wage | Claim | Work Status | Claim Status | Notes | » |

Adjuster
( ) -

Estimated Close [          ]

| Status ▲ | Detail | Date | Days |
|---|---|---|---|
| Denied | Closed | 12/18/2014 | 69 |
| Denied | Closed | 02/25/2015 | 9 |
| Open | Open | 03/06/2015 | 56 |
| Open | Open | 05/01/2015 | 186 |
| Closed | Closed | 11/03/2015 | 1690 |
| | | | 2010 |

| + | ✎ | 🗑 | ↻ |

FRONTIER AIRLINES (R. BRIGHAM) - 0004811

Notes List:

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|------|-----------|------|-----------|-------------|-----------|--------|
| 12/18/2014 | BARAG ON | Claim Manager | BARAG ON | | 12/18/2014 | EE Eligible with hours and employment - Exhausted FMLA Hours as of 12/18/2014 - No days available until 1/30/2015 Can reapply then - EE Email REDACTED |
| 12/18/2014 | BARAG ON | Claim Manager | BARAG ON | | 12/18/2014 | FMLA Hours exhausted as of 12/18/2014 - No days available until 1/30/2015 |
| 12/31/2014 | SLEYNE R | Claim Manager | SLEYNE R | | 12/31/2014 | |
| 02/06/2015 | TKOLBE | Claim Manager | TKOLBE | 02/23/2015 | 02/25/2015 | EE Eligible IFM ppw sent due 2/23/15 |
| 02/25/2015 | TKOLBE | Claim Manager | TKOLBE | | 02/25/2015 | ppw not received closed file |
| 03/06/2015 | TKOLBE | Claim Manager | TKOLBE | 03/23/2015 | 03/17/2015 | used 33 days FLA and 21 days IFM total 54 days in 2014 EE Eligible IFM ppw sent Due 3/23/15 |
| 03/17/2015 | BARAG ON | Claim Manager | BARAG ON | 03/24/2015 | 03/24/2015 | FU on revised Paperwork |
| 03/24/2015 | TKOLBE | Claim Manager | TKOLBE | 03/01/2016 | 06/04/2015 | CLose file if not recertified Closed the file since she should not have been approved |
| 03/26/2015 | TKOLBE | Claim Manager | TKOLBE | | 03/26/2015 | |
| 04/02/2015 | TKOLBE | Claim Manager | TKOLBE | | 04/02/2015 | 2nd thursday in a row for IFM meetings/therapy? |
| 04/13/2015 | TKOLBE | Claim Manager | TKOLBE | | 04/13/2015 | |
| 04/14/2015 | TKOLBE | FMLA Usage | TKOLBE | | 04/14/2015 | 60 days |
| 04/14/2015 | TKOLBE | Claim Manager | TKOLBE | | 04/14/2015 | |
| 04/21/2015 | TKOLBE | Claim Manager | TKOLBE | | 04/21/2015 | |
| 05/04/2015 | TKOLBE | Claim Manager | TKOLBE | | 05/04/2015 | |
| 05/08/2015 | SLEYNE R | Employee | SLEYNE R | | 05/08/2015 | |
| 05/12/2015 | TKOLBE | Claim Manager | TKOLBE | | 05/12/2015 | |
| 05/26/2015 | TKOLBE | Claim Manager | TKOLBE | | 05/26/2015 | |

FRONTIER AIRLINES (R. BRIGHAM) - 0004812

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|------|-----------|------|-----------|-------------|-----------|--------|
| 05/27/2015 | TKOLBE | Claim Manager | TKOLBE | | 05/27/2015 | |
| 05/27/2015 | TKOLBE | Claim Manager | TKOLBE | 06/12/2015 | 06/10/2015 | EE wants to have doctor revise the paperwork so she can backdate FMLA to cover 5/12/15 - 5/15/15 and 5/26/15 ppw sent  Due 6/11/15 |
| 06/01/2015 | TKOLBE | Claim Manager | TKOLBE | | 06/01/2015 | 5/29/15 - 5/31/15 coded as sick.  updated ppw has not been received |
| 06/01/2015 | BARAGON | Claim Manager | BARAGON | | 06/01/2015 | |
| 06/03/2015 | TKOLBE | FMLA Usage | TKOLBE | | 06/03/2015 | Report ordered 5/1/14 - 4/30/15  61 days used<br><br>re-coding IFM due to recertification now authorizing 12 days per month. |
| 06/03/2015 | TKOLBE | Claim Manager | TKOLBE | | 06/04/2015 | 5/31/15 coded as sick since it would be the 73rd day.  5/31/14 returns on 6/1/15 1201a so 6/1/15 would be 72 again |
| 06/04/2015 | SLEYNER | Employee Relations | SLEYNER | | 06/04/2015 | |
| 06/04/2015 | SLEYNER | Claim Manager | SLEYNER | | 06/04/2015 | |
| 06/04/2015 | SLEYNER | Employee Relations | SLEYNER | 06/05/2015 | 06/18/2015 | FU on FMLA paperwork if needed or not |
| 06/18/2015 | TKOLBE | Claim Manager | TKOLBE | 07/03/2015 | 06/22/2015 | EE Eligible per Shelly  IFM ppw sent  Due 7/3/15 |
| 06/18/2015 | TKOLBE | FMLA Usage | TKOLBE | | 06/18/2015 | 65 days used |
| 06/19/2015 | TKOLBE | Claim Manager | TKOLBE | 07/03/2015 | 06/22/2015 | Pending ppw approval<br><br>**Coded IFM in crewtrac** |
| 06/22/2015 | BARAGON | Claim Manager | BARAGON | 11/02/2015 | 11/04/2015 | Cert Expires - Close out file |

FRONTIER AIRLINES (R. BRIGHAM) - 0004813

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|------|-----------|------|-----------|-------------|-----------|--------|
| 06/22/2015 | BARAGON | Claim Manager | BARAGON | | 06/22/2015 | |
| 06/22/2015 | BARAGON | Claim Manager | BARAGON | | 06/22/2015 | |
| 06/25/2015 | TKOLBE | Claim Manager | TKOLBE | | 06/25/2015 | Coded IFM in Crew Trac  this brings total days to 70 |
| 06/25/2015 | TKOLBE | FMLA Usage | TKOLBE | | 06/25/2015 | 70 days used  through 6/28/15 |
| 06/29/2015 | TKOLBE | Claim Manager | TKOLBE | | 06/29/2015 | Coded IFM in Crew Trac<br><br>71 days used |
| 07/01/2015 | TKOLBE | Claim Manager | TKOLBE | | 07/01/2015 | 72 days reached  7/14/14 and 7/15/15 will be the next dates to fall off. |
| 07/06/2015 | TKOLBE | Claim Manager | TKOLBE | | 07/06/2015 | |
| 07/07/2015 | TKOLBE | FMLA Usage | TKOLBE | | 07/07/2015 | |
| 07/15/2015 | TKOLBE | Claim Manager | TKOLBE | | 07/15/2015 | |
| 07/22/2015 | TKOLBE | Claim Manager | TKOLBE | 07/24/2015 | 07/27/2015 | FU on date/condition verification.  Email recd on 7/22/15 for absences 7/31/15 - 8/3/15 |
| 07/27/2015 | SLEYNER | Employee | SLEYNER | | 07/27/2015 | she gained 5 days back but used 4 she has one day available until 8/7<br><br>completed coding for 7/31/2015 to 8/3/2015 - SLeyner |
| 08/07/2015 | TKOLBE | FMLA Usage | TKOLBE | | 08/07/2015 | 69 days used |
| 08/07/2015 | TKOLBE | Claim Manager | TKOLBE | | 08/07/2015 | 69 days used prior to this call in  Now at 72 days |
| 08/14/2015 | BARAGON | Claim Manager | BARAGON | | 08/14/2015 | At 72 days -2 days rolled off to her 08/08/2014 and 08/09/2014<br><br>EE at 72 days again<br>Coded in Crew Track |

0923

FRONTIER AIRLINES (R. BRIGHAM) - 0004814

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|---|---|---|---|---|---|---|
| 08/24/2015 | TKOLBE | FMLA Usage | TKOLBE | | 08/24/2015 | 67 days used |
| 08/24/2015 | TKOLBE | Claim Manager | TKOLBE | | 08/24/2015 | Coded IFM in CrewTrac |
| 08/25/2015 | TKOLBE | Claim Manager | TKOLBE | | 08/25/2015 | |
| 08/31/2015 | TKOLBE | Claim Manager | TKOLBE | | 08/31/2015 | Coded IFM in CrewTrac |
| 09/08/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/09/2015 | Coded IFM in CrewTrac |
| 09/08/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/08/2015 | 67 days used prior to 9/5/15 |
| 09/11/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/11/2015 | Coded IFM in CrewTrac |
| 09/11/2015 | TKOLBE | FMLA Usage | TKOLBE | | 09/11/2015 | 9/14/14 - 9/14/15  60 days used |
| 09/18/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/18/2015 | Coded IFM in CrewTrac |
| 09/22/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/22/2015 | Coded IFM in CrewTrac |
| 09/25/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/28/2015 | |
| 09/28/2015 | TKOLBE | Claim Manager | TKOLBE | | 09/28/2015 | |
| 09/28/2015 | TKOLBE | FMLA Usage | TKOLBE | | 09/28/2015 | 51 days used |
| 09/28/2015 | BARAGON | Claim Manager | BARAGON | | 09/28/2015 | Spoke to Compliance and they have advised that on the compliance side of things the employee is compliant in all things. |
| 09/28/2015 | SLEYNER | Employee | SLEYNER | | 09/28/2015 | |
| 09/28/2015 | SLEYNER | Employee | SLEYNER | | 09/28/2015 | |
| 09/28/2015 | SLEYNER | Supervisor | SLEYNER | | 09/28/2015 | |
| 09/28/2015 | SLEYNER | Employee Relations | SLEYNER | 10/02/2015 | 10/07/2015 | FU on meeting with ERM and Rebecca |

0924

FRONTIER AIRLINES (R. BRIGHAM) - 0004815

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|------|-----------|------|-----------|-------------|-----------|--------|
| 09/28/2015 | SLEYNER | Email | SLEYNER | | 09/28/2015 | Report = 54 days used total to date<br><br>roll off on 9/29 - 10/9 1 per day for FLA |
| 10/02/2015 | TKOLBE | Claim Manager | TKOLBE | | 10/02/2015 | Coded IFM in CrewTrac |
| 10/05/2015 | TKOLBE | Claim Manager | TKOLBE | | 10/05/2015 | Coded IFM in CrewTrac |
| 10/05/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/05/2015 | |
| 10/07/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Claim Manager | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/07/2015 | FU on ERM review |
| 10/07/2015 | SLEYNER | Claim Manager | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Supervisor | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Supervisor | SLEYNER | | 10/07/2015 | |
| 10/07/2015 | SLEYNER | Employee Relations | SLEYNER | 10/08/2015 | 11/16/2015 | FU on possible re-certification of IFM |
| 10/08/2015 | BARAGON | Claim Manager | BARAGON | | 10/08/2015 | Coded IFM in CrewTrac |
| 10/15/2015 | TKOLBE | Employee Relations | SLEYNER | | 10/15/2015 | Coded IFM in CrewTrac |

0925

FRONTIER AIRLINES (R. BRIGHAM) - 0004816

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|---|---|---|---|---|---|---|
| 10/15/2015 | SLEYNER | Claim Manager | SLEYNER | | 10/15/2015 | |
| 10/15/2015 | SLEYNER | Employee | SLEYNER | 10/30/2015 | 11/16/2015 | PPW is due on 10/30/2015 for recertification - Shelly will handle moving forward. |
| 10/15/2015 | SLEYNER | Claim Manager | TKOLBE | | 10/15/2015 | |
| 10/19/2015 | TKOLBE | Claim Manager | BARAGON | | 10/19/2015 | Coded IFM in CrewTrac |
| 10/19/2015 | BARAGON | Employee Relations | SLEYNER | | 10/19/2015 | |
| 10/26/2015 | SLEYNER | Claim Manager | SLEYNER | 10/27/2015 | 10/27/2015 | FU on if we are coding IFM or not? |
| 10/27/2015 | SLEYNER | Employee Relations | SLEYNER | | 10/27/2015 | denied 10/23-10/26 |
| 10/27/2015 | SLEYNER | Supervisor | SLEYNER | | 10/27/2015 | |
| 11/02/2015 | SLEYNER | Employee Relations | SLEYNER | | 11/02/2015 | |
| 11/09/2015 | SLEYNER | Email | SLEYNER | | 11/09/2015 | |
| 11/09/2015 | SLEYNER | Employee Relations | SLEYNER | | 11/09/2015 | |
| 11/11/2015 | SLEYNER | Employee Relations | SLEYNER | | 11/11/2015 | |
| 11/11/2015 | SLEYNER | Supervisor | SLEYNER | | 11/16/2015 | |
| 11/12/2015 | BARAGON | Supervisor | SLEYNER | | 11/12/2015 | Closed out file per email |
| 11/12/2015 | BARAGON | Supervisor | BARAGON | | 11/12/2015 | |
| 11/12/2015 | BARAGON | Claim Manager | BARAGON | | 11/12/2015 | |

FRONTIER AIRLINES (R. BRIGHAM) - 0004817

| Date | Created By | Type | Action Id | Action Date | Completed | Action |
|------|-----------|------|-----------|-------------|-----------|--------|
| 11/12/2015 | BARAGON | Claim Manager | BARAGON | | 11/12/2015 | |
| 11/16/2015 | SLEYNER | Employee Relations | SLEYNER | | 11/16/2015 | |
| 11/16/2015 | SLEYNER | Employee Relations | SLEYNER | | 11/16/2015 | |
| 11/16/2015 | SLEYNER | Employee Relations | SLEYNER | | 11/16/2015 | |

FRONTIER AIRLINES (R. BRIGHAM) - 0004818

**CONTENTS OF ALL NOTES FROM THIS CASE IN WCCMS**

From: LOA Frontier Employees
Sent: Thursday, December 18, 2014 3:34 PM
To: Rebecca Brigham
Cc: LOA Frontier Employees; Inflight DIA MGR; Bartlett, Tyler
Subject: RE: Fmla paperwork

Good Afternoon Rebecca,
Thank you for contacting the Leave of Absence department. At this time you qualify for FMLA paperwork with your hours worked and employement dates, however you have exhausted all 72 FMLA days available (Flight Crew Members) for the rolling calendar year.

You will not have an FMLA day roll off to be available to you until 1/31/2015. You may contact us at that time to request FMLA paperwork, however days are only available to you to use as they roll off from the last calendar year. You may refer to your last year schedule as a refrence as to what days you used FLMA.

If you should have any questions please feel free to contact me.

Have a good day,

Brandi Aragon

Brandi Aragon
Leave of Absence Coordinator
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4397 Office
720-374-8013 LOA Fax
brandi.aragon@flyfrontier.com <mailto:brandi.aragon@flyfrontier.com>
www.flyfrontier.com <http://www.flyfrontier.com>

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto:REDACTED
Sent: Tuesday, November 25, 2014 6:17 PM
To: LOA Frontier Employees
Subject: Fmla paperwork - Pull available FMLA Hours and talk to Shelly

I am requesting intermittent fmla paperwork for myself. If you could please email it to this email address it would be much appreciated thanks. REDACTED          . Rebecca Brigham #413206

From: Aragon, Brandi
Sent: Thursday, December 18, 2014 3:08 PM
To: LOA Frontier Employees

FRONTIER AIRLINES (R. BRIGHAM) - 0004819

Subject: Rebecca Brigham – 11/24/2013 – 11/25/2015 FMLA Hours Used - 69 Days

Date: 12/18/14                     Frontier Airlines              Sabre CrewTrac
Time: 15:00                    Absence/Other Time Report                Page 1
                      From 11/24/13  To 11/25/14  Employee 413206
                          Codes: FLA IFM

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 413206 BRIGHAM,REBECCA | | | | | FA | | | | | | |
| FLA | 09/04/14 - 09/05/14 | B | | | | | | | | | |
| | 09/06/14 - 09/07/14 | B | | | | | | | | | |
| | 09/09/14 - 09/10/14 | B | | | | | | | | | |
| | 09/10/14 - 09/11/14 | B | | | | | | | | | |
| | 09/12/14 - 09/13/14 | B | | | | | | | | | |
| | 09/13/14 - 09/14/14 | B | | | | | | | | | |
| | 09/16/14 - 09/17/14 | B | | | | | | | | | |
| | 09/19/14 - 09/20/14 | B | | | | | | | | | |
| | 09/20/14 - 09/21/14 | B | | | | | | | | | |
| | 09/21/14 - 09/22/14 | B | | | | | | | | | |
| | 09/23/14 - 09/24/14 | B | | | | | | | | | |
| | 09/27/14 - 09/28/14 | B | | | | | | | | | |
| | 09/29/14 - 09/30/14 | B | | | | | | | | | |
| | 09/30/14 - 09/30/14 | B | | | | | | | | | |
| | 10/01/14 - 10/01/14 | B | | | | | | | | | |
| | 10/03/14 - 10/05/14 | B | 09/04/2014 - 10/5/2014 FLA = 31 Days Used | | | | | | | | | |
| IFM | 01/30/14 - 01/30/14 | B | 1 | | | | | | | | |
| | 01/31/14 - 01/31/14 | B | 1 | | | | | | | | |
| | 02/13/14 - 02/13/14 | B | 1 | | | | | | | | |
| | 02/26/14 - 02/27/14 | B | 2 | | | | | | | | |
| | 03/23/14 - 03/24/14 | B | 2 | | | | | | | | |
| | 03/26/14 - 03/27/14 | B | 2 | | | | | | | | |
| | 04/04/14 - 04/05/14 | B | 2 | | | | | | | | |
| | 04/23/14 - 04/24/14 | B | 2 | | | | | | | | |
| | 05/31/14 - 05/31/14 | B | 1 | | | | | | | | |
| | 06/01/14 - 06/01/14 | B | 1 | | | | | | | | |
| | 06/03/14 - 06/04/14 | B | 2 | | | | | | | | |
| | 06/06/14 - 06/07/14 | B | 2 | | | | | | | | |
| | 06/07/14 - 06/08/14 | B | 1 | | | | | | | | |
| | 06/08/14 - 06/09/14 | B | 1 | | | | | | | | |
| | 06/09/14 - 06/10/14 | B | 1 | | | | | | | | |
| | 07/14/14 - 07/15/14 | B | 2 | | | | | | | | |
| | 07/21/14 - 07/22/14 | B | 2 | | | | | | | | |
| | 07/22/14 - 07/23/14 | B | 1 | | | | | | | | |
| | 08/07/14 - 08/08/14 | B | 2 | | | | | | | | |
| | 08/08/14 - 08/09/14 | B | 1 | | | | | | | | |
| | 08/21/14 - 08/21/14 | B | 1 | | | | | | | | |
| | 08/22/14 - 08/23/14 | B | 2 | | | | | | | | |
| | 08/28/14 - 08/29/14 | B | 2 | | | | | | | | |

0929

FRONTIER AIRLINES (R. BRIGHAM) - 0004820

```
09/02/14 - 09/03/14  B  2
09/03/14 - 09/04/14  B  1


            38 IFM Days Used


Total for DEN    38+31 = 69 Days Used        0  0              0:00    0:00
```

**FLA Dates 9/7/2014 -10/7/2014
   MED Dates 10/8/2014 - 11/7/2014
   MED Dates 11/8/2014 - 12/14/2014


Returned to Work 12/15/2014

Hello Rebecca,

A rolling calendar goes day by day, such as if you are asking for leave paperwork on 12/1/2014 we would pull hours worked from the date of processing back 365 days (example: 12/1/2014-12/2/2013) and all FMLA hours used between that time frame to determine if you qualify. You can find FMLA use on your schedule to reference. Please let me know if you have any questions.




Shelly Leyner
LOA Department
Supervisor of Disability Management

Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4397 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com <mailto:Shelly.Leyner@flyfrontier.com>
E: OJIfrontier@flyfrontier.com <mailto:OJIfrontier@flyfrontier.com>
E: LOA@flyfrontier.com <mailto:LOA@flyfrontier.com>
E: LOABilling@flyfrontier.com <mailto:LOABilling@flyfrontier.com>

www.FlyFrontier.com <http://www.flyfrontier.com/>
www.Facebook.com/FlyFrontier <http://www.facebook.com/FlyFrontier>
www.Twitter.com/FlyFrontier <http://www.twitter.com/FlyFrontier>

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

FRONTIER AIRLINES (R. BRIGHAM) - 0004821

From: Rebecca Brigham [<mailto:REDACTED
Sent: Sunday, December 21, 2014 8:27 AM
To: LOA Frontier Employees
Subject: RE: Fmla paperwork

Can you please explain this to me, I was under the impression that the rolling calendar started in July? And is there any way you could email me the last year's fmla dates please.
Rebecca Brigham
#413206. Thanks so much
On Dec 18, 2014 3:33 PM, "LOA Frontier Employees" <LOAFlyfrontier@flyfrontier.com <mailto:LOAFlyfrontier@flyfrontier.com>> wrote:
Good Afternoon Rebecca,
Thank you for contacting the Leave of Absence department. At this time you qualify for FMLA paperwork with your hours worked and employement dates, however you have exhausted all 72 FMLA days available (Flight Crew Members) for the rolling calendar year.

You will not have an FMLA day roll off to be available to you until 1/31/2015. You may contact us at that time to request FMLA paperwork, however days are only available to you to use as they roll off from the last calendar year. You may refer to your last year schedule as a refrence as to what days you used FLMA.

If you should have any questions please feel free to contact me.
Have a good day,
Brandi Aragon



Brandi Aragon
Leave of Absence Coordinator
Frontier Airlines
From: Rebecca Brigham [mailto:REDACTED
Sent: Friday, February 06, 2015 10:14 AM
To: LOA Frontier Employees
Subject: fmla Paperwork request

Could you please send me the paperwork for personal intermittent FMLA to this email REDACTED
<mailto:REDACTED
Rebecca Brigham
#413206
From: LOA Frontier Employees
Sent: Friday, February 06, 2015 11:54 AM
To: 'REDACTED
Cc: LOA Frontier Employees; Rush, Laura
Subject: FMLA paperwork request for Rebecca Brigham FA DEN 413206

Rebecca,

Thank you for contacting the Leave of Absence department. I have attached the requested FMLA paperwork.

Please be advised that the completed Certification form is due back to the Leave of Absence department by *2/23/2015*.

Call off procedure while pending FMLA approval:

FRONTIER AIRLINES (R. BRIGHAM) - 0004822

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com <mailto:LOA@flyfrontier.com> or the call in line at 720-374-4245 with the following information within 24 hours of the call off;

·     Employee Name
·     Employee Number
·     Date the IFM is taken
·     Who the IFM pertains to


If you should have any questions please feel free to contact me.

Have a good day,



Tamarra Kolbe



HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4539 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: LOA Frontier Employees
Sent: Wednesday, February 25, 2015 9:07 AM
To: 'REDACTED
Cc: LOA Frontier Employees
Subject: FMLA request for Rebecca Brigham FA DEN 413206 denied ppw not received

Rebecca,

The Leave of Absence department has not received the completed Certification form for FMLA that you requested on 2/6/2015.

Please be advised that your request has been denied because paperwork was not submitted by the due date of 2/23/15.

If you should have any further questions please feel free to contact me.

Have a good day,


Tamarra Kolbe

FRONTIER AIRLINES (R. BRIGHAM) - 0004823

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4539 Office
720-374-8013 LOA Fax


CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Tuesday, March 03, 2015 12:40 PM
To: LOA Frontier Employees
Subject: new fmla paperwork


I am requesting new paperwork for intermittent fmla for myself (the old paperwork expired sorry) and thanks


From: Rebecca Brigham [mailto REDACTED
Sent: Tuesday, March 03, 2015 12:42 PM
To: LOA Frontier Employees
Subject: Email#2 for new fmla paperwork


I forgot to give you my info Rebecca Brigham #413206 this is a request for intermittent paperwork for myself


From: LOA Frontier Employees
Sent: Friday, March 06, 2015 8:28 AM
To: 'REDACTED
Cc: LOA Frontier Employees; Rush, Laura
Subject: FMLA paperwork request for Rebecca Brigham FA DEN 413206

Rebecca,

Thank you for contacting the Leave of Absence department. I have attached the requested FMLA paperwork.

Please be advised that the completed Certification form is due back to the Leave of Absence department by
*3/23/2015*.

Call off procedure while pending FMLA approval:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com
<mailto:LOA@flyfrontier.com> or the call in line at 720-374-4245 with the following information within 24 hours of
the call off;

·        Employee Name
·        Employee Number
·        Date the IFM is taken
·        Who the IFM pertains to

FRONTIER AIRLINES (R. BRIGHAM) - 0004824

If you should have any questions please feel free to contact me.

Have a good day,


Tamarra Kolbe


HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4539 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

Cert Received - Incomplete #7 on page 3 - Shelly Reviewed - Advised Incomplete

The Leave of Absence department has received your FMLA Certification.

At this time we are unable to approve the request because the certification is incomplete.  Please refer to the designation for the necessary corrections.  You will need to contact your doctor and have them revise the form so we can process the request.

The revised form is due back to the Leave of Absence department by *3/24/2015* or the request will be denied due to incomplete paperwork.

If you should have any questions please feel free to contact me.

Have a good day,

Brandi Aragon



Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4397 Office
720-374-8013  Fax
brandi.aragon@flyfrontier.com <mailto:brandi.aragon@flyfrontier.com>
www.flyfrontier.com <http://www.flyfrontier.com/>

FRONTIER AIRLINES (R. BRIGHAM) - 0004825

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: LOA Frontier Employees
Sent: Tuesday, March 24, 2015 2:28 PM
To: 'REDACTED
Cc: LOA Frontier Employees; Rush, Laura
Subject: FMLA Designation for Rebecca Brigham FA DEN 413206

Rebecca,

We have received your FMLA certification. At this time we are approving your intermittent leave of absence from 3/1/15 to 3/1/16 for up to 4 days per month. Please refer to the Designation Notice that is attached for additional information.


Call off procedure:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com <mailto:LOA@flyfrontier.com> or the call in line at 720-374-4245 with the following information within 24 hours of the call off;

·     Employee Name
·     Employee Number
·     Date the IFM is taken
·     Who the IFM pertains to


If you have any questions please contact the LOA Department at 720-374-4397 or send an email to LOA@flyfrontier.com <mailto:LOA@flyfrontier.com>.




Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Wednesday, March 25, 2015 10:26 PM
To: LOA Frontier Employees
Subject: Fmla 3/26/15

FRONTIER AIRLINES (R. BRIGHAM) - 0004826

Rebecca Brigham
#413206
I had to use my intermittent Fmla for a turn on 3/26  thanks

From: LOA Frontier Employees
Sent: Thursday, March 26, 2015 8:38 AM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 3/26/15


Please code IFM for  the above mentioned employee for the date(s) of: 3/26/15

Thank you,



Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, April 02, 2015 10:39 AM
To: LOA Frontier Employees
Subject: Fmla 4/2/15

I had to use my intermittent Fmla on 4/2 for a turn
Rebecca Brigham #413206
From: LOA Frontier Employees
Sent: Thursday, April 02, 2015 11:22 AM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 4/2/15


Please code IFM for  the above mentioned employee for the date(s) of:  4/2/15

Thank you,

FRONTIER AIRLINES (R. BRIGHAM) - 0004827

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Friday, April 10, 2015 12:11 PM
To: LOA Frontier Employees
Subject: Fmla 4/10/15

I had to use my fmla on 4/10 for a turn
Rebecca Brigham #413206


From: LOA Frontier Employees
Sent: Monday, April 13, 2015 2:00 PM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth;
Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206


Please code IFM for the above mentioned employee for the date(s) of: 4/10/15

Thank you,



Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

FRONTIER AIRLINES (R. BRIGHAM) - 0004828

Date: 04/14/15  Frontier Airlines  Sabre CrewTrac
Time: 09:14  Absence/Other Time Report  Page 1
From 04/14/14  To 04/13/15  Employee 413206
Codes: FLA IFM

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|------|-----------|---------|----------|----------|-----|-----------|-------------|------|------|-------|--------|
| | 413206  BRIGHAM,REBECCA | | | | FA | | | | | | |
| FLA | 09/04/14 - 09/05/14  B | | | | | | | | | | |
| | 09/06/14 - 09/07/14  B | | | | | | | | | | |
| | 09/09/14 - 09/10/14  B | | | | | | | | | | |
| | 09/10/14 - 09/11/14  B | | | | | | | | | | |
| | 09/12/14 - 09/13/14  B | | | | | | | | | | |
| | 09/13/14 - 09/14/14  B | | | | | | | | | | |
| | 09/16/14 - 09/17/14  B | | | | | | | | | | |
| | 09/19/14 - 09/20/14  B | | | | | | | | | | |
| | 09/20/14 - 09/21/14  B | | | | | | | | | | |
| | 09/21/14 - 09/22/14  B | | | | | | | | | | |
| | 09/23/14 - 09/24/14  B | | | | | | | | | | |
| | 09/27/14 - 09/28/14  B | | | | | | | | | | |
| | 09/29/14 - 09/30/14  B | | | | | | | | | | |
| | 09/30/14 - 09/30/14  B | | | | | | | | | | |
| | 10/01/14 - 10/01/14  B | | | | | | | | | | |
| | 10/03/14 - 10/05/14  B  31 Days | | | | | | | | | | |
| IFM | 04/23/14 - 04/24/14  B  2 | | | | | | | | | | |
| | 05/31/14 - 05/31/14  B | | | | | | | | | | |
| | 06/01/14 - 06/01/14  B | | | | | | | | | | |
| | 06/03/14 - 06/04/14  B  2 | | | | | | | | | | |
| | 06/06/14 - 06/07/14  B | | | | | | | | | | |
| | 06/07/14 - 06/08/14  B | | | | | | | | | | |
| | 06/08/14 - 06/09/14  B | | | | | | | | | | |
| | 06/09/14 - 06/10/14  B | | | | | | | | | | |
| | 07/14/14 - 07/15/14  B  2 | | | | | | | | | | |
| | 07/21/14 - 07/22/14  B | | | | | | | | | | |
| | 07/22/14 - 07/23/14  B  2 | | | | | | | | | | |
| | 08/07/14 - 08/08/14  B | | | | | | | | | | |
| | 08/08/14 - 08/09/14  B  2 | | | | | | | | | | |
| | 08/21/14 - 08/21/14  B | | | | | | | | | | |
| | 08/22/14 - 08/23/14  B  2 | | | | | | | | | | |
| | 08/28/14 - 08/29/14  B  2 | | | | | | | | | | |
| | 09/02/14 - 09/03/14  B | | | | | | | | | | |
| | 09/03/14 - 09/04/14  B  2 | | | | | | | | | | |
| | 03/26/15 - 03/26/15  B | | | | | | | | | | |
| | 04/02/15 - 04/02/15  B | | | | | | | | | | |
| | 04/10/15 - 04/10/15  B  60 days total | | | | | | | | | | |

Total for DEN  0  0  0:00  0:00

From: Rebecca Brigham [mailto:REDACTED
Sent: Monday, April 13, 2015 9:28 PM
To: LOA Frontier Employees
Subject: Fmla 4/14/15

0938

FRONTIER AIRLINES (R. BRIGHAM) - 0004829

I had to use my fmla on 4 / 14 for an LAX turn
Rebecca Brigham #413206 thanks


From: LOA Frontier Employees
Sent: Tuesday, April 14, 2015 9:22 AM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 4/14/15


Please code IFM for the above mentioned employee for the date(s) of: 4/14/15

Thank you,



Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Monday, April 20, 2015 4:48 PM
To: LOA Frontier Employees
Subject: Fmla 4/20/15

I had to use my intermittent Fmla on 4 / 20 for a turn Rebecca Brigham #413206 thanks


From: LOA Frontier Employees
Sent: Tuesday, April 21, 2015 8:19 AM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 4/20/15


Please code IFM for the above mentioned employee for the date(s) of: 4/20/15

Thank you,

FRONTIER AIRLINES (R. BRIGHAM) - 0004830

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Sunday, May 03, 2015 3:53 PM
To: LOA Frontier Employees
Subject: Fmla 5/3/15

I had to use my FMLA on 5/3 for a 3 day
Rebecca Brigham #413206

From: LOA Frontier Employees
Sent: Monday, May 04, 2015 1:08 PM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth;
Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 5/3/15, 5/4/15 and 5/5/15

Please code IFM for the above mentioned employee for the date(s) of: 5/3/15, 5/4/15 and 5/5/15

Thank you,

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

FRONTIER AIRLINES (R. BRIGHAM) - 0004831

I had to use my intermittent Fmla on 5/8 for a turn
Rebecca brigham
#413206

Please code IFM for the following date(s)

•      5/8/2015

Shelly Leyner
LOA Department
Supervisor of Disability Management

From: Rebecca Brigham [mailto REDACTED
Sent: Tuesday, May 12, 2015 10:08 AM
To: LOA Frontier Employees
Subject: Fmla 5/12/15

I had to use my intermittent Fmla for a 4 day (it doesn't come back through denver) on 5/12
Rebecca Brigham #413206 thanks

From: LOA Frontier Employees
Sent: Tuesday, May 12, 2015 10:54 AM
To: Cain, Janette; Crew Planning-Frontier; Crew Services; F9Pass; Inflight DIA MGR; McElroy, Stuart J.; Ruiz, Lizabeth;
Ryan, Patrick J.; Shattuck, Thomas C.
Cc: LOA Frontier Employees
Subject: Rebecca Brigham FA DEN 413206 SICK 5/12/15 - 5/15/15

Please code SICK for the above mentioned employee for the date(s) of: 5/12/15, 5/13/15, 5/14/15 and 5/15/15

Thank you,

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: LOA Frontier Employees
Sent: Tuesday, May 12, 2015 11:01 AM
To: Rebecca Brigham; LOA Frontier Employees
Subject: RE: Fmla 5/12/15-5/15/15

FRONTIER AIRLINES (R. BRIGHAM) - 0004832

Rebecca,

==We have received your request to use intermittent FMLA to cover your absences on 5/12/15, 5/13/15, 5/14/15 and 5/15/15.  Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for these dates.==

These dates will be coded as absences and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80209
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Tuesday, May 12, 2015 10:08 AM
To: LOA Frontier Employees
Subject: Fmla 5/12/15

I had to use my intermittent Fmla for a 4 day (it doesn't come back through denver) on 5/12
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Monday, May 25, 2015 8:57 PM
To: LOA Frontier Employees
Subject: Fmla 5/26/15

I had to use my intermittent Fmla on 5/26 for a turn
Rebecca Brigham #413206 thanks

From: LOA Frontier Employees
Sent: Tuesday, May 26, 2015 8:58 AM
To: Cain, Janette; Coppedge, Stefanie; Crew Planning-Frontier; Crew Services; F9Pass; Lester, Richard A.; McElroy, Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Sandman, Jacob; Shattuck, Thomas C.; Thompson, Kari; Varney, Jeffrey M; Williams, JaJuan
Cc: LOA Frontier Employees
Subject: Rebecca Brigham FA DEN 413206 SICK 5/26/15

FRONTIER AIRLINES (R. BRIGHAM) - 0004833

Please code SICK for the above mentioned employee for the date(s) of: 5/26/15

Thank you,


Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.


From: LOA Frontier Employees
Sent: Tuesday, May 26, 2015 9:00 AM
To: Rebecca Brigham
Cc: LOA Frontier Employees; Thompson, Kari
Subject: FMLA request for Rebecca Brigham FA DEN 413206 denied

Rebecca,

We have received your request to use intermittent FMLA to cover your absence on 5/26/15.   Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.


Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

FRONTIER AIRLINES (R. BRIGHAM) - 0004834

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.


From: Rebecca Brigham [mailto REDACTED
Sent: Monday, May 25, 2015 8:57 PM
To: LOA Frontier Employees
Subject: Fmla 5/26/15

I had to use my intermittent Fmla on 5/26 for a turn
Rebecca Brigham #413206 thanks

From: LOA Frontier Employees
Sent: Wednesday, May 27, 2015 7:42 AM
To: Rebecca Brigham; LOA Frontier Employees
Cc: Rush, Laura; Thompson, Kari
Subject: RE: FMLA request for Rebecca Brigham FA DEN 413206 denied

Rebecca,

You were approved for 4 days per month.   You called in on FMLA for May 3, 4, 5 and 8.   At that point your FMLA for
the month was exhausted.

I have attached a copy of the email that was sent to you when your designation was approved.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com and we will be happy to help.



Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.


From: Rebecca Brigham [mailto REDACTED
Sent: Tuesday, May 26, 2015 5:27 PM
To: LOA Frontier Employees
Subject: Re: FMLA request for Rebecca Brigham FA DEN 413206 denied

FRONTIER AIRLINES (R. BRIGHAM) - 0004835

How am I over on my fmla? My fmla was approved for once a week please explain this
On May 26, 2015 8:59 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,

We have received your request to use intermittent FMLA to cover your absence on 5/26/15.   Since you have
exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you
leave, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your
department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto:REDACTED
Sent: Monday, May 25, 2015 8:57 PM
To: LOA Frontier Employees
Subject: Fmla 5/26/15

I had to use my intermittent Fmla on 5/26 for a turn
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto:REDACTED
Sent: Wednesday, May 27, 2015 7:52 AM
To: LOA Frontier Employees
Subject: RE: FMLA request for Rebecca Brigham FA DEN 413206 denied

Please send me new fmla paperwork so I can have it revised, fmla can go back 15 days so the two "sick calls" will be
changed to fmla correct?
On May 27, 2015 8:48 AM, "Rebecca Brigham" <rebeccabrigham4@gmail.com> wrote:
The trip on the 3rd never came back thru Denver i could not get back on it so I do not think it should count for 3
On May 27, 2015 8:42 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,

FRONTIER AIRLINES (R. BRIGHAM) - 0004836

You were approved for 4 days per month.   You called in on FMLA for May 3, 4, 5 and 8.   At that point your FMLA for
the month was exhausted.

I have attached a copy of the email that was sent to you when your designation was approved.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto:REDACTED
Sent: Tuesday, May 26, 2015 5:27 PM
To: LOA Frontier Employees
Subject: Re: FMLA request for Rebecca Brigham FA DEN 413206 denied

How am I over on my fmla? My fmla was approved for once a week please explain this
On May 26, 2015 8:59 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,

We have received your request to use intermittent FMLA to cover your absence on 5/26/15.   Since you have
exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you
leave, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your
department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines

FRONTIER AIRLINES (R. BRIGHAM) - 0004837

7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Monday, May 25, 2015 8:57 PM
To: LOA Frontier Employees
Subject: Fmla 5/26/15

I had to use my intermittent Fmla on 5/26 for a turn
Rebecca Brigham #413206 thanks

From: LOA Frontier Employees
Sent: Wednesday, May 27, 2015 10:42 AM
To: REDACTED
Cc: LOA Frontier Employees; Coppedge, Stefanie; Lester, Richard A.; Sandman, Jacob; Thompson, Kari; Varney, Jeffrey
M; Williams, JaJuan
Subject: FMLA paperwork for Rebecca Brigham FA DEN 413206

Rebecca,

Thank you for contacting the Leave of Absence department. I have attached the requested FMLA paperwork.

Please be advised that the completed Certification form is due back to the Leave of Absence department by
*6/11/2015*.

Call off procedure while pending FMLA approval:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com or the
call in line at 720-374-4245 with the following information within 24 hours of the call off;

• Employee Name
• Employee Number
• Date the IFM is taken
• Who the IFM pertains to

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com we will be happy to help.

Have a good day,

Tamarra Kolbe

FRONTIER AIRLINES (R. BRIGHAM) - 0004838

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Friday, May 29, 2015 12:02 PM
To: LOA Frontier Employees
Subject: Fmla 5/29/15

I had to use my intermittent Fmla on 5 / 29 for a turn, there is new fmla paperwork that you should have received for 12 days per month please let know if you have not received it yet thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Saturday, May 30, 2015 3:03 PM
To: LOA Frontier Employees
Subject: Fmla 5/30/15

Had to use my intermittent Fmla on 5 / 30 for a stand up
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Sunday, May 31, 2015 1:32 PM
To: LOA Frontier Employees
Subject: Fmla 5/31/15

I had to use my intermittent Fmla on 5 / 31 for a stand up
Rebecca Brigham #413206 thanks

Sent: Monday, June 01, 2015 8:38 AM
To: Cain, Janette; Coppedge, Stefanie; Crew Planning-Frontier; Crew Services; F9Pass; Lester, Richard A.; McElroy, Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Sandman, Jacob; Shattuck, Thomas C.; Thompson, Kari; Varney, Jeffrey M; Williams, JaJuan
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 6/1/15 SICK 5/29/15 - 5/31/15

Please code SICK for  the above mentioned employee for the date(s) of:  5/29/15, 5/30/15 and 5/31/15

Please code IFM for  the above mentioned employee for the date(s) of:  6/1/15

Thank you,

FRONTIER AIRLINES (R. BRIGHAM) - 0004839

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: LOA Frontier Employees
Sent: Monday, June 01, 2015 8:43 AM
To: REDACTED
Cc: LOA Frontier Employees
Subject: FMLA request for Rebecca Brigham FA DEN 413206 denied

Rebecca,

We have received your request to use intermittent FMLA to cover your absences on 5/29/15, 5/30/15 and 5/31/15. Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for these dates.

These dates will be coded as absences and will be subject to the attendance policy that is in place with your department.

We have not received updated papework from your healthcare provider increasing the number of days allowed for your FMLA.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

FRONTIER AIRLINES (R. BRIGHAM) - 0004840

From: LOA Frontier Employees
Sent: Monday, June 01, 2015 6:26 PM
To: Rebecca Brigham
Cc: LOA Frontier Employees; Coppedge, Stefanie; Lester, Richard A.; Sandman, Jacob; Thompson, Kari; Varney, Jeffrey M; Williams, JaJuan
Subject: RE: FMLA request for Rebecca Brigham FA DEN 413206 - Documents Not Received

Thank you for contacting the Leave of Absence department. We have not received your documents at this time. Please follow up with your medical provider.

Have a good day ,

Brandi Aragon



Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013 Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com


CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.



From: Rebecca Brigham [mailto REDACTED
Sent: Monday, June 01, 2015 8:57 AM
To: LOA Frontier Employees
Subject: Re: FMLA request for Rebecca Brigham FA DEN 413206 denied

It was sent to you Friday late afternoon, let me know and I can have it resent if you have not received it
On Jun 1, 2015 8:43 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,

We have received your request to use intermittent FMLA to cover your absences on 5/29/15, 5/30/15 and 5/31/15. Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for these dates.

These dates will be coded as absences and will be subject to the attendance policy that is in place with your department.

FRONTIER AIRLINES (R. BRIGHAM) - 0004841

We have not received updated paperwork from your healthcare provider increasing the number of days allowed for your FMLA.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.


Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

---

Date: 06/03/15       Frontier Airlines       Sabre CrewTrac
Time: 12:42       Absence/Other Time Report       Page 1
From 05/01/14  To 04/30/15  Employee 413206
Codes: FLA IFM

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 413206 BRIGHAM,REBECCA | | | | | FA | | | | | | |
| FLA | 09/04/14 - 09/05/14 | B | | | | | | | | | |
| | 09/06/14 - 09/07/14 | B | | | | | | | | | |
| | 09/09/14 - 09/10/14 | B | | | | | | | | | |
| | 09/10/14 - 09/11/14 | B | | | | | | | | | |
| | 09/12/14 - 09/13/14 | B | | | | | | | | | |
| | 09/13/14 - 09/14/14 | B | | | | | | | | | |
| | 09/16/14 - 09/17/14 | B | | | | | | | | | |
| | 09/19/14 - 09/20/14 | B | | | | | | | | | |
| | 09/20/14 - 09/21/14 | B | | | | | | | | | |
| | 09/21/14 - 09/22/14 | B | | | | | | | | | |
| | 09/23/14 - 09/24/14 | B | | | | | | | | | |
| | 09/27/14 - 09/28/14 | B | | | | | | | | | |
| | 09/29/14 - 09/30/14 | B | | | | | | | | | |
| | 09/30/14 - 09/30/14 | B | | | | | | | | | |
| | 10/01/14 - 10/01/14 | B | | | | | | | | | |
| | 10/03/14 - 10/05/14 | B | 31 days | | | | | | | | |
| IFM | 05/31/14 - 05/31/14 | B | | | | | | | | | |
| | 06/01/14 - 06/01/14 | B | | | | | | | | | |
| | 06/03/14 - 06/04/14 | B | 2 days | | | | | | | | |
| | 06/06/14 - 06/07/14 | B | | | | | | | | | |
| | 06/07/14 - 06/08/14 | B | | | | | | | | | |
| | 06/08/14 - 06/09/14 | B | | | | | | | | | |
| | 06/09/14 - 06/10/14 | B | 2 days | | | | | | | | |

FRONTIER AIRLINES (R. BRIGHAM) - 0004842

| | | | | | |
|---|---|---|---|---|---|
| 07/14/14 - 07/15/14 | B | 2 days | | | |
| 07/21/14 - 07/22/14 | B | | | | |
| 07/22/14 - 07/23/14 | B | 2 days | | | |
| 08/07/14 - 08/08/14 | B | | | | |
| 08/08/14 - 08/09/14 | B | 2 days | | | |
| 08/21/14 - 08/21/14 | B | | | | |
| 08/22/14 - 08/23/14 | B | 2 days | | | |
| 08/28/14 - 08/29/14 | B | 2 days | | | |
| 09/02/14 - 09/03/14 | B | | | | |
| 09/03/14 - 09/04/14 | B | 2 days | | | |
| 03/26/15 - 03/26/15 | B | | | | |
| 04/02/15 - 04/02/15 | B | | | | |
| 04/10/15 - 04/10/15 | B | | | | |
| 04/14/15 - 04/14/15 | B | | | | |
| 04/20/15 - 04/20/15 | B | 61 days used | | | |
| Total for DEN | | 0   0 | | 0:00   0:00 | |

From: LOA Frontier Employees
Sent: Wednesday, June 03, 2015 1:08 PM
To: REDACTED
Cc: LOA Frontier Employees; Coppedge, Stefanie; Lester, Richard A.; Sandman, Jacob; Thompson, Kari; Varney, Jeffrey M; Williams, JaJuan
Subject: Revised Designation for Rebecca Brigham FA DEN 413206

Rebecca,

We have received your FMLA certification. At this time we are approving your intermittent leave of absence from 5/1/15 to 11/1/15 for up to 12 days per month. Please refer to the Designation Notice that is attached for additional information.

Call off procedure:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com or the call in line at 720-374-4245 with the following information within 24 hours of the call off;

- Employee Name
- Employee Number
- Date the IFM is taken
- Who the IFM pertains to

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249

FRONTIER AIRLINES (R. BRIGHAM) - 0004843

720-374-4245Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: LOA Frontier Employees
Sent: Wednesday, June 03, 2015 1:08 PM
To: REDACTED
Cc: LOA Frontier Employees; Coppedge, Stefanie; Lester, Richard A.; Sandman, Jacob; Thompson, Kari; Varney, Jeffrey
M; Williams, JaJuan
Subject: FMLA request for Rebecca Brigham FA DEN 413206 denied exceeds max yearly allowance

Rebecca,

We have received your request to use intermittent FMLA to cover your absence on 5/31/15.  Since you have
exceeded the 72 day maximum allowed, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your
department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com and we will be happy to help.


Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.


From: LOA Frontier Employees
Sent: Wednesday, June 03, 2015 1:08 PM
To: Cain, Janette; Coppedge, Stefanie; Crew Planning-Frontier; Crew Services; F9Pass; Lester, Richard A.; McElroy,
Stuart J.; Ruiz, Lizabeth; Ryan, Patrick J.; Sandman, Jacob; Shattuck, Thomas C.; Thompson, Kari; Varney, Jeffrey M;
Williams, JaJuan
Cc: LOA Frontier Employees
Subject: I Rebecca Brigham FA DEN 413206 multiple dates

FRONTIER AIRLINES (R. BRIGHAM) - 0004844

Please code IFM for the above mentioned employee for the date(s) of: 5/12/15, 5/13/15, 5/14/15, 5/15/15, 5/26/15, 5/29/15, 5/30/15 and 6/1/15

Please code SICK for the above mentioned employee for the date(s) of: 5/31/15

Thank you,


Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

Hi Shelly,

Thank you for conducting an audit on the time taken. I'm copying everyone to keep them in the loop.

Cassie - It turns out Rebecca exhausted her LOA back in Oct 2014; therefore, the time take since then was quite a bit extra. This definitely changes our discussion with her. We will begin interactive process per doctors request; however, we need to have a heart to heart with Rebecca. She will need to make some big decisions.

Jerry

Sent from my iPhone

On Jun 4, 2015, at 7:38 AM, "Leyner, Shelly A." <shelly.leyner@flyfrontier.com> wrote:
Jerry –

I looked at the cert and Tammy approved IFM for relapse prevention counseling and support group meetings. It states approaching 9 months of sobriety. Let me know what you would like for us to do from here.

Shelly Leyner
Supervisor of Disability Program Management

From: Arellano, Gerardo
Sent: Wednesday, June 03, 2015 2:09 PM
To: Leyner, Shelly A.; Aragon, Brandi
Cc: Micklich, Cassandra A.
Subject: Rebecca Bringham

Hi Team,

I hope this finds you well.

FRONTIER AIRLINES (R. BRIGHAM) - 0004845

Can you please keep me and Cassie in the loop regarding Rebecca Bringham's request for LOA. Depending on the direction, it will affect the next steps on our end.

Regards,

Jerry Arellano | Sr. Employee Relations Manager/Special Projects | Frontier Airlines, Inc.

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by email at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity for which it is intended, even if addressed incorrectly. Please delete it from your files if you are not the intended recipient.

Omg!!!! Can I have some LOA?  :)
Can you do me a favor?  Please forward the dates, both continuous and intermittent within the last 12 rolling months. I will discuss this with her and advise that FMLA has been exhausted.

With regard to her usage, can we document her file for historical purposes that the time taken was due to incorrect coding of schedule?

Jerry

We are meeting with Rebecca this afternoon.

Sent from my iPhone

On Jun 4, 2015, at 7:38 AM, "Leyner, Shelly A." <shelly.leyner@flyfrontier.com> wrote:
Jerry –

I looked at the cert and Tammy approved IFM for relapse prevention counseling and support group meetings. It states approaching 9 months of sobriety. Let me know what you would like for us to do from here.

Shelly Leyner
Supervisor of Disability Program Management

Hi Team,

I hope this finds you well.

Can you please keep me and Cassie in the loop regarding Rebecca Bringham's request for LOA. Depending on the direction, it will affect the next steps on our end.

Regards,

Jerry Arellano | Sr. Employee Relations Manager/Special Projects | Frontier Airlines, Inc.

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

FRONTIER AIRLINES (R. BRIGHAM) - 0004846

IFM use –

2/2014-
6 days

3/2014
4 days

4/2014
4 days

5/2014
1 day

6/2014
8 days

7/2014
5 days

8/2014
8 days

9/2014
27 days FLA

10/2014
2 days FLA

10/2/2014 – 12/15/2014
MED

3/2015
1 day

4/2015
4 days

5/2015
11 days

6/2015
1 day but 3 additional days marked RPP currently

Shelly Leyner
Supervisor of Disability Program Management

Hi Shelly,

We met earlier today with Rebecca Brigham and she had some questions regarding her LOA, which I'm hoping you may be able to answer.

1)      When will she requalify for FMLA?
2)      When will she begin to accrue days back?

FRONTIER AIRLINES (R. BRIGHAM) - 0004847

Please advise.

Regards,

Jerry Arellano | Sr. Employee Relations Manager/Special Projects | Frontier Airlines, Inc.


Hey Jerry –

I ran her hours as of today and she would qualify for FMLA at this time.  If we take in to account the days she has already used since June /2014 (61 Days) so she will have a total of 11 days of FMLA available at this time.  The following days will drop off over the next couple months.  I think I may have given you the wrong date for the end of FLA originally as 10/2/2015 but it should have been 10/9/2014.

6/6/2014 – 6/10/2014
7/14/2014, 7/21/2014 – 7/23/2014
8/7/2014 – 8/9/2014, 8/21/2014 – 8/23/2014, 8/28/2014 – 8/29/2014
9/1/2014 – 10/9/2014

Shelly Leyner
Supervisor of Disability Program Management

From: LOA Frontier Employees
Sent: Thursday, June 18, 2015 7:57 AM
To: REDACTED
Cc: LOA Frontier Employees; Coppedge, Stefanie; Lester, Richard A.; Sandman, Jacob; Thompson, Kari; Varney, Jeffrey M; Williams, JaJuan
Subject: FMLA paperwork for Rebecca Brigham FA DEN 413206

Rebecca,

Thank you for contacting the Leave of Absence department. I have attached the requested FMLA paperwork.

Please be advised that the completed Certification form is due back to the Leave of Absence department by *7/3/15*.

Call off procedure while pending FMLA approval:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com or the call in line at 720-374-4245 with the following information within 24 hours of the call off;

• 	Employee Name
• 	Employee Number
• 	Date the IFM is taken
• 	Who the IFM pertains to

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com we will be happy to help.

Have a good day,

FRONTIER AIRLINES (R. BRIGHAM) - 0004848

Tamarra Kolbe


HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax


CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

| Date: 06/18/15 | | Frontier Airlines | | | | | Sabre CrewTrac | | | |
| Time: 15:10 | | Absence/Other Time Report | | | | | Page 1 | | | |
| | | From 06/18/14  To 06/17/15  Employee 413206 | | | | | | | | |
| | | Codes: FLA IFM | | | | | | | | |

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block Credit |
|------|------------|---------|----------|----------|-----|-----------|-------------|------|------|-------------|
| 413206  BRIGHAM,REBECCA | | | | | FA | | | | | |
| FLA | 09/04/14 – 09/05/14 | B | | | | | | | | |
| | 09/06/14 – 09/07/14 | B | | | | | | | | |
| | 09/09/14 – 09/10/14 | B | | | | | | | | |
| | 09/10/14 – 09/11/14 | B | | | | | | | | |
| | 09/12/14 – 09/13/14 | B | | | | | | | | |
| | 09/13/14 – 09/14/14 | B | | | | | | | | |
| | 09/16/14 – 09/17/14 | B | | | | | | | | |
| | 09/19/14 – 09/20/14 | B | | | | | | | | |
| | 09/20/14 – 09/21/14 | B | | | | | | | | |
| | 09/21/14 – 09/22/14 | B | | | | | | | | |
| | 09/23/14 – 09/24/14 | B | | | | | | | | |
| | 09/27/14 – 09/28/14 | B | | | | | | | | |
| | 09/29/14 – 09/30/14 | B | | | | | | | | |
| | 09/30/14 – 09/30/14 | B | | | | | | | | |
| | 10/01/14 – 10/01/14 | B | | | | | | | | |
| | 10/03/14 – 10/05/14 | B | | 31 days | | | | | | |
| IFM | 07/14/14 – 07/15/14 | B | | 2 days | | | | | | |
| | 07/21/14 – 07/22/14 | B | | | | | | | | |
| | 07/22/14 – 07/23/14 | B | | 2 days | | | | | | |
| | 08/07/14 – 08/08/14 | B | | | | | | | | |
| | 08/08/14 – 08/09/14 | B | | 2 days | | | | | | |
| | 08/21/14 – 08/21/14 | B | | | | | | | | |
| | 08/22/14 – 08/23/14 | B | | 2 days | | | | | | |
| | 08/28/14 – 08/29/14 | B | | 2 days | | | | | | |
| | 09/02/14 – 09/03/14 | B | | | | | | | | |
| | 09/03/14 – 09/04/14 | B | | 2 days | | | | | | |
| | 03/26/15 – 03/26/15 | B | | | | | | | | |
| | 04/02/15 – 04/02/15 | B | | | | | | | | |

FRONTIER AIRLINES (R. BRIGHAM) - 0004849

| | | | | | |
|---|---|---|---|---|---|
| 04/10/15 - 04/10/15 | B | | | | |
| 04/14/15 - 04/14/15 | B | | | | |
| 04/20/15 - 04/20/15 | B | | | | |
| 05/03/15 - 05/05/15 | B | 3 days | | | |
| 05/08/15 - 05/08/15 | B | | | | |
| 05/12/15 - 05/15/15 | B | 4 days | | | |
| 05/26/15 - 05/26/15 | B | | | | |
| 05/29/15 - 05/29/15 | B | | | | |
| 05/30/15 - 05/31/15 | B | 2 days | | | |
| 06/01/15 - 06/01/15 | B | | 65 days used | | |

| | | | | |
|---|---|---|---|---|
| Total for DEN | 0   0 | | 0:00   0:00 | |

From: Rebecca Brigham [mailto:REDACTED
Sent: Friday, June 19, 2015 7:23 AM
To: LOA Frontier Employees
Subject: Fmla 6/19

I spoke with my therapist and she is resubmitting the paperwork today. I had to use one of my days for today 6/19 for a double turn. Thanks so much
Rebecca Brigham #413206

Cert Rec - IFM Self 05/01/2015 - 11/01/2015 12 days a month

From: LOA Frontier Employees
Sent: Monday, June 22, 2015 3:59 PM
To: Rebecca Brigham
Cc: LOA Frontier Employees; Inflight DIA MGR
Subject: Rebecca Brigham Intermittent Self FMLA Designation

The Leave of Absence department has received your FMLA Certification and it supports an approval for a FMLA as follows:

• Up to 102 days a month 05/01/2015 – 11/01/2015

Call off procedure:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com or the call in line at 720-374-4245 with the following information within 24 hours of the call off;

• Employee Name
• Employee Number
• Date the IFM is taken
• Who the IFM pertains to

If you should have any further questions please feel free to contact me.

Have a good day,

Brandi Aragon

Brandi Aragon
HR Support Specialist

FRONTIER AIRLINES (R. BRIGHAM) - 0004850

Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013  Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Aragon, Brandi
Sent: Monday, June 22, 2015 4:55 PM
To: LOA Frontier Employees; Rebecca Brigham
Cc: Inflight DIA MGR
Subject: RE:*Corrected* Rebecca Brigham IntermittentSelf FMLA Designation

Rebecca,
I apologize for the typo on your first email, please see the corrected approval information below as it is also indicated on your attached designation.

• Up to 12 days a month 05/01/2015 – 11/01/2015

Thank you,


Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013  Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com


CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.


From: LOA Frontier Employees
Sent: Monday, June 22, 2015 3:59 PM
To: 'Rebecca Brigham'
Cc: LOA Frontier Employees; Inflight DIA MGR
Subject: Rebecca Brigham Intermittent Self FMLA Designation

FRONTIER AIRLINES (R. BRIGHAM) - 0004851

The Leave of Absence department has received your FMLA Certification and it supports an approval for a FMLA as follows:

- Up to 12 days a month 05/01/2015 – 11/01/2015

Call off procedure:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com or the call in line at 720-374-4245 with the following information within 24 hours of the call off;

- Employee Name
- Employee Number
- Date the IFM is taken
- Who the IFM pertains to

If you should have any further questions please feel free to contact me.

Have a good day,

Brandi Aragon



Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013 Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com


CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rush, Laura
Sent: Monday, June 22, 2015 4:43 PM
To: LOA Frontier Employees
Subject: RE: Rebecca Brigham Intermittent Self FMLA Designation

How can someone be approved for 102 days a month?


Laura T. Rush
Director, Inflight Services

P: 720-374-3457
E: lrush@flyfrontier.com
FlyFrontier.com

FRONTIER AIRLINES (R. BRIGHAM) - 0004852

From: LOA Frontier Employees
Sent: Monday, June 22, 2015 3:59 PM
To: Rebecca Brigham
Cc: LOA Frontier Employees; Inflight DIA MGR
Subject: Rebecca Brigham Intermittent Self FMLA Designation

The Leave of Absence department has received your FMLA Certification and it supports an approval for a FMLA as
follows:

• Up to 102 days a month 05/01/2015 – 11/01/2015

Call off procedure:

Follow your normal call in procedures and then contact the LOA department via email at LOA@flyfrontier.com or the
call in line at 720-374-4245 with the following information within 24 hours of the call off;

• Employee Name
• Employee Number
• Date the IFM is taken
• Who the IFM pertains to

If you should have any further questions please feel free to contact me.

Have a good day,

Brandi Aragon

Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013  Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, June 25, 2015 10:20 AM
To: LOA Frontier Employees
Subject: RE: Fmla

Oops. Yes I did thank you
On Jun 25, 2015 10:00 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:

FRONTIER AIRLINES (R. BRIGHAM) - 0004853

Rebecca,

Please clarify the dates of the FMLA use. Did you intend to type JUNE 25-28?

Thank you,

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto: REDACTED
Sent: Thursday, June 25, 2015 7:51 AM
To: LOA Frontier Employees
Subject: Fmla

I had to use my intermittent Fmla on 5 / 25-28 for a turn and a 3 day. Rebecca Brigham #413206 thanks

Date: 06/25/15                    Frontier Airlines            Sabre CrewTrac
Time: 13:33                   Absence/Other Time Report              Page 1
               From 06/27/14 To 06/28/15  Employee 413206
                   Codes: FLA IFM

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|------|-----------|---------|----------|----------|-----|-----------|-------------|------|------|-------|--------|
| | 413206  BRIGHAM,REBECCA | | | FA | | | | | | | |
| FLA | 09/04/14 - 09/05/14 | B | | | | | | | | | |
| | 09/06/14 - 09/07/14 | B | | | | | | | | | |
| | 09/09/14 - 09/10/14 | B | | | | | | | | | |
| | 09/10/14 - 09/11/14 | B | | | | | | | | | |
| | 09/12/14 - 09/13/14 | B | | | | | | | | | |
| | 09/13/14 - 09/14/14 | B | | | | | | | | | |
| | 09/16/14 - 09/17/14 | B | | | | | | | | | |
| | 09/19/14 - 09/20/14 | B | | | | | | | | | |
| | 09/20/14 - 09/21/14 | B | | | | | | | | | |
| | 09/21/14 - 09/22/14 | B | | | | | | | | | |
| | 09/23/14 - 09/24/14 | B | | | | | | | | | |
| | 09/27/14 - 09/28/14 | B | | | | | | | | | |
| | 09/29/14 - 09/30/14 | B | | | | | | | | | |
| | 09/30/14 - 09/30/14 | B | | | | | | | | | |
| | 10/01/14 - 10/01/14 | B | | | | | | | | | |
| | 10/03/14 - 10/05/14 | B | 31 days | | | | | | | | |

FRONTIER AIRLINES (R. BRIGHAM) - 0004854

| IFM | 07/14/14 - 07/15/14 | B | 2 days | |
| | 07/21/14 - 07/22/14 | B | 2 days | |
| | 07/22/14 - 07/23/14 | B | | |
| | 08/07/14 - 08/08/14 | B | 2 days | |
| | 08/08/14 - 08/09/14 | B | | |
| | 08/21/14 - 08/21/14 | B | | |
| | 08/22/14 - 08/23/14 | B | 2 days | |
| | 08/28/14 - 08/29/14 | B | 2 days | |
| | 09/02/14 - 09/03/14 | B | 2 days | |
| | 09/03/14 - 09/04/14 | B | | |
| | 03/26/15 - 03/26/15 | B | | |
| | 04/02/15 - 04/02/15 | B | | |
| | 04/10/15 - 04/10/15 | B | | |
| | 04/14/15 - 04/14/15 | B | | |
| | 04/20/15 - 04/20/15 | B | | |
| | 05/03/15 - 05/05/15 | B | 3 days | |
| | 05/08/15 - 05/08/15 | B | | |
| | 05/12/15 - 05/15/15 | B | 4 days | |
| | 05/26/15 - 05/26/15 | B | | |
| | 05/29/15 - 05/29/15 | B | | |
| | 05/30/15 - 05/31/15 | B | 2 days | |
| | 06/01/15 - 06/01/15 | B | | |
| | 06/19/15 - 06/19/15 | B | | |
| | 06/25/15 - 06/25/15 | B | | |
| | 06/26/15 - 06/28/15 | B | 3 days | 70 days used |

| Total for DEN | | 0   0 | | 0:00   0:00 |

From: Rebecca Brigham [mailto:REDACTED
Sent: Sunday, June 28, 2015 9:32 PM
To: LOA Frontier Employees
Subject: Fmla 6/29/15

I had to use my intermittent Fmla on 6/29 for a turn
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto:REDACTED
Sent: Tuesday, June 30, 2015 2:03 PM
To: LOA Frontier Employees
Subject: Fmla 6/30/15

I had to use my intermittent Fmla for a turn on 6/30
Rebecca Brigham #413206 thanks


From: LOA Frontier Employees
Sent: Wednesday, July 01, 2015 8:32 AM
To: REDACTED
Cc: LOA Frontier Employees; Thompson, Kari
Subject: FMLA for Rebecca Brigham FA DEN 413206 maximum 72 days reached

Rebecca,

I wanted to advise you that as of 6/30/15, you have reached the maximum number of days allowed per year for your intermittent FMLA.  Please be advised that any further absences will be coded as sick and subject to your department's attendance policy, until you are below the 72 day maximum again.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto:REDACTED
Sent: Thursday, July 02, 2015 8:28 PM
To: LOA Frontier Employees
Subject: Fmla 7/3/15

I had to use my intermittent Fmla (if I even have any left)  on 7/3 for a 4 day trip
Rebecca Brigham #413206 thanks

From: LOA Frontier Employees
Sent: Monday, July 06, 2015 7:47 AM
To: REDACTED
Cc: LOA Frontier Employees; Thompson, Kari
Subject: FMLA request for Rebecca Brigham FA DEN 413206 denied exceeded 72 day max

Rebecca,

We have received your request to use intermittent FMLA to cover your absences on 7/3/15, 7/4/15, 7/5/15 and 7/6/15  Since you have exceeded the 72 day maximum allowed, we are unable to approve the use of FMLA for these dates.

These dates will be coded as absences and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

FRONTIER AIRLINES (R. BRIGHAM) - 0004856

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: LOA Frontier Employees
Sent: Tuesday, July 07, 2015 9:09 AM
To: Rebecca Brigham; LOA Frontier Employees
Subject: RE: FMLA request for Rebecca Brigham FA DEN 413206 denied exceeded 72 day max

Rebecca,

Your FMLA use is as follows:

FLA : 9/4/14 – 10/5/14  31 days

IFM:    7/14/14
        7/15/14
        7/21/14
        7/22/14
        7/23/14
        8/7/14
        8/8/14
        8/9/14
        8/21/14
        8/22/14
        8/23/14
        8/28/14
        8/29/14
        9/2/14
        9/3/14
        9/4/14
        3/26/15
        4/2/15
        4/10/15
        4/14/15
        4/20/15
        5/3/15
        5/4/15
        5/5/15
        5/8/15
        5/12/15
        5/13/15
        5/14/15
        5/15/15
        5/26/15

0966

FRONTIER AIRLINES (R. BRIGHAM) - 0004857

5/29/15
5/30/15
5/31/15
6/1/15
6/19/15
6/25/15
6/26/15
6/27/15
6/28/15
6/29/15
6/30/15

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email
LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.

From: Rebecca Brigham [mailto:REDACTED
Sent: Monday, July 06, 2015 9:13 AM
To: LOA Frontier Employees
Subject: Re: FMLA request for Rebecca Brigham FA DEN 413206 denied exceeded 72 day max

Again.... when do I have more drop off? Could you email me all my ifm days for the past year so I know when they
drop off please
On Jul 6, 2015 7:47 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,

We have received your request to use intermittent FMLA to cover your absences on 7/3/15, 7/4/15, 7/5/15 and
7/6/15  Since you have exceeded the 72 day maximum allowed, we are unable to approve the use of FMLA for these
dates.

FRONTIER AIRLINES (R. BRIGHAM) - 0004858

These dates will be coded as absences and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Micklich, Cassandra A.
Sent: Wednesday, July 15, 2015 10:13 AM
To: Arellano, Gerardo
Cc: LOA Frontier Employees
Subject: RE: Brigham

I spoke to Brandi yesterday and she gave me some info on this. They are allowed to pick up or continue a portion as long as it passes back through their base. ? They do have to let scheduling know what days they are calling out for as well as LOA. ?

Cassandra Micklich
Drug & Alcohol Specialist
P: 720-374-4503
F: 720-374-9245
C: 720-936-3704
cassandra.micklich@flyfrontier.com
FlyFrontier.com

hrcompliance@flyfrontier.com Email for Results and 40.25 requests
PRIArecords@flyfrontier.com Email for PRIA responses and requests
Randoms@flyfrontier.com Email for Notifications

From: Arellano, Gerardo
Sent: Wednesday, July 15, 2015 10:07 AM
To: Micklich, Cassandra A.
Subject: RE: Brigham

Hi Cassie,

That's a really good question.  I would recommend she reach out to her Inflight Supervisor.

FRONTIER AIRLINES (R. BRIGHAM) - 0004859

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE:  If you have received this email in error, please immediately notify the sender by email at the address shown.  This email transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity for which it is intended, even if addressed incorrectly.  Please delete it from your files if you are not the intended recipient.

From: Micklich, Cassandra A.
Sent: Friday, July 10, 2015 12:59 PM
To: Arellano, Gerardo
Subject: Brigham
Importance: High

Jerry,
Rebecca brought a question to my attention and I am not sure how to answer.  She said just recently she called in for a trip she was supposed to do.  This would have been July 3rd-6th.  She said she really did not need to call out for all day because some of them would have been quick trips to and from.  Her question is when she calls out for those trips because she refused to day layovers is she allowed to "call in well" to try and pick up quick turns?

I am not sure how to answer this because if she is calling off and using her IFM it will go quickly. If she is allowed to call in and pick up shifts I don't know per the contract if that would be allowed either?

Thanks for your help,


Cassandra Micklich
Drug & Alcohol Specialist
P: 720-374-4503
F: 720-374-9245
C: 720-936-3704
cassandra.micklich@flyfrontier.com
FlyFrontier.com

hrcompliance@flyfrontier.com Email for Results and 40.25 requests
PRIArecords@flyfrontier.com Email for PRIA responses and requests
Randoms@flyfrontier.com Email for Notifications

From: LOA Frontier Employees
Sent: Wednesday, July 22, 2015 8:24 AM
To: Rebecca Brigham; LOA Frontier Employees
Subject: RE: Fmla

Rebecca,

Please verify the dates of absence.  July 31st is more than a week from now.  Is this absence related to the FMLA condition on file?

FRONTIER AIRLINES (R. BRIGHAM) - 0004860

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Wednesday, July 22, 2015 8:04 AM
To: LOA Frontier Employees
Subject: Fmla

I used my intermittent Fmla for a 4 day july 31st through August 3rd
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Wednesday, July 22, 2015 9:48 AM
To: LOA Frontier Employees
Subject: RE: Fmla 7/31/15 - 8/3/15 called out more than a week prior check with Shelly

Yes it is, those are the correct dates
On Jul 22, 2015 8:23 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,
Please verify the dates of absence. July 31st is more than a week from now. Is this absence related to the FMLA condition on file?

Tamarra Kolbe
HR-Support Specialist
Frontier Airlines
7001 Tower Road

Date: 08/07/15                 Frontier Airlines              Sabre CrewTrac
Time: 08:14               Absence/Other Time Report               Page 1
                From 08/08/14  To 08/07/15  Employee 413206
                     Codes: FLA IFM

| Code | Date Range | L/T | Tot Dscp | Tot Days | Man Occ | Days | From Prg/Rday | To Date | Date | Block | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 413206 BRIGHAM,REBECCA | | | | FA | | | | | | | |
| FLA | 09/04/14 - 09/05/14 | B | | | | | | | | | |
| | 09/06/14 - 09/07/14 | B | | | | | | | | | |
| | 09/09/14 - 09/10/14 | B | | | | | | | | | |
| | 09/10/14 - 09/11/14 | B | | | | | | | | | |
| | 09/12/14 - 09/13/14 | B | | | | | | | | | |

0970
FRONTIER AIRLINES (R. BRIGHAM) - 0004861

| Date | | Days |
|---|---|---|
| 09/13/14 - 09/14/14 | B | |
| 09/16/14 - 09/17/14 | B | |
| 09/19/14 - 09/20/14 | B | |
| 09/20/14 - 09/21/14 | B | |
| 09/21/14 - 09/22/14 | B | |
| 09/23/14 - 09/24/14 | B | |
| 09/27/14 - 09/28/14 | B | |
| 09/29/14 - 09/30/14 | B | |
| 09/30/14 - 09/30/14 | B | |
| 10/01/14 - 10/01/14 | B | |
| 10/03/14 - 10/05/14 | B | 31 days |
| IFM   08/08/14 - 08/08/14 | B | |
| 08/08/14 - 08/09/14 | B | |
| 08/21/14 - 08/21/14 | B | |
| 08/22/14 - 08/23/14 | B | 2 days |
| 08/28/14 - 08/29/14 | B | 2 days |
| 09/02/14 - 09/03/14 | B | 2 days |
| 09/03/14 - 09/04/14 | B | |
| 03/26/15 - 03/26/15 | B | |
| 04/02/15 - 04/02/15 | B | |
| 04/10/15 - 04/10/15 | B | |
| 04/14/15 - 04/14/15 | B | |
| 04/20/15 - 04/20/15 | B | |
| 05/03/15 - 05/05/15 | B | 3 days |
| 05/08/15 - 05/08/15 | B | |
| 05/12/15 - 05/15/15 | B | 4 days |
| 05/26/15 - 05/26/15 | B | |
| 05/29/15 - 05/29/15 | B | |
| 05/30/15 - 05/31/15 | B | 2 days |
| 06/01/15 - 06/01/15 | B | |
| 06/19/15 - 06/19/15 | B | |
| 06/25/15 - 06/25/15 | B | |
| 06/26/15 - 06/28/15 | B | 3 days |
| 06/29/15 - 06/29/15 | B | |
| 06/30/15 - 06/30/15 | B | |
| 07/31/15 - 08/03/15 | B | 4 days    69 days used |

From: Rebecca Brigham [mailto:REDACTED
Sent: Friday, August 07, 2015 2:56 AM
To: LOA Frontier Employees
Subject: Fmla 8/8/15 - 8/10/15

I used my intermittent Fmla on 8/7 for a double turn and a 3 day dates 8/8 - 8/10
Thanks
Rebecca Brigham #413206

08/15 and 08/16

From: Rebecca Brigham [mailto:REDACTED
Sent: Friday, August 14, 2015 8:58 AM
To: LOA Frontier Employees
Subject: Fmla

I had to use my intermittent Fmla on 8 / 15 for a 2 day thanks
Rebecca Brigham #413206

FRONTIER AIRLINES (R. BRIGHAM) - 0004862

Date: 08/24/15      Frontier Airlines      Sabre CrewTrac

Time: 10:45      Absence/Other Time Report      Page 1

From 08/24/14 To 08/23/15 Employee 413206

Codes: FLA IFM

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|------|-----------|---------|----------|----------|-----|-----------|-------------|------|------|-------|--------|
| | 413206 BRIGHAM,REBECCA | | | FA | | | | | | | |
| FLA | 09/04/14 - 09/05/14 B | | | | | | | | | | |
| | 09/06/14 - 09/07/14 B | | | | | | | | | | |
| | 09/09/14 - 09/10/14 B | | | | | | | | | | |
| | 09/10/14 - 09/11/14 B | | | | | | | | | | |
| | 09/12/14 - 09/13/14 B | | | | | | | | | | |
| | 09/13/14 - 09/14/14 B | | | | | | | | | | |
| | 09/16/14 - 09/17/14 B | | | | | | | | | | |
| | 09/19/14 - 09/20/14 B | | | | | | | | | | |
| | 09/20/14 - 09/21/14 B | | | | | | | | | | |
| | 09/21/14 - 09/22/14 B | | | | | | | | | | |
| | 09/23/14 - 09/24/14 B | | | | | | | | | | |
| | 09/27/14 - 09/28/14 B | | | | | | | | | | |
| | 09/29/14 - 09/30/14 B | | | | | | | | | | |
| | 09/30/14 - 09/30/14 B | | | | | | | | | | |
| | 10/01/14 - 10/01/14 B | | | | | | | | | | |
| | 10/03/14 - 10/05/14 B | 31 days | | | | | | | | | |
| IFM | 08/28/14 - 08/29/14 B | 2 days | | | | | | | | | |
| | 09/02/14 - 09/03/14 B | 2 days | | | | | | | | | |
| | 09/03/14 - 09/04/14 B | | | | | | | | | | |
| | 03/26/15 - 03/26/15 B | | | | | | | | | | |
| | 04/02/15 - 04/02/15 B | | | | | | | | | | |
| | 04/10/15 - 04/10/15 B | | | | | | | | | | |
| | 04/14/15 - 04/14/15 B | | | | | | | | | | |
| | 04/20/15 - 04/20/15 B | | | | | | | | | | |
| | 05/03/15 - 05/05/15 B | 3 days | | | | | | | | | |
| | 05/08/15 - 05/08/15 B | | | | | | | | | | |
| | 05/12/15 - 05/15/15 B | 4 days | | | | | | | | | |
| | 05/26/15 - 05/26/15 B | | | | | | | | | | |
| | 05/29/15 - 05/29/15 B | | | | | | | | | | |
| | 05/30/15 - 05/31/15 B | 2 days | | | | | | | | | |
| | 06/01/15 - 06/01/15 B | | | | | | | | | | |
| | 06/19/15 - 06/19/15 B | | | | | | | | | | |
| | 06/25/15 - 06/25/15 B | | | | | | | | | | |
| | 06/26/15 - 06/28/15 B | 3 days | | | | | | | | | |
| | 06/29/15 - 06/29/15 B | | | | | | | | | | |
| | 06/30/15 - 06/30/15 B | | | | | | | | | | |
| | 07/31/15 - 08/03/15 B | 4 days | | | | | | | | | |
| | 08/15/15 - 08/16/15 B | 2 days | | 67 days used | | | | | | | |

Total for DEN      0   0      0:00   0:00

From: Rebecca Brigham [mailto:REDACTED

Sent: Saturday, August 22, 2015 8:24 AM

To: LOA Frontier Employees

Subject: Fmla 8/22/15

I had to use my intermittent Fmla on 8 / 22 for my 4 day but am doing the pdx victory lap.  Thanks
Rebecca Brigham #413206

From: McCurdy, Tisha L.
Sent: Tuesday, August 25, 2015 10:25 AM
To: LOA Frontier Employees
Cc: McCurdy, Tisha L.
Subject: RE: Rebecca Brigham FA DEN 413206

Tamarra-

Fritz and I looked at this. We have corrected it. When adding codes you need to ensure the end time of the code
doesn't conflict with the start time of the pairing otherwise it will drop the pairing. Which it did in this case. We have
pay protected Rebecca due to the error.

Tisha
From: LOA Frontier Employees
Sent: Tuesday, August 25, 2015 9:05 AM
To: McCurdy, Tisha L.
Cc: LOA Frontier Employees
Subject: Rebecca Brigham FA DEN 413206

I must have done something wrong when I put IFM in for Rebecca.   I remember seeing the trip in there but now it's
not. I am not sure how to fix it, can you help?

Thanks




Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.




From: Rebecca Brigham [mailto REDACTED
Sent: Monday, August 24, 2015 3:05 PM
To: LOA Frontier Employees
Subject: Pdx turn?

FRONTIER AIRLINES (R. BRIGHAM) - 0004864

Wondering why I was removed from my pdx victory lap on the 25th tomorrow? It was on my schedule until I looked today. I was told that I could keep my turns on either end of a trip because they do come back through denver as per IFM in the contract

From: Rebecca Brigham [mailto:REDACTED
Sent: Sunday, August 30, 2015 11:43 AM
To: LOA Frontier Employees
Subject: Fmla

I had to use my intermittent Fmla for a turn on 8/30
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto:REDACTED
Sent: Friday, September 04, 2015 6:10 PM
To: LOA Frontier Employees
Subject: Fmla 9/5/15

I had to use my intermittent Fmla on 9/5 for a 3 day
Rebecca Brigham #413206 thanks

| Date: 09/08/15 | | | Frontier Airlines | | | Sabre CrewTrac | | | | |
| Time: 07:56 | | | Absence/Other Time Report | | | | Page 1 | | | |
| | From 09/05/14  To 09/04/15  Employee 413206 | | | | | | | | | |
| | | | Codes: FLA IFM | | | | | | | |

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|------|------------|---------|----------|----------|-----|-----------|-------------|------|------|-------|--------|
| 413206  BRIGHAM,REBECCA | | | | | FA | | | | | | |
| FLA | 09/05/14 - 09/05/14 | B | | | | | | | | | |
| | 09/06/14 - 09/07/14 | B | | | | | | | | | |
| | 09/09/14 - 09/10/14 | B | | | | | | | | | |
| | 09/10/14 - 09/11/14 | B | | | | | | | | | |
| | 09/12/14 - 09/13/14 | B | | | | | | | | | |
| | 09/13/14 - 09/14/14 | B | | | | | | | | | |
| | 09/16/14 - 09/17/14 | B | | | | | | | | | |
| | 09/19/14 - 09/20/14 | B | | | | | | | | | |
| | 09/20/14 - 09/21/14 | B | | | | | | | | | |
| | 09/21/14 - 09/22/14 | B | | | | | | | | | |
| | 09/23/14 - 09/24/14 | B | | | | | | | | | |
| | 09/27/14 - 09/28/14 | B | | | | | | | | | |
| | 09/29/14 - 09/30/14 | B | | | | | | | | | |
| | 09/30/14 - 09/30/14 | B | | | | | | | | | |
| | 10/01/14 - 10/01/14 | B | | | | | | | | | |
| | 10/03/14 - 10/05/14 | B | 31 days | | | | | | | | |
| IFM | 03/26/15 - 03/26/15 | B | | | | | | | | | |
| | 04/02/15 - 04/02/15 | B | | | | | | | | | |
| | 04/10/15 - 04/10/15 | B | | | | | | | | | |
| | 04/14/15 - 04/14/15 | B | | | | | | | | | |
| | 04/20/15 - 04/20/15 | B | | | | | | | | | |
| | 05/03/15 - 05/05/15 | B | 3 days | | | | | | | | |
| | 05/08/15 - 05/08/15 | B | | | | | | | | | |
| | 05/12/15 - 05/15/15 | B | 4 days | | | | | | | | |
| | 05/26/15 - 05/26/15 | B | | | | | | | | | |
| | 05/29/15 - 05/29/15 | B | | | | | | | | | |

0974

| 05/30/15 - 05/31/15 | B | 2 days |
| 06/01/15 - 06/01/15 | B | |
| 06/19/15 - 06/19/15 | B | |
| 06/25/15 - 06/25/15 | B | |
| 06/26/15 - 06/28/15 | B | 3 days |
| 06/29/15 - 06/29/15 | B | |
| 06/30/15 - 06/30/15 | B | |
| 07/31/15 - 08/03/15 | B | 4 days |
| 08/15/15 - 08/16/15 | B | 2 days |
| 08/22/15 - 08/25/15 | B | 4 days |
| 08/30/15 - 08/30/15 | B | 67 days used |

Total for DEN        0  0            0:00   0:00

From: Rebecca Brigham [mailto:REDACTED
Sent: Thursday, September 10, 2015 9:43 AM
To: LOA Frontier Employees
Subject: Fmla 9/11/15

I had to use my intermittent Fmla for a 4 day trip on 9/11 I kept the turn at the end
Rebecca Brigham #413206 thanks

Date: 09/11/15              Frontier Airlines            Sabre CrewTrac
Time: 07:51            Absence/Other Time Report              Page 1
          From 09/14/14  To 09/14/15  Employee 413206
                Codes: FLA IFM

|      |            | Tot | Tot | Man |     | From | To |      |        |
| Code | Date Range | L/T | Dscp | Days | Occ | Days | Prg/Rday | Date | Date | Block | Credit |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

413206  BRIGHAM,REBECCA              FA

| FLA | 09/14/14 - 09/14/14 | B | |
| | 09/16/14 - 09/17/14 | B | |
| | 09/19/14 - 09/20/14 | B | |
| | 09/20/14 - 09/21/14 | B | |
| | 09/21/14 - 09/22/14 | B | |
| | 09/23/14 - 09/24/14 | B | |
| | 09/27/14 - 09/28/14 | B | |
| | 09/29/14 - 09/30/14 | B | |
| | 09/30/14 - 09/30/14 | B | |
| | 10/01/14 - 10/01/14 | B | |
| | 10/03/14 - 10/05/14 | B | 17 days |
| IFM | 03/26/15 - 03/26/15 | B | |
| | 04/02/15 - 04/02/15 | B | |
| | 04/10/15 - 04/10/15 | B | |
| | 04/14/15 - 04/14/15 | B | |
| | 04/20/15 - 04/20/15 | B | |
| | 05/03/15 - 05/05/15 | B | 3 days |
| | 05/08/15 - 05/08/15 | B | |
| | 05/12/15 - 05/15/15 | B | 4 days |
| | 05/26/15 - 05/26/15 | B | |
| | 05/29/15 - 05/29/15 | B | |
| | 05/30/15 - 05/31/15 | B | 2 days |
| | 06/01/15 - 06/01/15 | B | |

0975

FRONTIER AIRLINES (R. BRIGHAM) - 0004866

| | | | | |
|---|---|---|---|---|
| 06/19/15 - 06/19/15 | B | | | |
| 06/25/15 - 06/25/15 | B | | | |
| 06/26/15 - 06/28/15 | B | 3 days | | |
| 06/29/15 - 06/29/15 | B | | | |
| 06/30/15 - 06/30/15 | B | | | |
| 07/31/15 - 08/03/15 | B | 4 days | | |
| 08/15/15 - 08/16/15 | B | 2 days | | |
| 08/22/15 - 08/25/15 | B | 4 days | | |
| 08/30/15 - 08/30/15 | B | | | |
| 09/05/15 - 09/07/15 | B | 3 days | | |
| 09/11/15 - 09/14/15 | B | 4 days | 60 days used | |

| Total for DEN | 0   0 | | 0:00   0:00 |
|---|---|---|---|

From: Rebecca Brigham [mailto REDACTED
Sent: Friday, September 18, 2015 8:26 AM
To: LOA Frontier Employees
Subject: Fmla 9/18/15

I had to use my intermittent Fmla on 9/18 for my dtw overnight 3 day keeping the pdx turns on either end
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Monday, September 21, 2015 6:56 PM
To: LOA Frontier Employees
Subject: Fmla 9/22/15

I had to use my intermittent Fmla for a 1 day trip on 9/22
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Friday, September 25, 2015 12:28 PM
To: LOA Frontier Employees; fmla@gmail.com
Subject:

I had to use my intermittent Fmla on 9/25 for a 4 day but kept the sna turn on the end
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Friday, September 25, 2015 12:48 PM
To: LOA Frontier Employees
Subject: Fmla

I had to use my intermittent Fmla on 9 / 25 for a 4 day trip but kept the sna turn on the end
Rebecca Brigham #413206 thanks

From: LOA Frontier Employees
Sent: Monday, September 28, 2015 8:28 AM
To: ¹REDACTED
Cc: LOA Frontier Employees; Thompson, Kari
Subject: FMLA request for Rebecca Brigham FA DEN 413206

Rebecca,

FRONTIER AIRLINES (R. BRIGHAM) - 0004867

We have received your request to use intermittent FMLA to cover your absence on 9/28/15. Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.


Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

| Date: 09/28/15 | | | Frontier Airlines | | | | Sabre CrewTrac | | | | |
| Time: 14:21 | | | Absence/Other Time Report | | | | Page 1 | | | | |
| | | From 09/28/14  To 09/27/15   Employee 413206 | | | | | | | | | |
| | | Codes: FLA IFM | | | | | | | | | |

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|------|-----------|---------|----------|----------|-----|-----------|-------------|------|------|-------|--------|
| 413206  BRIGHAM,REBECCA | | | | | FA | | | | | | |
| FLA | 09/28/14 - 09/28/14  B | | | | | | | | | | |
| | 09/29/14 - 09/30/14  B | | | | | | | | | | |
| | 09/30/14 - 09/30/14  B | | | | | | | | | | |
| | 10/01/14 - 10/01/14  B | | | | | | | | | | |
| | 10/03/14 - 10/05/14  B | FLA 7 days | | | | | | | | | |
| IFM | 03/26/15 - 03/26/15  B | | | | | | | | | | |
| | 04/02/15 - 04/02/15  B | | | | | | | | | | |
| | 04/10/15 - 04/10/15  B | | | | | | | | | | |
| | 04/14/15 - 04/14/15  B | | | | | | | | | | |
| | 04/20/15 - 04/20/15  B | | | | | | | | | | |
| | 05/03/15 - 05/05/15  B | 2 days (5/3/15 overnight) | | | | | | | | | |
| | 05/08/15 - 05/08/15  B | | | | | | | | | | |
| | 05/12/15 - 05/15/15  B | 3 days (5/12/15 overnight) | | | | | | | | | |
| | 05/26/15 - 05/26/15  B | | | | | | | | | | |
| | 05/29/15 - 05/29/15  B | | | | | | | | | | |
| | 05/30/15 - 05/31/15  B | 1 day (5/30/15 overnight) | | | | | | | | | |
| | 06/01/15 - 06/01/15  B | | | | | | | | | | |
| | 06/19/15 - 06/19/15  B | | | | | | | | | | |
| | 06/25/15 - 06/25/15  B | | | | | | | | | | |

0977

FRONTIER AIRLINES (R. BRIGHAM) - 0004868

| | | |
|---|---|---|
| 06/26/15 - 06/28/15 | B | 3 days |
| 06/29/15 - 06/29/15 | B | |
| 06/30/15 - 06/30/15 | B | |
| 07/31/15 - 08/03/15 | B | 4 days |
| 08/15/15 - 08/16/15 | B | 2 days |
| 08/22/15 - 08/25/15 | B | 3 days (8/22/15 overnight) |
| 08/30/15 - 08/30/15 | B | |
| 09/05/15 - 09/07/15 | B | 2 days (9/6/15 layover in MCI) |
| 09/11/15 - 09/14/15 | B | 4 days |
| 09/18/15 - 09/20/15 | B | 2 days (9/18/15 overnight) |
| 09/22/15 - 09/22/15 | B | |
| 09/25/15 - 09/27/15 | B | 3 days                    51 total FMLA days |

| Total for DEN | 0   0 | 0:00   0:00 |
|---|---|---|

From: Micklich, Cassandra A.
Sent: Monday, September 28, 2015 11:36 AM
To: LOA Frontier Employees
Subject: RE: FMLA request for Rebecca Brigham FA DEN 413206


Sorry just got to this email. I am free whenever you need me


Cassandra Micklich
Drug & Alcohol Specialist
P: 720-374-4503
F: 720-374-9245
C: 720-936-3704
cassandra.micklich@flyfrontier.com
FlyFrontier.com

hrcompliance@flyfrontier.com Email for Results and 40.25 requests
PRIArecords@flyfrontier.com Email for PRIA responses and requests
Randoms@flyfrontier.com Email for Notifications

From: LOA Frontier Employees
Sent: Monday, September 28, 2015 10:21 AM
To: Micklich, Cassandra A. <cassandra.micklich@flyfrontier.com>
Cc: LOA Frontier Employees <LOA@FlyFrontier.com>
Subject: FW: FMLA request for Rebecca Brigham FA DEN 413206

Hi Cassie,
Can we talk about this for a second when you get a chance.




Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013  Fax

0978

FRONTIER AIRLINES (R. BRIGHAM) - 0004869

brandi.aragon@flyfrontier.com
www.flyfrontier.com

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto:REDACTED
Sent: Monday, September 28, 2015 8:46 AM
To: LOA Frontier Employees
Subject: Re: FMLA request for Rebecca Brigham FA DEN 413206

This whole thing is very frustrating, in the company's policy for self disclosure is says I have to be compliant with what I am told to do or I could be fired. I am told by my sponsor and my therapist not to do layovers so I wont.  But with me doing that it seems I will be fired as well so I feel as if I am being bullied and should not have to feel this way
On Sep 28, 2015 8:42 AM, "Rebecca Brigham" <REDACTED                      wrote:
I thought I was approved for 15 days per month? If not please send me the fmla paperwork again to have it changed and then it will be covered
On Sep 28, 2015 8:27 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:
Rebecca,

We have received your request to use intermittent FMLA to cover your absence on 9/28/15.  Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.

Tamarra Kolbe

HR-Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 Office
720-374-8013 LOA Fax

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

FRONTIER AIRLINES (R. BRIGHAM) - 0004870

I thought I was approved for 15 days per month? If not please send me the fmla paperwork again to have it changed and then it will be covered

This whole thing is very frustrating, in the company's policy for self disclosure is says I have to be compliant with what I am told to do or I could be fired. I am told by my sponsor and my therapist not to do layovers so I wont. But with me doing that it seems I will be fired as well so I feel as if I am being bullied and should not have to feel this way

On Sep 28, 2015 8:42 AM, "Rebecca Brigham" <REDACTED                    wrote:

I thought I was approved for 15 days per month? If not please send me the fmla paperwork again to have it changed and then it will be covered

On Sep 28, 2015 8:27 AM, "LOA Frontier Employees" <LOA@flyfrontier.com> wrote:

Rebecca,

We have received your request to use intermittent FMLA to cover your absence on 9/28/15. Since you have exceeded the intermittent guidelines (i.e. frequency and duration) that your healthcare provider has provided for you leave, we are unable to approve the use of FMLA for this date.

The date will be coded as an absence and will be subject to the attendance policy that is in place with your department.

If you have any questions please contact the LOA Department at 720-374-4245 to leave a message or email LOA@flyfrontier.com and we will be happy to help.


Tamarra Kolbe

Hi Rebecca

Any accommodation requests must go through Shelly Leyner in HR. Unfortunately, Inflight is unable to do anything else at this time.


Best,
Laura



Laura T. Rush
Director, Inflight Services

P: 720-374-3457
E: lrush@flyfrontier.com
FlyFrontier.com

From: Rebecca Brigham [mailto REDACTED
Sent: Monday, September 28, 2015 9:02 AM
To: Rush, Laura
Subject: Feeling frustrated

Hey there Laura I was wondering if you were avaliable anytime this week to meet with me regarding my self disclosure and if we can find a solution to my calling in for overnights. Thanks Rebecca Brigham #413206

Hi Jerry –

Shall we call a meeting?

Shelly Leyner
Supervisor of Disability Program Management

Yes... Not sure what more we can do for her.. Can you see how many FMLA days she has accrued?

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

FRONTIER AIRLINES (R. BRIGHAM) - 0004871

Sorry I was at a lunch meeting. She is allowed 15 days per month as it is now. She wants more. She called in IFM for 16 days so 1 was coded sick. She is stating in an email to us that we are discrimination against her since she self-disclosed. I was thinking we can meet with her to put that to bed.

Shelly Leyner
Supervisor of Disability Program Management

We met with her once before, but maybe we do it again. Can you prepare what her balance is at this time so that we can share with her?

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

You bet.

Shelly Leyner
Supervisor of Disability Program Management

Thanks Tammie ?

Shelly Leyner
Supervisor of Disability Program Management

Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com
E: LOA@flyfrontier.com
E: LOABilling@flyfrontier.com

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Kolbe, Tamarra
Sent: Monday, September 28, 2015 2:42 PM
To: Leyner, Shelly A.
Subject: RE: Rebecca Brigham days used

Report is copied below and attached

Date: 09/28/15                    Frontier Airlines              Sabre CrewTrac
Time: 14:21                    Absence/Other Time Report                  Page 1
                   From 09/28/14  To 09/27/15  Employee 413206
                        Codes: FLA IFM

| Code | Date Range | Tot L/T | Tot Dscp | Man Days | Occ | From Days | To Prg/Rday | Date | Date | Block | Credit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 413206 BRIGHAM,REBECCA | | | | | FA | | | | | | |
| FLA | 09/28/14 - 09/28/14 | B | | | | | | | | | |
| | 09/29/14 - 09/30/14 | B | | | | | | | | | |
| | 09/30/14 - 09/30/14 | B | | | | | | | | | |
| | 10/01/14 - 10/01/14 | B | | | | | | | | | |
| | 10/03/14 - 10/05/14 | B | FLA 7 days | | | | | | | | |
| IFM | 03/26/15 - 03/26/15 | B | | | | | | | | | |
| | 04/02/15 - 04/02/15 | B | | | | | | | | | |
| | 04/10/15 - 04/10/15 | B | | | | | | | | | |
| | 04/14/15 - 04/14/15 | B | | | | | | | | | |
| | 04/20/15 - 04/20/15 | B | | | | | | | | | |
| | 05/03/15 - 05/05/15 | B | 2 days (5/3/15 overnight) | | | | | | | | |
| | 05/08/15 - 05/08/15 | B | | | | | | | | | |
| | 05/12/15 - 05/15/15 | B | 3 days (5/12/15 overnight) | | | | | | | | |
| | 05/26/15 - 05/26/15 | B | | | | | | | | | |
| | 05/29/15 - 05/29/15 | B | | | | | | | | | |
| | 05/30/15 - 05/31/15 | B | 1 day (5/30/15 overnight) | | | | | | | | |
| | 06/01/15 - 06/01/15 | B | | | | | | | | | |
| | 06/19/15 - 06/19/15 | B | | | | | | | | | |
| | 06/25/15 - 06/25/15 | B | | | | | | | | | |
| | 06/26/15 - 06/28/15 | B | 3 days | | | | | | | | |
| | 06/29/15 - 06/29/15 | B | | | | | | | | | |
| | 06/30/15 - 06/30/15 | B | | | | | | | | | |
| | 07/31/15 - 08/03/15 | B | 4 days | | | | | | | | |
| | 08/15/15 - 08/16/15 | B | 2 days | | | | | | | | |
| | 08/22/15 - 08/25/15 | B | 3 days (8/22/15 overnight) | | | | | | | | |
| | 08/30/15 - 08/30/15 | B | | | | | | | | | |
| | 09/05/15 - 09/07/15 | B | 2 days (9/6/15 layover in MCI) | | | | | | | | |
| | 09/11/15 - 09/14/15 | B | 4 days | | | | | | | | |
| | 09/18/15 - 09/20/15 | B | 2 days  (9/18/15 overnight) | | | | | | | | |
| | 09/22/15 - 09/22/15 | B | | | | | | | | | |
| | 09/25/15 - 09/27/15 | B | 3 days | | | | | | | | |

Total for DEN                    0   0                     0:00   0:00

0982

FRONTIER AIRLINES (R. BRIGHAM) - 0004873

From: Leyner, Shelly A.
Sent: Monday, September 28, 2015 2:09 PM
To: Kolbe, Tamarra
Subject: Rebecca Brigham days used

Can you please run me a report of days used towards FMLA for her. We are going to bring her in to meet with Jerry and I. Thanks.

Shelly Leyner
Supervisor of Disability Program Management

Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com
E: LOA@flyfrontier.com
E: LOABilling@flyfrontier.com

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, October 01, 2015 9:15 PM
To: LOA Frontier Employees
Subject: Fmla 10/2/15

I had to use my fmla on 10/2 for a double turn
Rebecca Brigham #413206

From: Rebecca Brigham [mailto REDACTED
Sent: Saturday, October 03, 2015 1:15 PM
To: LOA Frontier Employees
Subject: Fmla 10/3/15

I had to use my intermittent Fmla on 10/3 for a 3 day
Rebecca Brigham #413206

I have reviewed the coding and it appears that she was 2 days over her approval. I did take into account the red eye flights as one day.

FRONTIER AIRLINES (R. BRIGHAM) - 0004874

She was approved for up to 12 days per month and used the following:

1.    9/5/2015
2.    9/6/2015
3.    9/7/2015
4.    9/11/2015
5.    9/12/2015
6.    9/13/2015
7.    9/14/2015
8.    9/19/2015
9.    9/20/2015
10.   9/22/2015
11.   9/25/2015
12.   9/26/2015
13.   9/27/2015 - Sick
14.   9/28/2015 - Sick


Shelly Leyner
Supervisor of Disability Program Management


Jerry -

I just want to make sure I'm all set in the IFM days - it was my understanding Shelly was reviewing them, if I remember right??

Sent from my iPhone

On Oct 2, 2015, at 2:25 PM, Arellano, Gerardo <gerardo.arellano@flyfrontier.com> wrote:
Afternoon,

I understand she incurred another occurrence this week placing her at term.   I had an opportunity to have an attorney consult with Brian (HollandHart Firm) regarding Rebecca Brigham.

# Redacted

Next steps – if the last occurrence is not covered by FMLA, then we proceed with the term steps.  On this one, let's definitely ensure she has union representation available.

Please let me know if you have any questions.

Regards,

FRONTIER AIRLINES (R. BRIGHAM) - 0004875

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by email at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity for which it is intended, even if addressed incorrectly. Please delete it from your files if you are not the intended recipient.

To clarify, does this mean she is unable to use IFM on 09/28/15 or did she not request IFM?

Please advise.

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

Hey Shelly -

Just wanted to see where we are with Rebecca's IFM days – I thought Jerry told me you were verifying her days were correct on used IFM - Just want to make sure all is right before I move forward with the Term - Thanks!

Take Care,

Stefanie Coppedge
Inflight Services DEN Base Supervisor

P: General Offices 303-576-1480
P: DIA 303-342-7707
F: 303-348-1035
E: scoppedge@flyfrontier.com
FlyFrontier.com

Hi Stefanie,

Shelly was able to conduct an audit of Rebecca's FMLA usage. We are still checking on a couple of things, which I hope to have answers by tomorrow. Basically, I'm verifying if she requested IFM for the sick occurrence. Based on Shelly's audit she had already maximized the amount allowed for the month of September.

The other piece I'm noticing is that ALL her overnights (Aug and Sept) seem to only occur over the weekends. This seems to be a change in pattern from her previous months. I was auditing her Crew Trac schedule and find that she dropped a 4 day (9/18/15 through 09/21/15) and then ADDS a three day (9/18/15 to 9/20/15). I also noticed this a few times for the August bid month. The question that arises, is she truly doing everything (bidding accordingly) to help herself? I'm not so sure anymore.

FRONTIER AIRLINES (R. BRIGHAM) - 0004876

Laura - can we perform the following audits on Rebecca's schedules:
- Audit of her bids for the bid months of August and September, essentially the bid she submitted?  Looking at her August original bid award, there we no day trips and all overnights.
- Can we also audit what she attempted to drop/swap and was denied for these same bid months?

Once I have an opportunity to review the information (audit) it will then help dictate which direction we go.

Please advise.


Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

Jerry -

Were her trip swaps for trips that had turns through DEN so she would be able to do a portion of the trip?  Thank You for keeping me posted -

Stefanie Coppedge
Inflight Services DEN Base Supervisor

P: General Offices 303-576-1480
P:  DIA 303-342-7707
F: 303-348-1035
E: scoppedge@flyfrontier.com
FlyFrontier.com

Hi Stefanie,

With regard to her September  I checked the trip she added and it looks like she did work a portion of the trip.




Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

www.FlyFrontier.com

Jerry
This will take a bit of time to audit what you ask. I'm booked pretty much until Friday. As far as swaps, etc., that will take even more time so let me know how you want me to proceed. It's just a manually intensive process. Tish or someone in crew scheduling could audit the trades, etc. if you'd like.  Crew Planning also has access to her initial bid sheet to see what she bid for if you do not want to wait.

Let me know.  Thanks,
Laura

Jerry
I pulled up her August award and bid sheet this morning.  She did try to bid for 1 day trips first.  She couldn't hold them as you can see on the left had side below.  I haven't had time to pull up September yet.  On just her bid sheet and award do you need something else?  The data from FLICA on trades and swaps will take more time.
Laura

54 days used between September 27th 2014 and September 28th 2015.

48 days currently used between 10/8/2014 and 10/7/2015, she had some FLA drop off since then.

FRONTIER AIRLINES (R. BRIGHAM) - 0004877

Shelly Leyner
Supervisor of Disability Program Management

Jerry
I pulled up her August award and bid sheet this morning. She did try to bid for 1 day trips first. She couldn't hold them as you can see on the left had side below. I haven't had time to pull up September yet. On just her bid sheet and award do you need something else? The data from FLICA on trades and swaps will take more time.
Laura

Jerry
Below is September. Looks like she did changed her bidding a little bit by specific trips after bidding 1 day trips on specific dates. Not sure why she didn't bid for all of them at once.
Laura

Up to 12 days per month and all crew is 72 days a year.

Shelly Leyner
Supervisor of Disability Program Management

Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com
E: LOA@flyfrontier.com
E: LOABilling@flyfrontier.com

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Arellano, Gerardo
Sent: Wednesday, October 07, 2015 9:19 AM
To: Leyner, Shelly A.
Subject: RE: Rebecca Brigham - FMLA used to date

What is she approved for?

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

FRONTIER AIRLINES (R. BRIGHAM) - 0004878

Jerry

Quickly I pulled up Rebecca's history for August, September and October with open time trips, trip trades and splits for both categories. She seems to have been trying to get the one day trips.

Let me know what else you need. I think should be good though.

Laura

What do you think about having her recertify since she is requesting more than we she is approved for?

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

Sure since her IFM is supposed to be for her addiction treatment sessions which are 3 times per week. Maybe the doctor will notice she is not taking those days off.

Shelly Leyner
Supervisor of Disability Program Management

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, October 08, 2015 4:33 PM
To: LOA Frontier Employees
Subject: Fmla 10/09

I had to use my intermittent Fmla for a 4 day trip on 10/9 I kept the dfw turn on the beginning
Rebecca Brigham #413206

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, October 15, 2015 7:21 AM
To: LOA Frontier Employees
Subject: Fmla 10/14/15

I had to use my intermittent Fmla on 10/14 for a 3 day trip thanks
Rebecca Brigham #413206

I am working on that now. I ran out of time on Friday and am just back in the office today for the first time. Thanks for the reminder.

Shelly Leyner
Supervisor of Disability Program Management

FYI-sick call still says sick call.
Shelly,
Can you please recode to IFM for Sept 28th? Also, has she requested paperwork to get more days? Just want to make sure she is doing her part here. Thanks guys,

Kari Thompson
Manager, Inflight Services
P: 303-542-1479
F: 303-348-1035

0988

FRONTIER AIRLINES (R. BRIGHAM) - 0004879

E: kthompson@flyfrontier.com
FlyFrontier.com


From: Arellano, Gerardo
Sent: Thursday, October 15, 2015 12:45 PM
To: Coppedge, Stefanie
Cc: Thompson, Kari
Subject: RE: Brigham

Hi Stephanie,

Kari, Shelly and myself were able to meet with Rebecca last week.  We explained that the sick occurrence incurred will be recoded to reflect as IFM.  Thought it puts her over the number of days she is allowed under FMLA, we would make an exception for her.

We also reiterated the following:
•    Her FMLA is currently being used outside of the parameters for what she is approved for.  In an effort to assist her with getting removed from overnights, the Company has continued to make exceptions for her.
•    We are also willing to provide her new FMLA paperwork to allow her the ability to increase the number of days she allowed to use FMLA per month.

Please let me know if you have any questions.

Regards,


Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

Hi Rebecca –

I hope this finds you well.

I have attached the following forms for you to take to your physician and recertify your current FMLA.

1. DOL FMLA Certification form
2. Letter to Employee regarding recertification of FMLA
3. Letter to physician regarding recertification of FMLA
4. A copy of your most recent schedule showing IFM calls

The paperwork will be due on or before October 30, 2015 and should be faxed by the health care provide in its entirety to 720-374-8013.

I have updated the sick code on September 28, 2015 to reflect IFM as we discussed in our meeting last week.  If you have any questions please contact me directly going forward for assistance.  My contact information is below.


Sincerely,

Shelly Leyner
Supervisor of Disability Program Management

FRONTIER AIRLINES (R. BRIGHAM) - 0004880

Hi Shelly, I was wondering if I could please get the new fmla paperwork from you, I am meeting with my therapist tomorrow, so she can fill it out and get it back to you asap. Thanks so much and have a blessed day

From: Rebecca Brigham [mailto REDACTED
Sent: Saturday, October 17, 2015 8:22 PM
To: LOA Frontier Employees
Subject: Fmla 10/17/15


I had to use my intermittent Fmla on 10/17 for a 3 day but I kept the LAX turn on the end
Rebecca Brigham #413206 thanks

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, October 15, 2015 3:49 PM
To: Leyner, Shelly A.
Subject: Re: Rebecca Brigham FMLA paperwork recertification

Thanks so much!
On Oct 15, 2015 3:08 PM, "Leyner, Shelly A." <shelly.leyner@flyfrontier.com> wrote:
Hi Rebecca –

I hope this finds you well.

I have attached the following forms for you to take to your physician and recertify your current FMLA.

1. DOL FMLA Certification form
2. Letter to Employee regarding recertification of FMLA
3. Letter to physician regarding recertification of FMLA
4. A copy of your most recent schedule showing IFM calls

The paperwork will be due on or before October 30, 2015 and should be faxed by the health care provide in its entirety to 720-374-8013.

I have updated the sick code on September 28, 2015 to reflect IFM as we discussed in our meeting last week.  If you have any questions please contact me directly going forward for assistance.  My contact information is below.



Sincerely,

Shelly Leyner
Supervisor of Disability Program Management



Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com
E: LOA@flyfrontier.com
E: LOABilling@flyfrontier.com

FRONTIER AIRLINES (R. BRIGHAM) - 0004881

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

Jerry –

How do you want to handle this one. She did not make contact with the LOA department with in the permitted time frame for FMLA coverage.

Shelly Leyner
Supervisor of Disability Program Management

I woke up this morning in a panic, I for got to send you an email on Friday, I had to use my intermittent Fmla on 10 / 23 for a 4 day but I kept the pdx turn on the end. Please let me know if this will have to be coded as sick and if so what # of points am I at? Also the new fmla paperwork will be faxed by Tuesday. I hope you have a good day.

spoke to Jerry and Kari and we agreed to stay consistent with the practice of late reporting and deny the IFM.

Sent out notification to the In-flight Department and Employee Relations

Her request has been denied for lack of timely notice to the LOA Department.

Please note

•   10/23/2015 – 10/26/2015 will remain coded as sick

Shelly Leyner
Supervisor of Disability Program Management

I woke up this morning in a panic, I for got to send you an email on Friday, I had to use my intermittent Fmla on 10 / 23 for a 4 day but I kept the pdx turn on the end. Please let me know if this will have to be coded as sick and if so what # of points am I at? Also the new fmla paperwork will be faxed by Tuesday. I hope you have a good day.

Sounds good. If so, let's suspend her and schedule the fact finding.

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

FRONTIER AIRLINES (R. BRIGHAM) - 0004882

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by email at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity for which it is intended, even if addressed incorrectly. Please delete it from your files if you are not the intended recipient.

From: Coppedge, Stefanie
Sent: Tuesday, October 27, 2015 12:55 PM
To: Arellano, Gerardo
Cc: Leyner, Shelly A.
Subject: Re: Rebecca Brigham 413206 -

I believe so - I'm off today and will look mañana -

Sent from my iPhone

On Oct 27, 2015, at 12:25 PM, Arellano, Gerardo <gerardo.arellano@flyfrontier.com> wrote:
Thank you Shelly.

Would this incident place her at Term?

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

DENVER, CO

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by email at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity for which it is intended, even if addressed incorrectly. Please delete it from your files if you are not the intended recipient.

From: Leyner, Shelly A.
Sent: Tuesday, October 27, 2015 11:47 AM
To: Inflight DIA MGR
Cc: Arellano, Gerardo
Subject: Rebecca Brigham 413206 -

Her request has been denied for lack of timely notice to the LOA Department.

Please note

• 10/23/2015 – 10/26/2015 will remain coded as sick

Shelly Leyner
Supervisor of Disability Program Management

<image001.jpg>

0992

FRONTIER AIRLINES (R. BRIGHAM) - 0004883

Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com

Whatever Jerry has been working on. I haven't been involved on this one. I think Kari was working with Jerry on it. Given the situation, should we try to use the interactive process Jerry? I don't want to term if we are going to be sued or just have to bring her back. However, I don't think this is the position for her anymore because she cannot meet the qualifications. Jerry?

From: LOA Frontier Employees
Sent: Thursday, October 29, 2015 2:06 PM
To: Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Rush, Laura <lrush@flyfrontier.com>
Subject: FW: Fmla

Hi Jerry and LTR-

She is over on her FMLA days allowed this month and the last ones were denied for late contact. These will also be denied.

How would you like to move forward?

Shelly Leyner
Supervisor of Disability Program Management

Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com
E: LOA@flyfrontier.com
E: LOABilling@flyfrontier.com

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

FRONTIER AIRLINES (R. BRIGHAM) - 0004884

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Rebecca Brigham [mailto REDACTED
Sent: Thursday, October 29, 2015 2:01 PM
To: LOA Frontier Employees <LOA@FlyFrontier.com>
Subject: Fmla

I had to use my intermittent Fmla on 10 / 30 for a 4 day.
Rebecca Brigham #413206 thanks

Hi Jerry –

Rebecca Brigham did request FMLA for 10/23/2015-10/26/2015 but it was not until 10/26/2015 11:37am.  She had already exhausted her IFM allowance for the month of October by the 19th so because it was late and she had exceeded her approval the dates were denied.

As for the 10/30/2015 trip – again she did request the time as FMLA and it was within 24 hours but she is only approved for up to 12 days per month and those were exhausted on 10/19/2015.  The dates of 10/30-10/31/2015 were denied and the November dates of 11/1/2015 and 11/2/2015 will be coded according to the IFM approval, which I have completed.

I did look at the fitness for duty that was provided for her RTW and it does not state any restrictions.  I don't see that we have received anything stating that she was not able to work overnight trips.

Hope this helps.

Sincerely,

Shelly Leyner
Supervisor of Disability Program Management

From: Arellano, Gerardo
Sent: Monday, November 09, 2015 9:30 AM
To: Leyner, Shelly A. <shelly.leyner@flyfrontier.com>
Cc: Warfield, Andrea <awarfield@flyfrontier.com>
Subject: Rebecca Brigham
Importance: High

Hi Shelly,

Can you confirm if Rebecca Brigham requested IFM for either trip beginning on 10/23/15 or 10/30/15?  I know she didn't on one, but we're unsure if she failed to request IFM for both?

Please advise.

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

Jerry –

FRONTIER AIRLINES (R. BRIGHAM) - 0004885

I found this and it is Cas stating she had requested to not work overnights. Maybe she has the paperwork that states that? May want to check with her.

Shelly Leyner
Supervisor of Disability

Thanks!


Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: LOA Frontier Employees
Date:11/10/2015 5:24 PM (GMT-07:00)
To: "Arellano, Gerardo" , "Zeier, Michelle L."
Subject: FW: New paperwork - Brigham

Good Evening,
Wanted to forward you the below information regarding Rebecca Brigham. If we receive any paperwork I will forward it on to you guys.

Brandi



Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013 Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.



From: Rebecca Brigham [mailto REDACTED
Sent: Tuesday, November 10, 2015 4:07 PM
To: LOA Frontier Employees <LOA@FlyFrontier.com>
Subject: New paperwork

It has come to my attention that my most recent FMLA paperwork was sent to John Chapman SAP instead of you guys. I am having my therapist send the paperwork to you just in case we need it if HR decides not to terminate my employmet. It can be back dated 15 days to my understanding so it would cover my absence on 10/30. Thanks and I hope this email finds you well!

I have added TRM to schedule and will inactivate and ZZ as well.

FRONTIER AIRLINES (R. BRIGHAM) - 0004886

From: Thompson, Kari
Sent: Wednesday, November 11, 2015 12:36 PM
To: F9Pass <f9pass@flyfrontier.com>; Crew Planning-Frontier <CrewPlanning@flyfrontier.com>; Jacobsen, Lara <ljacobsen@flyfrontier.com>; Ryan, Patrick J. <patrick.ryan@flyfrontier.com>; Kohlhepp, Nicholas A. <Nicholas.Kohlhepp@flyfrontier.com>; Zanjani, Sanobar <sanobar.zanjani@flyfrontier.com>; Basore, Chris <cbasore@flyfrontier.com>; Mielke, Hilary <hmielke@flyfrontier.com>; Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Crew Scheduling Operations <CrewSchedulingOperations@flyfrontier.com>; Watkins, Jill <jill.watkins@flyfrontier.com>; LOA Frontier Employees <LOA@FlyFrontier.com>; Inflight DIA MGR <InflightDIAMGR@flyfrontier.com>; Crew Scheduling Supervisors <crewschedulingsupervisors@flyfrontier.com>; McCurdy, Tisha L. <tisha.mccurdy@flyfrontier.com>; Warfield, Andrea <awarfield@flyfrontier.com>; F9FAPayroll <F9FAPayroll@flyfrontier.com>
Subject: TERM (termination) Rebecca Brigham 413206 effective 11/11/15

Please update your records.

Scheduling, please note Term (terminated) as of 11/11/15 and inactivate and ZZ as of that date.

From: Thompson, Kari
Sent: Wednesday, November 11, 2015 12:36 PM
To: F9Pass <f9pass@flyfrontier.com>; Crew Planning-Frontier <CrewPlanning@flyfrontier.com>; Jacobsen, Lara <ljacobsen@flyfrontier.com>; Ryan, Patrick J. <patrick.ryan@flyfrontier.com>; Kohlhepp, Nicholas A. <Nicholas.Kohlhepp@flyfrontier.com>; Zanjani, Sanobar <sanobar.zanjani@flyfrontier.com>; Basore, Chris <cbasore@flyfrontier.com>; Mielke, Hilary <hmielke@flyfrontier.com>; Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Crew Scheduling Operations <CrewSchedulingOperations@flyfrontier.com>; Watkins, Jill <jill.watkins@flyfrontier.com>; LOA Frontier Employees <LOA@FlyFrontier.com>; Inflight DIA MGR <InflightDIAMGR@flyfrontier.com>; Crew Scheduling Supervisors <crewschedulingsupervisors@flyfrontier.com>; McCurdy, Tisha L. <tisha.mccurdy@flyfrontier.com>; Warfield, Andrea <awarfield@flyfrontier.com>; F9FAPayroll <F9FAPayroll@flyfrontier.com>
Subject: TERM (termination) Rebecca Brigham 413206 effective 11/11/15

Please update your records.

Scheduling, please note Term (terminated) as of 11/11/15 and inactivate and ZZ as of that date.

Kari Thompson
Manager, Inflight Services
P: 303-542-1479
F: 303-348-1035
E: kthompson@flyfrontier.com
FlyFrontier.com

From: Crew Scheduling Supervisors
Sent: Wednesday, November 11, 2015 12:41 PM
To: Thompson, Kari <kthompson@flyfrontier.com>; F9Pass <f9pass@flyfrontier.com>; Crew Planning-Frontier <CrewPlanning@flyfrontier.com>; Jacobsen, Lara <ljacobsen@flyfrontier.com>; Ryan, Patrick J. <patrick.ryan@flyfrontier.com>; Kohlhepp, Nicholas A. <Nicholas.Kohlhepp@flyfrontier.com>; Zanjani, Sanobar <sanobar.zanjani@flyfrontier.com>; Basore, Chris <cbasore@flyfrontier.com>; Mielke, Hilary <hmielke@flyfrontier.com>; Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Crew Scheduling Operations <CrewSchedulingOperations@flyfrontier.com>; Watkins, Jill <jill.watkins@flyfrontier.com>; LOA Frontier Employees <LOA@FlyFrontier.com>; Inflight DIA MGR <InflightDIAMGR@flyfrontier.com>; Crew Scheduling Supervisors <crewschedulingsupervisors@flyfrontier.com>; McCurdy, Tisha L. <tisha.mccurdy@flyfrontier.com>; Warfield, Andrea <awarfield@flyfrontier.com>; F9FAPayroll <F9FAPayroll@flyfrontier.com>
Subject: RE: TERM (termination) Rebecca Brigham 413206 effective 11/11/15

FRONTIER AIRLINES (R. BRIGHAM) - 0004887

I have added TRM to schedule and will inactivate and ZZ as well.

From: Thompson, Kari
Sent: Wednesday, November 11, 2015 12:36 PM
To: F9Pass <f9pass@flyfrontier.com>; Crew Planning-Frontier <CrewPlanning@flyfrontier.com>; Jacobsen, Lara <ljacobsen@flyfrontier.com>; Ryan, Patrick J. <patrick.ryan@flyfrontier.com>; Kohlhepp, Nicholas A. <Nicholas.Kohlhepp@flyfrontier.com>; Zanjani, Sanobar <sanobar.zanjani@flyfrontier.com>; Basore, Chris <cbasore@flyfrontier.com>; Mielke, Hilary <hmielke@flyfrontier.com>; Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Crew Scheduling Operations <CrewSchedulingOperations@flyfrontier.com>; Watkins, Jill <jill.watkins@flyfrontier.com>; LOA Frontier Employees <LOA@FlyFrontier.com>; Inflight DIA MGR <InflightDIAMGR@flyfrontier.com>; Crew Scheduling Supervisors <crewschedulingsupervisors@flyfrontier.com>; McCurdy, Tisha L. <tisha.mccurdy@flyfrontier.com>; Warfield, Andrea <awarfield@flyfrontier.com>; F9FAPayroll <F9FAPayroll@flyfrontier.com>
Subject: TERM (termination) Rebecca Brigham 413206 effective 11/11/15


Please update your records.

Scheduling, please note Term (terminated) as of 11/11/15 and inactivate and ZZ as of that date.


Kari Thompson
Manager, Inflight Services
P: 303-542-1479
F: 303-348-1035
E: kthompson@flyfrontier.com
FlyFrontier.com

From: Crew Planning-Frontier
Sent: Wednesday, November 11, 2015 2:11 PM
To: Thompson, Kari <kthompson@flyfrontier.com>; F9Pass <f9pass@flyfrontier.com>; Crew Planning-Frontier <CrewPlanning@flyfrontier.com>; Jacobsen, Lara <ljacobsen@flyfrontier.com>; Ryan, Patrick J. <patrick.ryan@flyfrontier.com>; Kohlhepp, Nicholas A. <Nicholas.Kohlhepp@flyfrontier.com>; Zanjani, Sanobar <sanobar.zanjani@flyfrontier.com>; Basore, Chris <cbasore@flyfrontier.com>; Mielke, Hilary <hmielke@flyfrontier.com>; Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Crew Scheduling Operations <CrewSchedulingOperations@flyfrontier.com>; Watkins, Jill <jill.watkins@flyfrontier.com>; LOA Frontier Employees <LOA@FlyFrontier.com>; Inflight DIA MGR <InflightDIAMGR@flyfrontier.com>; Crew Scheduling Supervisors <crewschedulingsupervisors@flyfrontier.com>; McCurdy, Tisha L. <tisha.mccurdy@flyfrontier.com>; Warfield, Andrea <awarfield@flyfrontier.com>; F9FAPayroll <F9FAPayroll@flyfrontier.com>
Subject: RE: TERM (termination) Rebecca Brigham 413206 effective 11/11/15

Rebecca has been made Not Active in FLICA.
No unused 2015 vacation remaining.
Unused 2016 vacation shown below.




Kyra Davis
Crew Planner
P: (720) 374-4365
E: kyra.davis@flyfrontier.com
FlyFrontier.com

FRONTIER AIRLINES (R. BRIGHAM) - 0004888

From: Thompson, Kari
Sent: Wednesday, November 11, 2015 12:36 PM
To: F9Pass <f9pass@flyfrontier.com>; Crew Planning-Frontier <CrewPlanning@flyfrontier.com>; Jacobsen, Lara <ljacobsen@flyfrontier.com>; Ryan, Patrick J. <patrick.ryan@flyfrontier.com>; Kohlhepp, Nicholas A. <Nicholas.Kohlhepp@flyfrontier.com>; Zanjani, Sanobar <sanobar.zanjani@flyfrontier.com>; Basore, Chris <cbasore@flyfrontier.com>; Mielke, Hilary <hmielke@flyfrontier.com>; Arellano, Gerardo <gerardo.arellano@flyfrontier.com>; Crew Scheduling Operations <CrewSchedulingOperations@flyfrontier.com>; Watkins, Jill <jill.watkins@flyfrontier.com>; LOA Frontier Employees <LOA@FlyFrontier.com>; Inflight DIA MGR <InflightDIAMGR@flyfrontier.com>; Crew Scheduling Supervisors <crewschedulingsupervisors@flyfrontier.com>; McCurdy, Tisha L. <tisha.mccurdy@flyfrontier.com>; Warfield, Andrea <awarfield@flyfrontier.com>; F9FAPayroll <F9FAPayroll@flyfrontier.com>
Subject: TERM (termination) Rebecca Brigham 413206 effective 11/11/15

Please update your records.

Scheduling, please note Term (terminated) as of 11/11/15 and inactivate and ZZ as of that date.


Kari Thompson
Manager, Inflight Services
P: 303-542-1479
F: 303-348-1035
E: kthompson@flyfrontier.com
FlyFrontier.com

From: LOA Frontier Employees
Sent: Thursday, November 12, 2015 4:52 PM
To: Arellano, Gerardo <gerardo.arellano@flyfrontier.com>
Cc: LOA Frontier Employees <LOA@FlyFrontier.com>; Leyner, Shelly A. <shelly.leyner@flyfrontier.com>
Subject: FW: Rebecca Brigham - Pay Protect for 10/09/2015

Hi Jerry,
Do you know anything about the below email? I looked all through the file and do not have anything noted stating she was pay protected. This is noted as an IFM day in the file.

I did not want to respond until I spoke to you because of the circumstances. Just let me know.

Thanks,



Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013 Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com

0998

FRONTIER AIRLINES (R. BRIGHAM) - 0004889

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the message and any file attachments from your computer.

From: Zanjani, Sanobar
Sent: Thursday, November 12, 2015 4:34 PM
To: LOA Frontier Employees <LOA@FlyFrontier.com>
Cc: REDACTED                  Laughlin, Melissa <melissa.laughlin@flyfrontier.com>
Subject: Rebecca Brigham

Hello,

Can you please help clarify a question Rebecca has? She said she has been in contact with LOA regarding a Pay Protect that should have been added to her schedule on the 10/9, currently it's only holding an IFM code.

If you have any questing regarding this please reach out to Rebecca, she is Cc'd on this email.

Please let us know the resolution. Thank you.

Regards,

Sanobar Zanjani (Sano)
Flight Attendant Payroll Analyst

Frontier Airlines
7001 Tower Rd
Denver, CO 80249
P: 720-374-4460
E: sanobar.zanjani@flyfrontier.com

Hi Shelly,

Can you confirm if Rebecca Brigham requested IFM for either trip beginning on 10/23/15 or 10/30/15? I know she didn't on one, but we're unsure if she failed to request IFM for both?

Please advise.

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

I'm not familiar with any pay protection off hand. I'll research when I'm back in the office tomorrow.

Sent from my iPhone

Hi Jerry,
Do you know anything about the below email? I looked all through the file and do not have anything noted stating she was pay protected. This is noted as an IFM day in the file.

I did not want to respond until I spoke to you because of the circumstances. Just let me know.

Thanks,

FRONTIER AIRLINES (R. BRIGHAM) - 0004890

Brandi Aragon
HR Support Specialist
Frontier Airlines
7001 Tower Road
Denver, CO 80249
720-374-4245 LOA
720-374-8013  Fax
brandi.aragon@flyfrontier.com
www.flyfrontier.com

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the
intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you have received
this communication in error, please notify the sender immediately by e-mail and delete the message and any file
attachments from your computer.


From: Zanjani, Sanobar
Sent: Thursday, November 12, 2015 4:34 PM
To: LOA Frontier Employees <LOA@FlyFrontier.com>
Cc: REDACTED                    Laughlin, Melissa <melissa.laughlin@flyfrontier.com>
Subject: Rebecca Brigham

Hello,

Can you please help clarify a question Rebecca has? She said she has been in contact with LOA regarding a Pay Protect
that should have been added to her schedule on the 10/9, currently it's only holding an IFM code.

If you have any questing regarding this please reach out to Rebecca, she is Cc'd on this email.

Please let us know the resolution. Thank you.

Regards,

Sanobar Zanjani (Sano)
Flight Attendant Payroll Analyst

Frontier Airlines
7001 Tower Rd
Denver, CO 80249
P: 720-374-4460
E: sanobar.zanjani@flyfrontier.com

Here is the most recent paperwork we just received on 11/10 from Rebecca Brigham.  Thought you should know.

Shelly Leyner
Supervisor of Disability Program Management

FRONTIER AIRLINES (R. BRIGHAM) - 0004891

1    CIVIL ACTION NO. 19-cv-03417-STV

2

3    REBECCA BRIGHAM,

4        Plaintiff,

5    vs.

6    FRONTIER AIRLINES, INC.

7        Defendant.
     _____/

8

9

10

11    TRANSCRIPTION OF RECORDING:

12    BrighamR_Plaintiff Records0633 [10-9-15]

13

14

15

16

17

18

19



20

21

22

23    303.832.5966   1900 Grant Street, Suite 1025    ■ www.huntergeist.com
      800.525.8490   Denver, CO 80203                  ■ scheduling@huntergeist.com

24    Your Partner in Making the Record

25

Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004336

EXHIBIT 12

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES

```
 1                       CIVIL ACTION NO. 19-cv-03417-STV

 2

 3    REBECCA BRIGHAM,

 4             Plaintiff,

 5    vs.

 6    FRONTIER AIRLINES, INC.

 7             Defendant.
     _____/
 8

 9

10

11                  TRANSCRIPTION OF RECORDING:

12        BrighamR_Plaintiff Records0633 [10-9-15]

13

14

15

16

17

18

19

20

21

22

23

24

25
```

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1002

FRONTIER AIRLINES (R. BRIGHAM) - 0004337

1     REBECCA BRIGHAM:     Thank you.

2     (Background conversation.)

3     FEMALE SPEAKER:     Hi.

4     REBECCA BRIGHAM:     Hi.     Good.     How are you?

5     FEMALE SPEAKER:     Good.

6     REBECCA BRIGHAM:     I'm wondering, I need to

7     speak with either somebody from leave of

8     absence or an inflight manager.               If anybody is

9     available.

10     FEMALE SPEAKER:     Okay.     Inflight, you know

11     what, you could probably go back down there.

12     They've got quite a few people back there.

13     REBECCA BRIGHAM:     Okay.     Where is it at?

14     I haven't been to the ...

15     FEMALE SPEAKER:     So you're going to make a

16     left.

17     REBECCA BRIGHAM:     Uh-huh.

18     FEMALE SPEAKER:     Just follow the hallway

19     all the around.

20     REBECCA BRIGHAM:     Okay.

21     FEMALE SPEAKER:     Once you get to the

22     auditorium, it's to the right of the

23     auditorium.         It will say inflight right on

24     that.

25     REBECCA BRIGHAM:     Oh, awesome.

H+G     Hunter + Geist, Inc.     800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1003

FRONTIER AIRLINES (R. BRIGHAM) - 0004338

1      FEMALE SPEAKER:      And you just go in

2   through there.

3      REBECCA BRIGHAM:      Perfect.      Thank you so

4   much.

5      FEMALE SPEAKER:      (Indiscernible) people

6   back there for you.

7      REBECCA BRIGHAM:      Awesome.      Thank you.

8      FEMALE SPEAKER:      You're welcome.

9      REBECCA BRIGHAM:      (Indiscernible) find an

10   inflight manager?

11      FEMALE SPEAKER:      Normally, yes.      They're

12   along that wall over there, but they just

13   stepped out for about five minutes.

14      REBECCA BRIGHAM:      Okay.

15      FEMALE SPEAKER:      They should be back any

16   time now.

17      REBECCA BRIGHAM:      Okay.

18      FEMALE SPEAKER:      Now, did you want to talk

19   to like Kari Thompson who's the actual inflight

20   manager?      She is over there also.

21      REBECCA BRIGHAM:  Okay.

22      FEMALE SPEAKER:      She's just --

23      REBECCA BRIGHAM:      And do you know if

24   Stephanie's here?

25      FEMALE SPEAKER:      She's not in the office

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1004

FRONTIER AIRLINES (R. BRIGHAM) - 0004339

1    today.      She's out on DIA (phonetic).

2         REBECCA BRIGHAM:      Okay.      Who's here?

3         FEMALE SPEAKER:      Jenny and Jeff --

4         REBECCA BRIGHAM:      Okay.

5         FEMALE SPEAKER:      -- are here today.

6         REBECCA BRIGHAM:      I'll wait.

7         FEMALE SPEAKER:      And they should be back

8    any time now, but there are little

9    (indiscernible) right there along the wall.

10        REBECCA BRIGHAM:      Awesome.      Thank you.

11        FEMALE SPEAKER:      Sorry.

12        REBECCA BRIGHAM:      No worries.

13        FEMALE SPEAKER:      Hi.

14        REBECCA BRIGHAM:      Hi.

15        FEMALE SPEAKER:      How are you?

16        REBECCA BRIGHAM:      I'm good.      How are you?

17        JEFF:      I'm good.      How are you?

18        REBECCA BRIGHAM:      Hi.

19        (Indiscernible.)

20        REBECCA BRIGHAM:      Yes, please.

21        FEMALE SPEAKER:      Sitting there

22    (indiscernible).

23        (Background conversation.)

24        REBECCA BRIGHAM:      Hi, Kari.

25        KARI:      You're quiet.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1005

FRONTIER AIRLINES (R. BRIGHAM) - 0004340

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                Page 5
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:    I just showed up to work

2    and they took my Dallas turn off.             I don't know

3    what to do anymore, Jeff.          I'm trying so hard

4    to do everything I'm supposed to be doing, and

5    leave of absence at every turn is just messing

6    everything up.        I called in for my four-day

7    because I can't do layovers.

8    KARI:      Right.

9    REBECCA BRIGHAM:        And I kept the Dallas

10   turn at the beginning, and they said that was

11   fine for scheduling 940 report.            So I show up

12   to work and it's -- I got on a bus and checked

13   my schedule and it wasn't there.            So I called

14   scheduling, and they're like, oh, I have it

15   noted in here that you were going to keep the

16   Dallas turn and then leave of absence contacted

17   us and took it off.          So you need to contact

18   leave of absence.        So --

19   JEFF:      Did you talk to them?

20   REBECCA BRIGHAM:        No, not yet.      I was just

21   right here obviously from being at the airport.

22   I'm just -- I don't know what to do.

23   JEFF:      Do you want to go down there?

24   REBECCA BRIGHAM:        What's that?

25   JEFF:      You want to go down there?

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1006

FRONTIER AIRLINES (R. BRIGHAM) - 0004341

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 6
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      REBECCA BRIGHAM:      Yeah, after I kind of

2    compose myself.

3      KARI:      Let me get you some tissue.          It's

4    okay.

5      REBECCA BRIGHAM:      Kari, do you know of any

6    list that's going on?

7      KARI:      What's that?

8      REBECCA BRIGHAM:      Do you know any list

9    situation that's going on on Rebecca Brigham?

10   Okay.    As long as everybody's kind of in the

11   loop.    I just don't know what to do.            Just

12   figure out like why leave of absence took the

13   Dallas turn.        This was like -- I already have a

14   hard time getting hours.

15     KARI:      (Indiscernible).

16     REBECCA BRIGHAM:      I think Jeff is trying

17   to get ahold of leave of absence.              It fees like

18   at every turn everything I try to do, it seems

19   like leave of absence is just messing with me,

20   and it's not fair.        All I'm trying to do is

21   stay sober.        It's not fair.        I'm not senior to

22   hold turns, which is the problem.

23     KARI:      Right.

24     (Background noise.)

25     JEFF:      (Indiscernible) they have a

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1007

FRONTIER AIRLINES (R. BRIGHAM) - 0004342

1    conference down there.

2       REBECCA BRIGHAM:      Okay.

3       JEFF:      I can't get ahold of any

4    (indiscernible).

5       REBECCA BRIGHAM:      I just don't know what

6    to do anymore, Jeff.

7       JEFF:      Okay.    (Indiscernible).        Okay?

8       REBECCA BRIGHAM:      Okay.    Sorry.

9       KARI:      It's okay.

10      MEREDITH:      Let's walk down there and see

11   (indiscernible) talk to somebody.            So you don't

12   feel like you know what's going on?            You just

13   showed up --

14      REBECCA BRIGHAM:      I feels like anything --

15   I showed up.        Nobody even called me to tell me

16   that I needed to contact leave of absence.  I

17   just showed up and it's like not even a

18   courtesy call.

19      JEFF:      Okay.    So removed per LOA.

20      MEREDITH:      Right.    Yep.    That's what she

21   was saying.

22      REBECCA BRIGHAM:      So and I don't know,

23   I've thrown all these options out there before

24   like can I start with a blank schedule, and

25   then it's my responsibility to build up to 60?

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1008

FRONTIER AIRLINES (R. BRIGHAM) - 0004343

1    Can I work in the office for a while.                I mean,

2    what can I do?        I've thrown all these options

3    out, and just pretty much everybody just seems

4    to know not what to do with me, basically.  I

5    just don't know what to do.                It's getting so

6    frustrating.

7        MEREDITH:       If you don't mind me asking, do

8    why you keep this job?          I mean, why -- if it

9    doesn't really work for what you're trying to

10   accomplish, why are you keeping?

11       REBECCA BRIGHAM:         It works for me because

12   I love the people I work with and I do love the

13   job.     I just had two layovers and I like

14   working with the customers.               I still the

15   mentality of the old customer service.                I like

16   making people happy and I love the people I

17   work with.       This is like the perfect job for me

18   as long as I can just do day trips.

19       MEREDITH:       Right.

20       REBECCA BRIGHAM:         And it was able to be

21   okay for a while as long as I could pick up

22   enough, and then call out for my overnights but

23   keep the turns on either end.

24       MEREDITH:       Yeah.

25       REBECCA BRIGHAM:         And then I don't know

H+G   Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1009

FRONTIER AIRLINES (R. BRIGHAM) - 0004344

1    what's going on.          I don't know if like they're

2    just trying to push me out and make me so

3    frustrated that I quit.

4        MEREDITH:      I actually, I don't think that

5    is the case at all, but, unfortunately.

6        REBECCA BRIGHAM:       Okay.

7        MEREDITH:      Part of the job that you love

8    is layovers and --

9        REBECCA BRIGHAM:       Right.

10       MEREDITH:      -- it's all by seniority.

11       REBECCA BRIGHAM:       Right, and I get it.

12       MEREDITH:      That's why I was asking like if

13   this is so incredibly stressful --

14       REBECCA BRIGHAM:       I don't know what else

15   to do.

16       MEREDITH:      Yeah.

17       REBECCA BRIGHAM:       I don't want to throw

18   myself for a loop in this whole recovery thing.

19   It's just insurance is through me.              My babies

20   can't have no insurance.

21       MEREDITH:      Yeah.    Okay.

22       REBECCA BRIGHAM:       I don't know what to do.

23       MEREDITH:      Have you ever looked at other

24   positions within the company, or you're not

25   interested in that?



FRONTIER AIRLINES (R. BRIGHAM) - 0004345

1    REBECCA BRIGHAM:      Well, I talked to

2    training at one point and thought that maybe I

3    could, or I just -- I don't know where to took

4    I don't know.

5        MEREDITH:      On ALTI PRO (phonetic).

6        REBECCA BRIGHAM:      Okay.

7        MEREDITH:      You go into ALTI PRO and the

8    job listings are there.

9        REBECCA BRIGHAM:      Okay.

10       MEREDITH:      And I would strongly suggest

11   like starting looking at it.

12       REBECCA BRIGHAM:      And see if there's

13   something.

14       MEREDITH:      And you want to look at it

15   every week because a lot of times jobs are only

16   posted for one week.

17       REBECCA BRIGHAM:      Okay.

18       MEREDITH:      So I would just get in the

19   habit, Rebecca, every Monday getting on there

20   and seeing what's new.

21       REBECCA BRIGHAM:      Seeing what's knew.

22       MEREDITH:      Every Monday and every Friday,

23   and see what's in there.

24       REBECCA BRIGHAM:      Right.

25       MEREDITH:      Because there's all these

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1011

FRONTIER AIRLINES (R. BRIGHAM) - 0004346

1   different opportunities that you probably

2   aren't even aware of that exist.

3        REBECCA BRIGHAM:       Right.

4        MEREDITH:       Right?      And it might not

5   necessarily be inflight.

6        REBECCA BRIGHAM:       Right.

7        MEREDITH:       But there's, I mean, you know,

8   there's a lot happening.            So ...

9        REBECCA BRIGHAM:       Okay.

10       MEREDITH:       I mean, since you want to stay

11  with Frontier, and I know it's not the flight

12  attendant job, but --

13       REBECCA BRIGHAM:       Right.

14       MEREDITH:       -- I don't think it's going to

15  get easier with the schedules.

16       REBECCA BRIGHAM:       Right.      I know Denver is

17  just going -- I mean.

18       MEREDITH:       I mean, that's the reality of

19  what's happening --

20       REBECCA BRIGHAM:       Right.

21       MEREDITH:       -- with our base here.

22       REBECCA BRIGHAM:       Right, and I get it.

23       MEREDITH:       The schedules are not going to

24  get better as far as turns.

25       REBECCA BRIGHAM:       Right, and I get it.  I



Hunter + Geist, Inc.     800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1012

FRONTIER AIRLINES (R. BRIGHAM) - 0004347

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES
Page 12

1    think it's just hard for me to let go of it,

2    you know?

3        MEREDITH:      Sure.      Sure.

4        REBECCA BRIGHAM:      Yeah.     I just don't

5    know.

6        MEREDITH:      But for your own health and

7    well-being maybe you need to start looking

8    (indiscernible).         So that you aren't constantly

9    having to go through this.          It's not worth it.

10   It's just not.

11       REBECCA BRIGHAM:      Yeah.

12       MEREDITH:      You know?

13       REBECCA BRIGHAM:      Right.

14       MEREDITH:      So maybe start looking at other

15   opportunities.

16       REBECCA BRIGHAM:      Okay.

17       MEREDITH:      But for right now let's try and

18   get you through the immediate.

19       REBECCA BRIGHAM:      Right.

20       MEREDITH:      Okay.    And?    We'll have Jeff

21   take you down there.

22       REBECCA BRIGHAM:      Okay.

23       MEREDITH:      And find out what the heck is

24   going on and --

25       REBECCA BRIGHAM:      Okay.



FRONTIER AIRLINES (R. BRIGHAM) - 0004348

1       MEREDITH:        -- why you were removed and,

2    you know, you deserve to have an answer on

3    that.

4       Right.

5       MEREDITH:       And I don't know.        I seriously

6    have no idea.

7       REBECCA BRIGHAM:        Okay.

8       MEREDITH:      So.    Okay?

9       REBECCA BRIGHAM:        Awesome.    Thank you.

10      MEREDITH:      Uh-huh.     I'm proud of you.

11      REBECCA BRIGHAM:        Thank you.

12      MEREDITH:      What you've done is super

13   courageous.

14      REBECCA BRIGHAM:        Thank you.

15      MEREDITH:      It really is.

16      REBECCA BRIGHAM:        Thanks.     It's hard right

17   now.    Thank you, Meredith.

18      MEREDITH:      Uh-huh.     Yeah.

19      REBECCA BRIGHAM:        Thank you.     Thank you.

20      MEREDITH:      Uh-huh.     Okay.    Go on down

21   there and see what's going on.          Okay?    If you

22   need anything, let me know.

23      REBECCA BRIGHAM:        Thank you so much, Kari.

24   I'll move your chair back.

25      MEREDITH:      No, it's okay.       I just have to

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1014   FRONTIER AIRLINES (R. BRIGHAM) - 0004349

1    leave it out there because it's crowded

2    (indiscernible).

3        REBECCA BRIGHAM:        Thank you.

4        (Indiscernible).

5        REBECCA BRIGHAM:        And nobody's answering?

6    Okay.

7        (Indiscernible).

8        REBECCA BRIGHAM:        Ah-huh.     Yeah, I called

9    them (indiscernible).

10       Just what everybody (indiscernible) get

11   like besides you .

12       (Walking.) (Background conversation.)

13       (Background noise.)

14       REBECCA BRIGHAM:        (Indiscernible).

15       JEFF:      Oh, (indiscernible).

16       REBECCA BRIGHAM:        Hi.

17       JEFF:      This is our new (indiscernible)

18   supervisor.

19       How are you?         Good to see you.

20   (Indiscernible).

21       FEMALE SPEAKER:        I guess so.        I got the

22   easiest thing wrong.           (indiscernible) A, D and

23   F or A, D and E.        I don't mind getting

24   something wrong if it's (indiscernible) or

25   tricky.


Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004350

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                     Page 15
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      FEMALE SPEAKER:       (Indiscernible).

2      JEFF:       (Indiscernible) Meredith.            This is

3   our new tracking supervisor.                  She's going

4   through initial too.            So ...

5      REBECCA BRIGHAM:       Nice.

6      JEFF:       So, yeah.

7      FEMALE SPEAKER:       It's been fund.         A really

8   good experience so far.

9      REBECCA BRIGHAM:       Good.

10      FEMALE SPEAKER:       How long have you been

11   with Frontier?

12      REBECCA BRIGHAM:       Eight-and-a-half years.

13      FEMALE SPEAKER:       Wow.    That's a long time.

14   I was telling (indiscernible) that, I'm like it

15   says something if everyone's been here like a

16   while, you know?

17      JEFF:       Yeah.

18      FEMALE SPEAKER:       How's your morning going?

19      JEFF:       Busy.    You know, I can't believe

20   it's 9:30 and I've been here for two-and-a-half

21   hours already.

22      FEMALE SPEAKER:       It could be worse.        You

23   could be at the airport, right.

24      JEFF:       (Indiscernible).

25      FEMALE SPEAKER:       Okay.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004351

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015          Page 16
REBECCA BRIGHAM v. FRONTIER AIRLINES

1     JEFF:      So (indiscernible) meeting in two

2     hours.

3     FEMALE SPEAKER:      Uh-huh.

4     JEFF:      I was going to ask you real quick

5     because Kari had asked me yesterday, did Rich

6     train you at all on that?          I know --

7     FEMALE SPEAKER:      I know how to do open

8     call.

9     JEFF:      (Indiscernible).

10    FEMALE SPEAKER:      Yeah, he kind of touched

11    on it.     I know it has to be done and that's

12    kind of like a gray area for me, because I'm

13    not like -- do you determine like where it

14    should be coded to, or is that something --

15    it's a gray area.          So, no, I need more.

16    JEFF:      Inflight kind of -- he just kind of

17    threw it on me.          I mean, not in a bad way.

18    It's just of (indiscernible).

19    FEMALE SPEAKER:      Right.

20    JEFF:      (Indiscernible).          So -- she -- I

21    said I would ask you.

22    FEMALE SPEAKER:      I mean, I don't mind

23    doing it once I get, you know, settled and into

24    my routine.

25    JEFF:      (Indiscernible).



Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004352

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                                  Page 17
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    FEMALE SPEAKER:        Yeah, I think so.

2    JEFF:      So I'm just --

3    FEMALE SPEAKER:        That was the impression I

4    got.

5    JEFF:      (Indiscernible) getting to.                So

6    we'll touch base once you get --

7    FEMALE SPEAKER:        You don't want to keep

8    doing it?

9    JEFF:      I don't mind it but I'm just

10   (indiscernible).

11   FEMALE SPEAKER:        Yeah.

12   JEFF:      (Indiscernible).

13   FEMALE SPEAKER:        Yeah.      Yeah.      Yeah.

14   Right.      Right.

15   JEFF:      Because you start so much earlier.

16   FEMALE SPEAKER:        Right.      Right.      It makes

17   sense.      Yeah, it makes sense.            That's fine.

18   I'm there for eight hour anyways, right?

19   JEFF:      (Indiscernible).

20   FEMALE SPEAKER:        Yeah, we'll connect.

21   JEFF:      Get together.

22   FEMALE SPEAKER:        Okay.

23   JEFF:      Okay.

24   FEMALE SPEAKER:        I don't want to keep you

25   guys.      It was nice meeting you.

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1018                    FRONTIER AIRLINES (R. BRIGHAM) - 0004353

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015          Page 18
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      REBECCA BRIGHAM:      Nice to meet you.

2      JEFF:      So, yeah.

3      FEMALE SPEAKER:      Okay.

4      JEFF:      Anyway.

5      FEMALE SPEAKER:      So are you just hanging

6    out today or are you for the (indiscernible?)

7      REBECCA BRIGHAM:      No, just dealing with

8    leave of absence stuff.

9      FEMALE SPEAKER:      Oh.

10      JEFF:      (Indiscernible).

11      FEMALE SPEAKER:      How's your little puppy?

12      JEFF:      Good.

13      REBECCA BRIGHAM:      Do you have pictures?

14      JEFF:      (Indiscernible).

15      FEMALE SPEAKER:      I know.      How sweet,

16    though.

17      JEFF:      I'll show you the dog sitter from

18    yesterday.

19      FEMALE SPEAKER:      You have a dog sitter

20    every day, or do you take him to doggy daycare?

21      JEFF:      Oh, she comes by.

22      FEMALE SPEAKER:      Oh, okay.

23      JEFF:      She's usually available.      She's a

24    flight attendant for Southwest.

25      FEMALE SPEAKER:      Do you crate train, or

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1019

FRONTIER AIRLINES (R. BRIGHAM) - 0004354

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 19
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    no?

2         JEFF:      Uh-huh.

3         FEMALE SPEAKER:      You do.

4         JEFF:      Yeah, but (indiscernible) with the

5    dog sitter yesterday.

6         REBECCA BRIGHAM:      Oh.

7         FEMALE SPEAKER:      Oh.    It's cute. Gosh,

8    it's grown a lot, huh?

9         JEFF:      She's 14 pounds.

10        FEMALE SPEAKER:      Is she really?       Did you

11   see that video that was on the news about a

12   little French bulldog chasing bears off the --

13        JEFF:      Yeah.

14        REBECCA BRIGHAM:      Yes.

15        FEMALE SPEAKER:      I thought of you.

16        JEFF:      I know.    That would be totally

17   like -- now, her I'm not so much sure yet, but

18   the older French bulldog.

19        FEMALE SPEAKER:      Uh-huh.    Oh, my gosh.  I

20   like your couch or your chair.

21        JEFF:      Thank you.

22        FEMALE SPEAKER:      Is that not a sweet

23   picture?    I'm a dog lover.

24        REBECCA BRIGHAM:      Are you?

25        FEMALE SPEAKER:      Oh, my God, how cute.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1020

FRONTIER AIRLINES (R. BRIGHAM) - 0004355

1    JEFF:       So she has talks with her and tries

2    to tell her that, you know, this is what you

3    need to do, or it's time to go pee.                    So ...

4    because she's stubborn.

5        FEMALE SPEAKER:       How are the other ones

6    adjusting to her?

7        JEFF:       Good.    The older (indiscernible) is

8    kind of more like we'll maybe play or we maybe

9    won't.

10       FEMALE SPEAKER:       Yeah, I'll get back to

11   you on that.

12       JEFF:       Yeah.

13       FEMALE SPEAKER:       Cute.    Cute.    Cute.

14       JEFF:       Isn't that funny?

15       FEMALE SPEAKER:       Yes.

16       REBECCA BRIGHAM:       How many in this class?

17       FEMALE SPEAKER:       I think it started out

18   like originally when the all the invites went

19   out, I think it was like mid 70s or --

20       REBECCA BRIGHAM:       Wow.

21       FEMALE SPEAKER:   But then it dropped down

22   to I think maybe 65 showed, and then I think

23   now it's probably in the low 50s, high -- I

24   don't know.        I tried to count, but I get

25   distracted.

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1021                    FRONTIER AIRLINES (R. BRIGHAM) - 0004356

1    JEFF:       My class was 18, and I think

2    there's four of us left.

3    FEMALE SPEAKER:       Really?

4    JEFF:       Uh-huh.

5    FEMALE SPEAKER:       Wow.   And I guess next

6    month there's like 75 scheduled or 80.

7    REBECCA BRIGHAM:       Wow.

8    JEFF:       Think we started with 18 and we

9    graduated 15 or something.

10   REBECCA BRIGHAM:       Wow.

11   FEMALE SPEAKER:       Wow.   Yeah.

12   REBECCA BRIGHAM:       Because at the time we

13   had like a big class.         I think we had like

14   almost 50.

15   JEFF:       Did you?

16   REBECCA BRIGHAM:       And then we graduated

17   like 42.

18   JEFF:       I was one of those little filler

19   classes (indiscernible).         You know, those kind

20   of like -- kind of just for a little attrition.

21   REBECCA BRIGHAM:       Yeah.

22   FEMALE SPEAKER:       Yeah.   Yeah.   Yeah.

23   Yeah.

24   JEFF:       But everything was all Denver, you

25   know.   (Indiscernible).

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1022                FRONTIER AIRLINES (R. BRIGHAM) - 0004357

1    REBECCA BRIGHAM:      Yeah.

2    FEMALE SPEAKER:      Yeah.    Yeah.    Yeah.

3    So is Kari here today?

4    JEFF:      Yeah.

5    FEMALE SPEAKER:      Oh, she is.

6    REBECCA BRIGHAM:      Good.    How you are?

7    JEFF:      Yeah, so ...

8    FEMALE SPEAKER:      Everything's going good,

9    though.      (Indiscernible) I've been away from

10   home now for I guess four weeks already.              Yeah,

11   so because they had training (indiscernible)

12   Chicago and then these guys and that got turned

13   into initial.

14   JEFF:      She's a jack-of-all-trades.

15   REBECCA BRIGHAM:      Nice.    You kind of have

16   to be a manager.

17   FEMALE SPEAKER:      Yeah.    Yeah.    Yeah.

18   Yeah.    So I just hope I don't forget everything

19   I learned before I went through initial, you

20   know, but they taught me and stuff.              Which I

21   don't think -- I think it's pretty -- it's just

22   repetitive, once I do it a few times.

23   REBECCA BRIGHAM:      It will be like riding a

24   bike.

25   FEMALE SPEAKER:      Right.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1023

FRONTIER AIRLINES (R. BRIGHAM) - 0004358

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES                                         Page 23

1     REBECCA BRIGHAM:    Like, oh, I do remember

2     that.

3     FEMALE SPEAKER:    Yeah.    Yeah.    Yeah.

4     Yeah.

5     JEFF:    I did the same as you, though.  I

6     started as manager and then --

7     FEMALE SPEAKER:    Had to get through

8     initial.

9     JEFF:    Yep, so it was funny because I had

10    started and all of a sudden, oh, you didn't go

11    through initials I was like.

12    REBECCA BRIGHAM:    What?

13    JEFF:    Okay.    Because I didn't know when

14    because there were really no classes, and all

15    of sudden (indiscernible).

16    REBECCA BRIGHAM:    So now have you actually

17    ever flown, Jeff?

18    JEFF:    Not the line.

19    REBECCA BRIGHAM:    Not the line.

20    FEMALE SPEAKER:    Never?    Never?

21    REBECCA BRIGHAM:  You're (indiscernible).

22    (Talking simultaneously.)

23    JEFF:    Yep.

24    FEMALE SPEAKER:    No kidding?

25    JEFF:    Yes.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004359

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015                  Page 24
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:      Now, if you wanted to,

2    could you?

3    JEFF:      Uh-huh.

4    REBECCA BRIGHAM:      Okay.   Good.   Good.

5    JEFF:      Because I was Midwest and Republic

6    (indiscernible) Frontier so I actually flew for

7    Republic on Sunday night and started with

8    Frontier on (indiscernible).

9    FEMALE SPEAKER:      Did you really?

10   JEFF:      Uh-huh.

11   REBECCA BRIGHAM:      Nice.

12   JEFF:      I finished my classes

13   (indiscernible) flying Republic on a Sunday

14   night turn.

15   FEMALE SPEAKER:      Oh, wow.

16   REBECCA BRIGHAM:      That's cool.

17   FEMALE SPEAKER:      Do you miss it, or not

18   really?

19   JEFF:      The line?

20   FEMALE SPEAKER:      Yes.

21   JEFF:      Pros and cons.

22   REBECCA BRIGHAM:      Yeah.

23   FEMALE SPEAKER:      Yeah.    Yeah.

24   JEFF:      You know?

25   FEMALE SPEAKER:      Yeah.

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1025

FRONTIER AIRLINES (R. BRIGHAM) - 0004360

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015          Page 25
REBECCA BRIGHAM v. FRONTIER AIRLINES

1   JEFF:      So some days you'll be like

2   (indiscernible) miss the line and then there's

3   other times where you're like well

4   (indiscernible).

5      FEMALE SPEAKER:      Right.      Yeah, it's apples

6   and oranges.      Yeah.      Yeah.      Yeah.      I think it's

7   really -- I came from -- well, majority of

8   where I was at, U.S. Airways, but I came from

9   regional, I was a base manager there

10   (indiscernible),          but um, and I absolutely did

11   not like flying the box and all of that.          You

12   know.

13      REBECCA BRIGHAM:      Yeah.

14      FEMALE SPEAKER:      That was just -- that's

15   why I wanted get into the office, but now, you

16   know, through initial I'll get that nostalgia.

17   Like, the jets and the crew, and, you know, all

18   of that.      This is (indiscernible), you know,

19   so.      But, yeah.

20      JEFF:      That's kind of my (indiscernible)

21   with Republic is, you know, they brought in

22   (indiscernible), you know, because took over

23   (indiscernible) from Frontier.

24      REBECCA BRIGHAM:      Yeah.

25   JEFF:      And so you had dual.      You had jets

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1026          FRONTIER AIRLINES (R. BRIGHAM) - 0004361

1    and --

2         REBECCA BRIGHAM:      And the props.

3         FEMALE SPEAKER:      And the probs, yeah.

4         JEFF:      (Indiscernible) two flight

5    attendants and see (indiscernible).

6         FEMALE SPEAKER:      See, that's fun.      We had

7    (indiscernible).        So loud, noisy,

8    (indiscernible).

9         REBECCA BRIGHAM:      Yeah.

10        JEFF:      And honestly (indiscernible).

11        REBECCA BRIGHAM:      Yeah.    Yeah.    Yeah.

12   Yeah.

13        JEFF:      (Indiscernible) rows.        So

14   (indiscernible).

15        REBECCA BRIGHAM:      Yeah.

16        FEMALE SPEAKER:      (Indiscernible), but

17   they're a lot more quiet today.

18        JEFF:      They are.

19        FEMALE SPEAKER:      You know?

20        JEFF:      Uh-huh.

21        FEMALE SPEAKER:      Like, a lot more quite.

22   So ...

23        JEFF:      I actually miss flying into all the

24   mountain communities.

25        FEMALE SPEAKER:      Do you really?

H+G   Hunter + Geist, Inc.   800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004362

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 27
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    JEFF:      It's so beautiful.

2    FEMALE SPEAKER:      Yeah.    Yeah.

3    REBECCA BRIGHAM:      I bet.    I bet you don't

4    miss like the Aspen people or, no, what is

5    Vail?    Vail people.

6    JEFF:      Oh, they're awful.

7    FEMALE SPEAKER:      Are they really high

8    maintenance?

9    REBECCA BRIGHAM:      Yeah.

10   FEMALE SPEAKER:      Really high maintenance.

11   REBECCA BRIGHAM:      Like the do everything

12   for me you servants.      It's their attitude.

13   JEFF:      To be honest with you, I know this

14   sounds bad, but I just basically steered clear

15   of them and just did the (indiscernible) safety

16   things that would jeopardize their safety.

17   FEMALE SPEAKER:      Right.

18   JEFF:      That's all that I basically

19   enforced the codes (indiscernible).

20   REBECCA BRIGHAM:      Yeah.

21   FEMALE SPEAKER:      Uh-huh.

22   JEFF:      It's not worth it, you know?

23   REBECCA BRIGHAM:      It's like how I deal

24   with my daughter.      Seriously.

25   FEMALE SPEAKER:      How old is she?

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1028

FRONTIER AIRLINES (R. BRIGHAM) - 0004363

1       REBECCA BRIGHAM:      Five.

2       FEMALE SPEAKER:      Oh, gosh.

3       REBECCA BRIGHAM:      And then I have a

4    two-and-a-half year old.            So it's like, what.

5       FEMALE SPEAKER:      Do you really?

6       JEFF:      And the funniest thing is, we had

7    first class on those we had three year old in

8    first class.

9       REBECCA BRIGHAM:      Oh, you did?

10      JEFF:      So it was one seat, maybe two and

11   (indiscernible) first class service

12   (indiscernible).

13      FEMALE SPEAKER:      Yeah.

14      JEFF:      (Indiscernible) you had to do a

15   first class service even on the mountain

16   routes.

17      REBECCA BRIGHAM:      Wow.

18      FEMALE SPEAKER:      And it's pretty quick,

19   huh.

20      JEFF:      Yeah, like 30 minutes.            Serve

21   cocktails as you're bouncing around, you know.

22      REBECCA BRIGHAM:      Right.      30 minutes,

23   right?      Was it about 30 minutes?

24      JEFF:      Yeah.

25      FEMALE SPEAKER:      Yeah.      Yeah.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1029

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 29
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      REBECCA BRIGHAM:      Just tossing a bunch of

2   stuff, serve yourself.

3      JEFF:      You have to give them you know,

4   (indiscernible).

5      REBECCA BRIGHAM:      Really?

6      JEFF:      Yes, on a prop (indiscernible).

7      FEMALE JEFF:      It's out of control.

8      JEFF:      I know.

9      FEMALE SPEAKER:      Out of control.

10     JEFF:      That's that, I don't care.            You

11   know?

12     FEMALE JEFF:      Yeah.    Yeah.    Yeah.

13     JEFF:      Then you have to hang up, you know,

14   their coats in the (indiscernible).

15     FEMALE SPEAKER:      And now look what you're

16   doing.

17     JEFF:      Right.

18     FEMALE SPEAKER:      Just makes you love your

19   job (indiscernible).

20     JEFF:      Uh-huh.

21     FEMALE SPEAKER:      You're like now I know

22   why I do this.

23     JEFF:      Yep.

24     REBECCA BRIGHAM:      What could have been.

25     JEFF:      It was funny because they are like,

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004365

1   oh, you know, the probs are coming.                 I was

2   like, you're kidding me there's (indiscernible)

3   on this.

4        FEMALE SPEAKER:      Uh-huh.    What year was

5   this?

6        JEFF:      Oh, this was just up until three

7   years ago.

8        FEMALE SPEAKER:      Oh, really?

9        JEFF:      They sill have them.

10       FEMALE SPEAKER:      Do they have express?

11   Who does their express line?

12       JEFF:      (Indiscernible).

13       REBECCA BRIGHAM:      We used to have links.

14   We used to have links.

15       FEMALE SPEAKER:      Okay.    Maybe that's what

16   I was thinking.

17       JEFF:      Yep.

18       FEMALE SPEAKER:      But that's no longer?

19       JEFF:      Huh-uh.

20       REBECCA BRIGHAM:      No.

21       JEFF:      And that's when Republic took over,

22   they bought all their equipment.              The propeller

23   (indiscernible) and they flown their routes.

24       REBECCA BRIGHAM:      Uh-huh.    Yeah.    There

25   for a while, when it seemed more like it was

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1031                       FRONTIER AIRLINES (R. BRIGHAM) - 0004366

1    going to be a merger when everybody was like,

2    oh, well, you know, like it's all going to be

3    one, and that went through that phase.

4        JEFF:        Which was --

5        REBECCA BRIGHAM:        And then they dissolved

6    links.

7        JEFF:        (Indiscernible) nice routes to

8    Colorado (indiscernible) Springs, you know,

9    Durango and all that.

10       REBECCA BRIGHAM:        I had a girlfriend who

11   just did Colorado Spring stand ups.                It's like

12   nice.

13       JEFF:        Uh-huh.

14       REBECCA BRIGHAM:        Yeah.

15       JEFF:        Yep.    Uh-huh.    (indiscernible).

16       REBECCA BRIGHAM:        Yeah.

17       JEFF:        We actually flew the jet, the 190.

18       REBECCA BRIGHAM:        Where?

19       JEFF:        In Colorado Springs.

20       FEMALE SPEAKER:        Oh, really?

21        REBECCA BRIGHAM:   Yeah.

22       FEMALE SPEAKER:        Remember when we did

23   that?

24       REBECCA BRIGHAM:        Uh-huh.

25       JEFF:        And that seated 99 people.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1032

FRONTIER AIRLINES (R. BRIGHAM) - 0004367

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 32
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    FEMALE SPEAKER:      Wow.

2    REBECCA BRIGHAM:      Wow.

3    FEMALE SPEAKER:      Rebecca, what kind of

4    flights do you prefer to do?

5    REBECCA BRIGHAM:      Day trips.

6    FEMALE SPEAKER:      (Indiscernible) ones?

7    REBECCA BRIGHAM:      Yeah.

8    FEMALE SPEAKER:      Yeah.    Yeah.    Yeah.

9    REBECCA BRIGHAM:      And I try to avoid New

10   York.

11   FEMALE SPEAKER:      Uh-huh.

12   REBECCA BRIGHAM:      Just because they're

13   so -- I'm so much like bubblier and friendlier

14   than they are that they totally try to take

15   advantage of me.       You have to be like

16   (indicating).

17   FEMALE SPEAKER:      Yeah, you have to be

18   their mentality.

19   REBECCA BRIGHAM:      Yes.

20   JEFF:      You do.

21   REBECCA BRIGHAM:      And it's hard for me.

22   FEMALE SPEAKER:      I know, right?      I know,

23   I'm the same way, right?       But once you do that

24   they're fine.       They're like, you know, you put

25   them in their place.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1033

FRONTIER AIRLINES (R. BRIGHAM) - 0004368

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 33
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      JEFF:       I (indiscernible) was a LaGuardia

2    server.

3      FEMALE SPEAKER:       Oh, really?

4      JEFF:      Isn't that too funny.

5      REBECCA BRIGHAM:       Oh, my gosh.

6      JEFF:       I had the morning LaGuardia.

7      REBECCA BRIGHAM:       Yeah, I mean, it's not

8    awful, I just, I prefer to be happy.

9      FEMALE SPEAKER:       Right.    Yeah.    Yeah.

10     JEFF:       I'll never forget my

11   (indiscernible) for Midwest was LaGuardia and

12   I'll never forget because we had to use a tray

13   that (indiscernible), because, you know, we

14   were all first class in Midwest, and as I

15   served (indiscernible), stuff like boom.              Did

16   you see that?       I was trying to be nice and --

17     FEMALE SPEAKER:       Stuff out of their way.

18     JEFF:       But I wasn't used to New York.

19   Okay.    That's the way they are.

20     REBECCA BRIGHAM:       Try doing -- this is my

21   worst when I was with U.S. Airways.              Is

22   LaGuardia to West Palm beach.

23     FEMALE SPEAKER:       Oh, my God.    Oh, talk

24   about high maintenance.

25     REBECCA BRIGHAM:       What's the one that we

1    have now, it's like Atlanta, LA.

2         FEMALE SPEAKER:        Uh-huh.

3         REBECCA BRIGHAM:       I've head horror stories

4    about that.

5         FEMALE SPEAKER:        The thing is, you just

6    have to laugh because you're like I cannot

7    believe this behavior?         You know?

8         REBECCA BRIGHAM:       Right.

9         FEMALE SPEAKER:        You just have to find it

10   comical and not take it personally.

11        REBECCA BRIGHAM:       And I do, I find myself

12   talking to passengers sometimes --

13        JEFF:     Hi, guys.

14        FEMALE SPEAKER:        There she is.

15        REBECCA BRIGHAM:       Hi.

16        JEFF:     How are you?

17        REBECCA BRIGHAM:       Talking to passengers

18   like I'm talking to my child.

19        FEMALE SPEAKER:        (Indiscernible).        I'm

20   sorry, I see HR coming (indiscernible).            What

21   did I do?

22        REBECCA BRIGHAM:       No, they're here for me.

23   You're fine.

24        JEFF:     Tough (indiscernible).

25        REBECCA BRIGHAM:       Just ghetto.

H+G    Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
                Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004370

1   JEFF:      Don't think they have to abide by

2   anything.

3      REBECCA BRIGHAM:      Anything.

4      JEFF:      Yeah.

5      REBECCA BRIGHAM:      So.

6      FEMALE SPEAKER:      What are you doing this

7   weekend?

8      JERRY:      Do you have a second?

9      REBECCA BRIGHAM:      I do.

10      FEMALE SPEAKER:      It's nice talking to you.

11   Nice meeting you.

12      REBECCA BRIGHAM:      Bye.

13      JEFF:      See you later.

14      JERRY:      (Indiscernible) conference room.

15      REBECCA BRIGHAM:      Okay.

16   Thanks.

17      JERRY:      So what's going on?

18      REBECCA BRIGHAM:      I just, I showed up to

19   work this morning for my Dallas turn, and I got

20   on a bus to check my Flicka (phonetic).

21      JERRY:      Yeah.

22      REBECCA BRIGHAM:      And it was just gone.

23   It sort of like -- I'm going to start crying

24   again.   I'm sorry.

25      JERRY:      That's okay.      So we were looking

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES

Page 36

1    at your schedule, but you didn't have a Dallas

2    turn.

3        REBECCA BRIGHAM:    There was a Dallas turn

4    in the beginning of the (indiscernible).

5        JERRY:    We were looking on there and it

6    looks like the trip never came back to Denver.

7        REBECCA BRIGHAM:    No, there was just a

8    Dallas turn.    It was Denver, Dallas, Dallas,

9    Denver and then it was go back to Dallas and

10   then to Cleveland.

11       JERRY:    Got it.    So let's look at your

12   schedule.

13       REBECCA BRIGHAM:    Is that --

14       JERRY:    Uh-huh.

15       REBECCA BRIGHAM:    Yeah, there was a Dallas

16   turn at the very beginning.

17       JERRY:    That's the --

18       REBECCA BRIGHAM:    No, it was a four leg.

19   It was four-leg day.

20       JERRY:    Go really quick.    I'm going to go

21   look it up.

22       REBECCA BRIGHAM:    Okay.

23       MEREDITH:    Where do you want to sit, Joe?

24       JEFF:    I'm just texting -- I forgot who

25   I'm working with.    Jenny.    Isn't that terrible

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1037    FRONTIER AIRLINES (R. BRIGHAM) - 0004372

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 37
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    when you have so many (indiscernible).

2        REBECCA BRIGHAM:        Right.        Just let her

3    know what's going on.            Okay.    Don't cry.        Don't

4    cry.    Don't cry.

5        JEFF:        Sorry.    I'm just going through

6    emails.        So in the time I've been away, 17

7    emails have come through.

8        REBECCA BRIGHAM:        Oh, my God.

9        JEFF:        Isn't the (indiscernible).                The

10   amount of emails we get is ridiculous.

11       REBECCA BRIGHAM:        Is it from flight

12   attendants.

13       JEFF:        No, it's just everything.

14       REBECCA BRIGHAM:        Oh.

15       JEFF:        Some are fight attendants, some are

16   delays.        Some are -- it's just amazing.

17       REBECCA BRIGHAM:        It hasn't even been a

18   half an hour.

19       JEFF:        No.    Like you miss a day of work

20   and it could be a 100, a 113.

21       REBECCA BRIGHAM:        Now, do you have access

22   so that you can check it home if you need to?

23       JEFF:        Yeah.

24       REBECCA BRIGHAM:        Okay.

25       JEFF:        From ...        How are the kiddos?

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1038

FRONTIER AIRLINES (R. BRIGHAM) - 0004373

1      REBECCA BRIGHAM:       They're good.

2      JEFF:      Yeah?

3      REBECCA BRIGHAM:       Tulley (phonetic) is in

4    preschool.       Case (phonetic) is, oh, my gosh,

5    he's two-and-a-half, but like he doesn't really

6    talk.       He uses like eh, eh.          Like, he'll use

7    words like mommy, dadda.          Like, oh, my God,

8    it's just at that frustrating point.  I

9    remember the point when my daughter was right

10   there.

11     JEFF:      Uh-huh.

12     REBECCA BRIGHAM:       It's like use your

13   words.

14     JEFF:      Uh-huh.      Well, it's -- that's kind

15   of ironic that you say that because I'm good

16   friends with the breeder of our newest puppy,

17   and she's frustrated because her daughter

18   started kindergarten and she's not good with

19   words, and they tried speech therapists.

20     REBECCA BRIGHAM:       Gotcha.

21     JEFF:      And they said it will come in time.

22   She tends not -- she's always like use your

23   words, why you -- you know.

24     REBECCA BRIGHAM:       Right.

25     JEFF:      And it's not like she has like a

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015                    Page 39
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    disability.

2         REBECCA BRIGHAM:        Uh-huh.

3         JEFF:      But she's just --

4         REBECCA BRIGHAM:        She's just quiet?

5         JEFF:      No.

6         REBECCA BRIGHAM:        No?

7         JEFF:      She's vocal, but she doesn't want

8    to use her words.

9         REBECCA BRIGHAM:        She just vocalizes it

10   like, uhh, errr (phonetic).

11        JEFF:      Right.

12        REBECCA BRIGHAM:        Yeah.     Every time we

13   catch my daughter doing stuff like that --

14        JEFF:      And Gary's like, Gary's like is

15   something wrong with her, you know.

16        REBECCA BRIGHAM:        Like, no, that's how she

17   communicates.

18        JEFF:      Yeah.

19        REBECCA BRIGHAM:        Yeah, because baby's, I

20   mean, that's their only way to communicate is

21   by crying and --

22        JEFF:      Yep.

23        REBECCA BRIGHAM:        And they have all their

24   different cries for hungry sad, sick.              You

25   know?

H+G    Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
              Court Reporting, Legal Videography, and Videoconferencing

                        1040                    FRONTIER AIRLINES (R. BRIGHAM) - 0004375

1       JEFF:        Yeah.

2       REBECCA BRIGHAM:        And it takes awhile for

3    them to break out of that.

4       JEFF:        Yeah.

5       REBECCA BRIGHAM:        Because my daughter will

6    still do like the whiney voice when she wants

7    something.

8       JEFF:        Uh-huh.

9       REBECCA BRIGHAM:        And I just ignore her

10   until she starts talking normal.

11      JEFF:        Exactly.

12      REBECCA BRIGHAM:        I'm like, I don't

13   understand you when you talk like that.

14      Do I have mascara all over my face?

15      JEFF:        No, I would have told you.

16      REBECCA BRIGHAM:        Okay.    I would hope so.

17      JEFF:        And boogers in the cave -- bats in

18   the cave.

19      REBECCA BRIGHAM:        Bats in the cave.

20      JEFF:        That's what I would always flying

21   in the line, I was always like --

22      REBECCA BRIGHAM:        Worried about.

23      JEFF:        Please tell me if I do.

24      REBECCA BRIGHAM:        Right.    Or if you like

25   you just got done eating and you have something

H+G   Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1041                  FRONTIER AIRLINES (R. BRIGHAM) - 0004376

1    on your cheek.

2        JEFF:      Yeah, like a seed in your teeth or

3    something.     Oh, I had that in there.

4        REBECCA BRIGHAM:      Right.     I always drink

5    those chia and water drinks.

6        JEFF:      Uh-huh.

7        REBECCA BRIGHAM:      And, yeah, I'll like

8    feel them.     Like, oh, my God, how long has that

9    been in there.

10       JEFF:      Yeah, you step in the lav and

11   you're like.

12       REBECCA BRIGHAM:      Yeah.

13       JEFF:      Go in the bathroom, like oh, my

14   God.

15       REBECCA BRIGHAM:      Oh, my God, I just did

16   that the safety demo or your like your fly is

17   down.

18       JEFF:      All right.      The hole service.

19       REBECCA BRIGHAM:      And smiling.

20       JEFF:      Uh-huh.

21        REBECCA BRIGHAM:   Yeah.

22       JEFF:      I look like a hillbilly.

23       REBECCA BRIGHAM:      Here's your flight

24   attendant for the day.

25       JEFF:      Yep, exactly.      I'm from Denver.

   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
                Court Reporting, Legal Videography, and Videoconferencing

          FRONTIER AIRLINES (R. BRIGHAM) - 0004377

1      REBECCA BRIGHAM:      Too funny.      Yeah, I

2    just, I don't know what else I'd want to do,

3    Jeff, and this gives me enough time off because

4    I'm going to start school in November, and this

5    job --

6      JEFF:      (Indiscernible) the office job.

7      REBECCA BRIGHAM:      Yeah.

8      JEFF:      You lose so much time off.

9      REBECCA BRIGHAM:      Do you?

10      MEREDITH:      Yeah.      I feel like, God, I get

11    up, I come to work, I go home, eat dinner, and

12    I go to.      Bed I'm like it's five days a week.

13      REBECCA BRIGHAM:      Yeah.

14      JEFF:      Like, oh, my God.

15      REBECCA BRIGHAM:      Yeah.

16      JEFF:      You know, I so look forward to my

17    weekends and it's like shit, Sunday night, I

18    have to go no work again.

19      REBECCA BRIGHAM:      Uh-huh, see, that's what

20    I don't want.

21      JEFF:      Your flexibility is all gone.

22      REBECCA BRIGHAM:      Yeah.      That's why I want

23    to keep doing turns if I can, because then I'll

24    be able to go back to school, and in 22 months

25    have my degree and --

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1043

FRONTIER AIRLINES (R. BRIGHAM) - 0004378

1    JEFF:      What are you looking for?

2    REBECCA BRIGHAM:      To become a naturopath.

3    So it's like a natural doctor using the body

4    and different herbs in nature to cure the body

5    naturally.       Rather than using pharmaceutical

6    drugs.     So on ND program is 22 months, and then

7    after that you get your master herbalist and

8    then you get your acupressure, and then there

9    is one other at the very end.

10    JEFF:      Is that like the needles, like

11    acupuncture.

12    REBECCA BRIGHAM:      That's acupuncture.

13    Acupressure is just pressure.

14    JEFF:      Oh.

15    REBECCA BRIGHAM:      It's sort of like a

16    massage using pressure points, yeah, to cure

17    different ailments.          Which has always

18    interested me and I've been reading --

19    JEFF:      Does that help with migraine?

20    REBECCA BRIGHAM:      Uh-huh.      Yeah, like you

21    can do natural stuff.

22    JEFF:      (Indiscernible).

23    JERRY:      All right.      I tried to establish

24    what happened.

25    REBECCA BRIGHAM:      Okay.



Hunter + Geist, Inc.   800.525.8490      scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004379

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015          Page 44
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      JERRY:        So I think from what we get to see

2    (indiscernible).

3      MEREDITH:        I'm sitting here

4    (indiscernible).

5      JEFF:        Oh.     Are you okay?

6      MEREDITH:        Yeah (indiscernible).

7      JEFF:        Okay.

8      MEREDITH:        Yeah.     Yeah.     Yeah.     That would

9    be great.

10     JEFF:        Okay.     Sounds good.

11     MEREDITH:        Just, Rebecca doesn't need to

12   (indiscernible) sitting in here --

13     REBECCA BRIGHAM:        That's all right.  I

14   don't mind either way.

15     MEREDITH:        We appreciate your support.

16     REBECCA BRIGHAM:        Thanks, Jeff.

17     JEFF:        Okay.

18     REBECCA BRIGHAM:        Thanks, Jeff.

19       JEFF:      Thank you.

20     JERRY:        So we had an opportunity to look

21   and see what happened.          We do see that when you

22   called in, you did have that Denver --

23   (indiscernible) Denver, Dallas --

24     REBECCA BRIGHAM:        Yeah.

25     JERRY:        -- and then back to Denver.          So

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1045

FRONTIER AIRLINES (R. BRIGHAM) - 0004380

1   right now, just at quick glance, but we still

2   need to look into a little bit more that it

3   might have been removed in error.

4       REBECCA BRIGHAM:     Okay.

5       JERRY:     So if it was, we'll go ahead and

6   pay protective, but we just need to look a

7   little bit deeper to find out what happened.

8       REBECCA BRIGHAM:     Okay.

9       JERRY:     So we'll try and figure that out

10  by today.

11      REBECCA BRIGHAM:     Okay.    It was just sort

12  of like super frustrating this morning.

13      JERRY:     Yeah, and so we'll try and figure

14  out what happened, and then we'll follow up

15  with you.

16      REBECCA BRIGHAM:     Okay.

17      JERRY:     But we also want to take the

18  advantage of while you're here, to talk about

19  your FMLA situation.

20      REBECCA BRIGHAM:     Okay.

21      JERRY:     So for the month of September

22  towards the end of --

23      REBECCA BRIGHAM:     I have 13 days used,

24  right?

25      JERRY:     Yes.

  Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004381

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                 Page 46
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:      Is it only approved --

2    because I had sent an email and I heard nothing

3    back.    Is it only approved for 12?

4    JERRY:      Twelve.

5    REBECCA BRIGHAM:      Okay.    So then I had

6    requested more intermittent FMLA paperwork to

7    increase the number up to 15, that way just in

8    case.    My hopes that are within the next

9    month-and-a-half that I don't have to use as

10   much of it.

11   JERRY:      Okay.

12   REBECCA BRIGHAM:      Because I'm hoping that

13   through manipulation and scheduling and stuff,

14   I'm able to swap and drop and trade more.

15   JERRY:      Okay.

16   REBECCA BRIGHAM:      But I will still have to

17   use for the overnights.

18   JERRY:      Yes.

19   REBECCA BRIGHAM:      I mean, there's just no

20   way around that.

21   JERRY:      And so when we looked at that, I

22   think initially the idea was, let's see what we

23   can do --

24   REBECCA BRIGHAM:      Yeah.

25   JERRY:      -- and help you.         And I think

H+G   Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1047                    FRONTIER AIRLINES (R. BRIGHAM) - 0004382

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 47
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    somebody maybe heard you make a comment that

2    we're out to get you.

3        REBECCA BRIGHAM:      Yes, that's what I feel

4    like.

5        JERRY:       And so I'm having difficulty

6    understanding that because I think the company

7    has been extremely flexible with your usage

8    of FMLA for what -- because initially you're

9    approved for sessions, and then right now when

10   we look at your bidding, we're looking at you

11   bid for 4-day trips over the weekends.

12       REBECCA BRIGHAM:      Over the weekends.

13   Which is I talked to Fritz in scheduled and he

14   said that I can pre-call out for my overnights.

15   What I hold is 4-day trips.

16       JERRY:       Uh-huh.

17       REBECCA BRIGHAM:      What I bid is trying

18   getting trips with turns on either end.

19       JERRY:       Uh-huh.

20       REBECCA BRIGHAM:      It doesn't matter what

21   days, but I know I'm going to hold a 4-day over

22   the weekend.

23       JERRY:       Uh-huh.

24       REBECCA BRIGHAM:      With turns on either

25   end.

H+G  Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1048

FRONTIER AIRLINES (R. BRIGHAM) - 0004383

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015              Page 48
REBECCA BRIGHAM v. FRONTIER AIRLINES

1       JERRY:        Okay.

2       REBECCA BRIGHAM:        And then I call out for

3    the overnights.          I don't hold Monday through

4    Thursday.

5       JERRY:        Okay.

6       REBECCA BRIGHAM:        Four days.        I just

7    don't.

8       JERRY:        Okay.

9       REBECCA BRIGHAM:        So I bid for what I know

10   I can hold and I keep the turns at either end,

11   and then I try to pick up turnings during the

12   week.

13      JERRY:        Perfect.

14      REBECCA BRIGHAM:        And that's -- I mean --

15      JERRY:        And we're seeing --

16      REBECCA BRIGHAM:        I don't see another way

17   to go.

18      JERRY:        Right, but I think the statements

19   that we're out to get you, I just don't

20   understand.

21      REBECCA BRIGHAM:        It's what it fees like.

22   Every time I turn around, when my life seems to

23   be just going very, like, smooth, it's like all

24   of a sudden I show up to work without even a

25   courtesy call, and this has happened once

H+G    Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1049                    FRONTIER AIRLINES (R. BRIGHAM) - 0004384

1    before too.        I just don't get it.                I feel like

2    everything that I try to throw out there as a

3    suggestion, it just gets shot down.                I mean, I

4    need more hours.

5          JERRY:        Uh-huh.

6          REBECCA BRIGHAM:        I need something more

7    substantial.

8          JERRY:        Uh-huh.

9          REBECCA BRIGHAM:        And it's just not being

10   able to work.        Which is why I threw out last

11   time the idea of when people come back from

12   leave of absence, they start with a blank

13   canvas.

14         JERRY:        Uh-huh.

15         REBECCA BRIGHAM:        I don't know if it's

16   possible.

17         JERRY:        Uh-huh.

18         REBECCA BRIGHAM:        But can I just have

19   that?        Then it's my responsibility to build it

20   up to sixty.

21         JERRY:        Uh-huh.

22         REBECCA BRIGHAM:        Something has something

23   on the trade board that their wanting to get

24   rid of, I alleviate some of that.

25         JERRY:        Uh-huh.

H+G    Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1050

FRONTIER AIRLINES (R. BRIGHAM) - 0004385

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015                    Page 50
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:    I don't -- maybe that's

2    not a possibility.           Maybe it's a possibility to

3    take an extended leave of absence.

4    JERRY:    Uh-huh.

5    REBECCA BRIGHAM:    I mean, maybe it's a

6    possibility to switch to a different job within

7    Frontier.

8    JERRY:    Uh-huh.

9    MEREDITH:    I talked to her this morning.

10   REBECCA BRIGHAM:    I don't know.    I'm going

11   to be honest here.    Okay?   I don't know what

12   else I want to do.

13   JERRY:    Okay.

14   REBECCA BRIGHAM:    I like being a flight

15   attendant.    It gives me enough time off so that

16   I can start school.

17   JERRY:    Okay.

18   REBECCA BRIGHAM:    I like the flexibility

19   of it.

20   JERRY:    Okay.

21   REBECCA BRIGHAM:    And I don't want to do

22   something drastic.

23   JERRY:    Right.

24   REBECCA BRIGHAM:    That's going to throw my

25   for a loop in my recovery.

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004386

1       JERRY:      Which makes sense.

2       REBECCA BRIGHAM:      It's the number one

3    priority.

4       JERRY:      Uh-huh.      And so, ultimately, yes,

5    we're hearing the recommendations that you're

6    making, but from our perspective we have to be

7    consistent in our practices.            So the only time

8    that we carve out certain bidding requirements

9    are those who are out on a continuous leave of

10   absence.

11      REBECCA BRIGHAM:      Okay.

12      JERRY:      So at that time since they're not

13   allowed to bid, and the difference between you

14   is you're allowed to bid.

15      REBECCA BRIGHAM:      Right.

16      JERRY:      So if we made -- if we

17   cherrypicked to try and create you a certain

18   situation --

19      REBECCA BRIGHAM:      Right.

20      JERRY:      -- now we've created a whole

21   separate accommodation for you --

22      REBECCA BRIGHAM:      For somebody else that

23   were possibly going through recovery as well

24   dealing with my same situation?            Maybe this is

25   where we start.      Maybe this is where we start

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1052

FRONTIER AIRLINES (R. BRIGHAM) - 0004387

1    doing a new guideline.              How are we going to

2    actually help these people rather than stress

3    them out even more?

4       JERRY:      That's why we're helping you in

5    the form of having this FMLA in place and using

6    it outside of what you're approved for.

7       REBECCA BRIGHAM:      Okay.

8       JERRY:      And then you've approved FMLA --

9    the department has also approved personal

10   leaves for you in certain situations where FMLA

11   wasn't covered.

12      REBECCA BRIGHAM:      Okay.    Well, then how --

13      JERRY:      For you.

14      (Talking simultaneously.)

15      JERRY:      When the statements come out that

16   we're out to get you, that's what --

17      REBECCA BRIGHAM:      It feels like it to

18   me --

19      JERRY:      Frustrating.

20      REBECCA BRIGHAM:      -- at every turn.

21      JERRY:      But it gets very frustrating from

22   our position --

23      REBECCA BRIGHAM:   I'm just telling you how

24   I feel.

25      JERRY:      -- when we're doing everything



Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004388

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 53
REBECCA BRIGHAM v. FRONTIER AIRLINES

1   that we can.          And I understand that but when

2   we're doing everything that we can for you and

3   then --

4        REBECCA BRIGHAM:       It doesn't feel like

5   that to me, Jerry.

6        JERRY:       Okay.

7        REBECCA BRIGHAM:       It doesn't feel like

8   that to me.

9        JERRY:       Okay.

10       REBECCA BRIGHAM:       It feel like in the

11   beginning it kind of was and now it just feels

12   like stuff like this, this is the second time.

13   I mean, Portland turn was taken off my

14   schedule.       I mean, it just -- I don't get it.

15       JERRY:       So this is the other day that the

16   conversation that Shelly and I had, you've

17   exceeded the amount of time that you had that

18   month.       I even told Shelly, let's go ahead and

19   approve it and extent it beyond that, even

20   though she's not approved.

21       REBECCA BRIGHAM:       Well, thank you.          I mean

22   wish there was --

23       JERRY:       Statements.

24       REBECCA BRIGHAM:       Maybe more communication

25   between us.



BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 54
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      JERRY:      Okay.

2      REBECCA BRIGHAM:      So I know that you're

3   actually doing something, rather than I show up

4   to work and all of sudden --

5      JERRY:      Now, this, I don't know what

6   happened.      This -- we don't know who moved it,

7   what happened.      We still need to look into

8   that.

9      REBECCA BRIGHAM:      Okay.

10      JERRY:      It's nothing that the company --

11      REBECCA BRIGHAM:      Because when I called

12   scheduled, they just said that, oh, we have it

13   noted here that you were going to do the Dallas

14   turn and then we have it noted that leave of

15   absence removed it.

16      JERRY:      Okay.   And that we don't know.      We

17   need to find out what happened.

18      MEREDITH:      Obviously, looking at it, it's

19   complicated when we try to look through all the

20   history.      I'll look into that, Rebecca.          That's

21   why we're saying if it was an error on the

22   company's part, you'll be paid protective for

23   today.   Okay?

24      REBECCA BRIGHAM:      I also wanted to work.

25   I haven't worked in like six days.          I wanted to

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1055

FRONTIER AIRLINES (R. BRIGHAM) - 0004390

1    work.    And I get it.        I do get that there are

2    errors, but I just, today was just so

3    overwhelming for me when I just -- I want to

4    know that there's something more that we can

5    maybe do.

6        JERRY:     Uh-huh.

7        REBECCA BRIGHAM:      And maybe this is where

8    we kind of start to help other people not feel

9    the way that I do sometimes.

10       JERRY:     Uh-huh.

11       REBECCA BRIGHAM:      Maybe we start a whole

12   new -- people who self-disclose, let's get

13   everybody on the same page and figure out

14   exactly what we need to do, rather than

15   everybody kind of being on the same, or maybe

16   the next page.

17       JERRY:     Right.    So and I get where you're

18   coming from, but how do we compare only those

19   individuals who have self-disclosure from

20   everybody else who has a serious health

21   condition?    And we're not making exceptions --

22       REBECCA BRIGHAM:      We're all individuals

23   and you have to look at us as all individuals.

24       JERRY:     Unfortunately, FMLA does not allow

25   us that ability, because now we're only giving

FRONTIER AIRLINES (R. BRIGHAM) - 0004391

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 56
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    special treatment to certain individuals.

2         REBECCA BRIGHAM:        Right.      Well, here's

3    this --

4         JERRY:        (Indiscernible).

5         REBECCA BRIGHAM:        I'm not talking just in

6    FMLA.    I'm talking in the company's general

7    self-disclosure policy, could there be

8    something in there that you guys say, okay,

9    we're here to support you, what can we do.

10   Okay.    When it comes to my personal situation

11   like layovers, okay, well, there's no other

12   creative way that we can go around this?                    It's

13   not like I've gone broadcasting to the entire

14   flight attendants like, hey, go ahead and just

15   claim an alcohol problem, and they'll work with

16   you.

17        JERRY:        I hear what you're saying, but in

18   this industry where everything is seniority

19   driven, any exceptions to that not -- it's just

20   not -- if we were in an office environment, we

21   can definitely do that --

22        REBECCA BRIGHAM:        And I'm not asking to go

23   ahead of my seniority --

24        JERRY:        But you're asking us to hold trips

25   right that now that you can't --

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004392

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015                    Page 57
REBECCA BRIGHAM v. FRONTIER AIRLINES

1      REBECCA BRIGHAM:      Not hold trips.          It's

2    leave me with nothing.          Nothing. it's my

3    responsibility to get up to sixty.          I'll pick

4    up more turns.      I'd tried more and I pick stuff

5    up stuff on open time.          That's what alerts are

6    for, and then it's my responsibility to get

7    above sixty.

8      MEREDITH:      Yeah, Rebecca, I can talk to

9    that, speak to that.          I mean, it's just not

10    even an option.      It's pot.      We would have the

11    union pounding down the front doors.          Right?

12    And that's the purpose of a union.

13      REBECCA BRIGHAM:      Okay.

14      MEREDITH:      Right?    Like to keep everything

15    consistent for every employee.          That's the

16    purpose of a union.

17      REBECCA BRIGHAM:      Okay.

18      MEREDITH:      And, actually, I would

19    recommend if you're wanting to start some sort

20    of a program or whatever for your situation,

21    you actually would go through the union.

22      REBECCA BRIGHAM:      Through the union.

23      MEREDITH:      On that.

24      REBECCA BRIGHAM:      Okay.

25      MEREDITH:      We as a company -- and just,

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1058                    FRONTIER AIRLINES (R. BRIGHAM) - 0004393

1    you have to keep that in mind too, we are

2    running a business.

3        REBECCA BRIGHAM:        Right.

4        MEREDITH:      We're running a company.

5        REBECCA BRIGHAM:        And I get that.

6        MEREDITH:      We need employees who can come

7    to work.

8        REBECCA BRIGHAM:        Right.

9        MEREDITH:      We're working with you within

10   the guidelines Jerry has said and Shelly, but

11   we have to stay within those guidelines.                    We

12   do.

13       REBECCA BRIGHAM:        Okay.

14       MEREDITH:      And we're all sensitive to what

15   you're going through.

16       REBECCA BRIGHAM:        Okay.

17       MEREDITH:      We're not going through it

18   ourselves, but we are trying to work with you

19   as much as possible.

20       REBECCA BRIGHAM:        Right, and I do get

21   that, and today was --

22       MEREDITH:      We are --

23       REBECCA BRIGHAM:        -- just so

24   overwhelming --

25       MEREDITH:      -- so.



Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004394

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015                    Page 59
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:        -- it just felt --

2        MEREDITH:        Right.        So it can be

3    overwhelming, but as I said to you earlier when

4    we're talking, you know, you were saying I love

5    being a flight attendant, unfortunately, part

6    of being a flight attendant at your seniority

7    is layovers.

8        REBECCA BRIGHAM:        Right.

9        MEREDITH:        And that's why I was

10   encouraging you, you have to evaluate, even

11   though you love the job, is this really the

12   right job for me in my situation?

13       REBECCA BRIGHAM:        If I can just do day

14   turns, yes.

15       MEREDITH:        Right.        And, I mean, it's just

16   not possible that you can do -- you can't hold

17   them.        We can't clear your schedule and let --

18   there's a lot of people that would love to

19   have -- start with a clean slate for the month.

20       REBECCA BRIGHAM:        Right.

21       MEREDITH:        And build their schedule.

22   Right?        Anybody that's, you know, past a

23   certain seniority, they would love to have that

24   option.

25       REBECCA BRIGHAM:        Right.



BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 60
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    MEREDITH:    But it's just not an option.

2    REBECCA BRIGHAM:    What about --

3    MEREDITH:    So.

4    REBECCA BRIGHAM:    -- and I had asked this

5    before and I think it was a no too.        What about

6    doing something like somebody who's on OJI?

7    Like going to work at the desk at an airport,

8    or coming in here to do something?        I mean, is

9    that an option for a little while?

10    MEREDITH:    So once again, even the OJI

11    program has guidelines that we have to follow

12    for people who are injured on the job, because

13    we're paying them a salary anyway.

14    REBECCA BRIGHAM:    Right.

15    MEREDITH:    So we utilize those people as

16    we can.

17    REBECCA BRIGHAM:    Right.

18    MEREDITH:    Because we're having to pay

19    them anyway.

20    REBECCA BRIGHAM:    Right.

21    MEREDITH:    So we can't just slip people

22    into those positions.

23    REBECCA BRIGHAM:    Right.

24    MEREDITH:    Because we're having to pay

25    them anyway, but like I said to you earlier, I

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004396

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 61
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    highly recommend you start going on to ALTI PRO

2    and look at other opportunities within the

3    company that have you home every night like you

4    need right now.

5         JERRY:       There's a position opening now,

6    Santo's (phonetic) position.                  It's the inflight

7    training coordinator.

8         REBECCA BRIGHAM:        Okay.     What does that

9    entail?

10        JERRY:      It's the individual that

11   coordinates all the travel, the scheduling,

12   recurrent training, they do 21 trainings.

13        REBECCA BRIGHAM:        Okay.

14        JERRY:      So she just took another role in

15   payroll.      So that position posted yesterday.

16        REBECCA BRIGHAM:        Okay.     (Indiscernible).

17        JERRY:      Yeah, so you report directly to

18   Laura Jacobson.

19        REBECCA BRIGHAM:        Okay.

20        JERRY:      So that just opened up.

21        REBECCA BRIGHAM:        I don't know if I

22   qualify.

23        MEREDITH:       Right, you may or may not, but

24   I --

25        I was telling her earlier there's so many

H+G  Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004397

1    opportunities, right?              There are.

2        So just go in and look, if you don't feel

3    like you qualify for that one -- because it's

4    pretty -- it's not easy to slide into that

5    position.

6        JERRY:        (Indiscernible).

7        MEREDITH:       So, yeah, start --

8        REBECCA BRIGHAM:      Just start looking.

9        MEREDITH:       Yeah, and I know want to be a

10   flight attendant --

11       REBECCA BRIGHAM:      Yeah.

12       MEREDITH:       -- but maybe right now is not

13   the best time, and if you move to a different

14   position.

15       REBECCA BRIGHAM:      (Indiscernible).

16       MEREDITH:       Maybe in a couple years you

17   would feel like you could go back to flying.

18       REBECCA BRIGHAM:      Right.    Do you lose your

19   seniority?

20       MEREDITH:     After --

21       JERRY:     Ninety days.

22       MEREDITH:      Oh, is it ninety days?          Oh, if

23   you stay within inflight --

24       JERRY:     If you stay within the company --

25       MEREDITH:     -- it's two years.        If you

1   leave inflight, it's ninety days.

2       JERRY:       Or if you leave the company.

3       REBECCA BRIGHAM:       Right.       Right.       I get

4   that.       So I would have to take a position with

5   inflight more in those darameters --

6   parameters.

7       MEREDITH:       Uh-huh.       If you wanted to keep

8   your seniority.

9       REBECCA BRIGHAM:       Keep seniority.       Okay.

10      MEREDITH:       All right?

11      JERRY:       So in terms of your FMLA your

12   request, can we give you your paperwork so we

13   can extend.

14      FEMALE SPEAKER:       I've already given it

15   you, haven't I --

16      REBECCA BRIGHAM:       I haven't gotten any.

17      FEMALE SPEAKER:       Okay.       I'll work on it.

18      REBECCA BRIGHAM:       Okay.

19      JERRY:       So we'll get you an application so

20   we can increase the number of days --

21      REBECCA BRIGHAM:       Okay.

22      JERRY:       -- also, and I think we did an

23   audit, you still have plenty of time accrued.

24   And as days roll off, you're get getting more

25   time off.

H+G   Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1064

FRONTIER AIRLINES (R. BRIGHAM) - 0004399

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015          Page 64
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:       Okay.

2    MEREDITH:      So that still gives you a

3    little bit more flexibility too to use some of

4    that.

5    REBECCA BRIGHAM:       Okay.     And thank you for

6    last month, for that extra day.             Thank you.

7    JERRY:      And then we'll look into finding

8    out what happened with today.

9    REBECCA BRIGHAM:       With the Dallas.

10   MEREDITH:      Yeah, I'll look into that, but

11   it's OCM cross-eyed trying to figure it out

12   what.

13   (Talking simultaneously.)

14   MEREDITH:      It looks like most of your --

15   it looks like the rest of the trip got removed,

16   but then somebody did go back in and remove the

17   Dallas trip, but I don't know how that

18   happened.

19   REBECCA BRIGHAM:       Okay.

20   MEREDITH:      We'll look at it, and if it's

21   our error, you'll be paid.

22   REBECCA BRIGHAM:       Okay.

23   MEREDITH:   Okay?

24   REBECCA BRIGHAM:       Thank you very much.

25   MEREDITH:      Yeah.

1      REBECCA BRIGHAM:      Thank you, guys.

2      FEMALE SPEAKER:      I'll send you over all

3   the info for to get recertified.

4      REBECCA BRIGHAM:      Okay.

5      FEMALE SPEAKER:      And then I'll also give

6   you an account as to how many days you have to

7   get over.

8      REBECCA BRIGHAM:      Perfect.      Thank you very

9   much.    Sorry for my emotional --

10      JERRY:      No --

11      REBECCA BRIGHAM:      -- outburst.

12      JERRY:      It happens.      We understand.

13      REBECCA BRIGHAM:      Okay.    Thank you.

14      JERRY:      And I agree, let's keep the lines

15   of communication open.

16      REBECCA BRIGHAM:      Yes, let's just try and

17   keep it open so I don't feel so like, uhhh

18   (phonetic).

19      JERRY:      Definitely.

20      REBECCA BRIGHAM:      You know?      Thank you

21   very much.

22      JERRY:      You bet.

23      REBECCA BRIGHAM:      And I'll keep looking on

24   there to see if there's things that work.

25      MEREDITH:      Yeah.    Yeah, you have some time

H+G  Hunter + Geist, Inc.    800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1066                    FRONTIER AIRLINES (R. BRIGHAM) - 0004401

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 66
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    now that you weren't expecting.

2        REBECCA BRIGHAM:      I know.

3        MEREDITH:      You should take advantage of

4    it.    Go to the library, open up the computer,

5    and look around.        Take advantage of the time.

6        REBECCA BRIGHAM:      Perfect.    Thank you very

7    much.

8        MEREDITH:      Yeah, you're welcome.

9        REBECCA BRIGHAM:      Thank you, guys.

10       MEREDITH:      Sorry for all the frustrations

11   as.

12       REBECCA BRIGHAM:      Yeah, I'm sorry for my

13   emotionalness [sic].

14       MEREDITH:      It's okay.

15       FEMALE SPEAKER:      I'm going to give you my

16   card, Rebecca.

17       REBECCA BRIGHAM:      Okay.    Great.

18       FEMALE SPEAKER:      If you have issues with

19   anything (indiscernible).

20       REBECCA BRIGHAM:      Okay.    Awesome.    Thank

21   you.

22       Perfect.      Thank you so much, guys.

23   Awesome.    Cool.    Thank you, Shelly.

24   (Indiscernible).

25       MEREDITH:      Okay.

H+G   Hunter + Geist, Inc.   800.525.8490    scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1067                      FRONTIER AIRLINES (R. BRIGHAM) - 0004402

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015                    Page 67
REBECCA BRIGHAM v. FRONTIER AIRLINES

1    REBECCA BRIGHAM:   Meeting over.

2

3    (End of recording.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H+G   Hunter + Geist, Inc.   800.525.8490     scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004403

BrighamR Plaintiff Records          0633 (10915)

68

```
 1                          CERTIFICATE

 2

 3          I, ERINN GREEN, Professional Court

 4   Reporter/Transcriptionist, do hereby certify that I

 5   was authorized to transcribe the foregoing recorded

 6   proceeding, and that the transcript is a true and

 7   accurate transcription of my shorthand notes, to the

 8   best of my ability, taken while listening to the

 9   provided recording.

10

11          I further certify that I am not of counsel or

12   attorney for either or any of the parties to said

13   proceedings, nor in any way interested in the events

14   of this cause, and that I am not related to any of

15   the parties thereto.

16

17          Dated this 22nd day of January, 2020.

18

19
```



```
20   _____

21    ERINN L. GREEN, Professional Court Reporter
     Notary Public, State of Florida
22

23

24

25
```

FRONTIER AIRLINES (R. BRIGHAM) - 0004404

BrighamR_Plaintiff Records 0633 (10.09.15)  10/09/2015          Page 69
REBECCA BRIGHAM v. FRONTIER AIRLINES

**1**

100 37:20
113 37:20
12 46:3
13 45:23
14 19:9
15 21:9 46:7
17 37:6
18 21:1,8
190 31:17

**2**

21 61:12
22 42:24 43:6

**3**

30 28:20,22,23

**4**

4-day 47:11,15,21
42 21:17

**5**

50 21:14
50s 20:23

**6**

60 7:25
65 20:22

**7**

70s 20:19
75 21:6

**8**

80 21:6

**9**

940 5:11
99 31:25
9:30 15:20

**A**

abide 35:1
ability 55:25
absence 2:8 5:5,16,18
  6:12,17,19 7:16 18:8
  49:12 50:3 51:10 54:15
absolutely 25:10
access 37:21
accommodation 51:21
accomplish 8:10
account 65:6
accrued 63:23
actual 3:19
acupressure 43:8,13
acupuncture 43:11,12
adjusting 20:6
advantage 32:15 45:18
  66:3,5
agree 65:14
Ah-huh 14:8
ahead 45:5 53:18
  56:14,23
ahold 6:17 7:3
ailments 43:17
airport 5:3 14:5 28:629 8490
Airways 25:8 33:21
alcohol 56:15
alerts 57:5

alleviate 49:24
allowed 51:13,14
ALTI 10:5,7 61:1
amazing 37:16
amount 37:10 53:17
answering 14:5
anymore 5:3 7:6
apples 25:5
application 63:19
applied 46:16 10/09/2015
approved 46:1,3 47:9
  52:6,8,9 53:20
area 16:12,15
Aspen 27:4
Atlanta 34:1
attendant 11:12 18:24
  41:24 50:15 59:5,6
  62:10
attendants 26:5 37:12,
  15 56:14
attitude 27:12
attrition 21:20
audit 63:23
auditorium 2:22,23
avoid 32:9
aware 11:2
awesome 2:25 3:7
  4:10 13:9 66:20,23
awful 27:6 33:8
awhile 40:2

**B**

babies 9:19
baby's 39:19
back 4:18 6:12 11:6,15 4:7
  7:3,24 26:10 36:6,8,9
  42:24 44:25 46:3 49:11
  62:17 64:16
background 2:2 4:23
  6:24 14:12,13

bad 16:17 27:14
base 11:21 17:6 25:9
basically 8:4 27:14,18
bathroom 41:13
bats 40:17,19
beach 33:22
bears 19:12
beautiful 27:1
Bed 42:12
beginning 5:10 36:4,
  16 53:11
behavior 34:7
bet 27:3 65:22
bid 47:11,17 48:9
  51:13,14
bidding 47:10 51:8
big 21:13
bike 22:24
bit 45:2,7 64:3
blank 7:24 49:12
board 49:23
body 43:3,4
boogers 40:17
boom 33:15
bought 30:22
bouncing 28:21
box 25:11
break 40:3
breeder 38:16
Brigham 2:1,4,6,13,17,
  20,25 3:3,7,9,14,17,21,
  23 4:2,4,6,10,12,14,16,
  18,20,24 5:1,9,20,24
  6:1,5,8,9,16 7:2,5,8,14,
  22 8:11,20,25 9:6,9,11,
  14,17,22 10:1,6,9,12,
  17,21,24 11:3,6,9,13,
  16,20,22,25 12:4,11,13,
  16,19,22,25 13:7,9,11,
  14,16,19,23 14:3,5,8,
  14,16 15:5,9,12 18:1,7,
  13 19:6,14,24 20:16,20

Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

FRONTIER AIRLINES (R. BRIGHAM) - 0004405

BrighamR_Plaintiff Records 0633 (10.09.15)   **10/09/2015**                    Page 70
REBECCA BRIGHAM v. FRONTIER AIRLINES

21:7,10,12,16,21 22:1,
6,15,23 23:1,12,16,19,
21 24:1,4,11,16,22
25:13,24 26:2,9,11,15
27:3,9,11,20,23 28:1,3,
9,17,22 29:1,5,24
30:13,20,24 31:5,10,14,
16,18,21,24 32:2,5,7,9,
12,19,21 33:5,7,20,25
34:3,8,11,15,17,22,25
35:3,5,9,12,15,18,22
36:3,7,13,15,18,22
37:2,8,11,14,17,21,24
38:1,3,12,20,24 39:2,4,
6,9,12,16,19,23 40:2,5,
9,12,16,19,22,24 41:4,
7,12,15,19,21,23 42:1,
7,9,13,15,19,22 43:2,
12,15,20,25 44:13,16,
18,24 45:4,8,11,16,20,
23 46:1,5,12,16,19,24
47:3,12,17,20,24 48:2,
6,9,14,16,21 49:6,9,15,
18,22 50:1,5,10,14,18,
21,24 51:2,11,15,19,22
52:7,12,17,20,23 53:4,
7,10,21,24 54:2,9,11,24
55:7,11,22 56:2,5,22
57:1,13,17,22,24 58:3,
5,8,13,16,20,23 59:1,8,
13,20,25 60:2,4,14,17,
20,23 61:8,13,16,19,21
62:8,11,15,18 63:3,9,
16,18,21 64:1,5,9,19,
22,24 65:1,4,8,11,13,
16,20,23 66:2,6,9,12,
17,20 67:1

**broadcasting** 56:13

**brought** 25:21

**bubblier** 32:13

**build** 7:25 49:19 59:21

**bulldog** 19:12,18

**bunch** 29:1

**bus** 5:12 35:20

**business** 58:2

**Busy** 15:19

**Bye** 35:12

---

**C**

**call** 7:18 8:22 16:8 48:2,
25

**called** 5:6,13 7:15 14:8
44:22 54:11

**canvas** 49:13

**card** 66:16

**care** 29:10

**carve** 51:8

**case** 9:5 35:4 46:3

**catch** 39:13

**cave** 40:17,18,19

**chair** 13:24 19:20

**chasing** 19:12

**check** 35:20 37:22

**checked** 5:12

**cheek** 41:1

**cherrypicked** 51:17

**chia** 41:5

**Chicago** 22:12

**child** 34:18

**claim** 56:15

**class** 20:16 21:1,13
28:7,8,11,15 33:14

**classes** 21:19 23:14
24:12

**clean** 59:19

**clear** 27:14 59:17

**Cleveland** 36:10

**coats** 29:14

**cocktails** 28:21

**coded** 16:14

**codes** 27:19

**comical** 34:10

**comment** 47:1

**communicate** 39:20

---

**communicates** 39:17

**communication** 53:24
65:15

**communities** 26:24

**company** 9:24 47:6
54:10 57:25 58:4 61:3
62:24 63:2

**company's** 54:22 56:6

**compare** 55:18

**complicated** 54:19

**computer** 66:4

**condition** 55:21

**conference** 7:1 35:14

**connect** 17:20

**cons** 24:21

**consistent** 51:7 57:15

**constantly** 12:8

**contact** 5:17 7:16

**contacted** 5:16

**continuous** 51:9

**control** 29:7,9

**conversation** 2:2 4:23
14:12 53:16

**cool** 24:16 66:23

**coordinates** 61:11

**coordinator** 61:7

**couch** 19:20

**count** 20:24

**couple** 62:16

**courageous** 13:13

**courtesy** 7:18 48:25

**covered** 52:11

**crate** 18:25

**created** 51:20

**creative** 56:12

**crew** 25:17

---

**cries** 39:24

**cross-eyed** 64:11

**crowded** 14:1

**cry** 37:3,4

**crying** 35:23 39:21

**cure** 43:4,16

**customer** 8:15

**customers** 8:14

**cute** 19:7,25 20:13

---

**D**

**dadda** 38:7

**Dallas** 5:2,9,16 6:13
35:19 36:1,3,8,9,15
44:23 54:13 64:9,17

**darameters** 63:5

**daughter** 27:24 38:9,
17 39:13 40:5

**day** 8:18 18:20 32:5
36:19 37:19 41:24
53:15 59:13 64:6

**daycare** 18:20

**days** 25:1 42:12 45:23
47:21 48:6 54:25 62:21,
22 63:1,20,24 65:6

**deal** 27:23

**dealing** 18:7 51:24

**deeper** 45:7

**degree** 42:25

**delays** 37:16

**demo** 41:16

**Denver** 11:16 21:24
36:6,8,9 41:25 44:22,
23,25

**department** 52:9

**deserve** 13:2

**desk** 60:7

**determine** 16:13

**DIA** 4:1

**difference** 51:13

---

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015
REBECCA BRIGHAM v. FRONTIER AIRLINES



Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1071

BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015               Page 71
REBECCA BRIGHAM v. FRONTIER AIRLINES

**difficulty** 47:5

**dinner** 42:11

**directly** 61:17

**disability** 39:1

**dissolved** 31:5

**distracted** 20:25

**doctor** 43:3

**dog** 18:17,19 19:5,23

**doggy** 18:20

**doors** 57:11

**drastic** 50:22

**drink** 41:4

**drinks** 41:5

**driven** 56:19

**drop** 46:14

**dropped** 20:21

**drugs** 43:6

**dual** 25:25

**Durango** 31:9

**E**

**earlier** 17:15 59:3
60:25 61:25

**easier** 11:15

**easiest** 14:22

**easy** 62:4

**eat** 42:11

**eating** 40:25

**Eight-and-a-half**
15:12

**email** 46:2

**emails** 37:6,7,10

**emotional** 65:9

**emotionalness** 66:13

**employee** 57:15

**employees** 58:6

**encouraging** 59:10

**end** 8:23 43:9 45:22
47:18,25 48:10 67:3

**enforced** 27:19

**entail** 61:9

**entire** 56:13

**environment** 56:20

**equipment** 30:22

**error** 45:3 54:21 64:21

**errors** 55:2

**errr** 39:10

**establish** 43:23

**evaluate** 59:10

**everybody's** 6:10

**everyone's** 15:15

**Everything's** 22:8

**exceeded** 53:17

**exceptions** 55:21
56:19

**exist** 11:2

**expecting** 66:1

**experience** 15:8

**express** 30:10,11

**extend** 63:13

**extended** 50:3

**extent** 53:19

**extra** 64:6

**extremely** 47:7

**F**

**face** 40:14

**fair** 6:20,21

**feel** 7:12 41:8 42:10
47:3 49:1 52:24 53:4,7,
10 55:8 62:2,17 65:17

**feeling** 8:16 40:10

**fees** 6:17 48:21

**felt** 59:1

**FEMALE** 2:3,5,10,15,
18,21 3:1,5,8,11,15,18,

22,25 4:3,5,7,11,13,15,
21 14:21 15:1,7,10,13,
18,22,25 16:3,7,10,19,
22 17:1,3,7,11,13,16,
20,22,24 18:3,5,9,11,
15,19,22,25 19:3,7,10,
15,19,22,25 20:5,10,13,
15,17,21 21:3,5,11,22
22:2,5,8,17,25 23:3,7,
20,24 24:9,15,17,20,23,
25 25:5,14 26:3,6,16,
19,21,25 27:2,7,10,17,
21,25 28:2,5,13,18,25
29:7,9,12,15,18,21
30:5,9,12,16,18 31:20,
22 32:1,3,6,8,11,17,22
33:3,9,17,23 34:2,5,9,
14,19 35:6,10 63:14,17
65:2,5 66:15,18

**fight** 37:15

**figure** 6:12 45:9,13
55:13 64:11

**filler** 21:18

**find** 3:9 12:23 34:9,11
45:7 54:17

**finding** 64:7

**fine** 5:11 17:17 32:24
34:23

**finished** 24:12

**flew** 24:6 31:17

**flexibility** 42:21 50:18
64:3

**flexible** 47:7

**Flicka** 35:20

**flight** 11:11 18:24 26:4
37:11 41:23 50:14
56:14 59:5,6 62:10

**flights** 32:4

**flown** 23:17 30:23

**fly** 41:16

**flying** 24:13 25:11
32:2 40:2,4,22

**FMLA** 45:19 46:6 47:8
52:5,8,10 55:24 56:6
63:11

**follow** 2:18 45:14 60:11

**forget** 22:18 33:10,12

**forgot** 36:24

**form** 52:5

**forward** 42:16

**four-day** 5:6

**four-leg** 36:19

**French** 19:12,18

**Friday** 10:22

**friendlier** 32:13

**friends** 38:16

**Fritz** 47:13

**front** 57:11

**Frontier** 11:11 15:11
24:6,8 25:23 50:7

**frustrated** 9:3 38:17

**frustrating** 8:6 38:8
45:12 52:19,21

**frustrations** 66:10

**fun** 26:6

**fund** 15:7

**funniest** 28:6

**funny** 20:14 23:9 29:25
33:4 42:1

**G**

**Gary's** 39:14

**general** 56:6

**ghetto** 34:25

**girlfriend** 31:10

**give** 29:3 63:12 65:5
66:15

**giving** 55:25

**glance** 45:1

**God** 19:25 33:23 37:8
38:7 41:8,14,15 42:10,
14

**good** 2:4,5 4:16,17
14:19 15:8,9 18:12 20:7
22:6,8 24:4 38:1,15,18
44:10



BrighamR_Plaintiff Records 0633 (10.09.15)   10/09/2015              Page 72
REBECCA BRIGHAM v. FRONTIER AIRLINES

gosh 19:7,19 28:2 33:5
38:4

Gotcha 38:20

graduated 21:9,16

gray 16:12,15

great 44:9 66:17

grown 19:8

guess 14:21 21:5 22:10

guideline 52:1

guidelines 58:10,11
60:11

guys 17:25 22:12 34:13
56:8 65:1 66:9,22

**H**

habit 10:19

half 37:18

hallway 2:18

hang 29:13

hanging 18:5

happened 43:24 44:21
45:7,14 48:25 54:6,7,17
64:8,18

happening 11:8,19

happy 8:16 33:8

hard 5:3 6:14 12:1
13:16 32:21

he'll 38:6

head 34:3

health 12:6 55:20

hear 56:17

heard 46:2 47:1

hearing 51:5

heck 12:23

helping 52:4

herbalist 43:7

herbs 43:4

hey 56:14

high 20:23 27:7,10

33:24

highly 61:1

hillbilly 41:22

history 54:20

hold 6:22 47:15,21
48:3,10 56:24 57:1
59:16

hole 41:18

home 22:10 37:22
42:11 61:3

honest 2:8,10 23 3:10,
26:10

honestly 26:10

hope 22:18 40:16

hopes 46:8

hoping 46:12

horror 34:3

hour 17:18 37:18

hours 6:14 15:21 16:2
49:4

How's 15:18 18:11

HR 34:20

Huh-uh 30:19

hungry 39:24

**I**

idea 13:6 46:22 49:11

ignore 40:9

impression 17:3

increase 46:7 63:20

incredibly 9:13

indicating 32:16

indiscernible 3:5,9
4:9,19,22 6:15,25 7:4,7,
11 12:8 14:2,4,7,9,10,
14,15,17,20,22,24 15:1,
23,14,24 16:1,9,19,20
17:1,4,24 18:1,9,10,20,
17,19,4 20:7 21:19,25
22:9,11 23:15,21 24:6,
8,13 25:2,4,10,18,20,
22,23 26:4,5,7,8,10,13,
14,16 27:15,19 28:11,

12,14 29:4,6,14,19
30:2,12,23 31:7,8,15
32:6 33:1,11,13,15
34:19,20,24 35:14 36:4
37:1,9 42:6 43:22 44:2,
4,6,12,23 56:4 61:16
62:6,15 66:19,24

individual 61:10

individuals 55:19,22,
23 56:1

industry 56:18

inflight 2:8,10 23 3:10,
19,21 4:16 6:1,6
62:23 63:1,5

info 65:3

initial 15:4 22:13,19
23:8 25:16

initially 46:22 47:8

initials 23:11

injured 60:12

insurance 9:19,20

interested 9:25 43:18

intermittent 46:6

invites 20:18

ironic 38:15

issues 66:18

**J**

jack-of-all-trades
22:14

Jacobson 61:18

Jeff 4:3,17 5:3,19,23,25
6:16,25 7:3,6,7,19
12:20 14:15,17 15:2,6,
17,19,24 16:1,4,9,16,
20,25 17:2,5,9,12,15,
19,21,23 18:2,4,10,12,
14,17,21,23 19:2,4,9,
13,16,21 20:1,7,12,14
23:5,9,13,17,18,
21,24 24:3,5,10,12,16
21,24 25:1,20,25 26:4,
10,13,18,20,23 27:1,6,
13,18,22 28:6,10,14,20,

24 29:3,6,7,8,10,12,13,
17,20,23,25 30:6,9,12,
17,19,21 31:4,7,13,15,
17,19,25 32:20 33:1,4,
6,10,18 34:13,16,24
35:1,4,13 36:24 37:5,9,
13,15,19,23,25 38:2,11,
14,21,25 39:3,5,7,11,
14,18,22 40:1,4,8,11,
15,17,20,23 41:2,6,10,
13,18,20,22,25 42:3,6,
8,14,16,21 43:1,10,14,
19,22 44:5,7,10,16,17,
18,19

Jenny 4:3 36:25

jeopardize 27:16

Jerry 35:8,14,17,21,25
36:5,11,14,17,20 43:23
44:1,20,25 45:5,9,13,
17,21,25 46:4,11,15,18,
21,25 47:5,16,19,23
48:1,5,8,13,15,18 49:5,
8,14,17,21,25 50:4,8,
13,17,20,23 51:1,4,12,
16,20 52:4,8,13,15,19,
21,25 53:5,6,9,15,23
54:1,5,10,16 55:6,10,
17,24 56:4,17,24 58:10
61:5,10,14,17,20 62:6,
21,24 63:2,11,19,22
64:7 65:10,12,14,19,22

jet 31:17

jets 25:17,25

job 8:8,13,17 9:7 10:8
11:12 29:19 42:5,6 50:6
59:11,12 60:12

jobs 10:15

Joe 36:23

**K**

Kari 3:19 4:24,25 5:8
6:3,5,7,15,23 7:9 13:23
16:5 22:3

keeping 8:10

kidding 23:24 30:2

kiddos 37:25

kind 6:1,10 16:10,12,16
20:8 21:19,20 22:15



BrighamR_Plaintiff Records 0633 (10.09.15) **10/09/2015** Page 73
REBECCA BRIGHAM v. FRONTIER AIRLINES

25:20 32:3 38:14 53:11
55:8,15

**kindergarten** 38:18

**knew** 10:21

---

**L**

**LA** 34:1

**Laguardia** 33:1,6,11,
22

**laugh** 34:6

**Laura** 61:18

**lav** 41:10

**layovers** 5:7 8:13 9:8
56:11 59:7

**learned** 22:19

**leave** 2:7 5:5,16,18
6:12,17,19 7:16 14:1
18:8 49:12 50:3 51:9
54:14 57:2 63:1,2

**leaves** 52:10

**left** 2:16 21:2

**leg** 36:18

**library** 66:4

**life** 48:22

**lines** 65:14

**links** 30:13,14 31:6

**list** 6:6,8

**listings** 10:8

**LOA** 7:19

**long** 6:10 8:18,21
15:10,13 41:8

**longer** 30:18

**looked** 9:23 46:21

**loop** 6:11 9:18 50:25

**lose** 42:8 62:18

**lot** 10:15 11:8 19:8
26:17,21 59:18

**loud** 26:7

**love** 8:12,16 9:7 29:18
59:4,11,18,23

**lover** 19:23

**low** 20:23

---

**M**

**made** 51:16

**maintenance** 27:8,10
33:24

**majority** 25:7

**make** 2:15 9:2 47:1

**makes** 7:16,17 29:18
51:1

**making** 8:16 51:6
55:21

**manager** 2:8 3:10,20
22:16 23:6 25:9

**manipulation** 46:13

**mascara** 40:14

**massage** 43:16

**master** 43:7

**matter** 47:20

**meet** 18:1

**meeting** 16:1 17:25
35:11 67:1

**mentality** 8:15 32:18

**Meredith** 7:10,20 8:7,
19,24 9:4,7,10,12,16,
21,23 10:5,7,10,14,18,
22,25 11:4,7,10,14,18,
21,23 12:3,6,12,14,17,
20,23 13:1,5,8,10,12,
15,17,18,20,25 15:2
36:23 42:10 44:3,6,8,
11,15 50:9 54:18 57:8,
14,18,23,25 58:4,6,9,
14,17,22,25 59:2,9,15,
21 60:1,3,10,15,18,21,
24 61:23 62:7,9,12,16,
20,22,25 63:7,10 64:2,
10,14,20,23,25 65:25
66:3,8,10,14,25

**merger** 51:1

**messing** 5:5 6:19

**mid** 20:19

**Midwest** 24:5 33:11,14

**migraine** 43:19

**mind** 8:7 14:23 16:22
17:9 44:14 58:1

**minutes** 3:13 28:20,22,
23

**mommy** 38:7

**Monday** 10:19,22 48:3

**month** 21:6 45:21
53:18 59:19 64:6

**months** 42:24 43:6

**morning** 15:18 33:6
35:19 45:12 50:9

**mountain** 26:24 28:15

**move** 13:24 62:13

**moved** 54:6

---

**N**

**natural** 43:3,21

**naturally** 43:5

**nature** 43:4

**naturopath** 43:2

**necessarily** 11:5

**needed** 7:16

**needles** 43:10

**newest** 38:16

**news** 19:11

**nice** 15:5 17:25 18:1
22:15 24:11 31:7,12
33:16 35:10,11

**night** 24:7,14 42:17
61:3

**ninety** 62:21,22 63:1

**noise** 6:24 14:13

**noisy** 26:7

**normal** 40:10

**nostalgia** 25:16

**noted** 5:15 54:13,14

**November** 42:4

**number** 46:7 51:2
63:20

---

**O**

**OCM** 64:11

**office** 3:25 8:1 25:15
42:6 56:20

**OJI** 60:6,10

**older** 19:18 20:7

**open** 16:7 57:5 65:15,
17 66:4

**opened** 61:20

**opening** 61:5

**opportunities** 11:1
12:15 61:2 62:1

**opportunity** 44:20

**option** 57:10 59:24
60:1,9

**options** 7:23 8:2

**oranges** 25:6

**originally** 20:18

**outburst** 65:11

**overnights** 8:22 46:17
47:14 48:3

**overwhelming** 55:3
58:24 59:3

---

**P**

**paid** 54:22 64:21

**Palm** 33:22

**paperwork** 46:6 63:12

**parameters** 63:6

**part** 9:7 54:22 59:5

**passengers** 34:12,17

**past** 59:22

**pay** 45:6 60:18,24



BrighamR_Plaintiff Records 0633 (10.09.15)   **10/09/2015**   Page 74
REBECCA BRIGHAM v. FRONTIER AIRLINES

paying 60:13

payroll 61:15

pee 20:3

people 2:12 3:5 8:12,16 27:4,5 31:25 49:11 52:2 55:8,12 59:18 60:12,15, 21

perfect 3:3 8:17 48:13 65:8 66:6,22

personal 52:9 56:10

personally 34:10

perspective 51:6

pharmaceutical 43:5

phase 31:3

phonetic 4:1 10:5 35:20 38:3,4 39:10 61:6 65:18

pick 8:21 48:11 57:3,4

picture 19:23

pictures 18:13

place 32:25 52:5

play 20:8

plenty 63:23

point 10:2 38:8,9

points 43:16

policy 56:7

Portland 53:13

position 52:22 61:5,6, 15 62:5,14 63:4

positions 9:24 60:22

possibility 50:2,6

possibly 51:23

posted 10:16 61:15

pot 57:10

pounding 57:11

pounds 19:9

practices 51:7

pre-call 47:14

prefer 32:4 33:8

preschool 38:4

pressure 43:13,16

pretty 8:3 22:21 28:18 62:4

priority 51:3

PRO 10:5,7 61:1

problem 6:22 56:15

probs 26:3 30:1

program 43:6 57:20 60:11

prop 29:6

propeller 43:22

props 26:2

Pros 24:21

protective 45:6 54:22

proud 13:10

puppy 18:11 38:16

purpose 57:12,16

push 9:2

put 32:24

**Q**

qualify 61:22 62:3

quick 16:4 28:18 36:20 45:1

quiet 4:25 26:17 39:4

quit 9:3

**R**

reading 43:18

real 16:4

reality 11:18

Rebecca 2:1,4,6,13,17, 20,25 3:3,7,9,14,17,21, 24 4:2,5,6,10,12,16,19, 18:20,24 5:1,9,20,24 6:1,5,8,9,16 7:2,5,8,14, 22 8:11,20,25 9:6,9,11, 14,17,22 10:1,6,9,12, 17,19,21,24 11:3,6,9,

13,16,20,22,25 12:4,11, 13,16,19,22,25 13:7,9, 11,14,16,19,23 14:3,5, 8,14,16 15:5,9,12 18:1, 7,13 19:6,14,24 20:16, 20 21:7,10,12,16,21 22:1,6,15,23 23:1,12, 16,19,21 24:1,4,11,16, 22 25:13,24 26:2,9,11, 15 27:3,9,11,20,23 28:1,3,9,17,22 29:1,5, 24 30:13,20,24 31:5,10, 14,16,18,21,24 32:2,3, 5,7,9,12,19,21 33:5,7, 11,15,17, 22,25 35:3,5,9,12,15, 18,22 36:3,7,13,15,18, 22 37:2,8,11,14,17,21, 24 38:1,3,12,20,24 39:2,4,6,9,12,16,19,23 40:2,5,9,12,16,19,22,24 41:4,7,12,15,19,21,23 42:1,7,9,13,15,19,22 43:2,12,15,20,25 44:11, 13,16,18,24 45:4,8,11, 16,20,23 46:1,5,12,16, 19,24 47:3,12,17,20,24 48:2,6,9,14,16,21 49:6, 9,15,18,22 50:1,5,10, 14,18,21,24 51:2,11,15, 19,22 52:7,12,17,20,23 53:4,7,10,21,24 54:2,9, 11,20,24 55:7,11,22 56:2,5,22 57:1,8,13,17, 22,24 58:3,5,8,13,16, 20,23 59:1,8,13,20,25 60:2,4,14,17,20,23 61:8,13,16,19,21 62:8, 11,15,18 63:3,9,16,18, 21 64:1,5,9,19,22,24 65:1,4,8,11,13,16,20,23 66:2,6,9,12,16,17,20 67:1

recertified 65:3

recommend 57:19 61:1

recommendations 51:5

recovery 9:18 50:25 51:23

recurrent 61:12

regional 25:9

remember 23:1 31:22 38:9

remove 64:16

removed 7:19 13:1 45:3 54:15 64:15

repetitive 22:22

report 5:11 61:17

Republic 24:5,7,13 25:21 30:21

request 63:12

requested 46:6

requirements 51:8

responsibility 7:25 49:19 57:3,6

rest 64:15

Rich 16:5

rid 49:24

ridiculous 37:10

riding 22:23

role 61:14

roll 63:24

room 35:14

routes 28:16 30:23 31:7

routine 16:24

rows 26:13

running 58:2,4

**S**

sad 39:24

safety 27:15,16 41:16

salary 60:13

Santo's 61:6

schedule 5:13 7:24 36:1,12 53:14 59:17,21

scheduled 21:6 47:13 54:12

schedules 11:15,23

H+G   Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

1075

FRONTIER AIRLINES (R. BRIGHAM) - 0004410

BrighamR_Plaintiff Records 0633 (10.09.15)   **10/09/2015**                    Page 75
REBECCA BRIGHAM v. FRONTIER AIRLINES

| | | | |
|---|---|---|---|
| **scheduling** 5:11,14 46:13 61:11 | **sitter** 18:17,19 19:5 | 35:23 42:4 49:12 50:16 51:25 55:8,11 57:19 59:19 61:1 62:7,8 | **talk** 3:18 5:19 7:11 33:23 38:6 40:13 45:18 57:8 |
| **school** 42:4,24 50:16 | **sitting** 4:21 44:3,12 | | |
| **seat** 28:10 | **situation** 6:9 45:19 51:18,24 56:10 57:20 59:12 | **started** 20:17 21:8 23:6,10 24:7 38:18 | **talked** 10:1 47:13 50:9 |
| **seated** 31:25 | | **starting** 10:11 | **talking** 23:22 34:12,17, 18 35:10 40:10 52:14 56:5,6 59:4 64:13 |
| **seed** 41:2 | **situations** 52:10 | | |
| **self-disclose** 55:12 | **sixty** 49:20 57:3,7 | **starts** 40:10 | **talks** 20:1 |
| **self-disclosure** 55:19 56:7 | **slate** 59:19 | **statements** 48:18 52:15 53:23 | **taught** 22:20 |
| **send** 65:2 | **slide** 62:4 | **stay** 6:21 11:10 58:11 62:23,24 | **teeth** 41:2 |
| **senior** 6:21 | **slip** 60:21 | | **telling** 15:14 52:23 61:25 |
| **seniority** 9:10 56:18,23 59:6,23 62:19 63:8,9 | **smiling** 4:24 | **step** 41:10 | **terms** 63:11 |
| | **smooth** 48:23 | **Stephanie's** 3:24 | **terrible** 36:25 |
| **sense** 17:17 51:1 | **sober** 6:21 | **stepped** 3:13 | **texting** 36:24 |
| **sensitive** 58:14 | **sort** 35:23 43:15 45:11 57:19 | **stories** 34:3 | **therapists** 38:19 |
| **separate** 51:21 | | **stress** 52:2 | **thing** 9:18 14:22 28:6 34:5 |
| **September** 45:21 | **sounds** 27:14 44:10 | **stressful** 9:13 | |
| **servants** 27:12 | **Southwest** 18:24 | **strongly** 10:10 | **things** 27:16 65:24 |
| **serve** 28:20 29:2 | **speak** 2:7 57:9 | **stubborn** 20:4 | **thinking** 30:16 |
| **served** 33:15 | **SPEAKER** 2:3,5,10,15, 18,21 3:1,5,8,11,15,18, 22,25 4:3,5,7,11,13,15, 21 14:21 15:1,7,10,13, 18,22,25 16:3,7,10,19, 22 17:1,3,7,11,13,16, 20,22,24 18:3,5,9,11, 15,19,22,25 19:3,7,10, 15,19,22,25 20:5,10,13, 15,17,21 21:3,5,11,22 22:2,5,8,17,25 23:3,7, 20,24 24:9,15,17,20,23, 25 25:5,14 26:3,6,16, 19,21,25 27:2,7,10,17, 21,25 28:2,5,13,18,25 29:9,15,18,21 30:4,8, 10,15,18 31:20,22 32:1, 3,6,8,11,17,22 33:3,9, 17,23 34:2,5,9,14,19 35:6,10 63:14,17 65:2,5 66:15,18 | **stuff** 18:8 22:20 29:2 33:15,17 39:13 43:21 46:13 53:12 57:4,5 | **Thompson** 3:19 |
| **server** 33:2 | | | **thought** 10:2 19:15 |
| **service** 8:15 28:11,15 41:18 | | **substantial** 49:7 | **threw** 16:17 49:10 |
| | | **sudden** 23:10,15 48:24 54:4 | **throw** 9:17 49:2 50:24 |
| **sessions** 47:9 | | **suggest** 10:10 | **thrown** 7:23 8:2 |
| **settled** 16:23 | | **suggestion** 49:3 | **Thursday** 48:4 |
| **Shelly** 53:16,18 58:10 66:23 | | **Sunday** 24:7,13 42:17 | **time** 3:16 4:8 6:14 15:13 20:3 21:12 37:6 38:21 39:12 42:3,8 48:22 49:11 50:15 51:7, 12 53:12,17 57:5 62:13 63:23,25 65:25 66:5 |
| **shit** 42:17 | | **super** 13:12 45:12 | |
| **shot** 49:3 | | **supervisor** 14:18 15:3 | |
| **show** 5:11 18:17 48:24 54:3 | | **support** 44:15 56:9 | |
| | **special** 56:1 | **supposed** 5:4 | **times** 10:15 22:22 25:3 |
| **showed** 5:1 7:13,15,17 20:22 35:18 | **speech** 38:19 | **swap** 46:14 | **tissue** 6:3 |
| **sic** 66:13 | **Spring** 31:18 | **sweet** 18:15 19:22 | **today** 4:1,5 18:6 22:3 26:17 45:10 54:23 55:2 58:21 64:8 |
| **sick** 39:24 | **Springs** 31:8,19 | **switch** 50:6 | |
| **sill** 30:9 | **stand** 31:11 | **T** | **told** 40:15 53:18 |
| **simultaneously** 23:22 52:14 64:13 | **start** 7:24 12:7,14 17:15 | | **tossing** 29:1 |
| | | **takes** 40:2 | **totally** 19:16 32:14 |
| **sit** 36:23 | | | **touch** 17:6 |

BrighamR_Plaintiff Records 0633 (10.09.15)   **10/09/2015**
REBECCA BRIGHAM v. FRONTIER AIRLINES 4

Hunter + Geist, Inc.   800.525.8490   scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing



BrighamR_Plaintiff Records 0633 (10.09.15) 10/09/2015 Page 76
REBECCA BRIGHAM v. FRONTIER AIRLINES

touched 16:10

Tough 34:24

tracking 15:3

trade 46:14 49:23

train 16:6 18:25

training 10:2 22:11 61:7,12

trainings 61:12

travel 61:11

tray 33:12

treatment 56:1

tricky 14:25

trip 36:6 64:15,17

trips 8:18 32:5 47:11, 15,18 56:24 57:1

Tulley 38:3

turn 5:2,5,10,16 6:13,18 24:14 35:19 36:2,3,8,16 48:22 52:20 53:13 54:14

turned 22:12

turnings 48:11

turns 6:22 8:23 11:24 42:23 47:18,24 48:10 57:4 59:14

Twelve 46:4

two-and-a-half 15:20 28:4 38:5

U

U.S. 25:8 33:21

Uh-huh 2:17 13:10,18, 20 16:3 19:2,19 21:4 24:3,10 26:20 27:21 29:20 30:4,24 31:13,15, 24 32:11 34:2 36:14 38:11,14 39:2 40:8 41:6,20 42:19 43:20 47:16,19,23 49:5,8,14, 17,21,25 50:4,8 51:4 55:6,10 63:7

uhh 39:10

uhhh 65:17

ultimately 51:4

understand 40:13 48:20 53:1 65:12

understanding 47:6

union 57:11,12,16,21, 22

ups 31:11

usage 47:7

utilize 60:15

V

Vail 27:5

video 19:11

vocal 39:7

vocalizes 39:9

voice 40:6

W

wait 4:6

walk 7:10

Walking 14:12

wall 3:12 4:9

wanted 24:1 25:15 54:24,25 63:7

wanting 49:23 57:19

water 41:5

week 10:15,16 42:12 48:12

weekend 35:7 47:22

weekends 42:17 47:11,12

weeks 22:10

well-being 12:7

West 33:22

whiney 40:6

wondering 2:6

words 38:7,13,19,23 39:8

work 5:1,12 8:1,9,12,17 35:19 37:19 42:11,18 48:24 49:10 54:4,24 55:1 56:15 58:7,18 60:7 63:17 65:24

worked 54:25

working 8:14 36:25 58:9

works 8:11

Worried 40:22

worries 4:12

worst 33:21

worth 12:9 27:22

wow 15:13 20:20 21:5, 7,10,11 24:15 28:17 32:1,2

wrong 14:22,24 39:15

Y

year 28:4,7 30:4

years 15:12 30:7 62:16, 25

yesterday 16:5 18:18 19:5 61:15

York 32:10 33:18

Hunter + Geist, Inc. 800.525.8490 scheduling@huntergeist.com
Court Reporting, Legal Videography, and Videoconferencing

# #2

**October 9th, 2015**

**TRT 58:36**

WALKING INTO BUILDING

[00:00:19.07]
REBECCA: Hi, how are you? I am wondering - I need to speak with you or somebody from leave of absence or an in flight manager if anybody is available?

Ok in flight - you know what you can probably go back down there. They've got quite a few people back there uh --

REBECCA: Where is it at? I haven't been to the –

So you will make a left - just follow the hallway all the way around. Once you get to the auditorium its to the right of the auditorium. It will say In Flight right on that.  And you just go in through there.

REBECCA: Thank you so much.

WALKING

They are along that wall but they just stepped out for about 5 minutes.  They should be back any time.  Now if you wanted to talk to like Harry (?) who is the actual manager - she is over there also.

REBECCA: And do you know if Stefanie is here.

She is not in the office today.  She's out at DIA.

REBECCA: Ok who is here?

Kari and Jeff.

REBECCA: Ok. I will wait.

And they should be back any time now but they're little pins are right there on the wall.

WAITING

[00:04:24.24]
Hi, how are you?

REBECCA: Good how are you?

BRIGHAM LM 0000018

EXHIBIT 13

JEFF: How are you?

REBECCA: Hi. Yes please. I just showed up to work and they took my belt and turned off. I don't know what to do anymore Jeff. I finding it so hard to do everything I am supposed to be doing. And every turn is just messing with me. I called in for my 4 day. I was like can't do layovers. And I kept the Dallas at the beginning and they said that was fine for scheduling 940 reports. So I show up to work and its - I got on the bus and checked my schedule and it wasn't there. So I called scheduling and they are like oh I have it noted in here that you were going to keep the Dallas turn and then leave of absence contacted us and took it off. And so you need to contact leave of absence. So --

JEFF: Did you talk to them?

REBECCA: No not yet. I was just right here obviously from being at the airport and just I don't know what to do.

JEFF: Do you want to go down there?

REBECCA: What's that?

JEFF: Do you want to go down there.

REBECCA: Yes, try to compose myself.

REBECCA: Kari do you know any of this that is going on? Do you know any of this situation - what's going on. I'm Rebecca Brigham. Ok. As long as everybody is kind of in the loop. I just don't know what to do. Its just to figure out like why leave of absence took the Dallas turn - this was the - I have a hard time getting hours.

REBECCA: I think Jeff is trying to get a hold of leave of absence. It feels like every turn - everything I try to do - it seems like leave of absence is just messing with me and it's not fair. All I am trying to do is get sober and it's not fair. I am not seen enough to hold turns which is the problem.

JEFF: I think we will walk down there. Does that sound good? They have a conference room there.

REBECCA: Ok. I just don't know what to do anymore Jeff. Sorry.

KARI: Let's walk down there and see if you guys can conference - so you don't feel like you know what's going on. You just show up --

REBECCA: I don't feel like anything - I show - nobody then called me to tell me that I needed to contact leave of absence. I just showed up and its like not even a courtesy call.

2

1079

JEFF: ...per LOA.

KARI: That is what she was saying.

REBECCA: So uh -- and I don't know I have thrown all these options out there before like can I start with a blank schedule and then its my responsibility up to 60? And can I work in the office for a while. I mean what could I do? I've thrown all these options out. And it just pretty much everybody seems to know what to do with me basically. [00:08:17.28] I just don't know what to do. It's getting so frustrating.

KARI: If you don't mind me asking - why do you keep this job. I mean why - if it doesn't really work for what you are trying to accomplish why don't you --

REBECCA: It works for me because I like the people I work with and do I love the job, I just can't do layovers. And I like working with the customers. I still have the mentality for old customer service. I like making people happy. [00:08:46.22] And I like the people I work with but this is like the perfect job for me as long as I can just do day trips. And it was being able to be ok for a while as long as I could pick up enough and then call out for my overnights, but keep the turns on either end. [00:09:02.17] And then I don't know what's going on. I don't know if like they are just trying to push me out and make me so frustrated that I quit.

KARI: I don't think that is the case at all, but unfortunately part of the job that you love is layovers and it's all by seniority you know.

REBECCA: And I get it.

KARI: And they're not trying to be insensitive. And that's why I was asking like if this is so incredibly stressful why --

REBECCA: I don't know what else to do. I don't want to throw myself for a loop in this whole recovery thing. If its just insurance is through me - my babies can't have no insurance. I don't know what to do.

KARI: Have you ever looked at other positions within the company or are you not interested in it.

REBECCA: No I talked to training at one point and that might be good. Or I just - I don't know where to look. I don't know --

KARI: On All T Pro. You go into All T Pro and the job listings are there. And I mean I would strongly suggest like start looking at it and you might want to look at it every week because a lot of times jobs are only posted for one week. So I would just get in the habit - in fact every Monday getting on there and seeing what's new on there. Every Monday and every Friday and see what's in there because there is all these different opportunities that you probably aren't even aware that exist. Right. And it might not necessarily be In

3

BRIGHAM LM 0000020

Flight, but there is - you know there is a lot happening so -- I mean its - since you want to stay with Frontier and I know its the flight attendant job but I don't think its going to get easier with the schedule.

REBECCA: I mean Denver is just --

KARI: I mean that is the reality of what's happening with our base here.

REBECCA: Right and I get it.

KARI: The schedules are not going to get better as far as turns.

REBECCA: Right and I get it and I think it's just hard for me to let go of it you know. I just don't know --

KARI: For your own health and well being you need to start looking at other options so that you aren't constantly having to go through this. It's not worth it. Its just not. You know. So maybe start looking at other opportunities.

REBECCA: Ok.

KARI: But for right now lets try and get you through the immediate and we will have Jeff take you down there and find out what the heck is going on and why you were removed and you know you deserve to have an answer on that and I don't know. I seriously have no idea. So ok?

REBECCA: Awesome thank you.

KARI: I am proud of you. What you've done is super courageous. It really is.

REBECCA: It's hard. Thank you. Thank you.

[00:11:49.13]
KARI: Now go walk down there and see what's going on. And let me know.

REBECCA: Thank you so much. I will move your chair back.

KARI: No it's ok. I just have to leave it out here because it's crowded.

REBECCA: Thank you.

[00:12:02.11]
JEFF: I tried to call --

REBECCA: Nobody is answering? Ok.

4

BRIGHAM LM 0000021

JEFF: Have you tried to call compliance and see --

REBECCA: Yes I called and left Cassandra a voicemail too. I get -- I think --

WALKING / WAITING

[00:20:14.10] JUST CHATTING/NOTHING PERTAINING TO THE CASE WALKING INTO BUSY ROOM

JEFF: This is our new supervisor. This is Rebecca out of Denver. Meredith our new Trenton supervisor. She is going through initial too.

MEREDITH: It's been fun. I've had a really good experience so far. How long have you been at Frontier?

REBECCA: Uh 8 1/2 years.

MEREDITH: It's been a long time. I was telling (?). It says something if everyone has been for a while you know. Good. How is your morning going?

REBECCA: Busy.

JEFF: I can't believe its 9:30 and I've been here for 2 1/2 hours.

MEREDITH: It could be worse. You could be at the airport right? LAUGHS.

JEFF: Stefanie is out there.

MEREDITH: Ok.

JEFF: So I have a delayed repo meeting in 2 hours. And I was going to ask you real quick because Kari asked me yesterday - which training - I know --

MEREDITH: You know you kind of touched on it. I know it has to be done and that is kind of like a gray area for me. Because I am not like - do you determine if it should be coded to or is that something - that is a gray area so no I need more --

JEFF: In Flight and he kind of just threw it on me. I mean not in a bad way I just kind of - - so I knew you had it to. And I thought I would ask you.

MEREDITH: And I don't mind doing it once I get you know settled and into my routine. I think so. That was the impression I got.

JEFF: That is what I am getting too so we will touch base.

MEREDITH: You really don't want to keep doing it?

5

1082

BRIGHAM LM 0000022

JEFF: I don't mind doing it but I am just -- because you start to --

MEREDITH: It makes sense. I don't mind doing it. I am there for 8 hours anyway. Yes, we will connect. And nice meeting you.

REBECCA: Nice meeting you.

MEREDITH: So are you just hanging out here today or are you here for --

REBECCA: No just dealing with Leave of Absence stuff.

MEREDITH: Oh ok. How is your little puppy?

TALKING ABOUT PUPPY

[00:24:14.16]
REBECCA: How many people are in this class?

MEREDITH: I think it started originally when all the invites went out - in the mid 70s. But then it dropped down to maybe 65 showed and then I think now it's probably in the low 50s. I don't know. I try to count, but I get distracted and I --

JEFF: My class was 18 and I think there is 4 of us left.

MEREDITH: Really wow. And I guess next month there is like 75 schedule or 80.

JEFF: I think we started with 18 and graduated 15 or something.

REBECCA: Because at the time we had like a big class. I think we had like almost 50 and then we graduated like 42.

JEFF: Mine was one of those little filler classes. Or whatever. You kind of just for a little attrition. But everything was all Denver you know.

MEREDITH: Is Kari here today? It's going good - I mean I feel like I've been at it for 4 weeks already. So because they had me training in Trenton and Chicago and with these guys - which I didn't do initial.

JEFF: She is a jack of all trades.

REBECCA: Nice. You kind of have to be to be a manager.

MEREDITH: Yes. So I just hope I don't forget everything I learned before I went through initial. I think its - its just repetitive. Once I do it a few times --

6

1083

BRIGHAM LM 0000023

REBECCA: It will be like riding a bike.

MEREDITH: Oh I do remember that.

JEFF: I did the same as you but I started as -- and then -- so because it was funny because I had started and all the sudden you're going to go through initial and I was like oh ok because I didn't know when because there were way more classes and then all the sudden they had that little class.

REBECCA: So now have you actually every flown Jeff?

JEFF: Not the line.

MEREDITH: Never? Not for Frontier.

REBECCA: Now if you wanted to could you?

JEFF: Yes. Because I was Midwest then Republic then Frontier so I actually flew for Republic on a Sunday night started with Frontier.

MEREDITH: Did you really?

JEFF: Finished my line flying for Republic on a Sunday night turn.

MEREDITH: Oh wow.

REBECCA: That's cool.

MEREDITH: Do you miss it or not really?

JEFF: The line? Pros and cons. It really is -- some days you would be like -- I miss the line and then there is other times where you are like I am glad I have an office job.

MEREDITH: Its really - I came from - well my majority career was at US Airways, but I came from a regional - I was a manager there for -- but and I absolutely did not like flying the props and all that. That was just - that's why I wanted to get into the office. But now you know - I get that nostalgia its like that jets and the crew and all that. This is why I do this. But --

JEFF: That is kind of - Republic they brought in -- because they took over the Lynx flying from Frontier and so you had dual. You had jets and the props. But I could stand up - and I had two flight attendants and 76 people.

MEREDITH: See that's smart. We have - so they are loud and noisy and oh yes --

JEFF: I honestly -- we had about 20 rows so it was long.

7

1084

BRIGHAM LM 0000024

MEREDITH: But they are quiet.  It's like a lot more quiet.

JEFF: I actually miss flying into all the mountain communities.  It's beautiful.

REBECCA: I bet. I bet you don't miss like the Aspen people or what is that Vail - Vail people.

JEFF: Oh they are awesome.

MEREDITH: Are they really?

JEFF: Awesome.

REBECCA: Like the do everything for me you servants.  That is their attitude.

JEFF: To be honest with - I know this sounds bad but I just basically steer clear of them and just did the staff safety things that would jeopardize their safety. That is all that I basically did because they were -- you have to -- and it's not worth it.

MEREDITH: Its like how I deal with my daughter.

REBECCA: I mean I have a 7 1/2 year old. So it's like --

MEREDITH: Do you really?

JEFF: We had first class. So it was one seat and then two and you had to do a first class service even on the prop.  They milked you for that.  You had to be a first class service even on the mountain routes.  Serve cocktails as you bounce around.

REBECCA: You are 30 mins?

MEREDITH: Was it about 30 minutes?

JEFF: Yes.

REBECCA: Just toss them a bunch of stuff and say serve yourself.

JEFF: You have to give --

REBECCA: Really?

JEFF: On a prop? Can you believe that?

MEREDITH: That is out of control.

BRIGHAM LM 0000025

JEFF: And then you have to hang up their coats in front.

MEREDITH: But now look what you are doing. It just makes you love your job that way. Now I know why I do this.

REBECCA: What could have been.

JEFF: It was funny because they were like oh you know the props are coming and I was like you're kidding me. They're supposed to fly --

MEREDITH: What year was this?

JEFF: This was just -- three years ago. And they still have it.

MEREDITH: Who does their express flying?

JEFF: We don't.

REBECCA: We used to have Lynx.

MEREDITH: Ok. But that is no longer.

JEFF: No. And that is what Republic took over was the propeller. And they had flown the routes.

REBECCA: There for a while when it seemed like there was going to be a merger when everybody was like oh well you know like its going to be one and it went through that phase and then they dissolved Lynx.

JEFF: Like Colorado - Steamboat Springs, you know Durango and all that.

REBECCA: I had a girlfriend who just did Colorado Springs stand ups. It's like nice.

JEFF: Yep. I forgot about that. And we actually like flew jet.

MEREDITH: Where?

JEFF: Colorado Springs -- remember we did that. And uh that seated 99 people.

MEREDITH: What kind of flying do you prefer to do?

REBECCA: Day trips.

MEREDITH: Those are good ones.

9

1086

BRIGHAM LM 0000026

REBECCA: And I try to avoid New York just because there is so – I am so much more bubbly and friendlier than they are. That they totally try to take advantage of me. LAUGHING. You have to be like --

MEREDITH: You have to have their mentality.

REBECCA: And it's hard for me.

MEREDITH: I know right. I am the same way. Right, but once you do that they are fine. You know you got them in their place.

JEFF: Were you there --

MEREDITH: Oh really.

JEFF: The morning LaGuardia.

REBECCA: And it isn't awful. I prefer to be happy.

JEFF: I will never forget my RIE for Midwest was LaGuardia. And I will never forget because we had to use the tray -- because we were all first class at Midwest and I was like -- HARD TO HEAR. I was trying to be nice. But I wasn't used to New York but that is the way they are.

MEREDITH: This was my worst - when I was with US Airway. LaGuardia to West Palm Beach oh talk about high maintenance.

REBECCA: What's the one we have now? Its like Atlanta / LA. I've heard horror stories about that one.

MEREDITH: You just have to laugh because you are like I cannot believe this behavior. You know - and not take it personally.

REBECCA: And I do. I find myself talking to passengers sometimes -- talking to passengers like I am talking to my child.

MEREDITH: What did I do?

REBECCA: No they are here for me. You are fine.

JEFF: They don't think they have to abide by anything.

MEREDITH: What are you doing this weekend? Anything fun?

REBECCA: I do.

10

1087

BRIGHAM LM 0000027

MEREDITH: It was nice talking to you - nice meeting you.

JEFF: See you later.

Let's get you to a conference room.
[00:34:31.13]

[00:34:33.03]
JERRY: So what's going on?

REBECCA: I just - I showed up to work this morning for my Dallas turn and I got on the bus to check my flica and it was just gone. It sort of - I am going to start crying again I am sorry.

JERRY: That's ok. So we were looking at your schedule but you don't have the Dallas turn.

REBECCA: There was a Dallas turn in the beginning of the 4 day.

JERRY: We were looking on there and it looks like the trip never came back to Denver.

REBECCA: No there was just a Dallas turn. It was Denver, Dallas, Dallas, Denver. And then it was go back to Dallas and to Cleveland.

JERRY: Got it. So let's look at your schedule.

REBECCA: Is that -- yes there was a Dallas turn at the very beginning.

CASSIE: That's the --

REBECCA: It was a 4 right? It was a 4 leg day.

JERRY: I am going to go look it up. Where do you want to sit Jeff?

REBECCA: Don't cry.

JEFF: I forgot I am working with Jenny. Isn't that terrible when you have so many people?

REBECCA: Just let her know what is going on. Ok don't cry. Don't cry.

WAITING

JERRY: Sorry I am just going through emails. Since I've been away - 17 emails have come through.

11

1088

BRIGHAM LM 0000028

REBECCA: Oh my god.

JEFF: The amount of emails we get --

REBECCA: Is it from flight attendants?

JEFF: No it's just everything. Some are flight attendants. Some are delays. Some are -- it's just --

REBECCA: It hasn't even been a half hour.

JEFF: Like you miss a damn word and it could be -- so deep.

REBECCA: Now do you have access so you can check it at home if you need to.

WAITING

JEFF: How are the kiddos?

REBECCA: They're good. Kelly is in preschool. Kasen - oh my gosh he is 2 1/2 but like he doesn't really talk. He uses like eh. Like he will use -- momma and dadda. Oh my gosh its just at that frustrating point - I remember at that point when my daughter was right there - its like use your words.

JEFF: Well that's kind of ironic that you say that because I am good friends with the breeder of our newest puppy. And she is frustrated because her daughter started kindergarten and she is not good with words and they've tried speech therapists and they said it will come in time but she tends to not - she is always like use your words - wait you know and its not like she has a disability but she is just --

REBECCA: She is quiet.

JEFF: No she is vocal but she just doesn't want to use her words.

REBECCA: She just vocalizes it like ah! Every time we catch my daughter doing stuff like that -- CONTINUE TO TALK ABOUT KIDS

[00:41:07.03]
REBECCA: Do I have mascara on my face?

JEFF: No, I would have told you.

REBECCA: I hope so.

JEFF: Do I have any bats in the cave? That is what flying the line is - please tell me if I do.

12

1089

BRIGHAM LM 0000029

REBECCA: Or if you are eating... DISCUSSING MORE FUNNY SITUATIONS LIKE THIS

[00:42:01.09]
REBECCA: I just don't know what else I would want to do Jeff. And this gives me enough time enough off because I am going to start school in November and this job --

JEFF: I'll tell you in an office job - there is not much time off. I feel like -- I get up. I come to work. I go home and eat dinner and I go to bed and I think that is 5 days a week.

REBECCA: Yes.

JEFF: I am like oh my god. And I look forward to my weekends and its like shit I have to go to work again?

REBECCA: And see that's why --

JEFF: The flexibility is gone.

REBECCA: And that's why I want to keep doing turns if I can because then I will be able to go back to school and in 22 months have my degree and --

JEFF: What do you want to become?

REBECCA: Become a natural path. So it's like a natural doctor using the body and different elements of nature to cure your body naturally. Rather than using pharmaceutical drugs. So uh the MD program is 22 months and then after that you get your master of herbalist and then you get your acupressure and then there is one other one --

JEFF: Is that the needles like acupuncture?

REBECCA: Acupressure is just pressure. It's sort of like a massage using pressure points to cure different ailments, which is always interesting. I mean I've been reading --

JEFF: Does that help with migraines?

REBECCA: Yes like you can do natural stuff --

[00:43:33.11]
JERRY: All right we are trying to establish what happened. So I think from what we can see --

JEFF: Are you ok?

13

1090

BRIGHAM LM 0000030

REBECCA: Yes.

KARI: Rebecca doesn't need to feel like everyone is sitting here.

REBECCA: I don't mind either way.

We appreciate your support.
REBECCA: Thanks Jeff.

JERRY: So we've had an opportunity to look at see what happened. We do see that when you called in you did have that Denver - I don't know - Denver Dallas and then back to Denver. So it seems right now, just a quick glance but we are still able to look into it a little bit more that it might have been removed in error. And so if it was we will go ahead paper check it but we just need to look a little bit deeper and find out what happened. So we will try and figure that out by today.

REBECCA: It was just sort of like super frustrating this morning.

JERRY: And so we will try and figure out what happened and then we will follow up with you, but we also want to take while you are talk about your FMLA. So -- for the month of September towards the end of -

REBECCA: I have 13 days used right?

JERRY: Yes.

REBECCA: Is it only approved - because I had sent an email and I had heard nothing back. Is it only approved for 12 ok so then I had requested more intermittent of FMLA paperwork to increase the number up to 15 that way just in case. My hopes are that within the next month and a half that I don't have to use as much of it because I am hoping that through manipulation and scheduling and stuff I am able to swap and drop and trade more, but I will still have to use it for the overnights. I mean there is just no way around that.

JERRY: And so when we looked at I think initially the idea was - let's see what we can do and help you. I think somebody maybe heard you make a comment that we're out to get you. And so -

REBECCA: Yes that's what it feels like --

JERRY: And so I am having difficulty understanding that because I think the company has been extremely flexible with your usage of FMLA because initially you're approved for sessions. And then right now when we look at your bidding we are looking your bid for 4 day trips over the weekends.

14

1091

BRIGHAM LM 0000031

REBECCA: Over the weekends - which is I talked to Fritz in scheduling and he said that I can pre call out for my overnights. What I hold is 4 days trips. What I bid is trying to getting trips with turns on either end. It doesn't matter what days but I know I am going to hold a 4 day over the weekend with turns on either end. And then I call out for the overnights. I don't hold Monday through Thursdays - 4 days. I just don't. Uh so I bid for what I know I can hold and I keep the turns at either end and then I try to pick up turns during the week and that's I mean --

JERRY: And we're seeing that.

REBECCA: And I wait to --

JERRY: Right and I think the statements that we're out to get you I just don't understand that.

REBECCA: Its what it feels like. Every time I turn around when my life seems to be just going very like smooth its like all the sudden I show up to work without even a courtesy call and this has happened before too. I just don't get - I feel like everything that I try to throw out there as a suggestion it just gets shot down. I mean I need more hours. I need something more - more substantial and its just not being able to work, which is why I threw out last time - the idea of when people come back from Leave of Absence -- they start with a blank canvas. I don't know if its possible but can I just have that then its my responsibility to build it up to 60 - somebody has something on the trade board that they are wanting to get rid of but alleviate some of that. I don't - and maybe that's a possibility - maybe it's a possibility to take an extended leave of absence. I mean maybe it's a possibility to switch to a different job within Frontier.

JENNY: I talked to her this morning.

REBECCA: I don't know -- I am really honest - I don't know what else I want to do. I like being a flight attendant. It gives me enough time off that I can start school. I like the flexibility of it and I don't want to do something drastic that is going to throw me for a loop in my recovery. That's the number one priority.

JERRY: And so ultimately yes we are hearing the recommendations that you are making but from our perspective we have to be consistent in our practices. So the only time that we carve out certain bidding requirements are those who are out on a continuous leave of absence. Since at that time they are not allowed to bid - the difference between you is you are allowed to bid. So if we made - if we cherry picked to try and create you a certain situation now we've created a whole separate accommodation for you --

REBECCA: For somebody else that we are possibly going through recovery as well dealing with my same situation. Maybe this where we start? Maybe this is where we start doing a new guideline of how are we actually going to help these people rather than stress them out even more.

15

1092

BRIGHAM LM 0000032

JERRY: That is why we are helping you in the form of having this FMLA in place and using it outside of what you are approved for.  And when you approved FMLA - the department has also approved personal leaves for you in certain situations where FMLA wasn't covered --

REBECCA: Ok then well then how come --

JERRY: And so everybody is accounting for you but when the statements come out that we are out to get you - that is where --

REBECCA: It feels like that to me --

JERRY: It gets very frustrating.

REBECCA: Every turn --

JERRY: But it gets very frustrating from our position.

REBECCA: I am just telling you how I feel.

JERRY: We are doing everything we can.  And I understand that. But when we are doing everything that we can for you -- and then when you come back with that statement --

REBECCA: It doesn't feel like that to me.  It feels like in the beginning it kind of was and now it just feels like stuff like this is - this is the second time. A Portland turn - it was taken off my schedule.  I mean I just - I don't get it.

JERRY: And so this was the other day -- the conversation that Shelly and I had - you exceeded the amount of time that you had that month. I even told Shelly let's go ahead and approve it and extend it beyond that even though she is not approved.

REBECCA: Well thank you.

JERRY: But then again I hear these statements --

REBECCA: Maybe more communication between us.  So that I know that you are actually doing something rather than I show up to work and all this --

JERRY: Now this, I don't know what happened. I don't know - we don't know who moved it. What happened. We still need to look into it.

REBECCA: Ok because when I called scheduling they just said oh we have it noted here that you were going to do the Dallas turn and then we have it noted that leave of absence then removed it.

JERRY: Ok. And that we don't know. We are going to find out what happened.

16

1093

BRIGHAM LM 0000033

KARI: I was looking at - it's complicated when we try and look through all the history. I will look into that Rebecca - that's why we are saying if it was an error on the company's part you will be pay protected for today.  Ok?

REBECCA: And I also wanted to work. I haven't worked in like 6 days -- I wanted to work.  And I get it, I do get that there are errors but I just - today it was just so overwhelming for me when -- I just - I want to know that there is something more that we can maybe do and maybe this is where we kind of start to help other people not feel the way that I do sometimes.  Maybe we start a whole new - people who self disclose - let's get everybody on the same page and figure out exactly what we need to do rather than everybody kind of being on the same or maybe the next page.

JERRY: So and again I get where you are coming from but how do we compare only those individuals who are self disclosed from everybody else and has a serious health condition?  And we're not making exceptions.

REBECCA: We're all individuals and you have to look at us as an individual.

JERRY: Unfortunately FMLA does not allow us that ability because now we're only giving special treatment to certain individuals.

REBECCA: Right. Now here is this. I am not talking just in FMLA.  I am talking in the company's general self disclosure policy - could there be something in there that you guys say ok we are here to support you what can we do?  Ok when it comes to my personal situation like layovers - ok well there is no other creative way that we can go around this - its like I go broadcasting it to the entire flight attendants - like hey go ahead and just claim alcohol problems and they will work with you.

[00:51:23.26]
JERRY: I hear what you are saying, but in this industry where everything is seniority driven - any exceptions to that will not - its just not - if we were in an office environment we can definitely do that.

REBECCA: And I am not asking to go ahead of my seniority.

KARI: But you are asking us to hold trips that we cannot hold.

REBECCA: Not hold trips.  Its leave me with nothing. It's my responsibility to get up to 60. I will pick up turns off trade work. I pick up stuff at open time - that is what alerts are for and then that's my responsibility to get above 60.

KARI: Yeah Rebecca I can talk to that - speak to that. I mean it's just not even an option. Its not. We would have the union pounding down the front door. Right - and that's the purpose of a union right? Like to keep everything consistent for every employee - that is the purpose of a union and actually I would recommend if you're wanting to start some

17

sort of a program or whatever for your situation - you actually would go through the union on that. We as a company and just you have to keep that in mind too. We are running a business. We are running a company.

REBECCA: And I get that.

KARI: We need employees who can come to work. We're working with you within the guidelines Jerry has said and Shelly, but we have to stay within those guidelines. We do. And we're all sensitive to what you are going through. We are not going through it ourselves, but we are trying to work with you as much as possible.

REBECCA: Right and I do get that and today was just overwhelming and --

KARI: Right, so it can be overwhelming, but as I said to you earlier when we were talking you know you were saying you know I love being a flight attendant - unfortunately part of being a flight attendant at your seniority is layovers. And that's why I was encouraging you have to evaluate - even though you love the job - is this really the right job for me in my situation? Right?

REBECCA: If I can do just day turns.

KARI: Right and I mean it's just not possible that you can - you can't hold them. We can't clear your schedule and - there is a lot of people that would like to start with a clean slate for the month. And build their schedule - right? Anybody that is past a certain seniority they would love to have that portion but it's just not an option.

REBECCA: What about uh - and I had asked this before I think it was a no too - what about doing something like somebody who is on OJI? Like -- going to work at the desk at the airport or coming in here to do something. I mean is that an option for a little while.

KARI: So once again even the OJI has guidelines that we have to follow for people who are injured on the job because we're paying them a salary anyway so we utilize those people as we can. Because we are having to pay them anyway so we can't - we just can't slip people into those positions there because we are having to pay them anyway, but like I said to you earlier - I highly recommend you start going on to LT Pro and look at other opportunities within the company that have you home ever night like you need.

JERRY: There is a position that is opening up. (?) position - its the in flight training coordinator.

REBECCA: Ok what does that entail?

JERRY: It's the individual that coordinates all the travel, the scheduling uh recurring training, victory 21 trainings so she just took another roll in payroll so that position posted yesterday. So it reports directly to (?) Jacobson. So that just opened up.

18

BRIGHAM LM 0000035

REBECCA: I don't know if I qualify --

KARI: And you may or may not but I would - I was telling her earlier I mean there is so many opportunities right -- there are so just go in and look. If you don't feel like you would qualify for that because its pretty - it's not easy to just slide into that position. So uh -- yes start you know -- and I know you want to be a flight attendant, but maybe right now is not the best time and if you -- move to a different position -- maybe in a couple years you would feel like you could go back to flying.

REBECCA: Right, do you lose your seniority?

KARI: After?

JERRY: 90 day.

KARI: Oh is it 90 days. If you stay within the in flight --

JERRY: If you stay within the company --

KARI: Its 2 years. If you leave in flight its 90 days.

JERRY: Or if you leave the company its 90 days.

REBECCA: I get that. So I would have to take a position with in flight somewhere in those perimeters?

KARI: If you wanted to keep your seniority.

JERRY: So in terms of your FMLA, your request -- give me your paperwork so we can extend this.

REBECCA: I think I have given it to you.

KARI: I haven't gotten it.

REBECCA: Ok I will work on it.

JERRY: So we will get you an application so we can increase the number of the days and I think we did an audit. You still have plenty of time uh accrued and then as days roll off you're getting more time off. So that still gives you a little more flexibility too to use some of that.

REBECCA: And thank you for last month - that extra day.

JERRY: You bet. And then we will look into finding out what happened today.

19

1096

BRIGHAM LM 0000036

REBECCA: With the --

KARI: Yes, I will look into that. But its - I was seeing cross-eyed trying to figure it out. When what -- it looks like most of your - it looks like the rest of the trip got removed, but then somebody did go back in and remove the Dallas -- but I don't know how that happened.

REBECCA: Ok.

KARI: We'll look at it and if it's our error you will be paid.

REBECCA: Ok. Thank you very much. And thank you guys.

SHELLY: And then I will send you over all the info for to get recertified and then I will also give you a count as to how many days you have so far.

REBECCA: Thank you very much. Sorry for my emotional -- out burst.

JERRY: No it did happen - we understand. In any grievance, keep the lines of communication open.

REBECCA: Let's just try and keep it open so I don't feel so like ah! You know.

JERRY: Definitely.

REBECCA: Thank you very much. And I will keep looking on there to see if there is anything else that works.

KARI: Yes, do. You have some time now that you weren't expecting.

REBECCA: I know I should take advantage of it.

KARI: Go to the library, open up my computer and look around. Take advantage of the time.

REBECCA: Perfect. Thank you very much.

KARI: You're welcome.

JERRY: Sorry for all the frustrations and confusion.

REBECCA: Yes, I am sorry for my emotionalness.

KARI: It's a good thing.

20

1097

BRIGHAM LM 0000037

SHELLY: Let me give you my card Rebecca. If you have issues with anything just call me.

REBECCA: Ok. Awesome thank you.

WALKING

REBECCA: Awesome. Thank you Shelly. Thank you. I will. And I'm going to go look on LT Pro.

WALKING

REBECCA: Meeting over.

21

1098

BRIGHAM LM 0000038

**Arellano, Gerardo**

| | |
|---|---|
| **From:** | Arellano, Gerardo |
| **Sent:** | Thursday, October 15, 2015 12:45 PM |
| **To:** | Coppedge, Stefanie |
| **Cc:** | Thompson, Kari |
| **Subject:** | RE: Brigham |

Hi Stephanie,

Kari, Shelly and myself were able to meet with Rebecca last week.   We explained that the sick occurrence incurred will be recoded to reflect as IFM.  Thought it puts her over the number of days she is allowed under FMLA, we would make an exception for her.

We also reiterated the following:

* Her FMLA is currently being used outside of the parameters for what she is approved for.  In an effort to assist her with getting removed from overnights, the Company has continued to make exceptions for her.
* We are also willing to provide her new FMLA paperwork to allow her the ability to increase the number of days she allowed to use FMLA per month.

Please let me know if you have any questions.

Regards,

Jerry Arellano | Sr. Employee/Labor Relations Manager/Special Projects | Frontier Airlines, Inc.

**DENVER, CO**

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

*CONFIDENTIALITY NOTICE:  If you have received this email in error, please immediately notify the sender by email at the address shown.  This email transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity for which it is intended, even if addressed incorrectly.  Please delete it from your files if you are not the intended recipient.*

**From:** Coppedge, Stefanie
**Sent:** Tuesday, October 13, 2015 8:20 AM
**To:** Arellano, Gerardo
**Cc:** Thompson, Kari
**Subject:** Brigham

Sir –

Where are we with this one?


EXHIBIT
F

1

FRONTIER AIRLINES (R. BRIGHAM) - 0000069

EXHIBIT 14

**Leyner, Shelly A.**

| | |
|---|---|
| **From:** | Rebecca Brigham <rebeccabrigham4@gmail.com> |
| **Sent:** | Monday, October 26, 2015 5:41 AM |
| **To:** | LOA Frontier Employees |
| **Subject:** | Fmla 10/23/15 |

| | |
|---|---|
| **Categories:** | ----Attenion Shelly---- |

I woke up this morning in a panic, I for got to send you an email on Friday, I had to use my intermittent Fmla on 10 / 23 for a 4 day but I kept the pdx turn on the end. Please let me know if this will have to be coded as sick and if so what # of points am I at? Also the new fmla paperwork will be faxed by Tuesday. I hope you have a good day.

1

FRONTIER AIRLINES (R. BRIGHAM) - 0001849

EXHIBIT 15

**Coppedge, Stefanie**

| | |
|---|---|
| **From:** | Leyner, Shelly A. |
| **Sent:** | Tuesday, October 27, 2015 11:47 AM |
| **To:** | Inflight DIA MGR |
| **Cc:** | Arellano, Gerardo |
| **Subject:** | Rebecca Brigham 413206 – |

Her request has been denied for lack of timely notice to the LOA Department.

Please note

- 10/23/2015 – 10/26/2015 will remain coded as sick

Shelly Leyner
Supervisor of Disability Program Management



Frontier Airlines
7001 Tower Road
Denver, CO 80249
P: 720-374-4248 OJI
P: 720-374-4245 LOA
C: 303-746-6043
F: 720-374-9247 OJI
F: 720-374-8013 LOA
E: Shelly.Leyner@flyfrontier.com
E: OJIfrontier@flyfrontier.com
E: LOA@flyfrontier.com
E: LOABilling@flyfrontier.com

www.FlyFrontier.com
www.Facebook.com/FlyFrontier
www.Twitter.com/FlyFrontier

CONFIDENTIALITY NOTICE: This email may contain confidential and privileged material for the sole use of the intended recipient(s).
Any review, use, distribution or disclosure by others is strictly prohibited. If you have received this communication in error, please notify
the sender immediately by e-mail and delete the message and any file attachments from your computer.

1

FRONTIER AIRLINES (R. BRIGHAM) - 0001865

EXHIBIT 16



Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

VIA: Email address as
rebeccabrigham@centurylink.net

10/30/2015

Rebecca Brigham
DEN Flight Attendant

RE: Investigatory Meeting

Dear Rebecca Brigham:

In accordance with the Collective Bargaining Agreement (CBA), Article 18, Section B.1, an
Investigatory Meeting has been scheduled for you to attend on 11/03/2015 at 11:00 am to
discuss your attendance, specifically, your 10 occurrences, your sick call on October 23, 2015
did not qualify for IFM.

The meeting will take place at Frontier's General Offices, 7001 Tower Rd. Denver, CO 80249.
If you would prefer to teleconference, please call 720.374.4335 (Denver local) or 800.432.0403
using passcode of 403457. This meeting will be attended by Inflight as well as Human
Resources

Since this meeting may lead to disciplinary action, you are entitled, if you wish, to have an AFA
Union Representative join you in the meeting/conference call. Please be advised that it is your
responsibility to arrange for your AFA Representative to attend the meeting/conference call.

Respectfully,

*Stefanie Coppedge*

Inflight Management

cc:   Angie Reef
      Kori Halverson
      Adrienne Prince

FLYFRONTIER.COM

FRONTIER AIRLINES (R. BRIGHAM) - 0001731

EXHIBIT 17



11/11/2015

Rebecca Brigham
831 Centennial Drive
Bennett, CO. 80102

Re: Employment status

Dear Rebecca:

Please let this memo serve to confirm your employment with Frontier Airlines has been terminated
effective November 11, 2015 for violation of the Dependability Policy.  On October 23, 2015 you incurred
an absence and did not qualify for IFM.  This occurrence brought your attendance balance to 10 which is
about termination level of 8.

**Company Materials** -Your final paycheck will not be released until all Company materials are returned.
The cost of any items that have been issued during employment and that are not returned will be
subtracted from your final pay check. Our system indicates the following item(s) have been issued to you:

| | |
|---|---|
| _____ | Flight Attendant Manual |
| _____ | Frontier ID Badge **reported to TSA as stolen if not returned** |
| _____ | Other Issued ID Badge(s) i.e. SIDA, IMC |
| _____ | Known Crew Member Card (KCM) |
| _____ | Parking Pass |

All company property in your possession must be returned immediately to:

Frontier Airlines
7001 Tower Road
Denver, CO  80249
Attention: Manager of Inflight

**Uniform Balance -** Prior to your final pay check being prepared, we will ensure you have no outstanding
uniform balance. Any outstanding balance will be subtracted from your final pay check.

**Cobra -** You will receive information directly from United HealthCare regarding continuation of health
insurance benefits through COBRA. You will receive information regarding your 401(k) retirement benefits
from Charles Schwab Financial Services.

Sincerely,

Stefanie Coppedge

Supervisor of Inflight Services

720.374.1480

CC: Personnel File #413206
    AFA

Page 1

1

              IN THE UNITED STATES DISTRICT COURT
2                 FOR THE DISTRICT OF COLORADO
3    Civil Action No. 19-cv-03417-STV

4    _____

5    REBECCA BRIGHAM,
6            Plaintiff,
7    vs.
8    FRONTIER AIRLINES, INC.,
9            Defendant.
10   _____
11            VIDEO VIDEOCONFERENCED DEPOSITION OF
              REBECCA LEIGH BRIGHAM
12                   August 31, 2020

13   _____

     VIDEOCONFERENCED APPEARANCES:
14

     ON BEHALF OF THE PLAINTIFF:
15           JOHN REILY CRONE, ESQ.
             EVAN GRIMES, ESQ.
16           John R. Crone, LLC
             4550 East Cherry Creek Drive South, Suite 1003
17           Glendale, Colorado  80246
             Phone:  303-598-3526
18           Email:  john@crone-law.com
             Email:  evan@crone-law.com
19

     ON BEHALF OF THE DEFENDANT:
20           DANIELLE L. KITSON, ESQ.
             CAROLYN THEIS, ESQ.
21           Littler Mendelson, P.C.
             1900 16th Street, Suite 800
22           Denver, Colorado  80202
             Phone:  303-629-6200
23           Email:  dkitson@littler.com
             Email:  ctheis@littler.com
24

     ALSO PRESENT: Cole Bartelt, Videographer
25                  Jacalyn Peter
     Job No. CS4229140

EXHIBIT B

Page 40

```
1      break?  I hear my kids getting loud.

2              Q.   Yes.  Let me just look here.  Can we go

3      about ten more minutes; do you think?

4              A.   Sure.

5              Q.   Okay.  So you -- these absences were coded

6      as sick, correct?

7              A.   Correct.  When I would run out of my

8      intermittent FMLA time, which was in a rolling calendar,

9      and I waited for days to drop off, yes, they would be

10     coded as sick.  I was not sick.  I was adhering to my

11     program, which Frontier requires that I do.  Those should

12     not have been coded as sick.  Frontier had the ability to

13     just remove that.  Frontier had the ability to do

14     multiple things, Danielle, and they decided not to do it.

15             Q.   Okay.  I think I get it now.  So let

16     me -- let me try again.

17                  So you have certain days where you called

18     out, and these were intermittent FMLA, correct?

19             A.   Correct.

20             Q.   And you had certain days where you called

21     out, and you didn't have any intermittent FMLA left,

22     correct?

23             A.   Right.  And I would still call in

24     intermittent FMLA, but then later on, they'd be like, Oh,

25     by the way, you ran out of intermittent FMLA.  This is
```

Page 41

```
 1    coded as sick.  You're getting a point.  I should have
 2    never gotten that sick point.  I should have not -- it
 3    should not have even shown up as sick on my schedule, had
 4    Frontier reasonably accommodated me.
 5              Q.   Okay.  So let me ask you this:  So you had
 6    days when you called in intermittent FMLA, and it was
 7    coded that way, correct?
 8              A.   Yes, when I had intermittent FMLA days.
 9              Q.   And you had days where, for whatever
10    reason, you didn't have any intermittent FMLA left,
11    correct?
12              A.   Correct, and I could not do overnights.
13    And I could not do overnights.  It's not that I didn't
14    want to do these trips, Danielle.  I could not do
15    overnights in order to adhere to my program.  Frontier
16    knew this.  We had multiple meetings about this.  I asked
17    multiple times for reasonable accommodations that they
18    denied, denied, denied.  And then give me sick points,
19    and then ultimately fired me for said sick points.  It
20    was not fair, and I will argue that till the day I die.
21              Q.   I -- I understand.  I'm trying to
22    understand your position.  So we had days that were I --
23    IFMLA.  We had days where you had run out, and they were
24    coded sick, correct?
25              You don't agree with it --
```

Page 42

```
 1              A.    Correct.

 2              Q.    -- but they were coded sick, correct?

 3              A.    Correct.

 4              Q.    Okay.  And then on at least one occasion,

 5      you had neglected to mention that it was an intermittent

 6      FMLA day for timing, correct?

 7              A.    Correct.  And if you're talking about that

 8      final one when I forgot to send an email, the exact

 9      reason why I forgot to send that email is because they

10      had removed a trip from my schedule, which they had done

11      in the past, which is part of them driving me crazy on

12      purpose.  They all of a sudden told me I couldn't do a

13      turn at the end.

14              So I was more worried about why can't I do

15      this turn than sending an email in.  So I called my

16      Inflight manager, I talked to Stefanie, and she was like,

17      I don't know, you've always been allowed to do it before.

18      Let me see.  And I forgot to send the email within the

19      24 hours or whatever it was, because I was trying to

20      figure out why that turn was taken off of my schedule.

21              Q.    So you did not follow the call-out

22      procedures that were required, correct?

23              A.    I did not send the email in time, no.

24              Q.    Okay.  So you didn't -- okay.  So getting

25      back to this, so we've got these categories:  You called
```

Page 43

1      in for intermittent FMLA, and those were coded under the

2      dependability policy, not assessed points, correct?

3              A.   Say that again.

4              Q.   Let me start over again.

5                   We've talked about the different type of

6      call-outs that you did.  One was calling out under

7      intermittent FMLA, correct?

8              A.   Correct, when I had intermittent FMLA to

9      cover those overnights.

10             Q.   One was when you didn't have any

11     intermittent FMLA left, correct?

12             A.   Well, I would --

13             Q.   There were some days where you called in,

14     and you didn't have any left, correct?

15             A.   Correct.  But I hadn't really known --

16             Q.   I'm not asking for the reason.

17             A.   -- that at this time.  Okay.

18             Q.   I'm not asking for the reason.  I just want

19     to establish that.

20             A.   Okay.

21             Q.   And there was at least one time where you

22     neglected to follow the required call-out procedures,

23     correct?

24             A.   Yes.

25             Q.   Okay.  And all of those were coded

Page 45

1    because of my sick points.

2            Q.   When you called in -- when you called in,

3    you were calling in because you could not work due to a

4    medical condition, which was alcoholism, correct?

5            A.   Correct.

6            Q.   So the reason you were calling is that you

7    couldn't medically perform your job, correct?

8            A.   Correct.  Well, it's more like -- well, I

9    guess as a general term, yes.

10           Q.   Okay.  We got a little bit off track there.

11   So that -- that helps.  Let's look back then at this

12   Exhibit 16 very quickly here.

13           A.   Okay.

14           Q.   I just want to establish -- and -- and tell

15   me -- hold on one second.  I've got it up.  I just want to

16   make sure that you recognize each of these as an

17   attendance point that you actually did receive.

18           A.   Yes.

19           Q.   So there are several pages here.  Tell me

20   when I can scroll.

21           A.   Scroll.

22           Q.   Tell me if these are all true and accurate

23   copies of attendance points that you received while at

24   Frontier.  Okay?

25           A.   Okay.  You can just scroll.

Page 46

1          Q.    Okay.  All right.  So I am looking at a

2    December 29, 2008, memo from Robert Mitchell to you.

3                Do you see that?

4          A.    Yes.

5          Q.    Is that a true and accurate copy of a memo

6    that you received at Frontier?

7          A.    I mean, I don't specifically remember

8    this, but I'm sure it is.

9          Q.    Okay.  I'm going to scroll down.  I'm now

10   looking at a February 16, 2009 Performance Counseling

11   Record from Inflight to you.

12               Do you see that?

13         A.    Yeah.  The documented verbal warning?

14         Q.    Yeah.  Is this a true and correct copy of a

15   counseling record that you received?

16         A.    I'm sure it is.

17         Q.    I'm going to keep scrolling.

18         A.    All right.

19         Q.    And let me know if you need me to stop at

20   any point.  When I get to the end, I'm going to ask you if

21   these are all true and accurate copies of documents that

22   you received while at Frontier.

23               Okay?

24         A.    Okay.

25         Q.    I'm going to start scrolling.  Let me know

Page 47

1       if you need me to stop.

2                 A.    Okay.  Can you stop for a second,

3       Danielle.

4                 Q.    Yep, you bet.

5                 A.    Will you go up a little bit.

6                 Q.    Yeah.

7                 A.    Now, did any of these dates overlap?  Did

8       you look at that?  Like, do I have dates that are on this

9       one that are actually on the other ones too, or are they

10      all just different days?

11                Q.    I -- these are just copies of attendance

12      warnings that you received.  So I don't know in terms of,

13      you know, what infractions are what.  I just want to

14      verify that these are true and correct copies of

15      attendance points that you received.

16                A.    I don't know what UNA is on this one.  And

17      then that's a medical --

18                Q.    Did you receive this attendance warning

19      though?

20                A.    I mean, it looks like every other one that

21      I have received.

22                Q.    Okay.  Do you have any --

23                A.    I just don't know of any code -- I just

24      don't know what the code UNA is.

25                Q.    Do you have any reason to dispute that you

                                                              Page 48

 1     received this?

 2              A.    No, not at all.

 3              Q.    Okay.  All right.  Let me keep going.  Let

 4     me know if you need to stop at any point.

 5              A.    Okay.

 6              Q.    Okay.  I'm at the end.

 7                    Are these documents all true and correct

 8     copies of documents that you received from Frontier?

 9              A.    I believe so.

10              Q.    All right.  I'm going to stop sharing my

11     screen.  And then, did you want to take that break?

12              A.    Yes, please.

13                    MS. KITSON:  Okay.  We can go off the

14     record.

15                    THE REPORTER:  Cole?  Cole?

16                    THE VIDEOGRAPHER:  Yes.  Give me one

17     second.  We're going off the record at 9:04 a.m.

18                    (Recess from 9:04 a.m. to 9:16 a.m.)

19                    THE VIDEOGRAPHER:  We are going back on

20     the record at 9:16 a.m.

21              Q.    (By Ms. Kitson)  Ms. Brigham, do you

22     understand that you're still under oath?

23              A.    Yeah.

24              Q.    We talked a little bit before the break

25     about your work for other employers.

Page 54

1              A.    No.

2              Q.    Since leaving Frontier, will you describe

3       for us what efforts you've make to find employment?

4              A.    Basically, the Cakeheads, I found that.

5       And then immediately after that, I got hired by

6       Great West.  I had -- I was collecting unemployment after

7       Frontier wrongfully terminated me.  And I had to

8       apply -- I think it was three jobs a week.  And I did

9       that, and then finally got hired by the temp agency, who

10      hooked me up with Cakeheads.

11                   I don't have a bunch of schooling.  I

12      don't -- I mean, I was lucky to get the flight attendant

13      job, and that was like my career.  So for me to get a job

14      that would actually pay anything over what my daycare

15      costs would be would be difficult.

16             Q.    After you left Frontier, did you ever look

17      for any flight attendant position?

18             A.    No, I couldn't.  I wish I could have.  But

19      when you get hired on as a flight attendant, you start at

20      the very bottom.  And you're on what's called reserve,

21      which is where you have to be on call pretty much 24/7.

22                   With Frontier, it was you had 11 days off

23      in which they couldn't call you.  They could

24      junior-assign you if you answered the phone.  However, I

25      couldn't go back to being on reserve again and still

Page 55

```
 1     maintain my sobriety.  I just couldn't do it.  I wish I

 2     could.

 3               Q.   But you didn't even try to look; is that

 4     correct?

 5               A.   Because it wouldn't have worked out.

 6               Q.   All right.  And what other fields did you

 7     look at?

 8               A.   Admin-type of positions, which is what I

 9     ultimately got with Cakeheads and Great West.  I was a

10     house painter at first with Great West, and then they

11     switched me over to admin.

12               Q.   What was your hourly rate at Frontier when

13     you left?

14               A.   I want to say 32-something.

15               Q.   What was your hourly rate at Cakeheads?

16               A.   $12 an hour.

17               Q.   What was your hourly rate at Great West?

18               A.   I believe I was hired at $13 an hour, and

19     then when I left there, I believe I was at 18.75.

20               Q.   After you were fired from Cakeheads, you

21     got the Great West job a week after; is that right?

22               A.   Correct.

23               Q.   And is Great West affiliated with your

24     family in any way?

25               A.   Yes.  It's my dad's business and my
```

Page 64

1         A.    That would have been in September of 2014.

2         Q.    When you disclosed to Frontier in September

3    2014, you went out on a continuous leave of absence; is

4    that correct?

5         A.    Correct.

6         Q.    And Frontier approved that continuous leave

7    of absence, correct?

8         A.    Correct.

9         Q.    That was a leave of absence that was

10   offered under the Collective Bargaining Agreement,

11   correct?

12        A.    I guess.  I wouldn't know.

13        Q.    After that continuous leave of absence that

14   you took, did you ever apply or ask for any other form of

15   continuous leave of absence?

16        A.    No.

17        Q.    As opposed to you -- you know, let me ask

18   it again for the record.

19              As opposed to intermittent FMLA work?

20        A.    No.

21        Q.    So you knew that a continuous leave of

22   absence for medical was available, correct?

23        A.    Correct.

24        Q.    But you did not apply for one after your

25   initial leave for rehab; is that correct?

Page 65

```
 1              A.   That is correct.

 2              Q.   And at some point, I think that you and

 3    Jerry Arellano discussed the possibility of continuous

 4    medical leave, but you decided you did not want to have

 5    one, correct?

 6              A.   Correct.  I needed money coming in.  And

 7    had they accommodated me, I would have had that.

 8              Q.   Your alcoholism -- let's say from

 9    September 2014 forward -- well, strike that.

10              How long were you in rehab in that

11    September 2014 era?

12              A.   60 days.

13              Q.   After that 60 days, did you return to work?

14              A.    I came back, and I tried to return to

15    work, and I had to meet certain criteria in order to come

16    back.  I had to meet with a DOT specialist, where -- I

17    don't even know why I had to do half the stuff.

18              But I had to meet with DOT.  I had to get

19    paperwork in.  I had to -- I believe during that time,

20    they decided that I needed to see a therapist, which I

21    was seeing a therapist.  There were a bunch of, like,

22    hoops I had to jump through to come back, which I did.

23              And I want to say in -- because I got back

24    November 7th, and all that was done within the first

25    three weeks that I came back, I want to say.  And it was
```

Page 67

```
 1        supposed to basically, they say, change your playground,

 2        which is what I was doing.  And I needed Frontier's help

 3        to do it.

 4                 Q.   When was the last time you had a drink?

 5                 A.   My sobriety date is September 5th of 2014.

 6        I got some treatment September 7th of 2014.  When I got

 7        the scholarship, it was on September 4th, and I had been

 8        drinking that day and told the guy on the phone that I

 9        would dump out what I had, and they put me on a plane on

10        the 7th.

11                 Q.   What scholarship are you referring to?

12                 A.   I got, like, a scholarship to go to a

13        treatment center.  We wouldn't have been able to afford

14        it.  And I just called the right person -- I called a

15        bunch of people that day, just trying to figure out where

16        I could go get treatment.  And I happened to get on the

17        phone with the right person, and I got a -- what they

18        call a scholarship.  It cost me $100 to do my whole

19        treatment.

20                 Q.   So since September 5th, 2014, you have not

21        had a drink, correct?

22                 A.   No.  Correct.

23                 Q.   Your alcoholism has been under control?

24                 A.   Correct.

25                 Q.   Before that, did you ever have a drink
```

Page 68

1       while on the job at Frontier?

2              A.   No.   Luckily, I had never crossed that

3       boundary.  Oh, and I feel like I need to qualify -- or

4       clarify.  So never while on duty.  However, on

5       overnights, after you're done, it's -- it was just kind

6       of a culture where you would take off all your flight

7       attendant gear, put on normal clothes, and go meet at the

8       bar.  Nine times out of ten, that's what you did.

9              Q.   But it never impacted your ability to work

10      the next day, for instance; is that right?

11             A.   What do you mean?

12             Q.   So let's -- let's take pre-September 5th,

13      2014.

14                  You would drink in hotel bars on layovers,

15      correct?

16             A.   Right.

17             Q.   Was there ever a time that you could not

18      fly because you were drunk or because of the aftereffects

19      of that?

20             A.   No, not while I was already on a trip at

21      all.  I mean, there were plenty of times that I flew

22      pretty hung over, but never intoxicated.

23             Q.   So is it fair to say that your alcoholism

24      did not prevent you from working before September 5th,

25      2014?  Is that fair?

Page 69

1              A.    Kind of.  There were plenty of times, like

2      if I had gone on a bender, I remember a few times that I

3      would have to call in sick, because I was too hung over

4      or too shaky to do my job.

5              Q.    But, in general, you were able to keep your

6      job?

7              A.    Correct.

8              Q.    You were able to meet --

9              A.    Yes.

10             Q.    -- the attendance requirements?

11             A.    Yes.

12             Q.    So prior to September 5th, 2014, you were

13     able to work in general, correct?

14             A.    Yes.

15             Q.    Since September -- sorry.

16                   Since September 5th, 2014, alcoholism has

17     not impacted your ability to live your life, correct?

18             A.    Since 2014?

19             Q.    Yes.

20             A.    Yes.  Yes.

21             Q.    And let me ask that question again just so

22     the record is clear.

23                   Since September 5th, 2014, alcoholism has

24     not impacted your ability to live your life, correct?

25             A.    I mean, you sort of have to clarify that.

```
                                                          Page 70

 1        My recovery is part of my life now.

 2                Q.   Right.  So since September 5th, 2014,

 3        you've been able to live your life, correct?

 4                A.   Correct.

 5                Q.   You've been able to care for your husband's

 6        grandmother, correct?

 7                A.   Correct.

 8                Q.   You've been able to care for your kids,

 9        correct?

10                A.   Correct.

11                Q.   You've been able to work, correct?

12                A.   Correct.

13                Q.   Is there any area of your life that the

14        alcoholism has impacted you in terms of your ability to

15        live a daily life?

16                A.   After I got sober, we're still talking,

17        correct?

18                Q.   Correct.

19                A.   Yes.  It's just different now.  My life is

20        better since getting sober.

21                Q.   So there's no area of your life where it's

22        impacting your ability to function; is that correct?

23                A.    Not currently, but that could change

24        tomorrow, Danielle.  That's why I continue to work my

25        program.  Something could happen, and tomorrow is not
```

Page 71

1       guaranteed for me to be sober.  I can just take it one

2       day, one minute, at a time.  Anything could change.

3                    Q.   Okay.  I understand that.

4                         So --

5                    A.   So far, it hasn't impacted anything.

6                    Q.   Okay.  Yeah.  So let me just clarify for

7       the record.

8                         So anything could change at any moment,

9       right?

10                   A.   Right.

11                   Q.   But from September 5th, 2014 to the

12      present, alcoholism has not impacted any of your major

13      life activities; is that right?

14                   A.   Correct.

15                   Q.   From September 5th, 2014 to the

16      present -- strike that.

17                        From September 5th, 2014 to the end of your

18      employment at Frontier, you were always able to perform

19      the essential functions of your job while on duty,

20      correct?

21                   A.   Correct.

22                   Q.   Okay.  I want to talk to you now about what

23      accommodations you requested from Frontier.

24                        So tell me about the accommodations that

25      you requested from Frontier from September 5th, 2014 to

Page 72

```
1      the end of your employment.

2             A.   Okay.  I asked to work at the general

3      office for a little while, since my attendance was so

4      bad, and it kept getting worse the more my -- basically,

5      my seniority would go down, because they opened an

6      Orlando base.  So I was not able to hold the kind of

7      trips that I needed to maintain my sobriety.

8             I had asked to maybe work at the GO, which

9      is what they let people do when they're injured on the

10     job.  I asked to start off with a blank schedule to be

11     able to create my own schedule out of open time and the

12     TradeBoard, which is pretty much what's leftover after

13     they run a schedule.  But that would take Frontier

14     starting me out with a blank schedule.  It was not

15     something that I could have just done without their help.

16            Q.   What other accommodations did you request,

17     if any?

18            A.   I requested they just remove the

19     overnights from my schedule, which they had done a few

20     times prior.  When I needed to, they had just removed

21     them and said, We'll do it this one time, but we can't do

22     it forever.  I mean -- yeah.  I had multiple meetings

23     with them trying to figure out what we could do in order

24     to get this to work.

25            Q.   What other accommodations did you request,
```

Page 75

1          Q.    Okay.  Did you tape those recordings?

2          A.    I did.

3          Q.    On those recordings, I heard you speaking

4    about open positions with Frontier representatives.

5                Is that your recollection as well?

6          A.    Correct.

7          Q.    Did you speak with them about open

8    positions?

9          A.    Correct.

10         Q.    Who --

11         A.    It was mentioned to me that I could

12   transfer within the company, that that was an option.

13   And at one point, I even looked into it, and I saw a

14   bunch of jobs that really I didn't qualify for.  They

15   were like statistics, ops, stuff like that that I didn't

16   qualify for.  And then I found out from another flight

17   attendant that you don't want to do that if you want to

18   go back to inflight.

19         Q.    So transfer was an option, but it was not

20   attractive to you because of loss of seniority and

21   inability to transfer back.

22                Do I have that correct?

23         A.    Correct.

24         Q.    Let's go back to the general

25   office -- well, strike that.

Page 76

1              So I have that you discussed with the

2       company a potential light-duty assignment in the general

3       office; is that correct?

4              A.    Correct.

5              Q.    And you would have taken that on an

6       intermittent basis.  So whenever you had a layover that

7       involved an overnight, your idea was that you would drop

8       that trip and work at the general office.

9              Do I have that correct?

10             A.    That was one.  The other one was just put

11      me as a GO for a while so that I don't have to do

12      overnights, until I can get further along in my recovery

13      where my therapist suggested, Hey, I think you're okay to

14      do overnights now.  I think you're at a place in your

15      recovery when you would be okay.  That's all we were

16      waiting for.

17             Q.    So then there's two different things there,

18      and I'm breaking that out.

19             So number one, you wanted potentially to be

20      in a temporary position in the general office full-time

21      indefinitely; is that correct?

22             A.    Not indefinitely.  Temporarily, until I

23      got to a point in my recovery when I could pick up the

24      overnights again.

25             Q.    But you didn't have an exact end date for

Page 77

```
 1        when that would be, correct?

 2                A.   No.  It was open-ended, and that was

 3        pretty much up to my therapist, when she thought I was

 4        ready, and when I felt I was ready.

 5                Q.   Which could have been a year, or maybe

 6        never.

 7                     You don't -- you didn't know, right?

 8                A.   We were getting a lot further along in my

 9        recovery, and it would have been pretty soon after.

10        However, with all the stuff that Frontier put me through

11        and everything that was going on, honestly, that set back

12        my recovery quite a bit.  So it was just making the

13        problem worse.

14                Q.   And the question I have for you,

15        Ms. Brigham, is you did not know exactly when you would be

16        able to fly overnights again, correct?

17                A.   Correct.

18                Q.   It was open-ended, correct?

19                A.   Open-ended, but ended.  It's -- it would

20        never have been indefinitely.

21                Q.   But you didn't know when, correct?

22                A.   Correct.

23                Q.   And the other option that you had discussed

24        with Frontier is this intermittent concept, where whenever

25        you couldn't fly a layover, you would then work in the
```

Page 79

1           Q.   So you were requesting the accommodation of

2      when you had an overnight trip, you would call out for

3      that and instead work in the general office, correct?

4           A.   Correct.

5           Q.   And not be assessed any attendance points,

6      correct?

7           A.   Correct.

8           Q.   And be paid, correct?

9           A.   Correct.

10          Q.   Are you aware of anyone else who was given

11     that accommodation?

12          A.   Yes.  Lots of people, after they were

13     injured on the job, would go work at the GO.

14          Q.   Are you aware of anyone who was allowed to

15     do that outside the context of an injury on the job?

16          A.   No.

17          Q.   In terms of the blank schedule, describe

18     for me exactly what you requested.

19               How would that work?

20          A.   So basically -- okay.  When -- every

21     month, a flight attendant has to bid their preferred

22     schedule, and it goes by seniority.  So basically, I was

23     asking to not be awarded a schedule at all.  Leave me

24     with nothing.  Leave me with nothing.  Leave me with a

25     blank schedule, and then at the end of the bidding

Page 80

1    period -- at the end, there's what we call open time and

2    TradeBoard, which are the leftovers that nobody wants

3    that a reserve is going to have to fly or that other

4    people can swap and trade their trips out with.

5              What I was asking to do was just be left

6    with nothing.  It would not have gone above seniority.

7    It would not have violated anything in the CBA.  Leave me

8    with nothing.  And I -- it will be my responsibility to

9    build my schedule up to 60 hours, which was the

10   requirement, out of stuff that was left over and the

11   stuff that nobody wanted.

12             Q.   Tell me a little bit more about how the

13   bidding process work.

14             So every month you bid, correct?

15             A.   Mm-hmm.

16             Q.   And every month, if you are an active

17   employee, you have to bid, correct?

18             A.   Correct.

19             Q.   And if you don't bid, the CBA provides that

20   you are given a line, correct?

21             A.   Correct.

22             Q.   And a line is a --

23             A.   I mean, so you would bid for reserve if

24   you wanted, which then you'd have a reserve schedule.

25             Q.   And describe for us, what is a reserve

Page 112

1          Q.   But she didn't refuse the company speaking

2     to you further; she just said, I'm going to need to direct

3     you to Shelly Leyner, correct?

4          A.   Correct.

5          Q.   And did you actually talk to Shelly Leyner?

6          A.   She was copied on that email.  I talked to

7     Shelly multiple times.

8          Q.   So no one prevented you from talking to her

9     or to Mr. Arellano, et cetera?

10         A.   No.

11         Q.   Okay.  I'm going to show you Brigham

12    Exhibit 20.  So Brigham Exhibit 20 is a document bearing a

13    Bates stamp FRONTIERAIRLINES(R.BRIGHAM)- 1766.

14              Do you see that?

15         A.   Yes.

16         Q.   Do you recognize this document?

17         A.   I do.

18         Q.   What is it?

19         A.   I had turned this in at my investigatory

20    meeting.

21         Q.   Your investigatory meeting was on or about

22    November 3rd of 2015; is that right?

23         A.   Correct.

24         Q.   And did you bring this into the meeting?

25         A.   I did.

Page 113

1           Q.   Okay.  And is this the last accommodation

2      request that you made?

3           A.   I believe so.

4           Q.   Okay.  And you say, Ideas, just remove me

5      from the overnights, have me build my own schedule out of

6      open time and TradeBoard.

7                Do you see that?

8           A.   Yes.

9           Q.   Are those the accommodations that we've

10     been talking about?

11          A.   Except not the one where I would go work

12     at the general office.  They had told me that that was

13     impossible because that was just for people that got back

14     from OJI.

15          Q.   Okay.  So other than that, this was the

16     final accommodation request that you made, if you will; is

17     that correct?

18          A.   Correct.

19          Q.   And what happened with this request?

20          A.   I retired.

21          Q.   So Frontier denies this request; is that

22     correct?

23          A.   Yes.  They wrongfully terminated me, I

24     would say.

25          Q.   Are you bringing any claim in this case

Page 118

```
 1                 Do you see that?

 2          A.   Yes.

 3          Q.   And were you aware that that was a

 4     requirement under the FMLA?

 5          A.   Yes.

 6          Q.   Okay.  We can set that aside.

 7                 I'm going to open what has been marked as

 8     Exhibit 23.  It's such a crazy world like sharing and

 9     using exhibits.

10                 Okay.  Are you seeing a document, Brigham

11     Exhibit 23, which is a Frontier Airlines job description?

12          A.   Yes.

13          Q.   Okay.  And just for the record, this is

14     FRONTIERAIRLINES(R.BRIGHAM)- 93.

15                 Are you with me?

16          A.   Yep.

17          Q.   Do you recognize this document?

18          A.   The job description, yes.

19          Q.   And is it familiar to you, the flight

20     attendant for Frontier Airlines?

21          A.   Yes.

22          Q.   And Section 2 is Essential functions.  And

23     then there are a list of bullet points.

24                 Do you see that?

25          A.   Yep.
```

Page 161

1              Do you see that?

2         A.   Yes.

3         Q.   And nowhere on this document does she say

4     that you need any kind of accommodation for avoiding

5     overnights or layovers, correct?

6         A.   Not that I see, nope.

7         Q.   I'll stop the screen.

8              I'm going to pull up Exhibit 42 -- Brigham

9     Exhibit 42.  I'm showing you what has been marked as

10    Brigham Exhibit 42.

11             Do you recognize this document?

12        A.   Yes.

13        Q.   What is it?

14        A.   It's a transcript of some recording that I

15    have.

16        Q.   Is this -- well, strike that.

17             On June 4th, 2015, did you attend a meeting

18    at Frontier's general office?

19        A.   Yes.

20        Q.   Did you record that meeting?

21        A.   I did.

22        Q.   Is this your transcription of the

23    recording?

24        A.   No.  I had a lady that my mom works with

25    transcribe it for me.

Page 167

1              A.    No worries.

2              Q.    All right.  I'm showing you what has been

3       marked as Brigham Exhibit 14, which appears to be an email

4       from Cassandra Micklich to you, dated June 4th, 2015.

5                    Do you see that?

6              A.    Yep.

7              Q.    Do you recall receiving this email?

8              A.    I do.

9              Q.    All right.  Ms. Micklich says, Rebecca,

10      thank you for coming in and meeting with us today.  I did

11      get some answers to your questions.

12                   Do you see that?

13             A.    Yep.

14             Q.    And is this that same day of the transcript

15      that we saw, June 4th, 2015?

16             A.    I believe so.

17             Q.    Okay.  Ms. Micklich says, Number 1, OJI

18      working at the GO, if that was an option for you.  A, That

19      is not an option.  The GO is only to accommodate OJI.

20                   Do you see that?

21             A.    Yep.

22             Q.    And does OJI stand for on-the-job injury?

23             A.    Yes.

24             Q.    Okay.  And then says, Number 2,

25      transferring internally with the company.

Page 168

1             Do you see that reference?

2        A.   Yes.

3        Q.   And she says, Please refer to page 81 of

4    123.  It talks about the process and seniority.

5             Do you see that?

6        A.   Yes.

7        Q.   And is that a reference to the Collective

8    Bargaining Agreement?

9        A.   I don't remember.  Is that the one that

10   you put in front of me earlier?

11       Q.   Yes.  Let me see if I can cross-reference

12   it.  Hold on.  Bear with me one moment here.

13       A.   No worries.

14       Q.   Yes.  Okay.  Yeah, let's cross-reference

15   these.  So I'm going to share my screen with you.  Okay.

16   So Brigham Exhibit 14 is the email that we have been

17   looking at.

18             Do you see that?

19       A.   Yes.

20       Q.   And Ms. Micklich tells you to, Please refer

21   to page 81 of 123.  It talks about the process and

22   seniority.

23             Do you see that?

24       A.   Yes.

25       Q.   And then if we look at Brigham Exhibit 1,

Page 169

1     which is the Collective Bargaining Agreement, you can see

2     page 81 of 123 --

3               A.    Yes.

4               Q.    -- here at the bottom.

5               Do you see that?

6               A.    I do.

7               Q.    And scrolling up, there's the same

8     language, again, that talks about how you accrue seniority

9     for a period not to exceed two years.

10              Do you see that?

11              A.    I do.

12              Q.    Does that refresh your recollection that

13    the company told you about the two years of seniority that

14    you would retain?

15              A.    No.   I didn't even know what document that

16    she was even referring to.   It didn't say in the

17    Collective Bargaining Agreement or the employee handbook.

18    To be honest, I didn't even look, because I'd already

19    been told that you lose your seniority after 90 days.

20              Q.    Well, Ms. Micklich is directing you and

21    telling you to, Please refer to page 81 of 123, right?

22              A.    Yes.   But it doesn't say what page 81 of

23    123.   I didn't know if it was in the handbook or the CBA.

24    And like I said, I did not look, because I had already

25    been told.

Page 170

1    Q.   Well, this is the exact same day that you

2    met with Ms. Micklich, correct?

3         A.   Correct.

4         Q.   And on that exact same day, we saw in the

5    transcript you talked about internal transfers, correct?

6         A.   Correct.

7         Q.   And she said she'd have to look into it,

8    correct?

9         A.   Correct.

10        Q.   And she's now coming back to you on the

11   exact same day and saying, Please refer to page 1 -- 81 of

12   123; is that right?

13        A.   Yes, but it doesn't say what document

14   she's referring to.  Page 81 of what?

15        Q.   Did you ask her?  Did you --

16        A.   No, I did not.

17        Q.   You say, The reason --

18        A.   I had no reason.

19             THE REPORTER:  One at a time.

20        Q.   (By Ms. Kitson)  You just testified that it

21   could be the handbook, it could be the Collective

22   Bargaining Agreement.

23        A.   I --

24        Q.   Did you look at any one of those?

25        A.   I did not.

Page 172

1            Wouldn't that suggest to you that it's the

2    Collective Bargaining Agreement she's talking about?

3            A.   Not really, necessarily.  I would

4    have -- personally, when I looked at that, I figured it

5    was probably the handbook, not the Collective Bargaining

6    Agreement.

7            Q.   The handbook doesn't address seniority,

8    correct, that's the CBA?

9            A.   I don't know.  I believe the handbook

10   addresses it as well.

11           Q.   All right.  Looking at Exhibit 43 --

12           A.   And to be honest, Danielle, I remember

13   seeing somewhere about -- I'm trying to think where I saw

14   it -- about seniority, and I couldn't keep my -- go back

15   to inflight.  And I'm not going to remember.

16           Q.   I'm just kind of looking through the

17   handbook here to see if there's something there.

18           A.   Yeah.

19           Q.   Hold on.  I'm almost through it.  No, I

20   don't think so.  All right.

21           Well, in any event, let's look back at

22   this --

23           A.   Okay.

24           Q.   -- Exhibit 43.

25           And you had testified that this is a

Page 173

1    transcript that was made of a recording that you took at a

2    meeting at Frontier headquarters on October 9th, 2015.

3              Is that correct?

4         A.   Correct.

5         Q.   And once again, is this a transcription

6    that a friend of yours made?

7         A.   Yes.

8         Q.   Okay.  And did you review it for accuracy?

9         A.   Not in its entirety.

10        Q.   Were there any things that you found to be

11   inaccurate?

12        A.   Yes.  In all of them, there were stuff

13   that was inaccurate.

14        Q.   I'm going to cross-reference -- oops.  Bear

15   with me.  Brigham Exhibit 33 that I'm showing you is

16   another transcription that we had made --

17        A.   Okay.

18        Q.   -- with Hunter + Geist, which is a court

19   reporter service.

20        A.   Okay.

21        Q.   And I'm showing you -- it's, Transcription

22   of Recording, October 9th, 2015.

23              Do you see that?

24        A.   Yep.

25        Q.   I'm just going to use that to -- for the

Page 175

1   who was at the general office that day.

2          Q.   Okay.  She says, Have you ever looked at

3   other positions within the company, or are you not

4   interested in it?  You answer, No, I talked to training at

5   one point, and that might be good, or I just -- I don't

6   know where to look.  I don't know.

7               Do you see that?

8          A.   Yes.

9          Q.   And then Ms. Thompson says, On UltiPro.

10              Are you aware what she's referring to

11  there?

12         A.   UltiPro, I believe, was a system that we

13  used at the time.  UltiPro would have been like where our

14  paycheck stubs and stuff were.

15         Q.   Mm-hmm.  So you knew where to look on

16  UltiPro, and you knew what she was talking about.  I

17  believe it's UltiPro, with a U, but --

18         A.   I --

19         Q.   -- you knew that -- you knew what she was

20  talking about?

21         A.   I knew that she was talking about UltiPro,

22  but I didn't know like where to sort of look in there.

23  Cassie had told me to go to flyfrontier.com, which I had

24  done.  I don't remember if I went to UltiPro or not.

25         Q.   Okay.  But you knew what UltiPro was in

Page 176

1    her --

2              A.    Correct, yes.

3              Q.    Okay.  And she suggested you go and look

4    there for job listings, correct?

5              A.    Correct.

6              Q.    And she states -- I'm back on Brigham

7    Exhibit 43 -- and, I mean, I would strongly suggest --

8    like start looking at it, and you might want to look at it

9    every week, because a lot of times jobs are only posted

10   for one week.  So I would just get in the habit, in fact,

11   every Monday, getting on there and seeing what's new on

12   there.  Every Monday and every Friday and see what's in

13   there, because there is all these different opportunities

14   that you probably aren't even aware that exist, right?

15   And it might not necessarily be an inflight, but there

16   is -- you know, there is a lot happening.  So, I mean,

17   it's -- since you want to stay with Frontier, and I know

18   it's the flight attendant job, but I don't think it's

19   going to get easier with the schedule.

20              Do you see that language?

21              A.    Yes.

22              Q.    And did she, in fact, suggest that you go

23   into UltiPro at least weekly?

24              A.    Yes.

25              Q.    If not every Monday and every Friday?

Page 177

1                A.    Yes.

2                Q.    And did you do that?

3                A.    Occasionally, I would go on there, but

4       most of -- it either did not interest me or I didn't

5       qualify, frankly.

6                Q.    Okay.  And at this point, was it your

7       understanding that you would not be able to keep your

8       seniority after 90 days?  Was that your understanding at

9       this time?

10               A.    Yes.

11               Q.    And did you continue to look after that?

12               A.    Occasionally.

13               Q.    Okay.  Why'd you --

14               A.    But it was something that -- it was

15      something that was not -- at the time -- I mean, I know

16      better now, because I've seen it.

17                    But at the time, when I thought I was

18      going to lose my seniority after 30 days, it sort of

19      wasn't exactly in my realm of possibilities.  I mean, I

20      still looked.  You never know, there could be some

21      awesome job listed that was like, Oh, hey, I could do

22      this.  But it was not looking with the intent to actually

23      transfer, because I was a flight attendant.  That's what

24      I was good at.  That's what I loved doing.  That's all I

25      wanted to do.  And had Frontier, honestly, reasonably

Page 178

1   accommodated me, it would have been easy to keep that

2   job.

3              Q.   I'm struggling with this, because you said

4   you would not entertain a transfer because of the 90-day

5   seniority thing, but then you're looking, but then you're

6   testifying that you're looking, but not to actually

7   transfer.

8                   Do I have that right?

9              A.   You do.  I still looked in there.  You

10  never know.  There may have been an at-home --

11  work-from-home position doing something that I qualified

12  for, in which case, something like that, I would have

13  considered.  However, I did not want to lose my

14  seniority.

15             Q.   Hold on one second here.  I'm just

16  searching for something really quick.  All right.  Bear

17  with me one moment.

18                  I want to show -- go back to an exhibit I

19  just showed you --

20             A.   Okay.

21             Q.   -- a moment ago.  This is Brigham

22  Exhibit 32.  And this, just to remind you, is the

23  transcript of the meeting you had with Cassie Micklich on

24  June 4th, 2015.

25                  Do you see that?

Page 179

1                A.    Yes.

2                Q.    And to try to refresh your recollection, in

3       that conversation, it looks like you and Mr. Arellano are

4       having a discussion here on page 32 of the PDF.  And

5       you're talking about medical leave.

6                      Do you see that?

7                A.    Mm-hmm.

8                Q.    And you say, As per our contract, it counts

9       as a point.

10                     Do you see that?

11               A.    Yes.

12               Q.    Is the contract you were referring to the

13      CBA?

14               A.    Yes.

15               Q.    Okay.  So you did review the CBA in terms

16      of --

17               A.    No.  It was all what I had been told.  To

18      be honest with you, Danielle, I don't know if I ever even

19      looked at the contract.  It was stuff that I had been

20      told by other people that I trust.  And it was something

21      that we dealt with previously, where I was told that if I

22      reach termination points, then that medical point will be

23      taken off.  But, obviously, it still counts as a point.

24               Q.    I'll show you another document.  This is

25      Exhibit 15.  Exhibit 15 is an email from yourself to LOA

Page 180

1          Frontier employees, dated Monday October 6 -- 26, 2015.

2                        Do you see that?

3                A.    Yes.

4                Q.    Is this a true and correct copy of an email

5          that you sent to the Leave of Absence Department?

6                A.    Yes.

7                Q.    It says, I woke up this morning in a panic.

8          I forgot to send you an email on Friday.  I had to use my

9          intermittent FMLA on 10-23 for a four-day, but I kept the

10         PDX turn on the end.

11                       Do you see that?

12               A.    Yes.

13               Q.    And I think we talked about this earlier,

14         but is it true that you did not follow the required

15         call-out procedures for that 10-23 trip?

16               A.    Correct.

17               Q.    Okay.

18               A.    And I already explained that there was a

19         turn that was taken off, that I had to call

20         Stefanie Coppedge and do all that stuff, to figure out

21         why they were not allowing me to do what I had been

22         doing, if something had changed, which I'll take that

23         point.  That's fine.  That is my fault.

24                       I'm arguing about all the points before

25         that were coded as sick, when, if Frontier would have

Page 182

1      you here.  Okay.  This is Brigham Exhibit 44.

2                   Do you recognize this document?

3              A.   Yes.

4              Q.   Okay.  And what is it?

5              A.   It is the final meeting.

6              Q.   Okay.

7              A.   On -- the investigatory meeting.

8              Q.   Okay.  And what was the purpose of this

9      meeting?

10             A.   It's what -- hold on.  I have -- it's what

11     we call the final termination hearing.  It's basically,

12     they're going to fire you, but this is your one chance to

13     try and argue that they shouldn't, basically.

14             Q.   Okay.  I'm going to show you pages 2 and 3

15     of the PDF.  And this is just going over again.  I think

16     you just said it.  You say here on PDF page 2, And that is

17     honestly -- like I take that.  It is my fault for not

18     sending the email right away.

19                   So is that -- what you're saying right

20     there what you just testified to, which is basically that,

21     yes, that point was fairly assessed to you?

22             A.   Yes.

23             Q.   Okay.  I think that's all I wanted to ask

24     you about.  Okay.  On the same transcript -- so Brigham

25     Exhibit 34 is a transcription that we had made for the

Page 183

1    same meeting, November 3rd, 2015.

2              Do you see that date here?

3         A.   Yes.

4         Q.   And this is, again, our court reporter,

5    Hunter + Geist.  And I'm just going to ask you, again,

6    about the CBA and the contract.

7         A.   Okay.

8         Q.   You're speaking with someone in this

9    meeting -- let me scroll up just a bit.  Someone named

10   Female 2.  And then you say, And then all of a sudden, I

11   was on hold for about five minutes, and then she came

12   back, and she's like, Let me call you back.  So she called

13   me back and said, One of the days on either end has to be

14   all intermittent FMLA, which has never happened to me

15   before.

16             Do you see that?

17        A.   Yes.

18        Q.   And is this reference, again, to that

19   October 23rd trip and what happened?

20        A.   Yes.

21        Q.   Okay.  Female 2 says, Right.  And you

22   continue on, So I was kind of flustered with that, but

23   anyways, I told her, Okay.  Well, then the Portland turn

24   is worth more, I'll keep the Portland turn.  So after that

25   happened, I went to try to figure -- and figure out --

Page 217

1      entire schedule after bidding and build it up from --

2                A.   Not drop my entire schedule.  Don't award

3      me anything.

4                Q.   All right.  Let me put it a different way.

5                     You wanted to not even have to bid and get

6      to start off with scratch with no schedule?

7                A.   Correct.

8                Q.   Where everybody else had the whole 45,

9      correct?

10               A.   Correct.

11               Q.   But you get to be treated better than

12     everyone else, right?

13               A.    I was asking for a reasonable

14     accomodation, and that is my right under the ADA.

15                    MR. CRONE:  And -- and -- and I want to

16     put an objection on the record that the question's

17     mischaracterizing the witness' prior testimony.

18               Q.   (By Ms. Kitson)  And, Ms. Brigham, you also

19     wanted to, after you bid a full schedule, have your

20     overnight trips just magically taken off, correct?

21               A.   Correct.

22               Q.   Even though no one else got to do that,

23     correct?

24               A.    I don't know what they did for other

25     people, Danielle.  They did it for me a few times,

Page 224

1    familiar with the terms of the Collective Bargaining

2    Agreement as well?

3                     MS. KITSON:  Object to form.

4              A.    Yes.

5              Q.    (By Mr. Crone)  Okay.  Ms. Kitson put in

6    front of you a position description for a flight

7    attendant.

8                     Do you remember that?

9              A.    Yes.

10             Q.    And it listed a bunch of essential job

11   functions.

12                    Do you recall those?

13             A.    Yes.

14             Q.    And when -- when you -- when you -- after

15   you self-disclosed your disability of alcoholism, were you

16   able to complete those essential job functions?

17             A.    With my reasonable accommodation being

18   granted, yes.

19             Q.    Okay.  And what about without it?

20             A.    Without it, no, because if I had to do

21   overnights, I wouldn't have my sobriety.  Therefore, I

22   would be terminated by Frontier.

23             Q.    Okay.  And do you recall -- or actually,

24   let me start over.  Let me formulate the question a

25   different way.

Page 235

1                    REPORTER'S CERTIFICATE

2

3

4            I, Laurel S. Tubbs, a Registered

5    Professional Reporter, Certified Realtime Reporter, and

6    Notary Public within the State of Colorado, do hereby

7    certify that previous to the commencement of the

8    examination, the deponent was duly sworn by me to testify

9    to the truth.

10           I further certify that this deposition was

11   taken in shorthand by me remotely and thereafter reduced

12   to a typewritten form; that the foregoing constitutes a

13   true and correct transcript.

14           I further certify that I am not related

15   to, employed by, nor of counsel for any of the parties or

16   attorneys herein, nor otherwise interested in the result

17   of the within action.

18           My commission expires September 1, 2023.

19

20           _Laurel S. Tubbs_

     LAUREL S. TUBBS

21   Registered Professional Reporter

     Certified Realtime Reporter

22   and Notary Public

23

24

25



```
                                                       Page 1

 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO
 2

    Civil Action No. 19-cv-03417-STV
 3   _____

 4

    REBECCA BRIGHAM,
 5

            Plaintiff,
 6

    vs.
 7

    FRONTIER AIRLINES, INC.,
 8

            Defendant.
 9   _____

10      VIDEO VIDEOCONFERENCED DEPOSITION OF ADRIENNE PRINCE
                        August 21, 2020
11   _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Job No. CS4205084
```

EXHIBIT C

Page 20

1            Can you remember back to 2015 and tell us,

2    generally, how the bidding process worked under the

3    Collective Bargaining Agreement as a flight attendant?

4            A.   Yeah.  We would bid based on the program

5    FLiCA, and it was in seniority order.  So we would submit

6    our selections, and then it was awarded based on

7    seniority.

8            Q.   Were you required to bid every month?

9            A.   Yes, if you wanted a schedule, correct.

10           Q.   What would happen if you missed a bid?

11           A.   You would be placed on -- well, depending

12   on your seniority, you would get either the trips that

13   were left or, potentially, you could be put back on

14   reserve.

15           Q.   Was anyone given the ability, to your

16   knowledge, to skip bidding and then just build their

17   schedule from scratch?

18           A.   The only time that people were able to

19   build their own schedules and not bid is if they were on

20   a leave and then they came back.  And -- but it

21   was -- they had to pick what was left on open time.

22           Q.   And when you say "leave," you mean a

23   continuous leave of absence, correct, like a medical leave

24   of absence or an FMLA-approved leave of absence?

25           A.   Correct.

Page 21

```
 1              Q.   And someone on intermittent FMLA still had

 2      to bid; is that correct?

 3              A.   Correct.

 4              Q.   Okay.  Let's take a look at that Collective

 5      Bargaining Agreement together.  And this will be Brigham

 6      Exhibit 1.

 7              MS. KITSON:  If the court reporter could

 8      mark that virtually.  I don't know how that works, but

 9      I'll ask the court reporter to mark either now or

10      subsequent to the deposition Brigham Exhibit 1, which she

11      will have in her possession.  I attempted to send it to

12      her, but we'll send it via FTP.

13              For the record, that is Bates number

14      FRONTIERAIRLINES(R.BRIGHAM)-0000815 through 0000958, for

15      the record.

16              And I will now share my screen with you,

17      Ms. Prince.  And you're going to see some yellow

18      highlighting on this document, and that actually is my

19      yellow highlighting, which will help point you to what

20      I'm looking at.

21              Q.   (By Ms. Kitson)  Are you -- can you now see

22      the document?

23              A.   I am.

24              Q.   And do you recognize this as the Collective

25      Bargaining that -- Agreement that was in place from 2011
```

Page 58

```
1      able to maintain enough hours to live on.  Ideas, just

2      remove me from the overnights, have be build by own

3      schedule out of open time and TradeBoard.

4               Do you see that?

5           A.   Correct.  Yes, I see that.

6           Q.   Is it your understanding that these were

7      the accommodations that Rebecca Brigham was requesting?

8           A.   Yes.

9           Q.   Okay.  And did you understand that

10     Ms. Brigham wanted to just have her overnight trips

11     removed?

12          A.   Yes.

13          Q.   And did you understand that Ms. Brigham

14     just wanted to build her own schedule from scratch out of

15     open time or the TradeBoard?

16          A.   Yes.

17          Q.   Okay.  And the union would not allow her to

18     build her schedule from scratch on open time, because that

19     would have violated the Collective Bargaining Agreement,

20     correct?

21          A.   Correct.

22          Q.   Okay.  So it was not the union's intention

23     to grant this accommodation, correct?

24          A.   Correct.

25          Q.   Okay.  And the idea of "just remove me from
```

Page 59

1      the overnights," that would have violated the seniority

2      bidding provisions of the Collective Bargaining Agreement

3      to just do that for her, correct?

4              A.    Correct.

5              Q.    So that's not an accommodation that the

6      union intended to grant to her, correct?

7              A.    Correct.

8              Q.    Okay.  I'll stop sharing that.

9              Since you originally spoke with Mr. Crone

10     and provided this statement, have you spoken with him or

11     anyone else from his firm?

12             A.    No.

13             Q.    Okay.  So you had -- I think you said you

14     had two conversations with him.  Or was it only one?

15             A.    I believe it was two, maybe three.  It was

16     the initial, Hi, this is who I am; and then me responding

17     to him giving him this statement; and then him responding

18     back thanking me for get -- helping.

19             Q.    Was Ms. Brigham on either of those calls?

20             A.    Not to my knowledge.

21             Q.    Okay.  And why did you provide the

22     statement?

23             A.    Because, as a union rep, I advocate -- I

24     was advocating for a flight attendant, and so I was

25     continuing that.

Page 60

1          Q.    So you felt you were in an advocacy role,

2    correct?

3          A.    Yeah.

4          Q.    But you still would not have approved a --

5    an exception to the Collective Bargaining Agreement for

6    her, correct?

7          A.    Correct.

8          Q.    I'm going to show you what's been marked as

9    Brigham Exhibit 44.

10         A.    Okay.

11         Q.    Are you seeing a document with number 3 in

12   the upper left-hand corner?

13         A.    Yes.

14         Q.    Okay.  This is Brigham Exhibit 44, which is

15   Bates stamp BRIGHAM LM 39 through BRIGHAM LM 46.

16         A.    Okay.

17              MS. KITSON:  And, Counsel, do you have

18   this document available to you?

19              MR. CRONE:  I do.

20              MR. SOUK:  Yes, I do.

21         Q.    (By Ms. Kitson)  Okay.  And, Ms. Prince,

22   I'll represent to you that this is a transcription that I

23   believe Ms. Brigham made of an audio-recording that she

24   took of a meeting that you participated in.

25              Were you aware that Ms. Brigham had

Page 61

1        audio-recorded a meeting with you?

2                A.   No, I was not aware.

3                Q.   Okay.  Go ahead and read through the

4        document, and let me know when you're finished.

5                A.   Okay.  Hold on just a second.

6                Q.   Oh, my gosh.  I keep forgetting that you're

7        looking at this.  I'm so sorry.

8                A.   No, that's okay.

9                Q.   Okay.

10               A.   No, that's okay.

11               Q.   You tell me when to scroll.  You tell me

12       when to scroll.

13               A.   Okay.  Okay.  I -- you can scroll down.

14               Q.   Okay.

15               A.   Okay.  Okay.  Okay.  Okay.

16               Q.   And this red highlighting that you're

17       seeing on the page here, I believe, is Ms. Brigham's.

18               A.   Okay.  Okay.  Okay.  Okay.  Okay.  Okay.

19       Okay.

20               Q.   And this yellow highlighting is mine.  This

21       is what I'm going to be asking you about.

22               A.   Okay.  Okay.  Okay.  Okay.

23               Q.   This green is, again, Ms. Brigham's

24       highlighting.  Just FYI.

25               A.   Okay.  Okay.  Okay.

Page 62

 1          Q.   And the yellow highlighting, this one is

 2     mine again.

 3          A.   Okay.  Okay.

 4          Q.   And I think that's the end.  So I'm going

 5     back to the beginning of the document.

 6          A.   Okay.

 7          Q.   And I'm going back to -- hold on one second

 8     here.  I'm looking at Stefanie's statement.

 9               Do you see that?

10          A.   Yeah.

11          Q.   And is that Stefanie Coppedge?

12          A.   I would assume so, but I'm not 100 --

13          Q.   And Stefanie --

14          A.   She's the only Stefanie I know that would

15     have been in those meetings, to my knowledge, so I

16     believe that was her, yes.

17          Q.   Okay.  And Stefanie Coppedge was

18     Ms. Brigham's direct supervisor; is that correct?

19          A.   I believe so.

20          Q.   Who is Andrea?

21          A.   If I recall, she was -- I can't

22     remember -- I don't know her exact position, but I

23     believe she had a position in HR.  She worked alongside

24     with Jerry Arellano.

25          Q.   Okay.  And going back up to the top, having

Page 63

```
 1       read through this, does this refresh your recollection of
 2       a meeting that you had with Ms. Brigham and the others
 3       listed here on November 3rd, 2015?
 4               A.    Slightly, yes.
 5               Q.    Okay.  But you don't know whether these are
 6       the exact words that were said; is that right?
 7               A.    No, I don't know.
 8               Q.    Is there anything about this that struck
 9       you as inconsistent or incorrect based on the meeting that
10       you had on November 3rd?
11               A.    It -- I -- I -- I don't -- I mean, I
12       100 percent don't recall that meeting.  We had several
13       meetings.  So whether or not that was specific to that
14       one, I couldn't be 100 percent certain.
15               Q.    Was -- it says, Final
16       Meeting With the Company, Investigatory.
17                     Do you see that?
18               A.    Yes.
19               Q.    Do you remember having a final meeting with
20       the company in the grievance process for Ms. Brigham?
21               A.    Yes.
22               Q.    And what is that, Final Meeting?  What's
23       that a reference to?
24               A.    It's essentially the last step in the
25       grievance process, kind of a last-ditch effort to see if
```

Page 64

1      there's anything we can do to help the flight attendant.

2              Q.   Okay.  The first person speaking here, it

3      says, Adrian, Union VP.

4              It looks like that's a misspelling of your

5      name, but is that you?

6              A.   I would believe so.  Probably, yes.

7              Q.   And then "Rebecca" is a reference to

8      Ms. Brigham; is that right?

9              A.   I would assume, yes.

10             Q.   Okay.  Just scrolling through here.

11             So we're back at Stefanie Coppedge's

12     statement.  She says, So, of course, this is the

13     fact-finding meeting, uh, because, Rebecca, you have hit,

14     uh -- so I have provided you with your absentee record.

15     That's the first little pile.  I have a letter -- an email

16     from Shelly Liner for the sick call that was, uh, 10/23.

17     Uh, she sent out an email that you probably just got a

18     photocopy of it too that your request was denied for lack

19     of timely notice to the FMLA department.

20             Do you see that?

21             A.   Yes.

22             Q.   Is it your recollection that Ms. Brigham

23     had a sick call on October 23rd, 2015, that put her over

24     the permissible points on the dependability policy such

25     that her employment was to be terminated under policy?

Page 65

1           A.    It looks that way, yes.

2           Q.    And was it true at the time at Frontier

3     that the attendance policy had a termination level of date

4     points?

5           A.    Yes.

6           Q.    Can you explain what that means?

7           A.    For every instance that you called out,

8     whether it be being sick or being late, you acquired

9     points.  And each instance had -- like a sick instance

10    had a different point value than being tardy.

11               And then you -- you would accumulate eight

12    points.  And so in each step before that -- and I don't

13    remember the exact points, but, like, if you had four

14    points, it was a written warning; if you had 6, it was

15    another step of discipline; and then at the eighth, it

16    was termination.

17          Q.    And it was your understanding that

18    Ms. Brigham had reached that termination level, correct?

19          A.    It looks that way, yes.

20          Q.    And that was the reason you were having

21    this meeting, correct?

22          A.    Correct.

23          Q.    Okay.  And Ms. Coppedge says that her

24    request to be excused from that sick call was denied

25    because of lack of timely notice to the FMLA department.

Page 66

1              Do you see that?

2        A.   Yes.

3        Q.   Okay.  Scrolling down to the next page, we

4   have Ms. Brigham say -- saying, Which I take that.  It is

5   my fault.  I did not send it in a timely manner.  I did

6   email her Monday morning before I did the Portland turn,

7   and just said, Oh, my gosh, I woke up in a panic.  I

8   completely forget.  Here is the days, and I understand

9   that.  Uh, and I will gladly take that point and a half.

10             Do you see that?

11       A.   Yes.

12       Q.   Was it your understanding that Ms. Brigham

13   agreed that those final points from the October 23rd trip

14   were correctly classified under the dependability policy?

15       A.   It appears that way, yes.

16       Q.   And was that your understanding at the

17   time?

18       A.   Yes.

19       Q.   And was the union taking any issue with the

20   coding of those points for the October 23rd trip?

21       A.   I don't recall specific to that particular

22   date and those particular points.

23       Q.   If Ms. Brigham is saying, though, that she

24   doesn't contest it, would the union agree with that?

25       A.   I would assume that we would have agreed

Page 140

```
 1                    REPORTER'S CERTIFICATE

 2

 3

 4            I, Laurel S. Tubbs, a Registered

 5    Professional Reporter, Certified Realtime Reporter, and

 6    Notary Public within the State of Colorado, do hereby

 7    certify that previous to the commencement of the

 8    examination, the deponent was duly sworn by me to testify

 9    to the truth.

10            I further certify that this deposition was

11    taken in shorthand by me remotely and thereafter reduced

12    to a typewritten form; that the foregoing constitutes a

13    true and correct transcript.

14            I further certify that I am not related

15    to, employed by, nor of counsel for any of the parties or

16    attorneys herein, nor otherwise interested in the result

17    of the within action.

18            My commission expires September 1, 2023.

19

20

      LAUREL S. TUBBS

21    Registered Professional Reporter

      Certified Realtime Reporter

22    and Notary Public

23

24

25
```

Veritext Legal Solutions

800-567-8658                                                              973-410-4098

1161

Gmail - Follow up

Page 1 of 2



Rebecca Brigham <rebeccabrigham4@gmail.com>

## Follow up
2 messages

**Micklich, Cassandra A.** <cassandra.micklich@flyfrontier.com>
To: "rebeccabrigham4@gmail.com" <rebeccabrigham4@gmail.com>

Thu, Jun 4, 2015 at 3:15 PM

Rebecca,

Thank you for coming in and meeting with us today.  I did get some answers to your questions.

1.   OJI working at the GO if that was an option for you

    A.   That is not an option the GO is only to accommodate OJI

2.   Transferring internally with the company

    A.   Please refer to page 81 of 123 (It talks about the process and seniority)

The  intermittent leave of absence questions Jerry is reaching out to the manager for.  You should be receiving an email within the next couple of days with that information.

If you come across any other questions please let us know

Thanks.


Description:
Description:

## Cassandra Micklich

Drug & Alcohol Coordinator

P: 720-374-4503

F: 720-374-9245

C: 720-936-3704

cassandra.micklich@flyfrontier.com

FlyFrontier.com

BrighamR_PlaintiffRecords0683
https://mail.google.com/mail/u/0/?ui=2&ik=2177cf1f3d&view=pt&search=sent&th=14dc...   11/15/2015

BrighamR_PlaintiffRecords0683-1

**EXHIBIT**

**14**

EXHIBIT D

# #3

### FINAL MEETING WITH THE COMPANY-INVESTIGATORY
MEETING
NOVEMBER 3RD, 2015
TRT 19:33

ADRIAN (UNION VP): ...this morning, which I was really surprised. A huge -- a huge butterfly. First of all, A it's November and I haven't seen a butterfly in I don't know how long.

REBECCA(COMPLANTANT): So Jerry will not be here?

STEFANIE(INFLIGHT MANAGER): No.  Just myself.  Do you want him to be here?

REBECCA: No.

STEFANIE: Ok. Because I did just see him and said Andrea just told me that you're meeting with Rebecca and said yes.  And he was like ok I didn't know.  I said well Andrea has taken over so -- I didn't know you needed to know.

REBECCA: Right.

STEFANIE: Did not know you needed to know.

ADRIAN: I don't think any of us probably want to be here right now.

REBECCA: Right.

STEFANIE: Right. Off the record Rebecca and I are friends.  Kind of shitty and unfortunate...

REBECCA: It is unfortunate.

REBECCA: Well I think with what I have done up I think I am going to be able to walk out of here hopefully with what I -- and arrangements.

STEFANIE: Perfect. And I even talked to her about that. I said you know she is kind of the pioneer here.  We don't have a program.  And there needs to be a program. Something that is stipulated that says this person cannot fly for a year and self disclosed it's for per their counselor and as being in compliance with DOT and everything I said we need the program. None of this is her fault.

ADRIAN: And it's actually in the handbook. I mean its company policy. They also have to comply with the - the return to work stuff.

1

BRIGHAM LM 0000039

EXHIBIT
44

REBECCA: Right, I have -- yes, I've got a good presentation, which will hopefully change the outcome of this.

REBECCA: Oh and then -- before we leave I need to find out if LOA got my new intermittent FMLA paperwork for more days.  We can deal with that after.

ADRIAN: I'm sure we have that information.

ADRIAN: She's HIPPA certified right Andrea is?

REBECCA: I think so.

STEFANIE: Yes she should have that then.  If she is HIPPA certified she should have it. If not she can find out easily.

REBECCA: Yes because I am at 10 instead of 8 1/2 is this last weekend trip uh hasn't been recoded because I was only approved for 12 FMLA days and last month unfortunately I had to use like 18.  So we had to submit new intermittent FMLA paperwork for more days.

REBECCA: Right.

STEFANIE: We have this temp girl working and she doesn't know anything because she is not - she is a temp. She doesn't know airlines codes.

STEPHANIE: Kari is in Chicago.  Jenny is in a tizzy at DIA.

REBECCA: Thank you.

ANDREA: My phone is going to keep buzzing and buzzing.

PULLING OUT PAPERWORK

STEFANIE: So of course this is the fact finding meeting uh -- because Rebecca you have hit uh (?) so I have provided you with your absentee record that's the first little pile.  Uh - - I have a letter uh -- an email from Shelly Liner for the sick call that was uh 10/23 uh -- she sent out an email that you probably just got a photocopy of it too that your request was denied for lack of timely notice to the FMLA department --

REBECCA: And that is honestly like I take that it is my fault for not sending the email right away, but what had happened was I called in my for my trip like I normally do. There was a turn on the beginning -- a Madison turn on the beginning.  3 overnights and then a Portland turn at the end.  Uh so what I was originally going to do is I was going to go ahead and do the Madison turn.  Come off the overnights and do the Portland turn at the end.  And then all of the sudden I was on hold for about 5 minutes and then she came back and she was like let me call you back.  So she called me back and said one of the

2

**1164**

days on either end has to be -- all intermittent FMLA. [00:05:00.07] Which has never happened to me before. So I was kind of flustered with that, but anyways I told ok well then the Portland turn is worth more - I will keep the Portland turn. So after that happened I went to try and figure out, find the contract and figure out if that is in fact legal. So my normal routine is do an email right away. Just as soon as I hang up the phone I do my email. So it was because of that situation that I was unable - that I forgot to me --

STEFANIE: To send that email.

REBECCA: Which I take that. It is my fault. I did not send it in a timely manner. I did email her Monday morning before I did the Portland turn. And just said oh my gosh I woke up in a panic - I completely forgot. Here is the days and I understand that. Uh -- and I will gladly take that point and a half, but what I would like to discuss is how my other absences are being coded as sick. Or even intermittent FMLA. [00:05:54.28] Uh as a part of your own self disclosure policy it says Frontier Airlines requires compliance with any additional treatment after care or support, group services as well as required testing. Documentation of compliance may be requested at any time. Non-compliance with any required program component may result in termination of employment. Part of my recovery, I am not to do layovers. My sponsor, my therapist - say don't do layovers. It could seriously jeopardize your recovery. So I don't do it. That is what my intermittent FMLA is approved for. However - so this right here tells me that that's a part of my recovery and a part of my program. Therefore I don't even know why I have to use intermittent FMLA for it. [00:06:44.05] Uh -- basically I am damned if I do. I damned if I don't. So by calling in for these overnights is resulting in sick calls when I run out of my intermittent FMLA. Go for it. When I run out of my intermittent FMLA. Uh -- so -- there is all my other 6 are from that except for there was one that was a late sick call, which is my fault as well. It was a late IFM or a late sick call. I don't remember how they coded it. Those are the only two points that I -- fully agree that I should have. All the other ones are technically under your own self-disclosure policy. I can't do layovers as a part of my recovery. So you guys had decided to use intermittent FMLA. Fine that has worked up until now. Until I run out of intermittent FMLA and then I get sick calls. Which I don't believe should be even coded as sick because it is part of my recovery. I don't think I should have points on there and I also don't think that I should have to use my intermittent FMLA for it. [00:07:52.26] Uh another thing I want to bring up is the ADA - Americans with Disabilities Act. And that states that I am entitled to reasonable accommodations when it comes to a disability. Alcohol has long been considered a disability. Alcoholism has. So -- uh -- I have had multiple requests in to be able to -- a, build my own schedule. Leave me with a blank schedule and I will build my own schedule with what I know I can around my meetings and not pick up overnights. So pick up turns. People are giving away their turns left and right on the end. I am not asking to do DC Monday through Friday. I just want to be able to pick up what other people are getting rid of. Start with --

STEFHANIE: Ok and say you are not able to pick it up because you have a 4 day that you have to trade out or pick up.

3

BRIGHAM LM 0000041

REBECCA: Right.

STEFANIE: So that's causing --

BECKY: So that's causing the issue there.

ADRIAN: And she's not allowed to - and this is just recent where they are not allowed to split turns on either end because before I mean from before October 1st we have been able to split on either end. And now all of the sudden they say it has to be entire duty period.

REBECCA: Which is new.

STEFANIE: For IFM?

ANDREA: I just saw an email on that yesterday. And I started asking questions because you don't know I am new to all this and I am trying to learn first of all the lingo. That is a whole other language and what the rules are and that got brought up so you know I am kind of --

ADRIAN: Because contractually uh we're - line holders are allowed to split trips uh but now they are saying that it has to be a full duty period. Well we would never be able to - you know and if you're only approved for one or two FMLA days and you have a 4 day trip - that kind of puts you not allowed to use your FMLA. So that's a problem. And we're just another resources too. So -- but that's an issue and that's been new since October 1st.

ANDREA: That needs to be on our (?). Uh trust me that's on the back of - I mean I started...yesterday - so give us a little time. There is unfortunately a lot of hands in the pot on this one. So we need to get everybody in the same room and figure out what we are going to do because there is too many people telling employees something or you something or --

STEFANIE: And I myself was unaware of that until it happened this weekend with another gal that called the emergency line and I was like of course you can and she was like no I can't.

ADRIAN: And that's just been brand brand new.

ANDREA: We will get that part straightened out as well. I apologize there is confusion around that, but there is confusion all the way around. So -- we will look at that. And you brought up the disability - did you have any point uh do a formal request for a reasonable accommodation based on ADA or was it just something verbally you brought to --

REBECCA: It was a verbal and actually under the ADA it only has to be verbal.

4

**1166**

BRIGHAM LM 0000042

ANDREA: I know I am just asking.

REBECCA: Ok. Yes.

ANDREA: Who did you - and did you have any --

REBECCA: I have stated it multiple times uh --

ANDREA: To?

REBECCA: Let's see, I think the first time was -- with Jeff and JJ. I had talked to them about it. Uh and then -- I had also emailed Laura Rush uh --

ANDREA: I am sorry who was it?  Let's see Laura and who else?

REBECCA: Laura Rush uh and then my first meeting sort of just to kind of talk about my intermittent FMLA days and how we were going to go about this - I had mentioned it was a meeting with Jerry and Cassandra. I had mentioned why can't I do this and Cassie was going to go ahead and look it up and tell me if I could do them. I had received an email from her shortly after the meeting saying that they couldn't do that.  Now my second meeting that Jerry was in I had requested it again uh reasonable accommodations whether it be you know build my own schedule or just remove my overnights because when it comes to dependability I am very dependable.  Because of the fact that you guys know I can't do layovers.  So therefore you can look at my schedule and know what I will not be flying.  [00:11:53.12] And I don't understand I guess why is that big of a deal to just remove those overnights.  A reserve is going to have to do them regardless.  So if they're just removed and thrown into open time why not let somebody be able to pick those up if they would like them.  Then you don't have to call out a reserve whether it's in morning or in the evening -- whatever you don't have to use the last minute reserve.  I have brought that up to the table. I have suggested pretty much everything that I could possible think of.

ANDREA: Did they say why they were telling you no?

REBECCA: Basically what Jerry had told me is that it's not fair to other employees that they make this accommodation to me and not everybody else.  However, it is in the ADA that it's a case by case basis.  They have to look at the individual with the disability and it is a case by case basis that they have to uh make accommodations.

ADRIAN: And if she were picking up that open time or the trade it wouldn't be --

ADRIAN: It would not --

ADRIAN: Because it wouldn't be like pre-awarded if that was something that came up. Uh as far as the union stance - you know if she could bid what she could hold and then

5

1167

BRIGHAM LM 0000043

you know was either removed or able to pick up some open time - it wouldn't violate seniority. Because that's all first come first serve anyway. So --

REBECCA: So yes I just -- I'm at a loss on -- where to go from here because something does have to change. I can't go on living with no hours, no money because I can't do these trips. I am a good flight attendant. My alcoholism has never once affected my job. And the fact that I never drink at work. It was at home and I self disclosed so that I could go get help. I was never in jeopardy of losing my job. I went and got help on my own and to have to come back and deal with all of this stuff that I have had to deal with -- its not - it's not good. Uh -- I am very blessed. I am very lucky that I did get the treatment that I received. Uh -- if I didn't I am pretty sure I would have relapsed over some of this stuff. I am very blessed I have a great support system but its because of that support system and because of the rules that are -- well not really rules, they are suggestions -- you take suggestions in AA like they will save your life and as soon as my therapist and my sponsor told me don't do layovers - it is not a good idea.

ANDREA: Is that going to be a permanent situation or is that temporary?

REBECCA: For now.

ANDREA: So permanent?

REBECCA: For now. It could be down the road after I finish my steps and -- I could talk to my sponsor about it and say hey I am thinking about adding layovers back in but that is something that will come way down the road after I complete my 12 steps.

[00:14:57.12]
STEFANIE: And is - when it comes to 12 steps I don't know - I am very naive to it. Uh is there a timeline given in a 12 step or is it just -- you get to step on your own step.

REBECCA: Yes. And some people are on one step for a year.

STEFANIE: Ok.

REBECCA: You know and it's an individual basis. Like one -- the 8th step make amends - that is a long list uh -- and its not easy uh I know my sponsor it took her two years to do her amends. Uh however I do know other uh people in AA who have completed the steps in 6 months. You know it's so totally on an individual basis and it also depends on who your sponsor is. Uh -- your sponsor is there to take you through the steps the way that they way that they were taken through the steps. Now there are sponsors out there that are like do these steps, lets get them done, lets get them done now and there are others who are kind of like we need to spend time on these steps because its these steps that ultimately are going to keep you sober. [00:16:02.09] They get rid of all of your baggage in the past. They allow you to forgive not only yourself -- other people and for other people to be able to forgive you. It's a process and my sponsor is more let's do these thorough. Let's do them right. I don't want to hurry you through them, which I am

6

1168

thankful for. You know because I mean this will save my life if I ever go back to drinking I will die. I don't know if I would ever end up back in rehab. [00:16:32.06] Which is why when they tell me don't do layovers -- I won't do layovers. They say its -- its suggested as a program of recovery - just like it is suggested that when you're skydiving you pull that cord - it will save your life.

ANDREA: Because I am not a flight attendant - explain how if you can how the layover uh -- and if you don't want to say --

REBECCA: No I am fine. I can explain anything.

ANDREA: What do layovers have to do with the --

REBECCA: Well that's sort of like two parts. One I am away from my AA -- my support system uh two, that is what you do on a layover. I mean at least what I did on my layovers - the second you get to that hotel you go up to your room you change, you get down to the bar. And at the end it got to the point where I would just bring my own because I couldn't afford it. You know so I would have a couple of cocktails in the room and then go down for like one beer. But it was just what I did on a layover. There was not one single layover that I did not not drink. It was just what you did. And now I had never gone past my 8 hours. I had never stepped on an airplane drunk luckily but that could have been my next step. You know I just don't know what would have happened if I wouldn't have gotten help when I did. Uh so -- yes -- I just --

ANDREA: Well you know what? Kudos to you for taking that step.

REBECCA: Thank you very much.

ANDREA: I respect that.

REBECCA: Thank you.

ANDREA: I really do. That first step is probably the toughest one to do it.

REBECCA: The best hardest decision of my life.

ANDREA: Well I respect you for that.

REBECCA: Thank you very much.

ANDREA: And I am glad things seem like they are coming together for you.

REBECCA: Yes, I am very lucky that I didn't lose more. You know my rock bottom was a lot different than a lot of people's rock bottom. I didn't have to lose everything before I realized. So, I am very blessed. Thank you.

7

1169

BRIGHAM LM 0000045

ANDREA: Yay!

REBECCA: Now, if we can just figure out --

ANDREA: And that's why we do this just so you know we can all get together and discuss you know every - the background and what not and you know if you have questions for us or if we have questions for you that's why we do this.

ADRIAN: And I do know just so that you're familiar - a lot of times when people come back mid month or they're not released to be able to bid they are given blank schedules and they have to - and I mean its something that in flight already does so it wouldn't be an undo hardship with the company because I know some part of this too is that her request cannot make it.

ANDREA: For the company?

ADRIAN: They already allow -- pick up in this light so its not like we are - its a really unusual request that's never been done before uh and the placement is responsible for giving that to the -- and if they don't then there is other disciplines --

ADRIAN: Consequences and ramifications for that.

ADRIAN: So I mean which is already too light out here. Its just this situation is different because she is already back at work - that would be the only --

8

1170

Untitled

I am requesting a reasonable accommodation. It is to not do overnight trips because
it will put my recovery at risk.  Also be able to manitain enough hours to live on.

IDEAS
just remove me from the overnights
have me build my own schedule out of opentime and tradeboard

Page 1

FRONTIER AIRLINES (R. BRIGHAM) - 0001766

ESI00000127-1

**EXHIBIT**

20

EXHIBIT F

**FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  19-cv-03417-WJM-STV
_____

REBECCA BRIGHAM,

Plaintiff,

v.

FRONTIER AIRLINES, INC.,
a Colorado corporation,

Defendant.
_____

VIDEOTAPED VIDEOCONFERENCE 30(B)(6) DEPOSITION OF
FRONTIER AIRLINES, INC.,
THROUGH THE TESTIMONY OF GERARDO ARELLANO
July 13, 2020
_____

        PURSUANT TO NOTICE and the Federal Rules

of Civil Procedure, the videotaped videoconference

30()b)(6) deposition of FRONTIER AIRLINES, through

the testimony of GERARDO ARELLANO, whose identity has

been verified by the court reporter, was taken on

behalf of the Plaintiff on July 13, 2020, commencing

at 9:01 a.m., before Jill S. Nielsen, Registered

Professional Reporter and Notary Public within the

state of Colorado.


(The reporter, Jill S. Nielsen, appearing remotely

via videoconference.)

FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020

1  active status as deemed by the HR department.

2         Active status is anybody not on a

3  continuous leave of absence.  And so in Rebecca's

4  case, she was considered to be active, and so -- and,

5  therefore, then that triggers rules and regulations

6  associated with bidding in the contract.

7         And so in that moment was she eligible to

8  bid for a regular site?  No, because she had a bid

9  for a line of flying.  And so how -- we have to carve

10  out that question to -- to then take a position.

11     Q.   Yeah, but was she -- but was she requesting

12  to bid differently?  I -- I -- I was asking about the

13  request to -- to work at the GO instead of her normal

14  duties, so to be reassigned.

15     A.   Yeah, but you were asking if it was a

16  violation of the contract.

17     Q.   Correct.

18     A.   And so in order for me to respond, at that

19  moment, she was considered an active employee.

20     Q.   Okay.

21     A.   So as an active employee, she had to then

22  follow the requirements of eligible to bid in order

23  to bid for a line.  So in that point, it made her not

24  eligible for a temporary ground assignment.  And so

25  it's not -- it's hard for me to answer yes or no to

### FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020

1  consideration the collective bargaining agreement; is

2  that fair?

3      A.   In -- in one moment -- in one factor, I

4  should say, but it's also looking at her status.

5  We have to look at her status to make that

6  determination.  And her status goes, then, back to

7  the contract.  If she's an active employee per the

8  collective bargaining agreement, she's required to

9  submit a bid.

10      Q.   Okay.

11      A.   And if she then doesn't submit a bid, then

12  other pieces then kick in.  And so it's kind of a --

13  that's how we need to determine -- it all goes back

14  to what was her status at the time?

15      Q.   Yeah.

16      A.   So if she was on intermittent FMLA leave,

17  she was not considered to be on a leave of absence;

18  therefore, making her an active individual, an active

19  bidder.

20      Q.   Okay.  Do you happen to know -- can you

21  recall what other provisions of the collective

22  bargaining agreement are then triggered by this

23  request?

24      A.   Yes.  The -- basically, it comes out to

25  eligible to bid.  If she's eligible to bid, then at

### FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020

```
 1        Q.    Okay.  Now, was Ms. Brigham, as part of her
 2   request for a modified schedule -- was she -- did she
 3   ask Frontier to be allowed to just bid on that open
 4   time so -- in order to -- in order to deal with
 5   Frontier's anxiety that -- that the modified schedule
 6   might violate the CBA?
 7        A.    It's a little bit different.  It's not that
 8   you bid for open time.  You can pick up trips in open
 9   time.  Open time is not seniority-based.  It's first
10   come first serve.
11        Q.    So -- so Ms. Brigham could have built her
12   schedule solely from open time?
13        A.    Open time is only allowed in certain
14   circumstances, and people who have access to that,
15   essentially, were not allowed to bid.
16             And so if you're returning from a leave of
17   absence and you didn't have an opportunity to submit
18   a bid, then you had the opportunity -- meaning
19   continuously, I should say -- then you would have
20   the ability -- to not penalize them, you would have
21   the opportunity to then pick up trips out of open
22   time.
23        Q.    Okay.  See, I'm -- so I guess that's my
24   question is that if Frontier granted Ms. Brigham
25   permission to build her schedule only from open time
```

**FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020**

1    rather than bid --

2         A.    Uh-huh.

3         Q.    -- then the seniority provision in the CBA

4    would not have been implicated at all?

5         A.    But you also have to look at her status,

6    and I think we talked about this earlier.  It's her

7    active status in the system.

8             So if an employee is on active status, then

9    the rules and regulations regarding bidding apply.

10   And so Ms. Brigham was an active flight attendant,

11   so, therefore, she had to follow the rules and

12   regulations outlined under the eligible-to-bid

13   section of the contract --

14        Q.    Do you know --

15        A.    -- therefore, did not --

16        Q.    I'm sorry.  Go ahead.

17        A.    Therefore, did not have access to pick up

18   or build her trips through open time.  That's only

19   for individuals who are considered on leave status in

20   the system.

21        Q.    Yeah.  Do you know if the union requested

22   that Ms. Brigham be allowed to build her schedule

23   from open time?

24        A.    Outside of that document you showed me

25   earlier, no, I was not aware of it.

**FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020**

|   |   |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | STATE OF COLORADO     ) |
|   |                      ) ss. |
| 3 | COUNTY OF DENVER      ) |
| 4 |         I, JILL S. NIELSEN, do hereby certify that I |
|   | am a Registered Professional Reporter and Notary |
| 5 | Public within the State of Colorado; that previous to |
|   | the commencement of the examination, the witness was |
| 6 | duly sworn by me to testify to the truth. |
| 7 |         I further certify this deposition was taken |
|   | remotely in shorthand by me at the time herein set |
| 8 | forth, and that it was thereafter reduced to |
|   | typewritten form, and that the foregoing constitutes |
| 9 | a true and correct transcript. |
| 10 |         I further certify that I am not related to, |
|   | employed by, nor of counsel for any of the parties or |
| 11 | attorneys herein, nor otherwise interested in the |
|   | result of the within action. |
| 12 |        |
|   |         IN WITNESS WHEREOF, I have hereunto affixed |
| 13 | my hand and seal this 22nd day of July, 2020. |
| 14 |         My commission expires July 7, 2023. |
| 15 | _____ |
| 16 | JILL S. NIELSEN, RPR |
|   | Notary Public in and for the |
| 17 | State of Colorado |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 19-cv-03417-WJM-STV

REBECCA BRIGHAM,

      Plaintiff,

v.

FRONTIER AIRLINES, INC.,
a Colorado corporation,

      Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT FRONTIER AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, by and through the undersigned, hereby submits *Plaintiff's Response to Defendant Frontier Airlines, Inc.'s Motion for Summary Judgment*. Because Defendant is not entitled to summary judgment on: (a) Plaintiff's claim for failure to engage in the interactive process as required under the ADA; (b) Plaintiff's claim of unlawful discrimination under the ADA; (c) Plaintiff's claim of unlawful failure to accommodate under the ADA; or (d) Plaintiff's claim for unlawful retaliation under the ADA, Ms. Brigham respectfully requests the Court deny Defendant's Motion in its entirety.

## I.    RESPONSE TO MOVANT'S STATEMENT OF MATERIAL FACTS

1.    Deny. Defendant's own cited evidence does not state that being scheduled for layovers or overnights is an essential function of the position of flight attendant. *See* Def.'s Ex. A

at ¶ 5; Def.'s Ex. B at 118:10-18. Moreover, Mr. Arellano, when testifying on behalf of Defendant Frontier Airlines, Inc., stated that a flight attendant's primary job duties were those of a "safety professional . . . to make sure the passenger experience is a positive one from every aspect of serving drinks and sharing – safety is obviously the most important." Ex. 2 to Pl.'s Motion for Partial Summary Judgment at 50:1-5. When asked about flight attendants' job duties from the perspective of scheduling such as: "When do they start? Where do they go? How does the day end?", Mr. Arellano responded: "[I]t's hard to answer that question because everybody had a different – a flight attendant had a different way to bid a schedule based on their preference . . . So every day would be different for each flight attendant based on the type of routes they bid for, the type of flying they bid for . . . It just depended on the individual. It's all completely different. It's hard to answer that question." Id. at 55:4-56:21.

Moreover, when questioned by Frontier's attorney as to whether or not the Position Description attached to Frontier's Motion properly listed all essential functions of a flight attendant, Plaintiff responded: "Yes." Ex. 3 to Pl.'s Motion at 118:10-119:14. Notably, the Position Description does not include layovers or overnights. Def.'s Ex. A at ¶5.

2.      Deny. While flight attendants would generally build their schedules through an automated bidding process based on seniority, this was not always the case. Ex. 10 to Pl.'s Motion (the "CBA") at 43 (outlining that in order to bid on a schedule, a flight attendant must be "eligible," which includes all flight attendants unless they were on "company approved leave" such as "LOA, MED, FMLA, OJI, etc."). Thus, for example, a flight attendant coming back from leave for a medical reason may not return to work early enough in any given month to start at the beginning of the bidding process. Id. at 43-44. In this case, the flight attendant would build their schedule

from "Open Time" (trips leftover and unassigned in the seniority-based bidding process and available on a first-come first-served basis). Id. As such, flight attendants were sometimes allowed to build their schedules from the unawarded trips that more senior flight attendants did not take, *i.e.*, they built their schedules outside of the seniority-based bidding process. Id. And if the flight attendant missed part of a trip, or even a complete trip, while out on intermittent leave such as "FMLA, MED, OJI, etc.," then the flight attendant could simply "pick up Open Time to replace the trip" so long as the missed trip was originally scheduled from Open Time. Id. at 105. Again, this schedule would be built without utilizing the seniority bidding process.

Also, flight attendants who called in sick due to illness, but subsequently recovered without being able to rejoin their original trip, were allowed to "pick up Open Time if available to replace his/her original trip." Id. at 94. This scheduling would be accomplished without utilizing the seniority bidding process.

Moreover, so long as a flight attendant was scheduled for a minimum of 60 hours at the end of the bidding process, while not dropping below 45 hours during the scheduling process, a flight attendant could swap out every single one of the flights they were initially awarded after bidding. Id. at 53-59; Ex. 6 to Pl.'s Mot., Deposition of Plaintiff's direct supervisor Stefanie Coppedge, at 57:5-7 ("Q. Got it. So as long as you maintain your [minimum] hours there, you could trade away all those trips for new trips? A. As long as you maintain [minimum] hours.").

Critically, there is no provision in the CBA that purports to restrict Frontier from complying with its obligation under the ADA to grant reasonable accommodations where required. Ex. 10 to Pl.'s Motion at 141 ("Except as restricted by the express terms of this Agreement, the Company will retain all rights to manage and operate is business and work force . . . .").

1180

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

7.      Deny. As explained above, flight attendants returning from intermittent leave such as "FMLA, MED, OJI, etc." could simply "pick up Open Time to replace the trip" so long as the missed trip was originally scheduled from Open Time. Ex. 10 to Pl.'s Motion at 105. This schedule would be built without utilizing the seniority bidding process.

8.      Deny. As described above, flight attendants did not always work a schedule "determined by the CBA's seniority-based bidding process." And while flight attendants were required to abide by an attendance policy, Ms. Brigham denies that this policy's requirements demonstrated "dependability" among flight attendants. Ex. 3 to Pl.'s Motion at 36:13-16 ("That's four times being sick in a year, when you're working with the public, who are sick. And I just – I will argue all day that Frontier's attendance policy was ridiculous. We even tried to strike over it.").

9.      Deny. The Dependability policy states that eight (8) occurrences, not "unexcused absences," within a rolling 12-month period will result in termination. Def.'s Ex. A (citing to FRONTIER AIRLINES (R. BRIGHAM) – 0000365-69). The Dependability Policy does not equate each single absence with an occurrence; for example, the Policy states: "Reporting late more than 2 hours for a scheduled duty shift or an entire day's absence for a cold is one occurrence . . . Three consecutive day's absence due to having the flu shall be one occurrence or event." Id.

10.     Deny. The Dependability Policy is not part of the CBA, and therefore, the CBA's

1181

13

provisions do not "reflect" Defendant's views on the "importance of reliable attendance." *See generally* Ex. 10 to Pl.'s Motion (the "CBA"). The two (2) hour notice provision in the CBA only applies to flight attendants that are calling in due to sickness or off-the-job injury. Id. This provision in the CBA has nothing to do with employees that may be absent for any other reasons, including those that have requested and are seeking reasonable accommodations. Id.

11.    Admit. Defendant offers a variety of leave as required under law, including FMLA leave, military leave and jury duty leave. Def.'s Ex. A at ¶ 14 (citing to FRONTIER AIRLINES (R. BRIGHAM) – 0000307-18).

12.    Admit.

13.    Admit. Frontier has generally correctly stated its policy for use of intermittent FMLA time; however, Defendant's policy also states: "After reporting their absence, employees should send an email . . . [t]his email must be received as soon as practicable, usually the same day of the absence or the next day." Ex. 2 to Def.'s Ex. A at FRONTIER AIRLINES (R. BRIGHAM) – 0000313. Moreover, when an employee is applying for FMLA leave due to substance abuse, then "the application will be considered self-disclosure and the employee made eligible for additional assistance – as outlined in Frontier's Drug and Alcohol-Free Policies and Regulations (Employee Assistance Following Self Disclosure) . . . [t]he employee's return to work will be governed by the policies and processes detailed in that section." Id. at 0000308. After an employee self-discloses an alcohol addiction, the employee may only return to work after completion of an "approved rehabilitation program," testing negative for alcohol use, and being in "full compliance with any additional treatment or aftercare recommended by a Substance Abuse Provider." Id. at 0000355. Non-compliance "with any portion of recommended treatment, aftercare or testing may

result in disciplinary action up to and including suspension or termination." Id.

14.    Admit.

15.    Admit.

16.    Admit.

17.    Deny. Defendant's citation to various "written warnings" about "attendance issues" does not establish a "pattern of attendance issues." Rather, this citation shows: (1) Ms. Brigham was sick once in 2007 and absent twice; (2) in 2008, Ms. Brigham received an "advisement only" as she was sick four times between 2007 and 2008 (Defendant tracked these sick "occurrences" on a rolling 12-month basis); (3) in 2009, Ms. Brigham utilized another sick day and informed Frontier that she would be "applying for intermittent FMLA to cover absences due to pregnancy;" and (4) in 2010, Ms. Brigham utilized a sick day. Ex. 4 to Def.'s Ex. A at 1-7. Many of Defendant's "written warnings" are duplicative because they are issued on a rolling basis and capture sick days captured in prior warnings that have yet to "drop[] off." Id.

The record does not pick back up until March 29, 2012, where Ms. Brigham was issued "performance counseling" for taking five sick days in 2011 and one sick day in 2012. Id. at 8. The record then goes blank again until July 13, 2013 where Ms. Brigham was again warned for using an additional three sick days in 2012 and one sick day in 2013. Id. at 9. Notably, one of the sick days in 2013 was coded as "MED" (meaning "medical"). Id. at 10-12. Ms. Brigham then utilized four more sick days in 2013, and one sick day in 2014 prior to self-disclosing her disability of alcoholism to Frontier on or about September 7, 2014. Id. at 13. Thus, between the date of Ms. Brigham's hire and her self-disclosure, a period of approximately **seven (7) years**, Ms. Brigham utilized **25 sick days** – for issues ranging from illness to pregnancy and personal issues. Id.; *see*

1183

*also* Ex. 3 to Pl.'s Motion at 36:13-16 ("That's four times being sick in a year, when you're working with the public, who are sick. And I just – I will argue all day that Frontier's attendance policy was ridiculous. We even tried to strike over it."). Under Frontier's own Dependability Policy a flight attendant could utilize four (4) sick days per year without penalty, or 28 sick days in seven (7) years, *more* than Ms. Brigham actually used. Ex. 2 to Def.'s Ex. A at 0000368; Ex. 4 to Def.'s Ex. A at 3 ("Four Sick Instances Reminder" that stated: "The purpose of this letter is for advisement only.").

After Ms. Brigham's self-disclosure on September 7, 2014 and through the date of her termination on November 11, 2015, Plaintiff's absences from work were due directly to the fact that Frontier required Ms. Brigham to comply with her treatment plan but refused to reasonably accommodate Ms. Brigham to make her compliance possible. Pl's Motion at 8-13 [Dkt. 36].

18.    Admit.

19.    Admit.

20.    Deny. As indicated on the Frontier Airlines Fitness-for-Duty Certification form, filled out by both Ms. Brigham and Dr. Walter Thomas, Ms. Brigham possessed no restrictions related to "standing, walking, sitting, lifting/pushing/pulling, carrying, [or] use of hands." Ex. 6 to Def.'s Ex. A. However, this form mentions nothing of non-physical restrictions, nor does it mention Frontier's own restrictions related to an employee's return to work after self-disclosure of a substance abuse problem. After an employee self-discloses an alcohol addiction, the employee may only return to work after completion of an "approved rehabilitation program," testing negative for alcohol use, and being in "full compliance with any additional treatment or aftercare recommended by a Substance Abuse Provider." Ex. 2 to Def.'s Ex. A at FRONTIER AIRLINES

1184

(R. BRIGHAM) – 0000308. Non-compliance "with any portion of recommended treatment, aftercare or testing may result in disciplinary action up to and including suspension or termination." Id.

21.     Deny. Plaintiff never allowed her *use of alcohol* to impede her ability to perform satisfactorily as a flight attendant *i.e.*, she never drank on the job. Ex. 3 to Pl.'s Mot. at 68:2-9 ("No. Luckily, I had never crossed that boundary. Oh, and I feel like I need to qualify – or clarify. So never while on duty. However, on overnights, after you're done, it's – it was just kind of a culture where you would take off all your flight attendant gear, put on normal clothes, and go meet at the bar. Nine times out of ten, that's what you did.").

However, Plaintiff's alcoholism was substantially limiting in a number of ways. Id. at 225:1-226:1 ("Q. After you self-disclosed your disability of alcoholism, did you have any trouble with your day-to-day life? A. Yes. Q. Okay. Do you recall being asked a discovery question by Frontier about that topic? A. Yes. And did you answer that honestly when you answered it? A. Yes. Q. And are you still suffering any of those issues, that is, your ability to complete day-to-day life activity? Do you have any issues with that now? A. The sleeping part, which is why I still take trazodone. By my life is nowhere near what it was early in recovery, when it comes to those post – the post-withdrawal symptoms . . . I was still early in my recovery. I had issues sleeping. And honestly, the Frontier stuff just made it worse."); Ex. 7 to Pl.'s Mot. at 8-9 ("My disability is alcoholism. I was unable to treat my disability on my own and it affected my life in dramatic ways, including my marriage and my relationship with my children. Thus, I had trouble caring for myself, eating, sleeping, concentrating, and working."); Ex. 15 to Pl.'s Mot. at 2 ("Recently, Rebecca notices the [drinking] picked up again and she was consuming approximately a pint within an hour

1185

17

and found herself stumbling and slurring words with the kids around. Her husband recently took

the children to Michigan and has returned alone so that he can support her."); and Ex. 15 to Pl.'s

Mot. at 3 ("Diagnosis: Dsythmia . . . postpartum depression, utilizing substances as a relief,

sadness, feeling overwhelmed, anxious, feeling guilt, and at times hopeless . . . Alcohol

dependance.").

22.     Deny. Plaintiff was clear in her deposition to state that while she never let her

alcohol *use* interfere with performance of her essential job functions, Ex. 3 to Pl.'s Motion at 68:2-

9, she was only able to perform all essential functions of her job *with* a reasonable accommodation.

Id. at 224:14-22 ("Q. And when – when you – after you self-disclosed your disability of

alcoholism, were you able to complete those essential job functions? A. With my reasonable

accommodations being granted, yes . . . Without it, no, because if I had to do overnights, I wouldn't

have my sobriety. Therefore, I would be terminated by Frontier.").

23.     Admit that since September 5, 2014, Plaintiff has been sober. Deny that alcoholism

has not impacted Plaintiff's daily life activities or inhibited her ability to function. Id. at 225:1-

226:1 ("Q. After you self-disclosed your disability of alcoholism, did you have any trouble with

your day-to-day life? A. Yes. Q. Okay. Do you recall being asked a discovery question by Frontier

about that topic? A. Yes. And did you answer that honestly when you answered it? A. Yes. Q. And

are you still suffering any of those issues, that is, your ability to complete day-to-day life activity?

Do you have any issues with that now? A. The sleeping part, which is why I still take trazodone.

But my life is nowhere near what it was early in recovery, when it comes to those post – the post-

withdrawal symptoms . . . I was still early in my recovery. I had issues sleeping. And honestly, the

Frontier stuff just made it worse."); Id. at 215:11-18 ("Q. What other major emotional stressors

1186

have you had in your life, not counting Frontier? A. I honestly – Frontier. I put my daughter [referring to the death of her daughter soon after birth] and Frontier in pretty much the same category. They both destroyed my happiness, what I thought was going to be my life, and just destroyed it. I was worth something when I was a flight attendant. I was proud. It was what I wanted to do when I grew up.").

24.    Deny. Plaintiff was complying with the terms of her treatment plan, as required by Frontier, while Frontier was simultaneously failing to accommodate Ms. Brigham. Pl's Motion at 8-13 [Dkt. 36].

25.    Admit.

26.    Deny. As stated above, Ms. Brigham was complying with the terms of her treatment plan, as required by Frontier, while Frontier was simultaneously failing to accommodate Ms. Brigham. Pl's Motion at 8-13 [Dkt. 36]. Ms. Brigham, in her deposition as cited by Defendant, was referring to a **single** instance in which she neglected to send an email within 24 hours of using intermittent FMLA leave time because she was preoccupied with "trying to figure out why that turn was taken off of [her] schedule," a scheduling problem that even Ms. Brigham's direct supervisor was unable to understand. Ex. 3 to Pl.'s Mot. at 42:4-48:9. And in any event, Frontier's policy with regard to using intermittent FMLA only requires that: "After reporting their absence, employees should send an email . . . [t]his email must be received as soon as practicable, usually the same day of the absence or the next day." Ex. 2 to Def.'s Ex. A at 0000313. And it is undisputed that Ms. Brigham did send an email to Frontier regarding use of this intermittent FMLA leave day the moment she realized she should have. Ex. 3 to Pl.'s Mot. at 179:24-180:12.

27.    Admit.

28.     Admit that Plaintiff requested to avoid layovers and overnights in order to comply with her treatment plan. At this June 4, 2015 meeting, Plaintiff communicated her difficulties in avoiding overnights and layovers, even suggesting that perhaps she could "offer like 20 bucks for somebody to pick it [the overnight trip] up or something, and if that doesn't happen, then I would use my intermittent FMLA." Ex. 8 to Def.'s Ex. A at 0004282. Mr. Arellano responded that Ms. Brigham had already "exhausted" her intermittent FMLA, Id., and that Ms. Brigham could only qualify for a "maximum of 12 weeks" of FMLA leave. Id. at 0004282-83. Mr. Arellano made it clear that Ms. Brigham would not be able to utilize any additional intermittent FMLA time: "[U]nfortunately there's no more for you to use of that piece." Id. at 0004283. And while Mr. Arellano did not discuss accommodating Ms. Brigham under the ADA (apart from a casual reference to possibly transferring to Orlando, which Ms. Brigham could not do given that she had a family with kids in Colorado), he did suggest that she try to swap and drop trips, "maybe put incentives out there for folks who . . . [take those trips]," and "hopefully that will work for you down the road." Id. at 0004289. Apparently, Mr. Arellano's solution was for Ms. Brigham to offer $20 to people to incentivize them to take her layovers an overnights.

At this meeting, Ms. Brigham also asked if she could work at the GO: "And then my other question is, is there an option for – you know, how like OJI, you come to the GO and do whatever. Is that ever an option if they're like – let's say, because I don't want to get in trouble. I don't want to get these sick instances or (indiscernible) instances, points. You know, is there ever an option that if it comes down to it – like this three day that I had you pull me off . . . That way it's not like anybody – nobody thinks that I'm like, oh, she just wants these days off so she's trying to get out of it. Because that's not it at all. I mean, I would have loved to pick up a turn today and tomorrow.

You know what I mean? But is that an option to kind of that way I can still get – it wouldn't be like a point. Like, instead of getting a point, I would come to the GO and work . . . ." Id. at 0004317-18.

29.     Deny. Mr. Arellano never mentioned that Ms. Brigham's requests for reasonable accommodation might violate the CBA in this meeting. *See generally* Ex. 8 to Def.'s Ex. A.

30.     Deny. Ms. Prince never took this position until she was recently deposed by Frontier. **Exhibit 1**, Declaration of Adrienne Prince dated March 13, 2020 at 2, ¶ 6 ("Frontier claimed the requested accommodation would have violated the seniority provision in the collective bargaining agreement, and therefore, never granted the accommodation. However, I explained to Frontier that the Union was not seeking an accommodation that would violate the seniority provision, but rather, would work *within* the seniority provision. In other words, the Union requested that Ms. Brigham be allowed to bid for shifts within her existing seniority to avoid layovers as much as possible, and with regard to the whatever shifts were leftover containing layovers and assigned to Ms. Brigham, the Union proposed a method by which Ms. Brigham could have traded, swapped or dropped these shifts in compliance with the collective bargaining agreement."); Ex. E, Transcript of Meeting dated November 3, 2015, to Def.'s Mot. at BRIGHAM LM 0000043-44 (Ms. Prince: "And if she were picking up that open time or the trade it wouldn't be . . . [b]ecause it wouldn't be like pre-awarded if that was something that came up. Uh as far as the union stance – you know if she could bid what she could hold and then you know was either removed or able to pick up some open time – it wouldn't violate seniority. Because that's all first come first serve anyway."); Ex. E to Def.'s Motion at BRIGHAM LM 0000046 (Ms. Prince: "And I do know just so that you're familiar – a lot of times when people come back mid-month or they're

not released to be able to bid they are given blank schedules and they to – and I mean it's something that inflight already does so it wouldn't be an undue hardship with the company . . . They already allow – pick up in this light so it's not like we are – it's a really unusual request that's never been done before . . . .").

And even in her recent deposition, Ms. Prince confirmed that Ms. Brigham's request to build her schedule out of Open Time would not have violated the CBA. **Exhibit 2**, Deposition of Adrienne Prince at 120:14-24; Ex. 2 at 125:9-12 ("Q. Do you still think that that was a reasonable solution, sitting here today looking back on things? A. I do."); Ex. 2 at 126:5-9 (confirming that Ms. Brigham's request for temporary transfer to the GO was also a reasonable request).

Currently, Ms. Prince is no longer affiliated with the Union and does not perform advocacy work on behalf of flight attendants. Ex. 2 at 12:13-22.

31.   Deny. While Mr. Arellano has submitted a Declaration stating as much, he makes this assertion with no logical explanation. Ex. A to Def.'s Motion at 6, ¶ 39. In reality, the seniority-based bidding system contemplates a process where *after* flight schedules are awarded by seniority, flight attendants may drop, add or swap Open Time, which is expressly designated as "first-come first serve" as opposed to seniority based. Ex. 10 to Pl.'s Mot. at 56. Thus, if Ms. Brigham was allowed to build her schedule from Open Time, she would have been choosing from the flights more *and* less senior flight attendants did not want in the initial seniority-based bidding process. This cannot be characterized as "necessarily penalize[ing] other flight attendants."

32.   Deny. These suggestions from Mr. Arellano were not proposed reasonable accommodations, but rather, suggestions that any employee with or without a disability could have pursued. Ex. 2 to Pl.'s Mot. at 96:24-98:13. Frontier never proposed a reasonable accommodation

beyond these suggestions that any other employee could have taken advantage of. Id. Taking

intermittent FMLA leave time was not allowing Plaintiff to successfully perform her job hence her

requests for reasonable accommodation (not to mention, as cited above, Mr. Arellano told Plaintiff

with regard to additional FMLA time: "[U]nfortunately there's no more for you to use of that

piece."), and Defendant's suggestion to apply for other jobs was not reasonable because Ms.

Brigham did not qualify for any of the available listed positions at the time. Ex. 3 to Pl.'s Mot. at

74:5-17 ("Q. Are you aware that Frontier provides preferential hiring for anyone who needs an

accommodation under the Americans with Disabilities Act for positions for which they're

minimally qualified? A. They never told me anything about that . . . I asked multiple times what

could be done to help me in this situation. I was never aware of whatever you're talking about.

They never mentioned anything to me. All they said was that they could not help me."); Ex. 3 to

Pl.'s Mot. at 165:22-166:6 ("So you were able to successfully look for potential transfer options;

is that right? . . . A. From – honestly, from my memory. I remember seeing a bunch of stuff that I

was not quite qualified for. And then at some point, I stopped, because I had been told that, You'll

lose your seniority, and you won't be able to go back to inflight after 90 days."); Ex. 3 at 178:9-

14 ("A. . . . . I still looked in there [referring to Frontier's online job postings]. You never know.

There may have been an at-home – work-from-home position doing something that I qualified for,

in which case, something like that, I would have considered. However, I did not want to lose my

seniority.").

33.     Admit. Plaintiff admits that she needed to continue to earn a living, *i.e.*, she could

not afford to take unpaid leave. Ex. 3 to Pl.'s Mot. at 65:6-7 ("Correct. I needed money coming in.

And had they accommodated me, I would have had that.").

1191

34.     Admit. Plaintiff preferred to stay a flight attendant, but more importantly, she was not qualified for the available transfers although she would have taken one if she had, and she was told that she would lose her seniority if she transferred out of Inflight. Ex. 3 to Pl.'s Mot. at 165:22-166:6; Ex. 3 at 178:9-14; Ex. 3 at 131:15-17 ("I believe it was Jeff Varney [Inflight Supervisor] told me that after 90 days, you lose your seniority or your ability to go back to Inflight at your seniority."); **Exhibit 3**, Transcript of Meeting between Plaintiff, Jerry Arellano, Jeff Varney, and Meredith [Plaintiff believes that "Meredith" was actually Shelly Leyner, Defendant's HR Manager, and the name "Meredith" may be an error in transcription] dated October 9, 2015 at 63:18-64:10 ("REBECCA BRIGHAM: Right. Do you lose your seniority? MEREDITH: After – JERRY: Ninety days. MEREDITH: Oh, is it ninety days? Oh, if you stay within inflight – JERRY: If you stay within the company – MEREDITH: -- it's two years. If you leave Inflight, it's ninety days. JERRY: Or if you leave the company. REBECCA BRIGHAM: Right. Right. I get that. So I would have to take a position with Inflight more in those dirameters – parameters. MEREDITH: Uh-huh. If you wanted to keep your seniority.").

Moreover, in the October 9, 2015 meeting, Ms. Brigham confirms that she was approved for 12 intermittent FMLA days at this point, but because this was not adequate for scheduling purposes, she had requested to increase her allotted days to 15. Ex. 3 at 47:1-11. Mr. Arellano repeated the incorrect assertion that Ms. Brigham's intermittent FMLA time was only approved for "sessions," rather than additional needs related to her alcohol treatment. Id at 48:5-11. Mr. Arellano also made clear that Frontier would not reasonably accommodate Ms. Brigham: "So if we made – if we cherrypicked to try and create you a certain situation – now we've created a whole separate accommodation for you –" Id. at 52:16-21. And to be clear in this denial, Mr. Arellano