No. 21-1335

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

REBECCA BRIGHAM,
*Plaintiff-Appellant,*

v.

FRONTIER AIRLINES, INC.,
*Defendant-Appellee.*

———————————

**On Appeal from the United States District Court for the District of Colorado (Civil Action No. 19-cv-03417-WJM-STV, Hon. William J. Martinez)**

**APPENDIX – VOLUME 6**

John R. Crone
*Counsel of Record*
The Law Office of John R. Crone, LLC
2717 South Forest Street
Denver, CO 80222
(303) 598-3526
john@crone-law.com

*Counsel for Rebecca Brigham*

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Reply in Support of Defendant's Motion for Summary Jud.          1491-1507

Final Pretrial Order          1508-1534

Order Granting Defendant's Motion for Summary Judgment          1535-1563

and Denying Plaintiff's Motion for Partial Summary Jud.

Final Judgment          1564-1565

Notice of Appeal          1566

layovers would have violated the CBA); Dkt. No. 72:14-15 (Plaintiff's testimony that without Frontier's help, she could not avoid flights with layovers); Dkt. No. 36-3 at 54:16-55:5 (Plaintiff's testimony that she did not apply to any other flight attendant position with any other airline because she would have lost all seniority and therefore, started as a Reserve whose schedule would necessarily include layovers); Dkt. No. 38-5 at Frontier (R. Brigham) - 851 (discussing minimum scheduled rest periods between duty outstations and in layover stations and layover cities); Dkt. No. 38-5 at Frontier (R. Brigham) - 851 891 (discussing hotel accommodations for multi-day Reserve assignments). The fact that the Frontier flight attendant job description does not expressly use the term "layover" does not mean that layovers were not in fact essential functions of the position. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶ 7 (The nature of any flight attendant position requires the ability to handle flights with layovers given that inclement weather and maintenance issues alone could require consecutive days of travel, necessarily requiring layovers for crewmembers); see also *Wells v. Shalala,* 228 F.3d 1137, 1144 (10th Cir. 2000) (job descriptions, the work experience of past incumbents in the job, the consequences of not requiring the incumbent to perform the function, the amount of time spent on the job performing the function, and the terms of a collective bargaining agreement are all considered for purposes of determining whether a job function is essential.).

### D.   The ADAAA Does Not Require An Employer To Prevent Potentially Aggravating Circumstances Outside The Workplace.

The ADAAA does not require an employer to preemptively protect employees from circumstances that may trigger or aggravate an underlying mental health condition. S*ee Powrzanas v. Jones Util. & Contracting Co.,* No. 2:17-CV-975-GMB, 2019 WL 4305612, at *7 (N.D. Ala. Sept. 11, 2019), aff'd, No. 19-14314, 2020 WL 6375108 (11th Cir. Oct. 30, 2020) ("…under the

ADA the obligation to make reasonable accommodation [does not extend] to providing an aggravation-free environment") (internal quotation omitted), citing *Cannice v. Norwest Bank Iowa, N.A.,* 189 F.3d 723, 728 (8th Cir. 1999); *Christie v. Loomis Armored US, Inc.,* No. 10-cv-02011, 2013 WL 3381268 at *8 (D. Colo. July 8, 2013) ("Neither Title VII nor the ADA is intended to…promote an alcohol-free workplace"). Accordingly, Frontier was not required to excuse Plaintiff's absences resulting from her refusal to fly flights with layovers, which she believed could aggravate her alcoholism by placing her in environments in which she previously abused alcohol as an accommodation. *See* Dkt. No. 1 at ¶ 18 (describing layovers as situations that "exacerbate[ed] her disability"); *Grillasca-Pietri v. Portorican Am. Broad. Co.,* 25 NDLR P 26, 233 F. Supp. 2d 258, 264 (D.P.R. 2002) (Preventing stress-producing situations at work is an unreasonable accommodation under ADA as a matter of law).

Plaintiff's argument that even if she was required to use IFMLA to be excused from flights with layovers, she had unused IFMLA is not only immaterial, but wrong. Plaintiff had already exceeded the number of days she was permitted to take under the FMLA[5] and even if she had not, Plaintiff *never* submitted any IFMLA Certification Form medically certifying that she could not fly flights with layovers and has failed to present any evidence indicating otherwise. Frontier was simply allowing her to use her IFMLA for that purpose as an accommodation. The IFMLA Certification forms all indicated that Plaintiff's alcoholism was ***not*** interfering with her ability to do her job as a flight attendant, that Plaintiff was able to perform all functions of her job, and certified her for a certain number of absences per month for purposes of attending "***treatment***

---

[5] Even assuming she had been granted 16 days per month as Plaintiff claims, she could not exceed the limit permitted under the FMLA.

*appointments*" or to account for episodes of "*incapacitation*"[6] resulting from her alcoholism.[7] *See* Dkt. No. 38-9; Dkt. No. 38-12; Ex. 2 (IFMLA Certification Executed October 27, 2015). Plaintiff refusal to fly scheduled flights with layovers in order to avoid off-duty situations during layovers that could tempt her to drink do not fall into either category.[8] *See Conlon v. City & Cty. of Denver, Colo.,* No. 11-CV-02039-RBJ-CBS, 2013 WL 143453, at *6 (D. Colo. Jan. 14, 2013) ("An employee's failure to provide medical information necessary to the interactive process precludes [her] from claiming that the employer violated the ADA by failing to provide reasonable accommodation.") (internal citation and quotation omitted); *see also, Brown v. E. Maine Med. Ctr.,* 514 F. Supp. 2d 104, 111 (D. Me. 2007) (distinguishing between a medical *cause* established by a medical care provider's certification for IFMLA and a true medical *need*, emphasizing that the statute and regulations require a "medical need for leave" to support intermittent entitlement). Further, if Plaintiff believed that certain absences should have been coded differently (i.e. as IFMLA rather than sick), she was required to contact LOA to refute the coding, which as indicated by her own union representative, she failed to do. *See* RSSUMF at ¶ 51.

### E.   No Juror Could Reasonably Infer From the Record That Plaintiff's SAP Prohibited Her From Flying Layovers.

To the extent Plaintiff claims that absences to avoid flights with layovers were mis-coded or should not have counted for purposes of the Dependability Policy because they were "required" pursuant to the terms of her treatment plan, she cites no evidence in the record that actually

---

[6] Plaintiff refers to "intermittent capacitation," but presumably intended to refer to "intermittent *in*capacitation."

[7] Examples of intermittent incapacitation identified by FMLA regulations include an employee with asthma who is unable to report to work due to an asthma attack or an employee who is pregnant is unable to report to work due to severe morning sickness. *See* 29 C.F.R. § 825.115.

[8] Despite this fact, Frontier had been allowing Plaintiff to use her IFMLA as an accommodation.

supports her position.  Plaintiff is correct in that Frontier required employees who self-disclosed to comply with treatment, after-care, or support group services *recommended by their SAP* who must be DOT certified. *See* Dkt. No. 36-8; *see also*, Dkt. No. 38-4 ("Frontier requires full compliance with any additional treatment or aftercare *recommended by a Substance Abuse Provider*"); RSSUMF ¶ 26 *supra*. Plaintiff, however, has failed to point to *any* evidence in the record indicating that Marla Madrid—the author of the treatment plan Plaintiff claims prohibited her from flying layovers—was her SAP.

Regardless, even assuming Ms. Madrid was Plaintiff's SAP and that Dkt. No. 36-8 was the treatment plan Plaintiff was required to abide by, it is facially clear from the document that Ms. Madrid was not prohibiting Plaintiff to avoid flights with layovers or requiring Frontier to excuse Plaintiff from flights with layovers. Under the section titled "Additional Information," the treatment plan simply states "*Rebecca* has identified triggers to cravings and opportunities to consume alcohol and those are on overnight trips or anything longer than a given work day in her professional arena. At this time *it would not be a good idea to encourage a vulnerable situation* with a work schedule that serves as a temptation, *if possible*." *See* Dkt. No. 36-8 (emphasis added); *see also,* Dkt. No. 38-24 at BRIGHAM LM 00000045 (Plaintiff's testimony that she drank off-duty during layovers). The "Additional Information" is just that—additional information reflecting a suggestion to Frontier based upon information conveyed to Ms. Madrid by Plaintiff herself and Plaintiff's subjective belief about what could trigger her to relapse is not "competent summary judgment evidence" that can support her claim that she needed an accommodation, including the one she requested. *See Anderson v. Guar. Bank & Tr. Co.,* No. 14-CV-01508-NYW, 2015 WL 5915366, at *2 (D. Colo. Oct. 9, 2015), judgment entered, No. 14-CV-01508-NYW, 2015 WL

5915367 (D. Colo. Oct. 9, 2015) ("Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence."). Further, the rest of the document, which describes Plaintiff's treatment, including modality and frequency makes no mention of avoiding flights with layovers as part of Plaintiff's "treatment" and instead, affirms that Plaintiff was **not** experiencing occupational problems as a result of her alcoholism. *See* Dkt. No. 36-8.

### F.    Plaintiff Rejected Accommodations That By Her Own Testimony She Needed To Perform Her Job As A Flight Attendant.

Plaintiff testified that she could not complete the essential functions of her job as a flight attendant without an accommodation that would allow her to get further into her recovery and become more secure in her sobriety, which she claimed would be in the near future. *See* Dkt. No. 36-3 (Pl.'s Dep. Tr.) at 224:14-22; 77:8-9; 77:2-4; 76:10-16. Frontier offered exactly that— additional forms of leave[9] so that Plaintiff could get further along in her recovery and have the ability to handle flights with layovers. *See* Dkt. No. 32 at SUMF ¶ 31; *Aubrey v. Koppes,* 975 F.3d 995, 1007 (10th Cir. 2020) ("a request for a plausibly reasonable accommodation refers to those

---

[9] While Plaintiff claims that the leave Frontier proposed was not a reasonable accommodation because it was unpaid, she cites no case law in support. *See,* 29 C.F.R. § Pt. 1630, App. (2016) ("other accommodations could include permitting the use of accrued paid leave or providing additional **unpaid leave** for necessary treatment") (emphasis added); EEOC Enforcement Guidance, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (quoting same); *Jacobsen v. Dillon Companies, Inc.,* No. 10-CV-01944-LTB-BNB, 2012 WL 638122, at *7 (D. Colo. Feb. 28, 2012) (leave in order to recover from an injury or illness may be a reasonable accommodation if such a request allows the employee to perform the essential functions of the job in 'the near future'"); *Jones v. Parkview Hosp., Inc.,* No. 1:16-CV-408, 2020 WL 6291462, at *9 (N.D. Ind. Oct. 26, 2020) ("With respect to unpaid leaves, an unpaid leave may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation ...."), citing 2 C.C.R. § 11068(c).

accommodations which presently, ***or in the near future***, enable the employee to perform the essential functions of [their] job") (internal citation and quotation omitted)*; see also, Kuehl v. Wal-Mart Stores, Inc.,* 909 F. Supp. 794, 803 (D. Colo. 1995) ("[w]here the nature of the accommodation offered by an employer is undisputed and no reasonable jury could find the offered accommodation to be unreasonable, however, summary judgment is appropriate."). Plaintiff, however, rejected those proposals and instead, continued to refuse to handle flights with overnights while demanding that she be able to build her schedule from scratch, disqualifying herself from any protection she may have had under the ADAAA as a result. *See* Dkt. No. 44 at ¶¶ 33, 24 29; C.F.R. § 1630.9(d) ("…if such individual rejects a reasonable accommodation…that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified").

Plaintiff's claim that the positions Frontier encouraged her to apply to internal positions for which she was unqualified is contradicted by the record, which only shows that Frontier repeatedly encouraged Plaintiff to look at vacant opportunities posted on UltiPro and MyFrontier.org and to indicate to Frontier whether she was interested in any of them. *See* Dkt. No. 38-11 (June 4 Meeting) at p. 3, 12-13. Plaintiff testified unequivocally that she "occasionally" looked at vacant internal positions and that although she was qualified for some of them, she was not interested in those positions and was not seriously considering *any* internal transfer as an accommodation because she wanted to remain a flight attendant. *See* Dkt. No. 36-3 at 176:6-177:5; 177:20-25; *see also,* Dkt. No. 38-11 at p. 14; Dkt. No. 38-15 at p. 17-18 (reiterating request to be excused from layovers); Dkt. No. 38-25 (reiterating request to be excused from layovers).

Finally, while Plaintiff contends she *did* request additional IFMLA as Frontier proposed, she failed to do so until *after* she had already exceeded her IFMLA and accumulated more than enough attendance points to warrant her termination of employment, and as noted by Plaintiff's own union representative, failed to return the IFMLA paperwork within the required timeframe and faxed it to the wrong number. *See* Ex. 3 (AFA Notes/Comments). Retroactively excusing absences is not something the ADAAA requires of employers. *See Aman v. Dillon Companies, Inc.,* 645 F. App'x 719, 726 (10th Cir. 2016) (rejecting plaintiff's argument that his employer should have retroactively excused his absences when he submitted a doctor's note); *Brookins v. Indianapolis Power & Light Co.,* 90 F. Supp. 2d 993, 1007 (S.D. Ind. 2000) ("retroactive 'excusing' of the prior weeks of absences is not something that the ADA required [defendant] to accept.").

**IV.    CONCLUSION**

For the forgoing reasons and those set forth in Frontier's Motion [Dkt. No. 38], Frontier respectfully requests that the Court grant summary judgment in its favor on Plaintiff's claims in their entirety, dismissing them with prejudice.

Respectfully submitted this 22nd day of December, 2020.

> */s/ Danielle L. Kitson*
> Danielle L. Kitson
> Carolyn B. Theis
> LITTLER MENDELSON, P.C.
> 1900 Sixteenth Street, Suite 800
> Denver, CO 80202
> Telephone: 303.629.6200
> Facsimile: 303.629.0200
> Email:    dkitson@littler.com
>                catheis@littler.com
> *Attorneys for Defendant Frontier Airlines, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 22nd day of December 2020, I filed and served the foregoing

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY**

**JUDGMENT** via CM/ECF to the following:

John R. Crone
The Law Office of John R. Crone, LLC
4550 E. Cherry Creek Drive South, #1003
Glendale, Colorado 80246
john@crone-law.com

*Attorney for Plaintiff*

s /Joanna Fox
Joanna Fox, Legal Secretary

4843-8600-0084.5 057446.1017

**FRONTIER.**

Frontier Airlines, Inc.          P 720.374.4200          frontierairlines.com
Frontier Center One            F 720.374.4375
7001 Tower Road
Denver, CO 80249

September 16, 2014

Mrs. Rebecca Brigham
300 Iinda Lane
Denver, CO 80221

Dear Rebecca,

We are thankful to hear that you have contacted a company representative in an effort to obtain assistance. Asking for help is the first step on the road to recovery.  We are committed to helping you through your journey. Below you will find answers to some questions regarding steps and guidance.

Representatives from two departments within Human Resources will actually be involved in your process, but rest assured that your confidential information will remain exactly that…**CONFIDENTIAL.** You have also contacted your Union representative, so they may also be informed of progress, if necessary.

When an employee discloses a drug or alcohol dependency they must:
1. Be removed from the performance of safety-sensitive functions **– the Benefits Department will assist you in requesting a Leave of Absence. A Leave Coordinator can be reached at 720-374-4531.** If you are not in a safety-sensitive position, you will be granted LOA, if suggested after assessment, by your Substance Abuse Professional. If you are eligible, you will be granted FMLA.
2. Contact the Employee Assistance Program (EAP) within 24 hours of receiving this letter or disclosing to a company representative. Frontier Airline's direct contact is:

   **Dr. Rick Carlson, LPC, NCC, CEAP, Certified Clinical Trauma Professional
   Ceridian LifeWorks 800-234-5154 X300**0

*A whole different animal.*

FRONTIER AIRLINES (R. BRIGHAM) - 0000524

EXHIBIT 1
1499

**FRONTIER**

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249

P 720.374.4200
F 720.374.4375

frontierairlines.com

3.  Be evaluated by a Department of Transportation (DOT) qualified SAP – **When you contact the Benefits Department or Compliance Department with your disclosure, the D&A Program Administrator will contact Ceridian's Employee Assistance Program and request a Substance Abuse Provider in your area who is qualified to make Department of Transportation determinations.**

4.  Comply with all recommendations given by the SAP – **The SAP will give recommendations for an individualized program. These recommendations must be followed in order for that SAP to release you to return to work.**

5.  Return for a follow-up evaluation and receive return-to-duty clearance from the SAP – **Showing compliance with SAP recommendations will result in clearance to return to work. You will need to get that clearance from the SAP in the form of a letter that describes your program and lists the date of successful completion. The letter should also state recommendations for aftercare, support groups or testing in the future. This information should be sent to the Compliance Department at hrcompliance@flyfrontier.com.**

6.  Take and pass a return-to-work test and be placed in the company follow-up testing program - **Once the clearance letter is received, a Compliance Coordinator will contact you with information and documents for a Return to Duty test. As negative results are received, the Compliance Coordinator will release you to return to work.   You will be placed in the company Follow-Up testing program as directed by your SAP's recommendations.**

Please feel free to contact either me if you have any questions regarding your responsibility or the next steps to take.

Sincerely,

**Jerry Arellano**
**D&A Program Administrator**
**720.374.4594**
**Gerardo.Arellano@flyfrontier.com**

*A whole different animal.*

1500

FRONTIER AIRLINES (R. BRIGHAM) - 0000525



Frontier Airlines,          P 720.374.4245        loa@flyfrontier.com
Frontier Center One         F 720.374.8013
7001 Tower Road
Denver, CO 80249

### CERTIFICATION OF HEALTH CARE PROVIDER FOR
### EMPLOYEE'S SERIOUS HEALTH CONDITION
### (FAMILY AND MEDICAL LEAVE ACT)
### INTERMITTENT LEAVE OF ABSENCE

Frontier Contact: LOA Coordinator
LOA@flyfrontier.com

## EMPLOYEE INFORMATION

### TO BE COMPLETED BY EMPLOYEE

**EMPLOYEE:** Please complete this section before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. Per 29 U.S.C. §§ 2613, 2614(c)(3), if requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. Per 20 C.F.R. § 825.313, failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request.

Employee Name: Rebecca Brigham          Employee ID #: 413206

Employee Phone: 303-913-6376          Job Title: Flight Attendant

Manager: JJ Williams          Base/Location: DEN

## MEDICAL CERTIFICATION

### MEDICAL PROVIDER IS TO COMPLETE PARTS A AND B AND ANY ADDITIONAL INFORMATION

**MEDICAL PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

THE GENETIC INFORMATION NON-DISCRIMINATION ACT OF 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law.  To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information.  "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or their family member's genetic tests, the fact that an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual.

Page 1 of 4

EXHIBIT 2
1501


## PART A: MEDICAL FACTS

Approximate date condition commenced: __6/13/2014__

Probable duration of condition: __Lifetime recovery__

Date(s) you treated the patient for condition: __Consistently since 12/2014 1x per week.__

1. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?   ☐ No   ☑ Yes

   If yes, dates of admission: __September 7, 2014 - November 7, 2014__

2. Will the patient need to have treatment visits at least twice per year due to the condition?
   ☐ No   ☑ Yes

3. Was medication, other than over-the-counter medication, prescribed?
   ☐ No   ☑ Yes

4. Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist?   ☐ No   ☑ Yes

   If yes, state the nature of such treatments and expected duration of treatment: __Psychiatry__

5. Is the medical condition pregnancy?   ☑ No   ☐ Yes

   If yes, expected delivery date: _____

6. Use the information provided by the employer to answer this question. If the employer does not provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to their condition?
   ☑ No   ☐ Yes

   If so, identify the job functions the employee is unable to perform: _____

7. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   __Update: Rebecca continues to work towards maintaining sobriety. She is currently stressed because of her work schedule, and notices triggers arise as the stressors increase. Her work schedule consist of overnight trips to which she cannot partake due to the lack of (CONTINUED ON NEXT PAGE) know resources in case she needs to reach out for support when vulnerable. Rebecca does not feel safe working overnights as of this update.__

Page 2 of 4

**FRONTIER**

## PART B: AMOUNT OF LEAVE NEEDED

1. Please indicate if any of the following apply to the patient:

   ☑ They will experience intermittent incapacitation that will require FMLA Leave

   ☑ They will require treatment appointments for their condition

2. Please detail below based on your previous answer:

   - If you indicated that the patient will experience *intermittent incapacitation* requiring FMLA Leave, based upon the patient's medical history and your knowledge of the medical condition, please *estimate the maximum frequency and duration* of intermittent leave time they might require. Note that terms such as "indefinite, unknown, n/a and undetermined cannot be accepted and will result in a denial of the leave request:

   30 – 31
   (Number)

   ☐ hours     per     ☐ day        ☐ quarter
   ☑ days              ☐ week       ☐ year
                       ☑ month

   Please indicate the beginning and ending dates for the period of intermittent incapacitation:

   Begin (mm/dd/yyyy): 10/23/2015     End (mm/dd/yyyy): 5/23/2016

   - If you indicated that the employee will need to attend follow-up treatment appointments, is it medically necessary for the employee to be absent from work to attend these appointments?

   ☐ No          ☑ Yes

   If yes, please estimate treatment schedule:
   Frequency: 1 – 2 x per week & as needed.
   Length of Appointment (including any recovery period): 1 – 2 hrs +

   If yes, please also provide a general description of this regimen (e.g. Physical Therapy,

   medication administration, etc.):

   Rebecca is worried that she may face termination if she is not able to take overnight trips. This worry serves as a barrier in relapse prevention. Additionally, her benefits are what allows her to maintain treatment and the threat of termination would/does have implications. She continues to utilize all resources and support as *(CONTINUED ON NEXT PAGE)* she maintains sobriety.

Page 3 of 4

**ADDITIONAL INFORMATION (Please identify the question number with your additional answer):**

If possible, a modified work schedule would help Rebecca significantly. She has complied with all other requirements placed on her to maintain her position. Thank you for your consideration.

Signature of Health Care Provider _Marla M. Madrid, LCSW_    Date _27OCT15_

Provider's Name (printed): Marla M. Madrid, LCSW

Business Address: PO Box 554
Strasburg, Co 80136

Telephone: ( 303 ) 622.9280    Fax:( 303 ) 622.9201

Type of practice / Medical specialty: Behavioral Health

Page 4 of 4



Rebecca Brigha...
52-71-01-68-15



# NOTES/COMMENTS

12/2/15 — Grievance hearings — Rebecca didn't call re: IFM until 3-4 days later, company gave paperwork to increase days, didn't get it back in required timeframe, faxed to wrong number

12/10/15 — Company response denying grievance

12/21/15 — Submitted to system board.

5/11/16 — Screened out.

4/26/16 — Screen letter sent (30 days 10/26)

11/18/16 — Case withdrawn. RH

BrighamR_PlaintiffRecords1089

EXHIBIT 3
1505

The Company considers ~~Rebecca~~ to have self disclosed due to a conversation with Fadia while in treatment.

A condition of her return to work was compliance with all required program components. One of Rebecca's requirements of the SAP was not to do overnights. Her seniority did not allow for her to bid turns. It was up to her to manipulate her schedule, calling in sick for trips where she couldn't drop/swap/trade. This became more & more difficult last year as the DEN base continued to shrink and she came closer & closer to RSV.

Rebecca did not immediately qualify for IFM due to Absences in 2014, so began accumulating sick occurrences. She qualified for IFM in April 2015. Rebecca was required to contact LOA to recode absences, but wasn't consistent therefor accumulating dependability points. There was 1 trip in July where LOA said she'd exhausted her days (July 26), however the Company resumed recoding absences with her July 31 sick call.

A FTW for 7 pts issued 5/26/15. The Company recoded 2 calls. ~~Rebecca~~ received another FTW for 7 pts on 7/3/15.

Rebecca had another call that remained "sick"
Aug 7-10. Rebecca stated that she was ill
for that call so didn't email LOA. This
resulted in FTW dated 8/7/15 due to 8 pts.

The Company did not term Rebecca in August
when she reached 8 pts.

Rebecca missed much of Sept 2015 as IFM,
also much of Oct 1-19 also IFM. Rebecca
then had more sick calls for Oct 23-26 and
Oct 30-Nov2 where she did not email to recode.
Rebecca was suspended Nov 3, and
terminated Nov 11, 2015

this brought to 10 pts

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 19-cv-03417-WJM-STV

REBECCA BRIGHAM,

       Plaintiff,

v.

FRONTIER AIRLINES, INC.,

       Defendant.

---

## FINAL PRETRIAL ORDER

---

### 1. DATE AND APPEARANCES

The Final Pretrial Conference was held on February 3, 2021 at 10:30 a.m. in Courtroom A402, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado 80294.

Plaintiff Rebecca Brigham was represented via remote means by John R. Crone, Esq., 4550 E. Cherry Creek Drive South, #1003, Glendale, CO 80246; (303) 598-3526; john@crone-law.com.

Defendant Frontier Airlines, Inc. was represented via remote means by Danielle L. Kitson, Littler Mendelson, P.C., 1900 Sixteenth Street, Suite 800, Denver, CO 80202; (303) 629-6200; DKitson@littler.com.

### 2. JURISDICTION

The Court has jurisdiction over this case and the parties by virtue of 28 U.S.C. §

1331 and 42 U.S.C. § 12101, *et seq.* as this lawsuit raises a federal question and constitutes a private cause of action under the Americans with Disabilities Act of 1990, as amended (the "ADA").

### 3.  CLAIMS AND DEFENSES

a.      Plaintiff:

Plaintiff was first employed as a flight attendant with Defendant Frontier Airlines, Inc. ("Frontier") on or around May 2007. Ms. Brigham found the work interesting, challenging, and appreciated that she could build a career and future with Frontier. Throughout her career, Ms. Brigham remained dedicated to her position assimilating her job as a flight attendant into her personal identity.

Unfortunately, Ms. Brigham's first child was born premature and died on or around May 22, 2009. This exacerbated Ms. Brigham's occasional use of alcohol as a means of relieving stress, anxiety, and feelings of grief such that Ms. Brigham's less frequent indulgences became common. While Ms. Brigham's use of alcohol never interfered with her work performance, she became convinced that she was an alcoholic and required treatment. As such, and toward the end of 2014, Plaintiff voluntarily disclosed her disability to Frontier and checked into an inpatient rehabilitation facility. Ms. Brigham's treatment has been tremendously successfully; her interaction with Frontier during and since this time period has not.

Ms. Brigham repeatedly requested reasonable accommodations from Frontier (in a form recommended by her treatment plan **and** approved by her union) but was repeatedly informed that no accommodations would be granted. Rather than engage in

the interactive process with Ms. Brigham in order to determine which accommodations might be reasonable and attainable, Frontier denied her requests and chose instead to discriminate and retaliate against Plaintiff for having the audacity to proactively confront and disclose her disability. Because Frontier refused Ms. Brigham a reasonable accommodation, indeed it refused to even engage in a good faith interactive process, Ms. Brigham began to involuntarily miss work in attempts to alter her work schedule to avoid long layovers or overnight flights, as required by her treatment plan. Notably, Frontier required, under threat of termination, that Ms. Brigham comply with her treatment plan but then denied her the ability to do so. Frontier's primary defense for its failure to accommodate is that accommodating Ms. Brigham would have caused it to violate a Collective Bargaining Agreement; however, there is no basis in fact or law for taking such a position.

Predictably, Frontier used Ms. Brigham's involuntary absences from work as justification for terminating Plaintiff on or around November 2015. Ms. Brigham complained to the United States Equal Employment Opportunity Commission ("EEOC") about Defendant's unlawful conduct, and the EEOC agreed that Defendant's conduct was indeed unlawful issuing a "cause" determination in Plaintiff's favor. Despite engaging in the EEOC's required conciliation process, the parties were unable to reach a resolution and this lawsuit ensued. Plaintiff has suffered significant damages in the form of back and front-pay, medical expenses, lost benefits, and emotional harm. Ms. Brigham also seeks all other available economic, compensatory, and punitive damages as well as attorney's fees and costs. Ms. Brigham is asserting the following claims pursuant to the ADA: (1)

failure to accommodate; (2) failure to engage in the interactive process; (3) retaliation; and (4) discrimination.

b.     Defendant:

Plaintiff's claim for failure to engage in the interactive process must be dismissed because, as recognized by this Court, it is not an independent basis for liability under the Americans with Disabilities Act as Amended (ADAAA).

Regardless, Frontier had no obligation to engage in the interactive process with Plaintiff or accommodate her under the ADAAA because she was not a qualified individual with a disability. The fact that Plaintiff identifies as an alcoholic or a recovering alcoholic does not automatically render Plaintiff a qualified individual with a disability under the ADAAA and Plaintiff's own unequivocal deposition testimony demonstrates that since getting sober on September 5, 2014, her alcoholism has not substantially limited her ability to perform any major life activities as compared to the average person in the general population. In addition, the Intermittent FMLA ("IFMLA") Certification Forms Plaintiff submitted to Frontier all indicated that Plaintiff was able to perform all functions of her job, certifying her only for purposes of attending "treatment appointments" or to account for episodes of "incapacitation" resulting from her alcoholism.

Even assuming Plaintiff was a qualified individual with a disability, Frontier was not obligated under the ADAAA to provide Plaintiff with the specific accommodation she requested—excusal from flights with layovers, which she feared may tempt her to drink. First, the ADAAA does not require an employer to excuse an employee from performing an essential function of their job and handling flights with layovers was an essential

4

1511

function of Plaintiff's position as a flight attendant. Second, the ADAAA does not require an employer to preemptively protect employees from circumstances that may trigger or aggravate an underlying mental health condition—exactly what Plaintiff was asking of Frontier.

Further, even assuming Frontier could have been obligated to grant Plaintiff the accommodation she sought, as discussed *supra*, Plaintiff failed to provide Frontier with any medical documentation indicating Plaintiff could not cover flights with layovers. While Plaintiff claims a treatment plan authored by her therapist, Marla Madrid, prohibited her from handling flights with layovers, the document to which Plaintiff refers simply states that Plaintiff herself had expressed the concern that she might be tempted to drink on layovers. Therefore, Ms. Madrid indicated that Frontier should not *"encourage"* Plaintiff to cover flights with layovers *"if possible."* In addition, Frontier required employees who self-disclosed *only* to comply with treatment plans prepared by a DOT certified Substance Abuse Provider (SAP). Nothing in the record indicates Ms. Madrid was Plaintiff's SAP. Further, Plaintiff's claim that Frontier required her to abide by a treatment plan authored by Plaintiff's own therapist based solely upon Plaintiff's own representations, which prohibited Plaintiff from performing a significant and fundamental part of her job as a flight attendant is simply nonsensical.

Further, excusing Plaintiff from covering flights with layovers as Plaintiff requested meant excusing Plaintiff from requirements applicable to all active flight attendants pursuant to Frontier's collective bargaining agreement (CBA) with the flight attendants union, Association of Flight Attendants ("AFA"), including those concerning minimum

1512

hours, bidding, and seniority. Courts, including this one, have consistently held that accommodations that would violate the terms of a bona fide seniority system or CBA are unreasonable. In addition, the ADAAA does not require employers to create temporary light duty positions to accommodate the disabled—exactly what Plaintiff was requesting when she asked to be temporarily transferred to Frontier's General Office (GO).

Despite the fact that Plaintiff was not a qualified individual with a disability, Frontier went above and beyond to try to accommodate Plaintiff's alcoholism. Although Plaintiff's IFMLA Certification Forms only certified her for absences to attend "treatment appointments" or in the event of "incapacitation" resulting from her alcoholism, Frontier allowed Plaintiff to use IFMLA to avoid flights with layovers. In addition, Frontier offered Plaintiff several options for purposes of helping Plaintiff become more secure in her sobriety such that she was more comfortable covering flights with layovers, including applying to increase her IFMLA leave, applying for a non-medical or personal leave, and/or applying to transfer to a vacant position within the company. Plaintiff, however, rejected these alternatives and instead, continued to call out to avoid flights with layovers. If Plaintiff had already exhausted her IFMLA, she would incur "Occurrences" under Frontier's attendance policy (the "Dependability Policy") for such absences.

After admittedly failing to contact Frontier's Leave of Absence Department for approval to use IFMLA for a four (4) day trip scheduled to begin on October 23, 2015 until October 26, 2015, Plaintiff incurred more than enough "Occurrences" to warrant the termination of her employment. Accordingly, Frontier terminated Plaintiff's employment for a legitimate non-discriminatory reason—her violation of company policy.

6

1513

Frontier's termination of Plaintiff's employment was similarly not retaliatory. Frontier discharged Plaintiff less than ten (10) days following the investigatory meeting with Plaintiff and AFA representative, Adrienne Prince, regarding Plaintiff's violation of Frontier's Dependability Policy after having accommodating Plaintiff's alcoholism for more than a year despite having no obligation to do so.

For these reasons and those set forth in Frontier's summary judgment briefing [Dkt. Nos. 38, 45, and 48], Plaintiff is not entitled to relief against Frontier under the ADAAA and therefore, her claims should be dismissed.

### 4.  STIPULATIONS

a.     Stipulated Facts

1.     Plaintiff was employed by Defendant as a flight attendant from on or about May 24, 2007 until on or about November 11, 2015.

2.     Plaintiff was a member of the flight attendants' union The Association of Flight Attendants ("AFA").

3.     AFA and Frontier were parties to a collective bargaining agreement (CBA).

4.     Ms. Brigham has been sober since September 5, 2014.

5.     On or around September 7, 2014, Ms. Brigham disclosed to Frontier that she had entered an inpatient rehabilitation program for alcoholism.

6.     Frontier granted Plaintiff continuous leave under the Family and Medical Leave Act ("FMLA") to complete the sixty (60) day inpatient program.

7.     Ms. Brigham returned to work as a flight attendant for Frontier in

November 2014.

8.      On or around November 3, 2015, Plaintiff met with Frontier representatives and AFA representative, Adrienne Prince.

9.      On or about November 11, 2015, Frontier informed Plaintiff that it was terminating her employment for incurring ten (10) "Occurrences" within a twelve (12) month period in violation of the Dependability Policy under which eight (8) "Occurrences" subjected an employee to termination.

## 5.  PENDING MOTIONS

Plaintiff's Motion for Partial Summary Judgment [Dkt. 36]

    i.      Filed on **November 17, 2020**
    ii.     Opposed on **December 8, 2020**
    iii.    Reply filed **December 21, 2020**

Defendant Frontier Airlines, Inc.'s Motion for Summary Judgment [Dkt. 38]

    i.      Filed on **November 17, 2020**
    ii.     Opposed on **December 8, 2020**
    iii.    Reply filed **December 21, 2020**

## 6.  WITNESSES

a.      List the nonexpert witnesses to be called by each party.  List separately:

    (1)      Witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

    a.      Plaintiff:

    1.      Rebecca Brigham
        c/o The Law Office of John R. Crone, LLC
        Ms. Brigham will testify in person, and is expected to testify on the basis, nature, and scope of all claims at issue in this case. Additionally, Ms. Brigham will testify regarding the nature and scope of her damages and provide rebuttal testimony, as may be necessary.

8

1515

2.      Sean Brigham
c/o The Law Office of John R. Crone, LLC
Mr. Brigham is expected to testify in person on the basis, nature, and scope of Ms. Brigham's claims and damages.

3.      Marla Madrid
Plaintiff believes Ms. Madrid may be contacted at Comanche Crossing Counseling at: 720-937-2332. Additionally, Plaintiff may facilitate communication with Ms. Madrid. Ms. Madrid is expected to testify in person on the nature and scope of Ms. Brigham's disability, including the nature and scope of Ms. Brigham's treatment plan.

4.      David St. Hilaire
Plaintiff believes that Mr. Hilaire may be contacted at: dsthilaire86@gmail.com. Mr. Hilaire is expected to testify in person on the nature and scope of Defendant's discrimination and hostile attitude towards individuals, including himself, that suffer from the disability of alcoholism.

5.      Christine Kernen
Plaintiff believes that Ms. Kernen may be contacted through her attorneys at Holwell Shuster & Goldberg, LLP at: 646-837-8455. Ms. Kernen is expected to testify in person on the nature and scope of Defendant's discrimination and hostile attitude towards individuals requiring accommodations in the workplace.

6.      Defendant Frontier Airlines, Inc.
c/o Littler Mendelson, P.C.
Defendant is expected to testify in person regarding the nature and scope of all defenses at issue in this case, as well as the underlying facts regarding same.

7.      Adrienne Prince
Plaintiff believes Ms. Prince may be contacted at: amlmprince@me.com. Ms. Prince is expected to testify in person regarding the nature and scope of accommodations requested by Ms. Brigham during the relevant time period.

8.      Gerardo Arellano
c/o Littler Mendelson, P.C.
Mr. Arellano is expected to testify in person regarding the nature and scope of Defendant's defenses and responses to Ms. Brigham's various requests for reasonable accommodation. Mr. Arellano is also

expected to testify on the reasons for Ms. Brigham's termination.

9.    Stephanie Coppedge
c/o Littler Mendelson, P.C.
Ms. Coppedge is expected to testify in person regarding her knowledge of Ms. Brigham's disability and various requests for accommodation. Ms. Coppedge is also expected to testify as to the reasons for Ms. Brigham's termination.

10.   Shelley Leyner
c/o Littler Mendelson, P.C.
Ms. Leyner is expected to testify in person regarding her knowledge of Ms. Brigham's disability, her various requests for accommodation, and Defendant's reasons for Ms. Brigham's termination.

11.   Plaintiff reserves the right to amend this list as allowed under the Federal Rules and this Court's orders, including without limitation any records custodians that may be necessary for admission of exhibits.

b.    Defendant:

1.    **Plaintiff,** c/o The Law Office of John R. Crone, LLC. Plaintiff is expected to testify in person and via excerpts from her deposition regarding the scope of her claims, the allegations set forth in her Complaint, and the damages she is seeking.

2.    **Gerardo ("Jerry") Arellano**, Sr. Employee/Labor Relations Manager/Special Projects, Frontier, c/o Littler Mendelson, P.C. Mr. Arellano is expected to testify in person regarding Frontier's flight attendant position, including the bidding process, minimum hours, and other requirements set forth in the collective bargaining agreement (CBA) between Frontier and the flight attendants' union of which Plaintiff was a member. Mr. Arellano will also testify regarding Frontier's policies concerning disabilities, on-the-job injuries, and attendance as well as its employee assistance program. In addition, Mr. Arellano is expected to testify regarding Plaintiff's attendance record, including FMLA and other leave taken, Frontier's good faith efforts to engage in the interactive process to accommodate Plaintiff's alcoholism, the termination of Plaintiff's employment, and Frontier's response to Plaintiff's grievance.

The purpose of Mr. Arellano's testimony is to demonstrate that layovers are an essential function of the Frontier flight attendant

position and therefore, that Plaintiff's request to be excused from layovers was a request to be excused from an essential function of her job. In addition, Mr. Arellano's testimony is intended to demonstrate that allowing Plaintiff to build her own schedule or excusing her from the bidding process would have violated the CBA or infringed upon the rights of other flight attendants with more seniority than Plaintiff. Further, Mr. Arellano's testimony is intended to demonstrate that Frontier offered Plaintiff alternative reasonable accommodations, including additional leave, which Plaintiff refused and went above and beyond to accommodate Plaintiff's alcoholism by allowing her to exceed her intermittent FMLA Leave without penalizing her and to use it for a purpose unsupported by the FMLA certifications prepared by her therapist. Finally, Mr. Arellano's testimony will demonstrate that Frontier terminated Plaintiff for a legitimate, non-retaliatory, and non-discriminatory reason—her violation of its attendance policy and related protocols.

(2)     Witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A)); and

a.     Plaintiff:

1.     At this time, Plaintiff identifies no "may call" witnesses, but reserves the right to amend this list as allowed under the Federal Rules and this Court's orders.

b.     Defendant:

1.     **Adrienne Prince,** Flight Attendant, Frontier, c/o Joshua Corder Souk, Esq., Associate of Flight Attendants-CWA, 501 3rd Street, NW, Floor 10, Washington, DC 20001, 202.434.0579. Ms. Prince is expected to testify in person regarding Frontier's good faith efforts to engage in the interactive process to accommodate Plaintiff's alcoholism, the union's involvement in the interactive process to accommodate Plaintiff's alcoholism, whether certain accommodations would have violated the CBA between Frontier and Frontier flight attendants' union, and Plaintiff's grievance.

The purpose of Ms. Prince's testimony is to demonstrate that certain accommodations requested by Plaintiff would have violated the CBA and/or infringed upon the rights of other Frontier flight attendants with greater seniority than Plaintiff, that the flight attendants' union never proposed or intended that Frontier offer Plaintiff any accommodation that would violate the CBA, excuse Plaintiff from certain

11

requirements set forth in the CBA, or infringe upon the rights of other Frontier flight attendants with greater seniority than Plaintiff. In addition, Ms. Prince's testimony is intended to demonstrate that Plaintiff had violated Frontier's attendance policy and related protocols.

(3)   Witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

a.   Plaintiff:

1.   At this time, Plaintiff identifies no testimony to be presented by means of deposition, but reserves the right to amend this list as allowed under the Federal Rules and this Court's orders.

b.   Defendant:

1.   At this time, Frontier does not identify any witnesses where testimony is expected to be presented entirely by means of a deposition. Frontier anticipates that it will present certain excerpted testimony from Plaintiff's video-taped deposition. Frontier reserves the right to identify any such further witnesses or testimony at a later date as permitted by the Federal Rules of Civil Procedure and this Court.

b.   List the expert witnesses to be called by each party.  List separately:

(1)   Witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

a.  Plaintiff:

1.   Matthew S. Kaiser, B.A., J.D.
Mr. Kaiser may be contacted at Pacey Economics, Inc. at: 303-530-5333. Mr. Kaiser is expected to testify in person as an expert on the topic of Ms. Brigham's past and future economic damages.

b.  Defendant:

1.   Glenn W. Perdue, MBA, CVA, MAFF, CLP, 555 Great Circle Road, Nashville, TN 37228, 615.242.7351. Mr. Perdue is expected to testify in person for purposes of providing expert testimony to rebut Mr. Kaiser's opinions concerning Plaintiff's alleged economic damages.

1519

(2)     Witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A)); and

a.  Plaintiff:

None

b.  Defendant:

None

(3)     Witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

a.  Plaintiff:

None

b.  Defendant:

None

## 7.  EXHIBITS

(1)     Plaintiff(s):

1.     Memorandum dated November 17, 2008 Regarding Four Sick Instances Reminder, FRONTIER AIRLINES (R. BRIGHAM) – 0001117,
[NOT STIPULATED]

2.     Frontier Airlines Job Description for Flight Attendant, FRONTIER AIRLINES (R. BRIGHAM) – 0000093,
[STIPULATED]

3.     Comanche Crossing Counseling, LLC Diagnostic Intake Summary and Treatment Plant, BrighamR_PlaintiffRecords1029,
[NOT STIPULATED]

4.     Treatment Plan, BrighamR_PlaintiffRecords0188,
[NOT STIPULATED]

13

5.      Letter to Ms. Brigham Regarding Completion of Substance Abuse
        Program, FRONTIER AIRLINES (R. BRIGHAM) – 0000577,
        [STIPULATED]

6.      Collective Bargaining Agreement, FRONTIER AIRLINES (R.
        BRIGHAM) – 0000815,
        [STIPULATED]

7.      Tabs 2012-16, FRONTIER AIRLINES (R. BRIGHAM) – 0004442,
        [NOT STIPULATED]

8.      EEOC Determination, BrighamR_PlaintiffRecords0022,
        [NOT STIPULATED]

9.      Expert Report of Matthew S. Kaiser, B.A., J.D.,
        BrighamR_PlaintiffRecords0708,
        [NOT STIPULATED]

10.     Frontier's Voluntary Self-Disclosure Process,
        BrighamR_PlaintiffRecords0134,
        [NOT STIPULATED]

11.     InFlight Dependability Performance Counseling Record,
        BrighamR_PlaintiffRecords0138,
        [NOT STIPULATED]

12.     Memorandum to Plaintiff Regarding Dependability Record,
        BrighamR_PlaintiffRecords0139,
        [NOT STIPULATED]

13.     Memorandum to Plaintiff Regarding Four Instances Sick Reminder,
        BrighamR_PlaintiffRecords0140,
        [NOT STIPULATED]

14.     Memorandum to Plaintiff Regarding Four Instances Sick Reminder,
        BrighamR_PlaintiffRecords0141,
        [NOT STIPULATED]

15.     InFlight Performance Counseling Record,
        BrighamR_PlaintiffRecords0142,
        [NOT STIPULATED]

16.     Memorandum to Plaintiff Regarding Sick Instances,

14

1521

BrighamR_PlaintiffRecords0143,
[NOT STIPULATED]

17.     Memorandum to Plaintiff Regarding Sick Instances,
        BrighamR_PlaintiffRecords0144,
        [NOT STIPULATED]

18.     InFlight Performance Counseling Record,
        BrighamR_PlaintiffRecords0145,
        [NOT STIPULATED]

19.     Attendance Warning, BrighamR_PlaintiffRecords0146,
        [NOT STIPULATED]

20.     Attendance Warning, BrighamR_PlaintiffRecords0147,
        [NOT STIPULATED]

21.     Attendance Warning, BrighamR_PlaintiffRecords0148,
        [NOT STIPULATED]

22.     Attendance Warning, BrighamR_PlaintiffRecords0149,
        [NOT STIPULATED]

23.     Attendance Warning, BrighamR_PlaintiffRecords0150,
        [NOT STIPULATED]

24.     InFlight Performance Counseling Record,
        BrighamR_PlaintiffRecords0151,
        [NOT STIPULATED]

25.     Attendance Warning, BrighamR_PlaintiffRecords0152,
        [NOT STIPULATED]

26.     Attendance Warning, BrighamR_PlaintiffRecords0153,
        [NOT STIPULATED]

27.     Attendance Warning, BrighamR_PlaintiffRecords0154,
        [NOT STIPULATED]

28.     Attendance Warning, BrighamR_PlaintiffRecords0155,
        [NOT STIPULATED]

29.     Attendance Warning, BrighamR_PlaintiffRecords0156,
        [NOT STIPULATED]

30.   FMLA Certification, BrighamR_PlaintiffRecords0157,
[STIPULATED]

31.   FMLA Certification, BrighamR_PlaintiffRecords0162,
[STIPULATED]

32.   FMLA Certification, BrighamR_PlaintiffRecords0166,
[STIPULATED]

33.   Reasonable Accommodation Request,
BrighamR_PlaintiffRecords0170,
[STIPULATED]

34.   Email Thread between Arellano and Coppedge,
BrighamR_PlaintiffRecords0173,
[STIPULATED]

35.   Email Thread between Plaintiff and LOA,
BrighamR_PlaintiffRecords0174,
[STIPULATED]

36.   Letter to Plaintiff Regarding Investigatory Meeting,
BrighamR_PlaintiffRecords0175,
[STIPULATED]

37.   Termination Letter, BrighamR_PlaintiffRecords0176,
[STIPULATED]

38.   Letter Regarding Denial of Grievance,
BrighamR_PlaintiffRecords0177,
[STIPULATED]

39.   Posts to AFA Frontier Regarding Dependability Policy,
BrighamR_PlaintiffRecords0207,
[NOT STIPULATED]

40.   FMLA Certification, BrighamR_PlaintiffRecords0270,
[STIPULATED]

41.   Email Thread between Plaintiff and LOA,
BrighamR_PlaintiffRecords0274,
[NOT STIPULATED]

42.     Email Thread between Plaintiff and Cassandra Micklich,
        BrighamR_PlaintiffRecords0285,
        [STIPULATED]

43.     Email Thread between Plaintiff and LOA,
        BrighamR_PlaintiffRecords0287,
        [STIPULATED]

44.     Email Thread between Plaintiff and LOA,
        BrighamR_PlaintiffRecords0288,
        [STIPULATED]

45.     Email Thread between Plaintiff and LOA,
        BrighamR_PlaintiffRecords0290,
        [STIPULATED]

46.     Email Thread between Plaintiff and LOA,
        BrighamR_PlaintiffRecords0294,
        [STIPULATED]

47.     Email Thread between Plaintiff and LOA,
        BrighamR_PlaintiffRecords0296,
        [NOT STIPULATED]

48.     Email Thread between Plaintiff and LOA,
        BrighamR_PlaintiffRecords0298,
        [NOT STIPULATED]

49.     Email Thread between Plaintiff and Union Representative,
        BrighamR_PlaintiffRecords0299,
        [NOT STIPULATED]

50.     Frontier Employee Handbook, BrighamR_PlaintiffRecords0302,
        [NOT STIPULATED]

51.     FMLA Certification, BrighamR_PlaintiffRecords0306,
        [STIPULATED]

52.     W-2 Earnings Summaries, BrighamR_PlaintiffRecords0646,
        [STIPULATED]

53.     Flight Attendant Performance Tracker,
        BrighamR_PlaintiffRecords0656,
        [STIPULATED]

54.    Compliment Letters, BrighamR_PlaintiffRecords0700,
        [NOT STIPULATED]

55.    Ceridian Reports, BrighamR_PlaintiffRecords0704,
        [STIPULATED]

56.    Facebook Post and Comment, BrighamR_PlaintiffRecords0767,
        [NOT STIPULATED]

57.    Text Messages with Stephanie Coppedge,
        BrighamR_PlaintiffRecords0775,
        [NOT STIPULATED]

58.    Email Thread between Arellano and Micklich, FRONTIER
        AIRLINES (R. BRIGHAM) – 0000134,
        [STIPULATED]

59.    Email Thread between Arellano and Thomson, FRONTIER
        AIRLINES (R. BRIGHAM) – 0000132,
        [STIPULATED]

60.    Email Thread between Arellano and Leyner, FRONTIER AIRLINES
        (R. BRIGHAM) – 0000131,
        [STIPULATED]

61.    Investigation Notes/Tracking Form, FRONTIER AIRLINES (R.
        BRIGHAM) – 0000130,
        [NOT STIPULATED]

62.    Email Thread between Arellano, Rush, and Coppedge, FRONTIER
        AIRLINES (R. BRIGHAM) – 0000138,
        [STIPULATED]

63.    Email Thread between Arellano and Leyner, FRONTIER AIRLINES
        (R. BRIGHAM) – 0000147,
        [STIPULATED]

64.    Email Thread between Arellano and Leyner, FRONTIER AIRLINES
        (R. BRIGHAM) – 0000155,
        [STIPULATED]

65.    Email Thread between Arellano and Coppedge, FRONTIER
        AIRLINES (R. BRIGHAM) – 0000191,
        [STIPULATED]

66.    Email Thread between Micklich and Arellano, FRONTIER
    AIRLINES (R. BRIGHAM) – 0000168,
    [STIPULATED]

67.    Email Thread between Thomson, Coppedge, Arellano, and Rush,
    FRONTIER AIRLINES (R. BRIGHAM) – 0000178,
    [STIPULATED]

68.    Email Thread between Arellano and Leyner, FRONTIER AIRLINES
    (R. BRIGHAM) – 0000157,
    [STIPULATED]

69.    Email Thread between Arellano and Coppedge, FRONTIER
    AIRLINES (R. BRIGHAM) – 0000158,
    [STIPULATED]

70.    Email Thread between Leyner and Arellano, FRONTIER AIRLINES
    (R. BRIGHAM) – 0000161,
    [STIPULATED]

71.    Union Submission to BOA, FRONTIER AIRLINES (R. BRIGHAM) –
    0000209,
    [NOT STIPULATED]

72.    Defendant's Objections and Responses to Plaintiff's First Set of
    Written Discovery,
    [NOT STIPULATED]

73.    Defendant's Objections and Responses to Plaintiff's Second Set of
    Written Discovery,
    [NOT STIPULATED]

74.    Defendant's Objections and Responses to Plaintiff's Third Set of
    Written Discovery,
    [NOT STIPULATED]

75.    EAP Program, FRONTIER AIRLINES (R. BRIGHAM) – 0000429,
    [STIPULATED]

76.    SACM Authorization, FRONTIER AIRLINES (R. BRIGHAM) –
    0000495,
    [STIPULATED]

77.   Email Thread between Leyner, Arellano, and Aragon, FRONTIER
       AIRLINES (R. BRIGHAM) – 0000498,
       [NOT STIPULATED]

78.   Ceridian Release, FRONTIER AIRLINES (R. BRIGHAM) –
       0000507,
       [STIPULATED]

79.   Letter from Arellano to Plaintiff Regarding Self-Disclosure
       Obligations, FRONTIER AIRLINES (R. BRIGHAM) – 0000524,
       [STIPULATED]

80.   Letter to Plaintiff Regarding Completion of SAP, FRONTIER
       AIRLINES (R. BRIGHAM) – 0000577,
       [STIPULATED]

81.   SAP Assessment Report, FRONTIER AIRLINES (R. BRIGHAM) –
       0000578,
       [STIPULATED]

82.   Ceridian Compliance Report, FRONTIER AIRLINES (R. BRIGHAM)
       – 0000590,
       [STIPULATED]

83.   Ceridian Compliance Report, FRONTIER AIRLINES (R. BRIGHAM)
       – 0000591,
       [STIPULATED]

84.   Ceridian Compliance Report, FRONTIER AIRLINES (R. BRIGHAM)
       – 0000593,
       [STIPULATED]

85.   Email Thread between Arellano, Peter, and Zeier, FRONTIER
       AIRLINES (R. BRIGHAM) – 0000598,
       [STIPULATED]

86.   Dependability Program, FRONTIER AIRLINES (R. BRIGHAM) –
       0004471,
       [NOT STIPULATED]

87.   Email Thread between Arellano, Rush, Leyner, Thompson,
       Coppedge, and Warfield, FRONTIER AIRLINES (R. BRIGHAM) –
       0004892,
       [STIPULATED]

1527

88.   Email Thread between Arellano and Leyner, FRONTIER AIRLINES
      (R. BRIGHAM) – 0004893,
      [STIPULATED]

89.   Email Thread between Arellano and Coppedge, FRONTIER
      AIRLINES (R. BRIGHAM) – 0004896,
      [STIPULATED]

90.   Employee Handbook, FRONTIER AIRLINES (R. BRIGHAM) –
      0000246,
      [STIPULATED]

91.   Reasonable Accommodations Requested and Denied, FRONTIER
      AIRLINES (R. BRIGHAM) – 0004809,
      [STIPULATED]

92.   Email Thread between Plaintiff and LOA, FRONTIER AIRLINES (R.
      BRIGHAM) – 0001336,
      [STIPULATED]

93.   Email Thread between Arellano and Leyner, FRONTIER AIRLINES
      (R. BRIGHAM) – 0004902,
      [NOT STIPULATED]

94.   Contents of All Notes from this Case in WCCMS, FRONTIER
      AIRLINES (R. BRIGHAM) – 0004819,
      [NOT STIPULATED]

95.   Plaintiff reserves the right to amend this list as allowed under the
      Federal Rules and this Court's orders.

(2)   Defendant(s):

| Bates Range | Description |
| --- | --- |
| Frontier Airlines (R. Brigham) - 0001394-1395 | FMLA Designation Notice Dated September 16, 2014 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001624-1630 | Fitness for Duty Certification Dated November 8, 2014 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0004175-4179 | Certification of Healthcare Provider Dated June 2, 2015 [STIPULATED] |

| | |
|---|---|
| Frontier Airlines (R. Brigham) - 0000095 | 10/27/15 E-mail from Leyner to Inflight DIA MGR, cc  Arellano [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0000134-135 | E-mail from Arellano to Micklich Dated 7/15/15 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0000149-150 | 10/6/15 E-mail from Arellano, Thompson, and Warfield [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001399 | 9/5/14 Email from JaJuan Williams to Leyner, cc Aragon [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001863-1864 | Frontier Airlines Job Description [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0004200-4201 | Email from Arellano to Leyner Dated 9/28/15 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0004205-4207 | Email chain, top e-mail from Arellano to Leyner, 9/21/14 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0000063-65 | 10/4/12 Letter To Whom It May Concern from Dr. Volin; 5/30/13 Letter To Whom It May Concern from Dr. McCrann; 12/22/13 Note from Presbyterian/St. Luke's [STIPULATED] |
| Brigham LM 0000001-17 | Transcription of Meeting Dated June 4, 2015 [STIPULATED] |
| Brigham LM 0000018-38 | Transcription of Meeting Dated October 9, 2015 [STIPULATED] |
| Brigham LM 0000039-46 | Transcription of Meeting Dated November 3, 2015 [STIPULATED] |
| BrighamR_PlaintiffRecords0647 | 2016 W-2 from Great West Painting and Repair [STIPULATED] |
| BrighamR_PlaintiffRecords0648 | 2016 W-2 from EmployerBridge Southwest [STIPULATED] |
| BrighamR_PlaintiffRecords0649 | 2017 W-2 from Great West Painting and Repair [STIPULATED] |
| BrighamR_PlaintiffRecords0650 | 2018 W-2 from Great West Painting and Repair [STIPULATED] |
| BrighamR_PlaintiffRecords0651 | 2015 1099-G from Colorado Department of Labor and Employment [STIPULATED] |

1529

| | |
|---|---|
| Frontier Airlines (R. Brigham) - 0001115-1133 | Personnel Docs – Undated [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001138-1142 | Certification of Healthcare Provider for Employee's Serious Health Condition (Family and Medical Leave Act) Dated September 11, 2014 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001427-1433 | Fax Cover Sheet Dated November 8, 2014, from Mr. Riemann re: Rebecca Brigham Release [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001449-1469 | Email from 'LOA Frontier Employees' to R. Brigham Dated January 22, 2014 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0000238 | Termination Letter Dated November 11, 2015 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0000815-958 | Collective Bargaining Agreement Dated 2011-2016 [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0004475 | Grievance Withdrawal Letter Dated November 18, 2016 [STIPULATED] |
| BrighamR_PlaintiffRecords1113 | Email thread between Plaintiff and Kim Mayne-Sasser re layovers dated 08/23/15 [STIPULATED] |
| BrighamR_PlaintiffRecords0703 | Document Entitled "Untitled" (Requesting Accommodation) - Undated [STIPULATED] |
| BrighamR_PlaintiffRecords0294 | Email Thread between Plaintiff and LOA [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001549 | Email dated 9/8/14 from LOA to Brigham, et al. re Leave Paperwork [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001514 | Materials faxed 9/12/14 from Discovery House [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0001581 | Email dated 9/16/14 from Leyner to Brigham re FMLA paperwork [STIPULATED] |

23

1530

| | |
|---|---|
| BrighamR_PlaintiffRecords0678 | Treatment Plan (fully executed version) [STIPULATED] |
| Frontier Airlines (R. Brigham) 0004475 | LOA File [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0004471 | Dependability Program Memo [STIPULATED] |
| Frontier Airlines (R. Brigham) - 0004804 | Plaintiff's Record [STIPULATED] |

   (3)    Other parties:

      None.

    b.    Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8.  DISCOVERY

    Discovery has been completed. Unless otherwise ordered, upon a showing of good cause in an appropriate motion, there will be no discovery after entry of the final pretrial order.

## 9.  SPECIAL ISSUES

    The parties are currently conferring regarding Plaintiff's inclusion of certain witnesses in this Final Pretrial Order who were not previously disclosed in Plaintiff's Rule 26(a) disclosure pleadings.  If the parties are unable to come to an agreement, Frontier will seek leave to file a motion to strike or exclude those witnesses.

## 10.  SETTLEMENT

    a.    Counsel for the parties met by videoconference on November 3, 2020*, t*o discuss in good faith the settlement of the case. This meeting was facilitated by a professional mediator.

    b.    The participants in the settlement conference, included counsel, party representatives, and a mediator hired by the parties.

    c.    The parties were promptly informed of all offers of settlement.

d.      Counsel for the parties do not intend to hold future settlement conferences.

e.      It appears from the discussion by all counsel that there is little possibility of settlement.

f.      Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 11.  OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1.      This case will be tried to a jury.

2.      The parties estimate the trial will require five (5) days.

3.      The trial shall take place in Denver, Colorado at the Alfred A. Arraj United States Courthouse.

DATED this __3rd__ day of ___February_____, 2021.

BY THE COURT

_____

Scott T. Varholak
United States Magistrate Judge

25

1532

APPROVED:

/s/ John R. Crone
John R. Crone
The Law Office of John R. Crone, LLC
4550 E Cherry Creek Drive South, 1003
Glendale, CO 80246
(303) 598-3526
john@crone-law.com

*Attorney for Plaintiff*

/s/ Danielle L. Kitson
Danielle L. Kitson
Carolyn B. Theis
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
(303) 629-6200
dkitson@littler.com
catheis@littler.com

*Attorneys for Defendant*

26

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Message-Id:7969857@cod.uscourts.gov
Subject:Activity in Case 1:19-cv-03417-WJM-STV Brigham v. Frontier Airlines, Inc. Order
```
Content–Type: text/html

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 2/10/2021 at 10:50 AM MST and filed on 2/10/2021

| | |
|---|---|
| **Case Name:** | Brigham v. Frontier Airlines, Inc. |
| **Case Number:** | 1:19–cv–03417–WJM–STV |
| **Filer:** | |
| **Document Number:** | 52(No document attached) |

**Docket Text:**
 **ORDER: A 5–Day Jury Trial is hereby set to begin on December 6, 2021 at 8:30 a.m. in Courtroom A801. The Final Trial Preparation Conference is set for November 19, 2021 at 2:15 p.m. in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards to ensure compliance with all deadlines triggered by the dates of the Final Trial Preparation Conference and Trial. In so doing, the parties are bly encouraged to take advantage of the "Trial Preparation Conference & Pretrial Checklist" available here. SO ORDERED by Judge William J. Martinez on 2/10/2021. Text Only Entry (wjmsec, )**


**1:19–cv–03417–WJM–STV Notice has been electronically mailed to:**

Danielle L. Kitson     dkitson@littler.com, aaguilar@littler.com, cgarcia@littler.com, kelsen@littler.com, mmathews@littler.com

John Reily Crone     john@crone–law.com

Carolyn Bailey Theis     CaTheis@littler.com, CGarcia@littler.com, jlfox@littler.com

Evan Scott Grimes (Terminated)     evan@crone–law.com, evangrimes@gmail.com

**1:19–cv–03417–WJM–STV Notice has been mailed by the filer to:**

1534

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-3417-WJM-STV

REBECCA BRIGHAM,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Before the Court are Defendant Frontier Airlines, Inc.'s ("Frontier") Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 38) and Plaintiff Rebecca Brigham's ("Brigham") Motion for Partial Summary Judgment ("Motion for Partial Summary Judgment") (ECF No. 36). For the following reasons, the Motion for Summary Judgment is granted, and the Motion for Partial Summary Judgment is denied.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An

issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325)). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## II. BACKGROUND AND PROCEDURAL HISTORY[1]

Brigham began her employment as a flight attendant with Frontier in 2007. On September 7, 2014, Brigham disclosed to Frontier that she had entered an inpatient

---

[1] The following factual summary is based on the parties' briefs on the Motion for Summary Judgment, the Motion for Partial Summary Judgment, and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

rehabilitation program for alcoholism.  Frontier granted Brigham continuous Family and

Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, leave to complete the 60 day

inpatient program in October 2014.  In November 2014, Brigham's healthcare provider

completed a Frontier Airlines Fitness for Duty Certification, in which he stated she had

no restrictions whatsoever and is able to work a full, regular schedule beginning on

November 17, 2014.  (ECF No. 38-8.)  Brigham has been sober since September 5,

2014.

During Brigham's employment with Frontier, flight schedules for active flight

attendants were determined by a bidding process based upon seniority as set forth in

the flight attendants' collective bargaining agreement with Frontier (the "CBA"), which

required all active Frontier flight attendants to bid for the flights posted and accumulate

a minimum of 60 credit hours.  (ECF No. 38 at 4 ¶ 2; ECF No. 38-1 ¶ 35; ECF No. 36-3

at 21; ECF No. 38-5.)  After the bidding process closed, awards were determined by

seniority such that if multiple flight attendants bid for the same trip, the flight attendant

with the greatest seniority was awarded the trip.  (ECF No. 38 at 4 ¶ 3; ECF No. 38-1 ¶

36.)  After awards were determined, flight attendants had the ability to add, drop, and/or

swap their scheduled flights on a first-come first-served basis using flights available in

"Open Time," but they were prohibited from dropping below 45 credit hours.  (ECF No.

38 at 4 ¶ 4; ECF No. 38-1 ¶ 37.)

Pursuant to the CBA, flight attendants were considered inactive, and therefore,

ineligible to bid if they have been granted Frontier-approved continuous leaves such as

Leave of Absence ("LOA"), Medical Leave ("MED"), FMLA Leave, or On the Job Injury

("OJI") Leave.  (ECF No. 38 at 4–5 ¶ 5; ECF No. 38-1 ¶ 37; ECF No. 38-5 at 43–44.)  If

a flight attendant returning from a Frontier-approved leave missed the above-described

bid period, the flight attendant was permitted, for the remainder of that month, to pick up

Open Time to build a schedule and/or be assigned Reserve days.  (ECF No. 38 at 5 ¶

6; ECF No. 38-1; ECF No. 38-5 at 54.)  Flight attendants returning from continuous

leaves of absence, and were therefore inactive during the bidding period, were the only

Frontier flight attendants who were excused from the bidding process and permitted for

the remainder of that month to pick up Open Time to build a schedule.  (ECF No. 38 at

5 ¶ 7; ECF No. 38-1; ECF No. 38-5 at 54.)  A flight attendant on Intermittent FMLA

("IFMLA") leave still had to bid.  (ECF No. 38-22 at 3.)

In addition, during the time period relevant to this litigation, Frontier's attendance

policy, the "Dependability Policy," applied.  (ECF No. 38-4 at 51–55.)  The Dependability

Policy defines Occurrences in various ways, for example, "Absenteeism/Sick Call = 1

Occurrence," and "No Call/No Show = 2 Occurrences," and states that employees

incurring eight "Occurrences" within a twelve-month period would be subject to

termination.  (*Id.*)

After returning to Frontier from her rehabilitation program, Brigham began calling

out as sick, incurring Occurrences under the Dependability Policy.  (ECF No. 38 at 8 ¶

24; ECF No. 38-1 ¶ 24; ECF No. 38-6.)  However, according to Brigham, she "was

complying with the terms of her treatment plan, as required by Frontier, while Frontier

was simultaneously failing to accommodate [her]."  (ECF No. 44 at 10 ¶ 24.)  A few days

after receiving a written warning from Frontier, Brigham obtained paperwork from her

medical care provider for purposes of certifying her for IFMLA leave for four days per

month.  Brigham, however, continued to call out as sick when she exceeded the number

of authorized IFMLA leave days per month and failed to abide by the two hours minimum notice requirement.  (ECF No. 38 at 8–9 ¶ 26; ECF No. 38-1 ¶ 27.)

On June 4, 2015, Brigham met with Cassie Micklich, Drug & Alcohol Specialist at Frontier, and Gerardo Arellano, Senior Employee/Labor Relations Manager/Special Projects at Frontier, to discuss her continued exhaustion of IFMLA leave.  At that meeting, Brigham made certain requests for accommodations.  Brigham asked if Frontier could adjust her flight schedule so that she could avoid flights with layovers, including overnight layovers, which she said tempted her to drink and thus, jeopardized her sobriety.  (ECF No. 38 at 9 ¶ 28.)

Arellano indicated that Frontier wanted to support Brigham but could not adjust her schedule to avoid flights with layovers or allow her to create her own schedule because doing so would violate the CBA.  (ECF No. 38 at 9 ¶ 29; ECF No. 38-1 ¶ 33.) Brigham disputes that Arellano mentioned her request might violate the CBA.  (ECF No. 44 at 12 ¶ 29.)  Arellano states in his declaration that flight attendants' schedules were and remain determined by seniority-based bidding under the CBA, and Frontier does not and did not customize trip schedules for flight attendants.  (ECF No. 38-1 ¶ 34.) Further, Arellano states that Frontier has never excused an active flight attendant from the seniority-based bidding rules set forth in the CBA to allow that flight attendant to create her own schedule out of Open Time to avoid certain types of flights.  (ECF No. 38-1 ¶ 38.)

In addition, according to Arellano, it was Frontier's understanding that allowing Brigham to build her own schedule from Open Time would necessarily penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional

flight opportunities from other flight attendants looking to modify their schedules.  (ECF No. 38-1 ¶ 39.)  Adrienne Prince,[2] a union representative, testified at her deposition that the union would not allow Brigham to build her schedule from scratch on Open Time or simply remove Brigham from overnight trips because doing so would violate the CBA. (ECF No. 48 at 6–7 ¶ 30; ECF No. 44-2 at 5, 17.)

Arellano suggested that Brigham could apply for other accommodations—though Brigham disputes the characterization of the suggestions as "accommodations"— including personal leave or non-FMLA leave, or explore other positions with Frontier. (ECF No. 38-1 ¶ 40; ECF No. 44 at 13 ¶ 32.)  However, Brigham did not want to transfer internally because she preferred being a flight attendant and did not want to relocate and/or give up her seniority rights in exchange for a new position.  (ECF No. 38-1 ¶ 41.)

Also at the June 4, 2015 meeting, Brigham asked whether she could temporarily work at the General Office ("GO") doing administrative work without losing her seniority, like Frontier employees on OJI program were permitted to do.  (ECF No. 38 at 10 ¶ 37; ECF No. 38-1 ¶ 42.)  In his declaration, Arellano explains that the CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to provide flight attendants injured on the job—but only flight attendants injured on the job—with temporary light duty assignments in the GO.  (ECF No. 38 at 10 ¶ 37; ECF No. 38-1 ¶ 43.)  He clarifies that these assignments were not open job positions; rather, when a flight attendant injured on the job was temporarily unable to work, she would be permitted to help others in the GO with their own light-duty responsibilities.  (ECF No.

---

[2] From late 2014–2015, Prince was Vice President of the Association of Flight Attendants-CWA, AFL-CIO.  (ECF No. 44-1 at 1.)  In that capacity, Prince requested accommodations from Frontier on behalf of Brigham.  (*Id.*)

38 at 10 ¶ 37; ECF No. 38-1 ¶ 43.) Arellano states that consistent with the CBA, work at the GO was only provided as an accommodation to flight attendants in Frontier's OJI program, which he explained to Brigham. (ECF No. 38 at 11 ¶ 38; ECF No. 38-1 ¶ 44; ECF 38-23.)

Shortly after the June 4, 2015 meeting, Brigham submitted a revised IFMLA Certification Form, increasing the number of authorized IFMLA leave from four days per month to 12. (ECF No. 38 at 11 ¶ 40.) According to Frontier, however, Brigham continued to exhaust her IFMLA leave and incurred Occurrences for calling out "sick." (ECF No. 38 at 11 ¶ 41.) Brigham disputes the causes of the Occurrences, stating that her absences were directly related to the fact that Frontier required her to comply with her treatment plan but refused to reasonably accommodate her to make compliance possible. (ECF No. 44 at 17 ¶ 41.)

On October 9, 2015, Brigham met with Jeff Varney and Kari Thompson, both Managers with Inflight Services, and Arellano. (ECF No. 38 at 11 ¶ 42.) Brigham reiterated how she loved being a flight attendant, particularly because of the job's flexibility and asked whether as an accommodation, she could start with a blank schedule and be responsible for building her own schedule up to 60 hours. (ECF No. 38 at 11 ¶ 43; ECF No. 38-1 ¶ 52.) Arellano explained that this practice was reserved for flight attendants returning from continuous leaves of absence who had not been active flight attendants during the bidding period the month they returned from leave and therefore, could not have bid; thus, allowing Brigham to craft her own schedule would violate the CBA's seniority provisions, creating the impression that Frontier was "cherry-picking" flight attendants to have the benefit of building their own schedules

without regard to seniority.  (ECF No. 38 at 11–12 ¶ 44; ECF No. 38-1 ¶ 53.)  Brigham admits that Arellano said as much but states he was mistaken in his assertions.  (ECF No. 44 at 17–18 ¶ 44.)

According to Arellano, Frontier had already been allowing Plaintiff to use IFMLA for purposes other than those included in her certifications (*i.e.*, relapse prevention counseling and support group meetings) by allowing her to use IFMLA leave to avoid flights with overnight layovers.  (ECF No. 38 at 12 ¶ 46; ECF No. 38-1 ¶ 46.)  However, Brigham denies Arellano's characterization of her use of IFMLA leave, stating that based on the designations of use of leave for "intermittent incapacitation" and "treatment appointments," Frontier actually approved her for anywhere between eight and 16 days of leave per month.  (ECF No. 44 at 18 ¶ 46; ECF No. 38-1 ¶¶ 55–56.)  Arellano emphasized to Brigham that ultimately, Frontier needed "employees who can come to work," but reminded her that she could apply for a personal leave as a further accommodation, additional IFMLA leave, and/or for another internal position within the company.  (ECF No. 38 at 12 ¶ 47; ECF No. 38-1 ¶ 57.)  Arellano notified Brigham that a Flight Training Coordinator position was becoming available, but Brigham repeated her concerns about losing her seniority.  (ECF No. 38 at 12 ¶ 48; ECF No. 38-1 ¶ 58.)  Brigham was encouraged to check for other internal opportunities on Frontier's internal system on a weekly basis.  (ECF No. 38 at 12 ¶ 49; ECF No. 38-1 ¶ 59.)

Less than 10 days after the October 9, 2015 meeting, Brigham failed to report for a four-day trip.  (ECF No. 38 at 13 ¶ 51.)  Brigham denies as much, stating that she "kept the PDX turn on the end" of this trip, *i.e.*, that she did not fail to report for the four-day trip.  (ECF No. 44 at 19 ¶ 51.)  However, Frontier submits Brigham's October 26,

2015 e-mail to Frontier regarding the incident, in which Brigham wrote to LOA Frontier

Employees:

> I woke up this morning in a panic, I forgot to send you an
> email on Friday, I had to use my intermittent Fmla on 10/23
> for a 4 day but I kept the pdx turn on the end.  Please let me
> know if this will have to be coded as sick and if so what # of
> points am I at?  Also the new fmla paperwork will be faxed
> by Tuesday. I hope you have a good day.

(ECF No. 38-17.)  As this e-mail demonstrates, Brigham failed to contact the LOA

Department for approval to use IFMLA Leave for the four-day trip until the day following

the first day of the trip in violation of Frontier policy—this was three days after the

October 23, 2015 trip was scheduled to commence.  (ECF No. 38 at 13 ¶ 52.)

According to Arellano, Brigham had exhausted her available IFMLA leave by October

19, 2015.  (ECF No. 38-1 ¶ 62; ECF No. 38-13.)  Frontier's LOA Department denied

Brigham's request to use IFMLA Leave for the four-day trip for her lack of timely notice,

though Brigham disputes that her notice was untimely.  (ECF No. 38 at 13 ¶ 53; ECF

No. 44 at 19 ¶ 53.)

On October 30, 2015, Frontier sent Brigham a letter indicating that pursuant to

the CBA, an Investigatory Meeting had been scheduled for November 3, 2015 for her to

attend to discuss her violations of the Dependability Policy.  (ECF No. 38 at 13 ¶ 54.)

On November 3, 2015, Brigham, Stephanie Coppedge, Supervisor of Inflight Services at

Frontier, Andrea Warfield, Senior Human Resource Manager at Frontier, and Prince

met to discuss Brigham's violations of the Dependability Policy.  (ECF No. 38 at 13 ¶

55.)  During that meeting Brigham admitted that she had forgotten to email Frontier's

LOA Department immediately regarding her decision to call out "sick" for the four-day

trip beginning October 23, 2015 as required by company policy.  (ECF No. 38 at 13 ¶

56.)  Brigham reiterated her request to avoid flights with layovers or to allow her to build

her own schedule out of Open Time.  (ECF No. 38 at 13 ¶¶ 57–59.)  Frontier again

explained that these requests would violate the CBA; Brigham disputes as much.  (ECF

No. 38 at 13 ¶¶  60–62; ECF No. 44 at 20 ¶ 60; ECF No. 48 at 6 ¶ 30.)

On November 11, 2015, Frontier informed Brigham that it was terminating her

employment effective immediately for incurring 10 Occurrences within a 12-month

period in violation of the Dependability Policy under which eight Occurrences subjected

an employee to termination.  (ECF No. 38 at 15 ¶ 64; ECF No. 38-20.)  Brigham does

not dispute that she was absent on more than eight occasions within the 12-month

period preceding her discharge, though she does dispute whether those absences

should have counted under the Dependability Policy because she "only accrued [them]

due to Frontier's failure to accommodate her disability."  (ECF No. 38 at 15 ¶ 65; ECF

No. 44 at 23 ¶ 65.)

On May 10, 2016, Brigham filed a Charge of Discrimination with the Colorado

Civil Rights Division, and her charge was transferred to the United States Equal

Employment Opportunity Commission ("EEOC").  (ECF No. 1 ¶ 15.)  On June 4, 2019,

the EEOC issued a determination in Brigham's favor.  (*Id.* ¶ 22.)  The parties were

nonetheless unable to resolve the dispute after the EEOC's determination.  (*Id.* ¶ 23.)

On December 4, 2019, Brigham filed her Complaint.  (ECF No. 1.)  She brings

four claims against Frontier, including: (1) failure to accommodate in violation of the

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the

"ADA"); (2) failure to engage in the interactive process in violation of the ADA; (3)

retaliation in violation of the ADA; and (4) discrimination in violation of the ADA.  (*Id.*)

On February 3, 2020, Frontier filed its Answer.  (ECF No. 12.)

On November 17, 2020, Brigham filed her Motion for Partial Summary Judgment, arguing that there are no disputed issues of material fact between the parties regarding: (1) whether she was a qualified individual with a disability under the ADA; or (2) whether Frontier violated the ADA when it denied her request to be temporarily reassigned as a reasonable accommodation.  (ECF No. 36 at 1.)  Frontier responded in opposition (ECF No. 45), and Brigham replied (ECF No. 47).

Also on November 17, 2020, Frontier filed its Motion for Summary Judgment, arguing that it is entitled to summary judgment on all claims.  (ECF No. 38 at 1.) Brigham responded in opposition (ECF No. 44), and Frontier replied (ECF No. 48).

### III. ANALYSIS[3]

#### A.    Failure to Engage in the Interactive Process (Count II)

In her Complaint, Brigham alleges that Frontier violated the ADA by failing to engage in the interactive process.  (ECF No. 1 ¶¶ 30–35.)  In connection with this claim, she alleges that the "ADA requires that employers . . . engage in a good faith interactive process with employees to determine the nature of possible reasonable accommodations . . . ."  (*Id.* ¶ 33.)  She further alleges that her "many requests for a reasonable accommodation were denied; [and that] Frontier refused to engage in the interactive process in good faith . . . ."  (*Id.* ¶ 34.)

Frontier is entitled to summary judgment on Brigham's putative claim for failure to engage in the interactive process as a matter of law.  The Tenth Circuit has held that

---

[3] The parties both moved for summary judgment on numerous claims, asserting numerous theories; however, the Court limits its analysis to those issues which are dispositive of all claims in this case and will not address the parties' remaining arguments.

the failure to engage in the interactive process is not independently actionable under the ADA.  *See Valdez v. McGill*, 462 F. App'x 814, 819 (10th Cir. 2012) (affirming the trial court's decision to grant the defendant's motion for summary judgment on the plaintiff's claim for failure to engage in the interactive accommodation process on the grounds that such failure "is not actionable discrimination" under the ADA); *Lucero v. Terumo BCT, Inc.*,  2015 WL 3619343, at *4 (D. Colo. June 10, 2015) ("an employer's failure to follow the interactive process is not an independent basis for liability under the ADA"). To the extent Brigham disputes as much by relying on *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020), Frontier correctly points out that *Aubrey* did not involve a separate claim for failure to engage in the interactive process, rendering Brigham's argument unavailing.  Accordingly, the Court will grant summary judgment in favor of Frontier on her putative claim for failure to engage in the interactive process.

## B.    Discrimination (Count IV) and Retaliation (Count III)[4]

The ADA prohibits discrimination "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Thus, to establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) she is disabled as defined under the ADA; (2) she is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) she was discriminated

---

[4] In her response, Brigham characterizes Frontier's arguments regarding her retaliation claim as follows: "Frontier's argument in this regard is limited solely to: 'Plaintiff has not and cannot show any causal connection between Plaintiff's requests for accommodation and the termination of her employment.' . . .  But Defendant's facts cited in support of this argument are incorrect and incomplete, and Plaintiff has produced adequate evidence showing causation. *See supra* p. 35-36 (detailing facts in support of causation and Plaintiff's request for intermittent leave)."  (ECF No. 44 at 40.)  Thus, Brigham does not make a separate argument in response to Frontier's arguments concerning her retaliation claim and refers to her prior arguments in connection with her discrimination claim.  Because Brigham herself states that the same arguments apply to her discrimination and retaliation claims, the Court addresses these claims together in this section.

against because of her disability.  *See Adair v. City of Muskogee*, 823 F.3d 1297, 1304

(10th Cir. 2016) (citing *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th

Cir. 2015)).

ADA discrimination claims generally follow the familiar burden-shifting framework

of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under that analysis, a plaintiff carries the burden of raising a
> genuine issue of material fact on each element of his prima
> facie case.  If plaintiff establishes a prima facie case, the
> burden shifts to the defendant to offer a legitimate
> nondiscriminatory reason for its employment decision.  If
> defendant articulates a nondiscriminatory reason, the burden
> shifts back to plaintiff to show a genuine issue of material
> fact as to whether the defendant's reason for the adverse
> employment action is pretextual.

*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (citations omitted).

In general, the ADA provides that "[n]o covered entity shall discriminate against a

qualified individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training,

and other terms, conditions, and privileges of employment."  *Punt v. Kelly Servs.*, 862

F.3d 1040, 1047–48 (10th Cir. 2017) (quoting 42 U.S.C. § 12112(a)).  "Because the

statute only prohibits discrimination 'on the basis of disability,' there must be a nexus

between the disability and the adverse employment action."  *Id.* at 1048.  The Tenth

Circuit has stated that "it is not enough that an adverse employment action is suffered

by an individual with a disability; rather, the disabled individual must show that the

adverse action was 'on the basis of' the disability."  *Id.*

In most types of ADA cases, this is done by proving the employer acted with

discriminatory intent.  *Id.*  Such discriminatory intent can be shown either through direct

evidence—that is, "evidence, which if believed, proves the existence of a fact in issue

without inference or presumption"—or through circumstantial evidence, which is evaluated under the *McDonnell Douglas* burden-shifting framework to determine whether a reasonable factfinder could infer that the employer's motivation was discriminatory and that any proffered nondiscriminatory business reason for the decision was merely pretextual. *Id.*

To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) she "engaged in a protected activity"; (2) she was "subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) there was "a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016).

Assuming *arguendo* that Brigham has met the first two elements of her prima facie burden for discrimination and retaliation, for the following reasons, the Court finds that she has failed to satisfy the third element of both claims, which requires her to demonstrate that Frontier terminated her employment on the basis of her disability (for discrimination) or that there is a causal connection between her requests for accommodations and her termination (for retaliation).

"[A] termination for misconduct is not converted into a termination because of a disability just because the instigating misconduct somehow relates to a disability." *Curry v. MillerCoors, Inc.*, 2013 WL 4494307, at *3 (D. Colo. Aug. 21, 2013). However, by arguing that her termination was because of her alcoholism and requests for accommodations in connection with that condition, and not because she exceeded the allowed number of Occurrences in a 12-month period under the Dependability Policy,

Brigham is attempting to do just that—convert her termination for the violating the Dependability Policy into termination because of her disability.

Here, Frontier has demonstrated that it terminated Brigham's employment because she violated the Dependability Policy.  Brigham failed to report for the four-day trip and admittedly failed to notify the LOA Department that she was choosing to use IFMLA leave.  (ECF No. 38-1 ¶¶ 60–61.)  Nevertheless, Brigham exhausted her available IFMLA leave by October 19, 2015 (ECF No. 38-1 ¶ 62), and the LOA Department denied her request to use IFMLA leave for her lack of timely notice (ECF No. 38-1 ¶¶ 63–64; ECF No. 38-18; ECF No. 38-24).  The language in Brigham's e-mail informing the LOA Department that she had missed the four-day trip, in which she asked the LOA Department whether "this will have to be coded as sick," demonstrates that Brigham herself was aware she did not have enough IFMLA leave to cover this absence.  (ECF No. 38-17.)

An Investigatory Meeting was held on November 3, 2015 in accordance with the CBA to address Brigham's violations of the Dependability Policy.  (ECF No. 38-1 ¶ 65; ECF No. 38-19.)  On November 11, 2015, Frontier informed Brigham in a letter that it was terminating her employment effective immediately for incurring 10 Occurrences within a 12-month period in violation of the Dependability Policy, under which eight Occurrences subjected an employee to termination.  (ECF No. 38-1 ¶¶ 66–67; ECF No. 38-6; ECF No. 38-13; ECF No. 38-20.)  In his declaration, Arellano noted that in addition to Brigham's violation of the Dependability Policy, Brigham's policy violations concerning use of IFMLA leave and the CBA's requirements for "Sick Calls" contributed to her termination because "Frontier believed that [Brigham] was not a dependable or

reliable employee."  (ECF No. 38-1 ¶ 66.)

   In response, Brigham argues that she has presented more than adequate evidence to meet her "not onerous" duty to show her termination was due to her disability.  (ECF No. 44 at 36.)  The Court addresses each of her arguments.

   First, Brigham argues that Frontier required her to comply with her treatment plan for alcoholism then terminated her when she did so.  (*Id.*)  For the following reasons, the Court finds her argument unavailing.  The evidence shows that Frontier requires employees who self-disclose their alcoholism to comply with treatment, aftercare, or support group services recommended by their Substance Abuse Provider ("SAP"), who must be Department of Transportation certified.  (ECF No. 48 at 18; ECF No. 36-8; ECF No. 38-4 ("Frontier requires full compliance with any additional treatment or aftercare recommended by a Substance Abuse Provider").)  However, Brigham has not pointed to any evidence indicating that Marla Madrid, the Primary Therapist who signed her Treatment Plan, was her SAP.  (ECF No. 48 at 18.)  Regardless, even assuming Madrid was Brigham's SAP, the Treatment Plan does not require Brigham to avoid overnight trips with layovers which, according to Brigham, jeopardize her sobriety.  Brigham's Treatment Plan provides:

> Estimated Length of Treatment, Modality, and Frequency:
>
> 1.  Individual treatment, one to two times monthly for six months (to be evaluated at that time).
>
> 2.  Group therapy, weekly for six months (to be evaluated at that time).

(ECF No. 36-8 at 1.)  The Additional Information section of the Treatment Plan provides:

> *Rebecca* has identified triggers to avoid cravings and opportunities to consume alcohol and those are on overnight

> trips or anything longer than a given work day in her
> professional arena.  At this time *it would not be a good idea
> to encourage a vulnerable situation* with a work schedule
> that serves as a temptation, *if possible.*  Her treatment plan
> and progress towards goals will be reviewed every 90 days.

(*Id.* at 2 (emphasis added).)  The Additional Information section demonstrates that it is a

suggestion, not a requirement, that Brigham avoid overnight trips.  Therefore, to the

extent that Brigham argues that Frontier terminated her because she was complying

with her Treatment Plan when she missed the four-day trip and incurred more

Occurrences, her argument is without merit.

Next, Brigham argues that Frontier "did regularly grant requests for reasonable

accommodation in the form [of] modified schedules or light duty, just not for Plaintiff and

not for alcoholics."  (ECF No. 44 at 36.)  As an initial matter, this argument and

accompanying evidence does not refute the fact that Frontier terminated Brigham

because she violated the Dependability Policy, not because she is an alcoholic and not

because she requested certain accommodations.  Regardless, the CBA's OJI

provisions allow for light-duty assignments only for flight attendants injured on the job.

(ECF No. 38-5 at 108–09.)  According to Arellano, Frontier did not maintain open light-

duty job positions for flight attendants injured on the job, nor were light duty

assignments job "positions"; instead, Frontier would temporarily assign those injured on

the job to perform other employees' duties.  (ECF No. 38-1 ¶ 43.)  The Tenth Circuit has

found that it is "not reasonable to require an employer to create a new job for the

purpose of reassigning an employee to that job."  *Duvall v. Georgia-Pac. Consumer

Prod., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010).

Frontier provides a spreadsheet which demonstrates that since 2012, with

respect to flight attendants, Frontier has never provided light duty assignments to any flight attendant (injured on the job or not) as an accommodation, nor has Frontier placed any flight attendant (injured on the job or not) into a vacant ground position as an accommodation, although the OJI program would have allowed for temporary light duty assignments if requested by flight attendants injured on the job.  (ECF No. 45 at 9 ¶ 19; ECF No. 36-11.)  Additionally, since 2012, Frontier has never transferred a flight attendant to a temporary ground assignment in the GO as an accommodation.  (*Id.*) And no flight attendants have been offered modified work schedules.  (*Id.*)  Instead, Frontier shows that only non-comparable workers in ground positions (not subject to a CBA) were offered schedule modifications.  (*Id.*; ECF No. 45-1 ¶ 16.)  To the extent Brigham disputes as much (ECF No. 47 at 4 ¶¶ 19–20), Frontier has shown that Brigham is not similarly situated to non-union employees who were offered temporary light duty assignments or modified schedules because Brigham did not have a temporary on the job injury and she was a flight attendant subject to the CBA.  (ECF No. 45-1 ¶ 16.)  Further, other than Brigham, none of the employees reflected in the spreadsheet were requesting accommodations for conditions involving alcoholism or substance abuse.  (ECF No. 45-1 ¶ 14.)  Therefore, Brigham's argument is unavailing.

Third, Brigham argues that Arellano stated that her requested accommodations would have amounted to "making exceptions" and that Frontier would not make a "separate accommodation."  (ECF No. 44 at 36.)  Again, this argument is not evidence that Brigham's disability, or her requests for accommodation, caused her termination. Moreover, for support, Brigham merely cites the transcript of her October 9, 2015 meeting.  (*Id.*)  She makes no further argument on this point.  Therefore, Brigham's

argument on this point is also without merit.

Fourth, Brigham argues that she had not "actually violated the Dependability Policy as Frontier had previously granted her at least 16 days of intermittent FMLA time per month." (ECF No. 44 at 36 (citing "Def.'s Ex. 10 to Ex. A at 4-5")).) She provides no additional evidence or argument in support. She also argues that she "did request additional intermittent FMLA time during the period that Frontier failed to reasonably accommodate her and prior to her termination, but Defendant denied this request and terminated [her]." (ECF No. 44 at 35.)

The Court has reviewed what appears to be the cited exhibit.[5] As an initial matter, this document appears to be a form concerning "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) Intermittent Leave of Absence." (ECF No. 38-12.) It appears as though Madrid completed this form on May 28, 2015 and stated that Brigham would require 12 days of IFMLA leave from May 1, 2015 to November 1, 2015. (*Id.* at 4.) The Court does not see a signature from a Frontier employee approving the leave or an indication that Frontier approved 16 days of IFMLA leave, as Brigham states in her response. (ECF No. 44 at 36.) Therefore, this exhibit does not demonstrate that Frontier ever previously granted Brigham 16 days of IFMLA leave.

Nonetheless, even if Frontier *had* previously granted Brigham 16 days of leave— which Brigham has not demonstrated based on evidence in the record —it would not change the fact that when she failed to report for the four-day trip on October 23, 2015,

---

[5] Brigham did not provide a citation to the entry on CM/ECF. Nevertheless, the Court believes Brigham was citing Exhibit 10 to Frontier's Motion for Summary Judgment, which is located on the docket at ECF No. 38-12.

she had already exhausted her IFMLA leave for the month.  (ECF No. 38-1 ¶ 62; ECF

No. 38-13 at 77.)  In an e-mail to Arellano, Frontier's Supervisor of Disability Program

Management said:

> Rebecca Brigham did request FMLA for 10/23/2015-
> 10/26/2015 but it was not until 10/26/2015 11:37am.  She
> had already exhausted her IFM allowance for the month of
> October by the 19th so because it was late and she had
> exceeded her approval the dates were denied.
>
> As for the 10/30/2015 trip- again she did request the time as
> FMLA and it was within 24 hours but she is only approved
> for up to 12 days per month and those were exhausted on
> 10/19/2015.  The dates of 10/30-10/31/2015 were denied
> and the November dates of 11/1/2015 and 11/2/2015 will be
> coded according to the IFM approval, which I have
> completed.
>
> I did look at the fitness for duty that was provided for her
> RTW and it does not state any restrictions.  I don't see that
> we have received anything stating that she was not able to
> work overnight trips.
>
> Hope this helps.

(ECF No. 38-13 at 77.)  Thus, Brigham's argument that she had previously obtained 16

days of IFMLA leave is unsupported and unavailing.

Fifth, Brigham argues that she "was not the only alcoholic at Frontier during the

relevant time period to suffer discrimination at the hands of Mr. Arellano and Ms.

Leyner."  (ECF No. 44 at 36 (citing Pl.'s Mot. at 13).)  For support, she relies on the

experiences of David St. Hilaire.  She quotes his declaration, which Frontier objects to

on the basis that it is inadmissible at trial.  (ECF No. 45 at 11 ¶ 22.)  While this is likely

the case, the Court rejects Brigham's arguments on its merits because St. Hilaire is not

similarly situated to her.

"When deciding whether a plaintiff's claim survives summary judgment, the court

must determine whether plaintiff had adduced enough evidence to support a finding that the [other employee] and plaintiff were sufficiently similarly situated to support an inference of discrimination." *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1200 (D. Kan. 2020), *aff'd*, 851 F. App'x 828 (10th Cir. 2021) (internal quotation marks omitted) (quoting *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007)). "Individuals are considered similarly-situated when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them for it." *Id.* (citation omitted); *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) ("An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." (citation and internal quotation marks omitted)). "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted).

According to St. Hilaire's declaration, he was supervised by Christopher Benedict, lied to Frontier about the fact that he had received treatment for alcoholism from a treatment facility, was required by Frontier to take routine drug tests, refused a drug test in violation of Frontier policy, never requested an accommodation, and voluntarily left Frontier in April 2016, approximately five months after the termination of Brigham's employment.  (ECF No. 36-12 ¶¶ 6–7, 12, 14.)  By contrast, Brigham was not

supervised by Benedict, self-disclosed her alcoholism and treatment, did not refuse to take a drug test, requested accommodations, and was terminated involuntarily for attendance infractions.  (ECF No. 45 at 11 ¶ 22; ECF No. 38-1 ¶¶ 18–19.)  Therefore, the Court finds that St. Hilaire and Brigham are not similarly situated and that Brigham's argument on this issue fails as a result.

Finally, Brigham argues that she was not the only Frontier flight attendant to be denied reasonable accommodations during the relevant time period.  (ECF No. 44 at 36 (citing Pl.'s Mot. at 13-14).)  This argument incorporates her arguments regarding St. Hilaire, which the Court has just rejected.  Brigham also points to the experiences of former Frontier flight attendant Christine Kernen.[6]  (ECF No. 36 at 13–14 ¶ 23.) However, Kernen's complaints regarding Frontier's treatment of her are in connection with requests for accommodations related to pregnancy and breastfeeding,[7] not alcoholism.  (ECF No. 36-13.)  Kernen and Brigham are not similarly situated for a variety of other reasons, including that the accommodation Kernen claims she requested (a leave of absence) was offered to but rejected by Brigham, Kernen did not suffer from the same medical condition, Kernen did not request the same accommodations as Brigham, and Kernen was not terminated by Frontier due to attendance infractions but instead voluntarily left Frontier in July 2016.  (ECF No. 45-1 ¶¶ 20–23.)  Therefore, the Court finds this argument, too, is without merit.

For the reasons stated above, the Court finds that Brigham has failed to

---

[6] Frontier makes the same objections regarding Kernen's declaration regarding its inadmissibility at trial.  (ECF No. 45 at 12 ¶ 23.)

[7] Frontier points out that pregnancy and breastfeeding are not disabilities under the ADA. (ECF No. 45 at 12 ¶ 23.)

demonstrate that a genuine issue of material fact exists regarding whether Frontier

terminated her on the basis of her disability or her requests for accommodations.

Therefore, because Brigham has failed to meet her prima facie burden in connection

with her discrimination and retaliation claims, the Court will grant summary judgment in

favor of Frontier on those claims.

## C.    Failure to Accommodate (Count I)

The Court next turns to Brigham's failure to accommodate claim.  Under the

ADA, disability discrimination includes "not making reasonable accommodations to the

known physical or mental limitations of an otherwise qualified individual with a disability

who is an applicant or employee, unless [the employer] can demonstrate that the

accommodation would impose an undue hardship on the [employer's business]

operation[s]."  42 U.S.C. § 12112(b)(5)(A).  This claim "does not require any evidence of

discriminatory intent, whether direct or circumstantial."  *Punt*, 862 F.3d at 1048.  This is

because "the only reason an accommodation is required is because of the disability,

and thus the failure to provide a reasonable accommodation to a qualified employee

with a disability is inherently 'on the basis of [the] disability,' 42 U.S.C. § 12112(a),

regardless of the employer's motivation."  *Id.*

If challenged at summary judgment, a failure to accommodate claim proceeds as

follows:

> [T]he employee must make an initial showing that (1) she is
> disabled; (2) she is otherwise qualified; and (3) she
> requested a plausibly reasonable accommodation.  Once the
> employee produces evidence sufficient to make a facial
> showing on her prima facie case, the burden of production
> shifts to the employer to present evidence either
> (1) conclusively rebutting one or more elements of plaintiff's
> prima facie case or (2) establishing an affirmative defense,
> such as undue hardship or one of the other affirmative

> defenses available to the employer.  If the employer does
> either of the above, summary judgment will be appropriate
> for the employer unless the employee then presents
> evidence establishing a genuine dispute regarding the
> affirmative defenses and/or rehabilitates any challenged
> elements of her prima face case sufficiently to establish at
> least a genuine dispute of material fact as to such
> challenged elements.

*Id.* at 1050 (internal quotation marks and citations omitted; alterations incorporated).

For the following reasons, the Court finds that Brigham has failed to meet the third element of her prima facie burden to demonstrate that she requested a plausibly reasonable accommodation.

First, Brigham requested an exemption from flights with layovers or overnight trips, or that she be allowed to build her own schedule from Open Time, as accommodations.  (ECF No. 36 at 25.)  However, if Frontier had granted the accommodations Brigham sought, it would have required excusing Brigham from the mandatory, seniority-based bidding process set forth in the CBA.  (ECF No. 38-1 ¶ 35.) Arellano told Brigham as much at the June 4, 2015 meeting.  (ECF No. 38-1 ¶ 29.) Additionally, Prince confirmed that the union would not have authorized Frontier to grant these accommodations because it would have violated the CBA, testifying:

> Q. Okay. And did you understand that Ms. Brigham wanted
> to just have her overnight trips removed?
> A. Yes.
> Q. And did you understand that Ms. Brigham just wanted to
> build her own schedule from scratch out of open time or the
> TradeBoard?
> A. Yes.
> Q. Okay. And the union would not allow her to build her
> schedule from scratch on open time, because that would
> have violated the Collective Bargaining Agreement, correct?
> A. Correct.
> Q. Okay. So it was not the union's intention to grant this
> accommodation, correct?
> A. Correct.

> Q. Okay. And the idea of "just remove me from the overnights," that would have violated the seniority bidding provisions of the Collective Bargaining Agreement to just do that for her, correct?
> A. Correct.
> Q. So that's not an accommodation that the union intended to grant to her, correct?
> A. Correct.

(ECF No. 44-2 at 17.)[8]

As Frontier emphasizes, allowing Brigham to be excused from flights with layovers would have "encroach[ed] upon the vested rights of other flight attendants with more seniority than Plaintiff and violat[ed] the CBA's requirements that all active flight attendants bid for flights and accumulate a minimum of 60 credit hours, and that flight attendants never drop below 45 credit hours when making schedule adjustments using Open Time."  (ECF No. 38 at 35.)  The Tenth Circuit has stated that the ADA does not require an employer to transfer an employee to a job as a reasonable accommodation if doing so would violate the seniority provisions of a collective bargaining agreement, observing that "[t]his is not required by the ADA."  *See Aldrich v. Boeing Co.*, 146 F.3d 1265, 1272 n.5 (10th Cir. 1998); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995) (holding transfer to another job that would violate seniority rights under collective bargaining agreement unreasonable).

Further, Frontier denied Brigham's request to build her schedule from Open Time

---

[8] Brigham disputes that Prince's declaration is consistent with her deposition testimony. (ECF No. 44 at 12 ¶ 30.)  However, the above-quoted testimony demonstrates that her declaration and deposition testimony are, as Frontier argues, in fact consistent.  (ECF No. 48 at 6–7 ¶ 30.)  To the extent Brigham argues that Prince's request to build her schedule out of Open Time would not have violated the CBA, the deposition testimony quoted above shows that is incorrect: "Q. Okay. And the union would not allow her to build her schedule from scratch on open time, because that would have violated the Collective Bargaining Agreement, correct? A. Correct."  (ECF No. 44-2 at 17.)

because it "would necessarily penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional flight opportunities from other flight attendants looking to modify their schedules." (ECF No. 38-1 ¶ 39.) Arellano states that "Frontier has never excused an active flight attendant from the seniority-based bidding rules set forth in the CBA to allow that flight attendant to create their own schedule out of Open Time to avoid certain types of flights." (ECF No. 38-1 ¶ 38.) Brigham was on active/eligible status when she requested to be excused from bidding. (ECF No. 38-5 at 105; ECF No. 38-22 at 2–3.) Under the CBA, all active/eligible flight attendants (*i.e.*, all flight attendants not on a continuous leave of absence during the bid period) are required to bid. (ECF No. 38-1; ECF No. 38-5 at 54.) Moreover, Prince testified at her deposition that someone on IFMLA still had to bid. (ECF No. 38-22 at 3.)

Given the foregoing, even if allowing Brigham to build her schedule from Open Time would not necessarily violate the seniority rights of other employees under the CBA, her requested accommodation would still be inconsistent with the contractual rights of other workers under the CBA, which require someone in Brigham's position to engage in the bidding process. The Tenth Circuit has cited with approval opinions from other circuit courts which conclude that the ADA does not require an employer to take actions to accommodate a plaintiff which would violate the contractual rights of other workers under a collective bargaining agreement. *See Aldrich*, 146 F.3d at 1272 n.5 (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("Following the other circuits which have considered this issue, we hold that the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement."); *Benson v. Nw. Airlines, Inc.*, 62

F.3d 1108, 1114 (8th Cir. 1995) ("The ADA does not require that [the employer] take action inconsistent with the contractual rights of other workers under a collective bargaining agreement.")).

The Court agrees with Frontier that Brigham's request to be excused from layovers or build her schedule from Open Time is unreasonable for an additional reason. Frontier contends that regardless of whether or not Brigham's requested accommodation violated the terms of the CBA, Frontier could not have promised Brigham that she would never end up with a layover. (ECF No. 38 at 36.) As Frontier describes, "inherent in *all* flights is the risk of experiencing inclement weather and/or mechanical issues, which could require a layover." (*Id.* at 21 (emphasis in original).) Given Brigham's position that she could not work as a flight attendant on flights with layovers and maintain her sobriety, her requested accommodation would not have enabled her to perform the essential functions of her job as a flight attendant, rendering the request unreasonable.

Finally, Brigham requested that she be permitted to work at the GO to perform administrative or other light duty work until she was more secure in her sobriety.[9] (ECF No. 36 at 25.) The Court agrees with Frontier that granting this request "would have resulted in the same above-described issues in that it would have excused Plaintiff, an active flight attendant, from the mandatory, seniority-based bidding process set forth in the CBA." (ECF No. 38 at 36.) Further, Arellano stated in his declaration that the CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to

---

[9] The Court has already examined arguments related to this request and incorporates that analysis herein, but will also examine the issue now in the context of Brigham's failure to accommodate claim. *See supra*, Part III.B.

provide flight attendants injured on the job—but only flight attendants injured on the job—with temporary light duty assignments in the GO. (ECF No. 38-1 ¶ 43; ECF No. 38-5 at 108–09.) Importantly, he states that these assignments were "not open job positions." (ECF No. 38-1 ¶ 43.) Specifically, Frontier explains that it did not maintain open light-duty job positions for flight attendants injured on the job, and the light duty assignments were not job positions; rather, Frontier merely temporarily assigned those employees who were injured on the job to perform other employees' duties. (ECF No. 45 at 34–35.)

As noted above, the Tenth Circuit does not require an employer to create positions merely to accommodate an ADA plaintiff.[10] *See Aldrich*, 146 F.3d at 1272 n.5 (citing *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995) (noting that an employer is not required to "create a new position to accommodate the disabled worker")). Therefore, because allowing Brigham to work in the GO office temporarily would have been inconsistent with the mandatory bidding process in the CBA and also would have required Frontier to create a position for her, the Court finds that her requested accommodation is unreasonable.

Given that none of the accommodations that Brigham requested were "plausibly reasonable accommodations," the Court will grant summary judgment in favor of Frontier on Brigham's failure to accommodate claim.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

---

[10] The Court notes that Frontier suggested that Brigham transfer to other vacant or soon to be vacant positions within Frontier, but she rejected those suggestions for a variety of reasons, including that she enjoyed being a flight attendant and did not want to lose her seniority. (ECF No. 38-1 ¶¶ 52, 58.)

1.   Defendant Frontier Airlines, Inc.'s Motion for Summary Judgment (ECF No. 38) is GRANTED in its entirety;

2.   Plaintiff Rebecca Brigham's Motion for Partial Summary Judgment (ECF No. 36) is DENIED;

3.   Defendant shall have its costs reasonably incurred in this action upon compliance with D.C.COLO.LCivR 54.1; and

4.   The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff, and shall thereafter terminate the action.

Dated this 27th day of August, 2021.

BY THE COURT:

William J. Martinez
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03417-WJM-STV

REBECCA BRIGHAM,

     Plaintiff,

v.

FRONTIER AIRLINES, INC., a Colorado corporation,

     Defendant.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Partial Summary Judgment of United States District Judge William J. Martínez entered on August 27, 2021, it is ORDERED that Defendant Frontier Airlines, Inc.'s Motion for Summary Judgment (ECF No. 38) is GRANTED in its entirety. It is

FURTHER ORDERED that Plaintiff Rebecca Brigham's Motion for Partial Summary Judgment (ECF No. 36) is DENIED.  It is

FURTHER ORDERED that final judgment is hereby entered in favor of Defendant Frontier Airlines, Inc. and against Plaintiff Rebecca Brigham.  It is

FURTHER ORDERED that Defendant Frontier Airlines, Inc. shall have its costs by the filing of a Bill of Costs with the Clerk of this Court within fourteen days of the entry of judgment, pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated at Denver, Colorado this 27th day of August, 2021.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By: s/Emily Buchanan
Emily Buchanan, Deputy Clerk

1565

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

UNITED STATES OF AMERICA,

_____,

           Plaintiff,

v.

_____,

           Defendant.

---

**NOTICE OF APPEAL**

---

      Notice is hereby given that_____,
                             (name the plaintiff or defendant)
in the above named case, hereby appeals to the United States Court of Appeals for the Tenth

Circuit from the _____,
                              (describe the order and/or judgment)
entered in this action on the_____day of_____,_____.

Dated _____

                               _____
                               Signature

                               _____
                               Printed Name

                               _____
                               Address

                               _____
                               City               State          Zip

                               _____
                               Telephone Number

*Rev. 5/2019*

1566