**CASE NO. 21-1335**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

REBECCA BRIGHAM,
Plaintiff – Appellant,

v.

FRONTIER AIRLINES, INC.,
Defendant – Appellee.

_____

On Appeal from the United States District Court for the District of Colorado
The Honorable Judge William J. Martinez
District Court No. 1:19-cv-03417

_____

**RESPONSE BRIEF OF APPELLEE
FRONTIER AIRLINES, INC.**

_____

Respectfully submitted,

Danielle L. Kitson
Carolyn B. Theis
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Tel.: 303.629.6200
Fax: 415.520.6685
dkitson@littler.com
catheis@littler.com

Attorneys for Appellee

February 4, 2022

**ORAL ARGUMENT IS NOT REQUESTED**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FED.R.CIV.P. 7.1, notice is hereby given by counsel of record for Frontier Airlines, Inc. ("Frontier"), that the following corporate interests are disclosed:

1.     The parent companies of the corporation: Frontier Airlines Holdings, Inc., which his wholly owned by Frontier Group Holdings, Inc.

2.     Publicly held entities that own 10% or more of Frontier's stock: Frontier Group Holdings, Inc.

# TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT ......................................................I

PRIOR OR RELATED APPEALS ..........................................................5

STATEMENT OF THE ISSUES ............................................................6

STATEMENT OF THE CASE ..............................................................7

STATEMENT OF FACTS .................................................................9

    I.     Frontier Flight Attendants ...................................9

         A.    Seniority-Based Bidding ..............................9

         B.    Attendance Policies..................................10

         C.    Intermittent FMLA Policy ...........................10

         D.    Self-Disclosure Policy ..............................11

    II.    Brigham's Employment With Frontier ..........................11

         A.    Frontier's Accommodation Of Brigham's Alcoholism...........11

         B.    Brigham's Termination of Employment.................16

    III.   District Court Proceedings...................................17

SUMMARY OF ARGUMENT ..............................................................19

ARGUMENT...........................................................................22

    I.     STANDARD OF REVIEW ..............................................22

    II.    THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED SUMMARY JUDGMENT FOR FRONTIER ON BRIGHAM'S CLAIM FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS (COUNT II)....................................................23

**TABLE OF CONTENTS**
(CONTINUED)

**PAGE**

III.   THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED
       SUMMARY JUDGMENT FOR FRONTIER ON BRIGHAM'S
       CLAIM FOR FAILURE TO ACCOMMODATE (COUNT I). ..........25

       A.   Brigham's Request To Be Excused From Layovers Was
            Not Plausibility Reasonable As A Matter Of Law.................27

            1.   Excusing Brigham From Flights With Layovers
                 Would Have Eliminated An Essential Function Of
                 Brigham's Job.............................................................27

            2.   Allowing Brigham To Create Her Own Flight
                 Schedule Would Have Violated The CBA's
                 Mandatory Seniority-Based Bidding Process. ..............28

            3.   Allowing Brigham To Create Her Own Flight
                 Schedule Would Have Encroached Upon The
                 Vested Rights Of Other Flight Attendants....................30

            4.   The Accommodation Requested Would Have Been
                 Ineffective..................................................................33

       B.   Brigham's Request To Be Transferred To A Light Duty
            Position In The GO Was Not Plausibly Reasonable As A
            Matter of Law. ......................................................................34

            1.   There Was No Vacant Light Duty Position
                 Available In The GO....................................................34

            2.   Allowing Brigham To Transfer To The GO Would
                 Have Violated The CBA's Mandatory Seniority-
                 Based Bidding Process & Encroached Upon The
                 Vested Rights Of Other Flight Attendants....................37

IV.    THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED
       SUMMARY JUDGMENT FOR FRONTIER ON BRIGHAM'S
       ADA DISCRIMINATION (COUNT IV) AND RETALIATION
       (COUNT III) CLAIMS.....................................................................38

# TABLE OF CONTENTS
(CONTINUED)

PAGE

A.    There Is No Genuine Dispute Of Material Fact That Frontier Terminated Brigham's Employment Because She Violated Frontier's Attendance Policy And Protocols. .................................................................40

1.    The Amount Of IFMLA Brigham Was Certified To Take Is Immaterial. ................................................44

CONCLUSION ................................................................50

CERTIFICATE OF COMPLIANCE ..................................................52

CERTIFICATE OF DIGITAL SUBMISSION ......................................53

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aldrich v. Boeing Co.*,
   146 F. 3d 1265 (10th Cir. 1998)........................................................28, 30, 34

*Anderson v. Coors Brewing Co.*,
   181 F.3d 1171 (10th Cir. 1999).....................................................................39

*Arabalo v. City of Denver*,
   625 F. App'x 851 (10th Cir. 2015)...............................................................22

*Aubrey v. Koppes*,
   975 F.3d 995 (10th Cir. 2020).......................................................................25

*Bones v. Honeywell Int'l, Inc.*,
   366 F.3d 869 (10th Cir. 2004).......................................................................47

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................22, 40

*Duvall v. Georgia-Pac. Consumer Prod., L.P.*,
   607 F.3d 1255 (10th Cir. 2010).....................................................................35

*Frazier v. Simmons*,
   254 F.3d 1247 (10th Cir. 2001).....................................................................27

*Griffin v. Oceanic Contractors, Inc.*,
   458 U.S. 564 (1982).......................................................................................24

*Hendricks-Robinson v. Excel Corp.*,
   154 F.3d 685 (7th Cir. 1998).........................................................................35

*Hennagir v. Utah Dep't of Corr.*,
   587 F. 3d 1255 (10th Cir. 2009)....................................................................39

*Johnson v. Weld Cty., Colo.*,
   594 F.3d 1202 (10th Cir. 2010).....................................................................45

*Kemmis v. McGoldrick*,
706 F.2d 993 (9th Cir. 1983) ............................................................36

*Lowe v. Indep. Sch. Dist. No. 1 of Logan Cty.*,
363 F. App'x 548 (10th Cir. 2010) ....................................................23

*Mason v. Avaya Commc'ns, Inc.*,
357 F.3d 1114 (10th Cir. 2004) .........................................................27

*Mielnicki v. Wal-Mart Stores, Inc.*,
738 F. App'x 947 (10th Cir. 2018) ..............................................27, 47

*Milton v. Scrivner, Inc.*
53 F.3d 1118 (10th Cir. 1995) .....................................................28, 30

*Patrick v. Henry Cnty., Ga.*,
No. 1:13-CV-1344-RWS, 2015 WL 1509482 (N.D. Ga. Mar. 31,
2015) ...........................................................................................35, 36

*Potts v. Davis County*,
551 F.3d 1188 (10th Cir. 2009) .........................................................22

*Punt v. Kelly Servs.*,
862 F.3d 1040 (10th Cir. 2017) ..............................................22, 26, 39

*Punt v. Kelly Servs.*,
862 F.3d 10480 (10th Cir. 2017) .......................................................25

*Ray v. Aztec Well Serv. Co.*,
748 F.2d 888 (10th Cir. 1984) ...........................................................49

*Robbins v. Chronister*,
402 F.3d 1047 (10th Cir. 2005) .........................................................24

*Roemer v. Board of Public Works of Maryland*,
426 U.S. 736 (1976) ...........................................................................49

*Rose v. Potter*,
90 F. App'x 951 (7th Cir. 2004) ........................................................31

*Smith v. Midland Brake*,
180 F.3d 1154 (10th Cir. 1999) ..............................................23, 25, 35

*Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1152 (10th Cir. 2020), cert. denied sub nom. *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 210 L. Ed. 2d 974 (2021), reh'g denied, 210 L. Ed. 2d 1009 (Aug. 23, 2021) ...........................................................................................49

*Stone v. City of Mount Vernon*,
118 F.3d 92 (2d Cir. 1997).............................................................35

*Tabura v. Kellogg USA*,
880 F.3d 544 (10th Cir. 2018)........................................................33

*Taylor v. Autozoners, LLC*,
706 F. Supp. 2d 843 (W.D. Tenn. 2010) .........................................47

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) ........................31

*US Airways, Inc. v. Barnett*,
535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) ................. 30, 31, 32, 34

*Valdez v. McGill*,
462 F. App'x 814 (10th Cir. 2012).......................................23, 24, 25

*White v. York In'l Corp.*,
45 F. 3d 357 (10th Cir. 1995).........................................................34

*Williams v. FedEx Corp. Servs.*,
849 F.3d 889 (10th Cir. 2017)...................................................38, 39

## Federal Statutes

42 U.S.C. § 12111(9) .................................................................26, 34

42 U.S.C § 12112(a) .................................................................38, 39

42 U.S.C. § 12114....................................................................... 50

42 U.S.C. § 12101, *et seq*...............................................................17

## Regulations

29 C.F.R. § 825.203 ..................................................................47, 48

29 C.F.R. § 1630.2(o)(iii) ......................................................................................23

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................22

*Fact Sheet #28J: Special Rules for Airline Flight Crew Employees under the Family and Medical Leave Act,* U.S. Department of Labor, available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs28j.pdf  (last visited February 2, 2022) ............................................................................................48

## **PRIOR OR RELATED APPEALS**

None.

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether failure to engage in the interactive process is an independent claim of relief under the Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12101, *et seq.* ("ADA") such that the District Court's dismissal of that claim was improper.

II.     Whether the District Court erred in determining Brigham's requests for accommodation were not plausibly reasonable and therefore, that the Court erred in dismissing Brigham's ADA failure to accommodate claim.

III.    Whether the District Court erred in concluding Brigham failed to demonstrate Frontier terminated her employment on the basis of her disability and/or because she requested accommodation and therefore, that the Court erred in granting summary judgment on Brigham's ADA discrimination and retaliation claims.

## STATEMENT OF THE CASE

Appellant Rebecca Brigham ("Brigham" or "Appellant") appeals the District Court's Order granting summary judgment for Appellee Frontier Airlines, Inc. ("Frontier" or "Appellee") on Brigham's claims for violation of the Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12101, *et seq.* ("ADA") in their entirety.

While employed by Frontier as a flight attendant, Brigham self-disclosed that she had been admitted to an inpatient rehabilitation facility for alcoholism. Frontier granted Brigham a continuous leave of absence to complete treatment. While Brigham was released by her medical care provider to return to Frontier without any restrictions after completing treatment, she claimed flights with layovers tempted her to drink and began calling out as "sick" to avoid such flights, incurring "Occurrences" under the Dependability Policy as a result.

Brigham ultimately obtained paperwork from another medical care provider certifying her for intermittent leave under the Family and Medical Leave Act ("IFMLA") to attend appointments and meetings for purposes of relapse prevention. While the paperwork did not certify Brigham to skip flights with layovers, Frontier allowed Brigham to use her IMLA for that purpose as an accommodation. After exhausting her IFMLA, however, Brigham continued to skip flights with layovers,

7

sometimes failing to provide the required minimum notice, necessarily incurring Occurrences under the Dependability Policy.

Frontier met with Brigham on multiple occasions regarding her attendance issues, suggesting that she apply for a personal leave or medical leave until she was secure enough in her sobriety to cover flights with layovers or explore transferring to another vacant or soon-to-be vacant position within Frontier. Brigham rejected these proposed accommodations and instead, insisted Frontier provide her with the ability to build her own flight schedule to avoid flights with layovers or to temporarily transfer her to Frontier's General Office ("GO") to perform light duty work. However, given Brigham was not on a continuous leave of absence, she was considered an active flight attendant pursuant to the terms of the Frontier flight attendants' Collective Bargaining Agreement (CBA) and as such, was required to comply by the seniority-based bidding process and to maintain certain credit hours. In addition, there were no vacant light duty positions available in the GO. Frontier explained these facts to Brigham and reminded her of the alternative accommodations, which Brigham continued to reject.

Frontier terminated Brigham's employment effective November 11, 2015 for incurring 10 Occurrences within a 12-month period in violation of the Dependability Policy.

## STATEMENT OF FACTS

**I.**    **Frontier Flight Attendants**

    **A.**    **Seniority-Based Bidding**

During Brigham's employment with Frontier as a flight attendant, flight schedules for active flight attendants were determined by a bidding process based upon seniority as set forth in the flight attendants' collective bargaining agreement with Frontier (the "CBA"), which required all active Frontier flight attendants to bid for the flights posted and accumulate a minimum of 60 credit hours. [App. Vol. 1 at 164 at 79:20-80:11; App. Vol. 2 at 498, ¶ 35, citing App. Vol. 3 at 700-701, 712]. After awards were determined, flight attendants had the ability to add, drop, and/or swap their scheduled flights on a first-come first-served basis using flights available in "Open Time," but were prohibited from dropping below 45 credit hours. [App. Vol. 2 at 498, ¶ 37, citing App. Vol. 3 at 712]. Pursuant to the CBA, flight attendants were considered inactive and therefore, ineligible to bid if they had been granted Frontier-approved continuous leaves such as Leave of Absence ("LOA"), Medical Leave ("MED"), Family Medical Leave Act ("FMLA") Leave, or On the Job Injury ("OJI") Leave. [App. Vol. 3 at 700]. If a flight attendant returning from a Frontier-approved leave missed the bid period, the flight attendant was permitted, for the remainder of that month, to pick up Open Time to build a schedule and/or be

assigned Reserve days. [App. Vol. 3 at 711]. Frontier has never allowed any flight attendant active during the bid period to build their own schedule. [App. Vol. 2 at 498, ¶ 38; App. Vol. 5 at 1227 at 20:15-21:3].

### B.    Attendance Policies

In addition to having the ability to work a full and flexible schedule determined by the CBA's seniority-based bidding process, Frontier flight attendants were also required to demonstrate their dependability by maintaining regular attendance. [App. Vol. 1 at 174 at 118:10-18; App. Vol. 2 at 493, ¶ 5; citing App. Vol. 2 at 504; *id.* at 494, ¶ 8, citing App. Vol. 3 at 625-629]. During the time period relevant to this litigation, Frontier's attendance policy, the "Dependability Policy," stated that employees incurring 8 unexcused absences, "Occurrences," within a 12-month period would be subject to termination. [App. Vol. 2 at 494, ¶ 10, citing App. Vol. 3 at 625-629]. Flight attendants who were unable to report for work because of illness or off-the-job injury were to notify Crew Scheduling at least two hours prior to their assigned report time. [App. Vol. 2 at 494, ¶ 11, citing App. Vol. 3 at 749-750].

### C.    Intermittent FMLA Policy

Pursuant to the IFMLA policy, employees were required to provide advance notice of the need to take IFMLA and if such notice was not possible, to provide notice as soon as practicable—usually the same day or day after learning of the need

for leave—and to comply with Frontier's normal call-in procedures. [App. Vol. 2 at 494-495, ¶ 13, citing App. Vol. 2 at 567-578; *id.* at 495, ¶ 14, citing App. Vol. 2 at 572; *id.* at 495, ¶ 15, citing App. Vol. 2 at 572-573]. An employee who failed to provide adequate notice of an unforeseeable leave or failed to comply with Frontier's absence-reporting procedures could be denied leave and/or subject to appropriate disciplinary action, up to and including termination of employment. [App. Vol. 2 at 495, ¶ 16, citing App. Vol. 2 at 573].

### D.    Self-Disclosure Policy

During Brigham's employment with Frontier, Frontier required employees who self-disclosed substance abuse disorders to comply with treatment, aftercare, or support group services recommended by their Substance Abuse Provider ("SAP"), who must be Department of Transportation ("DOT") certified. [App. Vol. 1 at 289-290; App. Vol. 3 at 623-624; App. Vol. 6 at 1550, citing App. Vol. 5 at 1455].

## II.    <u>Brigham's Employment With Frontier</u>

### A.    Frontier's Accommodation Of Brigham's Alcoholism

In September 2014, Frontier granted Brigham continuous FMLA Leave to complete a 60 day inpatient program for alcoholism. [App. Vol. 1 at 160 at 64:1-8; 65:10-12;  App. Vol. 2 at 496, ¶ 20; *id.* at 496, ¶ 21, citing App. Vol. 3 at 821-822]. After completing the in-patient program in October, Brigham was cleared to return to work without restrictions by her healthcare provider. [App. Vol. 2 at 496, ¶22; *id.* at 496, ¶ 23, citing App. Vol. 3 at 830-833].  Since September 5, 2014, Brigham has

been sober and alcoholism has not impacted her daily life activities or inhibited her ability to function. [App. Vol. 1 at 161 at 67:5, 69:16-20; *id.* at 162 at 70:21-71:5].

Not long after her return to Frontier, Brigham began calling out as "sick" to avoid flights with layovers, which she said tempted her to drink and therefore, jeopardized her sobriety, incurring Occurrences under the Dependability Policy as a result. [App. Vol. 2 at 496, ¶ 24, citing App. Vol. 3 at 802-820; *id.* at 497, ¶ 29; *id.* at 497, ¶ 30, citing App. Vol. 3 at 834-App. Vol. 4 at 895; *id.* at 497, ¶ 31, citing App. Vol. 4 at 896-912; *id.* at 497, ¶ 32, citing App. Vol. 3 at 842, 845, 853 and App. Vol. 4 at 897-898, 901]. Brigham did not know when or if she would be ever able to handle layovers again. [App. Vol. 1 at 163 at 76:19-77:22]. A few days after receiving a written warning from Frontier, Brigham obtained paperwork from her medical care provider for purposes of certifying her for IFMLA for 4 days per month. [App. Vol. 2 at 496, ¶ 25; *id.* at 496, ¶ 26, citing App. Vol. 3 at 830-833]. While the Certification indicated the IFMLA was to be used to attend appointments and meetings for purposes of relapse prevention, Frontier allowed Brigham to use the IFMLA to avoid flights with layovers. [App. Vol. 1 at 184 at 161:3-6; App. Vol. 2 at 501, ¶ 55, citing App. Vol. 3 at 823-829, 830-33, App. Vol. 4 at 913-916, 954; *id.* at 501, ¶ 56, citing App. Vol. 4 at 1099]. After exhausting her IFMLA, however, Brigham, continued to call out "sick," incurring Occurrences under the Dependability Policy and failed to abide by the two hours minimum notice

requirement. [App. Vol. 1 at 155-156 at 42:21-23, 43:21-24, 45:10-48:9; *id*. at 189 at 180:13-16; App. Vol. 2 at 496, ¶ 27, citing App. Vol. 3 at 815, 818].

On June 4, 2015, Brigham asked Cassie Micklich, Drug & Alcohol Specialist and Gerardo ("Jerry") Arellano, Sr. Employee/Labor Relations Manager/Special Projects, if Frontier could adjust her flight schedule or allow her to build her own schedule so she could avoid flights with layovers. [App. Vol. 2 at 497, ¶ 29; *id.* at 497, ¶ 30, citing App. Vol. 3 at 834-App. Vol. 4 at 895; *id*. at 497, ¶ 31, citing App. Vol. 4 at 896-912; *id*. at 497, ¶ 32, citing App. Vol. 3 at 842, 845, 853 and App. Vol. 4 at 897-898, 901]. Mr. Arellano indicated that Frontier wanted to support Brigham, but could not adjust Brigham's schedule to avoid flights with layovers or allow her to create her own schedule because doing so would violate the CBA. [App. Vol. 2 at 497, ¶ 33, citing App. Vol. 3 at 843-844 and App. Vol. 4 at 898]. Union representative, Adrienne Prince, confirmed that it would not have authorized Frontier to grant Brigham's requested accommodation because doing so would have violated the CBA. [App. Vol. 5 at 1237 at 58:17-59:7]. Further, allowing Brigham to build her own schedule from Open Time would necessarily provide Brigham with a  benefit not available to any other active flight attendant, including those with greater seniority than Brigham, and penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional flight opportunities from other flight attendants looking to modify their schedules. [App. Vol. 2 at 498, ¶ 39].

Mr. Arellano told Brigham that she could apply for other accommodations, including a personal leave or non-FMLA leave or explore other positions with the Company. [App. Vol. 2 at 498, ¶ 40, citing App. Vol. 3 at 843-844 and App. Vol. 4 at 898]. Brigham did not apply for any continuous personal or non-FMLA leave and did not want or intend to transfer internally within Frontier because she liked being a flight attendant and the flexibility the position offered. [App. Vol. 1 at 160 at 64:1-65:7; *id*. at 163 at 75:19-23; *id*. at 188-189 at 175:2-178:14; App. Vol. 2 at 498-499, ¶ 41, citing App. Vol. 3 at 846-847, 876 and App. Vol. 4 at 908-909].

Brigham also asked whether she could temporarily work at the GO doing administrative work without losing her seniority like Frontier employees on OJI Leave were permitted to do. [App. Vol. 2 at 499, ¶ 42, citing App. Vol. 3 at 877 and App. Vol. 4 at 909]. The CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to provide flight attendants injured on the job–but only flight attendants injured on the job–with temporary light duty assignments in the GO. [App. Vol. 2 at 499, ¶ 43, citing App. Vol. 3 at 765]. These assignments were not open job positions. [App. Vol. 2 at 499, ¶ 43, citing App. Vol. 3 at 765]. Rather, when a flight attendant injured on the job was temporarily unable to work, he or she would be permitted to help others in the GO with their own light duty responsibilities. [App. Vol. 2 at 499, ¶ 43*, citing* App. Vol. 3 at 765]. Consistent with the CBA, work at the GO was only provided as an accommodation to flight

attendants in Frontier's OJI program. [App. Vol. 1 at 164 at 79:14-16; *id*. at 186 at 167:2-168:6; App. Vol. 2 at 499, ¶ 44, citing App. Vol. 3 at 765-766; App. Vol. 4 at 1162].

Shortly after the June 4, 2015 meeting, Brigham submitted a revised IFMLA Certification Form, increasing the number of authorized IFMLA to 12 days per month for purposes of attending appointments and meetings.  [App. Vol. 2 at 499-500, ¶45; *id*. at 500, ¶ 46, citing App. Vol. 4 at 913-917]. Brigham, however, continued to exhaust her IFMLA and incurred Occurrences for calling out "sick." [App. Vol. 2 at 500, ¶ 47, citing App. Vol. 3 at 820 and App. Vol. 4 at 951-980; *id*. at 500, ¶ 48, citing App. Vol. 4 at 918-1000]. On October 9, 2015, Brigham asked again whether as an accommodation, she could start with a blank schedule and be responsible for building her own schedule up to 60 hours. [App. Vol 1 at 187 at 172:24-173:7; App. Vol. 2 at 500, ¶ 49; *id*. at 500, ¶ 50, citing App. Vol. 4 at 1001-1077; *id*. at 500, ¶ 51, citing App. Vol. 4 at 1078-1098; *id*. at 500, ¶ 52, citing App. Vol. 4 at 1008, App. Vol. 4 at 1090, 1092, 1094]. Mr. Arellano explained that that practice was reserved for only flight attendants returning from continuous leaves of absence who had not been active flight attendants during the bidding period the month they returned from leave and therefore, could not have bid and that allowing Brigham to craft her own schedule would violate the CBA's seniority provisions, creating the impression that Frontier was "cherry-picking" flight attendants to have

the benefit of building their own schedules without regard to seniority. [App. Vol. 2 at 500-501, ¶ 53, citing App. Vol. 4 at 1052, 1057, 1060 and App. Vol. 4 at 1092]. Ms. Thompson echoed Mr. Arellano stating, "there is a lot of people that would like to start with a clean slate for the month. And build their schedule – right?" [App. Vol. 2 at 501, ¶ 54; App. Vol. 4 at 1095]. Mr. Arellano emphasized to Brigham that ultimately, Frontier needed "employees who can come to work," but reminded Brigham that she could apply for a personal leave as a further accommodation and/or for another internal position within the company, notifying her that a Flight Training Coordinator position was coming available. [App. Vol. 2 at 501-502, ¶ 58, citing App. Vol. 4 at 1062 and App. Vol. 4 at 1095-1096]. Brigham did not apply for the position. [App. Vol. 1 at 162-163 at 73:11-74:8].

### B.    Brigham's Termination of Employment

Less than 10 days after the October 9 meeting, Brigham failed to report for a four-day trip and failed to contact Frontier for approval to use IFMLA until the day following the first day of the trip in violation of Frontier policy.  [App. Vol. 1. at 189 at 179:24-180:16; App. Vol. 2 at 502, ¶ 60; *id.* at 502, ¶ 61, citing App. Vol. 4 at 1100; App. Vol. 4 at 991]. Frontier's LOA Department denied Brigham's request to use IFMLA for the four-day trip for her lack of timely notice. [App. Vol. 2 at 502, ¶ 63; *id.* at 502, ¶ 64, citing App. Vol. 4 at 1101]. On November 3, 2015, Brigham, Stephanie Coppedge, Supervisor of Inflight Services, Frontier, Andrea Warfield, Sr.

Human Resource Manager, Frontier, and Ms. Prince met to discuss Brigham's violations of the Dependability Policy. [App. Vol. 1 at 172 at 112:21-23; id. at 190 at 182:1-9, 182:23-183:7; App. Vol. 4 at 1163-1170]. Brigham admitted she had forgotten to call out before the four-day trip. [App. Vol. 4 at 1164-1165, 1169; App. Vol. 5 at 1237-1238 at 60:14-65:22].

On November 11, 2015, Frontier informed Brigham that it was terminating her employment effective immediately for incurring 10 Occurrences within a 12-month period in violation of the Dependability Policy under which eight Occurrences subjected an employee to termination. [App. Vol. 1. at 154-155 at 40:5-10; 41:21-42:7; App. Vol. 2 at 503, ¶ 67; *id.* at 503, ¶ 68, citing App. Vol. 4 at 1103].

## III.   <u>District Court Proceedings</u>

Brigham filed her Complaint against Frontier in the United States District Court for the District of Colorado (the "District Court") on December 4, 2019, alleging the following claims: Failure to Accommodate in Violation of the ADA (42 U.S.C. § 12101, *et seq.*) (Count I); Failure to Engage in the Interactive Process in Violation of the ADA (42 U.S.C. § 12101, *et seq.*) (Count II); Retaliation in Violation of the ADA (42 U.S.C. § 12101, *et seq.*) (Count III); Discrimination in Violation of the ADA (42 U.S.C. § 12101, *et seq.*) (Count IV). On November 17, 2020, Frontier moved for summary judgment on Brigham's claims in their entirety and Brigham moved for partial summary judgment. The district court granted

Frontier's Motion for Summary Judgment and denied Brigham's Motion for Partial

Summary Judgment. Brigham subsequently commenced this appeal.

## SUMMARY OF ARGUMENT

The District Court did not err in granting summary judgment for Frontier on Brigham's ADA claims in their entirety and in denying Brigham's Motion for Partial Summary Judgment.

The law is clear that failure to engage in the interactive process is not an independent claim for relief under the ADA. Engaging in the interactive process is merely a method of determining an appropriate reasonable accommodation, which may or may not be necessary depending on the circumstances presented. Therefore, the District Court did not err in granting summary judgment for Frontier on Brigham's claim for Failure to Engage in the Interactive Process (Count II).

Similarly, the District Court also did not err in granting summary judgment for Frontier on Brigham's Failure to Accommodate claim (Count I) because Brigham's requests for additional accommodation—specifically (1) to build her own flight schedule and (2) to be transferred to a light duty position in the GO—were not plausibly reasonable as a matter of law. Covering flights with layovers was an essential function of the Frontier flight attendant position and therefore, Brigham's request to build her own flight schedule to avoid such flights was a request that Frontier eliminate an essential function of her job and therefore, unreasonable as a matter of law. In addition, the CBA required Frontier to schedule flight attendants using a seniority-based bidding system, which required flight attendants to maintain

a certain number of credit hours and therefore, Brigham's request to build her own flight schedule was a request that Frontier ignore the CBA and provide Brigham with a major advantage no other flight attendant, including those more senior to Brigham, received. Finally, even assuming *arguendo* Frontier granted Brigham's request to be build her own flight schedule, the accommodation would have been ineffective and therefore, unreasonable as a matter of law because Brigham would still end up on flights with layovers due to inclement weather and/or mechanical issues.

Likewise, Brigham's request to be transferred to a light duty position in the GO was also not plausibly reasonable as a matter of law because no such position was vacant. While the CBA gave Frontier the discretion to transfer flight attendants injured on the job to temporary light duty assignments, Frontier did not reserve vacant light duty positions for such flight attendants, but rather temporarily assigned them to assist others in the GO performing light duty work. Further, Brigham was and wanted to remain an **<u>active</u>** flight attendant, not a flight attendant on OJI Leave (and thus, ineligible to bid) and therefore, the CBA required Frontier to assign Brigham a flight schedule using its seniority-based bidding system and required Brigham to maintain a certain number of credit hours. Therefore, creating a light duty position in the GO for Brigham would have violated the CBA and encroached upon the vested rights of other active flight attendants none of whom, including those

more senior to Brigham, were excused from the bidding and hours requirements set forth in the CBA or permitted to work in the GO performing light duty work.

Finally, the District Court did not err in granting summary judgment on Brigham's ADA discrimination (Count IV) and retaliation (Count III) claims because the undisputed evidence demonstrates Frontier terminated Brigham's employment because violated Frontier's attendance policies and protocols, not because she was in recovery for alcoholism and/or requested accommodations related to same. The undisputed evidence demonstrates Brigham incurred 10 Occurrences in a 12-month period in violation of the Dependability Policy and that Brigham admittedly failed to report for a four-day trip without notifying Frontier before the trip commenced and without having enough IFMLA to cover the absences—terminable offenses. While Brigham claims the District Court erred in concluding she had only been approved for more than 12 days of IFMLA per month, she fails to cite evidence demonstrating she was approved for more than 12 days and regardless, the record clearly demonstrates both Frontier and Brigham reasonably believed she had been certified for 12 days of IFMLA per month. Further, the number of IFMLA days Brigham was certified to take is immaterial in that no medical care provider ever certified that it was medically necessary for Brigham to avoid flights with layovers or certified her to use IFMLA for that purpose, and Brigham has consistently claimed that Frontier should never have applied IFMLA

because **all** of her absences to avoid layovers should have been excused to accommodate her recovery.

For these reasons, the District Court correctly ruled in favor of Frontier on the issues presented on appeal and as a result, this Court should affirm its decision.

## ARGUMENT

### I.  Standard of Review

This Court reviews a district court's order granting summary judgment *de novo*. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1046 (10th Cir. 2017). Summary judgment should be affirmed when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citation omitted); *see also* Fed. R. Civ. P. 56(a). Conclusory allegations or testimony will not establish an issue of fact sufficient to defeat summary judgment and the moving party may meet its summary judgment burden by merely "point[ing] to an absence of evidence to support the non-movant's claim." *Arabalo v. City of Denver*, 625 F. App'x 851, 861 (10th Cir. 2015); see also *Potts v. Davis County*, 551 F.3d 1188, 1192 (10th Cir. 2009) ("Mere allegations unsupported by further evidence … are insufficient to survive a motion for summary judgment.") (internal citations omitted). Although the District Court had to draw reasonable inferences in favor of the nonmoving party, the Court also had an affirmative obligation to ensure factually unsupported claims do not proceed to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

**II.    The District Court Did Not Err When It Granted Summary Judgment For Frontier On Brigham's Claim For Failure To Engage In The Interactive Process (Count II).**

The District Court properly held that failure to engage in the interactive process is not an independently actionable claim under the ADA as a matter of law. [App. Vol. 6 at 1545-46, citing *Valdez v. McGill,* 462 F. App'x 814, 819 (10th Cir. 2012) (affirming trial court's decision to grant the defendant's motion for summary judgment on the plaintiff's claim for failure to engage in the interactive accommodations process on the grounds that such failure "is not actionable discrimination" under the ADA) (internal citation omitted) (citing *Smith v. Midland Brake*, 180 F.3d 1154, 1172 (10th Cir. 1999) ("The obligation to engage in an interactive process is inherent in [i.e., not independent of] the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee.")]; *see also, Lowe v. Indep. Sch. Dist. No. 1 of Logan Cty.,* 363 F. App'x 548, 557 (10th Cir. 2010) ("[T]he interactive process is merely a method of facilitating statutory goals. It is a recommendation, not a statutory requirement . . . . [A] plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process. Clearly an employer could, with impunity, ignore the interactive process so long as it reasonably accommodated employee needs.") (J. O'Brien, concurring); *see also* 29 C.F.R. § 1630.2(o)(iii) (stating **within the definition of "reasonable accommodation"** that "To determine the appropriate

reasonable accommodation, it **<u>may</u>** be necessary for the covered entity to initiate an information, interactive process with the individual with a disability…") (emphasis added).

Further, recognizing the failure to engage in the interactive process as an independent claim would lead to absurd results. For example, an employer could be held liable for failing to engage in the interactive process despite *actually* providing a reasonable accommodation (albeit without engaging in any interactive process). *See Robbins v. Chronister*, 402 F.3d 1047, 1050 (10th Cir. 2005), *on reh'g en banc,* 435 F.3d 1238 (10th Cir. 2006) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 574, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)); *id.* ("the function of the courts ... [i]s to construe ... [statutory] language so as to give effect to the intent of Congress.") (internal quotation and citation omitted). Similarly, an employer could be liable for failing to engage in the interactive process even when engaging in that process would be futile because there was no reasonable accommodation that would have enabled the employee to perform the essential functions of their job—another nonsensical result that would not serve the regulation's intended purpose of ensuring a reasonable accommodation be provided and would be contrary to law created by this Circuit. *See Valdez*, 462 Fed. Appx. at 819 (An employer "is not

required to engage an employee in a futile interactive process. . . where no reasonable accommodation was possible").

Finally, Brigham's insistence that an employer's failure to engage in the interactive process is an independent cause of action and reliance upon *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020) in support of same is misplaced. The discussion of the interactive process in *Aubrey* was in the context of the plaintiff's failure to accommodate claim and was consistent with other Tenth Circuit cases recognizing the failure to engage in the interactive process as "inherent in the statutory requirement that the employer offer a disabled, but otherwise qualified employee a reasonable accommodation," not an independent claim for relief. *Id.* at 1007; *Valdez,* 462 F. App'x at 819 ("The obligation to engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee.") (quoting *Smith*, 180 F.3d at 1172).

## III.   <u>The District Court Did Not Err When It Granted Summary Judgment For Frontier On Brigham's Claim For Failure To Accommodate (Count I).</u>

"[I]f challenged at summary judgment, a failure to accommodate claim proceeds as follows: [T]he employee must make an initial showing that (1) she is disabled; (2) she is otherwise qualified; and (3) she requested **<u>a plausibly</u>**

**reasonable accommodation.**" [App.[1] Vol. 6 at 1557-58 (emphasis added), quoting *Punt v. Kelly Servs.,* 862 F.3d 10480, 1050 (10th Cir. 2017)].

The ADA defines "reasonable accommodation" to "include ... job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). "[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Punt*, 862 F.3d at 1051 (emphasis omitted).

Here, the District Court properly concluded that Frontier was entitled to summary judgment on Brigham's failure to accommodate claim because Brigham failed to establish that her request to build her own flight schedule from Open Time and/or her request to transfer to the GO to perform light duty work were plausibly reasonable accommodations. [App. Vol. 6 at 1562 ("Given that none of the accommodations that Brigham requested were 'plausibly reasonable

---

[1] Frontier uses "App." when citing Brigham's Appendix and "Vol." to refer to the specific appendix volume. Frontier uses "Supp. App." when citing to its Supplemental Appendix.

accommodations,' the Court will grant summary judgment in favor of Frontier on Brigham's failure to accommodate claim.")].

## A. Brigham's Request To Be Excused From Layovers Was Not Plausibility Reasonable As A Matter Of Law.

### 1. Excusing Brigham From Flights With Layovers Would Have Eliminated An Essential Function Of Brigham's Job.

Inherent in any flight attendant position is the ability to cover flights that include layovers. [App. Vol. 2 at 456, ¶ 1, *citing* App. Vol. 2 at 493, ¶ 5 (citing App. Vol. 2 at 504) and App. Vol. 1 at 174 at 118:10-18; App. Vol. 2 at 504-505; App. Vol. 5 at 1401-1403; App. Vol. 6 at 1561; App. Vol. 5 at 1478-1479, ¶ 1]. Thus, Brigham's request to be indefinitely excused from handling such flights was, therefore, facially unreasonable as a matter of law.  *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004) ("We have consistently held…that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation"); *Frazier v. Simmons*, 254 F.3d 1247, 1261 (10th Cir. 2001) ("Although job restructuring is a possible accommodation under the Disabilities Act, [a]n accommodation that eliminates the essential function of the job is not reasonable") (internal citation and quotation omitted); *Mielnicki v. Wal-Mart Stores, Inc.,* 738 F. App'x 947, 950 (10th Cir. 2018) (The ADA does not require an employer to reallocate an essential function of a disabled employee's position to accommodate that employee.)

**2.      Allowing Brigham To Create Her Own Flight Schedule
Would Have Violated The CBA's Mandatory Seniority-
Based Bidding Process.**

As an active flight attendant, Brigham was required to accumulate a minimum
of 60 credit hours and prohibited from dropping below 45 credit hours pursuant to
the seniority-based bidding process set forth in the CBA. [App. Vol. 2 at 456, ¶¶ 2-
5; App. Vol. 6 at 1558-59]. Therefore, granting Brigham's request to create her own
flight schedule without regard to seniority-based bidding or hours requirements
would have violated the CBA and thus, was not a plausibly reasonable request as a
matter of law. [App. Vol. 6 at 1559, citing *Aldrich v. Boeing Co*., 146 F. 3d 1265,
1272 n. 5 (10th Cir. 1998); *Milton v. Scrivner, Inc.* 53 F.3d 1118, 1125 (10th Cir.
1995)].

Contrary to Brigham's representation, the District Court did not fail to
consider "conflicting testimony from Ms. Prince" as creating a dispute of material
fact regarding this issue. Opening Br. at 37-38. Rather, the District Court considered
Ms. Prince's deposition testimony regarding the union's intentions at the time of
Brigham's request for accommodation as well as Ms. Prince's deposition testimony
regarding what she meant by certain language contained in her declaration and
determined that there was no conflict—the union **never** intended to authorize
Frontier to grant the accommodation Brigham sought because doing so would have
violated the CBA. [App. Vol. 5 at 1220, ¶ 6 (emphasis added); App. Vol. 5 at 1236

at 54:12-23, 55:3-14, 56:17-57:1; App. Vol. 6 at 1558]. In her declaration, Ms.

Prince stated:

> 6. … I explained to Frontier that **the Union was not seeking an accommodation that would violate the seniority provision,** but rather, would work within the seniority provision [in the CBA]. In other words, the Union requested that Ms. Brigham be allowed to bid for shifts within her existing seniority to avoid layovers as much as possible, and with regard to whatever shifts were leftover containing layovers and assigned to Ms. Brigham, the Union proposed a method by which Ms. Brigham could have traded, swapped or dropped these shifts in compliance with the collective bargaining agreement.

App. Vol. 6 at 1220 (emphasis added). During her deposition, when asked to explain

what she meant by the above-quoted language, Ms. Prince testified as follows:

> Q. Okay. And you say here that you proposed that you work within that Collective Bargaining Agreement; is that correct?
> A. Correct.
> Q. Did you ever intend that any accommodation for Rebecca Brigham would violate the Collective Bargaining Agreement?
> A. No.
> Q. Did you ever intend that Ms. Brigham should be excused from the requirement that she bid like every other flight attendant?
> A. No, I did not intend.
> Q. Did you ever intend that she be excused from the requirement that in the bidding process she hold 45 hours just like everyone else?
> ***
> A. No.
> Q. So it was your intention, on behalf of the union, that she had comply with those rules, correct?
> A. Correct.
> Q. Okay. And it was your intention, on behalf of the union, that she not be allowed to get any benefit that someone more senior to her did not get, correct?
> A. Correct.
> ***

Q. Okay. So what did you mean, "Frontier refused to grant this accommodation"?

A. Well, they didn't give her her job back based on – based on the grievance process.

Q. Okay. So by "Frontier refused to grant this accommodation," you meant Frontier refused to reinstate her; is that correct?

A. Correct.

Q. Did you mean anything else by that?

A. No.

App. Vol. 5 at 1236 at 54:12-23; 55:3-14; 56:17-57:1.

The District Court considered this testimony and properly rejected Brigham's argument that Ms. Prince's declaration supported Brigham's position that allowing Brigham to create her own flight schedule would not have violated the CBA or at least created a dispute of material fact, concluding instead that based on this evidence, the union would **not** have authorized Frontier to grant this accommodation because it would have violated the CBA, further demonstrating Brigham's request to build her own schedule was not plausibly reasonable as a matter of law. [App. Vol. 6 at 1558-1559, citing *Aldrich*, 146 F. 3d at 1272 n. 5; *Milton,* 53 F.3d at 1125].

### 3. Allowing Brigham To Create Her Own Flight Schedule Would Have Encroached Upon The Vested Rights Of Other Flight Attendants.

Further, as the District Court properly held, "even if allowing Brigham to build her own flight schedule would not necessarily violate the seniority rights of other employees under the CBA, her requested accommodation would still be inconsistent with the contractual rights of other workers under the CBA, which

require someone in Brigham's position to engage in the bidding process" and therefore, was not a plausibly reasonable request. [App. Vol. 6 at 1560-1561]; *US Airways, Inc. v. Barnett,* 535 U.S. 391, 403, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) (a request for accommodation that would **underminE** or be **inconsistent** with the rules of a seniority system is not a plausibly reasonable request); *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 79, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977); *see also, Rose v. Potter,* 90 F. App'x 951, 953 (7th Cir. 2004) (an employer's refusal to "deviate" from a "neutral seniority bidding system established by a collective bargaining agreement" does not establish a claim of religious discrimination, "because Title VII does not require an employer to interfere with a valid seniority system in the interests of religious accommodation.").

As recognized by the Supreme Court, "Collective bargaining, aimed at effecting workable and enforceable agreements between management and labor, lies at the core of our national labor policy, and seniority provisions are universally included in these contracts." *Hardison,* 432 U.S. at 79. These seniority systems "provide[] important employee benefits by creating and fulfilling, employee expectations of fair, uniform treatment," including "an element of due process," limiting "unfairness in personnel decisions" and "encourage[ing] employees to invest in the employing company, accepting less than their value to the firm early in their careers in return for greater benefits in later years." *Barnett*, 535 U.S. at 404.

Accordingly, the Supreme Court has held that a request for accommodation that would **__undermine__** or be **__inconsistent__** with the rules of a seniority system is not a plausibly reasonable request. *Id.* Further, an employer need not provide "proof on a case-by-case basis that a seniority system should prevail…" because "to require the typical employer to show more than the existence of a seniority system might well undermine the employees' expectations of consistent, uniform treatment—expectations upon which the seniority system's benefits depend." *Id.* at 404. However, the Court noted that an employee may show "special circumstances" that warrant a finding that "despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts." *Id.*

Brigham's request to create her own flight schedule would have required Frontier to provide Brigham with a benefit all active flight attendants would have wanted, but no other active flight attendant, including those with greater seniority, would have been provided. Further, while the ability to trade/swap flights in Open Time was not based on seniority, flight attendants with greater seniority than Brigham would still be penalized because there would be fewer alternative and/or additional flight opportunities for other flight attendants with greater seniority looking to modify their schedules to choose from. [App. Vol. 6 at 1560]. While Brigham argues that Frontier was already providing exceptions to the bidding and

credit hours requirements set forth in the CBA, none of the evidence she cites supports her argument. The only flight attendants excused from the seniority-based bidding and credit hours requirements were those ineligible to bid pursuant to the terms of the CBA because they were on Frontier-approved continuous leaves of absence or had returned from such leave at a time when the bidding process had already closed and therefore, had no ability to bid. [App. Vol. 3 at 700, 711].

### 4. The Accommodation Requested Would Have Been Ineffective.

Brigham contends that "the district court erred by adopting Frontier's argument that Brigham's requested accommodation was unreasonable because 'it could not have promised Brigham that she would never end up with a layover" in that an accommodation does not need to be "total" to be reasonable. Opening Br. at 51-52. Brigham's logic, however, is flawed. In *Tabura v. Kellogg USA,* 880 F.3d 544, 550 (10th Cir. 2018), the case Brigham relies upon, the Court held that an employer was not required to guarantee certain employees that they would never be scheduled for a Saturday shift to accommodate their religious practices (and thus, was not required to provide a "total" accommodation) so long as the employer provided a way for those employees to avoid those shifts (e.g., the ability to trade shifts with other employees, use sick time, etc.). Here, even if Frontier provided Brigham with a "total" accommodation—meaning it **<u>never</u>** scheduled Brigham for flights with layovers or allowed Brigham to create her own flight schedule to avoid

33

all flights with layovers, it still could not guarantee she would not end up on a flight with a layover as a result of inclement weather and/or mechanical issues. [App. Vol. 6 at 1561]. Therefore, unlike in *Tabura,* the accommodation requested by Brigham would **not** have been effective and therefore, was not plausibly reasonable. *See, e.g., Barnett*, 535 U.S. at 400 ("An ineffective 'modification' or 'adjustment' will not accommodate a disabled individual's limitations.").

### B.    Brigham's Request To Be Transferred To A Light Duty Position In The GO Was Not Plausibly Reasonable As A Matter of Law.

#### 1.    There Was No Vacant Light Duty Position Available In The GO.

Brigham's request that Frontier transfer her to a light duty assignment at the GO was not plausibly reasonable because there was no existing vacant position at the time of her request. [App. Vol. 6 at 1540, 1551, 1562 (citing *Aldrich*, 146 F.3d at 1272 n. 5 and *White v. York In'l Corp.*, 45 F. 3d 357, 362 (10th Cir. 1995)]; 42 U.S.C. § 12111(9) (providing that a reasonable accommodation may include "reassignment to a **vacant position**") (emphasis added). Although the CBA allowed for light duty assignments for flight attendants **injured on the job**, Brigham was not injured on the job and regardless, Frontier did not reserve or keep vacant light duty "positions" for flight attendants injured on the job, but rather temporarily assigned those injured on the job to assist others in the GO with their own light duty responsibilities. [App. Vol. 1 at 164 at 79:14-16; id. at 186 at 167:2-168:6; App. Vol.

2 at 499, ¶ 44, citing App. Vol. 3 at 765-766; App. Vol. 4 at 1162]. Thus, Brigham's insistence that her request to transfer to a light duty position at the GO was not reasonable as a matter of law in that such a transfer would have required Frontier to create a new position. [App. Vol. 6 at 1551] ("The Tenth Circuit has found that it is 'not reasonable to require an employer to create a new job for the purpose of reassigning an employee to that job'"), (quoting *Duvall v. Georgia-Pac. Consumer Prod., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010)).

Brigham's reliance on certain guidance from the Equal Employment Opportunity Commission is misplaced in that the guidance concerns employers that, unlike Frontier, **reserve vacant** light duty positions for employees injured on the job. *See* Opening Br. at 34. Regardless, even if appliable, the guidance would not have mandated a different outcome in that it clearly states that such reassignment is only appropriate when "**there is no other effective accommodation available**." Opening Br. at 34; *see also, Smith,* 180 F.3d at 1171 ("Congress saw reassignment, as the EEOC does, as an option to be considered only after other efforts at accommodation have failed.") (internal citations and quotations omitted). It is undisputed that Frontier offered Brigham alternative accommodations, including transferring to a vacant or soon-to-be vacant position within Frontier or taking a continuous leave of absence until she felt secure enough

in her sobriety to handle layovers, which Brigham rejected. [App. Vol. 5 at 1404; App. Vol. 6 at 1562, n.10].

Similarly, the cases Brigham relies upon are inapposite in that none of them are from this Circuit. The issues on appeal in *Stone v. City of Mount Vernon,* 118 F.3d 92, 100 (2d Cir. 1997) and *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1998) were not whether employee requests for accommodation were plausibly reasonable and therefore, the cases are inapposite. *Patrick v. Henry Cnty., Ga.,* No. 1:13-CV-1344-RWS, 2015 WL 1509482, at *4 (N.D. Ga. Mar. 31, 2015) is further distinguishable in that unlike in this case, there was evidence the defendant had given a light duty position to another employee who, like the plaintiff, was restricted to light duty work as well as evidence that light duty positions may have been available at the time of the plaintiff's request. Unlike the plaintiff in *Patrick*, Brigham was never restricted to light duty work and regardless, Frontier has never transferred a flight attendant (injured on the job or not) to a light duty position or a temporary ground assignment in the GO as an accommodation and does not maintain vacant light duty positions in the GO. [App. Vol. 2 at 496, ¶ 22; *id*. at 496, ¶ 23, citing App. Vol. 3 at 830-33; App. Vol. 2 at 499, ¶ 43, citing App. Vol. 3 at 765; App. Vol. 6 at 1552].

In addition, while Brigham contends the District Court erred in failing to consider "forum contract law" or "federal policies underlying federal labor

legislation" when it concluded that the CBA allowed Frontier "the discretion to provide flight attendants injured on the job—but only flight attendants injured on the job—with temporary light duty assignments in the GO," it is unclear to what "forum contract law" or "federal policies" she is referring or why such law and policies should have been applied. Opening Br. at 38. While Brigham cites *Kemmis v. McGoldrick,* 706 F.2d 993, 996 (9th Cir. 1983) in support of her argument, the case is not from this Circuit and is inapposite in that it involved ERISA claims and an ambiguous industry-wide bargaining agreement. This case involves ADA claims and unambiguous language set forth in the Frontier flight attendant CBA concerning flight attendants injured on the job, which states as follows:

> H. On-The-Job Injury (OJI)
> ***
> 2. The first three days of OJI may be covered by sick days, or the Flight Attendant may immediately be assigned light/modified duty.

App. Vol. 3 at 765. No reasonable juror would interpret the above-quoted provision as applying to anyone other than flight attendants injured on the job.

> **2.    Allowing Brigham To Transfer To The GO Would Have Violated The CBA's Mandatory Seniority-Based Bidding Process & Encroached Upon The Vested Rights Of Other Flight Attendants.**

In addition, creating a light duty position in the GO for Brigham would have encroached upon the vested rights of other flight attendants in that Frontier did not

create such positions for any flight attendant, even those with the most seniority.[2] [App. Vol. 1 at 164 at 79:14-16; *id.* at 186 at 167:2-168:6; App. Vol. 2 at 499, ¶ 44, citing App. Vol. 3 at 765-766; App. Vol. 4 at 1162]. Further, allowing Brigham to transfer to the GO or to create her own flight schedule would also have violated the CBA because Brigham was not on OJI Leave (or any continuous leave) and therefore, would still have been considered an active flight attendant (even if temporarily transferred to the GO), required to bid for flights and maintain certain credit hours pursuant to the CBA. *See* Section III.A.2-3 *supra.*

## IV.    The District Court Did Not Err When It Granted Summary Judgment For Frontier On Brigham's ADA Discrimination (Count IV) And Retaliation (Count III) Claims.

The District Court properly concluded that Frontier was entitled to summary judgment on Brigham's discrimination and retaliation claims because Brigham failed to establish causation. [App. Vol. 6 at 1548].

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C § 12112(a). In the absence of direct evidence of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework to discrimination claims under the ADA. *Williams v. FedEx Corp. Servs.,* 849 F.3d

---

[2] While Brigham argues that "flight attendants reassigned to light duty are excepted from the operation of any applicable seniority provisions [in the CBA]," she fails to explain the relevance and/or materiality of this argument. Opening Br. at 31.

889 (10th Cir. 2017). Under *McDonnell Douglas*'s three-part analysis, a plaintiff must first establish a prime facie case of ADA discrimination by proving "(1) he is disabled (or perceived as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability." *Williams,* 849 F.3d at 896. If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant does so, "the burden shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.' " *Id.*

"Because the statute only prohibits discrimination '**on the basis of disability**,' there must be a nexus between the disability and the adverse employment action." *Punt*, 862 F.3d at 1047-48, citing 42 U.S.C. §12112(a) (emphasis added). Therefore, "It is not enough that an adverse employment action is suffered by an individual with a disability; rather, the disabled individual must show that the adverse action was 'on the basis of' the disability." [App. Vol. 6 at 1547]; *see also, Hennagir v. Utah Dep't of Corr.*, 587 F. 3d 1255, 1261 (10th Cir. 2009).

To establish *prima facie* case of retaliation under ADA, an employee must show: "(1) he or she engaged in protected activity; (2) he or she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) causal connection between the protected activity and the adverse

employment action." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171 (10th Cir. 1999). Like in ADA discrimination cases, once the plaintiff establishes a *prima facie case*, the *McDonnell Douglas* burden-shifting analysis applies.

### A. There Is No Genuine Dispute Of Material Fact That Frontier Terminated Brigham's Employment Because She Violated Frontier's Attendance Policy And Protocols.

Brigham contends that the District Court erred in granting summary judgment for Frontier on Brigham's ADA discrimination and retaliation claims in that it "focused on Frontier's assertion that Ms. Brigham violated its dependability policy as justifying Brigham's termination…" Opening Br. at 58. However, there was nothing impermissible about the District Court's consideration of the significant evidence Frontier presented; in fact, the District Court had an affirmative duty to consider that evidence. *See, e.g., Celotex,* 477 U.S. at 323-24 (stating that the court has an affirmative obligation at summary judgment to ensure factually unsupported claims do not proceed to trial).

The record clearly supports the District Court's conclusion that Frontier terminated Brigham's employment for violating its attendance policy and protocols, not because of Brigham's alcoholism or requests for accommodation. [App. Vol. 2 at 502, ¶ 62, citing App. Vol. 4 at 994; *id.* at 1106-1107 at 41:21-42:7; *id.* at 1165; App. Vol. 6 at 1553-1554 (evidence, including Brigham's own admission, demonstrating she failed report for a four-day trip commencing on October 23, 2015

40

and to notify the LOA Department that she wanted to use IFMLA to cover her absence); App. Vol. 6 at 1549 (Brigham's admission that she did not have enough IFMLA to cover the absences resulting from her failure to report for the four-day trip commencing on October 23, 2015); App. Vol. 6 at 1549, citing App. Vol. 4 at 1100 (evidence demonstrating an Investigatory Meeting was held to address Brigham's violations of the Dependability Policy prior to Frontier's termination decision); App. Vol. 6 at 1549 (Frontier's letter to Brigham informing her she was being discharged for violating the Dependability Policy); App. Vol. 3 at 625-629 (evidence demonstrating that pursuant to the Dependability Policy, employees incurring eight Occurrences within a 12-month period would be subject to termination); App. Vol. 6 at 1549-1550, citing App. Vol. 2 at 503, ¶ 66 (Mr. Arellano's representation that "Frontier believed that [Brigham] was not a dependable or reliable employee"); App. Vol. 6 at 1544, citing App. Vol. 2 at 502, ¶ 64; App. Vol. 5 at 1200, ¶ 65 (evidence, including Brigham's admission, demonstrating that she incurred more than 8 Dependability Occurrences in violation of the Dependability Policy);  App. Vol. 1 at 155 at 44:5-14 (Brigham's admission that there was no reason any of the Dependability Occurrences ultimately leading to the termination of her employment should have been excused other than to accommodate her alcoholism)].

The District Court did not ignore evidence presented by Brigham as she contends. *See* Opening Br. at 55-56. Instead, the Court carefully considered the evidence in its totality and determined it did not establish causation or create any dispute of material fact regarding same. [App. Vol. 6 at 1550-1551, citing App. Vol. 6 at 1494; App. Vol. 1 at 289 (rejecting Brigham's purported Treatment Plan as evidence of causation because even assuming *arguendo* it was the Treatment Plan Frontier required Brigham to abide by,[3] it did not require her to avoid overnight trips with layovers); App. Vol. 6 at 1551, citing App. Vol. 2 at 499, ¶ 43) (rejecting the CBA as evidence of causation because the provision allowing temporary reassignment applied to flight attendants injured on the job); App. Vol. 6 at 1551-1552, citing App. Vol. 5 at 1381, ¶ 19; Supp. App. at 9; App. Vol. 5 at 1413, ¶14; *id*. at 1413, ¶ 16 (rejecting Frontier's spreadsheet reflecting employee

---

[3] The District Court observed that while "[t]he evidence shows that Frontier requires employees who self-disclose their alcoholism to comply with treatment…recommended by their Substance Abuse Provider ('SAP'), who must be Department of Transportation certified," Brigham failed to "point[] to any evidence indicating that Marla Madrid, the Primary Therapist who signed her Treatment Plan, was her SAP." App. Vol. 6 at 1550. Further, evidence in the record indicates that Brigham referred to another individual, John Chapman, as her SAP. [App. Vol. IV at 995] ("It has come to my attention that my most recent FMLA paperwork was sent to John Chapman SAP instead of you guys. I am having my therapist [presumably, Ms. Madrid] send the paperwork to you just in case we need it if HR decides not to terminate my employment"). The identity of Brigham's SAP is immaterial in that the Treatment Plan identified by Brigham does not prohibit her from handling flights with layovers.

accommodations since 2012 as evidence of causation because Brigham was not similarly situated to anyone on the spreadsheet who was not a flight attendant and none of the individuals reflected on the spreadsheet had requested accommodations for conditions involving substance abuse)[4]; App. Vol. 6 at 1552 (rejecting the transcript of her October 9, 2015 meeting and Mr. Arellano's observation that her requested accommodations would have amounted to "making exceptions" and that Frontier would not make a "separate accommodation" because it did not evidence that Brigham's disability, or requests for accommodation caused her termination); App. Vol. 6 at 1553, citing App. Vol. 2 at 502, ¶ 62, citing App. Vol. 4 at 913, 917, 994 (rejecting the IFMLA Certification as evidence of causation because it does not indicate Brigham was permitted to take 16 days of IMFLA and regardless, Brigham still would have exhausted her leave at the time of her discharge and had herself admitted to violating Frontier's attendance policy and protocols, a terminable offense); App. Vol. 6 at 1554-1557, citing App. Vol. 5 at 1383, ¶ 22; App. Vol. 2 at

---

[4] The District Court went even further and held that the spreadsheet actually **undermined** Brigham's causation argument by demonstrating that: a. "Frontier has never provided light duty assignments to any flight attendant (injured on the job or not) as an accommodation;" b. Frontier has never "placed any flight attendant (injured on the job or not) into a vacant ground position as an accommodation, although the OJI program would have allowed for temporary light duty assignments if requested by flight attendants injured on the job;" c. "since 2012, Frontier has never transferred a flight attendant to a temporary ground assignment in the GO as an accommodation;" and d. "no flight attendants have been offered modified work schedules." [App. Vol. 6 at 1552].

437-438, ¶¶ 6-7, 12, 14) (rejecting the declarations of David St. Hilaire and Christine Kernen as evidence of causation because they were not similarly situated to Brigham)].

### 1. The Amount Of IFMLA Brigham Was Certified To Take Is Immaterial.

The bulk of Brigham's argument on appeal is that the District Court should not have granted summary judgment for Frontier because disputes of material fact exist regarding the amount of IFMLA Brigham was certified to take at the time of her discharge. *See* Opening Br. at 58-59. Specifically, Brigham contends that she had been certified for 16 days per month of IFMLA and therefore, had not exhausted her IFMLA at the time of Frontier's decision to terminate her employment. Opening Br. at 58-59. However, the District Court properly concluded that Brigham's argument was unsupported by the evidence and regardless, immaterial. [App. Vol. 6 at 1553-1554].

The evidence clearly demonstrates that Frontier's decision to terminate Brigham's employment was based on its good faith belief that Brigham's medical care provider had certified her for 12 days of IFMLA per month to attend appointments and meetings for purposes of her recovery, not to avoid flights with layovers, that Brigham was using her IFMLA to use avoid flights and layovers and had exhausted that leave by October 19, 2015, and that Brigham had failed to report for the four-day trip commencing on October 23, 2015, resulting in her incurrence

of more than 8 Dependability Occurrences. [App. Vol. 6 at 1553-54, citing App. Vol. 2 at 502; App. Vol. 4 at 994 ("she is only approved for up to 12 days per month…"); App. Vol. 4 at 922 ("re-coding IFM due to recertification now authorizing 12 days per month"), *id.* at 952 (email to Brigham stating, "We have received your FMLA certification. At this time we are approving your intermittent leave of absence from 5/1/15 to 11/1/15 for up to 12 days per month."); *id.* at 984 ("She was approved for up to 12 days per month…"); *id.* at 994 ("she is only approved for up to 12 days per month and those were exhausted on 10/19/2015")]. Therefore, even if the IFMLA Certification and/or other evidence in the record was sufficient to establish causation (which it is not) as Brigham contends, her argument is still futile because the record clearly evidences that Frontier's decision to discharge Brigham was based on legitimate, non-discriminatory and non-retaliatory reasons, which were not pretextual. *Johnson v. Weld Cty., Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010) ("Under *McDonnell Douglas,* our role isn't to ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'").The undisputed evidence demonstrates Brigham, herself, believed she had been certified for 12 IFMLA days per month, suggesting her argument to the contrary is disingenuous. [App. Vol. 4 at 948 (Email dated May 29, 2015 from Brigham to Frontier stating "there is new fmla [sic] paperwork that you would have

received for 12 days per month [sic] please let me know if you have not received it yet [sic] thanks."); App. Vol. 1 at 184 at 159:15-22 ("Q. And she certifies you for 12 days a month, correct? A. Yep. Q. Okay. And again, she says, frequency, one time per week, group two times per week for two hours at a time. Is that right? A. Yep.")].

In addition, regardless of how much IFMLA Brigham had been approved to take, there is no dispute that Brigham was never certified to use any IFMLA to avoid flights with layovers. [App. Vol. 1 at 184 at 161:3-6 ("Q. And nowhere on this document does she say that you need any kind of accommodation for avoiding overnights or layovers, correct? A. Not that I see, nope."); App. Vol. 3 at 826-28 (Fitness-for-Duty Certification, releasing Brigham to return to work with no restrictions); *id.* at 830-33 (IFMLA Certification executed March 10, 2015); App. Vol. 4 at 1093 (Mr. Arellano explaining to Brigham, "That is why we are helping you in the form of having this FMLA in place and using it outside of what you are approved for."); *id.* at 994 (Email dated October 29, 2015 from Shelly Leyner, Disability Program Management Supervisor, to Mr. Arellano stating, "I don't see that we have received anything stating that she was not able to work overnight trips"); *id.* at 988 (Email dated October 7, 2015 from Ms. Leyner to Mr. Arellano stating, "Sure since her IFM is supposed to be for her addiction treatment sessions which are 3 times per week. Maybe the doctor will notice she is not taking those

days off.")]. Therefore, even assuming *arguendo* that Brigham had additional IFMLA, Frontier still had a legitimate, non-discriminatory and non-retaliatory basis to reject Brigham's use of any remaining IFMLA: Brigham was not certified her to use IFMLA to skip flights with layovers. *See Mielnicki*, 738 F. App'x at 950 ("An employer that goes beyond what is required under the ADA to permit an employee to perform only some of the essential functions of the position is not then estopped from insisting that the employee perform all of the essential functions of her job.")

Relatedly, to the extent Brigham is arguing that she could use IFMLA not just for meetings and appointments, but for "intermittent incapacitation" and thus, necessarily had more than 12 days of IFMLA per month, that too is immaterial. Brigham was admittedly never incapacitated due to her alcoholism after completing rehabilitation treatment in November 2015 and no competent summary judgment evidence demonstrates avoiding flights with layovers was ever "medically necessary" for purposes of Brigham's recovery. [App. Vol. 4 at 1117 at 67:5; *id.* at 1119 at 69:16-20; *id.* at 1120-1121 at 70:21-71:5; App. Vol. 2 at 496, ¶¶ 22, 23, citing App. Vol. 3 at 828-29; App. Vol. 6 at 1550-51]; 29 C.F.R. § 825.203 ("Eligible employees may take FMLA leave on an intermittent or reduced schedule basis when **medically necessary** due to the serious health condition of a covered family member or the employee or the serious injury or illness of a covered servicemember…") (emphasis added); *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004)

("Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence."); *Taylor v. Autozoners, LLC,* 706 F. Supp. 2d 843, 851 (W.D. Tenn. 2010) (plaintiff failed to show she was incapacitated because she was "at no time instructed by a medical care provider to remain off work" and her own judgment that she could not work was insufficient for purposes of establishing incapacity for purposes of the FMLA) (citing 29 C.F.R. § 825.203).

Even assuming *arguendo* that Brigham had been approved to take 16 days of IFMLA leave per month and that she was certified to use that IFMLA to avoid flights with layovers regardless of whether she was incapacitated, those facts are immaterial in at the time that Frontier decided to terminate Brigham, she still had exhausted her IMFLA and admittedly failed to abide by Frontier's policy with respect to providing sufficient notice before using IFMLA. [App. Vol. 6 at 1553-1554]; 29 C.F.R. § 825.203 ("If an employee needs leave intermittently or on a reduced leave schedule for planned medical treatment, then the employee must make a **<u>reasonable effort</u>** to schedule the treatment **<u>so as not to disrupt unduly the employer's operations</u>**.") (emphasis added). Even if Brigham had been certified to take unlimited FMLA, she would have been limited to 72 days per any 12-month period under the law, which Brigham had repeatedly exceeded and a result, incurred Dependability Occurrences. *See* Fact Sheet #28J: Special Rules for Airline Flight Crew Employees under the

Family and Medical Leave Act, U.S. Department of Labor, available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs28j.pdf (last visited February 2, 2022)[5]; App. Vol. 4 at 923 (noting Brigham had reached 72 days of FMLA on July 1, 2015); *Id.* (noting Brigham had reached 72 days of FMLA on August 14, 2015); *Id.* at 928 (notifying Brigham on December 18, 2014 that she had "exhausted all 72 FMLA days available").

Finally, Brigham's insistence that Frontier should have excused **all** of her absences, regardless of whether she had enough IFMLA to cover them (and despite the fact that she failed to present any documentation indicating those absences were medically necessary), also evidences that the number of IFMLA she had been certified to take is immaterial[6] and further supports the District Court's finding that

---

[5] The Court may take judicial notice of this publication. *See Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1152 (10th Cir. 2020), cert. denied sub nom. *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 210 L. Ed. 2d 974 (2021), reh'g denied, 210 L. Ed. 2d 1009 (Aug. 23, 2021) ("We may take judicial notice of official government publications"); *Ray v. Aztec Well Serv. Co.,* 748 F.2d 888, 889 (10th Cir. 1984) ("This Court can take judicial notice of agency rules and regulations.") (citing *Roemer v. Board of Public Works of Maryland,* 426 U.S. 736, 742 n. 4, 96 S.Ct. 2337, 2343 n. 4, 49 L.Ed.2d 179 (1976)).

[6] The fact that Brigham never brought any FMLA claims further evidences that the amount of IFMLA she was certified to take is immaterial to her ADA claims, which concern Frontier's purported failure to accommodate her by refusing to excuse her from flights with layovers such that she would neither need to use IFMLA nor incur Dependability Occurrences to avoid such flights.

Brigham was impermissibly trying to convert her termination for misconduct into a termination because of a disability and/or request for accommodations. [App. Vol. 1 at 154 at 39:5-22; App. Vol. 6 at 1548-1549]. The law expressly permits employers to discharge employees for violating reasonable policies and procedures even if those violations are related to the employee's alcoholism. *See,* 42 U.S.C. § 12114 (permitting employers to terminate employees for violating reasonable policies and procedures even if the "unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee"). Here, Brigham admittedly violated Frontier's attendance policy and procedures and no reasonable juror would conclude that Frontier's expectation of reliable attendance and policies reflecting same, were unreasonable.

For these reasons, the District Court did not err in concluding that Brigham failed to establish causation or create a genuine dispute of material fact regarding same and therefore, that Frontier was entitled to summary judgment on Brigham's ADA discrimination and retaliation claims as a matter of law.

## **CONCLUSION**

This Court should affirm the District Court's decision to grant Frontier's Motion for Summary Judgment, which for the reasons stated above, was proper.

Respectfully submitted this 4th day of February, 2022.

*s/ Danielle L. Kitson*

Danielle L. Kitson
Carolyn B. Theis
LITTLE MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, Colorado 80202
Telephone:  303-629-6200
Facsimile:   303-629-0200
Email:  dkitson@littler.com
              catheis@littler.com

ATTORNEYS FOR APPELLEE
FRONTIER AIRLINES, INC.

## CERTIFICATE OF COMPLIANCE

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements and Type Style Requirements**

1.  This document complies with the type-volume limit of Fed. R. App. P. Rule 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [ X]  this document contains 10,826 words or

    [   ]  this brief uses a monospaced typeface and contains 1,300 lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), (a)(6) and 10th Cir. R. 32(A) because:

    [X ]  this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point, or

    [   ]  this document has been prepared in a monospaced typeface using Microsoft Word 365  with 10.5 characters per inch in Times New Roman.

    Date: February 4, 2022

    *s/ Danielle L. Kitson*
    Danielle L. Kitson
    LITTLE MENDELSON, P.C.
    1900 16th Street, Suite 800
    Denver, Colorado 80202
    Telephone:  303-629-6200
    Facsimile:   303-629-0200
    Email:  dkitson@littler.com

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1. All required privacy redactions have been made pursuant to 10th Cir. R. 25.5;

2. If required to file additional hard copies, the ECF submission is an exact copy of those documents;

3. The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, TrendMicro OfficeScan Agent v.12.0.5239, most recently updated on July 19, 2019, and according to the program are free of viruses.

Respectfully submitted this 4th day of February, 2022.

*s/ Danielle L. Kitson*
Danielle L. Kitson

## CERTIFICATE OF SERVICE

I certify that on February 4, 2022, I electronically filed the foregoing **BRIEF OF DEFENDANT-APPELLEE FRONTIER AIRLINES, INC.** with the Clerk of the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will provide electronic service to counsel of record for Plaintiff-Appellant as follows:

> John R. Crone
> The Law Office of John R. Crone, LLC
> 2717 South Forest Street
> Denver, CO 80222
> Phone: (303) 598-3526
> john@crone-law.com
>
> *Counsel for Plaintiff – Appellant*
> *Rebecca Brigham*

*s/ Danielle L. Kitson*
Danielle L. Kitson

4892-2635-1115.8 / 057446-1017