No. 21-1335

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

REBECCA BRIGHAM,

*Plaintiff-Appellant,*

v.

FRONTIER AIRLINES, INC.,

*Defendant-Appellee.*

———————————————

**On Appeal from the United States District Court for the District of Colorado (Civil Action No. 19-cv-03417-WJM-STV, Hon. William J. Martinez)**

———————————————————————————

**REPLY BRIEF FOR APPELLANT**

———————————————————————————

John R. Crone
    *Counsel of Record*
The Law Office of John R.
Crone, LLC
2717 South Forest Street
Denver, CO 80222
(303) 598-3526
john@crone-law.com

*Counsel for Rebecca Brigham*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                      II

ARGUMENT                                                                   1

CONCLUSION                                                                16

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT          18

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY
REDACTIONS                                                               19

CERTIFICATE THAT ELECTRONIC COPY AND REQUIRED HARD
COPIES ARE IDENTICAL                                                     20

CERTIFICATE OF SERVICE                                                   21

# TABLE OF AUTHORITIES

## CASES

*Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1005 (6th Cir. 2005) ................................................................................. 3

*Del Rey Air v. Expressway Airpark, Inc.*, 468 F.2d 187, 1 (10th Cir. 1972) ................................................................................. 13

*Hudson v. MCI Telecommunications, Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) ................................................................................. 8

*Marie v. Ariz. Dep't of Econ. Serv.*, No. CV-17-03167-PHX-DJH, at *7 (D. Ariz. Feb. 28, 2020) ................................................................. 6

*Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ..... 8

*Updike v. Multnomah County*, 870 F.3d 939, 951-52 (9th Cir. 2017)...... 6

*US Airways, Inc. v. Barnett* ....................................................................... 5

*Zaki v. Banner Pediatric Specialists LLC*, No. CV-16-01920-PHX-DLR, at *6 (D. Ariz. Sept. 26, 2018) ................................................................. 8

## Regulations

29 C.F.R. § 1630.2(n)(1)............................................................................. 2

# ARGUMENT

Frontier's arguments in opposition to Appellant's Opening Brief can be generally characterized as either: (1) misstating the factual record developed before the district court; (2) misstating the law governing the issues upon appeal; or (3) consisting of a combination of both errors. Because none of Frontier's arguments alter the fact that the district court erred in granting Frontier's motion for summary judgment, Appellant respectfully requests the Court reverse the district court's dismissal of this case and remand for trial.

## I. Ms. Brigham proposed plausibly reasonable accommodations, and Frontier failed to show her proffered accommodations were unreasonable or an undue burden.

### A. Ms. Brigham's request to build her schedule from Open Time was plausibly reasonable.

*First*, Frontier incorrectly argues that Ms. Brigham's request to build her schedule from Open Time would have eliminated an "essential function" of her job making such a request unreasonable. Appellee's Br. at 27. Here, in support of this argument, Frontier misstates the factual record created before the district court when it asserts that: "[i]nherent in any flight attendant position is the ability to cover flights that include layovers." Id.

"The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Marginal functions are not included, and evidence of whether a particular function is essential includes the "employer's judgment" and "written job descriptions," as well as the "work experience of past incumbents in the job." Id. § 1630.2(n)(1)-(3). The factual record demonstrates that covering flights with layovers was not an essential function of Ms. Brigham's position, or at least, whether this function was essential presented disputed issues of material fact.

Frontier's own job description lists all "essential functions" of the position of "flight attendant" but fails to list the completion of layovers. (Vol. 1 at 0250-51.) Instead, and consistent with Frontier's own deposition testimony, a flight attendant's essential job functions are centered around passenger safety and customer service, not completing layovers. Id.; (Vol. 1 at 0103-04, 49:25-56:21) (wherein Frontier testified extensively on the essential functions of a flight attendant, stating that "safety" is most important as well as "mak[ing] sure the passenger experience is a positive one;" notably, Frontier never testified that layovers were essential to completing these duties).

2

Moreover, as described in Ms. Brigham's Opening Brief, flight attendants could bid on schedules wherein they might fly from Denver to New York and back during one day without need for an overnight layover. Thus, Frontier's citation to record evidence, primarily its own affidavits, in support of its argument that layovers were essential to a flight attendant's duties, at best, creates a triable issue of fact making this determination ill-suited for summary judgment. *See, e.g., Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1005 (6th Cir. 2005) ("Determining what functions are 'essential' to a particular position is a question of fact.").

*Second*, Frontier argues without elaboration that "granting Brigham's request to create her own schedule without regard to seniority based bidding . . . would have violated the CBA . . . ." Appellee's Br. at 28. However, Frontier fails to meaningfully engage with the core of Ms. Brigham's argument which can be stated as: granting Ms. Brigham the ability to deviate from the CBA's scheduling procedure, allowing Ms. Brigham to instead create a schedule from Open Time, would not have impaired the rights of more or less senior flight attendants; indeed, it would have provided more options to all other bidding flight attendants,

3

regardless of seniority, in the first and *only* round of seniority-based bidding. Ms. Brigham would have only been bidding on flights that more and less senior flight attendants did not want in the original round of bidding and for which they had not contractual right of preference.

Frontier continues to assert that this proposed reasonable accommodation would have violated the CBA but presents no persuasive argument in support. In its Opposition Brief, Frontier argues that Adrienne Prince, former Union Vice President, testified that "the union **<u>never</u>** intended to authorize Frontier to grant the accommodation Brigham sought because doing so would have violated the CBA." Appellee's Br. at 28 (emphasis in original). Setting aside the fact that Ms. Prince never took this position until recently during this litigation, and in fact argued the opposite during the relevant time period, Frontier fails to identify any authority to support the proposition that the Union's "authorization" was required before Frontier could comply with its legal duty to reasonably accommodate Ms. Brigham.

Further, Frontier provides no authority in support of the proposition that the Union's opinion on what may have violated the terms of the CBA ought to matter to this Court's analysis (to the extent that

4

Ms. Prince's recent deposition testimony, given while not serving in any capacity with the Union, is capable of properly reflecting the Union's position on any of these issues).

*Third*, Frontier argues that allowing Ms. Brigham to build her schedule from Open Time would "still be inconsistent with the contractual rights of other workers under the CBA . . . and therefore, was not a plausibly reasonable request." Appellee's Br. at 30-31. Frontier primarily cites to *US Airways, Inc. v. Barnett* in support of this argument, but in that case, the United States Supreme Court held that "special circumstances" may warrant a finding that an accommodation is reasonable despite the existence of a seniority system. 535 U.S. 391, 405-06 (2002). And in any event, Ms. Brigham's proposed reasonable accommodation, while requiring a deviation from the scheduling process set forth in the CBA, does not require violation of any of the actual rights of other flight attendants under the CBA. Therefore, Frontier's argument sidesteps the point: Ms. Brigham was not asking to violate the CBA; *Barnett* does not govern at all.

*Finally*, with respect to Ms. Brigham's request to build her schedule from Open Time, Frontier argues the requested accommodation would

not have been effective because Frontier could not have promised that she would "never end up with a layover." Appellee's Br. at 33. As argued in Appellant's Opening Brief, a "total accommodation" is not required for an accommodation to be sufficient under the law. *See also Marie v. Ariz. Dep't of Econ. Serv.*, No. CV-17-03167-PHX-DJH, at *7 (D. Ariz. Feb. 28, 2020) ("But courts do not interpret the ADA as requiring a *perfect* accommodation.") (citing *Updike v. Multnomah County*, 870 F.3d 939, 951-52 (9th Cir. 2017)). Frontier's insistence that a reasonable accommodation requires perfection is not defensible under law or as a practical matter.

## B. Ms. Brigham's request to temporarily transfer to the GO was plausibly reasonable.

*First*, Frontier argues that "there was no vacant light duty position available in the GO." Appellee's Br. at 34. Frontier provides no factual or legal support for this argument. As argued in Appellant's Opening Brief, Frontier was contractually obligated to reserve a limitless supply of light duty jobs for employees injured on the job. Appellant's Br. at 36-37. Under governing law, Frontier's position in this litigation is untenable, i.e., Frontier cannot reserve light duty positions for those injured on the job but refuse to offer those same positions as reassignment for a

6

reasonable accommodation under the ADA. Id.

*Second*, Frontier briefly argues that allowing Ms. Brigham to transfer to the GO would have "encroached upon the vested rights of other flight attendants in that Frontier did not create such positions for any flight attendant, even those with the most seniority." Appellee's Br. at 37-38. But, Frontier has reserved vacant light duty positions in the GO for all flight attendants, regardless of seniority, if they are injured on the job. Despite the undisputed provision in the CBA creating these reserved and vacant light duty positions, Frontier is now apparently arguing that this language does not really mean what it says. The Court should reject any such reading of the CBA and Frontier's obligations under law.

*Third,* Frontier argues, by misstating the record, that: "[i]t is undisputed that Frontier offered Brigham alternative accommodations, including transferring to a vacant or soon-to-be vacant position within Frontier or taking a continuous leave of absence . . . ." Appellee's Br. at 35. Frontier never offered a *transfer*, it offered to allow Ms. Brigham to apply for a job, along with any other member of the public, for which she was unqualified. Appellant's Br. at 12. Offering an employee continuous unpaid leave, which Ms. Brigham could not afford to take, is not an offer

of reasonable accommodation. *Hudson v. MCI Telecommunications, Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (unpaid leave with indefinite duration is not a reasonable accommodation); *see also Zaki v. Banner Pediatric Specialists LLC*, No. CV-16-01920-PHX-DLR, at *6 (D. Ariz. Sept. 26, 2018) (unpaid medical leave may be a reasonable accommodation under the ADA, "*if it does not pose an undue hardship on the employee.*") (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)).

*Fourth*, in trying to distinguish Appellant's cited caselaw in support of her argument that transferring to the GO was plausibly reasonable, Frontier relies upon evidence which, if not placed in proper context, is highly misleading: "Frontier has never transferred a flight attendant (injured on the job or not) to a light duty position or a temporary ground assignment in the GO . . . ." Appellee's Br. at 36. Whether or not Frontier has actually transferred a flight attendant to a light duty position is irrelevant; it is undisputed that light duty positions are reserved for flight attendants if they are injured on the job and these injured flight attendants have a contractual right to the same. Appellant's Br. at 11; (Vol. 1, Dep. of Stefanie Coppedge, at 0225, 15:7-16) (testifying that flight

attendants possess a contractual right to light duty work when injured). And even if Frontier's assertion is true, it was not for lack of trying. (Supp. App. at 12) (noting at least two injured flight attendants that were offered administrative positions but apparently resigned or retired rather than accepting such positions). Moreover, Frontier makes no argument as to why reserved and vacant light duty positions, undisputedly available to flight attendants, could not be used as a reasonable accommodation under the ADA for a flight attendant if, historically, these light duty positions were utilized for other Frontier employees injured on the job. Frontier attempts to creates a distinction where there is no legal significance, and this argument should be rejected.

*Fifth,* Frontier takes issue with the fact that Ms. Brigham argued the district court should have engaged in some method of contract interpretation regarding the meaning of certain provisions of the CBA rather than taking Frontier's word alone as definitive of the contract's meaning. While Frontier frames the disputed contract language as presenting the district court with the simple issue of whether injured flight attendants are due light or modified duty, the issue is actually

whether this contractual provision *precludes* Frontier from granting the same to Ms. Brigham as a reasonable accommodation under the ADA. In any event, Ms. Brigham's argument is that the district court committed reversible error by crediting Frontier's interpretation of this provision rather than engaging in contract interpretation. Frontier's assertion that one party to a CBA may unilaterally declare the meaning of a disputed provision under the CBA should be denied.

*Finally*, Frontier argues that allowing Ms. Brigham to transfer to the GO would have "violated the CBA's mandatory seniority-based bidding process [and] encroached upon the vested rights of other flight attendants." Appellee's Br. at 37. Frontier asserts that because it has not "create[d] such positions for any flight attendant, even those with the most seniority," granting Ms. Brigham's requested reasonable accommodation would have violated the CBA's seniority-based bidding process. Id. at 37-38. But, Frontier either ignores or fails to recognize the significance of the CBA in this context: the CBA expressly removes individuals transferred to light duty from operation of the seniority-based bidding system. Thus, Frontier's argument is fundamentally incorrect per a plain reading of the CBA.

Frontier attempts to salvage this argument by stating that "Brigham was not on OJI leave (or any continuous leave) and therefore, would still have been considered an active flight attendant . . . required to bid for flights . . . ." Id. at 38. The only reason Ms. Brigham was not on any type of leave that would have removed her from the seniority-based bidding process is because Frontier refused to grant the accommodation of transferring Ms. Brigham to the GO for light duty. And, of course, if Frontier had granted this accommodation, the CBA expressly allowed Ms. Brigham to be removed from the seniority-based bidding system by being placed on virtually any type of leave. (Vol. 2, CBA, at 0334) ("Flight Attendants are eligible to bid [on a schedule] unless they have been granted Company approved leaves (LOA, MED, FMLA, OJI, etc.) or removed for Company Business."). Frontier's strained reading of the CBA in search of non-existent violations should not be given credence by this Court.

## II.    Frontier terminated Ms. Brigham on the basis of her disability and because she requested reasonable accommodations.

As argued in Appellant's Opening Brief, the district court dismissed Ms. Brigham's claims of discrimination and retaliation for failing to make

out a prima facie case. Appellant's Br. at 56-59. Thus, the district made no findings on whether Ms. Brigham's evidence was sufficient to demonstrate pretext; indeed, the district court did even hold that Frontier set forth a sufficient legitimate non-discriminatory reason for Ms. Brigham's termination.[1] (Vol. 6 at 1548) ("Assuming *arguendo* that Brigham has met the first two elements of her prima facie burden for discrimination and retaliation, for the following reasons, the Court finds that she has failed to satisfy the third element of both claims, which requires her to demonstrate that Frontier terminated her employment on the basis of her disability (for discrimination) or that there is a causal connection between her requests for accommodations and her termination (for retaliation).").

Because the scope of the district court's analysis and holding was narrowly limited to issues surrounding Ms. Brigham's assertion of a prima facie case, the issues presented to this Court, which are capable of meaningful appellate review, are likewise limited. *Del Rey Air v.*

---

[1] Ms. Brigham asserts the factual record developed before the district court is sufficient to overcome summary judgment and entitles her to present these issues to a jury; however, the district court conducted no analysis beyond dismissing her claims based on a supposed failure to assert a prima facie case.

*Expressway Airpark, Inc.*, 468 F.2d 187, 1 (10th Cir. 1972) ("On review, we are generally limited to matters appearing of record."). As such, Ms. Brigham has focused her arguments on the district court's crediting of disputed material facts surrounding Frontier's asserted reason for terminating Ms. Brigham, including the district court's dismissal of any evidence supporting a contrary assertion. Appellant's Br. at 58-59. This was error as the district court was not permitted to make factual or credibility determinations on summary judgment.

Because the facts underlying Frontier's purported reason for terminating Ms. Brigham are much disputed, and because Frontier's shaky explanation for Ms. Brigham's termination is *but one of various* reasons asserted as part of Ms. Brigham's "not onerous" duty to make out a prima facie case of discrimination and retaliation, Appellant urges this Court to reverse the district court.

By way of example, the district court credited Frontier's interpretation of Ms. Brigham's treatment plan as not requiring avoidance of overnight layovers even though the treatment plan states: "it would not be a good idea to encourage a vulnerable situation with a work schedule that serves as a temptation, if possible," (Vol. 6 at 1551.),

13

and Ms. Brigham testified unequivocally that this was a command from her treatment provider plan to avoid overnight layovers. The district court's determination that it would accept Frontier's contrary interpretation is especially problematic as Ms. Brigham was in the best position to describe the meaning of her treatment plan given that *she actually participated in and was the subject of the treatment*, and it is undisputed that Frontier was not present for any treatment sessions.[2] At the very least, this fact was material, disputed, and should have precluded entry of summary judgment.

Given that the district court held that the entirety of Ms. Brigham's evidence was not sufficient to present a prima facie case of discrimination and retaliation under the ADA despite, for example, direct evidence of Frontier stating the following when denying her requested accommodations: "if we cherrypicked to try to create you a certain situation—now we've created a whole separate accommodation for you"

---

[2] Frontier also argues that Ms. Brigham failed to introduce evidence that her treatment provider was her proper Substance Abuse Provider ("SAP") as defined by Frontier's self-disclosure program; however, Frontier never advanced this argument below, before or during the litigation, and in its Opposition Brief states that: "[t]he identity of Brigham's SAP is immaterial . . . ." Appellee's Br. at 42 n.3.

and "we're not making exceptions," Appellant's Br. at 12-13, it is difficult to imagine what evidence would have been sufficient to show pretext had the district court proceeded to that stage of the analysis. In other words, whatever standard imposed by the district court in assessing Ms. Brigham's "not onerous" burden to present a prima facie case, it went beyond any burden actually imposed under the ADA. For these additional reasons, Ms. Brigham respectfully requests the Court reverse the district court's findings in this regard.

**III.  Ms. Brigham properly stated a claim for failure to engage in the interactive process because Frontier's failure to engage in this process led to her denied accommodations.**

Frontier fundamentally misunderstands Ms. Brigham's asserted claim. Ms. Brigham is asserting that Frontier's failure to meaningfully engage in the interactive process led to a failure to accommodate her disability. This claim is cognizable under law and presents a separate path upon which Ms. Brigham may assert a failure to accommodate claim.

Frontier argues that recognizing this type of noncontroversial claim would lead to absurd results because "an employer could be held liable for failing to engage in the interactive process despite *actually* providing

a reasonable accommodation (albeit without engaging in the interactive process)." Appellee's Br. at 24 (italics in original). But Frontier's argument is nonsensical as no employer could be held liable for failure to accommodate if it actually provided a reasonable accommodation. When an employee asserts that an employer failed to engage in the interactive process, the employee must also assert that a reasonable accommodation would have been possible (as Ms. Brigham has done here). Ms. Brigham's claim for failure to engage in the interactive process is but one additional way to prove that Frontier failed to reasonably accommodate her—it just relies on different facts: primarily that Frontier's interactive process was nonexistent or flawed in that Frontier proposed no actual offers of reasonable accommodation.

Moreover, these facts in support of Ms. Brigham's claim for failure to engage in the interactive process were not addressed by the district court as the district court dismissed this claim as a matter of law. As the district court erred in its analysis of the availability such a claim, the district court should be reversed and this claim remanded for trial.

## CONCLUSION

For the foregoing reasons, the district court should be reversed and

the claims contained in the Complaint and Jury Demand should be set

for trial.

Respectfully submitted,


/s/ John R. Crone

The Law Office of John R.
Crone
2717 South Forest Street
Denver, CO 80222
(303) 598-3526
john@crone-law.com
*Counsel for Rebecca Brigham*

February 25, 2022

17

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    __X__ this brief contains 3,238 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I relied on my word processor, Microsoft Word for Mac, Version 16.51, to obtain the count.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    __X__ this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, Version 16.51, in Century Schoolbook font, size 14.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

February 25, 2022

/s/ John R. Crone
*Counsel for Rebecca Brigham*

18

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that (1) the foregoing brief contains no information subject to the privacy redaction requirements of 10th Cir. R. 25.5; (2) the hard copies of the brief to be submitted to the Court are exact copies of the electronic copy filed using the Court's CM/ECF system; and (3) the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ John R. Crone

February 25, 2022                    *Counsel for Rebecca Brigham*

19

## CERTIFICATE THAT ELECTRONIC COPY AND REQUIRED HARD COPIES ARE IDENTICAL

I hereby certify that seven hard copies of this brief, which are required to be submitted to the Clerk's Office within five days of electronic filing pursuant to 10th Cir. R. 31.5, are exact copies of that which was filed with the Clerk of the Court using the electronic filing system on February 25, 2022.


<table>
<tr><td></td><td>/s/ John R. Crone</td></tr>
<tr><td>February 25, 2022</td><td><em>Counsel for Rebecca Brigham</em></td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I electronically filed a copy of the foregoing brief with the Clerk of the United States Court of Appeals for the Tenth Circuit using the Court's appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users who will be served by the appellate CM/ECF system.

/s/ John R. Crone
*Counsel for Rebecca Brigham*

February 25, 2022